# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

VJ BRANDON GOICHAI,

        Plaintiff,

v.

ASCENTIUM CAPITAL, LLC and
REGIONS BANK,

        Defendants.

CASE NO. 2:25-cv-11534

HON. JUDITH E. LEVY

Magistrate Judge Anthony P. Patti

---

RAYMOND J. CAREY &
ASSOCIATES, PLLC
Raymond J. Carey (P33266)
30500 Northwestern Hwy.
Suite 425
Farmington Hills, MI 48334
(248) 865-0001
rcarey@work-lawyers.com
Attorney for Plaintiff

JACKSON LEWIS P.C.
Katherine J. Van Dyke (P62806)
Peter J. Lochbiler (P85641)
2000 Town Center, Suite 1650
Southfield, MI 48075
(248) 936-1900
katherine.vandyke@jacksonlewis.com
peter.lochbiler@jacksonlewis.com
Attorneys for Defendants

---

**DEFENDANT REGIONS BANK'S ANSWER
TO COMPLAINT AND AFFIRMATIVE DEFENSES**

Defendant Regions Bank, on behalf of itself and its division, Ascentium Capital[1] ("Defendant"), submits the following for its Answer to Complaint and Affirmative Defenses:

1.    Plaintiff VJ Brandon Goichai brings this action against Defendant for:

---

[1] Defendant Ascentium Capital LLC is no longer a separate legal entity as of May 2023.

discrimination based on age and retaliation in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), M.C.L.A. §§37.2201, *et seq.* These claims are premised on the adverse terms and conditions of Plaintiff's former employment with Defendant after Regions Bank acquired Ascentium and circumstances leading up to and including Defendant's termination of Plaintiff's employment relationship with it, effective February 12, 2025.

**ANSWER: Defendant admits only the allegations in Paragraph 1 that Plaintiff has alleged the claims set forth in this paragraph, but Defendant denies any allegation or inference that it has treated Plaintiff unlawfully or is liable to Plaintiff for any damages.**

## PARTIES

2. Plaintiff VJ Brandon Goichai resides in the City of Rochester Hills, in Oakland County, State of Michigan.

**ANSWER: Defendant neither admits nor denies the allegations in Paragraph 2 as to where Plaintiff currently resides as it is without knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore, leaves Plaintiff to his proofs.**

3. Defendant Ascentium Capital LLC is a limited liability company organized under the laws of the State of Delaware with a registered office in Lansing, Michigan.

**ANSWER: Defendant denies the allegations in Paragraph 3. Answering further, Ascentium Capital is no longer a separate, legal entity as of May 2023.**

4. Defendant Regions Bank is a for-profit corporation organized under the laws of the State of Alabama with a registered office in Lansing, Michigan.

**ANSWER: Defendant admits only the allegations in Paragraph 4 that it has a**

2

**registered office in Lansing, Michigan and denies the remaining allegations. Answering further, Regions Bank states that it is bank incorporated under the Code of Alabama.**

5. Plaintiff had been employed by Defendant in the City of Rochester Hills, in Oakland County, State of Michigan, as a Vice-President of Sales-Account Executive.

**ANSWER: Defendant Regions Bank admits the allegations in Paragraph 5.**

### JURISDICTION AND VENUE

6. The amount in controversy, excluding any costs, attorney fees, or interest, exceeds Twenty-Five Thousand ($25,000.00) Dollars.

**ANSWER: Answering Paragraph 6, Defendant does not contest the jurisdiction of the United States District Court for the Eastern District of Michigan and denies any and all allegations and inferences that it has violated any laws or is liable to Plaintiff for any damages.**

7. This Court has subject matter jurisdiction over Plaintiff's claims under and pursuant to MCLA §600.605; MCLA § 37. 1606; and MCLA § 37.2801.

**ANSWER: Answering Paragraph 7, Defendant does not contest the subject matter jurisdiction of the United States District Court for the Eastern District of Michigan and denies any and all allegations and inferences that it has violated any laws or is liable to Plaintiff for any damages.**

8. This Court has personal jurisdiction over Plaintiff because he resides in Oakland County, Michigan.

3

**ANSWER: Answering Paragraph 8, Defendant does not contest the Court's personal jurisdiction over Plaintiff and denies any and all allegations and inferences that it has violated any laws or is liable to Plaintiff for any damages.**

9. This Court has personal jurisdiction over each Defendant because it maintains offices and facilities and engages in regular and systematic business and other activities within Oakland County, Michigan, it employed Plaintiff in Oakland County, Michigan, and the acts and omissions attributed to Defendant that give rise to Plaintiff's claims occurred within Oakland County, Michigan.

**ANSWER: Answering Paragraph 9, Defendant does not contest the personal jurisdiction of the Court over Defendant and denies any and all allegations and inferences that it has violated any laws or is liable to Plaintiff for any damages.**

10. Venue is proper in this Circuit Court pursuant to MCLA §600.1621 and MCLA §§ 37. 1606, 37.2801 and because Plaintiff resides in and Defendant operates within Oakland County, Michigan, and the acts and omission's attributed to Defendant that give rise to Plaintiff's claims occurred within Oakland County, Michigan.

**ANSWER: Answering Paragraph 10, Defendant does not contest venue in the United States District Court for the Eastern District of Michigan and denies any and all allegations and inferences that it has violated any laws or is liable to Plaintiff for any damages.**

11. Venue also is convenient in this circuit court location.

**ANSWER: Answering Paragraph 11, Defendant does not contest venue in the United States District Court for the Eastern District of Michigan and denies any**

4

and all allegations and inferences that it has violated any laws or is liable to Plaintiff for any damages.

## STATEMENT OF FACTS

12. Mr. Goichai is a 59-year-old Caucasian American male who was born on June 6, 1966.

**ANSWER: Defendant neither admits nor denies the allegations in Paragraph 12 as it is without knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore, leaves Plaintiff to his proofs.**

13. Ascentium is a division of Regions Bank and a commercial lender which provides equipment and technology financing and leasing solutions for manufacturers, distributors, resellers, and franchise organizations in addition to direct financing options for small, mid-sized, and Fortune 500 companies.

**ANSWER: Defendant admits the allegations in Paragraph 13.**

14. Mr. Goichai commenced employment with Ascentium on April 1, 2017, as a Vice-President of Sales-Account Executive, a position that was primarily remote.

**ANSWER: Defendant admits the allegations in Paragraph 14.**

15. Mr. Goichai's duties and responsibilities primarily pertained to procurement of business relationships for the benefit of Ascentium with manufacturers, dealers, and resellers in the audio-visual industry and referrals of their customers and end users who owned or ran businesses for equipment financing through Ascentium ("Audio-visual business").

**ANSWER: Defendant admits only the allegations in Paragraph 15 that Plaintiff's duties and responsibilities included the procurement of business relationship in the audio-visual industry. Answering further, Defendant denies**

**the remaining allegations, including any allegation or inference that Plaintiff was limited to just pursuing business in the audio-visual industry.**

16. Mr. Goichai annual compensation in this role consisted primarily of annual salary and bonuses and minimum commissions based on business volume and he was eligible for Ascentium health, retirement, and other benefits.

**ANSWER: Defendant neither admits nor denies the allegations in Paragraph 16 as it is without knowledge or information sufficient to form a belief as to the truth of the allegations because of the lack of a specified time period, and therefore, leaves Plaintiff to his proofs.**

17. Mr. Goichai was well qualified for his former job as Ascentium Vice-President of Sales-Account Executive and had routinely received praise from his supervisor and members of Ascentium sales teams for his knowledge of the Audio-visual industry and the vendor relationships he had procured and maintained on behalf of Ascentium.

**ANSWER: Defendant neither admits nor denies the allegations in Paragraph 17 as it is without knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore, leaves Plaintiff to his proofs.**

18. Regions Bank acquired Ascentium approximately 2 years ago.

**ANSWER: Defendant denies the allegations in Paragraph 18.**

19. Ascentium's former management and owners continued to operate and manage Ascentium for approximately 1 year after its acquisition by Regions Bank and Regions Banks assumed control of Ascentium operations and management thereafter.

**ANSWER: Defendant denies the allegations in Paragraph 19.**

20. During the period from April 1, 2017, through the date when Regions

6

Bank took control of Ascentium's operations, Mr. Goichai performed the duties and responsibilities of his position in a satisfactory, effective, or better manner, had not been subjected to warnings or discipline of any kind ostensibly due to poor performance or misconduct of any kind, and he continued to routinely receive praise from his supervisor and members of Ascentium sales teams for his knowledge of the Audio-visual industry and the vendor relationships he had procured and maintained on behalf of Ascentium.

**ANSWER: Defendant neither admits nor denies the allegations in Paragraph 20 as it is without knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore, leaves Plaintiff to his proofs.**

21.    After it assumed control of Ascentium's operations and management from Ascentium's former management and owners, Regions Bank thereafter commenced a pattern and practice of terminating the employment relationships of Ascentium sales managers, account executives, sales team members, and other employees who were over the age of 50 or compelling their resignations or retirements because of their ages and then hiring, assigning, and/or promoting employees who were younger and less qualified and experienced than them to replace them.

**ANSWER:  Defendant denies the allegations in Paragraph 21.**

22.    In January or February, 2024, not long after it assumed control of Ascentium's operations and management from Ascentium's former management and owners, Regions Bank replaced Ascentium's Director of Sales with Craig Colling, who was younger and less qualified and experienced than Mr. Goichai and had previously stolen accounts and interfered with Mr. Goichai's business relationships with and ability to close deals with manufacturers, dealers, and resellers in the audio visual and other industries and customers referred by them to Mr. Goichai for equipment financing through Ascentium.

**ANSWER:  Defendant denies the allegations in Paragraph 22.**

23.    After it assumed control of Ascentium's operations and management from Ascentium's former management and owners, Regions Bank terminated the employment relationships of many Ascentium sales managers, account executives, sales team members, and other employees who were over the age of 50 or compelled

7

their resignations or retirements because of their ages and replaced them with employees who were younger and less qualified and experienced than Mr. Goichai and whose annual compensation primarily consisted of commissions earned in accordance with Ascentium commissions plans as these existed from time to time.

**ANSWER: Defendant denies the allegations in Paragraph 23.**

24. The ability of Mr. Goichai to procure Audio-visual business related Ascentium financing historically had been impacted by the seasonal nature of most Audio-visual types of businesses, how the overall United States economy was performing at the time, and the interest rates that were to have been charged by Ascentium for Audio-visual business-related financing.

**ANSWER: Defendant denies the allegations in Paragraph 24.**

25. As a result, the annual volume of Ascentium Audio-visual business-related financing that Mr. Goichai historically had procured fluctuated on month-to-month basis.

**ANSWER: Defendant denies the allegations in Paragraph 25 in the manner and form pled.**

26. As a result, the volume of Ascentium Audio-visual business-related financing that Mr. Goichai historically had procured typically was higher during the period between May and September of any year.

**ANSWER: Defendant denies the allegations in Paragraph 26.**

27. Ascentium and Regions Bank management, including Mr. Colling and Mr. Pat Kistler, Mr. Goichai's immediate supervisor, knew that the ability of Mr. Goichai to procure Audio-visual business related Ascentium financing historically had been impacted by the seasonal nature of most Audio-visual types of businesses, how the overall United States economy was performing at the time, and the interest rates that were to have been charged by Ascentium for Audio-visual business-related financing.

**ANSWER: Defendant denies the allegations in Paragraph 27.**

28. Ascentium and Regions Bank management, including Messrs. Colling

8

and Kistler, knew that the annual volume of Ascentium Audio-visual business-related financing that Mr. Goichai historically had procured fluctuated on month-to-month basis for these reasons.

**ANSWER:** **Defendant denies the allegations in Paragraph 28.**

29. Ascentium and Regions Bank management, including Messrs. Colling and Kistler, knew that the volume of Ascentium Audio-visual business-related financing that Mr. Goichai historically had procured typically was higher during the period between May and September of any year for these reasons.

**ANSWER:** **Defendant denies the allegations in Paragraph 29.**

30. During the period since January, 2024, Mr. Colling interfered with Mr. Goichai's business relationships with and ability to close deals with manufacturers, dealers, and resellers in the audio visual and other industries and customers referred by them for equipment financing through Ascentium because of Mr. Goichai's age and he steered business that Mr. Goichai had procured or for which he otherwise should have been given procurement credit to younger account executives or employees who received the credit instead of Mr. Goichai because of Mr. Goichai's age.

**ANSWER:** **Defendant denies the allegations in Paragraph 30.**

31. In January or February, 2024, not long after Mr. Colling was appointed as Ascentium's Director of Sales, Mr. Goichai complained to Mr. Colling about his interference with Mr. Goichai's business relationships with and ability to close deals with manufacturers, dealers, and resellers in the audio visual and other industries and customers referred by them for equipment financing through Ascentium and his tendency to steer business that Mr. Goichai had procured or for which he otherwise should have been given procurement credit to younger account executives or employees who received the credit instead of Mr. Goichai.

**ANSWER:** **Defendant denies the allegations in Paragraph 31.**

32. Mr. Colling dismissed Mr. Goichai's complaints and responded that based on Mr. Goichai's "years of experience" and "tenure" and as an "elder experienced" sales representative he should still be able to procure at least $1 million of business for Ascentium per month.

9

**ANSWER: Defendant denies the allegations in Paragraph 32.**

33.     Not long after Mr. Goichai complained to Mr. Colling, Mr. Colling again interfered with Mr. Goichai's business relationship with and ability to close a deal with a prospective Ascentium customer because of Mr. Goichai's age and he steered the business that Mr. Goichai would have procured or for which he otherwise should have been given procurement credit to a younger account executive or sales employee who received the credit instead of Mr. Goichai because of Mr. Goichai's age.

**ANSWER: Defendant denies the allegations in Paragraph 33.**

34.     During the period between January and June, 2024, when interest rates determinative of Mr. Goichai's ability to procure Audio-visual business related Ascentium financing were extremely high and the overall United States economy was under performing, Mr. Goichai requested that Mr. Kistler provide him with some good account leads to pursue.

**ANSWER: Defendant denies the allegations in Paragraph 34 in the manner and form pled.**

35.     Mr. Kistler was directed by Mr. Colling to ignore Mr. Goichai request because of Mr. Goichai's age and his intent to terminate Mr. Goichai's employment or compel his resignation or retirement because of his age.

**ANSWER: Defendant denies the allegations in Paragraph 36.**

36.     Mr. Colling instead forwarded hundreds of terrible account leads ostensibly for Mr. Goichai to pursue because of Mr. Goichai's age and his intent to terminate Mr. Goichai's employment or compel his resignation or retirement because of his age.

**ANSWER: Defendant denies the allegations in Paragraph 36.**

37.     During the summer, 2024, Mr. Goichai received a referral from a vendor with which he had a business relationship of a prospective Ascentium customer who was seeking $5 million dollars in financing.

**ANSWER: Defendant neither admits nor denies the allegations in Paragraph**

10

**37 as it is without knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore, leaves Plaintiff to his proofs.**

38.     Mr. Colling interfered with Mr. Goichai's ability to procure the business from the prospective customer because of Mr. Goichai's age and he steered the potential business that Mr. Goichai would have procured or for which he otherwise should have been given procurement credit to one or more younger account executives or sales employees who received the credit instead of Mr. Goichai because of Mr. Goichai's age.

**ANSWER:  Defendant denies the allegations in Paragraph 38.**

39.     Later that summer, 2024, Mr. Colling further interfered with Mr. Goichai's ability to procure Ascentium business from prospective customers because of Mr. Goichai's age when he steered many of Mr. Goichai's vendor accounts to one or more younger account executives or sales employees who received the credit instead of Mr. Goichai because of Mr. Goichai's age.

**ANSWER:  Defendant denies the allegations in Paragraph 39.**

40.     In October, 2024, Mr. Goichai was required to participate in a Teams call initiated by Mr. Colling for which Mr. Kistler also was in attendance during which he was told by Mr. Colling that he had decided to change Mr. Goichai's annual compensation, which had consisted primarily of annual salary and bonuses and minimum commissions based on business volume, to an annual compensation arrangement which was to have consisted of lower base salary with minimum commission eligibility, effective February, 2025.

**ANSWER:  Defendant denies the allegations in Paragraph 40 in the manner and form pled.**

41.     Mr. Colling had decided to change the annual compensation for which Mr. Goichai had been eligible because of Mr. Goichai's age and notified Mr. Goichai of his intent to do so because he wanted Mr. Goichai to resign from his employment with Ascentium and Regions Bank because of his age.

**ANSWER:  Defendant denies the allegations in Paragraph 41.**

11

42.     Mr. Goichai told Messrs. Colling and Kistler during the Teams meeting that he had objected to the intended decrease in his annual compensation and that he had to consider his options.

**ANSWER: Defendant neither admits nor denies the allegations in Paragraph 42 as it is without knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore, leaves Plaintiff to his proofs.**

43.     Although Mr. Goichai did not expressly accuse Mr. Colling of discrimination against him based on his age during the Teams meeting, Mr. Colling had understood and reasonably should have understood from the context that Mr. Goichai had objected to the planned decrease in his annual compensation because it was indicative of discrimination against him based on his age since:
- (a) Mr. Colling made this decision because of Mr. Goichai's age;
- (b) Mr. Goichai had been one of Ascentium's oldest and most experienced Account Executives and sales team members and had been receiving a much higher annual salary than younger Account Executives and sales team members because of his tenure and extensive experience; and
- (c) Mr. Colling had anticipated that the change in Mr. Goichai's compensation would have precipitated his resignation or retirement.

**ANSWER: Defendant denies the allegations in Paragraph 43 and its subparagraphs.**

44.     Indeed, Mr. Colling dismissed Mr. Goichai's objection, made a comment about Mr. Goichai's age, and reiterated statements he previously made to Mr. Goichai that based on Mr. Goichai's "years of experience" and "tenure" and as an "elder experienced" sales representative he should have been able to generate accounts for which he would earn commissions sufficient to mitigate his lost annual salary.

**ANSWER: Defendant denies the allegations in Paragraph 44.**

45.     Mr. Colling later required Mr. Kistler to issue an unjustified warning to Mr. Goichai about his alleged failure to satisfy an arbitrarily set sales quota for October, 2024, because of his age and in retaliation for Mr. Goichai's objection to

12

the planned decrease in his annual compensation because it was indicative of discrimination against him based on his age although Messrs. Colling and Kistler knew that: (a) the ability of Mr. Goichai to procure Audio-visual business related Ascentium financing historically had been impacted by the seasonal nature of most of these Audio-visual types of businesses, how the overall United States economy was performing at the time, and the interest rates that were to have been charged by Ascentium for Audio-visual business related financing and (b) the volume of Ascentium Audio-visual business related financing that Mr. Goichai historically had procured fluctuated on month to month basis as a result.

**ANSWER:  Defendant denies the allegations in Paragraph 45.**

46.     Mr. Colling required that Mr. Kistler issue the warning to Mr. Goichai because he wanted Mr. Goichai to resign from his employment with Ascentium and Regions Bank because of his age and his objections to the planned decrease in his annual compensation because it was indicative of discrimination against him based on his age.

**ANSWER:  Defendant denies the allegations in Paragraph 46.**

47.     Mr. Colling did not require Mr. Kistler to issue similar warnings to similarly situated, younger Ascentium account executives or sales employees whose sales procurement performance was worse than Mr. Goichai's or who did not meet their monthly sales quotas.

**ANSWER:  Defendant denies the allegations in Paragraph 47.**

48.     During the period after the Teams call in October, 2024, Mr. Colling continued to interfere with Mr. Goichai's business relationships with and ability to close deals with manufacturers, dealers, and resellers in the audio visual and other industries and customers referred by them for equipment financing through Ascentium because of Mr. Goichai's age and steered business that Mr. Goichai had procured or for which he otherwise should have been given procurement credit to younger account executives or employees who received the credit instead because of Mr. Goichai's age.

**ANSWER:  Defendant denies the allegations in Paragraph 48.**

49.     Mr. Colling required Mr. Kistler to issue a notice to Mr. Goichai on November 4, 2024, that Mr. Goichai's employment was to have been terminated by

13

the end of November, 2024, ostensibly because his pipeline of new business procurement was trending below an arbitrarily set quota for November, 2024, that had been imposed upon Mr. Goichai although Mr. Colling had continued to interfere with Mr. Goichai's business relationships with and ability to close deals with manufacturers, dealers, and resellers in the audio visual and other industries and customers referred by them to Mr. Goichai for equipment financing through Ascentium because of Mr. Goichai's age, and in retaliation for his objections to the planned decrease in his annual compensation because of his age, and because Mr. Colling had intended to effectuate Mr. Goichai's employment termination or compel his resignation or retirement because of Mr. Goichai's age and in retaliation for his objections to the planned decrease in his annual compensation because of his age.

**ANSWER:** **Defendant denies the allegations in Paragraph 49.**

50.     Mr. Colling required Mr. Kistler to issue the notice to Mr. Goichai because he wanted Mr. Goichai to resign from his employment with Ascentium and Regions Bank because of his age and his objections to the planned decrease in his annual compensation because it was indicative of discrimination against him based on his age.

**ANSWER:** **Defendant denies the allegations in Paragraph 50.**

51.     Despite Mr. Colling's continued interference with Mr. Goichai's existing and prospective business relationships since January, 2024, Mr. Goichai exceeded the procurement quotas he was expected to achieve during November and December, 2024.

**ANSWER:** **Defendant denies the allegations in Paragraph 51.**

52.     Despite Mr. Colling's continued interference with Mr. Goichai's existing and prospective business relationships since January, 2024, Mr. Goichai missed his 2024 annual procurement quota by no more than four percent (4%).

**ANSWER:** **Defendant denies the allegations in Paragraph 52.**

53.     Similarly situated, younger Ascentium account executives or sales employees whose sales procurement performance was worse than Mr. Goichai's or who also missed their 2024 monthly and annual procurement quotas were not subjected to warnings or threats of employment termination.

14

**ANSWER: Defendant denies the allegations in Paragraph 53.**

54.     During the period between October 1, 2024, and February 12, 2025, Mr. Colling had continued to interfere with Mr. Goichai's ability to procure business from existing and prospective customers because of Mr. Goichai's age and in retaliation for his objections to the planned decrease in his annual compensation because of his age.

**ANSWER: Defendant denies the allegations in Paragraph 54.**

55.     During the period between October 1, 2024, and February 12, 2025, Mr. Colling had continued to steer potential business that Mr. Goichai would have procured or for which he otherwise should have been given procurement credit to younger Ascentium account executives or sales employees who received the credit instead of Mr. Goichai because of Mr. Goichai's age and in retaliation for his objections to the planned decrease in his annual compensation because of his age.

**ANSWER: Defendant denies the allegations in Paragraph 55.**

56.     On February 12, 2025, Mr. Goichai was notified that his Ascentium employment had been terminated ostensibly because of his failure to achieve his.

**ANSWER: Defendant admits only the allegations in Paragraph 56 that it notified Plaintiff of his termination of employment on February 12, 2025 because of his unsatisfactory performance, and except as so stated, Defendant denies the remaining allegations and any inference that it treated Plaintiff unlawfully or is liable to Plaintiff for any damages.**

57.     Similarly situated, younger Ascentium account executives or sales employees whose sales procurement performance was worse than Mr. Goichai's or who also missed their 2024 monthly and annual procurement quotas and sales quotas for January 2025, were not subjected to employment termination.

**ANSWER: Defendant denies the allegations in Paragraph 57.**

58.     Mr. Goichai's age was a factor in the decision to terminate his

15

employment and Defendant's reason for his employment termination is a pretext for discrimination against him based on his age because:

(a) Mr. Goichai had been deemed to have consistently performed the duties and responsibilities of his position in a satisfactory, effective, or better manner, had not been subjected to warnings or discipline of any kind ostensibly due to poor performance or misconduct of any kind, and he had routinely received praise from his supervisor and members of Ascentium sales teams for his knowledge of the Audio-visual industry and the vendor relationships he had procured and maintained on behalf of Ascentium until Mr. Colling became Ascentium's Sales Director.

(b) Messrs. Coning and Kistler and other Ascentium management and human resources representative knew that: (i) the ability of Mr. Goichai to procure Audio-visual business related Ascentium financing historically had been impacted by the seasonal nature of most of these Audio-visual types of businesses, how the overall economy was performing at the time, and the interest rates that were to have been charged by Ascentium for Audio-visual business related financing and (ii) the volume of Ascentium Audio-visual business related financing that Mr. Goichai historically had procured fluctuated on month to month basis as a result;

(c) During the period since January 1, 2024, and between October 1, 2024, and February 12, 2025, in particular, Mr. Colling had continued to interfere with Mr. Goichai's ability to procure business from existing and prospective customers and steered the potential business that Mr. Goichai would have procured or for which he otherwise should have been given procurement credit to younger account executives or sales employees who received the credit instead of Mr. Goichai because of Mr. Goichai's age and in retaliation for his objections to the planned decrease in his annual compensation because of his age;

(d) Mr. Colling had previously required Mr. Kistler issue the warning to Mr. Goichai and notice threatening his employment termination because he had wanted Mr. Goichai to resign from his employment with Ascentium and Regions Bank because of his age and his objections to the planned decrease in his annual compensation because it was indicative of discrimination against him based on his age;

(e) Mr. Goichai was treated differently than similarly situated, younger Ascentium account executives or sales employees who also missed

their 2024 monthly and annual procurement quotas, but who did not receive warnings, notices threatening employment termination, or have their employment terminated; and

(f) Mr. Goichai was treated differently than similarly situated, younger Ascentium account executives or sales employees who also missed their 2024 and 2025 monthly and annual procurement quotas, but whose employment was not terminated.

**ANSWER: Defendant denies the allegations in Paragraph 58 and its subparagraphs.**

59. Mr. Goichai's complaints to Messrs. Colling and Kistler about age discrimination was a factor in the decision to terminate his employment and Defendant's reason for his employment termination is a pretext for retaliation against him because:

(a) Mr. Goichai had been deemed to have consistently performed the duties and responsibilities of his position in a satisfactory', effective, or better manner, had not been subjected to warnings or discipline of any kind ostensibly due to poor performance or misconduct of any kind, and he had routinely received praise from his supervisor and members of Ascentium sales teams for his knowledge of the Audio-visual industry and the vendor relationships he had procured and maintained on behalf of Ascentium until Mr. Colling became Ascentium's Sales Director.

(b) Messrs. Colling and Kistler and other Ascentium management and human resources representative knew that: (i) the ability of Mr. Goichai to procure Audio-visual business related Ascentium financing historically had been impacted by the seasonal nature of most of these Audio-visual types of businesses, how the overall economy was performing at the time, and the interest rates that were to have been charged by Ascentium for Audio-visual business related financing and (ii) the volume of Ascentium Audio-visual business related financing that Mr. Goichai historically had procured fluctuated on month to month basis as a result;

(c) During the period since January 1, 2024, and between October 1, 2024, and February 12, 2025, in particular, Mr. Colling had continued to interfere with Mr. Goichai's ability to procure business from existing and prospective customers and steered the potential business that Mr. Goichai would have procured or for which he

17

otherwise should have been given procurement credit to younger account executives or sales employees who received the credit instead of Mr. Goichai because of Mr. Goichai's age and in retaliation for his objections to the planned decrease in his annual compensation because of his age;

(d) Mr. Colling had previously required Mr. Kistler issue the warning to Mr. Goichai and notice threatening his employment termination because he had wanted Mr. Goichai to resign from his employment with Ascentium and Regions Bank because of his age and his objections to the planned decrease in his annual compensation because it was indicative of discrimination against him based on his age;

(e) Mr. Goichai was treated differently than similarly situated, younger Ascentium account executives or sales employees who also missed their 2024 monthly and annual procurement quotas, but who did not receive warnings, notices threatening employment termination, or have their employment terminated; and

(f) Mr. Goichai was treated differently than similarly situated, younger Ascentium account executives or sales employees who also missed their 2024 and 2025 monthly and annual procurement quotas, but whose employment was not terminated.

**ANSWER: Defendant denies the allegations in Paragraph 59 and its subparagraphs.**

### COUNT I:
### DISCRIMINATION AND INTERFERENCE
### BASED ON AGE IN VIOLATION OF THE ELCRA

60. Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter reiterated paragraph by paragraph.

**ANSWER: Defendant incorporates its responses to the above paragraphs as if fully restated in response to Paragraph 60.**

61. At all times relevant, each Defendant was an "employer" of Plaintiff as this term is defined by section 201(a) of the Michigan Elliott-Larsen Civil Rights Act, MCLA §§37.2101, *et seq.* ("ELCRA"). *See* MCL §37.2201(a).

**ANSWER: Defendant neither admits nor denies the allegations in Paragraph 61 as they constitute a legal conclusion to which no response is required. To the extent a response is required, Defendant admits that it employed Plaintiff.**

62.     At all times relevant herein, under the ELCRA, Plaintiff had a right to employment with Defendant free from discrimination against him based on his age.

**ANSWER: Defendant neither admits nor denies the allegations in Paragraph 62 as they constitute a legal conclusion to which no response is required. To the extent a response is required, Defendant denies any allegation or inference that it has treated Plaintiff unlawfully or is liable to Plaintiff for any damages.**

63.     Defendant through their representatives illegally, maliciously, and wrongfully conspired with each other with the intent to and for the illegal purpose of discriminating against Plaintiff on account of his age and depriving Plaintiff of his rights under the ELCRA when they:
- A. interfered with Plaintiff's ability to procure Ascentium business;
- B. decided to reduce his annual compensation although they had interfered with Plaintiff's ability to procure Ascentium business;
- C. issued warnings to him about his alleged failure to achieve monthly or annual sales quotas although they had interfered with Plaintiff's ability to procure Ascentium business;
- D. threatened him with employment termination in November, 2024, ostensibly because he had not been achieving monthly or annual sales quotas although they had interfered with Plaintiffs ability to procure Ascentium business; and
- E. terminated his employment, effective February 12, 2025, ostensibly because he had not achieved monthly or annual sales quotas although they had interfered with Plaintiff's ability to procure Ascentium business.

**ANSWER: Defendant denies the allegations in Paragraph 63 and its subparagraphs.**

19

64. The discriminatory practices at issue were intentional and willful and were committed with malice or with reckless indifference to Plaintiffs rights.

**ANSWER: Defendant denies the allegations in Paragraph 64.**

65. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has sustained damages, including, but not limited to, loss of past, present and future salary, commissions, bonuses, incentive compensation, and earning capacity; loss of the value retirement, health care, 401(k), and other benefits; mental and emotional distress, anguish, and anxiety, humiliation and embarrassment; loss of the enjoyment of the ordinary pleasures of everyday life; and loss of the ability to pursue gainful employment of choice.

**ANSWER: Defendant denies the allegations in Paragraph 65.**

**COUNT II:**
**RETALIATION IN VIOLATION OF THE ELCRA**

66. Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter reiterated paragraph by paragraph.

**ANSWER: Defendant incorporates its responses to the above paragraphs as if fully restated in response to Paragraph 66.**

67. At all times relevant, Defendant was an "employer" of Plaintiff as this term is defined by section 201(a) of the Michigan Elliott-Larsen Civil Rights Act, MCLA §§37.2101, *et seq.* ("ELCRA"). *See* MCL §37.2201(a).

**ANSWER: Defendant neither admits nor denies the allegations in Paragraph 67 as they constitute a legal conclusion to which no response is required. To the extent a response is required, Defendant admits that it employed Plaintiff.**

68. At all times relevant herein, under the ELCRA, Plaintiff had a right to employment with Defendant free from retaliation because he opposed discrimination against him based on his age.

**ANSWER: Defendant neither admits nor denies the allegations in Paragraph**

20

**68 as they constitute a legal conclusion to which no response is required. To the extent a response is required, Defendant denies any allegation or inference that it has treated Plaintiff unlawfully or is liable to Plaintiff for any damages.**

69.     Plaintiffs articulated complaint and objection to Messrs. Colling and Kistler during the Teams meeting about the planned decrease in his annual compensation was activity protected by the ELCRA because Mr. Colling had understood and reasonably should have understood from the context that Plaintiff was complaining about age discrimination since:

      A. Mr. Colling made this decision because of Mr. Goichai's age;

      B. Mr. Goichai had been one of Ascentium's oldest and most experienced Account Executives and sales team members and had been receiving a much higher annual salary than younger Account Executives and sales team members because of his tenure and extensive experience;

      C. Mr. Colling had anticipated that the change in Mr. Goichai's compensation would have precipitated his resignation or retirement; and

      D. Mr. Colling dismissed Mr. Goichai's complaint and objection, made a comment about Mr. Goichai's age, and reiterated statements he previously made to Mr. Goichai that based on Mr. Goichai's "years of experience" and "tenure" and as an "elder experienced" sales representative he should have been able to generate accounts for which he would earn commissions sufficient to mitigate his lost annual salary.

**ANSWER: Defendant denies the allegations in Paragraph 63 and its subparagraphs.**

70.     Defendant through its representatives illegally, maliciously, and wrongfully conspired with each other with the intent to and for the illegal purpose of retaliating against Plaintiff because of his opposition and other protected activity and to deprive Plaintiff of his rights under the ELCRA when they:

      A. interfered with Plaintiff's ability to procure Ascentium business;

      B. decided to reduce his annual compensation although they had interfered with Plaintiff's ability to procure Ascentium business;

      C. issued warnings to him about his alleged failure to achieve monthly

21

or annual sales quotas although they had interfered with Plaintiff's ability to procure Ascentium business;

D. threatened him with employment termination in November, 2024, ostensibly because he had not been achieving monthly or annual sales quotas although they had interfered with Plaintiff's ability to procure Ascentium business; and

E. terminated his employment, effective February 12, 2025, ostensibly because he had not achieved monthly or annual sales quotas although they had interfered with Plaintiff's ability to procure Ascentium business.

**ANSWER: Defendant denies the allegations in Paragraph 70 and its subparagraphs.**

71. The retaliatory practices at issue were intentional and willful and were committed with malice or with reckless indifference to Plaintiff's rights.

**ANSWER: Defendant denies the allegations in Paragraph 71.**

72. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has sustained damages, including, but not limited to, loss of past, present and future salary, commissions, bonuses, incentive compensation, and earning capacity; loss of the value retirement, health care, 401(k), and other benefits; mental and emotional distress, anguish, and anxiety, humiliation and embarrassment; loss of the enjoyment of the ordinary pleasures of everyday life; and loss of the ability to pursue gainful employment of choice.

**ANSWER: Defendant denies the allegations in Paragraph 72.**

## GENERAL DENIAL

Except as expressly admitted in this Answer, Defendant expressly denies any allegations in Plaintiff's Complaint that require a responsive pleading.

## AFFIRMATIVE AND OTHER DEFENSES

Defendant submits the following as its affirmative and other defenses to the

allegations contained in Plaintiff's Complaint, but Defendant does not assume the burden of proof on any such defenses, except as required by applicable law with respect to the particular defense asserted:

1.      Plaintiff's Complaint, in whole or in part, fails to state a claim upon which relief may be granted.

2.      Plaintiff's claims may be barred, in whole or in part, by the doctrines of waiver, laches, estoppel, unclean hands, accord, payment, *in pari delicto*, faithless servant, satisfaction, or release.

3.      Plaintiff's claims may be barred, in whole or in part, by the applicable statutory or contractual limitations periods.

4.      Plaintiff's claims may be barred, in part or in whole, by his failure to exhaust his internal and external remedies and/or failure to meet the applicable jurisdictional requirements.

5.      Any actions taken with regard to Plaintiff were taken for legitimate and non-discriminatory, non-retaliatory reasons and in accordance with all state and federal laws and regulations.

6.      The injuries, losses, or damages sustained by Plaintiff, if any, were caused in whole or in part by the acts or omissions of Plaintiff.

7.      Upon information and belief, Plaintiff has failed, in whole or in part, to mitigate his alleged losses, although his entitlement to any such alleged losses is

23

expressly denied.

8. Plaintiff's claims, in whole or in part, may be barred by the exclusive remedy provision of the Michigan Workers' Disability Compensation Act, MCL 418.101, *et seq.*

9. Plaintiff's claims are barred because Plaintiff did not provide Defendant with notice and/or the opportunity to investigate.

10. Plaintiff's claims are barred because Defendant exercised reasonable care to prevent and promptly correct any alleged discriminatory/harassing behavior, including but not limited to taking steps to prevent discrimination/harassment in the workplace, and taking immediate and appropriate corrective action reasonably calculated to end any alleged unlawful employment practices.

11. Any claim for relief must be set off or reduced by wages; compensation; pay and benefits; other earnings or remunerations; profits; and benefits received by Plaintiff; and/or any applicable statutory caps or limitations on recovery, including any such remuneration gained through fraudulent or otherwise improper means.

12. To the extent discovery may disclose such information, Plaintiff's Complaint and each alleged cause of action therein may be barred in whole or in part by the doctrine of after-acquired evidence, or such doctrine may limit or eliminate Plaintiff's alleged damages, or otherwise preclude his claims.

Defendant reserves the right to amend its Answer to add additional or other

24

defenses as they may become known through discovery.

## **RELIEF REQUESTED**

Wherefore, Defendant requests that this Court deny Plaintiff the relief requested; dismiss the Complaint in its entirety with prejudice; and award Defendant its costs and attorneys' fees incurred in defending against this action, plus any other relief, legal or equitable, this Court deems appropriate.

Respectfully submitted,
JACKSON LEWIS P.C.

*/s/Katherine J. Van Dyke*
Katherine J. Van Dyke (P62806)
Peter J. Lochbiler (P85641)
2000 Town Center Dr., Suite 1650
Southfield, MI 48075
(248) 936-1900
katherine.vandyke@jacksonlewis.com
peter.lochbiler@jacksonlewis.com

Dated: June 6, 2025        Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

On this day June 6, 2025, the undersigned did cause to be filed the foregoing document with the Court using the CM/ECF system, which will send notice of its filing to all counsel of record.

*/s/Katherine J. Van Dyke*
Katherine J. Van Dyke (P62806)

4936-8354-5674, v. 1