Xitlaly Estrada (SBN 333403)
Ava Claypool (SBN 327059)
**Baker & Hostetler LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone: 310-979-8430
Email: *xestrada@bakerlaw.com*
*aclaypool@bakerlaw.com*

Michael D. Gannon (*pro hac vice*)
Katharine H. Walton (*pro hac vice*)
**Baker & Hostetler LLP**
One North Wacker Drive, Suite 3700
Chicago, IL 60606
Telephone: 312-416-6200
Email: *mgannon@bakerlaw.com*
*kwalton@bakerlaw.com*

*Attorney for Defendant*
WASHWORLD, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

REGIONS BANK, an Alabama State Bank dba ASCENTIUM CAPITAL,

Plaintiff,

v.

CAR WASH MANAGEMENT, LLC, CAR WASH MANAGEMENT, LLC, WEST COVINA CAR WASH LLC, JOSE RENE ORTIZ, ANDREW PAUL WILLIAMS, WASHWORLD, INC., DOES 1-100, inclusive,

Defendants.

JOSE RENE ORTIZ,

Cross Claimant,

v.

ANDREW PAUL WILLIAMS, CAR WASH MANAGEMENT, LLC, CAR WASH MANAGEMENT, LLC, WASHWORLD, INC., and DOES 1 to 35, inclusive,

Cross Defendants.

WASHWORLD, INC.,

Plaintiff,

v.

Case No.: 2:25-cv-00359-CAS-KS

**WASHWORLD, INC.'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS**

DATE: December 1, 2025
TIME: 10:00 AM
CTRM: 8D

REGIONS BANK D/B/A
ASCENTIUM CAPITAL,

Counter Defendant.

WASHWORLD, INC.,

Cross Claimant,

v.

CAR WASH MANAGEMENT, LLC

Cross Defendant.

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................... 1

II. STATEMENT OF FACTS ....................................................................... 1

III. LEGAL STANDARD ............................................................................ 3

IV. ARGUMENT .......................................................................................... 3

    A.  Ascentium's Motion Fails to Apply Rule 12(b)(6)'s Standard ............ 3
    B.  Ascentium's Arguments Are Underdeveloped ..................................... 3
    C.  Washworld Has Sufficiently Alleged Breach of Contract ................... 4
    D.  Washworld Has Sufficiently Alleged A Breach of the Covenant of Good Faith and Fair Dealing ....................................................... 6
    E.  Washworld Has Sufficiently Alleged Negligence .............................. 8

        1.  Wisconsin Law Applies ................................................................. 8
        2.  Washworld's Claim Survives Under Wisconsin Law ............. 11
        3.  Even if California Law Applies, Washworld's Claim Still Survives .................................................................................. 12

    F.  Ascentium's Request For a More Definite Statement Should Be Denied ............................................................................................ 14
    G.  Declaration ....................................................................................... 15

V.  CONCLUSION ...................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abogados v. AT&T, Inc.*,
   223 F.3d 932 (9th Cir. 2000) ................................................................9

*Alvarado v. Sersch*,
   262 Wis. 2d 74 (Wis. 2003)................................................................10

*Basch v. Bank of Am. Nat. Tr. & Sav. Ass'n*,
   22 Cal. 2d 316 (1943) ........................................................................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................3

*Brandenburg v. Briarwood Forestry Servs., LLC*,
   354 Wis. 2d 413 (2014) ......................................................................11

*California Dep't of Toxic Substances Control v. NL Indus., Inc.*,
   No. 220CV11293SVWAGR, 2021 WL 6496813 (C.D. Cal. Dec.
   22, 2021) ...............................................................................................3

*Digi Fama LLC v. SnapNHD, LLC*,
   No. CV2011792RSWLJEMX, 2021 WL 8773299 (C.D. Cal. Sept.
   15, 2021) .............................................................................................16

*Drinkwater v. Am. Fam. Mut. Ins. Co.*,
   290 Wis. 2d 642 (2006) ......................................................................10

*Elation Sys., Inc. v. Fenn Bridge LLC*,
   71 Cal. App. 5th 958 (2021) .................................................................6

*Fields v. QSP, Inc.*,
   No. CV 10-5772 CAS, 2011 WL 1375286 (C.D. Cal. Apr. 8, 2011) ...................7

*Fierro v. Cap. One, N.A.*,
   620 F. Supp. 3d 1105 (S.D. Cal. 2022)..................................................6

*Hegyes v. Unjian Enters., Inc.*,
   234 Cal. App. 3d 1103 (Cal. Ct. App. 1991).......................................10

ii

*Hornback v. Archdiocese of Milwaukee*,
 313 Wis. 2d 294 (Wis. 2009) ......................................................................9, 10

*Ileto v. Glock*,
 349 F.3d 1191 (9th Cir. 2003) ...........................................................................14

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
 313 U.S. 487 (1941).............................................................................................9

*Ladd v. Cnty. of San Mateo*,
 12 Cal. 4th 913 (Cal. 1996)..................................................................................9

*Mantra Band, LLC v. Circoli Inc.*,
 No. 819CV00464JLSADS, 2019 WL 8108728 (C.D. Cal. Sept. 30,
 2019) ....................................................................................................................4

*McCann v. Foster Wheeler LLC*,
 48 Cal. 4th 68 (2010) .....................................................................................9, 11

*McGhee v. Arabian Am. Oil Co.*,
 871 F.2d 1412 (9th Cir. 1989) .............................................................................9

*Moss v. U.S. Secret Serv.*,
 572 F.3d 962 (9th Cir. 2009) .............................................................................16

*Nymark v. Heart Fed. Sav. & Loan Assn.*,
 231 Cal. App. 3d 1089 (Cal. Ct. App. 1991)......................................................14

*Oasis W. Realty, LLC v. Goldman*,
 51 Cal. 4th 811 (2011) ........................................................................................5

*Panacci v. A1 Solar Power, Inc.*,
 No. 15–CV–00532–JCS, 2015 WL 3750112 (N.D. Cal. June 15,
 2015) ..................................................................................................................15

*Pareto v. FDIC*,
 139 F.3d 696 (9th Cir. 1998) ...............................................................................3

*Patton v. Cox*,
 276 F.3d 493 (9th Cir. 2002) ...........................................................................8, 9

iii

*PSA Grp., LLC v. Nations Transaction Servs., Inc.*,
  Case No. CV 10-1220 CAS (JEMx), 2010 BL 388007 (C.D. Cal. July 28, 2010)..................................................................................................3

*QDOS, Inc. v. Signature Fin., LLC*,
  17 Cal. App. 5th 990 (2017) .................................................................................13

*Reichert v. Gen. Ins. Co.*,
  68 Cal. 2d. 822 (1968) ...........................................................................................5

*Robbins v. Coca-Cola-Co.*,
  No. 13–CV–132–IEG NLS, 2013 WL 2252646 (S.D.Cal. May 22, 2013) .................................................................................................................15

*Sherman v. Evel, Inc.*,
  No. 2:23-CV-00664-JAD-EJY, 2024 WL 6823647 (D. Nev. Apr. 9, 2024) ..............................................................................................................4

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) .................................................................................3

*Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*,
  14 Cal. App. 4th 637 (1993) ..................................................................................9

*StreamCast Networks, Inc. v. IBIS LLC*,
  No. CV 05-04239, 2006 WL 5720345 (C.D. Cal. May 2, 2006).........................6

*Sumnicht v. Toyota Motor Sales, U.S.A., Inc.*,
  121 Wis. 2d 338 (1984) ........................................................................................12

*Velasquez v. HSBC Fin. Corp.*,
  No. 08-4592 SC, 2009 WL 112919 (N.D. Cal. Jan. 16, 2009) ...........................15

*WB Music Corp. v. Future Today, Inc.*,
  No. 2:18-cv-01238-CAS(FFMx), 2018 WL 4156589 (C.D. Cal. Aug. 27, 2018) ...........................................................................................................15

**Statutes**

Cal. Civ. Code § 3360................................................................................................6

**Rules**

C.D. Cal. L.R. 7-5 ...................................................................................................1, 4

C.D. Cal. L.R. 7-7 ......................................................................................................15

Fed. R. Civ. P. 7(b) ...............................................................................................1, 4

Fed. R. Civ. P. 8(d) ...............................................................................................5, 6

Fed. R. Civ. P. 12(b)(6)..............................................................................................3

Fed. R. Civ. P. 12(e)...........................................................................................14, 15

Fed. R. Civ. P. 15(a)(2)..............................................................................................16

**Other Authorities**

Judicial Council of California Civil Jury Instructions No. 325 .................................6

WASHWORLD, INC.'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS
CASE NO.  2:25-CV-00359-CAS-KS

## I.    <u>INTRODUCTION</u>

Ascentium argues that Washworld's three counterclaims—for breach of contract, breach of the implied covenant and good faith and fair dealing, and negligence—fail to state a claim. But there are multiple fatal flaws with Ascentium's arguments. First, instead of accepting Washworld's allegations as true, Ascentium seeks to controvert Washworld's facts with Ascentium's own version of events and declarations inadmissible at this stage of the pleadings. Second, Washworld has sufficiently stated the elements of its claims, as explained below.  Finally, Ascentium has failed to satisfy the standard of Federal Rule of Civil Procedure 7(b) or Local Rule 7-5.  Indeed, the entirety of Ascentium's argument is contained in just 2.5 pages of argument with little authority.  For these reasons, Ascentium's motion to dismiss must be denied.

## II.    <u>STATEMENT OF FACTS</u>

Washworld manufactures car wash equipment and works with over 100 distributors nationwide (ECF No. 88 at Counterclaims, ¶¶ 6-7.) At times, Washworld's distributors use lenders like Ascentium to finance purchases (*Id.* ¶ 8.) To facilitate its distributors' independent transactions with Ascentium, on February 28, 2023, Washworld provided its bank details to Ascentium. (*Id.* ¶¶ 9-10.)

Ten months later, Ascentium entered into a separate legal agreement with Car Wash Management, the Equipment Financing Agreement, where Ascentium agreed to fund money for Car Wash Management to purchase equipment from AVW Equipment Company, Inc. ("AVW"). (*Id.* ¶¶ 11-21.) The equipment was to be installed at West Covina Car Wash LLC, a newly formed LLC. (*Id.* ¶¶ 12-13.) Car Wash Management's CEO, Andrew Williams, proposed Jose Rene Ortiz and West Covina Car Wash LLC as guarantors for the loan, claiming Ortiz owned 80% of Car Wash Management (*Id.* ¶¶ 17-18.) Ascentium failed to verify Car Wash Management's ownership structure and the ability of the transaction's financial

guarantors, Jose Rene Ortiz and West Covina Car Wash, to repay Car Wash Management's loan. (*Id.* ¶ 19.) Yet, on or around January 5, 2024, Ascentium agreed to finance $343,394.23. (*Id.* ¶¶ 15-16.)

On January 8, 2024, Car Wash Management certified it had received the equipment, and Ascentium later funded the loan and sent money to AVW. (*Id.* ¶¶ 20-21.)  In February 2024, Car Wash Management claimed AVW couldn't deliver the equipment that Car Wash Management had certified it had already received, and AVW returned the funds to Ascentium on March 5, 2024. (*Id.* ¶¶ 22-23.)

Car Wash Management then presented a Washworld order form to Ascentium, indicating a vendor change. (*Id.* ¶ 24.) Ascentium asked few, if any, questions about the change from AVW to Washworld despite Car Wash Management's prior certification that it was already in possession of AVW equipment in the Delivery and Acceptance Certificate that Car Wash Management completed as part of the loan. (*Id.* ¶¶ 25-26.) But Car Wash Management never sent the order estimate it provided to Ascentium to Washworld, nor did Car Wash Management place an order for the equipment specified in the order form (*Id.* ¶¶ 28-29.) Ascentium then amended the financing agreement for an increased total of $346,904.75 without verifying the order or communicating the order to Washworld. *Id.* ¶¶ 30–34). Ascentium also failed to request that Car Wash Management execute a new Delivery and Acceptance Certificate. (*Id.* ¶ 35.)

On March 11, 2024, Ascentium wired $309,054.80 to Washworld, but the payment lacked transaction details, an order number, identity of the end user, or the specific equipment order. (*Id.* ¶¶ 36-37.) The notification only identified Car Wash Management as the vendor. (*Id.* ¶ 38.) In March 2024, Car Wash Management had a pending order with Washworld, with final payment outstanding, which included Washworld equipment and ancillary equipment to be purchased from other manufacturers. (*Id.* ¶ 39.)

## III.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a counterclaim must set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a motion pursuant to Rule 12(b )( 6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## IV.    ARGUMENT

### A.    Ascentium's Motion Fails to Apply Rule 12(b)(6)'s Standard.

"When the legal sufficiency of a complaint (or counterclaim) is tested by a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the factual allegations in the counterclaim must be taken as true." *California Dep't of Toxic Substances Control v. NL Indus., Inc.*, No. 220CV11293SVWAGR, 2021 WL 6496813, at *1 (C.D. Cal. Dec. 22, 2021). Yet pages 4-6 of Ascentium's motion blatantly seek to contradict the factual allegations in Washworld's counterclaims with Ascentium's own version of facts or facts from the Declaration of Jerry Noon.  These contradictory allegations must not be considered. *PSA Grp., LLC v. Nations Transaction Servs., Inc.*, Case No. CV 10-1220 CAS (JEMx), 2010 BL 388007, at *3 (C.D. Cal. July 28, 2010) (Snyder, J.) ("Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, **a court cannot consider material outside of the complaint (*e.g.*, facts presented in briefs, affidavits, or discovery materials.**") (emphasis added).

### B.    Ascentium's Arguments Are Underdeveloped.

Ascentium moves to dismiss each of Washworld's three counterclaims. To do so, Ascentium's actual argument as to each claim is essentially a single paragraph.

3

Ascentium cites no case law in support of its breach of contract argument (apart from a case reciting the elements), three cases to support its argument against breach of the implied covenant of good faith and fair dealing, and one case in its argument against Washworld's negligence claim. But Federal Rule of Civil Procedure 7(b) requires a moving party to "**state with particularity** the grounds for seeking the order," and Local Rule 7-5 requires that a moving party serve and file "[a] brief **but complete memorandum** in support thereof **and the points and authorities upon which the moving party will rely**." *See* Fed. R. Civ. P. 7(b); L.R. 7-5. "A movant's failure to provide relevant legal authority in support of their argument is grounds for denial." *Mantra Band, LLC v. Circoli Inc.*, No. 819CV00464JLSADS, 2019 WL 8108728, at *4 (C.D. Cal. Sept. 30, 2019) ("Therefore, because the Court finds that counsel for Counter-Defendants failed to comply with Fed. R. Civ. P. 7(b) and C.D. Cal. L.R. 7-5(a), Counter-Defendants' Motion to dismiss for lack of standing is DENIED."); *Sherman v. Evel, Inc.*, No. 2:23-CV-00664-JAD-EJY, 2024 WL 6823647, at *6 (D. Nev. Apr. 9, 2024) ("Evel doesn't even begin to explain how this state statute spares these managers from this lawsuit, and Ninth Circuit law would seem to suggest otherwise. Regardless, this argument is so woefully underdeveloped that I decline to consider it at this juncture.").

## C. Washworld Has Sufficiently Alleged Breach of Contract

To prevail on a claim for breach of contract under California law, a plaintiff must establish "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811 , 821 (2011) (citing *Reichert v. Gen. Ins. Co.*, 68 Cal. 2d. 822, 830 (1968)).[1]

---

[1] As the Court did not decide which state's law applies to Ascentium's breach of contract claim, Washworld applies California law for purposes of this Opposition following the Court's determination that Ascentium had satisfied the elements of a breach of contract claim under California law. (ECF No. 86 at 23.)

Pursuant to Federal Rule of Civil Procedure 8(d), Washworld may state claims "regardless of consistency." Fed. R. Civ. P. 8(d). Here, Washworld expressly plead its claim for breach of contract to the extent that the fact-finder determines that the Funding Instructions constitute a valid contract. (ECF No. 88 at Counterclaims, ¶ 41.) This Court held that, at this stage of the case, Ascentium had sufficiently alleged a breach of contract based on the Funding Instructions. (ECF No. 86.)

Washworld alleges that "Washworld provided its bank account information to Ascentium, so that, if Ascentium had a transaction in the future where Washworld agreed to be the vendor, Ascentium could fund that transaction." (ECF No. 88 at Counterclaims, ¶ 10.) Washworld further alleges that "[t]en months later, Ascentium and Car Wash Management, LLC" entered into an Equipment Financing Agreement. (*Id.* ¶ 11.) Washworld then alleges that Washworld was excused from "remit[ing] any such funds to, or as directed by Ascentium" if Ascentium claims that Washworld was not entitled to funds, (ECF No. 1 at Ex. 4), because Ascentium materially breached the Funding Instructions by "failing to provide Washworld with a copy of the order form;" "failing to identify the end-customer on the ACH payment or in any other correspondence;" and "failing to identify the end-customer on the ACH payment or in any other correspondence." (ECF No. 88 at Counterclaims, ¶ 41.) Ascentium's failure to provide details related to its transaction with Car Wash Management breached the Funding Instructions. (*Id.* ¶ 42.)

Washworld alleges it has been damaged by Ascentium's breach. (*Id.* ¶ 44.) Ascentium argues "[f]inally, and most laughable, is that Washworld suffered damages." (ECF No. 102 at 8.) But arguing about Washworld's specific damages goes towards the merits of Washworld's claim. (*Id.*). What's more, although Washworld has sufficiently alleged resulting damages, California courts still award nominal damages "[w]hen a breach of duty has caused no appreciable detriment to the party affected" because the "failure to perform a contractual duty is, in itself, a

WASHWORLD, INC.'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS
CASE NO. 2:25-CV-00359-CAS-KS

legal wrong that is fully distinct from the actual damages." Cal. Civ. Code § 3360; *Elation Sys., Inc. v. Fenn Bridge LLC*, 71 Cal. App. 5th 958, 965 (2021); *StreamCast Networks, Inc. v. IBIS LLC*, No. CV 05-04239, 2006 WL 5720345 at *5 (C.D. Cal. May 2, 2006) ("Under Rule 8, the fact of damage-and the type of damage-can be alleged in conclusory terms.").

**D.      Washworld Has Sufficiently Alleged A Breach of the Covenant of Good Faith and Fair Dealing**

The factual elements necessary to establish a breach of the covenant of good faith and fair dealing are: (1) the parties entered into a contract; (2) Washworld fulfilled its obligation under the contract or was excused from performing; (3) all conditions required for Ascentium's performance occurred; (4) that Ascentium unfairly interfered with Washworld's right to receive the benefit of the contract; and (5) Ascentium was harmed by the Ascentium conduct. *See* Judicial Council of California Civil Jury Instructions No. 325; *Fierro v. Cap. One, N.A.*, 620 F. Supp. 3d 1105, 1109 (S.D. Cal. 2022).

Pursuant to Federal Rule of Civil Procedure 8(d), Washworld may state claims "regardless of consistency." Fed. R. Civ. P. 8(d). Here, Washworld expressly plead its claim for breach of the implied covenant of good faith and fair dealing to the extent that the fact-finder determines that the Funding Instructions constitute a valid contract. (ECF No. 88 at Counterclaims, ¶ 46.) Accordingly, contrary to Ascentium's assertion that Washworld "do[es] not state the terms of the contract upon which this Claim or cause of action is based," (ECF No. 102 at 8), Washworld has, in fact, stated the purported contract upon which its claim is based, the Funding Instructions.

"To allege an independent claim for breach of the implied covenant of good faith and fair dealing, a plaintiff 'must show that the conduct of the defendant . . . demonstrates a failure or refusal to discharge contractual responsibilities . . . by a conscious and deliberate act, which unfairly frustrates the agreed common purposes

and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.'" *Fields v. QSP, Inc.*, No. CV 10-5772 CAS (SSx), 2011 WL 1375286 , at *4 (C.D. Cal. Apr. 8, 2011) (Snyder, J.).

Here, Washworld has alleged that Ascentium funded a loan "for [Washworld's] customer's financing," identifying Car Wash Management as the customer, and Washworld's performance was excused because Ascentium failed to provide basic details about the transaction. (ECF No. 88 at Counterclaims, ¶¶ 36, 38, 39, 47.) Washworld alleges that Ascentium interfered with Washworld's right to receive the benefit of the contract by being solely in possession of information – information never shared with Washworld – that Car Wash Management falsely certified it had already received the equipment for which Car Wash Management sought the loan, when in reality, the equipment was never delivered. (*Id.* ¶¶ 20-26). Ascentium did not act in good faith and deal fairly with Washworld, resulting in harm to Washworld. (*Id.* ¶¶ 46-51.)

Washworld also specifically alleges that, in connection with the transaction between Ascentium and Car Wash Management, Ascentium failed to exercise sufficient diligence in connection with the loan agreement for $343,394.23 by declining to investigate "(1) the ownership structure of Car Wash Management; (2) the ability of the personal guarantors to repay the loan if Car Wash Management defaulted on the Equipment Financing Agreement; or (3) the location where the equipment was to be installed." (ECF No. 88 at Counterclaims, ¶¶ 15, 19.)

On or around January 8, 2024, Car Wash Management "executed a Delivery and Acceptance Certificate," **certifying** that Car Wash Management had received the equipment it ordered from the original supplier, AVW Equipment Company, Inc. (*Id.* ¶ 20.) Yet in February 2024, Car Wash Management "orally told Ascentium that AVW Equipment Company, Inc. was unable to deliver the equipment Car Wash Management ordered, equipment that Car Wash Management certified it already had

7

in its possession on January 8, 2024." (*Id.* ¶ 22.) Ascentium performed no inquiry into why Car Wash Management would need to change vendors for equipment Car Wash Management **had already certified** it received from AVW Equipment Company, Inc. (*Id.* ¶¶ 20-25). Ascentium also did not ask any questions of AVW Equipment Company, Inc. as to why AVW would no longer supply the equipment. (*Id.* ¶¶ 25-26.) At this stage, Ascentium knew or should have known Car Wash Management's statements in the Delivery and Acceptance Certificate were false.

Ascentium consciously chose to turn a blind eye to glaring issues with Car Wash Management's loan, thus thwarting Washworld's reasonable expectation that Ascentium would not proceed to fund a transaction for hundreds of thousands of dollars when Ascentium had information to question the legitimacy of Car Wash Management's order. These expectations are separate and independent from Ascentium's failure to provide Washworld with basic details in connection with Washworld's breach of contract claim. Finally, Ascentium's failure to do any of these things while claiming that Washworld breached the Funding Instructions unfairly frustrates the common purpose of the Funding Instructions: to fund Car Wash Management's transaction.

**E.      Washworld Has Sufficiently Alleged Negligence**

**1.      Wisconsin Law Applies.**

In a diversity case, the Court applies California choice of law rules. *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002) ("When a federal court sits in diversity, it must look to the forum state's choice of law rules to determine the controlling substantive law."). Choice of law questions themselves are substantive under *Erie*. *Id.* (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Absent the parties' agreement or a clear statutory directive to the contrary, choice of law issues are resolved under California law using the governmental interests analysis. *E.g., Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*,

8

14 Cal. App. 4th 637, 646 (1993). Under that test, where another state's law is at issue, the Court will assess the interests of each state in having its law applied. *Id.* If the laws do differ, "the court must determine whether a 'true conflict' exists in that each of the relevant jurisdictions has an interest in having its law applied." *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000). "If only one jurisdiction has a legitimate interest in the application of its rule of decision, there is a 'false conflict' and the law of the interested jurisdiction is applied." *McGhee v. Arabian Am. Oil Co.*, 871 F.2d 1412, 1422 (9th Cir. 1989). Third, if both states have a legitimate interest, the Court analyzes the comparative impairment of the interests of the two states and applies the law of the state whose interest would be more impaired if its law were not applied. *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 87-88 (2010).

First, although the elements of a claim for negligence are similar in California[2] and Wisconsin,[3] California and Wisconsin negligence laws differ significantly in their application of duty because Wisconsin adopts of the minority *Palsgraf* test:

> Our state's recognition of a general duty to act with ordinary care, following the famous minority opinion of *Palsgraf v. Long Island Railroad Co.*, is that "[everyone] owes to the world at large the duty of refraining from those acts that may unreasonably threaten the safety of others." Thus, as we explained in *Gritzner*, ***Wisconsin does not follow the majority view in Palsgraf . . . under which the existence of a duty of care depends upon whether injury to the particular victim was foreseeable***. This general duty has also been described as an "obligation of due care to refrain from any act which will cause foreseeable harm to others even though the nature of that harm and the identity of the

---

[2] In California, "[t]he elements of a cause of action for negligence are well established. They are a legal duty to use due care, a breach of that legal duty, and the breach as the proximate or legal cause of the resulting injury." *Ladd v. Cnty. of San Mateo*, 12 Cal. 4th 913, 914 (Cal. 1996)

[3] In Wisconsin, "the sufficiency of a negligence claim depends on whether a complaint alleges facts adequately establishing the following four required elements: '(1) the existence of a duty of care on the part of the defendant, (2) a breach of that duty of care, (3) a causal connection between the defendant's breach of the duty of care and the plaintiff's injury, and (4) actual loss or damage resulting from the injury." *Hornback v. Archdiocese of Milwaukee*, 313 Wis. 2d 294, 305 (Wis. 2009).

9

harmed person or harmed interest is unknown at the time of the act." Under this framework, *a person is negligent "if the person, without intending to do harm does something (or fails to do something) that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property*."

*Hornback*, 313 Wis. 2d at 309-10 (emphasis added).

In Wisconsin, a person owes a general duty to the world at large. *Alvarado v. Sersch*, 262 Wis. 2d 74, 81-82 (Wis. 2003) ("Once it has been determined that a negligent act caused the harm, 'the question of duty is irrelevant and a finding of nonliability can be made only in terms of public policy.'"). In contrast, in California, a person owes a general duty of care to others, but that duty is defined by foreseeability and policy. *Hegyes v. Unjian Enters., Inc.*, 234 Cal. App. 3d 1103, 1131 (Cal. Ct. App. 1991), *reh'g denied and opinion modified* (Oct. 23, 1991) ("Thus, in determining to whom a legal duty is owed, foreseeability is the prime element by which courts are guided."). This difference in law is material.

Because a conflict exists, this Court must determine each jurisdiction's interest in having its law applied. Here, Washworld is a Wisconsin corporation with a principal place of business in Wisconsin that claims it was injured by an Alabama bank, so Wisconsin has a significant interest in having its law applied. *Drinkwater v. Am. Fam. Mut. Ins. Co.*, 290 Wis. 2d 642, 661 (2006) ("Wisconsin citizens are entitled to some assurance that when they suffer injuries within their own state, they can generally predict and expect that Wisconsin law will dictate their rights to recovery.") California has minimal, if any, interest in regulating conduct that occurred between two non-resident entities. *Accord McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 99 (2010) ("California's interest in applying its laws providing a remedy to, or facilitating recovery by, a potential plaintiff in a case in which the defendant's allegedly tortious conduct occurred in another state is less than its interest when the defendant's conduct occurred in California."). Wisconsin has a

strong interest in having its law applied where the transaction has substantial connection to Wisconsin, and where the alleged harm was felt, and in contrast, California has little interest where Ascentium's conduct did not occur in California. Wisconsin law should apply.

### 2.    Washworld's Claim Survives Under Wisconsin Law.

Wisconsin law imposes a general duty on every person to exercise ordinary care in all activities. *Brandenburg v. Briarwood Forestry Servs., LLC*, 354 Wis. 2d 413, 418 (2014) ("Under Wisconsin law, 'every person is subject to a duty to exercise ordinary care in all of his or her activities' and, therefore, 'the elements of duty and breach are usually presented to the trier of fact in a question asking whether the defendant was negligent, and then the elements of causation and damages are addressed.'"). Here, Ascentium owed Washworld a duty of care in performing basic diligence related to the transactions Ascentium funded. Ascentium became aware "that Car Wash Management intended to switch vendors **two months** after Ascentium and Car Wash Management entered into an Equipment Financing Agreement, and two months after Car Wash Management **certified it had already received the equipment the loan purported to fund**," thus triggering a duty by Ascentium to determine why the vendor returned the money to Ascentium. (ECF No. 88 at Counterclaims, ¶ 57 (emphasis added).) Ascentium's actual knowledge of irregularities in the Car Wash Management transaction required Ascentium to exercise ordinary care in its activities, including performing a basic investigation.

With respect to causation and injury, at the pleadings stage, Washworld need only allege facts to establish that Ascentium's conduct was a substantial factor in causing its injury. *Sumnicht v. Toyota Motor Sales, U.S.A., Inc.*, 121 Wis. 2d 338, 351 (1984) ("The test of cause in Wisconsin is whether the defendant's negligence was a substantial factor in contributing to the result." It need not be the sole factor, the primary factor, only 'a substantial factor.'"). Washworld alleges that because of

11

Ascentium's failure to investigate or perform any inquiry into Ascentium's transaction with Car Wash Management, Washworld fulfilled an order for Car Wash Management, including shipping equipment to an end-customer's site and returning funds for ancillary equipment purchases to Car Wash Management. (ECF No. 88 at Counterclaims, ¶ 63.) Washworld has sufficiently alleged causation and resulting injury.

### 3. Even if California Law Applies, Washworld's Claim Still Survives.

Ascentium contends that Washworld has not established duty, causation, or damages. But again, Ascentium conveniently ignores the allegations of the Counterclaims.

Washworld alleges that Ascentium owed Washworld a duty of care in performing basic diligence related to the transactions Ascentium funded when Ascentium had actual knowledge (or should have known) that something was amiss in its transaction with Car Wash Management. Ascentium became aware "that Car Wash Management intended to switch vendors *two months* after Ascentium and Car Wash Management entered into an Equipment Financing Agreement, and two months after Car Wash Management *certified it had already received the equipment the loan purported to fund*," thus triggering a duty by Ascentium to determine why the vendor returned the money to Ascentium. (ECF No. 88 at Counterclaims, ¶ 57 (emphasis added).)

But Ascentium did not determine why Car Wash Management needed to change vendors, did not verify if Car Wash Management had actually submitted an order to Washworld or if Washworld had accepted the order, and failed to have Car Wash Management complete a new Delivery and Acceptance Certificate. (*Id.* ¶ 60.). Instead, Ascentium amended its Equipment Financing Agreement with Car Wash Management to give Car Wash Management more money. (*Id.* ¶ 30.) Additionally,

12

Ascentium provided no information to allow Washworld to discover the purpose of the payment, such as a copy of the order form, an order number, identification of the end customer, or specific equipment ordered. (*Id.*¶¶ 28-37, 60.) Here, that affirmative action resulted in a duty of care to investigate these suspicious circumstances. *Cf. QDOS, Inc. v. Signature Fin., LLC*, 17 Cal. App. 5th 990, 999–1000 (2017) ("[C]ourts have recognized that a person or entity—whether it be a bank or a merchant—engaged in a financial transaction with a person has a duty . . . not to ignore 'red flags' or 'suspicious' 'circumstances' . . . ."); *Basch v. Bank of Am. Nat. Tr. & Sav. Ass'n*, 22 Cal. 2d 316, 322 (1943) ("Therefore, if a bank, in the exercise of proper care, could have discovered the alteration or forgery of a customer's checks, it cannot throw the loss caused by paying them upon the depositor merely because he failed to examine his account. Or, stating the rule in terms of negligence, a bank which is guilty of negligence in failing to discover an alteration or forgery cannot avoid liability on the ground that the depositor was negligent in failing to examine his balanced passbook, statement of account, or returned checks."). A reasonably careful person would question why, in a transaction for over $340,000, its borrower walked back its certified statement that the borrower was already in possession of the equipment it financed two months later. A reasonably careful person would ask "should I give the borrower more money without understanding what happened?"  Ascentium's only authority in support of its argument, *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089 (Cal. Ct. App. 1991), is inapposite. *Nymark* involved a negligence claim with a financial institution and its borrower. Here, Ascentium's borrower was Car Wash Management, not Washworld.

Next, Ascentium suggests there is no causation. Here, with Ascentium's entire argument boils down to its assertion that "Washworld never asked Plaintiff why it wired Washworld the $309,054.80 and for what transaction." But this argument fails

WASHWORLD, INC.'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS
CASE NO.  2:25-CV-00359-CAS-KS

for two reasons. First, Ascentium seeks to inappropriately introduce a fact absent from Washworld's counterclaims (and, again, attempts to shift Ascentium's own failure to provide any information onto Washworld). Second, "[w]hether an act is the proximate cause of injury is generally a question of fact; it is a question of law where the facts are uncontroverted and only one deduction or inference may reasonably be drawn from those facts." *Ileto v. Glock,* 349 F.3d 1191, 1206 (9th Cir. 2003). Here, whether Ascentium caused Washworld's injury is a question of fact, and one that Ascentium appears to contest, therefore making it inappropriate for resolution at the motion to dismiss stage.

Finally, Washworld has sufficiently alleged it was injured by Ascentium's negligence because Washworld fulfilled an order for Car Wash Management, including shipping equipment to an end-customer's site and returning funds for ancillary equipment purchases to Car Wash Management. (ECF No. 88 at Counterclaims, ¶ 63.) Ascentium seeks to wash its hands of its own negligence even though Ascentium itself was aware of several facts that could have prevented Car Wash Management's fraud from being perpetuated on others.

**F.     Ascentium's Request For a More Definite Statement Should Be Denied.**

Under Federal Rule of Civil Procedure 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "A motion filed pursuant to Rule 12(e) 'must point out the defects complained of and the details desired.'" *Id.* "Generally, '[m]otions for a more definite statement are viewed with disfavor, and are rarely granted.'" *WB Music Corp. v. Future Today, Inc.*, No. 2:18-cv-01238-CAS(FFMx), 2018 WL 4156589, at *1 (C.D. Cal. Aug. 27, 2018) (Snyder, J.).

WASHWORLD, INC.'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS
CASE NO.  2:25-CV-00359-CAS-KS

Here, Ascentium's attempt to identify "the defects complained of and the details desired" consists of a single sentence. (ECF No. 102 at 10.) Ascentium raises no true challenge to the clarity of Washworld's counterclaims, so Ascentium's request must be denied. *See Panacci v. A1 Solar Power, Inc.*, No. 15–CV–00532–JCS, 2015 WL 3750112, at *9 (N.D. Cal. June 15, 2015) ("Defendants' Motion is not a true challenge to the intelligibility of the Complaint—because the Complaint is not unintelligible—but rather, Defendants' Motion is a request for details that are plainly obtainable through discovery."); *Velasquez v. HSBC Fin. Corp.*, No. 08-4592 SC, 2009 WL 112919, at *1 (N.D. Cal. Jan. 16, 2009) ("A Rule 12(e) motion is not a substitute for discovery; such a motion attacks unintelligibility in a pleading, not mere lack of detail. If the detail sought by a motion for more definite statement is obtainable through discovery, the motion should be denied."); *Robbins v. Coca-Cola-Co.*, No. 13–CV–132–IEG NLS, 2013 WL 2252646, at *4 (S.D.Cal. May 22, 2013) (finding the defendant's "motion to dismiss belies any suggestion that the complaint is too vague for Defendant to frame a response").

### G.    Declaration

In connection with its motion to dismiss, Ascentium included a declaration containing assertions that are wholly unrelated to its motion.[4] Washworld contests these assertions, as well as Ascentium's attempt to evade local and federal rules for properly raising any purported issues before the Court. If the Court would like Washworld's position, Washworld will provide a separate response at the Court's request.

## V.    CONCLUSION

For the foregoing reasons, Washworld respectfully requests that Ascentium's Motion to Dismiss be denied. If the Court grants any part of Ascentium's motion,

---

[4] Washworld also disputes that the declaration complies with Local Rule 7-7, which provides that declarations shall contain "only factual, evidentiary matter and shall conform as far as possible to the requirements of F.R.Civ.P. 56(c)(4)."

Washworld respectfully requests leave to amend. *Digi Fama LLC v. SnapNHD, LLC*, No. CV2011792RSWLJEMX, 2021 WL 8773299, at *8 (C.D. Cal. Sept. 15, 2021) (recognizing "[l]eave to amend should be granted with 'extreme liberality.'" (quoting *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

Dated: November 10, 2025          BAKER & HOSTETLER LLP


By:  /s/ Katharine Walton
     Ava Claypool
     Xitlaly Estrada
     Michael D. Gannon
     Katharine H. Walton

     Attorneys for Counter Plaintiff
     WASHWORLD, INC.


## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Washworld, Inc., certifies that this brief contains 4,785 words, which complies with the word limit of L.R. 11-6.1.

Dated:  November 10, 2025          **BAKER & HOSTETLER LLP**

By:  /s/ Katharine Walton
     Katharine Walton

     Counter Plaintiff WASHWORLD, INC.

16

## CERTIFICATE OF SERVICE

I am employed in Chicago, Illinois. I am over the age of eighteen years and not a party to the within-entitled action. My business address is One North Wacker Drive, Suite 3700, Chicago, IL 60606. On November 10, 2025, I served a copy of the within document(s):

**WASHWORLD, INC.'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

☑    **CM/ECF:** I hereby certify that a copy of the foregoing was electronically filed in this case with the clerk of the court and served through the Court's CM/ECF system, which will send notification of this filing to all registered CM/ECF users listed below.

Andrew K. Alper (SBN 088876)
**FRANDZEL ROBINS BLOOM & CSATO, L.C.**
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, CA 90017
Telephone:  323-852-1000
Facsimile:  323-651-2577
Email:      *aalper@frandzel.com*

*Attorneys for Plaintiff*
REGIONS BANK

Lisa Mitts Patrick (SBN 134522)
**LAW OFFICE OF LISA MITTS PATRICK**
112 E. Amerige Ave., Suite 313
Fullerton, CA 92832
Telephone:  714-990-3693
Facsimile:  657-234-0012
Email:      *lolmp2021@gmail.com*

*Attorneys for Defendant and Cross Defendant*
JOSE RENE ORTIZ

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on November 10, 2025, at Chicago, Illinois.

*/s/ Katharine Walton*
Katharine Walton

17

CERTIFICATE OF SERVICE
CASE NO.  2:25-CV-00359-CAS-KS