Xitlaly Estrada (SBN 333403)
Ava Claypool (SBN 327059)
**Baker & Hostetler LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone:  310-979-8430
Email:      *xestrada@bakerlaw.com*
            *aclaypool@bakerlaw.com*

Michael D. Gannon (*pro hac vice*)
Katharine H. Walton (*pro hac vice*)
**Baker & Hostetler LLP**
One North Wacker Drive, Suite 3700
Chicago , IL 60606
Telephone:  312-416-6200
Email:      *mgannon@bakerlaw.com*
            *kwalton@bakerlaw.com*

*Attorney for Cross Claimant*
WASHWORLD, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGIONS BANK, dba ASCENTIUM CAPITAL,<br><br>Plaintiff,<br><br>v.<br><br>CAR WASH MANAGEMENT, LLC, CAR WASH MANAGEMENT, LLC, WEST COVINA CAR WASH LLC, JOSE RENE ORTIZ, ANDREW PAUL WILLIAMS, WASHWORLD, INC., DOES 1-100, inclusive,<br><br>Defendants.<br><hr>JOSE RENE ORTIZ,<br><br>Cross Claimant,<br><br>v.<br><br>ANDREW PAUL WILLIAMS, CAR WASH MANAGEMENT, LLC, CAR WASH MANAGEMENT, LLC, WASHWORLD, INC., and DOES 1 to 35, inclusive,<br><br>Cross Defendants. | **CASE NO.: 2:25-CV-00359-CAS-KS**<br><br><br>**DECLARATION OF KATHARINE H. WALTON IN SUPPORT OF WASHWORLD, INC.'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS WASHWORLD, INC.'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS AMENDED COUNTERCLAIMS AND MOTION FOR MORE DEFINITE STATEMENT** |

WASHWORLD, INC.,

        Counter Plaintiff,

   v.

REGIONS BANK, D/B/A ASCENTIUM CAPITAL,

        Counter Defendant.

WASHWORLD, INC.,

        Cross Claimant,

   v.

CAR WASH MANAGEMENT, LLC,

        Cross Defendant.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

2

I, Katharine H. Walton, declare as follows:

1.     I am an attorney licensed to practice in the State of Illinois (Bar No. 6339805) and I am admitted pro hac vice in this action (*see* Dkt. 49).

2.     I am an associate at Baker Hostetler LLP and located in the Chicago office at One North Wacker Drive, Suite 3700, Chicago, IL 60606.

3.     I am counsel of record for Washworld, Inc. ("Washworld").

4.     Washworld received Ascentium's discovery responses on January 21, 2026, and fact discovery in this case runs through June 30, 2026.

5.     A true and accurate copy of redline identifying the changes between Washworld's original counterclaims and amended counterclaims is attached hereto as Exhibit A.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Dated:  February 2, 2026

**BAKER & HOSTETLER LLP**


By:    */s/ Katharine Walton*
       Katharine Walton

       *Attorneys for Cross Claimant*
       WASHWORLD, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## CERTIFICATE OF SERVICE

I am employed in Cook County, Illinois. I am over the age of eighteen years and not a party to the within-entitled action. My business address is One North Wacker Drive, Suite 3700, Chicago, IL 60606. On February 2, 2026, I served a copy of the within document(s):

**DECLARATION OF KATHARINE H. WALTON IN SUPPORT OF WASHWORLD, INC.'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS WASHWORLD, INC.'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS AMENDED COUNTERCLAIMS AND MOTION FOR MORE DEFINITE STATEMENT**

☑ **CM/ECF:** I hereby certify that a copy of the foregoing was electronically filed in this case with the clerk of the court and served through the Court's CM/ECF system, which will send notification of this filing to all registered CM/ECF users listed below.

| | |
|---|---|
| Andrew K. Alper (SBN 088876)<br>**FRANDZEL ROBINS BLOOM & CSATO, L.C.**<br>1000 Wilshire Boulevard, Nineteenth Floor<br>Los Angeles, CA 90017<br>Telephone:  323-852-1000<br>Facsimile:   323-651-2577<br>Email:        *aalper@frandzel.com* | *Attorneys for Plaintiff*<br>REGIONS BANK |
| Lisa Mitts Patrick (SBN 134522)<br>**LAW OFFICE OF LISA MITTS PATRICK**<br>112 E. Amerige Ave., Suite 313<br>Fullerton, CA 92832<br>Telephone:  714-990-3693<br>Facsimile:   657-234-0012<br>Email:        *lolmp2021@gmail.com* | *Attorneys for Defendant and Cross Defendant*<br>JOSE RENE ORTIZ |

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on February 2, 2026, at Chicago, Illinois.

*/s/ Katharine Walton*

4

# EXHIBIT A

Xitlaly Estrada (SBN 333403)
Ava Claypool (SBN 327059)
**Baker & Hostetler LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone:  310-979-8430
Email:    *xestrada@bakerlaw.com*
          *aclaypool@bakerlaw.com*

Michael D. Gannon (*pro hac vice*)
Katharine H. Walton (*pro hac vice*)
**Baker & Hostetler LLP**
One North Wacker Drive, Suite 3700
Chicago, IL 60606
Telephone:  312-416-6200
Email:    *mgannon@bakerlaw.com*
          *kwalton@bakerlaw.com*

*Attorney for Defendant*
WASHWORLD, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

REGIONS BANK, an Alabama State Bank dba ASCENTIUM CAPITAL,

              Plaintiff,

      v.

CAR WASH MANAGEMENT, LLC, CAR WASH MANAGEMENT, LLC, WEST COVINA CAR WASH LLC, JOSE RENE ORTIZ, ANDREW PAUL WILLIAMS, WASHWORLD, INC., DOES 1-100, inclusive,

              Defendants.

JOSE RENE ORTIZ,

              Cross Complainant,

      v.

ANDREW PAUL WILLIAMS, CAR WASH MANAGEMENT, LLC, CAR WASH MANAGEMENT, LLC, WASHWORLD, INC., and DOES 1 to 35, inclusive,

              Cross Defendants.

WASHWORLD, INC.,

              Plaintiff,

      v.

Case No.: 2:25-cv-00359-CAS-KS

**DEFENDANT WASHWORLD, INC.'S FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Complaint Filed:    01/14/2025
Trial Date:         12/01/2026

REGIONS BANK D/B/A ASCENTIUM CAPITAL,

Counter Defendant.

WASHWORLD, INC.,

Cross Complainant,

v.

CAR WASH MANAGEMENT, LLC

Cross Defendant.

conceding Ascentium is owed any amount, as to one or more of Ascentium's causes of action, that the sole and/or proximate cause of the damages claimed by Ascentium was due to willful, intentional, and/or negligent acts of persons and/or entities other than Washworld.

## RESERVATION OF RIGHTS

Washworld presently has insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated, defenses available. Washworld reserves the right to assert additional separate defenses in the event discovery indicates that such defenses would be appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Washworld prays as follows:

1. That Ascentium take nothing by reason of the Complaint;

2. That the Court enter Judgment for Washworld and against Ascentium;

3. An award to Washworld for costs and attorneys' fees incurred in defense of this action as permitted by law; and

4. For such other and further relief as the Court may deem proper.

## COUNTERCLAIMS

Washworld, Inc., for its counterclaims against Ascentium, hereby alleges as follows:

1. Under Federal Rule of Civil Procedure 8, Washworld's CounterclaimsCounterclaim Count I and II areis brought in the event that the Funding Instructions are found to be a contract by the fact-finder, which Washworld disputes.

## PARTIES

2. Washworld, Inc. is a Wisconsin corporation with a principal place of business in De Pere, Wisconsin.

20

3.     Regions Bank d/b/a Ascentium Capital is an Alabama bank with a principal place of business in Alabama.

## JURISDICTION AND VENUE

4.     On information and belief, this Court has diversity jurisdiction under 28 U.S.C. § 1332 because Washworld and Ascentium are citizens of different states, and the amount in controversy exceeds $75,000.

5.     Venue is proper under 28 U.S.C. § 1391(2) because this district is one in which a substantial part of the events or omissions giving rise to the claim occurred.

## FACTUAL BACKGROUND

### Funding Instructions

6.     Washworld manufactures car wash equipment for sale nationwide.

7.     Washworld works with approximately 104 active distributors to sell its equipment.

8.     At times, Washworld's distributors work with lenders to purchase equipment.

9.     To facilitate these transactions, Washworld provides its bank account information to lenders, including Ascentium.

10.     On or about February 28, 2023, Washworld provided its bank account information to Ascentium, so that, if Ascentium had a transaction in the future where Washworld agreed to be the vendor, Ascentium could fund that transaction.

11.     Ten months later, Ascentium and Car Wash Management, LLC ("Car Wash Management"), one of Washworld's distributors, entered into an Equipment Financing Agreement.

### Ascentium's Lack of Diligence

12.     Upon information and belief, on or around December 2023, Car Wash Management sought to finance equipment through Ascentium.

13. The equipment Car Wash Management sought to purchase was to be installed at West Covina Car Wash LLC, an LLC formed just a few weeks prior, around December 11, 2023, located at 310 S. Vincent Avenue in West Covina, California.

14. The proposed address was the location of an existing single-tunnel car wash. A tunnel car wash is a system that moves a car from one cleaning station to the next inside of a tunnel.

15. On or around January 5, 2024, Ascentium and Car Wash Management entered into an Equipment Financing Agreement in the amount of $343,394.23 to fund the purchase of equipment for the West Covina Car Wash LLC site.

16. Car Wash Management chose AVW Equipment Company, Inc. as the initial vendor.

17. Upon information and belief, prior to finalizing the Equipment Financing Agreement, Car Wash Management's CEO, Andrew Williams, suggested that an employee, Jose Rene Ortiz, and the newly formed West Covina Car Wash LLC be guarantors for the transaction.

18. Williams personally vouched for Ortiz, suggesting that Ortiz owned 80% of Car Wash Management.

19. Upon information and belief, Ascentium did not perform or conduct any diligence into: (1) the ownership structure of Car Wash Management; (2) the ability of the personal guarantors to repay the loan if Car Wash Management defaulted on the Equipment Financing Agreement; or (3) the location where the equipment was to be installed.

20. On or around January 8, 2024, Car Wash Management executed a Delivery and Acceptance Certificate, in which Car Wash Management certified that "all of the property which is to be leased, financed, or sold, as applicable, pursuant to the . . . equipment finance agreement . . . has been delivered to and received by

22

the undersigned" and "the Equipment confirms in all respects to that ordered by the undersigned."

21.    On or around January 2024, Ascentium funded the loan and sent funds to AVW Equipment Company, Inc.

22.    On or around February 2024, Car Wash Management orally told Ascentium that AVW Equipment Company, Inc. was unable to deliver the equipment Car Wash Management ordered, equipment that Car Wash Management certified it already had in its possession on January 8, 2024.

23.    On or around March 5, 2024, AVW Equipment Company, Inc. returned the funds.

24.    Upon information and belief, Car Wash Management then provided Ascentium with a Washworld order form, suggesting Car Wash Management was changing vendors.

25.    Upon information and belief, Ascentium asked minimal, if any, questions related to Car Wash Management's decision to cancel its order from AVW Equipment Company, Inc.

26.    Upon information and belief, Ascentium did not ask why Car Wash Management needed to cancel an order when Car Wash Management had already certified that it received the equipment from AVW Equipment Company, Inc. approximately two months prior.

27.    Ascentium consciously chose to turn a blind eye to clear issues with Car Wash Management's loan when Ascentium had information to question the legitimacy of Car Wash Management's order.

27. 28.    On the order form, Car Wash Management claimed it would purchase, among other equipment, a Razor Touch Free Wash System from Washworld.

28. 29.    Car Wash Management never sent this fictitious order form to Washworld.

23

~~29.~~ 30. Car Wash Management never ordered the equipment from Washworld.

~~30.~~ 31. Instead, Ascentium amended the Equipment Financing Agreement to reflect the new proposed total, $346,904.75.

~~31.~~ 32. Ascentium did not verify if Car Wash Management had placed the order from Washworld.

~~32.~~ 33. Ascentium did not verify if Car Wash Management had sent the order form to Washworld.

~~33.~~ 34. Ascentium did not send Washworld a copy of the order form.

~~34.~~ 35. Ascentium did not send Washworld a copy of the Equipment Financing Agreement.

~~35.~~ 36. Ascentium did not require Car Wash Management to complete a new Delivery and Acceptance Certificate after Car Wash Management changed vendors.

~~36.~~ 37. Ascentium wired $309,054.80 to Washworld on or around March 11, 2024.

~~37.~~ 38. In the ACH payment notification, Ascentium did not identify the transaction or order number, end user or site, or specific equipment to be financed.

~~38.~~ 39. In the payment notification, Ascentium represented that it had "issued a payment for your customer's financing," and identified Car Wash Management, LLC as the vendor.

~~39.~~ 40. In March 2024, Car Wash Management had a pending order with Washworld, with final payment outstanding, which included Washworld equipment and ancillary equipment to be purchased from other manufacturers.

## **COUNT I**

### ~~**(Breach of Contract)**~~

~~40.     Washworld incorporates herein and realleges, as if fully set forth in this paragraph, the allegations of paragraphs 1 through 39 above.~~

41.   To the extent that the fact-finder determines that the Funding Instructions constitute a valid contract,[2] Ascentium materially breached the Funding Instructions by:

a.   failing to provide Washworld with a copy of the order form;

b.   failing to identify the transaction or order number on the ACH payment or in any other correspondence; and

c.   failing to identify the end-customer on the ACH payment or in any other correspondence.

42.   Ascentium's failure to provide this document and information breached the Funding Instructions because Ascentium failed to identify the applicable transaction.

43.   Ascentium's breach excused Washworld's performance.

44.   As a result of Ascentium's breach, Washworld has suffered damages in an amount to be proven at trial.

## COUNT II

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

45.41. Washworld incorporates herein and realleges, as if fully set forth in this paragraph, the allegations of paragraphs 1 through 3940 above.

42.   Ascentium alleges that the Funding Instructions, attached hereto as Exhibit 1, is a written contract between Ascentium and Washworld.

46.43. To the extent that the fact-finder determines that the Funding Instructions constitute a valid contract,[3] implied in the Funding Instructions is a covenant that Ascentium would act in good faith and deal fairly with Washworld in the performance of Ascentium's duties.

---

[2] Count I is brought pursuant to Federal Rule of Civil Procedure 8, which allows inconsistent defenses and claims.

[3] Count III is brought pursuant to Federal Rule of Civil Procedure 8, which allows inconsistent defenses and claims.

25

47.    Instead of acting in good faith, Ascentium failed to perform basic diligence on the transaction.

44.    Instead of acting in good faith, Ascentium failed to provideUnder the Funding Instructions, Ascentium was supposed to "advanc[e] funds for Payee's customer to pay the purchase orders, invoices, quotes or proposals for the application transaction."

45.    Washworld "agree[d] to deliver any equipment which is the subject of these Funding Instructions to customer's address set forth in the purchase orders, invoices, quotes or proposals for the applicable transaction."

46.    Washworld was excused from having to deliver equipment because Ascentium did not identify the equipment that was "the subject of these Funding Instructions" or identify the "address set forth in the purchase order, quotes, or proposals."

47.    Washworld was further excused from having to deliver equipment because Ascentium never provided the purchase order, invoice, or quote for Car Wash Management's transaction.

48.    The Funding Instructions also provided that "[i]f funds to which Payee is not entitled are deposited into Payee's account or otherwise received by Payee, Payee agrees to promptly remit any such funds to, or as directed by Ascentium."

49.    Ascentium consciously chose what information to include on its ACH payment notifications (i.e., vendor name), and Ascentium could have easily provided information relevant to the transaction but declined to do so.

50.    Washworld was excused from having to remit funds to Ascentium because Ascentium chose not to provide Washworld with information that was the subject of the Equipment Financing Agreement, and Washworld was unable to discover Car Wash Management's fraud on its own. This allowed Car Wash

Management to perpetuate fraud on Washworld by directing Washworld to apply the funds to a separate order.

51. All conditions required for Ascentium's performance occurred because Ascentium entered into an Equipment Financing Agreement with Car Wash Management that obligated Ascentium to send funds, so Ascentium knew the subject of the Funding Instructions but failed to share that information with Washworld.

48. 52. Washworld could not perform under the Funding Instructions without the essential information required for Washworld to identify the purpose of the payment in the March 12, 2024 payment notification, including information such as: (1) the purported order form Car Wash Management provided to Ascentium, (2) an order number, and (3) the identity of the car wash site and end-customer information.

49. Ascentium's conduct excused Washworld from its obligations under the Funding Instructions.

50. By engaging these actions choosing not to provide this information, Ascentium did not act fairly or in good faith.

51. 53. As a direct because Ascentium, not Washworld, was in possession of the purported order, Equipment Financing Agreement, and proximate result of Ascentium's breach, Washworld has suffered damages in an amount to be proven at trial identity of the car wash site and end-customer information.

54. Ascentium's failure to discharge Washworld's contractual responsibilities, despite Ascentium's decision to not provide Washworld with any of the relevant documentation or information, was in bad faith. Further, this failure allowed Car Wash Management to perpetuate fraud on Washworld by instructing Washworld to apply funds to an already pending Car Wash Management order.

55. Washworld was harmed by Ascentium's conduct because Washworld processed an order for Car Wash Management that turned out to be a different order than the purported order that formed part of the Equipment Financing Agreement.

27

## COUNT II

## ~~COUNT III~~

## (Negligence)

~~52.~~56. Washworld incorporates herein and realleges, as if fully set forth in this paragraph, the allegations of paragraphs 1 through ~~39~~40 above.

~~53.    Under Wisconsin law, a person is negligent if they fail to exercise ordinary care, or the care which a reasonable person would use in similar circumstances.~~

~~54.~~57. Ascentium had a duty of reasonable care to perform basic diligence in its transactions and provide vendors with basic details regarding funded transactions.

~~55.~~58. Ascentium did not perform basic diligence.

~~56.~~59. Ascentium did not provide Washworld with basic information regarding Ascentium's transaction with Car Wash Management.

~~57.~~60. Once Ascentium became aware that Car Wash Management intended to switch vendors two months after Ascentium and Car Wash Management entered into an Equipment Financing Agreement, and two months after Car Wash Management certified it had already received the equipment the loan purported to fund, Ascentium had a duty to determine why the vendor returned the money to Ascentium.

~~58.~~61. It was reasonably foreseeable that Ascentium's lack of diligence would harm Washworld.

~~59.~~62. It was reasonably foreseeable that Ascentium's failure to provide basic details regarding the Car Wash Management transaction when Ascentium sent an ACH payment to Washworld would harm Washworld.

~~60.~~63. Ascentium was negligent in, among other things, failing to:

28

    a. verify if Car Wash Management's personal guarantors had sufficient funds to pay the loan balance if Car Wash Management defaulted;

    b. investigate why Car Wash Management needed to change vendors in March 2024 for equipment Car Wash Management certified it received in January 2024;

    c. verify if Car Wash Management had actually submitted an order to Washworld or if Washworld had accepted the order;

    d. require Car Wash Management to sign and submit a new a Delivery and Acceptance Certificate after Car Wash Management purported to change vendors; and

    e. provide essential information so that Washworld could identify the purpose of the payment sent on or around March 11, 2024, such as (1) a copy of the fictitious West Covina Car Wash, LLC order form, (2) a Washworld order number, and (3) the identification of West Covina Car Wash, LLC as the fictitious end-customer.

~~61.~~64. Ascentium knew or should have known that Car Wash Management's purported transaction was fraudulent.

~~62.~~65. Ascentium knew or should have known that Ascentium needed to provide vendors with sufficient details regarding funded transactions.

~~63.~~66. As a direct result of Ascentium's negligence, Washworld fulfilled an order from Car Wash Management, including (1) shipping equipment to an end-customer's site and (2) returning funds for ancillary equipment purchases to Car Wash Management.

~~64.~~67. Washworld suffered damages as a result of Ascentium's breaches, including reputational damages.

29

## COUNT III

### (Negligent Misrepresentation)

68. Washworld incorporates herein and realleges, as if fully set forth in this paragraph, the allegations of paragraphs 1 through 40 above.

69. Ascentium entered into an Equipment Financing Agreement with Car Wash Management in January 2024.

70. Car Wash Management originally selected a different vendor, AVW Equipment Company, Inc.

71. At Ascentium's request, Car Wash Management completed a Delivery and Acceptance Certificate on January 8, 2024, certifying that the equipment Car Wash Management ordered "ha[d] been delivered to, and received by" Car Wash Management.

72. In fact, Car Wash Management did not have equipment from AVW in its possession when it executed the Delivery and Acceptance Certificate.

73. Ascentium sent payment to AVW pursuant to the Equipment Financing Agreement.

74. On or around March 5, 2024, almost two months after Car Wash Management certified it already received equipment, AVW returned funds to Ascentium.

75. Upon information and belief, Ascentium did not ask AVW why the funds were returned.

76. Upon information and belief, Ascentium did not ask why Car Wash Management needed to change suppliers for equipment Car Wash Management certified that Car Wash Management had received by January 8, 2024.

77. Before issuing payment to Washworld six days later, Ascentium did not verify whether Car Wash Management had placed an order for West Covina Car Wash with Washworld.

30

78.    Ascentium did not send the quote or Equipment Financing Agreement to Washworld.

79.    Instead, Ascentium sent a payment notification to Washworld on or around March 11, 2024 representing that Ascentium had sent funds to Washworld for "Equipment" for "Customer Name" Car Wash Management, LLC, further representing to Washworld that Ascentium was funding an order for Car Wash Management.

80.    Ascentium did not require Car Wash Management to complete a new Delivery and Acceptance Certificate, certifying that it had received any equipment from Washworld before disbursing funds.

81.    Ascentium had no reasonable grounds for believing the representation that Ascentium was funding an order for equipment for customer Car Wash Management was true when Ascentium made the representation because Ascentium failed to (1) investigate why Car Wash Management needed to change vendors in March 2024 for equipment Car Wash Management certified it received in January 2024; (2) verify if Car Wash Management had actually submitted an order to Washworld or if Washworld had accepted the order; (3) require Car Wash Management to sign and submit a new a Delivery and Acceptance Certificate after Car Wash Management purported to change vendors; and (4) provide essential information so that Washworld could identify the purpose of the payment such as a copy of the fictitious West Covina Car Wash, LLC order form,  a Washworld order number, and the identification of West Covina Car Wash, LLC as the fictitious end-customer.

82.    Ascentium intended that Washworld rely on the payment notification and process an order for Car Wash Management.

83.    Washworld reasonably relied on Ascentium's representation that Ascentium had funded an order for Car Wash Management.

31

84.    Washworld was harmed because Washworld shipped equipment and returned funds to Car Wash Management.

85.    Washworld's reliance on Ascentium's representation was a substantial factor in causing Washworld's harm.

## PRAYER FOR RELIEF

Washworld, Inc. demands judgment against the Counter Defendant Regions Bank d/b/a Ascentium Capital for damages in an amount to be determined at trial, as well as all costs of this action, interest, and for such other and further relief as the Court deems just and proper.

## JURY DEMAND

Washworld demands a trial by jury on all issues so triable.

Attorneys for Defendant Washworld, Inc.Dated: October 10, 2025    December 31, 2025

BAKER & HOSTETLER LLP

By:  /s/ Xitlaly EstradaKatharine Walton
Ava Claypool
Xitlaly Estrada
Michael D. Gannon
Katharine H. Walton

*Attorneys for Defendant Washworld, Inc.*

32