Xitlaly Estrada (SBN 333403)
Ava Claypool (SBN 327059)
**Baker & Hostetler LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone:  310-979-8430
Email:     *xestrada@bakerlaw.com*
           *aclaypool@bakerlaw.com*

Michael D. Gannon (*pro hac vice*)
Katharine H. Walton (*pro hac vice*)
**Baker & Hostetler LLP**
One North Wacker Drive, Suite 3700
Chicago, IL 60606
Telephone:  312-416-6200
Email:     *mgannon@bakerlaw.com*
           *kwalton@bakerlaw.com*

*Attorney for Defendant*
WASHWORLD, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGIONS BANK, an Alabama State Bank dba ASCENTIUM CAPITAL,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAR WASH MANAGEMENT, LLC, CAR WASH MANAGEMENT, LLC, WEST COVINA CAR WASH LLC, JOSE RENE ORTIZ, ANDREW PAUL WILLIAMS, WASHWORLD, INC., DOES 1-100, inclusive,<br><br>　　　　　Defendants. | Case No.: 2:25-cv-00359-CAS-KS<br><br>**WASHWORLD, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**<br><br><br>DATE:　　March 23, 2026<br>TIME:　　10:00 AM<br>CTRM:　　8D |
| JOSE RENE ORTIZ,<br><br>　　　　　Cross Claimant,<br><br>　　v.<br><br>ANDREW PAUL WILLIAMS, CAR WASH MANAGEMENT, LLC, CAR WASH MANAGEMENT, LLC, WASHWORLD, INC., and DOES 1 to 35, inclusive,<br><br>　　　　　Cross Defendants. | |
| WASHWORLD, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v. | |

REGIONS BANK D/B/A
ASCENTIUM CAPITAL,

          Counter Defendant.

WASHWORLD, INC.,

          Cross Claimant,

    v.

CAR WASH MANAGEMENT, LLC

          Cross Defendant.

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................. 1

II.    LEGAL STANDARD ......................................................................... 3

III.   ARGUMENT ...................................................................................... 3

     A.    Leave to Amend Is Futile ...................................................... 3

          1.    Ascentium's Conversion Claim Fails Because Ascentium Cannot Recover in Tort for a Breach of Duties that Restate Contractual Obligations ............................. 4

          2.    Ascentium Lacked A Possessory Right to the Funds. .............. 8

          3.    There Was No Wrongful Dominion. ..................................... 11

     B.    Leave to Amend Should Be Denied Because The Proposed Amended Complaint Is Not Based on New Facts, and Amendment Would Prejudice Washworld ........................................... 12

     C.    Ascentium's Motion Should Be Denied for the Independent Reason that Ascentium Refused to Confer. ...................................... 17

IV.   CONCLUSION ................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcatel-Lucent USA, Inc. v. Dugdale Commc'ns, Inc.*,
No. CV 09-2140PSGJCX, 2009 WL 3346784 (C.D. Cal. Oct. 13, 2009) ........................................................................................................20

*Allen v. City of Beverly Hills*,
911 F.2d 367 (9th Cir. 1990) ..........................................................................13

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
7 Cal. 4th 503 (1994) ........................................................................................4

*Bonin v. Calderon*,
59 F.3d 815 (9th Cir. 1995) ..............................................................................4

*Chodos v. W. Publ'g Co.*,
292 F.3d 992 (9th Cir. 2002) ............................................................................3

*Cordes v. Boulder Brands USA, Inc.*,
No. CV 18-6534 PSG (JCX), 2019 WL 1002513 (C.D. Cal. Jan. 30, 2019) ..........................................................................................................3

*Culp Constr. Co. v. Sposito*,
No. SACV19727JVSADSX, 2019 WL 6357971 (C.D. Cal. July 31, 2019) ..........................................................................................................8

*Dallas & Lashmi, Inc. v. 7-Eleven, Inc.*,
112 F. Supp. 3d 1048 (C.D. Cal. 2015) ............................................................7

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) ............................................................................3

*Elvig v. Calvin Presbyterian Church*,
375 F.3d 951 (9th Cir. 2004) ..........................................................................19

*Est. of Martinez v. Cnty. of Los Angeles*,
No. 2:23-CV-05586-ODW (MAAX), 2026 WL 445537 (C.D. Cal. Feb. 17, 2026) ....................................................................................................20

*Greka Integrated, Inc. v. Lowrey*,
  133 Cal. App. 4th 1572, 35 Cal.Rptr.3d 684 (2005) ..............................................4

*Kremen v. Cohen*,
  337 F.3d 1024 (9th Cir. 2003) ..............................................................................4

*Nguyen v. Stephens Inst.*,
  529 F. Supp. 3d 1047 (N.D. Cal. 2021) ...............................................................4

*Rattagan v. Uber Techs., Inc.*,
  17 Cal. 5th 1 (2024) ..............................................................................................6

*Rivera v. NIBCO, Inc.*,
  364 F.3d 1057 (9th Cir. 2004) ............................................................................19

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
  34 Cal. 4th 979 (2004) ..................................................................................4, 6, 7

*SG Blocks, Inc. v. Hola Cmty. Partners*,
  521 F. Supp. 3d 881 (C.D. Cal. 2021) ..................................................................7

*Sisseton-Wahpeton Sioux Tribe of Lake Traverse Indian Rsrv., N.
  Dakota & S. Dakota v. United States*,
  90 F.3d 351 (9th Cir. 1996) ...................................................................................3

*Upside Health, Inc. v. Cabeau, Inc.*,
  2023 WL 7278288 (Cal. Ct. App. Nov. 3, 2023) ..................................................8

*Voris v. Lampert*,
  7 Cal. 5th 1141 (2019) ...........................................................................................8

*Zixiang Li v. Kerry*,
  710 F.3d 995 (9th Cir. 2013) .................................................................................3

**Rules**

C.D. Cal. Local Rule 7-3 .........................................................................17, 18, 19

C.D. Cal. Local Rule 7-4 .......................................................................................17

Rule 26(b)(1)...........................................................................................................19

## I.    **INTRODUCTION**

After originally filing suit on January 14, 2025, Ascentium waited 405 days to seek leave to amend its complaint to (1) add a new party, Andrew Williams; and (2) add an entirely new claim against Washworld, this time the intentional tort of conversion.

This is not the first time that Ascentium brought a claim against Andrew Williams ("Williams").  Indeed, Ascentium brought suit against Williams in its original complaint, but then inexplicably failed to serve him, even though defendant Jose Rene Ortiz ("Ortiz") sued Williams and was able to serve him many months ago. Williams did not appear.  Now, Ascentium seeks a do-over with Williams, and asks the parties and this Court to ignore Ascentium's previous and unexplained failure to serve Williams and extend the schedule to allow time for another attempt at service and a response, which would blow up the schedule and push the case well in 2027, all for a party that probably will again not appear.

Ascentium's new conversion claim against Washworld fares no better. Ascentium itself told Washworld the money was for customer Car Wash Management.   Washworld had no idea that Car Wash Management was misrepresenting facts or committing fraud.  So when Washworld applied the funds to the Conserv Fuel order, it was simply following instructions from Car Wash Management—***the same party that Ascentium specifically identified***. Washworld's actions can hardly be considered a wrongful taking of Ascentium's property. Ascentium is clearly trying to improperly shift its losses caused by Car Wash Management's fraud onto Washworld—a party that did nothing wrong.

Ascentium's attempt to add a claim for conversion is an exercise in futility for several reasons.  ***First***, this new claim merely repackages Ascentium's breach of contract claim against Washworld into a tort theory, but the economic loss rule requires Ascentium to recover in contract for purely economic loss due to unmet

1

expectations, unless Ascentium can demonstrate harm above and beyond a broken contractual promise. And this is where Ascentium's proposed pleading fails. That is, Ascentium never alleges any such independent duty or harm arising from principles of tort law. As such, Ascentium's conversion claim is barred.

*Second*, Ascentium cannot establish an "ownership or right to possession of the property," a requirement for conversion. Here, Ascentium sent the funds to Washworld for Car Wash Management. There were no restrictions placed on the funds—*e.g.*, they were not escrowed—and Ascentium only specified the funds were for financing obtained by Car Wash Management. As such, Ascentium had no ownership right in the funds once the funds were disbursed to Washworld, only a security interest in the equipment and an ownership or right to possess the repayment of the loan. Ascentium cannot sue Washworld for conversion of loan proceeds simply because the borrower (Car Wash Management) misused such loan proceeds.

*Third*, Ascentium cannot show any wrongful dominion of the funds by Washworld, another element of conversion. Again, the funds were earmarked for customer Car Wash Management, so Washworld did not act outside of its authority when Car Wash Management instructed Washworld on the disbursement of the funds, especially given Washworld had no knowledge of Car Wash Management's fraud.

Finally, Ascentium's motion should be denied because of Ascentium's undue delay and prejudice to Washworld. In the almost nine months between service on Washworld and this filing, all parties have engaged in motion practice and issued and responded to discovery requests. Permitting Ascentium to amend its complaint to add a new party and claim would prejudice Washworld by forcing accelerated and duplicative discovery with few months remaining until fact discovery closes, requiring Washworld to delay taking depositions, disrupting the scheduled mediation, and delaying resolution of the case into 2027. Ascentium's request is

WASHWORLD, INC.'S RESPONSE IN OPPOSITION TO MOTION FOR LEAVE TO AMEND
CASE NO. 2:25-CV-00359-CAS-KS

particularly egregious here given that it could have served Williams long ago, and its new conversion claim could have been brought when it filed its breach of contract claim, because the facts supporting breach of contract are the same facts Ascentium relies on for its conversion claim—there is nothing new.

For all of the forgoing reasons, the Court should deny Ascentium leave to amend its pleadings.

## II.    LEGAL STANDARD

"Although, under Federal Rule of Civil Procedure 15(a)(2), leave to amend should be 'freely' given, that liberality does not apply when amendment would be futile." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 968 (9th Cir. 2016); *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013). A court may also consider whether leave to amend would cause undue delay or prejudice to the opposing party. *Sisseton-Wahpeton Sioux Tribe of Lake Traverse Indian Rsrv., N. Dakota & S. Dakota v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). It is within the discretion of district courts to deny leave to amend when the "new" facts sought to be added were available to the plaintiff at the time of an earlier pleading. *Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6534 PSG (JCX), 2019 WL 1002513, at *4 (C.D. Cal. Jan. 30, 2019); *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("The district court denied the motion, finding that those 'new' facts had been available to Chodos even before the first amendment to his complaint. Given this finding, the district court's conclusion that the motion to amend was made after undue delay did not constitute an abuse of its discretion . . . We therefore affirm the district court's denial of Chodos's motion.").

## III.    ARGUMENT

### A.    Leave to Amend Is Futile

"Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Leave to amend

should be denied because Ascentium cannot state a claim for conversion as a matter of law.

"Conversion is the wrongful exercise of dominion over the property of another." *Greka Integrated, Inc. v. Lowrey*, 133 Cal. App. 4th 1572, 1581, 35 Cal.Rptr.3d 684 (2005) (citation omitted). To state a claim for conversion, Ascentium must allege the following elements: (1) ownership or right to possession of the property; (2) wrongful disposition of the property right; and (3) damages. *Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003).

### 1. Ascentium's Conversion Claim Fails Because Ascentium Cannot Recover in Tort for a Breach of Duties that Restate Contractual Obligations

The California Supreme Court has established that "[c]onduct amounting to a breach of contract becomes tortious ***only when it also violates an independent duty arising from principles of tort law***. The law imposes the obligation that every person is bound without contract to abstain from injuring the person or property of another, or infringing upon any of his rights. ***This duty is independent of the contract....[A]n omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty***." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515 (1994) (emphasis added) (internal quotation marks omitted); *Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1058 (N.D. Cal. 2021). Further, "[t]he economic loss rule requires a [plaintiff] to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate *harm* above and beyond a broken contractual promise." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004). In the absence of such independent duty or harm, Ascentium must seek relief through its breach of contract claim. Because Ascentium seeks tort-based recovery based on an alleged breach of contract, and because Ascentium does not allege any independent duty, the economic loss rule bars its conversion claim, which is futile.

Here, Ascentium brings a claim for breach of contract against Washworld, alleging that Ascentium and Washworld entered into a contract, the Funding Instructions, where Washworld purportedly agreed that funds received from Ascentium would be used to pay purchase orders, invoices, or quotes for an "application transaction", and that Washworld would return any funds to which it was not entitled. (ECF No. 1 ¶ 16; ECF No. 146 at Page ID 1601 ¶ 16). Ascentium contends Washworld breached the contract by failing to return the funds sent on or around March 11, 2024 to which Washworld was not entitled. (ECF No. 1 ¶¶ 57-61; ECF No. 146 at Page ID 1609-10, ¶¶ 58-61). Ascentium seeks to recover $309,054.52 for its breach of contract claim.

Remarkably, Ascentium now simply relabels the same conduct as conversion. Ascentium begins its conversion claim by explicitly acknowledging the purported contract, alleging "Washworld had executed the Funding Instructions with Ascentium so that in any transactions where it was the supplier of equipment, the loan proceeds for the borrower would be paid not to the borrower but to Washworld as the supplier in accordance with the terms of the Funding Instructions." (ECF No. 146 at Page ID 1611 ¶ 68). Ascentium's conversion claim characterizes the same sequence – the failure to return funds sent on or around March 11, 2024 – as wrongful dominion over the same $309,054.52 payment (ECF No. 146 at Page ID 1611-12, ¶¶ 66–75), and both causes of action seek the same dollars with interest. (*Compare* ECF No. 1 at Prayer for Relief *with* ECF No. 146 at Prayer for Relief).[1] This impermissibly seeks tort recovery for an alleged breach of duties that merely restate contractual obligations.

Ascentium's motion for leave to amend must be denied because Ascentium cannot pursue tort-based relief. Critically, there are no allegations in the proposed

---

[1] Ascentium seeks the same $309,054.54 in every single cause of action against Washworld. (*See* ECF No. 146 at Page ID 1613).

pleading of a tort duty independent of contract. And Ascentium alleges only economic loss; there is no claim of personal injury or property damage beyond contractual expectations. Under *Rattagan*, tort recovery is barred where the asserted duty to remit funds arises solely from a breach of contract, and the injury is purely economic. *See Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 20–21 (2024) ("Given the tension created by the policy of assuring predictability in contractual relations and the expansive scope of potential tort recovery, the economic loss rule was developed to ensure that the law of contract would not 'drown in a sea of tort.' 'The rule itself is deceptively easy to state: ***In general, there is no recovery in tort for negligently inflicted "purely economic losses," meaning financial harm unaccompanied by physical or property damage***.' Or, as *Robinson* phrased the rule: '[t]he economic loss rule requires a [contractual party] to recover in contract for purely economic loss due to disappointed expectations, unless [the party] can demonstrate harm above and beyond a broken contractual promise.' ***As we explain in greater detail below, under the economic loss rule, tort recovery for breach of a contract duty is generally barred unless two conditions are satisfied. A plaintiff must first demonstrate the defendant's injury-causing conduct violated a duty that is independent of the duties and rights assumed by the parties when they entered the contract. Second, the defendant's conduct must have caused injury to persons or property that was not reasonably contemplated by the parties when the contract was formed***.") (emphasis added).

Although California recognizes a narrow exception to the economic loss doctrine for fraud or affirmative misrepresentations, this exception is limited to cases where ***the defendant's*** conduct constitutes an independent tort, and Ascentium's original and proposed amended complaint do not bring a claim for fraud against Washworld. (*See generally* ECF No. 1 and ECF No. 146). And Ascentium alleges that Washworld did not contact Ascentium following the March 11, 2024 payment,

so Ascentium cannot point to any affirmative misrepresentation by Washworld regarding the funds. (ECF No. 146 at Page ID 1612 ¶ 73). Accordingly, Ascentium has failed to allege an independent duty, the economic loss rule bars its claim, and no exceptions apply. *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 993 (2004) ("Our holding today is narrow in scope and limited to a defendant's affirmative misrepresentations on which a plaintiff relies and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss.").

Ascentium's conversion claim fails as a matter of law, and leave to amend must be denied. *See, e.g.*, *SG Blocks, Inc. v. Hola Cmty. Partners*, 521 F. Supp. 3d 881, 893 (C.D. Cal. 2021) ("Here, SG Blocks's claims for conversion, misappropriation of trade secrets, and negligence (against HOLA) are barred by the economic loss rule because ***each claim seeks relief for the same economic harm resulting from the alleged breach of the Agreement***—namely, that HOLA kept and installed the modular shipping containers without paying SG Blocks. For instance, with its conversion claim, SG Blocks alleges HOLA converted 'sustainable building systems and structures created through ... modification of cargo shipping containers' when it 'failed and refused' to return the materials to SG Blocks . . . ***Plainly, SG Blocks's conversion, misappropriation, and negligence claims against HOLA seek redress via tort law for the same harm alleged in SG Blocks's breach of contract claim—namely, compensation for goods or services provided under the Agreement. Thus, those claims are barred by the economic loss rule, and the Court finds that no amendment could cure this deficiency***.") (emphasis added); *Dallas & Lashmi, Inc. v. 7-Eleven, Inc.*, 112 F. Supp. 3d 1048, 1060–61 (C.D. Cal. 2015) ("Further, it is clear that Plaintiffs' sought after remedy for Defendant's alleged conversion is compensation per the parties' oral contract. Because '[an] obligation to pay money may not be enforced by a conversion action,' ***conversion is not the***

WASHWORLD, INC.'S RESPONSE IN OPPOSITION TO MOTION FOR LEAVE TO AMEND
CASE NO.  2:25-CV-00359-CAS-KS

*appropriate claim for Plaintiffs to collect the outstanding balance allegedly owed for their franchise*. Thus, the conversion claim is DISMISSED *without leave to amend*.") (emphasis added); *Culp Constr. Co. v. Sposito*, No. SACV19727JVSADSX, 2019 WL 6357971, at \*4 (C.D. Cal. July 31, 2019) ("A conversion claim will only lie where the plaintiff's interest in the property preexists the contract. *If the duty to return arises 'as a result of the contract, the claim is not cognizable.' Since the duty to return arises as a result of the contract, Culp's conversion claim is barred by the economic loss rule, and the Court declines to enter default judgment in Culp's favor on its claim for conversion*.") (emphasis added).

### 2.    Ascentium Lacked A Possessory Right to the Funds.

Under California law, "the simple failure to pay money owed does not constitute conversion," and "a mere contractual right of payment, without more," is insufficient; the plaintiff must identify a specific, identifiable fund in the defendant's hands to which the *plaintiff has a present possessory right*. *Upside Health, Inc. v. Cabeau, Inc.*, 2023 WL 7278288, at \*5 (Cal. Ct. App. Nov. 3, 2023) (quoting and applying *Voris v. Lampert*, 7 Cal. 5th 1141, 1150–52 (2019)). Ascentium's own allegations defeat its claim that it had an "ownership or right to possession of the property" at the time of the alleged conversion.

Ascentium alleges it wired $309,054.52 to Washworld in March 2024 pursuant to its financing arrangement with Car Wash Management. (ECF No. 146 at Page ID 1602 ¶ 18). When Ascentium transferred the funds to Washworld, title of the funds were transferred, especially given that the funds were not escrowed. Indeed, Ascentium and Car Wash Management's equipment finance documents[2]

---

[2] The proposed Amended Complaint references these documents as exhibits ("True and correct copies of the EFA and the other documents described in this paragraph are attached hereto collectively as Exhibit "1" and incorporated herein by this reference.") but failed to append them to its motion. Nevertheless, they are appended to the original complaint. (ECF No. 146 at Page ID 1561-1566).

confirm that Ascentium's protected property interest was not to the money disbursed to Washworld, but instead was to the collateral (*i.e.*, the financed equipment) securing Car Wash Management's obligations, and a future interest in repayment from Car Wash Management:

- "COLLATERAL: Items of equipment, inventory and personal property related thereto as generally described herein… a more detailed description of the property being financed shall be maintained by us among our books and records… Personal Property Description: CONVEYOR & EQUIPMENT FOR BAY." (ECF No. 1 at Ex. 1 Page ID 17.)

- "Security Interest: You hereby grant to us a security interest under the Uniform Commercial Code ('UCC') in the Collateral and all accessories and additions thereto and replacements thereof and all proceeds and products of the foregoing. Such security interest is granted to secure payment and performance by you of your obligations hereunder." (ECF No. 1 at Ex. 1 § 3 Page ID 17).

- Personal Property: The Collateral will be and shall remain personal property… You shall keep the Collateral free from any and all liens and encumbrances other than those in our favor. You hereby irrevocably authorize us… to file… any financing statement(s) or security agreement(s) with respect to the Collateral. (ECF No. 1 at Ex. 1 § 8 Page ID 17).

- "PAYMENT SCHEDULE: 1 @ $34,339.71, 71 @ $5,918.76" (ECF No. 1 at Ex. 1 Page ID 17)

- "The Financed Amount is hereby changed from $343,394.23 to $346,904.75. The Payment Schedule is hereby changed from 1 @ $34,339.71, 71 @ $5,918.76 to 1 @ $34,339.71, 1 @ $5,918.76, 70 @ $5,987.29" ((ECF No. 1 at Ex. 3)

The Equipment Finance Agreement reflects that Car Wash Management granted Ascentium a security/possessory interest in the ***equipment collateral*** to secure repayment under the finance agreement. The documents do not vest Ascentium with ownership or a continuing possessory right in funds once disbursed. Upon transfer, Ascentium relinquished any immediate possessory interest in those funds. Its remaining right was repayment from Car Wash Management or a possessory interest in collateral, not to the funds sent to Washworld.

Although Ascentium might claim the Funding Instructions required Washworld to remit funds to which it was not entitled, Ascentium's own allegations demonstrate that Ascentium, nor Washworld, discovered Car Wash Management's fraud until months later, with Ascentium first reaching out to Washworld in May 2024 and declaring the Equipment Finance Agreement in default in October 2024 (ECF No. 146 at Page ID 1603-04 ¶¶ 23, 29). Ascentium cannot claim Washworld "should have asked" or "should have known" that Washworld was not entitled to funds when Washworld had no obligation to ask questions. Ascentium's conversion claim is purely an attempt to shift Ascentium's loss due to Car Wash Management's fraud onto Washworld.  In other words, a lender such as Ascentium cannot sue Washworld for conversion of loan proceeds simply because the borrower (Car Wash Management) misused such loan proceeds.

Ascentium pleads no facts to support ownership or an immediate possessory right to the same dollars after disbursement; to the contrary, it alleges an ACH payment into Washworld's account and attempts to manufacture an obligation that Washworld should have contacted Ascentium. On these facts, Ascentium only has a future expectancy in Car Wash Management repaying the loan and a security interest in the collateral.

### 3.   There Was No Wrongful Dominion.

Ascentium cannot show any wrongful dominion of the funds by Washworld. Here, Ascentium sent the funds to Washworld and told Washworld that the funds were earmarked for customer Car Wash Management. Washworld had no knowledge of any misrepresentation or fraud on Car Wash Management's part. When Washworld applied the funds to the Conserv Fuels order, it was simply following instructions from Car Wash Management—*the distributor that Ascentium specifically identified*. There was no wrongful dominion on Washworld's part. It was not as if Washworld knew funds were earmarked for one project but then knowingly applied them to a different project.

Ascentium's conversion theory fails because it crafts a retroactive narrative that Washworld "misapplied" funds entirely based on hindsight. Ascentium alleges it wired funds to Washworld on or around March 11, 2024 under the Equipment Finance Agreement between Ascentium and Car Wash Management. (ECF No. 146 at Page ID 1599, 1602 ¶¶ 12, 18). Ascentium then alleges that Ascentium reached out for the first time about the purported order on May 23, 2024, when it first sent Washworld the "quote" it had received from Car Wash Management. (ECF No. 146 at Page ID 1603 ¶ 23.)

Based on information Ascentium learned only after that outreach, Ascentium claims that Washworld "misapplied" funds. (*See generally* ECF No. 146 at Page ID 1611-12 at Count VIII). Ascentium further asserts that Washworld should have directed inquiries to Maria Negri to learn about the specific purpose (a purpose Ascentium did not specify), but the only reference to Ms. Negri appears in Ascentium's Payment Notification email—not in the contract Ascentium asserts governs (the Funding Instructions), which would not trigger any obligation by Washworld. (ECF No. 146 at Page ID 1601-02, 1612 ¶¶ 17, 19, 73 ).

Unable to show that Washworld had a contractual duty to affirmatively ask

questions (as opposed to Ascentium providing the necessary transaction information up front), Ascentium alleges vague "custom and practice" from prior dealings. Yet the proposed complaint pleads no specific facts or previous examples to support those allegations, rendering them conclusory. Against that backdrop, the proposed complaint's own chronology shows Ascentium voluntarily wired the funds on or around March 11, 2024 and made no demand or revocation until after Washworld had already applied $132,509.09 to a Conserv Fuels order and remitted $176,552.71 to CWM—facts that negate any "wrongful dominion at the time of taking."

**B.      Leave to Amend Should Be Denied Because The Proposed Amended Complaint Is Not Based on New Facts, and Amendment Would Prejudice Washworld**

Ascentium's proposed amendment is not based on newly-discovered facts. Ascentium waited **405 days** between filing the operative Complaint and seeking leave to file an Amended Complaint even though all supporting allegations were present in the operative Complaint. This delay would inflict prejudice on Washworld, including accelerated and duplicative discovery, deposition re-sequencing, potentially resetting mediation, and pushing trial into 2027. This Court should deny Ascentium's motion.

The Ninth Circuit has consistently held that undue delay – particularly when a party seeks to add claims based on facts known at the time of the original complaint – can justify denial of leave to amend, especially when the delay is substantial and unexplained. *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990) ("Finally, we observe that even if we believed Allen's new arguments might not be futile, we would not reverse the district court. We have held that a district court does not abuse its discretion in denying a motion to amend a complaint . . . when the movant presented no new facts but only new theories and provided no satisfactory explanation for his failure to fully develop his contentions originally.") (internal

quotation marks omitted).

Here, there is nothing new with regard to Ascentium's repeat claim against Williams. Ascentium brought suit against Williams in its original complaint and is re-raising the same claim here (fraud). Tellingly, Ascentium fails to explain why it could not have served Williams the first go around, which is not surprising because there is no rational explanation. Indeed, Oritz had no problem serving Williams.

Likewise, every supporting factual allegation underlying the new conversion claim was already pleaded in the Complaint filed January 14, 2025. Ascentium now repackages these same facts as conversion:

| Paragraph of Proposed Amended Complaint and Allegations | Where the same fact appears in the complaint filed January 14, 2025. |
|---|---|
| ¶ 67 – "Plaintiff entered into the EFA with CWM which EFA was guaranteed by Ortiz and WCCW to make payments for the delivery of the Equipment which was collateral for the loan evidenced by the EFA" | ¶ 12 – "On or about January 10, 2024, CWM, as 'Debtor,' with a listed address of 310 S. Vincent Ave., West Covina, CA 91790, entered into Equipment Financing Agreement No. 2763169 (the 'EFA' with Ascentium in order to finance the acquisition of equipment for the financed amount of $343,394.23 to be repaid with one initial payment of $34,339.71 and 71 monthly payments of $5,918.76." <br><br> ¶ 34 – "In connection with Debtor executing and delivering the EFA, Ortiz made, executed, and delivered to Ascentium his Personal Guaranty." <br><br> ¶ 40 – "In connection with Debtor executing and delivering the EFA, WCCW made, executed, and delivered to Ascentium its Guaranty" |
| ¶ 68 – "Washworld had executed the Funding Instructions with Ascentium | ¶ 16 – "In connection with Ascentium's past dealings with Washworld, on or |

13

| | |
|---|---|
| so that in any transactions where it was the supplier of equipment, the loan proceeds for the borrower would be paid not to the borrower but to Washworld as the supplier in accordance with the terms of the Funding Instructions" | about February 28, 2023, Washworld, by its controller, Jon Tyezkowski, an authorized representative, executed and delivered to Ascentium written "Funding Instructions" |
| ¶ 69 – "As stated above, in accordance with the EFA, the Commencement Agreement, the verbal verification that was done by Ortiz representing the Equipment was delivery [*sic*] and received and Ascentium was instructed to pay the $309,054.52 to Washworld." | ¶ 14 – "On or about March 11, 2024, Ortiz verbally acknowledged to Ascentium and Ascentium documented that communication with Ortiz that the Equipment had been received by CWM." |
| ¶ 70 – "Washworld was paid the $309,054.52 on or about March 12, 2024, and also received the Payment Notification setting forth why this sum was being paid to Washworld. At no time after the $309,054.52 was paid to Washworld was Ascentium contacted by Washworld as to why this payment was received from Ascentium. Instead, Washworld contends that it contacted Williams who instructed Washworld to apply the $132,509.09 to the Conserv Fuels alleged outstanding order and the $176,552.71 was remitted to CWM and never paid to Ascentium." | ¶ 18 – "Ascentium in fact sent payment by Automated Clearinghouse Debit ("ACH") to Washworld in the amount of $309,954.00 on March 11, 2024 (the "Mistaken Payment") for posting to the Washworld bank account listed in the Funding Instructions, and, on information and belief, same was posted and credited to such account on March 12, 2024."<br><br>¶ 21 – "Instead of contacting Ascentium regarding the Mistaken Payment as stated in the Payment Notice and as required by the Funding Instructions, Ascentium is informed and believes and therein alleges that Washworld contacted CWM regarding the Mistaken Payment and was told by CWM that the payment should be applied to an order by one of its customers in Chula Vista, California, that had a remaining balance due of $132,509.09 and that Washworld applied a portion of the Mistaken Payment to pay that balance and sent a |

14

| | payment back to CWM in the amount of $176,552.71 on March 19, 2024." |
|---|---|
| ¶ 73 – "At the time that the $309,054.52 was wired to Washworld, and Washworld contended that it did not know why this money was sent to Washworld it contended that it did not know why it was sent by Ascentium even though it had the ability to contact Ascentium by and through Marie Negri or anyone else and also refer to the Finance Contract # on the Payment Notification. Moreover, Washworld had received many such Payment Notifications from Ascentium in the past and Ascentium is informed and believes and thereon alleges that it did not ever have any such issues with Washworld in the past. And the Funding Instructions specifically state that the funds must be tied to a specific transaction or Order and the payment made by Washworld thereafter was not in accordance with the terms of the Funding Instructions." | ¶ 17 – "If you have questions about this payment, please contact your Vendor Services Representative, Maria Negri, at MariaNegri@ascentiumcapital.com or (281) 902-1938."<br><br>¶ 17 – Identifying (1) "Invoice #: "Car Wash Management, Inc."; (2) "Customer Name: Car Wash Management, Inc."; (3) "Finance Agreement #: 2763169"<br><br>¶ 20 – "Ascentium is informed and believes and therein alleges that when Washworld received the Mistaken Payment, it knew, had reason to know and/or should have known that there had been no order for equipment from CWM for either itself or a customer of CWM in the amount of the Mistaken Payment or in any amount even approaching the amount of the Mistaken Payment."<br><br>Ex. 4 – "Payee agrees any funds received from Ascentium are for the sole purpose of advancing funds for Payee's customer to pay the purchase orders, invoices, quotes or proposals for the application transaction. If funds to which Payee is not entitled are deposited into Payee's account or otherwise received by Payee, Payee agrees to promptly remit any such funds to, or as directed by Ascentium." |
| ¶ 74 – "Instead, the money was converted by Washworld by first paying on a different Order and it got | ¶ 21 – "Instead of contacting Ascentium regarding the Mistaken Payment as stated in the Payment Notice and as |

15

| | |
|---|---|
| the benefit of being paid on an Order that the money was not intended for. Second, Ascentium is informed and believes and thereon alleges that it used the $176,552.71 to pay a commission to CWM which was a further direct benefit to Washworld" | required by the Funding Instructions, Ascentium is informed and believes and therein alleges that Washworld contacted CWM regarding the Mistaken Payment and was told by CWM that the payment should be applied to an order by one of its customers in Chula Vista, California, that had a remaining balance due of $132,509.09 and that Washworld applied a portion of the Mistaken Payment to pay that balance and sent a payment back to CWM in the amount of $176,552.71 on March 19, 2024." |

Ascentium's attempt to add a new party and a new conversion claim at this late date would impose unnecessary prejudice on Washworld. By the time the motion for leave to amend is heard on March 23, 2026, only three months of fact discovery will remain. If Washworld decides to file a Rule 12 motion as to the new conversion claim, local rules require that motion to be noticed at least 28 days after the responsive pleading deadline, pushing briefing and hearing dates deep into the remaining discovery period. This forces Washworld to conduct accelerated, inefficient discovery while briefing is underway, including postponing depositions so Washworld is not shortchanged by deposing an individual without knowing what claims are actually in Ascentium's case.

Alternatively, the proposed amendment would force an unwanted extension of the case schedule, a schedule Ascentium already requested the parties stipulate to extend previously, requiring trial to be moved into 2027. The prejudice is magnified given the $309,054.52 amount in controversy. Permitting amendment only forces Washworld to expend additional fees to conduct piecemeal litigation for a claim that Ascentium could have raised in its January 14, 2025 complaint and Washworld could have incorporated into initial motion practice and discovery requests.

Together, these scheduling, cost, and strategic burdens strongly weigh against permitting amendment.

Ascentium's attempt to add a new cause of action of conversion based on "new facts" fails because the facts were fully known and pleaded in January 2025. Ascentium cannot sincerely claim it seeks to amend based on newly discovered information, and its belated attempt to recast the same conduct as a tort supports denial of leave for both delay and prejudice.

**C.     Ascentium's Motion Should Be Denied for the Independent Reason that Ascentium Refused to Confer.**

Central District of California Local Rule 7-3 mandates that parties contemplating filing a motion must confer with opposing counsel at least seven days before filing, to discuss the substance of the motion and any potential resolution. See C.D. Cal. L.R. 7-3. Local Rule 7-4 permits the Court to decline to consider a motion that does not comply with Local Rule 7-3. See C.D. Cal. L.R. 7-4. The Court should decline to consider Ascentium' s motion for failure to meaningfully confer.

The timing and scope of Ascentium's communications demonstrate its failure:

- Feb. 7, 2026: Ascentium made its request to extend the deadline to request for leave to file amended pleadings or to add parties, which was its second request to modify this deadline (originally November 14, 2025 (ECF No. 79)). Ascentium requested a 60–90-day extension. (Alper Decl. ¶¶ 5–6.)
- Feb. 13, 2026: Washworld agreed to stipulate to a 30-day extension, subject to Mr. Ortiz's position. (Ex. 4 (email thread, 2/15–2/17/2026)
- Feb. 16, 2026: Ascentium reiterated it wanted at least a 60-day extension. (Ex. 4.)
- Feb. 17, 2026: Washworld asked Ascentium to provide a proposed revised schedule to evaluate the impact of a 60-day extension on

WASHWORLD, INC.'S RESPONSE IN OPPOSITION TO MOTION FOR LEAVE TO AMEND
CASE NO.  2:25-CV-00359-CAS-KS

remaining deadlines. Ascentium declined, asserting an amended complaint might "throw everything off anyway," mentioned adding one new party, and suggested it might rename Andrew Williams despite his prior dismissal for failure to serve. (Ex. 4; *see also* ECF No. 83 dismissing Williams.) Ascentium provided no other information about the proposed amended complaint. That same day, Washworld reiterated it needed a schedule, noted its client was out of office, and reserved rights to object because Ascentium had still not identified the substance of any amendments. Ascentium then said there was no need to stipulate if Washworld would oppose a complaint (a complaint Washworld had not seen); Washworld clarified it was addressing only the extension request. (Ex. 4.)

- Feb. 20, 2026 (3:31 p.m. CT): Ascentium for the first time said it would move for leave to amend. Washworld explained that an email exactly seven days before the cutoff on a Friday afternoon did not satisfy Rule 7-3 because Ascentium had not identified the substance of its motion or provided a proposed complaint to evaluate. Washworld asked for the proposed pleading. Ascentium refused and filed its motion on February 23, 2026. (Ex. 4).

Local Rule 7-3 requires a meaningful conference of, including disclosure of the substance of the motion so the parties can discuss and potentially narrow the issues. Ascentium did not comply, denying Washworld the opportunity to outline any of the positions it now asserts in this opposition. Ascentium chose to withhold the proposed amended complaint, preventing Washworld from taking a position on the motion until now.

Ascentium's motion also suggests Washworld "refused" to allow use of documents designated as confidential, implying this impeded amendment. (ECF No.

18

146 at 7-8.) But the only prior request Ascentium made regarding the use of designated documents (and even then, the request was untimely[3]) was in connection with Ascentium's motion to dismiss Washworld's amended counterclaims—a motion the Court denied—not in connection with any amended complaint. (Alper Decl. ¶ 5; Ex. 4.) Ascentium *never asked to use confidential documents in an amended pleading* before filing this motion, so that assertion should be disregarded. (Ex. 4.) The emails in Exhibit 4 show a narrow exchange about: (i) how long to extend the amendment deadline, and (ii) how a 60-day extension would affect other dates—not any request to use confidential documents in an amended complaint, and not any refusal by Washworld on that issue.

To the extent Ascentium invokes discovery issues to justify amendment, that argument is irrelevant to Rule 7-3 and, in any event, misconceives the purpose of discovery. *See, e.g., Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expedition[s]'.); *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 968 (9th Cir. 2004) ("In particular, the new rules limit the breadth of discovery that can occur absent court approval. Under Rule 26(b)(1), for example, *discovery must now relate more directly to a "claim or defense"* than it did previously, and "if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved."). Meanwhile, Ascentium's own filing acknowledges that discovery is ongoing and identifies Washworld's productions (800+ pages) while the schedule remains open. (Alper Decl. ¶¶ 5–6 & Ex. 3; Mot. at 7–9.)

This Court should deny or strike Ascentium's motion for leave to amend for

---

[3] Ascentium previously asked to use a document designated as confidential on January 19, 2026, a federal holiday, an issue it did not raise in the parties' January 13, 2026 telephonic conferral on Ascentium's motion to dismiss Washworld's amended counterclaims.

WASHWORLD, INC.'S RESPONSE IN OPPOSITION TO MOTION FOR LEAVE TO AMEND
CASE NO. 2:25-CV-00359-CAS-KS

the intentional failure to follow local rules. *Est. of Martinez v. Cnty. of Los Angeles*, No. 2:23-CV-05586-ODW (MAAX), 2026 WL 445537, at *2 (C.D. Cal. Feb. 17, 2026) ("Local Rule 7-3's direction that the parties meet and confer to discuss the substance and potential resolution of an anticipated motion is not a mere suggestion to be cavalierly set aside when its dictates are inconvenient . . . The Court finds similar consequences appropriate here. Accordingly, the Court exercises its discretion and declines to consider Defendants' Motion, as it does not comply with the Local Rules."); *Alcatel-Lucent USA, Inc. v. Dugdale Commc'ns, Inc.*, No. CV 09-2140PSGJCX, 2009 WL 3346784, at *4 (C.D. Cal. Oct. 13, 2009).

## IV.   CONCLUSION

For the foregoing reasons, Washworld respectfully requests that Ascentium's Motion for Leave to Amend be denied.

Dated: March 2, 2026                    BAKER & HOSTETLER LLP


By:   */s/ Katharine Walton*
      Ava Claypool
      Xitlaly Estrada
      Michael D. Gannon
      Katharine H. Walton

      Attorneys for WASHWORLD, INC.


## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Washworld, Inc., certifies that this brief contains 5,978 words, which complies with the word limit of L.R. 11-6.1.

Dated:  March 2, 2026

**BAKER & HOSTETLER LLP**

By:    /s/ *Katharine Walton*
Katharine Walton

*Attorneys for* WASHWORLD, INC.

WASHWORLD, INC.'S RESPONSE IN OPPOSITION TO MOTION FOR LEAVE TO AMEND
CASE NO.  2:25-CV-00359-CAS-KS

## <u>CERTIFICATE OF SERVICE</u>

I am employed in Chicago, Illinois. I am over the age of eighteen years and not a party to the within-entitled action. My business address is One North Wacker Drive, Suite 3700, Chicago, IL 60606. On March 2, 2026, I served a copy of the within document(s):

**WASHWORLD, INC.'S RESPONSE IN OPPOSITION TO MOTION FOR LEAVE TO AMEND**

☑  **CM/ECF:** I hereby certify that a copy of the foregoing was electronically filed in this case with the clerk of the court and served through the Court's CM/ECF system, which will send notification of this filing to all registered CM/ECF users listed below.

| | |
|---|---|
| Andrew K. Alper (SBN 088876) <br> **FRANDZEL ROBINS BLOOM & CSATO, L.C.** <br> 1000 Wilshire Boulevard, Nineteenth Floor <br> Los Angeles, CA 90017 <br> Telephone:  323-852-1000 <br> Facsimile:   323-651-2577 <br> Email:       *aalper@frandzel.com* | *Attorneys for Plaintiff* <br> REGIONS BANK |
| Lisa Mitts Patrick (SBN 134522) <br> **LAW OFFICE OF LISA MITTS PATRICK** <br> 112 E. Amerige Ave., Suite 313 <br> Fullerton, CA 92832 <br> Telephone:  714-990-3693 <br> Facsimile:   657-234-0012 <br> Email:       *lolmp2021@gmail.com* | *Attorneys for Defendant and Cross Defendant* <br> JOSE RENE ORTIZ |

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on March 2, 2026, at Chicago, Illinois.

*/s/ Katharine Walton*
Katharine Walton

22

CERTIFICATE OF SERVICE
CASE NO.  2:25-CV-00359-CAS-KS