Xitlaly Estrada (SBN 333403)
Ava Claypool (SBN 327059)
**Baker & Hostetler LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone:  310-979-8430
Email:    *xestrada@bakerlaw.com*
          *aclaypool@bakerlaw.com*

Michael D. Gannon (*pro hac vice*)
Katharine H. Walton (*pro hac vice*)
**Baker & Hostetler LLP**
One North Wacker Drive, Suite 3700
Chicago , IL 60606
Telephone:  312-416-6200
Email:    *mgannon@bakerlaw.com*
          *kwalton@bakerlaw.com*

*Attorney for Defendant*
WASHWORLD, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGIONS BANK, dba ASCENTIUM CAPITAL, | CASE NO.: 2:25-CV-00359-CAS-KS |
| Plaintiff, | **DEFENDANT WASHWORLD, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS IN PART PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)** |
| v. | |
| CAR WASH MANAGEMENT, LLC, CAR WASH MANAGEMENT, LLC, WEST COVINA CAR WASH LLC, JOSE RENE ORTIZ, ANDREW PAUL WILLIAMS, WASHWORLD, INC., DOES 1-100, inclusive, | |
| Defendants. | DATE:      May 11, 2026 |
| | TIME:      10:00 AM |
| JOSE RENE ORTIZ, | CTRM:      8D |
| Cross Complainant, | |
| v. | |
| ANDREW PAUL WILLIAMS, CAR WASH MANAGEMENT, LLC, CAR WASH MANAGEMENT, LLC, WASHWORLD, INC., and DOES 1 to 35, inclusive, | |
| Cross Defendants. | |

WASHWORLD, INC.,

      Counter Plaintiff,

    v.

REGIONS BANK, D/B/A ASCENTIUM CAPITAL,

      Counter Defendant.

WASHWORLD, INC.,

      Cross Claimant,

    v.

CAR WASH MANAGEMENT, LLC,

      Cross Defendant.

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................1

II.     ARGUMENT.......................................................................................................1

      A.      ASCENTIUM DOES NOT PLEAD A PRESENT RIGHT TO POSSESSION AT THE TIME OF THE ALLEGED CONVERSION ........................................................................................1

      B.      ASCENTIUM VOLUNTARILY DISBURSED THE FUNDS AND RETAINED ONLY CONTRACTUAL AND SECURITY RIGHTS..................................................................................................2

      C.      THE "FUNDING INSTRUCTIONS" DO NOT A CREATE A PRESENT POSSESSORY INTEREST .................................................3

      D.      ALLEGATIONS OF LATER MISUSE OR BAD FAITH CANNOT RETROACTIVELY CREATE CONVERSION .................5

      E.      ASCENTIUM'S REMAINING ARGUMENTS LACK MERIT .........5

      F.      THE CONVERSION CLAIM FAILS AS A MATTER OF LAW AND CANNOT BE CURED ..............................................................8

III.    CONCLUSION ...................................................................................................8

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## I.    INTRODUCTION

Ascentium does not cure the fundamental defect identified  in Washworld's motion, namely, the First Amended Complaint ("Complaint") fails to allege facts showing that Ascentium had an **immediate right to possession of the funds at the time of the alleged conversion**. Ascentium does not dispute that California conversion law is explicit that this element is required, especially when the alleged property is money.  Rather than addressing this requirement, Ascentium focuses on the alleged misuse of funds after Washworld received payment, invokes language in the Funding Instructions requiring repayment in certain circumstances, and argues that Washworld exercised dominion and control over the funds.

Those arguments miss the point entirely.  Conversion is a possessory tort.  If Ascentium did not retain a present possessory interest when it voluntarily wired the funds pursuant to a secured financing transaction, allegations of later misuse, bad faith, or even breach of contract obligations cannot retroactively transform that payment into conversion.  Because Ascentium pleads—at most—rights to repayment or restitution, and not a present right to possess the funds at the moment of transfer, the conversion claim fails as a matter of law and should be dismissed with prejudice.

## II.    ARGUMENT

### A.    ASCENTIUM DOES NOT PLEAD A PRESENT RIGHT TO POSSESSION AT THE TIME OF THE ALLEGED CONVERSION

As explained in the opening brief, under California law, a claim conversion requires that the plaintiff had ownership or an immediate right to possess the property **at the time of the alleged conversion**. *Voris v. Lampert*, 7 Cal. 5th 1141, 1150, 446 P.3d 284, 290 (2019).  This requirement is especially strict when the alleged property is money, because "a mere contractual right of payment, without more, will not suffice." *Farmers Ins. Exch. v. Zerin*, 61 Cal. Rptr. 2d 707, 709 (Ct. App. 3d Dist. 1997).  The plaintiff must allege a present possessory interest in a specific, identifiable fund—not a right to repayment or reimbursement after the fact.

WASHWORLD'S REPLY I/S/O MOTION TO DISMISS ASCENTIUM'S AMENDED COMPLAINT
CASE NO.: 2:25-CV-00359-CAS-KS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Washworld explained this rule in detail in the opening brief, and Ascentium does not dispute it.  Instead, Ascentium recites the general elements of conversion and focuses almost entirely on whether Washworld exercised dominion and control over the funds.  Dominion and control, however, address the second element of conversion.  They are legally irrelevant unless Ascentium first establishes that the property belonged to it, or that it had an immediate right to possess the money, when Washworld allegedly exercised control.

Neither the Complaint nor the opposition allege facts showing that Ascentium retained such a right after it voluntarily wired the funds to Washworld.

## B.    ASCENTIUM VOLUNTARILY DISBURSED THE FUNDS AND RETAINED ONLY CONTRACTUAL AND SECURITY RIGHTS

Ascentium's own allegations establish that this case arises from a secured equipment financing transaction. (ECF No. 154 ¶ 67.) Under the Equipment Finance Agreement ("EFA"), Ascentium advanced funds at the borrower's (Car Wash Management ("CWM")) request so that Washworld could be paid, in exchange for (i) a right to repayment over time by CWM and guarantors (Mr. Ortiz) and (ii) a security interest in specific equipment. (*Id* ¶¶ 12, 17-18, 27-29, 33-37, 67 ("Plaintiff entered into the EFA with CWM which EFA was guaranteed by Ortiz and WCCW to make payments for the delivery of the Equipment which was collateral for the loan evidenced by the EFA.").)

That structure is dispositive as a matter of law.  Once Ascentium transmitted the ACH payment to Washworld, it no longer possessed the funds and no longer held any immediate right to possess them.  Ascentium's interest shifted to repayment and collateral—classic future and contingent rights that do not support a conversion claim.

Ascentium does not identify any provision of the EFA or related documents stating that Ascentium retained title to, ownership of, or a continuing possessory interest in the funds after disbursement.  Nor does it allege that the payment was made

into escrow, trust, or any segregated account for Ascentium's benefit.  Ascentium's Complaint therefore pleads precisely what California law says is insufficient: a voluntary payment followed by dissatisfaction with how the money was used.

## C. THE "FUNDING INSTRUCTIONS" DO NOT A CREATE A PRESENT POSSESSORY INTEREST

The centerpiece of Ascentium's argument is a one-page document titled "Funding Instructions," which states that any funds received by Washworld to which it is "not entitled" must be remitted to Ascentium.[1]  Even crediting this document at the pleading stage, it does not cure the pleading defect.

### A. A Duty to Remit or Repay Is Not a Present Possessory Right

At most, the Funding Instructions impose a **conditional obligation to return funds** under certain circumstances. That is the language of debt and repayment—not ownership or possession. California courts consistently hold that a contractual duty to return money if conditions are unmet does not mean the payor retained a present right to possess the funds after payment was made.  *California State Emps. Ass'n v. Bogart*, No. 2:14-CV-02494 JAM, 2015 WL 461646, at *2 (E.D. Cal. Feb. 3, 2015); *Tiffin Cherry Hill LLC v. Caviar, Inc.*, No. 20-CV-00403-SK, 2020 WL 12947968, at *3 (N.D. Cal. May 15, 2020).

If every contractual remittance obligation created a possessory interest sufficient for conversion, conversion would swallow breach of contract and restitution. *Tiffin Cherry*, 2020 WL 12947968, at *3. California law has emphatically rejected that result.

Nothing in the Funding Instructions alleges or implies that:

- Washworld was holding Ascentium's money in trust,
- Washworld was acting as Ascentium's agent for purposes of holding funds,

---

[1] In attempting to rely on the Funding Instructions, Ascentium ignores that at the time of the alleged conversion it did not claim the payment was unauthorized or that Washworld was not entitled to the funds. To the contrary, Ascentium alleges it wired the funds pursuant to the EFA and only asserted lack of entitlement months later after Car Wash Management's fraud was discovered.

WASHWORLD'S REPLY I/S/O MOTION TO DISMISS ASCENTIUM'S AMENDED COMPLAINT
CASE NO.: 2:25-CV-00359-CAS-KS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- the money remained Ascentium's property at the moment of receipt, or
- Ascentium could demand immediate possession of the funds at the moment of receipt.

Without such allegations, the Funding Instructions cannot transform a vendor payment into Ascentium's property for purposes of conversion.

## B. Ascentium's Cases Are Inapposite Because They Involve Agents, Trustees, or Escrow-Like Arrangements

The cases Ascentium cites involve materially different relationships—such as agents, trustees, or fiduciaries who received funds for the benefit of another and then exercised dominion inconsistent with that role—not arm's-length recipients of funds paid outright pursuant to a financing transaction. *Plummer v. Day/Eisenberg, LLP*, 184 Cal.App.4th 38, 51-52 (2010) (turning on whether defendant law firm exercised dominion over settlement proceeds "subject to [plaintiff's] attorney's lien," *i.e.*, funds in which another had an immediate possessory interest); *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal.App.4th 384, 395-96 (2007) (explaining that conversion of money typically involves "those who have misappropriated, commingled, or misapplied specific funds held for the benefit of others," such as agents or fiduciaries); *Shopoff & Cavallo LLP v. Hyon*, 167 Cal.App.4th 1489, 1500–1503 (2008) (describing trustee who took "legal possession of the assets of the Recovery, including cash" pursuant to a trust, and emphasizing custodial control over settlement proceeds). Ascentium's cases involve agency or fiduciary settings—such as attorneys or trustees handling settlement proceeds—where conversion depended on a plaintiff's immediate right to possession, a feature absent from the arm's-length payment at issue here.

Here, by contrast, Washworld was a vendor receiving payment in connection with a financing transaction. Once paid, the funds became Washworld's property, subject at most to later contractual claims if payment conditions were violated. Ascentium's cases do not support extending conversion to the situation in this case.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### D.   ALLEGATIONS OF LATER MISUSE OR BAD FAITH CANNOT RETROACTIVELY CREATE CONVERSION

Ascentium focuses primarily on alleged misconduct after Washworld received the funds, including claims that Washworld:

- applied funds to a different transaction, (ECF 154, ¶ 70);
- paid a portion to CWM as a commission, (*id.*); or
- failed to contact Ascentium before doing so, (*id.* ¶ 73).

Even if true, those allegations do not establish conversion.  Conversion does not arise simply because money is later used inconsistently with expectations. The right to possession must exist **at the time of the alleged conversion**, not months later after fraud is discovered or a transaction unravels. *Mindys Cosms., Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010) ("The elements of a conversion claim" include "(1) the plaintiff's ownership or right to possession of the property ***at the time of the conversion***") (emphasis added)). A voluntary payment does not become tortious  retroactively because the deal went bad.

At most, these allegations are relevant to claims sounding in contract, unjust enrichment, or money had and received—claims Ascentium has asserted elsewhere. But California law does not permit Ascentium to recast such claims as conversion merely by alleging wrongful intent or misuse.

### E.   ASCENTIUM'S REMAINING ARGUMENTS LACK MERIT

Ascentium makes a host of additional arguments, but none of them have merit. First, Ascentium claims that Washworld is making the argument that Ascentium is trying to convert its breach of contract claim into the tort of conversion: "The Motion is founded on the underlying theory that a claim for conversion has not been properly pled because 'the economic loss rule requires Ascentium to recover in contract for purely economic loss due to unmet expectations, unless Plaintiff can demonstrate harm above and beyond a broken contractual promise' and somehow Plaintiff's breach of contract claim morphed into the tort of conversion." (ECF No. 158 at 6-7.)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

WASHWORLD'S REPLY I/S/O MOTION TO DISMISS ASCENTIUM'S AMENDED COMPLAINT
CASE NO.: 2:25-CV-00359-CAS-KS

Washworld is not making this argument.[2]  Rather, Washworld's motion is based solely on one issue, namely, that Ascentium never pled the first element of conversion.

Second, Ascentium cites to paragraph 68 of the Complaint. (*Id.* at 8.) But this paragraph deals with the Funding Instructions and the fact that the loan proceeds would be paid to Washworld and not the borrower, CWM.[3]  There are no facts alleged in this paragraph showing or even hinting that Ascentium had an immediate right to possession of the funds at the time of the alleged conversion.  Although Ascentium cites to paragraph 68 of the Complaint, it appears that it is actually relying on the contents of paragraph 70.  But paragraph 70 does not fill in the gap—it only refers to the payment Washworld received and what Washworld allegedly did with the payment thereafter.  (ECF No. 154 ¶ 70.) But as demonstrated above, allegations of later misuse of funds does not give rise to a claim of conversion, which requires that Ascentium had the right to possession at the time of the alleged conversion.  To be clear, like paragraph 68, paragraph 70 is silent on whether Ascentium had an immediate right to possession of the funds at the time of the alleged conversion.

Third, Ascentium again relies on the activities of Washworld after the funds were transferred: "for Washworld to have applied the money to an existing order having nothing to do with loan made to CWM and then this money to CWM as a commission demonstrates the necessary facts of conversion."  (ECF No. 158 ¶ 8.) Ascentium is wrong.  While such allegations may be relevant to the second element of dominion and control over the funds, they are not relevant to the first element of conversion--that Ascentium had an immediate right to possession of the funds at the time of the alleged conversion.

Fourth, Ascentium argues that the "Funding Instructions" "clearly make the

---

[2] The words "economic loss rule" do not appear in Washworld's motion at all.

[3] Paragraph 68 alleges "Washworld had executed the Funding Instructions with Ascentium so that in any transactions where it was the supplier of equipment, the loan proceeds for the borrower would be paid not to the borrower but to Washworld as the supplier in accordance with the terms of the Funding Instructions."

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

case of conversion even more compelling since Washworld was advised of the purpose of the payment and could not be some innocent bystander who has no knowledge of what to do with it." (*Id.* at 8-9.)   Notably, the First Amended Complaint does not support this contention whatsoever. Exhibit 4 to the First Amended Complaint, the Funding Instructions, does not identify any purpose, specific borrower, or specific equipment that formed part of Ascentium's transaction with Car Wash Management. (*See* ECF No. 154 at Ex. 4); *see also Raiser v. Ventura Coll. of L.*, No. CV0900254RGKAGRX, 2009 WL 10692054, at *3 (C.D. Cal. July 9, 2009) ("As stated by the Ninth Circuit, ***the court may disregard allegations in a complaint if they are contradicted by facts in documents attached as exhibits to the complaint***.") (emphasis added) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).). And once again, it makes no difference that the Funding Instructions required the funds to be returned in the event of some condition *months later*.   Critically, the Funding Instructions do not say that Ascentium retained a present right to possess the funds after payment was made.

Fifth, Ascentium relies on paragraph 74 of the Complaint, (ECF No. 158 at 9), but again, that paragraph merely alleges that Washworld did not comply with Funding Instructions by "paying on a different Order" and by using some of the money to allegedly pay a commission.  Yet again, none of this is relevant to the first element of conversion.

Sixth, although Ascentium concedes that Washworld "took possession of the money," Ascentium argues that Washworld had "no right to the $309,054.52 . . . if it was not used for the acquisition of the equipment in the purchase order which is the subject of EFA."  (ECF No. 158 at 9).  Again, these allegations all relate to post-transfer activities, not whether Ascentium retained a present right to possess the funds at the time payment was made.

Seventh, in an apparent attempt to gloss over its own failure to plead the first element of conversion, Ascentium argues another point that Washworld never even

raised in its Motion. Specifically, Ascentium states "[f]or Washworld to contend that that never had dominion and control over this specific sum clearly flies in the face of the facts and any logic or good faith." (ECF No. 158 at 9). Similarly, Ascentium argues that "Washworld's receipt and disbursement of those funds [sic] an act of dominion and control." (*Id*.) Again, this goes to the second element of conversion, a point that Washworld is not arguing here.

Finally, Ascentium argues that "the evidence is clear that [Washworld] received the sum." (*Id.*) Again, this is irrelevant to the instant motion.

## F.   THE CONVERSION CLAIM FAILS AS A MATTER OF LAW AND CANNOT BE CURED

The defect in Ascentium's pleading is not merely some pleading-technicality that can be fixed by amendment. It is legal, not factual. Ascentium cannot amend its Complaint to allege that it retained an immediate right to possess the funds without contradicting:

- the voluntary nature of the payment;
- the secured financing structure of the transaction; and
- its own theory that wrongdoing occurred only after the funds were disbursed.

Because Ascentium's rights, as pleaded, are limited to repayment and restitution—not possession—the conversion claim fails as a matter of law. Amendment would be futile.

## III.   CONCLUSION

Ascentium does not address—let alone cure—the dispositive defect identified in Washworld's motion: Ascentium did not plead an immediate right to possess the funds at the time of the alleged conversion. Its allegations describe a failed financing transaction and a dispute over how paid funds were used, not a possessory tort.

Accordingly, the Court should dismiss Ascentium's conversion claim with prejudice.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Dated:  April 27, 2026          **BAKER & HOSTETLER LLP**

                               By:   */s/ Katharine Walton*
                                     Katharine Walton

                                   Defendant WASHWORLD, INC.

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Washworld, Inc., certifies that this brief contains 2,557 words, which complies with the word limit of L.R. 11-6.1.

Dated:  April 27, 2026          **BAKER & HOSTETLER LLP**

                               By:   */s/ Katharine Walton*
                                     Katharine Walton

                                   Defendant WASHWORLD, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## CERTIFICATE OF SERVICE

I am employed in Cook County, Illinois. I am over the age of eighteen years and not a party to the within-entitled action. My business address is One North Wacker Drive, Suite 3700, Chicago, IL 60606. On April 27, 2026, I served a copy of the within document(s):

**DEFENDANT WASHWORLD, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS IN PART AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**

☑ **CM/ECF:** I hereby certify that a copy of the foregoing was electronically filed in this case with the clerk of the court and served through the Court's CM/ECF system, which will send notification of this filing to all registered CM/ECF users listed below.

| | |
|---|---|
| Andrew K. Alper (SBN 088876)<br>**FRANDZEL ROBINS BLOOM & CSATO, L.C.**<br>1000 Wilshire Boulevard, Nineteenth Floor<br>Los Angeles, CA 90017<br>Telephone:  323-852-1000<br>Facsimile:  323-651-2577<br>Email:      aalper@frandzel.com | *Attorneys for Plaintiff*<br>REGIONS BANK |
| Lisa Mitts Patrick (SBN 134522)<br>**LAW OFFICE OF LISA MITTS PATRICK**<br>112 E. Amerige Ave., Suite 313<br>Fullerton, CA 92832<br>Telephone:  714-990-3693<br>Facsimile:  657-234-0012<br>Email:      lolmp2021@gmail.com | *Attorneys for Defendant and Cross Defendant*<br>JOSE RENE ORTIZ |

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on April 27, 2026, at Chicago, Illinois.

*/s/ Katharine Walton*

WASHWORLD'S REPLY I/S/O MOTION TO DISMISS ASCENTIUM'S AMENDED COMPLAINT
CASE NO.: 2:25-CV-00359-CAS-KS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES