FILED   Case No. 2:25-cv-00359-CAS-KS

2026 APR 21  PM 3: 17

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

**Andrew Paul Williams**

12641 Antioch Rd., Suite #1045

Overland Park, KS 66213

Telephone: (619) 796-6469

Email: andrew@carwashmgmt.com

**Defendant in Pro Per**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| **REGIONS BANK, an Alabama State Bank dba ASCENTIUM CAPITAL,** | **Case No. 2:25-cv-00359-CAS-KS** |
| Plaintiff, | Judge: Hon. Christina A. Snyder |
| v. | **DEFENDANT ANDREW PAUL WILLIAMS'S NOTICE OF MOTION AND** |
| **CAR WASH MANAGEMENT, LLC, a Delaware Limited Liability Company;** | **MOTION TO QUASH SERVICE OF PROCESS OF THE FIRST AMENDED** |

Case No. 2:25-cv-00359-CAS-KS

| | |
|---|---|
| **ANDREW PAUL WILLIAMS, an individual; et al.,**<br><br>Defendants. | **COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[Filed concurrently with Declaration of Andrew Paul Williams; Declaration of Jan Williams; Request for Judicial Notice; [Proposed] Order]**<br><br>Hearing Date: May 18, 2026<br>Hearing Time: 10:00 a.m.<br>Courtroom: 8D, 8th Floor<br><br>Action Filed: January 14, 2025<br>FAC Filed: March 17, 2026<br>Trial Date: December 1, 2026 |

## NOTICE OF MOTION AND MOTION TO QUASH

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on May 18, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8D of the above-entitled Court, located at 350 West 1st Street, Los Angeles, California 90012, defendant ANDREW

PAUL WILLIAMS, appearing in propria persona (hereinafter "Williams"), will and hereby does move this Court for an Order quashing the purported service of the First Amended Complaint ("FAC") upon him, as reflected in the Proof of Service filed by plaintiff Regions Bank dba Ascentium Capital ("Plaintiff" or "the Bank") at Docket No. 156 on April 6, 2026.

This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(5) on the grounds that Plaintiff's purported substituted service on Williams, allegedly effected at 12136 Avenida Sivrita, San Diego, California, on March 31, 2026, is defective and fails to confer personal jurisdiction over Williams for the following independent reasons:

(1) the service was made **eight (8) days after** the Court-ordered service deadline of March 23, 2026 set forth in the Court's March 16, 2026 Order (Dkt. 153);

(2) 12136 Avenida Sivrita is not Williams's dwelling house or usual place of abode within the meaning of Federal Rule of Civil Procedure 4(e)(2)(B) or California Code of Civil Procedure § 415.20(b);

(3) Plaintiff's process server's sole predicate for identifying the Sivrita address as Williams's residence—the registration of two vehicles on the premises—relied on a misidentification of a different person (Williams's father, Paul Williams) as Williams himself;

(4) the process server's "diligence" did not constitute reasonable diligence as required by California Code of Civil Procedure § 415.20(b), consisting of brief, unsuccessful drive-bys on three dates and two stakeouts during which Williams was never observed at the property;

(5) the manner of service was defective because the occupant (a) expressly refused service, (b) was not informed of the contents as required by statute, and (c) physically rejected the documents by pushing them back outside the garage door with her foot—such that no document was ever left in any person's possession or control at the alleged place of service; and

(6) Plaintiff's prior judicial admissions—including its own filings on June 10, 2025 (Dkt. 43) and March 6, 2026 (Dkts. 149/150)—establish that Plaintiff, after fourteen months of attempted service, could not locate Williams at San Diego residential addresses and considered alternative service by publication necessary; Plaintiff cannot now assert that the Sivrita residence constitutes Williams's usual place of abode when its own prior representations to this Court prove otherwise.

This Motion is based upon this Notice of Motion; the concurrently filed Memorandum of Points and Authorities; the Declarations of Andrew Paul Williams and Jan Williams; the Request for Judicial Notice; the complete files and records in

this action; and such further oral and documentary evidence as may be presented at the hearing on this Motion.

Pursuant to Local Rule 7-3, counsel for Williams (as pro per party) attempted meet and confer with counsel for Plaintiff by letter dated April 17, 2026. Counsel for Plaintiff responded but did not agree to withdraw the defective service or stipulate to an extension of time to respond. The parties were unable to resolve the issues presented by this Motion.

Dated: April 20, 2026

Respectfully submitted,

/s/ Andrew Paul Williams

**Andrew Paul Williams**

Defendant in Pro Per

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This is not a close call. Plaintiff's service on Williams fails on at least six independent grounds, any one of which is dispositive under Rule 12(b)(5). The most clear-cut is procedural: the Court's March 16, 2026 Order (Dkt. 153) commanded Plaintiff to serve the First Amended Complaint on Williams within seven days—by March 23, 2026. Plaintiff did not even attempt service until March 24, and did not purport to effect substituted service until March 31—a full eight days past the Court-ordered deadline. This alone defeats service. See Efaw v. Williams, 473 F.3d 1038, 1041 (9th Cir. 2007).

The substantive defects are equally fatal. 12136 Avenida Sivrita is the home of Williams's parents, Paul and Jan Williams. Williams is a 34-year-old adult who moved out of that residence over twelve years ago. He does not pay rent there, does not receive mail there, does not vote there, holds no driver's license registered there. His current address for legal and business correspondence is 12641 Antioch Rd., Suite #1045, Overland Park, KS 66213. Plaintiff's process server identified two vehicles on the premises as belonging to "Paul Williams"—Williams's father, a different person entirely. Williams's full name is Andrew Paul Williams; his father's name is Paul Williams. The process server's conflation of these two individuals is

the sole documentary predicate for his conclusion that the Sivrita address is Williams's "dwelling house or usual place of abode." It is not.

Plaintiff's own prior filings seal the matter. In June 2025, Plaintiff's process server declared under oath that "after due search, careful inquiry and diligent attempts ... I have not been able to effect service" on Williams (Dkt. 43). Plaintiff's counsel simultaneously informed the Court that "Plaintiff may have to apply to the court to serve by publication." And as recently as March 6, 2026, Plaintiff represented to this Court that it had been unable to serve Williams and Car Wash Management, LLC (Dkts. 149, 150). Plaintiff cannot now, three weeks later, claim that the Sivrita residence is Williams's usual place of abode—because if it were, Plaintiff would have served him there months ago.

The motion should be granted and the purported service quashed.

## II.    STATEMENT OF FACTS

### A.    *Procedural Background*

Plaintiff filed this action on January 14, 2025. After more than a year of unsuccessful attempts to serve Williams—including process server declarations in June 2025 stating that Williams could not be located despite diligent efforts (Dkt. 43)—Plaintiff ultimately dismissed Williams without prejudice on September 19, 2025 (Dkt. 83).

On February 23, 2026, Plaintiff filed a motion for leave to file a First Amended Complaint re-adding Williams as an individual defendant (Dkt. 146). On March 16, 2026, this Court granted that motion and ordered Plaintiff to "serve its First Amended Complaint on Williams within seven days of this Order" (Dkt. 153). The Court-ordered service deadline was therefore March 23, 2026. Plaintiff filed the First Amended Complaint on March 17, 2026 (Dkt. 154).

## B. *Plaintiff's Eight-Day-Late Purported Service*

Plaintiff did not attempt service within the seven days allowed. Instead, Plaintiff's process server Richard Foss made three perfunctory drive-by attempts at 12136 Avenida Sivrita, San Diego—the residence of Williams's parents—on March 24, March 25, and March 26, 2026. (Dkt. 156 at p. 2.) No person came to the door and Williams was never observed. Foss was then instructed to make "no further attempts" at the standard three-visit California due-diligence threshold. (Id.)

After inexplicable delays past the Court's deadline, Foss conducted two stakeouts on March 30 and March 31, 2026. (Dkt. 156 at pp. 3-4.) Williams was never observed at the property on any date. On March 31, 2026, at approximately 5:45 p.m., Foss encountered Williams's mother, Jan Williams, as she pulled into her driveway and was getting out of her car. (Jan Williams Decl. ¶¶ 5-6.) Foss asked whether Andrew was present and Mrs. Williams said "no." (Id. ¶ 6.) As Mrs. Williams walked toward her garage, Foss followed her up the driveway at a distance,

holding up his cell phone. (Id.) Believing Foss was recording her, Mrs. Williams expressly told him he was trespassing. (Id.) Foss's own declaration likewise concedes that when he announced "substitute service," Mrs. Williams replied "No you're not." (Dkt. 156 at p. 3.) Mrs. Williams then pressed the button to close her garage door. (Jan Williams Decl. ¶ 7.) As the garage door was closing, Foss said, "I will leave these here," took additional steps forward onto the property, and slid papers onto the ground inside the garage door. (Id.) After the garage door closed, Mrs. Williams re-opened the door, used her foot to push the papers back outside onto the driveway, and closed the garage with the papers outside. (Id. ¶ 9.)

Foss did not disclose this critical fact in his declaration: that Mrs. Williams physically rejected the documents and that no papers ever remained within the control of any person at the location. (Compare Dkt. 156 at pp. 3-4 with Jan Williams Decl. ¶¶ 9-11.)

### C.    The Name-Confusion Error

Foss's entire basis for concluding that 12136 Avenida Sivrita is Williams's residence is his observation of two vehicles in the driveway, which he confirmed were "registered to Paul Williams." (Dkt. 156 at p. 3.) Foss then inferred that those vehicles belonged to the defendant.

Foss was wrong. The vehicles are registered to Paul Williams—Williams's father, who resides at 12136 Avenida Sivrita. (Andrew Williams Decl. ¶¶ 4-6.) The

defendant is Andrew Paul Williams—a different person. Foss's declaration technically says what it says; the inference he drew is what fails. No competent investigation confirming that Andrew Paul Williams, the defendant, resides at Sivrita was ever performed.

### D.    Williams's Actual Residence and Records

Williams does not reside at 12136 Avenida Sivrita. (Andrew Williams Decl. ¶ 3.) He moved out of his parents' home over twelve years ago. (Id.) He does not pay rent there, receive mail there, maintain utilities there, vote there, or hold any driver's license, vehicle registration, or other government-issued record bearing that address. (Id. ¶¶ 3, 7-9.) His current address for legal and business correspondence is 12641 Antioch Rd., Suite #1045, Overland Park, KS 66213. (Id. ¶ 7.) On the date of purported service, March 31, 2026, Williams was not at the Sivrita address and was instead at a lodging establishment elsewhere. (Id. ¶ 10.)

## III.  LEGAL STANDARD

A federal court lacks personal jurisdiction over a defendant who has not been properly served. Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987). On a motion under Rule 12(b)(5), the plaintiff—not the defendant—bears the burden of establishing that service was valid. Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004).

Service on an individual in a judicial district of the United States may be effected by (a) personal delivery, (b) leaving copies at the individual's "dwelling or usual place of abode with someone of suitable age and discretion who resides there," or (c) any manner authorized by the law of the state where the district court is located or service is made. Fed. R. Civ. P. 4(e)(2)(B), (e)(1).

Under California law, substituted service may be used only after "reasonable diligence" to effect personal service. Cal. Code Civ. P. § 415.20(b). Substituted service "at the person's dwelling house, usual place of abode, [or] usual place of business" must be made on "a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address." Id. "Technical compliance with the statutes governing service of process is required." Renoir v. Redstar Corp., 123 Cal. App. 4th 1145, 1150 (2004).

Because strict compliance is required, defective service cannot be cured after the fact, nor can actual notice substitute for proper service. Dill v. Berquist Const. Co., 24 Cal. App. 4th 1426, 1436-37 (1994); Ellard v. Conway, 94 Cal. App. 4th 540, 546-47 (2001).

## IV.  ARGUMENT

### 1. Service Must Be Quashed Because Plaintiff Violated This Court's March 16, 2026 Order Setting a Seven-Day Service Deadline.

The Court's March 16, 2026 Order (Dkt. 153) granted Plaintiff leave to file the First Amended Complaint and expressly ordered that "Plaintiff shall serve its First Amended Complaint on Williams within seven days of this Order." That deadline expired on March 23, 2026. Plaintiff's first documented attempt at service—a drive-by by Foss—occurred on March 24, 2026, one day past the deadline. (Dkt. 156 at p. 2.) Plaintiff's purported substituted service did not occur until March 31, 2026—eight days past the deadline. (Id. at pp. 1, 3.)

The Ninth Circuit has held that courts have "broad discretion" to extend the time for service, but where a court has set a specific deadline and the plaintiff has failed to comply, "good cause" for the extension is required, and "even absent good cause, district courts have discretion to extend time for service." Efaw v. Williams, 473 F.3d 1038, 1041 (9th Cir. 2007). Plaintiff has made no showing of good cause. Plaintiff has never sought an extension of the Court's deadline—before, during, or after the period. The proper remedy for a missed court-ordered deadline is to quash the defective service and require Plaintiff to show cause for its default.

Plaintiff's disregard of the Court's Order is especially stark given that Plaintiff is bound by the specific service deadline the Court imposed in Dkt. 153 and has never sought relief from that deadline. Plaintiff is in no position to claim surprise or hardship.

## 2. Service Must Be Quashed Because 12136 Avenida Sivrita Is Not Williams's Dwelling House or Usual Place of Abode.

Federal Rule 4(e)(2)(B) requires substituted service to occur at the individual's "dwelling or usual place of abode." California law uses nearly identical language. Cal. Code Civ. P. § 415.20(b). The "usual place of abode" is "the place where the person actually lives at the time of service." Ellard v. Conway, 94 Cal. App. 4th 540, 546 (2001). Past residence is insufficient; the address must be the defendant's current home. Evartt v. Superior Court, 89 Cal. App. 3d 795, 801-02 (1979).

Williams does not live at 12136 Avenida Sivrita. (Andrew Williams Decl. ¶ 3.) He moved out over twelve years ago. (Id.) He does not pay rent, receive mail, hold utilities, vote, or maintain any driver's license. (Id. ¶¶ 3, 7-9.) He currently uses his commercial mailbox in Overland Park, Kansas. (Id. ¶ 7.) The Sivrita residence is his parents' home, where he occasionally visits as a guest and where certain childhood belongings remain. (Id. ¶ 4.) That is not enough. "Occasional visits and remnants of childhood do not make" a parent's residence the child's dwelling or usual place of abode. Ellard, 94 Cal. App. 4th at 546-47.

Williams's own sworn declaration establishes that 12136 Avenida Sivrita is not his residence. (Andrew Williams Decl. ¶¶ 3-4, 7-9.) A person's own sworn testimony about his residence is direct and competent evidence. Ellard, 94 Cal. App.

4th at 547. Plaintiff has offered no contrary evidence—only Foss's mistaken inference drawn from the presence of vehicles registered to a different person.

### 3. Plaintiff's Sole Predicate for Identifying Sivrita as Williams's Residence Rests on a Fundamental Misidentification of Williams's Father as Williams.

Foss's declaration offers exactly one documentary basis for concluding that 12136 Avenida Sivrita is Williams's residence: two vehicles on the premises "registered to Paul Williams." (Dkt. 156 at p. 3.) Foss then inferred that those vehicles belonged to the defendant, Andrew Paul Williams.

That inference is wrong on its face. Defendant's full name is Andrew Paul Williams. His father's name is Paul Williams. They are different people. (Andrew Williams Decl. ¶ 5.) Paul Williams—the father—is the registered owner of the two vehicles. (Id. ¶ 6; Jan Williams Decl. ¶ 3.) Paul Williams resides at 12136 Avenida Sivrita with his wife Jan. (Jan Williams Decl. ¶ 2.) Foss's declaration, read carefully, does not claim that either vehicle is registered to Andrew Paul Williams; it states only that they are registered to "Paul Williams." (Dkt. 156 at p. 3.)

The significance is not perjury—Foss's statement may be literally true. The significance is that Foss's entire methodology collapses. The Bank's process server conducted no investigation confirming that Andrew Paul Williams, as opposed to his father Paul Williams, resides at the Sivrita address. No mail in Andrew's name was observed. No witness confirmed Andrew's residence. No database search

confirming Andrew's address at Sivrita was attached. The "home confirmation" rests on a name-confusion error about a completely different individual. A conclusion supported by nothing more than a misidentification cannot establish the jurisdictional fact Plaintiff must prove.

## 4. **Plaintiff's "Diligence" Was Legally Insufficient to Justify Substituted Service.**

Substituted service under California Code of Civil Procedure § 415.20(b) is permitted only "[i]f a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served." Two or three perfunctory attempts are generally insufficient; "[t]wo or three attempts to personally serve a defendant at a proper place ordinarily qualif[y] as 'reasonable diligence'" only when the attempts are meaningful and the address has been confirmed. Bein v. Brechtel-Jochim Grp., Inc., 6 Cal. App. 4th 1387, 1391-92 (1992).

Foss's declaration documents: a 6:05 p.m. drive-by on March 24 with "no answer"; a 7:57 a.m. drive-by on March 25 with no one home; a 1:35 p.m. drive-by on March 26 with "no activity or movement"; and then "no further attempts" per counsel's direction. (Dkt. 156 at p. 2.) After a silent gap of three days (during which the Court-ordered deadline of March 23 already had passed), Foss conducted a four-hour stakeout on March 30 observing nothing and no one (id. at p. 3), and a three-

hour stakeout on March 31 during which Williams was again never seen at the property (id.). In total, Foss produced zero confirmed sightings of Williams during five days of surveillance at the alleged "residence."

Those facts do not establish that Williams could not be personally served at his actual residence with reasonable diligence—they establish that Williams does not live at the address being watched. No pre-service database check, no skip trace report, no employer or business-address attempt, and no attempt at any current addresses are documented. Plaintiff's diligence, such as it was, was directed at the wrong address and generated no evidence connecting Williams to the Sivrita residence. This falls below the statutory threshold. Judicial Council of Cal. v. Superior Court (Alcock), 61 Cal. 4th 1172, 1180 (2015) (substituted service requires reasonable diligence "directed to the defendant's actual residence").

## 5. The Manner of Purported Service Was Independently Defective.

Even if the Sivrita address qualified (it does not), the manner of attempted service was independently invalid in two separate respects.

### (a)   The occupant refused service and physically rejected the documents.

Foss's own declaration concedes that when he announced substituted service, Mrs. Williams responded: "No you're not." (Dkt. 156 at p. 3.) Mrs. Williams's declaration adds that she had, moments before, already told Foss he was trespassing

on her property. (Jan Williams Decl. ¶ 6.) What Foss omits is what Mrs. Williams did next: after Foss took additional steps forward to slide papers onto the garage floor, Mrs. Williams re-opened the garage door and used her foot to push the papers back outside onto the driveway. (Id. ¶¶ 7, 9.) The papers therefore never came to rest in any person's possession, custody, or control at the alleged place of service. They ended up on the exterior driveway of a garage belonging to a person who is not the defendant, after being expressly rejected both verbally and physically.

Substituted service requires that the documents be "left with" a member of the household. Cal. Code Civ. P. § 415.20(b). "Left with" means delivered to—not pushed onto the floor and then pushed back out by the same occupant. Where an occupant refuses service and physically rejects the documents, service is not complete and must be quashed. Bein, 6 Cal. App. 4th at 1392-93; Trackman v. Kenney, 187 Cal. App. 4th 175, 184 (2010).

### (b)    Entry into the garage constituted trespass.

Mrs. Williams's declaration establishes that Foss's entry onto her property was a non-consensual trespass, identified as such contemporaneously. As Foss followed her up the driveway holding up his cell phone, Mrs. Williams expressly told him "he was trespassing." (Jan Williams Decl. ¶ 6.) Foss did not leave. Instead, after Mrs. Williams pressed the button to close her garage door, Foss took additional steps forward onto her property and slid the papers onto the ground inside her garage. (Id.

¶ 7.) The critical fact is that Foss's entry into the garage was made after he had been verbally told he was trespassing—making the entry conscious and deliberate, not inadvertent. Substituted service cannot be manufactured by trespass. A process server's entry onto private property to effect service must be peaceable and lawful; service accomplished by deliberate intrusion into an enclosed residential garage, over an express trespass objection, is not valid. Bein, 6 Cal. App. 4th at 1392-93.

## 6. Plaintiff's Own Prior Sworn Filings Establish That 12136 Avenida Sivrita Is Not Williams's Usual Place of Abode.

The most damning evidence against Plaintiff's current service theory comes from Plaintiff's own sworn filings with this Court. On June 10, 2025, Plaintiff's then-process server Robert Sousa declared under penalty of perjury: "After due search, careful inquiry and diligent attempts" at Williams's known addresses, "I have not been able to effect service" on Williams. (Request for Judicial Notice ("RJN"), Ex. A [Dkt. 43].) On the same day, Plaintiff's counsel informed the Court: "Plaintiff may have to apply to the court to serve by publication." (Id.)

And as recently as March 6, 2026—just ten days before the Court's Order setting the new service deadline—Plaintiff represented to this Court: "Ascentium was able to serve all defendants with the exception of Williams and Car Wash Management, LLC." (RJN, Exs. B-C [Dkts. 149, 150 at p. 6].)

Case No. 2:25-cv-00359-CAS-KS

If 12136 Avenida Sivrita were Williams's "dwelling house" or "usual place of abode," Plaintiff could and would have served him there during the prior fourteen months. Plaintiff did not. Plaintiff instead told the Court it could not find Williams and was considering service by publication. Plaintiff cannot switch positions now and claim Williams lives at a San Diego residence it previously represented (under oath) he could not be found at. A party is bound by its own prior representations to the Court. Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973-74 (9th Cir. 2010) (judicial estoppel). At minimum, Plaintiff's prior sworn representations preclude any finding that Plaintiff has carried its burden of proving that Sivrita is Williams's usual place of abode.

## V.  CONCLUSION

For each of the six independent reasons set forth above, the purported substituted service of the First Amended Complaint on Williams was defective and cannot confer personal jurisdiction. Williams respectfully requests that the Court:

(1) Grant this Motion and quash the purported service reflected in Docket No. 156;

(2) Find that Williams's time to respond to the First Amended Complaint is tolled pursuant to Federal Rule 12(a)(4)(A) until fourteen days after the Court's ruling on this Motion, or, in the alternative, that no response obligation currently exists because service is void; and

(3) Grant such further relief as the Court deems just and proper.


Dated: April 20, 2026


Respectfully submitted,


/s/ Andrew Paul Williams

**Andrew Paul Williams**

Defendant in Pro Per