UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-00359-CAS-KSx | Date | April 29, 2026 |
|---|---|---|---|
| Title | Regions Bank v. Car Wash Management, LLC et al. | | |

Present: The Honorable    CHRISTINA A. SNYDER

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present          Not Present

**Proceedings:**    (IN CHAMBERS) - WASHWORLD, INC.'S MOTION TO DISMISS IN PART PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) (Dkt. 155, filed on March 31, 2026)

## I.    INTRODUCTION

The Court finds the present motion appropriate for decision without oral argument. See Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. Accordingly, the matter is hereby taken under submission.

On January 14, 2025, plaintiff Regions Bank, an Alabama State Bank doing business as Ascentium Capital ("Plaintiff" or "Ascentium" or "Regions Bank") filed this action against Car Wash Management, LLC of Delaware ("CWM"), Car Wash Management LLC of Hawaii, West Covina Car Wash LLC (WCCW), Jose Rene Ortiz ("Ortiz"), Andrew Paul Williams ("Williams"), Washworld, Inc. ("Washworld"), and Does 1-100. Plaintiff alleges seven claims for relief: (1) breach of equipment finance agreement against CWM; (2) breach of guaranty against Ortiz; (3) breach of guaranty against WCCW; (4) fraud/concealment against CWM, Williams, Ortiz, and Does 1-10; (5) recovery of money paid by mistake and unjust enrichment against Washworld; (6) breach of contract against Washworld; (7) money had and received against Washworld. Dkt. 1 ("Compl.").

On July 16, 2025, defendant Jose Ortiz filed an answer. Dkt. 54. The same day, Ortiz filed a cross-complaint against Car Wash Management, LLC of Hawaii, CWM, Washworld, WCCW, Williams, and Roes 1-35. Dkt. 55.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:25-cv-00359-CAS-KSx | Date | April 29, 2026 |
|---|---|---|---|
| Title | Regions Bank v. Car Wash Management, LLC et al. | | |

On August 15, 2025, defendant Washworld filed a motion to dismiss the claims asserted against it by plaintiff. Dkt. 67. On September 25, 2025, the Court denied Washworld's motion to dismiss plaintiff's complaint. Dkt. 86.

On October 10, 2025, Washworld filed an answer to plaintiff's complaint, along with counterclaims against plaintiff. Dkt. 88 ("Counter-Compl.").

On October 28, 2025, plaintiff filed a motion to dismiss the counterclaims asserted against it by Washworld. Dkt. 102 ("Mot"). On November 25, 2025, the Court granted plaintiff's motion to dismiss Washworld's counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing, with leave to amend. The Court denied plaintiff's motion to dismiss Washworld's counterclaim for negligence. Dkt. 121.

On December 31, 2025, Washworld filed a first amended answer to plaintiff's complaint, along with counterclaims against plaintiff for breach of the implied covenant of good faith and fair dealing, negligence, and negligent misrepresentation. Dkt. 130 ("First Amended Counter-Compl." or "FACC").

On January 20, 2026, plaintiff filed a motion to dismiss Washworld's First Amended Counter-Complaint. Dkt. 134. On February 11, 2026, the Court denied plaintiff's motion. Dkt. 142.

On February 20, 2026, plaintiff filed an answer to Washworld's First Amended Counter-Complaint. Dkt. 145.

On February 23, 2026, plaintiff filed a motion for leave to file a First Amended Complaint. Dkt. 146. On March 16, 2026, the Court granted plaintiff's motion. Dkt. 153.

On March 17, 2026, plaintiff filed its First Amended Complaint. Dkt. 154 ("FAC"). Plaintiff's FAC adds an eighth claim for conversion against Washworld. Id. at 16-17.

On March 31, 2026, Washworld filed the instant motion to dismiss plaintiff's FAC. Dkt. 155 ("Mot."). On April 20, 2026, plaintiff filed an opposition. Dkt. 158 ("Opp."). On April 27, 2026, Washworld filed a reply. Dkt. 160 ("Reply").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-00359-CAS-KSx | Date | April 29, 2026 |
|---|---|---|---|
| Title | Regions Bank v. Car Wash Management, LLC et al. | | |

Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

Plaintiff alleges that it is an Alabama State Bank doing business under the name of Ascentium Capital with its principal place of business in Alabama. FAC ¶ 1. Plaintiff alleges that defendant Car Wash Management, LLC ("CWM" or "Debtor") is a limited liability company, organized and existing under the laws of Delaware with its principal place of business in Los Angeles, California. Id. ¶ 2. Plaintiff alleges that defendant West Covina Car Wash LLC is a limited liability company, organized and existing under the laws of California with its principal place of business in Los Angeles, California and whose sole member is CWM. Id. ¶ 3. Plaintiff alleges that defendant Jose Rene Ortiz is an individual who is a member of CWM and resides in Los Angeles, California. Id. ¶ 4. Plaintiff alleges that defendant Andrew Paul Williams is an individual who is a member and/or officer of CWM and resides in San Diego, California. Id. ¶ 5. Plaintiff alleges that defendant Washworld, Inc. was and is a corporation organized and existing under the laws of Wisconsin with its principal place of business in Wisconsin and is authorized to and doing business in the Los Angeles, California. Id. ¶ 6. Plaintiff alleges that no officers or directors of Washworld are residents of the State of Alabama. See id. ¶ 6.

Plaintiff alleges that on January 10, 2024, CWM, as "Debtor," entered into Equipment Financing Agreement No. 2763169 (the "EFA") with Ascentium to finance the acquisition of equipment for the financed amount of $343,394.23 to be repaid with one initial payment of $34,339.71 and 71 monthly payments of $5,918.76. Id. ¶ 12. Plaintiff alleges that the EFA was intended to finance CWM's purchase of equipment for the operation of a car wash initially from a vendor identified as AVW Equipment Company, Inc. ("AVW"), and that pursuant to the EFA, Ascentium wired $309,054.80 wired $309,054.80 of the $343,394.23 to AVW. Id.

Plaintiff alleges that after the EFA was signed, on February 28, 2024, Williams, on behalf of CWM, orally represented to Pete Matheny, a Vice President of Ascentium, that AVW was unable to deliver the equipment purchased by CWM in a timely fashion and that CWM had experienced other "red flags" regarding some business practices of AVW. Id. ¶ 13. Accordingly, CWM was canceling the purchase with AVW, obtaining a full refund of the Ascentium funding proceeds from AVW, and was instead purchasing the necessary equipment from Washworld. Id. Plaintiff alleges that this representation was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-00359-CAS-KSx | Date | April 29, 2026 |
|---|---|---|---|
| Title | Regions Bank v. Car Wash Management, LLC et al. | | |

confirmed in a February 28, 2024 email from Williams to Matheny, copied to Ortiz, which transmitted what was represented to be a purchase quote from a different vendor—Washworld—on a Washworld form ("the Quote"). Id. Plaintiff alleges that the money paid to AVM was refunded to Ascentium. Id.

Plaintiff alleges that based on the representations of Williams, on March 7, 2024, Ascentium executed with CWM, by Ortiz, an Addendum Agreement No. 2763169 changing the amount financed from $343,394.23 to $346,904.75. Id. ¶ 14. On March 11, 2024, Ortiz verbally acknowledged to Ascentium that the Equipment had been received by CWM, and Ascentium documented that communication it received from Ortiz. Id. ¶ 14.

Plaintiff alleges that at the time of the February 28, 2024, email from Williams to Matheny, CWM was an authorized distributor of Washworld products and that CWM was given access to and was authorized to issue quotes on Washworld forms, like the quote Williams allegedly sent to Ascentium. Id. ¶ 15. Plaintiff alleges that prior to the CWM transaction in, February 2024, Ascentium had funded two unrelated loan transactions to different customers in the form of Equipment Finance Agreements involving the purchase of Washworld equipment where CWM had been the "primary vendor" to Ascentium's customer and approximately another 20 transactions where Washworld had been the "primary vendor" or one of its other distributors had been the "primary vendor." Id. Further, the custom and practice between Ascentium and Washworld is that most of the time these Orders were not signed by Washworld. Id.

Plaintiff alleges that on or about February 28, 2023, Washworld, by its controller Jon Tyezkowski, executed and delivered to Ascentium written "Funding Instructions," which listed Washworld's email address as "controller@washworldinc.com" and provided:

> Payee [Washworld] agrees any funds received from Ascentium are for the sole purpose of advancing funds for Payee's customer to pay the purchase orders, invoices, quotes, or proposals for the application transaction. If funds to which Payee is not entitled are deposited into Payee's account or otherwise received by Payee, Payee agrees to promptly remit any such funds to or as directed by Ascentium.

Id. ¶ 16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**         **'O'**

| Case No. | 2:25-cv-00359-CAS-KSx | Date | April 29, 2026 |
|---|---|---|---|
| Title | Regions Bank v. Car Wash Management, LLC et al. | | |

Plaintiff alleges that on March 12, 2024, Ascentium sent a "Payment Notification" email to "ajohnson@washworldinc.com" and "controller@washworldinc.com" that stated:

Invoice # : Car Wash Management, Inc.
Payment Type : Equipment
Customer Name : Car Wash Management, Inc.
Finance Agreement # : 2763169
Payment Method : ACH
Date : March 11, 2024
Amount : $309,054.80

Among other things, the Payment Notification stated:

If you have questions about this payment, please contact your Vendor Services Representative, Maria Negri, at MariaNegri@ascentiumcapital.com or (281) 902-1938.

Id. ¶ 17.

Plaintiff alleges that on March 11, 2024, Ascentium sent payment to Washworld in the amount of $309,954.00 (the "Mistaken Payment") for posting to the Washworld bank account listed in the Funding Instructions, and that the same was posted and credited to such account on March 12, 2024.  Id. ¶ 18.

Despite the fact that Washworld could not reconcile or match the funding it received from Ascentium to any Order it had issued (as opposed to all other previous customer orders that Ascentium had funded to Washworld which had a clear match to the Order total and amount funded), at no time did Washworld contact Maria Negri or anyone else at Ascentium regarding the receipt of this CWM payment or inquire why that payment was made or what Order it was for.  At no time did Washworld reference the Finance Agreement number referred to above in contacting Ascentium regarding receipt of the payment.  Id. ¶ 19.

Plaintiff alleges that Washworld alleges that CWM never sent the Quote to Washworld, and never ordered or intended to order from Washworld, any of the equipment stated in the Quote.  Id. ¶ 20.  Plaintiff claims that when Washworld received the Mistaken Payment, it knew, had reason to know and/or should have known that there

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-00359-CAS-KSx | Date | April 29, 2026 |
|---|---|---|---|
| Title | Regions Bank v. Car Wash Management, LLC et al. | | |

had been no order for equipment from CWM for either itself or a customer of CWM in the amount of the Mistaken Payment or in any amount even approaching the amount of the Mistaken Payment. Id. ¶ 21.

Plaintiff alleges that instead of contacting Ascentium regarding the Mistaken Payment as stated in the Payment Notice and as required by the Funding Instructions, Washworld contacted CWM regarding the Mistaken Payment and was told by CWM that the payment should be applied to an order by one of its customers, Conserv Fuels, located in Chula Vista, California, that had a remaining balance due of $132,509.09 on a prior CWM/Washworld Order unrelated to Ascentium. Id. ¶ 22. Plaintiff alleges that on March 19, 2024, Washworld applied a portion of the Mistaken Payment to pay that balance and sent a payment back to CWM in the amount of $176,552.71. Id. Plaintiff alleges that Washworld contends that CWM sent the $176,552.71 back to CWM because Williams represented that this money was to buy additional equipment from another vendor or supplier and not Washworld. Id. Plaintiff alleges that at no time did Washworld make inquiry of Ascentium regarding the reason for the Mistaken Payment, what equipment or purchase order or contact number it related to, or whether the amount should be returned to Ascentium despite the requirement to do so under the Funding Instructions. Instead, plaintiff claims that Washworld concealed the true facts from Ascentium. Id.

Plaintiff alleges that on May 23, 2024, Pete Matheny of Ascentium sent to Washworld a copy of the Quote on Washworld's form that had been received from Williams. Id. ¶ 23. Plaintiff alleges that Washworld never responded in any fashion, did not inform Ascentium that the Quote or any similar quote had been issued by or provided to Washworld, and did not inform Ascentium of certain facts alleged by plaintiff, until September 26, 2024. Id.

Plaintiff claims that once Ascentium became fully aware of the facts, Ascentium 1) declared the EFA in default and demanded immediate payment of the entire loan balance from CWM, WCCW and Ortiz via a Notice of Default and Acceleration letter ("Acceleration Letter"); and 2) contacted Washworld in an attempt to obtain the return of the Mistaken Payment. Id. ¶ 24. Plaintiff alleges that CWM, WCCW and Ortiz failed and refused to pay the accelerated balance, id. ¶ 25, and that Washworld failed and refused to respond to Ascentium's attempts to request the return of the Mistaken Payment. Id. ¶ 26.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-00359-CAS-KSx | Date | April 29, 2026 |
|---|---|---|---|
| Title | Regions Bank v. Car Wash Management, LLC et al. | | |

Plaintiff further alleges that the $176,552.71 that Washworld remitted back to CWM constituted a commission that Washworld knowingly paid to CWM in exchange for Washworld's applying the Mistaken Payment to the Conserv Fuels order. See id. ¶¶ 49, 74.

## III.   LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-00359-CAS-KSx | Date | April 29, 2026 |
| Title | Regions Bank v. Car Wash Management, LLC et al. | | |

in briefs, affidavits, or discovery materials).  In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201.  In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted.  Fed. R. Civ. P. 15(a).  However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV. DISCUSSION

Washworld moves to dismiss plaintiff's claim for conversion pursuant to Rule 12(b)(6).  Mot. at i.  Washworld argues that "[u]nder California law, Ascentium must plead facts showing it had ownership or an immediate right to possession of the specific property at the time of the alleged conversion"; Washworld argues that because Ascentium "cannot demonstrate [that] Ascentium had any immediate right to possession of the funds at the time of the alleged conversion," its conversion claim fails.  Washworld argues that at the time plaintiff wired $309,054.52 to Washworld in March 2024 pursuant to the Equipment Financing Agreement, plaintiff's "rights [in that sum of money] were limited … to (1) a contractual right to future repayment by CWM; and (2) a security interest in collateral, not the money disbursed to Washworld."  Id. at 3-4 (citing FAC, Ex. 1 §§ 3, 8).  Thus, Washworld argues that Ascentium's "contractual rights under the [Equipment Financing Agreement] establish that Ascentium did not have either an ownership or an immediate right to possess the funds paid to Washworld," foreclosing plaintiff's conversion claim.  Id. at 4-5.

In opposition, plaintiff argues that "while it is true the Funding Instructions … specifically states any money paid by Plaintiff would be to fund the acquisition of equipment by CWM for CWM, it is this fact that clearly makes the case of conversion even more compelling since Washworld was advised of the purpose of the payment and could not be some innocent bystander who had no knowledge of what to do with it."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-00359-CAS-KSx | Date | April 29, 2026 |
|---|---|---|---|
| Title | Regions Bank v. Car Wash Management, LLC et al. | | |

Opp. at 8-9. Plaintiff argues that "Washworld had no right to the $309,054.52 when took possession of the money." Id. at 9.

In reply, Washworld argues that the cases plaintiff cites to in support of its opposition are distinguishable because those "cases involve agency or fiduciary settings—such as attorneys or trustees handling settlement proceeds—where conversion depended on a plaintiff's immediate right to possession, a feature absent from the arm's-length payment at issue [in this case]." Reply at 4.

Under California law, conversion refers to "an actual interference with [the plaintiff's] ownership or right of possession." Moore v. Regents of Univ. of Cal., 51 Cal. 3d 120, 136 (1990). To establish a claim of conversion, the plaintiff must show "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by wrongful act inconsistent with the property rights of the plaintiff; and (3) damages." In re Emery, 317 F.3d 1064, 1069 (9th Cir. 2003) (citing Burlesci v. Petersen, 68 Cal. App. 4th 1062, 1065 (1998)). "Under California law, a conversion action accrues when the plaintiff obtains *an immediate right to possession* of the item in question. … Thus, for example, a lien constitutes a property interest that may be converted, but the claim does not accrue *until the obligee has become entitled to immediate possession* of the property at issue." Gulf Ins. Co. v. First Bank, No. CIVS08209LKKJFM, 2009 WL 10692154, at *6 (E.D. Cal. Apr. 10, 2009), aff'd, 400 F. App'x 188 (9th Cir. 2010) (citations omitted) (emphasis added). Thus, "[t]o maintain an action for conversion, a 'plaintiff must prove ownership with the right of possession, or actual possession at the time of the alleged conversion.'" Brighton Trs. v. Transamerica Life Ins. Co., No. 219CV04210CASGJSX, 2019 WL 5784925, at *10 (C.D. Cal. Nov. 4, 2019) (citation omitted). "Accordingly, '[a]s a general rule, the mere ownership of property, *if not coupled with possession or a right to immediate possession*, is not a sufficient basis to maintain an action for conversion.'" Id. (quoting Michael Paul Thomas, et al., Cal. Civ. Prac. Torts, § 15:3 (November 2019 Update)) (emphasis added). See also Mindys Cosms., Inc. v. Dakar, 611 F.3d 590, 601 (9th Cir. 2010) ("The elements of a conversion claim are (1) the plaintiff's ownership or right to possession of the property *at the time of the conversion*; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages.") (emphasis added).

Here, plaintiff's conversion claim fails because the FAC fails to allege that plaintiff either possessed or had an immediate right to possess the $309,054.52 at the time it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-00359-CAS-KSx | Date | April 29, 2026 |
|---|---|---|---|
| Title | Regions Bank v. Car Wash Management, LLC et al. | | |

alleges that Washworld converted the money.  Plaintiff alleges that it wired $309,054.52 to Washworld on March 11, 2024, pursuant to the Funding Instructions and the Equipment Financing Agreement with CWM.  FAC ¶¶ 17-18.  Plaintiff further alleges that, at a later time, Washworld converted that money by improperly applying a portion of that money to an outstanding order unrelated to plaintiff's Equipment Financing Agreement and by pocketing the rest of the money.  Id. ¶ 22.  However, plaintiff alleges that at the time Washworld converted the money, plaintiff did not possess the money and did not have an immediate right to possess the money.  This is so because plaintiff alleges that it wired the money to Washworld pursuant to an Equipment Financing Agreement that provided:

> **FINANCED AMOUNT**: $343,394.23
>
> **PAYMENT SCHEDULE**: 1 @ $34,339.71, 71 @ $5,918.76
>
> <u>**Security Interest**</u>: You hereby grant to us a security interest under the Uniform Commercial Code ("UCC") in the Collateral and all accessories and additions thereto and replacements thereof and all proceeds and products of the foregoing.  Such security interest is granted to secure payment and performance by you of your obligations hereunder
>
> **COLLATERAL**: Items of equipment, inventory and personal property related thereto as generally described herein … **Personal Property Description**: CONVEYOR & EQUIPMENT FOR BAY.

FAC, Ex. 1 at 1 (Equipment Finance Agreement) (emphases in original).[1]

Pursuant to the alleged Equipment Finance Agreement and its amendment, FAC ¶¶ 12-18, after plaintiff wired money to Washworld on March 11, 2024, plaintiff's property interests became expressly limited to a contractual right to future repayment of that money by CWM and a security interest in the collateral (car wash equipment) that plaintiff was financing for CWM.  Plaintiff's contractual right to repayment and security interest in collateral, without more, does not give rise to a conversion claim.  See California State Emps. Ass'n v. Bogart, No. 2:14-CV-02494 JAM, 2015 WL 461646, at *2 (E.D. Cal. Feb. 3, 2015) ("'[A] mere contractual right of payment, without more, does

---

[1] The financed amount and payment schedule was subsequently amended.  FAC ¶ 14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                      'O'

| Case No. | 2:25-cv-00359-CAS-KSx | Date | April 29, 2026 |
|---|---|---|---|
| Title | Regions Bank v. Car Wash Management, LLC et al. | | |

not entitle the obligee to the immediate possession necessary' to state a claim for conversion.") (citation omitted). In other words, after plaintiff wired the money to Washworld pursuant to the Equipment Finance Agreement, plaintiff relinquished its right to possess the money it sent. Therefore, at the time plaintiff alleges that Washworld converted the money, plaintiff did not possess the money (rather, Washworld did) and did not have an immediate right to possess the money. Because plaintiff fails to allege "ownership with the right of possession, or actual possession at the time of [Washworld's] alleged conversion," plaintiff's conversion claim fails as a matter of law. See Brighton Trs. v. Transamerica Life Ins. Co., No. 219CV04210CASGJSX, 2019 WL 5784925, at *10 (C.D. Cal. Nov. 4, 2019) (citation omitted).

Because the Court finds that plaintiff could not possibly cure the deficiency of its conversion claim, leave to amend is denied. See Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

### V.    CONCLUSION

In accordance with the foregoing, the Court **GRANTS** Washworld's motion to dismiss plaintiff's conversion claim, with prejudice.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |