Xitlaly Estrada (SBN 333403)
Ava Claypool (SBN 327059)
**Baker & Hostetler LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone:  310-979-8430
Email:     *xestrada@bakerlaw.com*
           *aclaypool@bakerlaw.com*

Michael D. Gannon (*pro hac vice*)
Katharine H. Walton (*pro hac vice*)
**Baker & Hostetler LLP**
One North Wacker Drive, Suite 3700
Chicago, IL 60606
Telephone:  312-416-6200
Email:     *mgannon@bakerlaw.com*
           *kwalton@bakerlaw.com*

*Attorney for*
WASHWORLD, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGIONS BANK, dba ASCENTIUM CAPITAL,<br><br>Plaintiff,<br><br>v.<br><br>CAR WASH MANAGEMENT, LLC, CAR WASH MANAGEMENT, LLC, WEST COVINA CAR WASH LLC, JOSE RENE ORTIZ, ANDREW PAUL WILLIAMS, WASHWORLD, INC., DOES 1-100, inclusive,<br><br>Defendants. | **CASE NO.: 2:25-CV-00359-CAS-KS**<br><br>**DECLARATION OF KATHARINE H. WALTON**<br><br>DATE:      July 27, 2026<br>TIME:      10:00 AM<br>CTRM:      8D |
| JOSE RENE ORTIZ,<br><br>Cross Claimant,<br><br>v.<br><br>ANDREW PAUL WILLIAMS, CAR WASH MANAGEMENT, LLC, CAR WASH MANAGEMENT, LLC, WASHWORLD, INC., and DOES 1 to 35, inclusive,<br><br>Cross Defendants. | |

WASHWORLD, INC.,

      Counter Plaintiff,

  v.

REGIONS BANK, D/B/A ASCENTIUM CAPITAL,

      Counter Defendant.

WASHWORLD, INC.,

      Cross Claimant,

  v.

CAR WASH MANAGEMENT, LLC,

      Cross Defendant.

ANDREW PAUL WILLIAMS,

      Counter Claimant, Cross-Claimant, and Third-Party Plaintiff,

  v.

REGIONS BANK dba ASCENTIUM CAPITAL, JOSE RENE ORTIZ, MARIA L. ORTIZ, THE ORTIZ FAMILY TRUST OF 2024, WASHWORLD, INC., PETER MATHENY, ROES 1-50.

      Counter Defendants, Cross-Defendants, and Third-Party Defendants.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

2

## DECLARATION OF KATHARINE H. WALTON

I, Katharine H. Walton, declare as follows:

1.      I am an attorney at law duly licensed to practice law in Illinois, admitted *pro hac vice* in this matter.  I am an associate at the law firm of Baker & Hostetler, LLP, counsel of record for WASHWORLD, INC. ("Washworld") in the above-captioned matter. I make this declaration in support of Washworld's Motion for Summary Judgment on Ortiz's Amended Crossclaim ("the Motion"). If called upon to do so, I could and would competently testify of my own personal knowledge as follows.

2.      Attached hereto as **Exhibit A** is a true and accurate copy of the Equipment Finance Agreement that Ascentium produced in discovery, which Ortiz concedes he signed[1] and is admissible as a party-opponent statement under Federal Rule of Evidence 801(d)(2), authenticated under Federal Rule of Evidence 901(b)(1). It is further admissible as an operative contract establishing legal obligations and is authenticated under Federal Rule of Evidence 901(b)(4).

3.      Attached hereto as **Exhibit B** is a true and accurate copy of the loan documents produced by Ascentium in discovery, which are admissible as operative contractual documents and as party-opponent statements under Federal Rule of Evidence 801(d)(2) as to the documents signed by Ortiz,[2] and are authenticated under Federal Rule of Evidence 901(b)(4).

4.      Attached hereto as **Exhibit C** is a true and accurate copy of a past due notice reminder and notice of default and acceleration produced by Ascentium in discovery, which are admissible to demonstrate notice to Ortiz and, to the extent offered for the truth of matters asserted, as a business record under Federal Rule of Evidence 803(6), and is authenticated under Federal Rule of Evidence 901(b)(4) as a letter sent to Ortiz at his home address.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

---

[1] *See* Mr. Ortiz's response to Washworld Interrogatory No. 22 in Exhibit D.
[2] The documents signed by Ortiz are also authenticated under Federal Rule of Evidence 901(b)(1).

1

5. Attached hereto as **Exhibit D** is a true and accurate copy of Washworld's Interrogatories to Ortiz and Ortiz's responses, which are admissible as statements of a party-opponent under Federal Rule of Evidence 801(d)(2) and further serve to authenticate related transaction documents under Federal Rule of Evidence 901(b)(1).[3]

6. Attached hereto as **Exhibit E** is a true and accurate copy of the First Amended Complaint Ascentium filed in this action without exhibits, which is not offered for the truth of the matters asserted but to reflect the claims and allegations at issue in this action.

7. Attached hereto as **Exhibit F** is a true and accurate copy of Ortiz's responses to Ascentium's Interrogatories, which are admissible as statements of a party-opponent under Federal Rule of Evidence 801(d)(2) and further serve to authenticate the underlying transaction documents under Federal Rule of Evidence 901(b)(1).

8. Attached hereto as **Exhibit G** is a true and accurate copy of the payment notification Washworld received from Ascentium, which is admissible as a business record under Federal Rule of Evidence 803(6) and, independently, to demonstrate that payment was issued and notice provided, and is authenticated under Federal Rule of Evidence 901(b)(4).

9. Attached hereto as **Exhibit H** is a true and accurate copy of Ascentium's responses to Washworld's interrogatories, which are admissible as statements of a party-opponent under Federal Rule of Evidence 801(d)(2)(A) to the extent they reflect Ascentium's own statements regarding its conduct, including the timing and circumstances under which it provided documents.

Under the penalties of perjury under the laws of the United States, I certify that the above is complete, true, and correct.

---

[3] Mr. Ortiz did not repeat each interrogatory before his response, so this exhibit contains the requests followed by the responses.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Executed on this 24th day of June, 2026, at Chicago, Illinois.

Dated:  June 24, 2026          **BAKER & HOSTETLER LLP**

By:    */s/ Katharine Walton*
        Katharine Walton

        *Attorneys for* WASHWORLD, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

3

## <u>CERTIFICATE OF SERVICE</u>

I am employed in Cook County, Illinois. I am over the age of eighteen years and not a party to the within-entitled action. My business address is One North Wacker Drive, Suite 3700, Chicago, IL 60606. On June 24, 2026, I served a copy of the within document(s):

**DECLARATION OF KATHARINE H. WALTON**

☑ **CM/ECF:** I hereby certify that a copy of the foregoing was electronically filed in this case with the clerk of the court and served through the Court's CM/ECF system, which will send notification of this filing to all registered CM/ECF users listed below.

| | |
|---|---|
| Andrew K. Alper (SBN 088876)<br>**FRANDZEL ROBINS BLOOM &<br>CSATO, L.C.**<br>1000 Wilshire Boulevard, Nineteenth Floor<br>Los Angeles, CA 90017<br>Telephone:  323-852-1000<br>Facsimile:  323-651-2577<br>Email:       *aalper@frandzel.com* | *Attorneys for Plaintiff*<br>REGIONS BANK |
| Lisa Mitts Patrick (SBN 134522)<br>**LAW OFFICE OF LISA MITTS<br>PATRICK**<br>112 E. Amerige Ave., Suite 313<br>Fullerton, CA 92832<br>Telephone:  714-990-3693<br>Facsimile:  657-234-0012<br>Email:       *lolmp2021@gmail.com* | *Attorneys for Defendant and Cross Defendant*<br>JOSE RENE ORTIZ |

☑ **Email:** I hereby certify that on this date a true and correct copy of the foregoing was served via electronic mail on Andrew Williams, appearing pro se, at andrew@carwashmgmt.com. Transmission of the email was completed without error, and no notice of non-delivery was received indicating that service was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on June 24, 2026, at Chicago, Illinois.

*/s/ Katharine Walton*

4

# EXHIBIT A



# EQUIPMENT FINANCE AGREEMENT
## Agreement No. 2763169

Ascentium Capital
23970 HWY 59 N
Kingwood, TX 77339-1535
AscentiumCapital.com

| DEBTOR: | ADDRESS |
|---|---|
| CAR WASH MANAGEMENT, LLC | 310 S VINCENT AVE WEST COVINA CA 91790 |

**PAYMENT SCHEDULE:** 1 @ $34,339.71, 71 @ $5,918.76    **FINANCED AMOUNT:** $343,394.23

**INTEREST:** Payments include interest at **10.86%** per annum on the unpaid Financed Amount calculated based on a year consisting of 12 months of 30 days each.

**COLLATERAL:** Items of equipment, inventory and personal property related thereto as generally described herein which Regions Bank, an Alabama banking corporation d/b/a Ascentium Capital ("Secured Party") and Debtor agree that a more detailed description of the property being financed shall be maintained by us among our books and records in whatever more detailed description of the property financed is received from the supplier(s) of such property (the "Supplier") and, absent manifest error, such detailed description shall be considered incorporated into this Equipment Finance Agreement ("EFA") and shall be provided to Debtor promptly upon request.

**Personal Property Description:** CONVEYOR & EQUIPMENT FOR BAY

1. **Definitions:** The words "you" and "your" refer to the DEBTOR, its successors and permitted assigns, as shown above. The words "we", "us" and "our" refer to the SECURED PARTY, its successors and assigns.

2. **Funding; Representations & Warranties:** We agree to lend to you, and you agree to borrow from us, the Financed Amount set forth above for the financing of the Collateral and any shipping, installation, training, taxes, fees and other soft costs that we have approved for financing under this EFA (together, the "Soft Costs"). You irrevocably instruct us to pay the Supplier on your behalf, which payment is the funding of our loan to you. The Financed Amount is based upon the total estimated cost of the Collateral and financed Soft Costs (adjusted for any non-reimbursed down payments made by you) (the "Estimated Cost"), which Estimated Cost you and/or the Supplier have provided to us. If the final actual cost of the Collateral and any financed Soft Costs that we pay the Supplier and any taxing authority (the "Actual Cost") is different than the Estimated Cost, you authorize us to adjust the Financed Amount to the Actual Cost. If we request, you agree to execute a document reflecting such adjustments and we will provide you with evidence of our cost changes requiring such adjustments if you request. You represent and warrant to us that all information conveyed to us in connection with this EFA and all related documents whether by you, a guarantor, the Supplier or any other person, is true, accurate, complete and not misleading.

3. **Security Interest:** You hereby grant to us a security interest under the Uniform Commercial Code ("UCC") in the Collateral and all accessories and additions thereto and replacements thereof and all proceeds and products of the foregoing. Such security interest is granted to secure payment and performance by you of your obligations hereunder. All amounts received from you under this EFA shall be applied towards your obligations to us as we determine.

4. **Payments:** You agree to pay us: (a) the number of payments in the amount(s) shown above (each a "Payment") plus (b) a pro-rated payment equal to 1/30th of a standard Payment times the number of days from the funding date of the loan (the "Commencement Date") to the first monthly due date specified by us (the "First Due Date"). The interest rate stated above excludes this pro-rated payment and all fees. The pro-rated payment is due on the First Due Date, and the first Payment is due either in advance, on the First Due Date, or on the second Due Date, as specified by us. Subsequent Payments are due on the same day of each month thereafter (the period from the Commencement Date until full payment and performance of your obligations, the "Term"). You also agree to pay us all other amounts due from time to time hereunder. If your first Payment is due in advance and this contemplated transaction is not consummated, the total initial payment may be retained by us as partial compensation for costs and expenses incurred by us in preparation for the transaction. All payments are due whether or not we invoice you. You authorize us to adjust the Payment amount to maintain the same interest rate stated above if the Financed Amount changes. You may prepay this EFA only in accordance with the Prepayment Addendum referencing the Agreement No. above, which is made a part hereof . YOUR OBLIGATION TO MAKE PAYMENTS AND PAY OTHER AMOUNTS DUE HEREUNDER IS ABSOLUTE AND UNCONDITIONAL AND NOT SUBJECT TO ABATEMENT, REDUCTION OR SET-OFF FOR ANY REASON WHATSOEVER. THIS IS A NON-CANCELABLE AGREEMENT. THIS EFA, THE TERMS OF WHICH HAVE BEEN FREELY NEGOTIATED BY EACH PARTY, IS ALSO SUBJECT TO THE TERMS AND CONDITIONS ON THE FOLLOWING PAGE WHICH IS MADE PART HEREOF AND WHICH DEBTOR AND SECURED PARTY ACKNOWLEDGE THEY HAVE READ AND ACCEPTED.

5. **DISCLAIMER OF WARRANTIES AND CLAIMS; LIMITATION OF REMEDIES:** THERE ARE NO WARRANTIES BY OR ON BEHALF OF SECURED PARTY AND NEITHER THE SUPPLIER NOR ANY OTHER PARTY IS SECURED PARTY'S AGENT. DEBTOR ACKNOWLEDGES AND AGREES: (A) DEBTOR SELECTED THE SUPPLIER, THE COLLATERAL AND ANY SOFT COSTS, (B) SECURED PARTY MAKES NO WARRANTIES WHETHER EXPRESS OR IMPLIED AS TO THE CONDITION OF THE COLLATERAL, ITS MERCHANTABILITY, ITS FITNESS FOR ANY PARTICULAR PURPOSE; (C) DEBTOR ACCEPTS THE COLLATERAL "AS IS" AND WITH ALL FAULTS; (D) DEBTOR AGREES THAT THE COLLATERAL WILL BE USED SOLELY FOR COMMERCIAL OR BUSINESS PURPOSES; (E) IF THE COLLATERAL OR THE SOFT COSTS ARE UNSATISFACTORY FOR ANY REASON OR IF THE SUPPLIER FAILS TO DELIVER ALL OR ANY PART OF THE COLLATERAL OR SOFT COSTS TO DEBTOR, DEBTOR'S ONLY REMEDY, IF ANY, SHALL BE AGAINST THE SUPPLIER OR MANUFACTURER OF THE COLLATERAL AND SOFT COSTS AND NOT AGAINST SECURED PARTY; (F) DEBTOR SHALL HAVE NO REMEDY FOR CONSEQUENTIAL, INCIDENTAL, SPECIAL, PUNITIVE OR EXEMPLARY DAMAGES AGAINST SECURED PARTY, ALL OF THE SAME BEING DISCLAIMED AND WAIVED; AND (G) NO DEFECT, DAMAGE OR UNFITNESS OF THE COLLATERAL OR SOFT COSTS NOR ANY FAILURE OF THE SUPPLIER TO DELIVER THE COLLATERAL OR SOFT COSTS TO DEBTOR SHALL RELIEVE DEBTOR OF THE OBLIGATION TO MAKE PAYMENTS OR RELIEVE DEBTOR OF ANY OTHER OBLIGATION UNDER THIS EFA.

6. **Location; Maintenance; Installation; Insurance:** You agree to maintain records showing the location of each item of Collateral. You shall report each location to us upon our request and shall not change the location of the Collateral without our advance written consent. You are responsible for installing and keeping the Collateral in good working order. You shall not make any alterations, additions or improvements to the Collateral which detracts from its economic value or functional utility. If the Collateral is damaged or lost, you agree to continue making scheduled Payments unless we have received the Casualty Value pursuant to Section 11. You agree to keep the Collateral insured against loss during the Term and to have us named as loss payee in such coverage amounts as we may specify from time to time, from an insurer who is acceptable to us. You agree to provide us with a certificate of insurance acceptable to us upon our request. If you do not provide such certificate then we will have the right, but not the obligation, to have such insurance placed for the Term in such form and amount as we deem reasonable to protect our interests. You understand and agree that (i) such insurance will name us, and not you, as the insured (therefore, such insurance will be for our sole benefit and not for your benefit) and (ii) your monthly payment pursuant to this EFA shall include a charge equal to (A) our premium expense for such insurance, which may be higher than the premium you would pay if you placed such insurance independently, plus (B) an annualized finance charge not to exceed 15% on our premium expense, plus (C) fees for billing and other administrative services with respect to such insurance in an amount not to exceed $7.00 per month.

7. **Taxes and Fees; Indemnification:** You agree to pay when due and to indemnify and hold us harmless from all taxes, fees, fines, interest and penalties, including, without limitation, personal property or documentary stamp taxes ("Taxes") relating to the use or ownership of the Collateral or to this EFA now or hereafter imposed, levied or assessed by any taxing authority. We may in our sole discretion, elect to pay any such Taxes directly to a taxing authority and if so you agree to reimburse us on our demand for any such Taxes paid on your behalf together with any filing or processing fee charged by us. If any taxing authority requires any Taxes to be paid in advance, and we pay such Taxes, we may increase the cost of the Collateral we are financing by such amount as described in Section 4 above thereby increasing the amount of each Payment to reflect the payment of such Taxes. You also agree to pay us and reimburse us for all costs and expenses in documenting and servicing this EFA. You agree to indemnify and hold us harmless from any suits, claims, losses or damages we suffer in any way relating to the use or ownership of the Collateral. Your obligations under this Section 7 shall survive the expiration or earlier termination of this EFA. You agree to pay us fees in an amount in effect from time to time in connection with the documentation of this EFA and any site inspection or lien search we deem necessary. You agree that all such fees, including fees and finance charges in connection with any insurance we obtain for our benefit pursuant to Section 6, may not only cover our costs they may also include a profit.

8. **Personal Property:** The Collateral will be and shall remain personal property and, if requested by us, you will obtain real property waivers satisfactory to us. You shall keep the Collateral free from any and all liens and encumbrances other than those in our favor. You shall give us immediate notice of any attachment or other judicial process, liens or encumbrances affecting the Collateral. You hereby irrevocably authorize us and appoint us as your attorney-in-fact with the power to execute and to file this EFA and any financing statement(s) or security agreement(s) with respect to the Collateral. If your signature on any financing statement or similar document is required by law, you shall execute such supplemental instruments and financing statements we deem to be necessary and advisable and shall otherwise cooperate to defend and perfect our interest in the Collateral by filing or otherwise. You also agree to pay us on demand filing and registration fees prescribed by the UCC or other law. Any Collateral that is subject to title or registration laws shall be titled and registered as directed by us.

9. **Default; Remedies; Late Charges:** If any one of the following events occur with respect to you or any Guarantor, you will be in default: (i) you fail to pay any Payment or other amount due under this EFA, when due, (ii) you breach or fail to perform any of your other covenants and promises under this EFA or any related document, (iii) you become insolvent, any action under the United States Bankruptcy Code is filed by or against you, make an assignment for the benefit of creditors, admit your inability to pay your debts as they become due, (iv) you merge, consolidate with, or sell all or substantially all of your assets or a majority of your ownership interests to any third party without our prior written consent or (v) if you terminate your entity existence or take any actions regarding the cessation or winding up of your business affairs. If you are in default, at our election, we can accelerate and require that you pay, as reasonable liquidated damages for loss of bargain, the "Accelerated Balance". The Accelerated Balance will be equal to the total of: (i) accrued and unpaid amounts then due under this EFA, and (ii) the remaining future Payments discounted to their then present value at 3% per annum. We can also direct Supplier to terminate your access to all software, services and support relating to the Collateral, without

3301-20230705    Page 1 of 2

ASC00072

liability to us or Supplier, and/or pursue any of the remedies available to us under the UCC or any other law. In the event we seek to take possession of any part of the Collateral, you irrevocably waive to the fullest extent permitted by law any bonds, surety or security required by statute, court rule or otherwise as an incident of such possession. You agree to pay our reasonable attorneys' fees and actual costs incurred by us in enforcing and defending our rights and interests hereunder including repossession, storage, refurbishment and sale of the Collateral and collection costs, and all non-sufficient funds charges and similar charges. If any part of a payment is late, you agree to pay us upon our demand the following, or if less, the maximum amount allowed under applicable law: (x) a late charge equal to 10% of the payment, (y) a charge of $30.00 for each check returned for any reason or if any ACH debit charge is not honored and (z) if we have had to perform collection activities in connection with such late payment, our specified collection charges then in effect. The foregoing will not be construed as interest but as reimbursement to us to cover administrative and overhead expenses related to the processing and collection of the late payment.

**10. Assignment; Inspection:** YOU HAVE NO RIGHT TO SELL, TRANSFER, ASSIGN, LEASE OR ENCUMBER THE COLLATERAL OR THIS EFA. We may sell, transfer, assign or encumber this EFA, in whole or in part, without notice to you or your consent. You agree that if we sell, transfer, assign or encumber this EFA, the assignee will have the rights and benefits that we assign to the assignee and will not have to perform any of our obligations. You agree that the rights of the assignee will not be subject to any claims, defenses or set-offs that you may have against us. We and our agents and representatives shall have the right at any time during regular business hours to inspect the Collateral and for that purpose to have access to the location of the Collateral.

**11. Risk of Loss:** You assume and shall bear the entire risk of loss, theft, damage and destruction of the Collateral from any cause whatsoever, and no loss, theft, damage or destruction of the Collateral shall relieve you of the obligation to make Payments or any other obligation under this EFA. You shall promptly notify us in writing of such loss, theft, damage or destruction. If damage of any kind occurs to any item of Collateral, you, at our option, shall at your expense (a) place the Collateral in good repair, condition or working order, or (b) if the Collateral cannot be repaired or is lost, stolen or suffers a constructive loss under an insurance policy covering the Collateral, pay to us the "Casualty Value." The Casualty Value will be equal to the total of (i) accrued and unpaid amounts then due and owing, and (ii) the remaining future Payments discounted to present value at 3%, in both cases as of the date the Casualty Value is received by us.

**12. Choice of Law; Waiver of Jury Trial:** Secured Party is an FDIC-insured institution with its main office in Alabama. This EFA is governed by applicable Federal Law and the laws of the State of Alabama with respect to interest and matters that are material to the determination of interest. This EFA is otherwise governed by the law of the State of Alabama, excluding conflicts of law principles. If any amount charged, collected or due exceeds the maximum amount permitted by applicable law, Secured Party shall make necessary adjustments to eliminate such excess. You consent to the non-exclusive jurisdiction of the courts located in Jefferson County, Alabama in any action or proceeding relating to this EFA, YOU WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH ACTION OR PROCEEDING, AND YOU WAIVE ANY RIGHT TO ASSERT THIS IS AN INCONVENIENT FORUM.

**13. Miscellaneous:** During the Term, you agree to provide us with all financial statements and copies of tax returns we may request. If we supply you with labels, you shall label any and all Collateral and shall keep the same affixed in a prominent place. If any provision hereof or any remedy herein provided is found to be invalid under any applicable law, the remaining provisions hereof, shall be given effect in accordance with the manifest intent hereof. The parties agree that each Payment includes interest. In some cases, we may receive a discount from Supplier to reduce your interest rate below what we would otherwise charge. Any such discount reduces your Payments due to a lower interest rate but does not reduce the Financed Amount. You agree that a waiver of breach will not be a waiver of any other subsequent breach, and that any delay or failure to enforce our rights under this EFA does not prevent us from enforcing any rights at a later time. YOU AGREE THAT WE WILL NOT BE LIABLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES FOR ANY DEFAULT BY US UNDER THIS EFA. Section headings are for convenience and are not a part of this EFA. You agree that by providing us with an email address or telephone number for a cellular or other wireless device, you expressly consent to receiving notices and other communications including email, voice and text messages from us or our affiliates or assigns at that email address or telephone number, and this express consent applies to each such email address or telephone number that you provide to us now or in the future and permits such communications regardless of their purpose. These calls and messages may incur access fees from your internet or wireless provider. You agree that the original of this EFA may be electronically duplicated and a copy hereof may be introduced in lieu of the original thereof and without further foundation. The parties hereto expressly waive the secondary evidence rule. You agree that this EFA will be binding upon your successors, permitted assigns, heirs and legal representatives. You authorize us to complete any blank in this instrument or in any document executed or delivered in connection herewith that contemplates a date by inserting a date deemed appropriate by us. Time is of the essence with respect to your obligations hereunder. Except as otherwise expressly permitted hereunder, no term or provision of this EFA may be amended, altered, waived or discharged except by a written instrument signed by the party against whom enforcement is sought. You agree, however, that we are authorized, without notice to you, to supply missing information or correct any misspellings or obvious errors in this EFA. Any formal notice given pursuant to this EFA shall, if delivered by mail, be deemed given 2 business days after being placed with the U.S. Postal Service, postage prepaid, addressed to the Debtor at its address set forth above, or to Secured Party at 23970 Hwy 59 N, Kingwood, TX 77339-1535, or such other address as a party may designate by written notice to the other. If Debtor constitutes more than one person, you agree that the liability of each such person hereunder is joint and several. Any restrictive endorsement on any check you give us in payment of any amount due hereunder shall be void. A facsimile or other copy of this EFA, as executed, shall be deemed the equivalent of the originally executed copy for all purposes. Secured Party may acknowledge acceptance of this EFA in a subsequent communication signed by Secured Party. All amounts payable hereunder by you if not paid when due shall accrue interest at a rate of interest of 1.5% per month or the highest rate allowed by applicable law if less, from the due date thereof until received by us in cash and shall be payable on demand. This EFA may be executed in separate counterparts which together shall constitute one and the same instrument. You agree this EFA may be signed electronically pursuant to the Electronic Signatures in Global and National Commerce Act and other applicable law. Only the copy of this EFA marked as the "sole original" or similar language by Secured Party or its designee is the chattel paper original of this EFA.

This EFA shall become effective upon Debtor's signature below, provided, however, that our obligation to perform our obligations under this EFA shall be subject to our satisfactory receipt of all conditions specified by us, including a complete and properly executed documentation package, as determined by us. By signing below, Debtor hereby irrevocably authorizes Secured Party to pay the Supplier on behalf of Debtor. The person executing this EFA is authorized to do so, making this EFA valid and binding on Debtor.

| Debtor Name: | CAR WASH MANAGEMENT, LLC | By: | ☒ _(signature)_ |
|---|---|---|---|
| | | Printed Name/Title: | JOSE RENE ORTIZ, Member |

**AUTHORIZATION FOR ACH PAYMENTS:** Debtor authorizes Secured Party and Secured Party's successors and assigns to automatically initiate and make debit entry charges to Debtor's bank account indicated below for the payment of all amounts owed by you from time to time under the EFA. This Authorization is to remain in effect during the Term of the EFA and Debtor acknowledges that a revocation of this authority shall be an event of default under the Agreement. Any incorrect charge will be corrected upon notification to us, by either a credit or debit to Debtor's account.

| Bank Name: | ████████ | Business Acct Name: | Car Wash Management LLC |
|---|---|---|---|
| Account No: | ████ 319 | ABA No.: | ████ 0358 |
| Authorized Signature: | ☒ _(signature)_ | Printed Name and Title: | Jose Rene Ortiz / Member |

# EXHIBIT B



## Your Application for Financing Is Approved

**Finance Agreement**
2763169

Prepared On January 5, 2024

**Prepared For**
CAR WASH MANAGEMENT, LLC
310 S VINCENT AVE
WEST COVINA, CA 91790

**Financing Provided By**
Regions Bank d/b/a
Ascentium Capital
23970 HWY 59 N
Kingwood TX 77339

Enclosed is your Finance agreement. The below instructions will help you complete your documents.

✓ Include a copy of your driver's license (all signors)
✓ Include a copy of your business check payable to Ascentium Capital for the below invoice amount. Please write your agreement number on the memo line. This check copy will be used to initiate payment via ACH/EFT withdrawal. Do not mail the original check.
✓ Return completed cover page and documents by Email to VSR@AscentiumCapital.com or by Fax to 1-866-646-3680.

### Please Complete Signor Information for JOSE RENE ORTIZ

| Cell Phone: | 626-413-0842 | Home Phone: | |
| Email: | rene@car wash mgmt.com | | |
| Federal Tax ID: | ███████████ | | |
| Equipment Location: | 310 S VINCENT AVE. WEST COVINA, CA 91790-2935 | | |
| (Please update if incorrect) | Updated address: | | |

| INVOICE AMOUNT | INVOICE DETAILS |
|---|---|
| $34,339.71 | Advanced Payment Amount |
| $770.00 | Processing Fee(s) |
| | |
| $0.00 | Less Money Received |
| $35,109.71 | TOTAL AMOUNT DUE AT SIGNING |

Ascentium Capital greatly appreciates your business. If you have any questions, please contact me.

Pete Matheny
Phone  281 863 0201
Email  PeteMatheny@AscentiumCapital.com

x1938

ASC00040



# EQUIPMENT FINANCE AGREEMENT
## Agreement No. 2763169

Ascentium Capital
23970 HWY 59 N
Kingwood, TX 77339-1535
AscentiumCapital.com

| DEBTOR: | ADDRESS | |
|---|---|---|
| CAR WASH MANAGEMENT, LLC | 310 S VINCENT AVE WEST COVINA CA 91790 | |

| PAYMENT SCHEDULE: 1 @ $34,339.71, 71 @ $5,918.76 | FINANCED AMOUNT: $343,394.23 |
|---|---|

**INTEREST:** Payments include interest at **10.86%** per annum on the unpaid Financed Amount calculated based on a year consisting of 12 months of 30 days each.

**COLLATERAL:** Items of equipment, inventory and personal property related thereto as generally described herein which Regions Bank, an Alabama banking corporation d/b/a Ascentium Capital ("Secured Party") and Debtor agree that a more detailed description of the property being financed shall be maintained by us among our books and records in whatever more detailed description of the property financed is received from the supplier(s) of such property (the "Supplier") and, absent manifest error, such detailed description shall be considered incorporated into this Equipment Finance Agreement ("EFA") and shall be provided to Debtor promptly upon request.

**Personal Property Description:** CONVEYOR & EQUIPMENT FOR BAY

1. **Definitions:** The words "you" and "your" refer to the DEBTOR, its successors and permitted assigns, as shown above. The words "we", "us" and "our" refer to the SECURED PARTY, its successors and assigns.

2. **Funding; Representations & Warranties:** We agree to lend to you, and you agree to borrow from us, the Financed Amount set forth above for the financing of the Collateral and any shipping, installation, training, taxes, fees and other soft costs that we have approved for financing under this EFA (together, the "Soft Costs"). You irrevocably instruct us to pay the Supplier on your behalf, which payment is the funding of our loan to you. The Financed Amount is based upon the total estimated cost of the Collateral and financed Soft Costs (adjusted for any non-reimbursed down payments made by you) (the "Estimated Cost"), which Estimated Cost you and/or the Supplier have provided to us. If the final actual cost of the Collateral and any financed Soft Costs that we pay the Supplier and any taxing authority (the "Actual Cost") is different than the Estimated Cost, you authorize us to adjust the Financed Amount to the Actual Cost. If we request, you agree to execute a document reflecting such adjustments and we will provide you with evidence of our cost changes requiring such adjustments if you request. You represent and warrant to us that all information conveyed to us in connection with this EFA and all related documents whether by you, a guarantor, the Supplier or any other person, is true, accurate, complete and not misleading.

3. **Security Interest:** You hereby grant to us a security interest under the Uniform Commercial Code ("UCC") in the Collateral and all accessories and additions thereto and replacements thereof and all proceeds and products of the foregoing. Such security interest is granted to secure payment and performance by you of your obligations hereunder. All amounts received from you under this EFA shall be applied towards your obligations to us as we determine.

4. **Payments:** You agree to pay us: (a) the number of payments in the amount(s) shown above (each a "Payment") plus (b) a pro-rated payment equal to 1/30th of a standard Payment times the number of days from the funding date of the loan (the "Commencement Date") to the first monthly due date specified by us (the "First Due Date"). The interest rate stated above excludes this pro-rated payment and all fees. The pro-rated payment is due on the First Due Date, and the first Payment is due either in advance, on the First Due Date, or on the second Due Date, as specified by us. Subsequent Payments are due on the same day of each month thereafter (the period from the Commencement Date until full payment and performance of your obligations, the "Term"). You also agree to pay us all other amounts due from time to time hereunder. If your first Payment is due in advance and this contemplated transaction is not consummated, the total initial payment may be retained by us as partial compensation for costs and expenses incurred by us in preparation for the transaction. All payments are due whether or not we invoice you. You authorize us to adjust the Payment amount to maintain the same interest rate stated above if the Financed Amount changes. You may prepay this EFA only in accordance with the Prepayment Addendum referencing the Agreement No. above, which is made a part hereof . YOUR OBLIGATION TO MAKE PAYMENTS AND PAY OTHER AMOUNTS DUE HEREUNDER IS ABSOLUTE AND UNCONDITIONAL AND NOT SUBJECT TO ABATEMENT, REDUCTION OR SET-OFF FOR ANY REASON WHATSOEVER. THIS IS A NON-CANCELABLE AGREEMENT. THIS EFA, THE TERMS OF WHICH HAVE BEEN FREELY NEGOTIATED BY EACH PARTY, IS ALSO SUBJECT TO THE TERMS AND CONDITIONS ON THE FOLLOWING PAGE WHICH IS MADE PART HEREOF AND WHICH DEBTOR AND SECURED PARTY ACKNOWLEDGE THEY HAVE READ AND ACCEPTED.

5. **DISCLAIMER OF WARRANTIES AND CLAIMS; LIMITATION OF REMEDIES:** THERE ARE NO WARRANTIES BY OR ON BEHALF OF SECURED PARTY AND NEITHER THE SUPPLIER NOR ANY OTHER PARTY IS SECURED PARTY'S AGENT. DEBTOR ACKNOWLEDGES AND AGREES: (A) DEBTOR SELECTED THE SUPPLIER, THE COLLATERAL AND ANY SOFT COSTS, (B) SECURED PARTY MAKES NO WARRANTIES WHETHER EXPRESS OR IMPLIED AS TO THE CONDITION OF THE COLLATERAL, ITS MERCHANTABILITY, ITS FITNESS FOR ANY PARTICULAR PURPOSE; (C) DEBTOR ACCEPTS THE COLLATERAL "AS IS" AND WITH ALL FAULTS; (D) DEBTOR AGREES THAT THE COLLATERAL WILL BE USED SOLELY FOR COMMERCIAL OR BUSINESS PURPOSES; (E) IF THE COLLATERAL OR THE SOFT COSTS ARE UNSATISFACTORY FOR ANY REASON OR IF THE SUPPLIER FAILS TO DELIVER ALL OR ANY PART OF THE COLLATERAL OR SOFT COSTS TO DEBTOR, DEBTOR'S ONLY REMEDY, IF ANY, SHALL BE AGAINST THE SUPPLIER OR MANUFACTURER OF THE COLLATERAL AND SOFT COSTS AND NOT AGAINST SECURED PARTY; (F) DEBTOR SHALL HAVE NO REMEDY FOR CONSEQUENTIAL, INCIDENTAL, SPECIAL, PUNITIVE OR EXEMPLARY DAMAGES AGAINST SECURED PARTY, ALL OF THE SAME BEING DISCLAIMED AND WAIVED; AND (G) NO DEFECT, DAMAGE OR UNFITNESS OF THE COLLATERAL OR SOFT COSTS NOR ANY FAILURE OF THE SUPPLIER TO DELIVER THE COLLATERAL OR SOFT COSTS TO DEBTOR SHALL RELIEVE DEBTOR OF THE OBLIGATION TO MAKE PAYMENTS OR RELIEVE DEBTOR OF ANY OTHER OBLIGATION UNDER THIS EFA.

6. **Location; Maintenance; Installation; Insurance:** You agree to maintain records showing the location of each item of Collateral. You shall report each location to us upon our request and shall not change the location of the Collateral without our advance written consent. You are responsible for installing and keeping the Collateral in good working order. You shall not make any alterations, additions or improvements to the Collateral which detracts from its economic value or functional utility. If the Collateral is damaged or lost, you agree to continue making scheduled Payments unless we have received the Casualty Value pursuant to Section 11. You agree to keep the Collateral insured against loss during the Term and to have us named as loss payee in such coverage amounts as we may specify from time to time, from an insurer who is acceptable to us. You agree to provide us with a certificate of insurance acceptable to us upon our request. If you do not provide such certificate then we will have the right, but not the obligation, to have such insurance placed for the Term in such form and amount as we deem reasonable to protect our interests. You understand and agree that (i) such insurance will name us, and not you, as the insured (therefore, such insurance will be for our sole benefit and not for your benefit) and (ii) your monthly payment pursuant to this EFA shall include a charge equal to (A) our premium expense for such insurance, which may be higher than the premium you would pay if you placed such insurance independently, plus (B) an annualized finance charge not to exceed 15% on our premium expense, plus (C) fees for billing and other administrative services with respect to such insurance in an amount not to exceed $7.00 per month.

7. **Taxes and Fees; Indemnification:** You agree to pay when due and to indemnify and hold us harmless from all taxes, fees, fines, interest and penalties, including, without limitation, personal property or documentary stamp taxes ("Taxes") relating to the use or ownership of the Collateral or to this EFA now or hereafter imposed, levied or assessed by any taxing authority. We may in our sole discretion, elect to pay any such Taxes directly to a taxing authority and if so you agree to reimburse us on our demand for any such Taxes paid on your behalf together with any filing or processing fee charged by us. If any taxing authority requires any Taxes to be paid in advance, and we pay such Taxes, we may increase the cost of the Collateral we are financing by such amount as described in Section 4 above thereby increasing the amount of each Payment to reflect the payment of such Taxes. You also agree to pay us and reimburse us for all costs and expenses in documenting and servicing this EFA. You agree to indemnify and hold us harmless from any suits, claims, losses or damages we suffer in any way relating to the use or ownership of the Collateral. Your obligations under this Section 7 shall survive the expiration or earlier termination of this EFA. You agree to pay us fees in an amount in effect from time to time in connection with the documentation of this EFA and any site inspection or lien search we deem necessary. You agree that all such fees, including fees and finance charges in connection with any insurance we obtain for our benefit pursuant to Section 6, may not only cover our costs they may also include a profit.

8. **Personal Property:** The Collateral will be and shall remain personal property and, if requested by us, you will obtain real property waivers satisfactory to us. You shall keep the Collateral free from any and all liens and encumbrances other than those in our favor. You shall give us immediate notice of any attachment or other judicial process, liens or encumbrances affecting the Collateral. You hereby irrevocably authorize us and appoint us as your attorney-in-fact with the power to execute and to file this EFA and any financing statement(s) or security agreement(s) with respect to the Collateral. If your signature on any financing statement or similar document is required by law, you shall execute such supplemental instruments and financing statements we deem to be necessary and advisable and shall otherwise cooperate to defend and perfect our interest in the Collateral by filing or otherwise. You also agree to pay us on demand filing and registration fees prescribed by the UCC or other law. Any Collateral that is subject to title or registration laws shall be titled and registered as directed by us.

9. **Default; Remedies; Late Charges:** If any one of the following events occur with respect to you or any Guarantor, you will be in default: (i) you fail to pay any Payment or other amount due under this EFA, when due, (ii) you breach or fail to perform any of your other covenants and promises under this EFA or any related document, (iii) you become insolvent, any action under the United States Bankruptcy Code is filed by or against you, make an assignment for the benefit of creditors, admit your inability to pay your debts as they become due, (iv) you merge, consolidate with, or sell all or substantially all of your assets or a majority of your ownership interests to any third party without our prior written consent or (v) if you terminate your entity existence or take any actions regarding the cessation or winding up of your business affairs. If you are in default, at our election, we can accelerate and require that you pay, as reasonable liquidated damages for loss of bargain, the "Accelerated Balance". The Accelerated Balance will be equal to the total of: (i) accrued and unpaid amounts then due under this EFA, and (ii) the remaining future Payments discounted to their then present value at 3% per annum. We can also direct Supplier to terminate your access to all software, services and support relating to the Collateral, without

ASC00072

liability to us or Supplier, and/or pursue any of the remedies available to us under the UCC or any other law. In the event we seek to take possession of any part of the Collateral, you irrevocably waive to the fullest extent permitted by law any bonds, surety or security required by statute, court rule or otherwise as an incident of such possession. You agree to pay our reasonable attorneys' fees and actual costs incurred by us in enforcing and defending our rights and interests hereunder including repossession, storage, refurbishment and sale of the Collateral and collection costs, and all non-sufficient funds charges and similar charges. If any part of a payment is late, you agree to pay us upon our demand the following, or if less, the maximum amount allowed under applicable law: (x) a late charge equal to 10% of the payment, (y) a charge of $30.00 for each check returned for any reason or if any ACH debit charge is not honored and (z) if we have had to perform collection activities in connection with such late payment, our specified collection charges then in effect. The foregoing will not be construed as interest but as reimbursement to us to cover administrative and overhead expenses related to the processing and collection of the late payment.

**10. Assignment; Inspection:** YOU HAVE NO RIGHT TO SELL, TRANSFER, ASSIGN, LEASE OR ENCUMBER THE COLLATERAL OR THIS EFA. We may sell, transfer, assign or encumber this EFA, in whole or in part, without notice to you or your consent. You agree that if we sell, transfer, assign or encumber this EFA, the assignee will have the rights and benefits that we assign to the assignee and will not have to perform any of our obligations. You agree that the rights of the assignee will not be subject to any claims, defenses or set-offs that you may have against us. We and our agents and representatives shall have the right at any time during regular business hours to inspect the Collateral and for that purpose to have access to the location of the Collateral.

**11. Risk of Loss:** You assume and shall bear the entire risk of loss, theft, damage and destruction of the Collateral from any cause whatsoever, and no loss, theft, damage or destruction of the Collateral shall relieve you of the obligation to make Payments or any other obligation under this EFA. You shall promptly notify us in writing of such loss, theft, damage or destruction. If damage of any kind occurs to any item of Collateral, you, at our option, shall at your expense (a) place the Collateral in good repair, condition or working order, or (b) if the Collateral cannot be repaired or is lost, stolen or suffers a constructive loss under an insurance policy covering the Collateral, pay to us the "Casualty Value." The Casualty Value will be equal to the total of (i) accrued and unpaid amounts then due and owing, and (ii) the remaining future Payments discounted to present value at 3%, in both cases as of the date the Casualty Value is received by us.

**12. Choice of Law; Waiver of Jury Trial:** Secured Party is an FDIC-insured institution with its main office in Alabama. This EFA is governed by applicable Federal Law and the laws of the State of Alabama with respect to interest and matters that are material to the determination of interest. This EFA is otherwise governed by the law of the State of Alabama, excluding conflicts of law principles. If any amount charged, collected or due exceeds the maximum amount permitted by applicable law, Secured Party shall make necessary adjustments to eliminate such excess. You consent to the non-exclusive jurisdiction of the courts located in Jefferson County, Alabama in any action or proceeding relating to this EFA. YOU WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH ACTION OR PROCEEDING, AND YOU WAIVE ANY RIGHT TO ASSERT THIS IS AN INCONVENIENT FORUM.

**13. Miscellaneous:** During the Term, you agree to provide us with all financial statements and copies of tax returns we may request. If we supply you with labels, you shall label any and all Collateral and shall keep the same affixed in a prominent place. If any provision hereof or any remedy herein provided is found to be invalid under any applicable law, the remaining provisions hereof, shall be given effect in accordance with the manifest intent hereof. The parties agree that each Payment includes interest. In some cases, we may receive a discount from Supplier to reduce your interest rate below what we would otherwise charge. Any such discount reduces your Payments due to a lower interest rate but does not reduce the Financed Amount. You agree that a waiver of breach will not be a waiver of any other subsequent breach, and that any delay or failure to enforce our rights under this EFA does not prevent us from enforcing any rights at a later time. YOU AGREE THAT WE WILL NOT BE LIABLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES FOR ANY DEFAULT BY US UNDER THIS EFA. Section headings are for convenience and are not a part of this EFA. You agree that by providing us with an email address or telephone number for a cellular or other wireless device, you expressly consent to receiving notices and other communications including email, voice and text messages from us or our affiliates or assigns at that email address or telephone number, and this express consent applies to each such email address or telephone number that you provide to us now or in the future and permits such communications regardless of their purpose. These calls and messages may incur access fees from your internet or wireless provider. You agree that the original of this EFA may be electronically duplicated and a copy hereof may be introduced in lieu of the original thereof and without further foundation. The parties hereto expressly waive the secondary evidence rule. You agree that this EFA will be binding upon your successors, permitted assigns, heirs and legal representatives. You authorize us to complete any blank in this instrument or in any document executed or delivered in connection herewith that contemplates a date by inserting a date deemed appropriate by us. Time is of the essence with respect to your obligations hereunder. Except as otherwise expressly permitted hereunder, no term or provision of this EFA may be amended, altered, waived or discharged except by a written instrument signed by the party against whom enforcement is sought. You agree, however, that we are authorized, without notice to you, to supply missing information or correct any misspellings or obvious errors in this EFA. Any formal notice given pursuant to this EFA shall, if delivered by mail, be deemed given 2 business days after being placed with the U.S. Postal Service, postage prepaid, addressed to the Debtor at its address set forth above, or to Secured Party at 23970 Hwy 59 N, Kingwood, TX 77339-1535, or such other address as a party may designate by written notice to the other. If Debtor constitutes more than one person, you agree that the liability of each such person hereunder is joint and several. Any restrictive endorsement on any check you give us in payment of any amount due hereunder shall be void. A facsimile or other copy of this EFA, as executed, shall be deemed the equivalent of the originally executed copy for all purposes. Secured Party may acknowledge acceptance of this EFA in a subsequent communication signed by Secured Party. All amounts payable hereunder by you if not paid when due shall accrue interest at a rate of interest of 1.5% per month or the highest rate allowed by applicable law if less, from the due date thereof until received by us in cash and shall be payable on demand. This EFA may be executed in separate counterparts which together shall constitute one and the same instrument. You agree this EFA may be signed electronically pursuant to the Electronic Signatures in Global and National Commerce Act and other applicable law. Only the copy of this EFA marked as the "sole original" or similar language by Secured Party or its designee is the chattel paper original of this EFA.

This EFA shall become effective upon Debtor's signature below, provided, however, that our obligation to perform our obligations under this EFA shall be subject to our satisfactory receipt of all conditions specified by us, including a complete and properly executed documentation package, as determined by us. By signing below, Debtor hereby irrevocably authorizes Secured Party to pay the Supplier on behalf of Debtor. The person executing this EFA is authorized to do so, making this EFA valid and binding on Debtor.

| Debtor Name: | CAR WASH MANAGEMENT, LLC | By: | _[signature]_ |
|---|---|---|---|
| | | Printed Name/Title: | JOSE RENE ORTIZ, Member |

**AUTHORIZATION FOR ACH PAYMENTS:** Debtor authorizes Secured Party and Secured Party's successors and assigns to automatically initiate and make debit entry charges to Debtor's bank account indicated below for the payment of all amounts owed by you from time to time under the EFA. This Authorization is to remain in effect during the Term of the EFA and Debtor acknowledges that a revocation of this authority shall be an event of default under the Agreement. Any incorrect charge will be corrected upon notification to us, by either a credit or debit to Debtor's account.

| Bank Name: | ███ | Business Acct Name: | Car Wash Management LLC |
|---|---|---|---|
| Account No: | ███ 319 | ABA No.: | ███ 0358 |
| Authorized Signature: | _[signature]_ | Printed Name and Title: | Jose Rene Ortiz / Member |

3301-20230705

Page 2 of 2

ASC00073



# PREPAYMENT ADDENDUM
### Agreement No. 2763169
### Customer: CAR WASH MANAGEMENT, LLC

Ascentium Capital
23970 HWY 59 N
Kingwood, TX 77339-1535
AscentiumCapital.com

This Prepayment Addendum ("Addendum") sets forth your right to prepay the transaction evidenced by the agreement identified above ("Agreement"). Capitalized terms used, but not defined, in this Addendum shall have the meaning set forth in the Agreement.

Provided no default under the Agreement has occurred and is continuing as of the Prepayment Date (as defined below), you may prepay the Agreement, in whole but not in part, on any business day by paying Ascentium the "Unpaid Balance" in immediately available funds.

The Unpaid Balance shall equal, as of the date of the receipt by Ascentium of the Unpaid Balance (such date, the "Prepayment Date"), the sum of (i) the Principal Balance plus (ii) the Prepayment Fee plus (iii) any Additional Amounts (each as defined below) due under the Agreement.

"Principal Balance" means:
- (a) The sum of all unpaid Payments, less all unearned interest, that are due and to become due under the Agreement; plus
- (b) Ascentium's unamortized initial direct costs for the transaction evidenced by the Agreement.

"Prepayment Fee" means:
- (a) 5% of the Principal Balance if the Prepayment Date is on or before Ascentium's receipt of the 12th Payment, or
- (b) 4% of the Principal Balance if the Prepayment Date is following Ascentium's receipt of the 12th Payment but on or before its receipt of the 24th Payment; or
- (c) 3% of the Principal Balance if the Prepayment Date is following Ascentium's receipt of the 24th Payment but on or before its receipt of the 36th Payment; or
- (d) 2% of the Principal Balance if the Prepayment Date is following Ascentium's receipt of the 36th Payment but on or before its receipt of the 48th Payment; or
- (e) 1% of the Principal Balance if the Prepayment Date is following Ascentium's receipt of the 48th Payment.

"Additional Amounts" means (i) all other amounts (excluding Payments) due and owing under the Agreement as of the Prepayment Date, (ii) all known tax and insurance payments, if any, that we expect to pay on your behalf under the Agreement after the Prepayment Date but attributable to the period prior to the Prepayment Date, and (iii) all applicable taxes, if any, arising out of the prepayment.

Ascentium shall specify the Unpaid Balance which, absent manifest error, shall be binding and conclusive. Your prepayment pursuant to this Addendum does not release you from your indemnity obligations or your obligation to reimburse us for any taxes, insurance or other expenses we pay on your behalf under the Agreement after the Prepayment Date that were not included in the Unpaid Balance calculation. This Addendum is part of the Agreement. Except as expressly set forth in this Addendum, the Agreement remains unchanged and in full force and effect. You agree that a facsimile or other copy of this Addendum, as executed, shall be deemed the equivalent of an originally executed copy for all purposes.

Very truly yours,

*[signature]*

Regions Bank d/b/a Ascentium Capital

2916-20230804

ASC00074



**COMMENCEMENT AGREEMENT**
Agreement No. 2763169

Ascentium Capital
23970 HWY 59 N
Kingwood, TX 77339-1535
AscentiumCapital.com

Date: January 5, 2024

You, the Customer, and Regions Bank d/b/a Ascentium Capital ("we", "us", "our") have entered into the above referenced equipment finance agreement, installment payment agreement, or similar agreement (which may be one or more schedules to a master agreement) (the "**Agreement**") pursuant to which we will be financing the Collateral or Software as defined in and described in the Agreement (in either case, the "**Collateral**"), subject to the terms and conditions set forth in the Agreement as supplemented by this Commencement Agreement ("**CA**"). Capitalized terms used herein and not defined herein have the meaning given such terms in the Agreement. The Collateral is being delivered to you at various times and the supplier(s) and vendor(s) (in either case, the "**Supplier**") of the Collateral have to be paid for each item of Collateral at or before its delivery to you. You agree that the Agreement is non-cancelable and in full force and effect (including, without limitation, with respect to your payment obligations thereunder) immediately even though items of Collateral remain to be delivered to you from one or more Suppliers.

**NOW THEREFORE, it is agreed as follows:**

1. Your obligations under the Agreement will commence on the date of this CA, including your obligation to pay 1/30 of a standard Payment from each day from and including the date hereof to but excluding the First Due Date. You acknowledge and agree that notwithstanding the fact that not all items of Collateral have been delivered to you as of the date set forth above, the terms and conditions of the Agreement, including your obligation to pay all amounts due and owing as set forth in the Agreement, shall commence immediately and, except as otherwise specifically set forth in this CA, irrevocably.

2. You agree to inspect all undelivered items of Collateral immediately upon their delivery to you. If, when delivered, an item of Collateral is damaged or non-conforming, you agree to cause the Supplier in question to repair and/or replace any such item of Collateral while continuing to meet all of your payment and other obligations under the Agreement and you agree that any replacement shall be part of the Collateral for all purposes under the Agreement.

3. All amounts anticipated to be disbursed by us on your behalf that have not been disbursed as of the date of this CA will be deemed disbursed by us into a separate holding account for your benefit ("Account"), the contents of which shall be debited by the amount of each subsequent disbursement to Supplier(s) as contemplated by this CA. To secure your obligations to us under the Agreement and this CA, you hereby grant to us a security interest in the contents of the Account and any proceeds.

4. You acknowledge that we may not have received a final invoice from the Supplier for all Collateral and Soft Costs financed under the Agreement. If the final actual cost of the Collateral and any financed Soft Costs that we pay the Supplier and any taxing authority (the "Actual Cost") is different than the Financed Amount set forth in the Agreement, you authorize us to adjust the Financed Amount to the Actual Cost. In addition, if we adjust the Financed Amount due to the Actual Cost changing from the Estimated Cost, you authorize us to adjust the Payment amount to maintain the same interest rate set forth in the Agreement. If we request, you agree to execute a document reflecting such adjustments and we will provide you with evidence of our cost changes requiring such adjustments if you request.

5. You agree that we will have no liability to you in the event we decide to terminate our purchase of any Collateral or payment for any Soft Costs from any Supplier because we have determined, in our sole discretion, that there has been a material adverse change in your creditworthiness from that on which we based our approval of the Agreement. In any circumstance contemplated by the preceding sentence, we will continue the Agreement based on the Financed Amount already paid by us to the Suppliers (and any taxing authority) as of the date we determine not to make further disbursements to the Suppliers and we will reduce the amount of each Payment you owe under the Agreement to reflect such actual Financed Amount and maintain the interest rate set forth in the Agreement, taking into account the higher Payments made by you up to the date of that determination and any balance in the Account shall revert to us.

6. This CA sets forth the entire agreement of the parties with respect to its subject matter and it may only be amended by a written instrument executed by the party against whom enforcement is sought. In the event of a conflict between this CA and the terms of the Agreement, the terms of this CA shall govern and control, provided however, except as explicitly set forth in Sections 4 and 5 above, nothing set forth in this CA shall be deemed to affect your obligation to pay and perform all of your obligations as set forth in the Agreement without setoff, abatement or counterclaim. This CA will be governed by and construed in accordance with the laws of the jurisdiction governing the Agreement.

You agree that a facsimile or other copy of this CA, as executed, shall be deemed the equivalent of the originally executed copy for all purposes. We may acknowledge acceptance of this CA by written notice to you of acceptance of the Agreement.

| Customer Name: | CAR WASH MANAGEMENT, LLC | By: | |
|---|---|---|---|
| | | Printed Name/Title: | JOSE RENE ORTIZ, Member |

301-20230508

ASC00075



**PERSONAL GUARANTY**

Agreement No. 2763169

Ascentium Capital
23970 HWY 59 N
Kingwood, TX 77339-1535
AscentiumCapital.com

| Obligor Name: | CAR WASH MANAGEMENT, LLC ("Obligor") |
|---|---|

The undersigned individual(s) ("you", "your") unconditionally guarantee to Regions Bank d/b/a Ascentium Capital and our successors and assigns ("we", "us" or "our") the prompt payment and performance when due of all of the obligations of the Obligor (named above) under the lease agreement, rental agreement, equipment finance agreement, installment payment agreement, loan and security agreement, or similar agreement (including schedules to master agreements) whose Agreement number is referenced above ("Agreement"), entered between us and the Obligor, as lessee, renter, debtor, or other obligor and all related documents executed by the Obligor (collectively, "Agreements").

We may proceed against you before proceeding against the Obligor, any collateral or any leased equipment under the Agreements, or enforcing any other remedy. Notwithstanding any changes made to the Agreements in our dealings with Obligor, this Guaranty will remain in effect with respect to the Agreements as so changed even if you are not notified of the changes and will remain in effect even if the Agreements or any of them are no longer enforceable against the Obligor. You waive all presentments, demands for performance, notices of protest, notices of dishonor, notices of acceptance of this Guaranty and all other notices to which you may have a right. You agree to pay us all our expenses in enforcing this Guaranty. You may not assign this Guaranty without our written consent.

This Guaranty shall be governed by the laws of the jurisdiction governing the Agreement. **You consent to non-exclusive jurisdiction of the courts in Jefferson County, Alabama in any action to enforce this Guaranty, waive any objection based on improper venue and waive any right to a jury trial.** The notice provisions in the Agreement shall apply to this Guaranty except that any notice to you, if delivered by mail, will be sent to your current address shown in our records. You agree that by providing us with an email address or a phone number, you expressly consent to receiving notices and other communications including voice and text messages from us at that number or email address, and this express consent applies to each such email address or phone number that you provide to us now or in the future.

If there is more than one guarantor of the Obligor's obligations under the Agreements, the liabilities of each such guarantor shall be joint and several. This Guaranty shall inure to our benefit and our successors and assigns, and shall be binding upon you, your successors and permitted assigns. You agree this Guaranty may be signed and delivered electronically. A facsimile or other copy of this Guaranty, as executed, shall be deemed the equivalent of the original for all purposes. This Guaranty may be executed in separate counterparts which together shall constitute one and the same instrument. You consent to our conducting a credit evaluation of you from all sources, periodically updating it and sharing the results with others.

Each of the undersigned has duly executed this Guaranty, effective as of January 5, 2024.

**PLEASE SIGN BELOW**

| Printed Name: | JOSE RENE ORTIZ | Guarantor Signature: | |
|---|---|---|---|
| Printed Name: | | Guarantor Signature: | |
| Printed Name: | | Guarantor Signature: | |
| Printed Name: | | Guarantor Signature: | |

3296-20230508

ASC00077



**GUARANTY**
Agreement No. 2763169

Ascentium Capital
23970 HWY 59 N
Kingwood, TX 77339-1535
AscentiumCapital.com

We use the words **you** and **your** to mean the undersigned Guarantor. The words **we**, **us**, and **our** refer to Regions Bank d/b/a Ascentium Capital and its successors and assigns.

For valuable consideration, receipt of which is hereby acknowledged, you hereby unconditionally guarantee and promise on demand (i) to pay us in lawful money of the United States all periodic rent, debt service, scheduled payments of purchase price and other sums required to be paid under the terms of (A) the equipment lease, equipment finance agreement, note and security agreement, loan and security agreement, conditional sale agreement or similar agreement (including schedules to master agreements) whose Agreement number is referenced above ("Agreement"), entered between us and **CAR WASH MANAGEMENT, LLC** (hereinafter called "Obligor"), as lessee, debtor, buyer or other obligor, and (B) any document relating to such Agreement representing any obligation from Obligor to us, including, without limitation, bills of sale, security agreements, evidence of indebtedness, progress payment agreements or lease commencement agreements (collectively, "Other Documents") in the amounts, at the times and in the manner set forth in such Agreement or Other Documents, and (ii) to perform, at the time and in the manner set forth in such Agreement, all of the terms, covenants and conditions, therein required to be kept, observed or performed by Obligor, and (iii) to perform, at the times and in the manner set forth in the Other Documents, all of the terms, covenants and conditions therein required to be kept, observed and performed by Obligor. You shall pay all of the foregoing amounts and perform all of the foregoing terms, covenants and conditions notwithstanding that such Agreement or any of the Other Documents, or any obligations performed or to be performed thereunder, shall be void or voidable as against Obligor or any of Obligor's creditors, including a trustee in bankruptcy of Obligor, by reason of any fact or circumstance including without limiting the generality of the foregoing, failure by any person to file and document or to take any other action to make the Agreement or any of the Other Documents enforceable in accordance with their terms.

This Guaranty is a continuing one and shall terminate only upon full payment of all rents, debt service, scheduled payments of purchase price and all other sums due under the Agreement and the Other Documents and the performance of all the terms, covenants and conditions therein required to be kept, observed or performed by the Obligor. All indebtedness, now existing or hereafter arising, between Obligor and you is hereby subordinated to all present and future obligations of Obligor or you to us, including, but not limited to, the obligations set forth in the Agreement and Other Documents and no payment shall be made or accepted on any such indebtedness due Obligor or you until all of such obligations to us are paid and satisfied in full. This Guaranty is a guarantee of payment and performance and not of collection only.

You authorize us, without notice or demand, and without affecting your liability hereunder, from time to time in the course of our dealings with the Obligor to: (a) change the amount, time or manner of payment of rent, debt service, scheduled payment of purchase price or other sums required to paid under the terms of the Agreement and Other Documents; (b) change any of the terms, covenants, conditions or provisions of the Agreement or Other Documents; (c) amend, modify, change or supplement the Agreement and Other Documents; (d) assign the Agreement and Other Documents or the rents, debt service, scheduled payments of purchase price or other sums payable under the Agreement and Other Documents; (e) consent to Obligor's assignment of the Agreement and Other Documents or to the subleasing or subfinancing or use by any third party (other than Obligor) of all, or any portion, of the property covered by the Agreement; (f) take and hold security for the payment of this Guaranty or the performance of the Agreement and Other Documents, and exchange, enforce, waive and finance any such security; and (g) apply such security and direct the order of manner of sale thereof as we in our **sole** discretion may determine. We may without notice assign this Guaranty in whole or in part. You shall not assign this Guaranty without our prior written consent.

You waive any right to require us, before demanding from you the payment or performance from you specified above to; (a) proceed against Obligor; (b) proceed against or exhaust any property leased, financed or otherwise in the possession of Obligor pursuant to the Agreement or other security leased to or held from Obligor; (c) pursue any other remedy in Our power whatsoever; or (d) notify You of any default by Obligor in the payment of any rent, debt service, scheduled payment of purchase price or other sums required to be made under the terms of the Agreement or Other Documents or in the performance of any terms, covenants or conditions herein required to be kept, observed or performed by the Obligor. You waive any defense arising by reason of any disability or other defense of Obligor or by reason of the cessation from any cause whatsoever of the liability of the Obligor. You shall have no right of subrogation and waive any right to enforce any remedy which we now have or may hereafter have against Obligor, as well as any right of indemnity against Obligor for any obligations which you may perform with respect to the Agreement or Other Documents, and waive any benefit of, and any right to participate in, any security now or hereafter held by us. You waive all presentments, demands for performance, notices of non-performance, protests, notices of protest, notices of dishonor and notices of acceptance of this Guaranty and all other notices to which you may have a right.

You agree to pay attorneys' fees and all other costs and expenses, which may be incurred by us in the enforcement of this Guaranty.

You represent and warrant to us that: (a) you are a corporation, limited liability company or other entity duly organized and existing in good standing in the jurisdiction of your formation and have full power and authority to make and deliver this Guaranty; (b) the execution, delivery and performance of this Guaranty have been duly authorized by all necessary corporate, limited liability company or equivalent action and do not and will not violate the provisions of any presently applicable law or its articles of incorporation or other constituent documents or bylaws or any agreement presently

331-20230401

ASC00078

binding on you; and (c) this Guaranty has been duly executed and delivered by your authorized representatives and constitutes your lawful, binding and legally enforceable obligation.

You authorize us to conduct a credit evaluation of you and to share any such information with others. In connection with such evaluation you authorize us contact credit reporting agencies and others and you direct such parties to supply to us all information concerning you in their possession; you further authorize us to conduct updates of our evaluation during the term of the Agreement. Your obligations hereunder are in addition to and shall be cumulative with all other obligations of yours to us as guarantor or otherwise, and are independent of the obligations of the Obligor. A separate action or actions may be brought and prosecuted against you, whether an action is brought against Obligor or whether Obligor be joined in any such action or actions and **YOU WAIVE INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY IN ANY ACTION, PROCEEDING OR LITIGATION BETWEEN OR AMONG OBLIGOR, YOU OR US. NEITHER YOU NOR US SHALL BE LIABLE FOR SPECIAL, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES IN ANY ACTION OR PROCEEDING RELATING TO THIS GUARANTY. YOU CONSENT TO THE NON-EXCLUSIVE JURISDICTION OF THE FEDERAL AND STATE COURTS LOCATED IN JEFFERSON COUNTY, ALABAMA IN ANY ACTION OR PROCEEDING RELATING TO THIS GUARANTY AND YOU WAIVE ANY RIGHT YOU MIGHT HAVE TO OBJECT TO ANY SUCH ACTION OR PROCEEDING ON THE GROUNDS IT IS AN INCONVENIENT FORUM.** This Guaranty shall be governed by and construed in accordance with the laws of the jurisdiction governing the Agreement.

This Guaranty shall inure to our benefit or that of our successors and assigns, and shall be binding upon you, your heirs, personal representatives, successors and permitted assigns.

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT: To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

IN WITNESS WHEREOF the undersigned has duly executed this Guaranty on January 5, 2024. A facsimile or other copy of this Guaranty, as executed, shall be deemed the equivalent of the original for all purposes. This Guaranty may be executed in separate counterparts which together shall constitute one and the same instrument.

| GUARANTOR: | West Covina Car Wash LLC<br>By: CAR WASH MANAGEMENT, LLC, Member<br>By: Jose Rene Ortiz, Member | Federal Tax ID | ██████████ |
|---|---|---|---|
| Business Address: | 310 S VINCENT AVE STE A, WEST COVINA, CA, 91790 | | |
| Signature: | ⊠ _(signature)_ | Printed Name, Title: | JOSE RENE ORTIZ, Member |

331-20230401



**AUTHORIZATION TO PERFORM VERBAL VERIFICATION**
Agreement No. 2763169

Ascentium Capital
23970 HWY 59 N
Kingwood, TX 77339-1535
AscentiumCapital.com

The undersigned hereby authorizes Regions Bank, an Alabama banking corporation d/b/a Ascentium Capital ("Ascentium") to perform a verbal verification accepting the terms and conditions of the above-referenced Agreement and confirming the identification and condition of the Collateral or Equipment subject thereto.

The undersigned agrees that a facsimile or other image of this Authorization to Perform Verbal Verification, as executed, shall be deemed the equivalent of the originally executed copy for all purposes.

The undersigned understands and agrees that such verbal verification may be recorded and retained by Ascentium and hereby consents to such recordation and retention.

Person(s) Authorized to Provide Verbal Verification:

Name: _Jose R. Ortiz_    Title: _Member_    Phone: _1/8/2024_
Name: _____    Title: _____    Phone: _626-413-0842_
Name: _____    Title: _____    Phone _____

CUSTOMER: CAR WASH MANAGEMENT, LLC

Signature: _____

Printed Name: JOSE RENE ORTIZ

Title: Member    Date: _1/8/2024_

251-20230401

ASC00080



**DELIVERY AND ACCEPTANCE CERTIFICATE**
**Agreement No. 2763169**

Ascentium Capital
23970 HWY 59 N
Kingwood, TX 77339-1535
AscentiumCapital.com

To:      Regions Bank, an Alabama banking corporation d/b/a Ascentium Capital ("Ascentium")

The undersigned hereby certifies: (i) that all of the property which is to be leased, financed or sold, as applicable, pursuant to the rental agreement, lease agreement, equipment finance agreement, note, security agreement, loan and security agreement, conditional sale agreement or similar document referenced above (which may be one or more schedules to a master agreement) (the "Agreement") between Regions Bank d/b/a Ascentium Capital as payee, lessor, lender, secured party or seller and the undersigned as renter, lessee, debtor, buyer or other obligor (the "Equipment"), has been delivered to, and received by, the undersigned, (ii) the Equipment conforms in all respects to that ordered by the undersigned, (iii) its condition is satisfactory in all respects to the undersigned and (iv) that the Equipment is accepted by the undersigned under the Agreement in all respects, and the undersigned hereby irrevocably directs Ascentium to pay the equipment suppliers the purchase price of the Equipment.

The undersigned agrees that a facsimile or other copy of this Delivery and Acceptance Certificate, as executed, shall be deemed the equivalent of the originally executed copy for all purposes. By executing this Delivery and Acceptance Certificate the undersigned irrevocably acknowledges and agrees that the undersigned's non-terminable payment and other obligations under the Agreement have commenced.

CUSTOMER: CAR WASH MANAGEMENT, LLC

Signature:

Printed Name:      JOSE RENE ORTIZ

Title:      Member

Date Signed:      1/8/24

371-20230401

ASC00081



**AUTHORITY AND INCUMBENCY CERTIFICATE**
Agreement No. 2763169

Ascentium Capital
23970 HWY 59 N
Kingwood, TX 77339-1535
AscentiumCapital.com

COMPANY:
Regions Bank, an Alabama banking corporation
d/b/a Ascentium Capital
23970 US Highway 59 North
Kingwood, TX 77339

CUSTOMER:
CAR WASH MANAGEMENT, LLC
310 S VINCENT AVE
WEST COVINA, CA 91790

I, the undersigned person ("Certifier") executing this Authority and Incumbency Certificate ("Certificate") hereby certifies to Company as follows:

1. I am a duly appointed officer, manager, partner, member or other appointed official with the power and authority to act on behalf of the Customer and, in particular, with the power and authority to execute and deliver this Certificate.

2. CAR WASH MANAGEMENT, LLC ("Customer") and Regions Bank, an Alabama banking corporation, d/b/a Ascentium Capital ("Company") intend to enter into from time to time certain equipment lease agreements, finance agreements, loan agreements, conditional sale agreements or other agreements (each an "Agreement") pursuant to which Company will provide financing to the Customer or will agree to sell, lease or otherwise finance certain items of personal property to or for the Customer as more fully described in the Agreement.

3. Customer has taken and will take such action as may be necessary to authorize Customer to enter into and perform its obligations under the Agreements including, without limitation, the taking of all necessary action under Customer's organization documents or otherwise including, without limitation, the adoption of resolutions and obtaining all necessary consents.

4. The individual listed below ("Signer") is a duly appointed and qualified officer, manager, partner, member or other appointed official of the Customer, has the official title with Customer as indicated below and is authorized and empowered to execute and deliver the Agreements and such other instruments and documents on behalf of Customer as may be deemed necessary or appropriate by the Signer in connection with the Agreements and that any such Agreements and other instruments and documents executed by the Signer are and will be the valid and binding obligation of the Customer.

I DO FURTHER CERTIFY that the signature appearing below is the true and genuine signature of the Signer named below, and that the Signer is duly elected and currently serving the Customer in the official capacity and with the title that is set forth below adjacent to his or her signature.

| Signature: | ⊠ |
| --- | --- |
| Printed Name and Title: | JOSE RENE ORTIZ, Member |

5. Company shall rely upon this Certificate and statements contained herein. Customer agrees that a facsimile or other copy of this Certificate, as executed, shall be deemed the equivalent of the originally executed copy for all purposes.

**The undersigned Certifier must be a different officer, manager, partner, member or other appointed official of the Customer than the above-named Signer (this Certificate must be countersigned by a second person).**

IN WITNESS WHEREOF the Certifier has executed this Certificate as of _January 8th_, 20 _24_.

X: _____

Printed Name: _Andrew Williams_

Title: _Member_

161-20230401

ASC00083

# EXHIBIT C



October 22, 2024

JOSE ORTIZ
402 ADDLEMAN AVE
WEST COVINA, CA  91792-2823

RE:     Regions Bank d/b/a Ascentium Capital Agreement Number 2763169 ("Agreement")
        Customer Name:  Car Wash Management, LLC ("Customer")

---

## PAST DUE REMINDER NOTICE

Dear Valued Customer:

Our records indicate that we have not yet received the amount due of $7,105.95, which was due on or before 10/15/24. You guaranteed payment of the above-referenced Agreement.  Therefore, we are directing this notice to you.  We have also attempted to contact the Customer.

If you have already sent in the amount due or have made arrangements with one of our representatives, please disregard this Notice.  Should you still need to submit payment, please send to:

Regions Bank d/b/a Ascentium Capital
23970 Highway 59N
Kingwood, TX 77339

For your convenience, it is also possible to remit your payment by phone at 877.568.5915 ext 2083 or online at https://accountbutler.ascentiumcapital.com/.

## Account Butler
To access Account Butler, you must be a registered user.

Please follow these steps to complete your registration:

- ✓  Go to our website at https://accountbutler.ascentiumcapital.com/
- ✓  In the "Register Now" section, enter the following:
    - ▪  Agreement Number
    - ▪  Valid email address
    - ▪  Business Tax ID Number, or Social Security Number if you are a personal guarantor

Sincerely,
Regions Bank, an Alabama banking corporation d/b/a Ascentium Capital

Carlos Galvez
877.568.5915 ext 2083
CarlosGalvez@AscentiumCapital.com

**NOTICE TO BANKRUPTCY DEBTOR(S):**  Regions Bank, an Alabama banking corporation d/b/a Ascentium Capital ("Ascentium") is not attempting to violate the automatic stay provisions or any other provisions of the United States Bankruptcy Code.  If you are a recipient of this notice and a debtor in a bankruptcy case, or if your obligations to Ascentium have been discharged in a bankruptcy case, this notice is being provided to you solely for informational and compliance purposes and is not a bill or request for payment.

61-20230401

ASC00070

Car Wash Management LLC
October 30, 2024
Page 2

_____

| **VIA U.S. MAIL AND EMAIL** | **VIA U.S. MAIL AND EMAIL** |
|---|---|
| West Covina Car Wash LLC<br>310 S Vincent Ave<br>West Covina, California 91790<br>Email: andrew@sandiegoautoshine.com<br>Email: andrew@carwashmgmt.com<br>Email: John@carwashmgmt.com<br>Email: rene@carwashmgmt.com<br>Email: accounting@carwashmgmt.com | Jose R Ortiz<br>402 Addleman Ave<br>West Covina, California 91792<br>Email: rene@carwashmgmt.com |

RE:  Regions Bank d/b/a Ascentium Capital ("Ascentium"); Equipment Finance Agreement No. 2763169 (the "EFA") with Car Wash Management LLC ("Debtor") and West Covina Car Wash LLC and Jose R Ortiz ("Guarantors")

# NOTICE OF DEFAULT AND ACCELERATION

Ladies and Gentlemen:

On or about January 10, 2024, Debtor entered into the EFA with Ascentium in order to finance Debtor's acquisition of equipment from Wash World Inc (the "Collateral").

The Guarantors unconditionally guaranteed the payment and performance when due of all obligations of Debtor under the EFA, and all related documents executed by Debtor. The Guarantors further agreed that Ascentium may proceed against the Guarantors before proceeding against Debtor.

The EFA is past due because Debtor has failed to pay the monthly payment due October 15, 2024.  In addition, Ascentium has been advised that the Collateral was never received nor installed and further, that Debtor has intentionally misdirected the Ascentium loan funding proceeds for the use of an unauthorized third party for unauthorized collateral which on information and belief has been installed in an unauthorized third party location.  Therefore, the EFA is in Default (as defined in the EFA).  In accordance with its rights and remedies under the EFA, Ascentium hereby accelerates and declares the entire balance of the EFA immediately due and payable.  Pursuant to the default and remedies section of the EFA, Ascentium is required to discount future payments.  The accelerated amount is detailed below:

ASC00085

Car Wash Management LLC
October 30, 2024
Page 3

_____

| EFA 2763169 | ($) |
|---|---|
| Past Due Payments: | 5,957.29 |
| Late Charges: | 648.72 |
| Insurance Charges: | 499.94 |
| Future Payments Accelerated (3% present value discount applied): | 343,891.05 |
| *TOTAL: | 350,997.00 |

*Per diem interest accrues at $172.53*

Accordingly, **DEMAND IS MADE for payment of $350,997.00, plus default interest accruing in the amount of $172.53 per day,** and all other contractually-applicable charges, the total of which must be received at Ascentium's office at 23970 Highway 59 N., Kingwood, Texas, 77339, no later than ten (10) days from the date of this letter.

Pursuant to its rights under the EFA and applicable law, Ascentium is entitled to take possession of the Collateral. The Collateral is being withheld from Ascentium in violation of Ascentium's rights. Accordingly, **DEMAND IS MADE to do the following**:

1.      Cease taking any action to sell, use, assign or dispose of the Collateral;

2.      Immediately deliver to Ascentium any proceeds of the Collateral;

3.      Assemble and surrender the Collateral to Ascentium at a time and place acceptable to Ascentium; and

4.      Stop using, transferring, withdrawing or encumbering any funds on deposit in any financial institution at which proceeds of the Collateral have been deposited and immediately pay all such funds to Ascentium.

Please contact the undersigned to make arrangements for the surrender of the Collateral (in which event the Debtor and Guarantors shall remain jointly and severally liable for the debt and any deficiency balance).

If any payment less than the full indebtedness demanded above is delivered to Ascentium, such payment will be applied to said indebtedness (in any sequence Ascentium selects in its sole discretion), with full reservation of all of Ascentium's rights and remedies and without waiver of or prejudice to any of Ascentium's rights or remedies. Moreover, any such partial payment shall not cure any default under the EFA, and such payment shall not reinstate or de-accelerate any indebtedness under the EFA. Therefore, unless the demand stated above is timely and fully satisfied, or this matter is otherwise resolved with written documentation acceptable to Ascentium in its sole discretion, Ascentium will immediately take all further steps it deems appropriate, including and without limitation commencing a legal action against you for all available relief.

ASC00086

Car Wash Management LLC
October 30, 2024
Page 4

Please note that Ascentium has no obligation or duty to inform Debtor or Guarantors of Ascentium's intention to exercise its rights and remedies except as expressly required by the EFA or applicable law.  Ascentium is, however, doing so in this letter as a courtesy.

Please be advised that this letter is not one in a series of demand letters you will receive in connection with this matter and if the terms of the EFA and other related documents are not complied with litigation will be the next step and Debtor and Guarantors will also be liable for all attorney's fees and costs incurred in such litigation.

To the extent your obligations have been discharged, dismissed, or are subject to an automatic stay under Title 11 of the United States Code, this notice is for compliance and informational purposes only and does not constitute a demand for payment or any attempt to collect any such obligation.  This notice is given pursuant to 11 U.S.C. § 362(b) (11), if applicable.

This letter is not an all-inclusive statement of Ascentium's rights or remedies against any person or entity.  Moreover, nothing stated in or omitted from this letter is a waiver of, or has any adverse effect on, any of Ascentium's rights or remedies, and all such rights and remedies are cumulative, may be exercised in any such order as Ascentium elects, and are expressly reserved.

THIS IS AN ATTEMPT TO COLLECT THE INDEBTEDNESS EVIDENCED BY THE EFA, AND/OR SECURED BY THE LIENS, SECURITY INTERESTS, AND TERMS AND PROVISIONS CONTAINED IN THE EFA, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.  PLEASE BE GOVERNED ACCORDINGLY.

Sincerely,
Regions Bank d/b/a Ascentium Capital

Jerry L. Noon
Vice President, Asset Management

ASC00087

# EXHIBIT D

Xitlaly Estrada (SBN 333403)
**Baker & Hostetler LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone:  310-979-8430
Email:      *xestrada@bakerlaw.com*
            *aclaypool@bakerlaw.com*

*Attorney for Defendant*
WASHWORLD, INC.

Michael D. Gannon (*pro hac vice*)
Katharine H. Walton (*pro hac vice*)
**Baker & Hostetler LLP**
One North Wacker Drive, Suite 3700
Chicago , IL 60606
Telephone:  312-416-6200
Email:      *mgannon@bakerlaw.com*
            *kwalton@bakerlaw.com*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

REGIONS BANK,
dba ASCENTIUM CAPITAL,

               Plaintiff,

    v.

ANDREW PAUL WILLIAMS, aka
ANDREW P. WILLIAMS, aka
ANDREW WILLIAMS, an individual,
CAR WASH MANAGEMENT, LLC,,
a Delaware Limited Liability Company,
,

               Defendants.

JOSE RENE ORTIZ,

               Cross Claimant,

    v.

ANDREW PAUL WILLIAMS, CAR
WASH MANAGEMENT, LLC, CAR
WASH MANAGEMENT, LLC,
WASHWORLD, INC., and DOES 1 to
35, inclusive,

               Cross Defendants.

Case No. 2:25-CV-00359 CAS-KS

**CROSS DEFENDANT
WASHWORLD, INC.'S
INTERROGATORIES TO JOSE
RENE ORTIZ, SET ONE**

WASHWORLD, INC.,

                Counter Plaintiff,

    v.

REGIONS BANK, D/B/A
ASCENTIUM CAPITAL,

                Counter Defendant.

WASHWORLD, INC.,

                Cross Claimant,

    v.

CAR WASH MANAGEMENT, LLC,

                Cross Defendant.

**PARTY:**                WASHWORLD, INC.

**RESPONDING PARTY:**    JOSE RENE ORTIZ

**SET NO.:**           ONE

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Cross Defendant Washworld, Inc. ("Washworld") propounds its First Set of Interrogatories to Cross Claimant Jose Rene Ortiz ("Ortiz"):

## **DEFINITIONS**

A.     "DOCUMENT" or "DOCUMENTS" means "writings" as defined by Federal Rules of Evidence, Rule 1001.

B.     "PERSON" means any individual, firm, partnership, corporation, company, association, or other legal entity.

C.     "COMMUNICATION" or "COMMUNICATE" means any attempt by one or more persons or entities to communicate, including but not limited to written communications, including memoranda, letters, notes, telegrams, telexes and any other documents; oral communications, including face-to-face meetings and telephone conversations; and electronic or computerized communications, including "electronic mail" or e-mails, text messages, social media messages and postings, word processing systems, magnetic tapes, disks, and diskettes.

D.     "ORTIZ," "YOU," and "YOUR" refer to Cross Claimant Jose Rene Ortiz and any of his officers, directors, representatives, agents and employees and other persons or entities, both present and former, who have acted or are or purport to be acting on his behalf.

E.     "WASHWORLD" refers to Washworld, Inc., and any of its officers, directors, representatives, agents and employees and other persons or entities, both present and former, who have acted or are or purport to be acting on its behalf.

F.     "CAR WASH MANAGEMENT" refers to Car Wash Management, LLC, a Delaware LLC, and any of its officers, directors, representatives, agents and employees and other persons or entities, both present and former, who have acted or are or purport to be acting on its behalf.

G.     "WEST COVINA CAR WASH" refers to West Covina Car Wash, LLC

and any of its officers, directors, representatives, agents and employees and other persons or entities, both present and former, who have acted or are or purport to be acting on its behalf.

H.    "ASCENTIUM" refers to Regions Bank d/b/a Ascentium Capital and any of its officers, directors, representatives, agents and employees and other persons or entities, both present and former, who have acted or are or purport to be acting on its behalf.

I.    "WILLIAMS" refers to Andrew Paul Williams and any of his officers, directors, representatives, agents and employees and other persons or entities, both present and former, who have acted or are or purport to be acting on his behalf.

J.    "AVW" refers to AVW Equipment Company, Inc.

K.    EQUIPMENT FINANCING AGREEMENT means the document attached to ASCENTIUM's Complaint at Exhibit 1.

L.    TRANSACTION DOCUMENTS means the documents Mr. Ortiz executed, attached hereto as Exhibit 1, including the Application for Financing, and Personal Guaranty, the Authorization to Perform Verbal Verification, Commencement Agreement, Authority and Incumbency Certificate, and Delivery and Acceptance Certificate.

M.    "FUNDING INSTRUCTIONS" means the document appended as Exhibit 4 to ASCENTIUM's Complaint.

N.    "IDENTIFY" and "DESCRIBE" have the following meanings:

   a. When used in reference to an individual, it means to state the person's full name; present business address or, if unavailable, last known business address; present home address or, if unavailable, last known home address; and business or governmental affiliation and job title or, if unavailable, last known business or governmental affiliation and job title.

4

b. When used in reference to any person other than an individual, it means to state the person's full name and d/b/a, if any; and present address or, if unavailable, last known address.

c. When used in reference to corporate entities, it means to state the corporate name, and date and place of incorporation, and all of its present business addresses.

d. When used in reference to Communications, it means to describe the statements and Communications by stating the date and place where they were made; identifying each of the makers and recipients thereof in addition to all the persons present; the topics addressed; and indicating the medium of Communication.  When identifying the date of an oral statement or Communication, the precise date must be given.  If only an approximate date is given, it will be presumed that ORTIZ has no recollection or specific knowledge as to the exact date.

e. When used in reference to a Document or documentary evidence, it means to state the type of Document (e.g., letter, memoranda, telegram, chart), its author and originator, its date or dates, all addresses and recipients, its present location or custodian, the topics dealt with therein, with such reasonable particularity as is sufficient for a specific demand for production, and any identifying marks, numerals, code words or letters distinguishing it from other like Documents.  If any such Document was, but no longer is, in ORTIZ's possession or subject to ORTIZ's custody or control, state what disposition was made of it.  Documents to be identified shall include all those Documents in ORTIZ's possession, custody, or control and all Documents of which you have knowledge.

**INSTRUCTIONS**

A.    If ORTIZ refuses to answer or respond to any interrogatory, in whole or in part, state clearly the basis for such refusal.  If a privilege is claimed, identify any Document or Communication for which a privilege is claimed and set forth the nature of the privilege asserted in enough detail to enable any other party or the Court to assess the applicability of the claimed privilege.

B.    In producing Documents and things responsive to these interrogatories, ORTIZ shall furnish all Documents and things within its possession, custody, or control, regardless of whether these Documents are possessed directly by ORTIZ, or by its present or past agents, employees, affiliates, related companies, subsidiaries, representatives, investigators, attorneys, or others. Documents shall be produced as stored in the ordinary course of business. Electronically stored Documents shall be produced in accordance with the protocol specified in the Instructions to Washworld's First Set of Requests for Production of Documents.

C.    If ORTIZ invokes Federal Rule of Civil Procedure 33(d) in response to these interrogatories, it must identify the Bates Numbers or other suitable manner of identifying the specific Documents that are responsive to the interrogatory.

D.    ORTIZ shall serve answers to these interrogatories within 30 days of service.

**INTERROGATORIES, SET ONE**

**INTERROGATORY NO. 16:**

State all positions, titles, and roles you held with CAR WASH MANAGEMENT from January 2023 to present.

**INTERROGATORY NO. 17:**

Set forth in detail YOUR roles and responsibilities at CAR WASH MANAGEMENT.

**INTERROGATORY NO. 18:**

6

State all positions, titles, and roles you held with WEST COVINA CAR WASH from January 2023 to present.

**INTERROGATORY NO. 19:**

Set forth in detail YOUR roles and responsibilities at WEST COVINA CAR WASH.

**INTERROGATORY NO. 20:**

Set forth in detail all authority YOU contend YOU had or lacked to sign contracts on behalf of CAR WASH MANAGEMENT and WEST COVINA CAR WASH.

**INTERROGATORY NO. 21:**

If you contend you lacked authority to execute documents on behalf of CAR WASH MANAGEMENT, set forth in detail why YOU executed the Authority and Incumbency Certificate, attached hereto as Exhibit 1, indicating that YOU had "the power and authority to act on behalf of" CAR WASH MANAGEMENT.

**INTERROGATORY NO. 22:**

Set forth in detail the circumstances under which you signed the EQUIPMENT FINANCING AGREEMENT and TRANSACTION DOCUMENTS, including who presented these documents, whether there were any witnesses, how these documents were presented, what was said, and whether you read the EQUIPMENT FINANCING AGREEMENT and TRANSACTION DOCUMENTS before you signed them.

**INTERROGATORY NO. 23:**

Describe YOUR involvement, if any, in canceling the AVW order and switching to Washworld, including all communications with WILLIAMS, WASHWORLD, and ASCENTIUM.

**INTERROGATORY NO. 24:**

State all facts in support of amounts YOU claim are owed to you by WILLIAMS, CAR WASH MANAGEMENT, and WASHWORLD, and the basis for those amounts.

7

**INTERROGATORY NO. 25:**

Identify any DOCUMENTS and COMMUNICATIONS YOU rely on to refute ASCENTIUM's allegations in paragraphs 19-25 of its Complaint, that YOU defrauded ASCENTIUM.

**INTERROGATORY NO. 26:**

State all facts that refute ASCENTIUM's allegations in paragraphs 19-25 of its Complaint, that YOU defrauded ASCENTIUM.

**INTERROGATORY NO. 27:**

State all facts supporting YOUR claim for equitable indemnity against WASHWORLD.

**INTERROGATORY NO. 28:**

Identify any DOCUMENTS that support YOUR claim for equitable indemnity against WASHWORLD, including the specific language giving rise to indemnification.

**INTERROGATORY NO. 29:**

Identify all representations that CAR WASH MANAGEMENT and WILLIAMS allegedly made to YOU related to the EQUIPMENT FINANCING AGREEMENT and TRANSACTION DOCUMENTS, including each statement, who made the statement, the date on which each statement was made, the manner in which each statement was made (email, phone, in-person, etc.), to whom each statement was made, and the identities of any other persons present during each statement.

**INTERROGATORY NO. 30:**

Set forth all facts that support or refute ASCENTIUM's allegation in Paragraph 47 of its Complaint that YOU specifically intended to induce ASCENTIUM to make a payment to WASHWORLD.

Dated: December 31, 2025     **BAKER & HOSTETLER LLP**

By: */s/ Katharine H. Walton*
Xitlaly Estrada
Michael Gannon (*pro hac vice*)
Katharine H. Walton (*pro hac vice*)

*Attorneys for Defendant*
WASHWORLD, INC.

9

# CERTIFICATE OF SERVICE

I am employed in Cook County, Illinois. I am over the age of eighteen years and not a party to the within-entitled action. My business address is One North Wacker Drive, Suite 3700, Chicago, IL 60606. On December 31, 2025, I served a copy of the within document(s):

## CROSS DEFENDANT WASHWORLD, INC.'S INTERROGATORIES TO ORTIZ, SET ONE

☑ **BY EMAIL**:  by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Andrew K. Alper (SBN 088876)
**FRANDZEL ROBINS BLOOM & CSATO, L.C.**
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, CA 90017
Telephone:  323-852-1000
Facsimile:  323-651-2577
Email:      *aalper@frandzel.com*

*Attorneys for Plaintiff*
REGIONS BANK

Lisa Mitts Patrick (SBN 134522)
**LAW OFFICE OF LISA MITTS PATRICK**
112 E. Amerige Ave., Suite 313
Fullerton, CA 92832
Telephone:  714-990-3693
Facsimile:  657-234-0012
Email:      *lolmp2021@gmail.com*

*Attorneys for Defendant and Cross Defendant*
JOSE RENE ORTIZ

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on December 31, 2025, at Chicago, Illinois.

*/s/ Katharine Walton*
Katharine Walton

10

# EXHIBIT 1



## Your Application for Financing Is Approved

Finance Agreement
2763169

Prepared On January 5, 2024

Prepared For
CAR WASH MANAGEMENT, LLC
310 S VINCENT AVE
WEST COVINA, CA 91790

Financing Provided By
Regions Bank d/b/a
Ascentium Capital
23970 HWY 59 N
Kingwood TX 77339

Enclosed is your Finance agreement. The below instructions will help you complete your documents

✓  Include a copy of your driver's license (all signors)
✓  Include a copy of your business check payable to Ascentium Capital for the below invoice amount. Please write your agreement number on the memo line. This check copy will be used to initiate payment via ACH/EFT withdrawal. Do not mail the original check.
✓  Return completed cover page and documents by Email to VSR@AscentiumCapital.com or by Fax to 1-866-646-3680

### Please Complete Signor Information for JOSE RENE ORTIZ

| | |
|---|---|
| Cell Phone: | 626-413-0842 |
| Home Phone: | |
| Email: | rene@car wash mgmt.com |
| Federal Tax ID: | 83-3690052 |
| Equipment Location: | 310 S VINCENT AVE. WEST COVINA, CA 91790-2935 |
| (Please update if incorrect) | Updated address: |

| INVOICE AMOUNT | INVOICE DETAILS |
|---|---|
| $34,339.71 | Advanced Payment Amount |
| $770.00 | Processing Fee(s) |
| | |
| $0.00 | Less Money Received |
| $35,109.71 | TOTAL AMOUNT DUE AT SIGNING |

Ascentium Capital greatly appreciates your business. If you have any questions, please contact me

Pete Matheny
Phone  281.883.0201
Email  PeteMatheny@AscentiumCapital.com

x1938

ASC00040



**PERSONAL GUARANTY**

Agreement No. **2763169**

Ascentium Capital
23970 HWY 59 N
Kingwood, TX 77339-1535
AscentiumCapital.com

| Obligor Name: | CAR WASH MANAGEMENT, LLC ("Obligor") |
|---|---|

The undersigned individual(s) ("you", "your") unconditionally guarantee to Regions Bank d/b/a Ascentium Capital and our successors and assigns ("we", "us" or "our") the prompt payment and performance when due of all of the obligations of the Obligor (named above) under the lease agreement, rental agreement, equipment finance agreement, installment payment agreement, loan and security agreement, or similar agreement (including schedules to master agreements) whose Agreement number is referenced above ("Agreement"), entered between us and the Obligor, as lessee, renter, debtor, or other obligor and all related documents executed by the Obligor (collectively, "Agreements").

We may proceed against you before proceeding against the Obligor, any collateral or any leased equipment under the Agreements, or enforcing any other remedy. Notwithstanding any changes made to the Agreements in our dealings with Obligor, this Guaranty will remain in effect with respect to the Agreements as so changed even if you are not notified of the changes and will remain in effect even if the Agreements or any of them are no longer enforceable against the Obligor. You waive all presentments, demands for performance, notices of protest, notices of dishonor, notices of acceptance of this Guaranty and all other notices to which you may have a right. You agree to pay us all our expenses in enforcing this Guaranty. You may not assign this Guaranty without our written consent.

This Guaranty shall be governed by the laws of the jurisdiction governing the Agreement. **You consent to non-exclusive jurisdiction of the courts in Jefferson County, Alabama in any action to enforce this Guaranty, waive any objection based on improper venue and waive any right to a jury trial.** The notice provisions in the Agreement shall apply to this Guaranty except that any notice to you, if delivered by mail, will be sent to your current address shown in our records. You agree that by providing us with an email address or a phone number, you expressly consent to receiving notices and other communications including voice and text messages from us at that number or email address, and this express consent applies to each such email address or phone number that you provide to us now or in the future.

If there is more than one guarantor of the Obligor's obligations under the Agreements, the liabilities of each such guarantor shall be joint and several. This Guaranty shall inure to our benefit and our successors and assigns, and shall be binding upon you, your successors and permitted assigns. You agree this Guaranty may be signed and delivered electronically. A facsimile or other copy of this Guaranty, as executed, shall be deemed the equivalent of the original for all purposes. This Guaranty may be executed in separate counterparts which together shall constitute one and the same instrument. You consent to our conducting a credit evaluation of you from all sources, periodically updating it and sharing the results with others.

Each of the undersigned has duly executed this Guaranty, effective as of January 5, 2024.

**PLEASE SIGN BELOW**

| Printed Name: | JOSE RENE ORTIZ | Guarantor Signature: | ☒ |
|---|---|---|---|
| Printed Name: | | Guarantor Signature: | |
| Printed Name: | | Guarantor Signature: | |
| Printed Name: | | Guarantor Signature: | |

3296-20230508

ASC00077



## AUTHORIZATION TO PERFORM VERBAL VERIFICATION
### Agreement No. 2763169



The undersigned hereby authorizes Regions Bank, an Alabama banking corporation d/b/a Ascentium Capital ("Ascentium") to perform a verbal verification accepting the terms and conditions of the above-referenced Agreement and confirming the identification and condition of the Collateral or Equipment subject thereto.

The undersigned agrees that a facsimile or other image of this Authorization to Perform Verbal Verification, as executed, shall be deemed the equivalent of the originally executed copy for all purposes.

The undersigned understands and agrees that such verbal verification may be recorded and retained by Ascentium and hereby consents to such recordation and retention.

Person(s) Authorized to Provide Verbal Verification:

Name: *Jose R Ortiz*   Title: *Member*   Phone: *1/8/2024*
                                                  *626 - 413 - 0842*

Name: _____   Title: _____   Phone: _____

Name: _____   Title: _____   Phone: _____

CUSTOMER: CAR WASH MANAGEMENT, LLC

Signature: _____

Printed Name: JOSE RENE ORTIZ

Title: Member     Date: *1/8/2024*

ASC00055



## COMMENCEMENT AGREEMENT
### Agreement No. 2763169

Ascentium Capital
23970 HWY 59 N
Kingwood, TX 77339-1535
AscentiumCapital.com

Date: January 5, 2024

You, the Customer, and Regions Bank d/b/a Ascentium Capital ("we", "us", "our") have entered into the above referenced equipment finance agreement, installment payment agreement, or similar agreement (which may be one or more schedules to a master agreement) (the "**Agreement**") pursuant to which we will be financing the Collateral or Software as defined in and described in the Agreement (in either case, the "**Collateral**"), subject to the terms and conditions set forth in the Agreement as supplemented by this Commencement Agreement ("**CA**"). Capitalized terms used herein and not defined herein have the meaning given such terms in the Agreement. The Collateral is being delivered to you at various times and the supplier(s) and vendor(s) (in either case, the "**Supplier**") of the Collateral have to be paid for each item of Collateral at or before its delivery to you. You agree that the Agreement is non-cancelable and in full force and effect (including, without limitation, with respect to your payment obligations thereunder) immediately even though items of Collateral remain to be delivered to you from one or more Suppliers.

**NOW THEREFORE, it is agreed as follows:**

1. Your obligations under the Agreement will commence on the date of this CA, including your obligation to pay 1/30 of a standard Payment from each day from and including the date hereof to but excluding the First Due Date. You acknowledge and agree that notwithstanding the fact that not all items of Collateral have been delivered to you as of the date set forth above, the terms and conditions of the Agreement, including your obligation to pay all amounts due and owing as set forth in the Agreement, shall commence immediately and, except as otherwise specifically set forth in this CA, irrevocably.

2. You agree to inspect all undelivered items of Collateral immediately upon their delivery to you. If, when delivered, an item of Collateral is damaged or non-conforming, you agree to cause the Supplier in question to repair and/or replace any such item of Collateral while continuing to meet all of your payment and other obligations under the Agreement and you agree that any replacement shall be part of the Collateral for all purposes under the Agreement.

3. All amounts anticipated to be disbursed by us on your behalf that have not been disbursed as of the date of this CA will be deemed disbursed by us into a separate holding account for your benefit ("Account"), the contents of which shall be debited by the amount of each subsequent disbursement to Supplier(s) as contemplated by this CA. To secure your obligations to us under the Agreement and this CA, you hereby grant to us a security interest in the contents of the Account and any proceeds.

4. You acknowledge that we may not have received a final invoice from the Supplier for all Collateral and Soft Costs financed under the Agreement. If the final actual cost of the Collateral and any financed Soft Costs that we pay the Supplier and any taxing authority (the "Actual Cost") is different than the Financed Amount set forth in the Agreement, you authorize us to adjust the Financed Amount to the Actual Cost. In addition, if we adjust the Financed Amount due to the Actual Cost changing from the Estimated Cost, you authorize us to adjust the Payment amount to maintain the same interest rate set forth in the Agreement. If we request, you agree to execute a document reflecting such adjustments and we will provide you with evidence of our cost changes requiring such adjustments if you request.

5. You agree that we will have no liability to you in the event we decide to terminate our purchase of any Collateral or payment for any Soft Costs from any Supplier because we have determined, in our sole discretion, that there has been a material adverse change in your creditworthiness from that on which we based our approval of the Agreement. In any circumstance contemplated by the preceding sentence, we will continue the Agreement based on the Financed Amount already paid by us to the Suppliers (and any taxing authority) as of the date we determine not to make further disbursements to the Suppliers and we will reduce the amount of each Payment you owe under the Agreement to reflect such actual Financed Amount and maintain the interest rate set forth in the Agreement, taking into account the higher Payments made by you up to the date of that determination and any balance in the Account shall revert to us.

6. This CA sets forth the entire agreement of the parties with respect to its subject matter and it may only be amended by a written instrument executed by the party against whom enforcement is sought. In the event of a conflict between this CA and the terms of the Agreement, the terms of this CA shall govern and control, provided however, except as explicitly set forth in Sections 4 and 5 above, nothing set forth in this CA shall be deemed to affect your obligation to pay and perform all of your obligations as set forth in the Agreement without setoff, abatement or counterclaim. This CA will be governed by and construed in accordance with the laws of the jurisdiction governing the Agreement.

You agree that a facsimile or other copy of this CA, as executed, shall be deemed the equivalent of the originally executed copy for all purposes. We may acknowledge acceptance of this CA by written notice to you of acceptance of the Agreement.

| Customer Name: | CAR WASH MANAGEMENT, LLC | By: | ⊠ _(signature)_ |
| | | Printed Name/Title: | JOSE RENE ORTIZ, Member |

301-20230508

ASC00075



**AUTHORITY AND INCUMBENCY CERTIFICATE**
Agreement No. 2763169

Ascentium Capital
23970 HWY 59 N
Kingwood, TX 77339-1535
AscentiumCapital.com

COMPANY:
Regions Bank, an Alabama banking corporation
d/b/a Ascentium Capital
23970 US Highway 59 North
Kingwood, TX 77339

CUSTOMER:
CAR WASH MANAGEMENT, LLC
310 S VINCENT AVE
WEST COVINA, CA 91790

I, the undersigned person ("Certifier") executing this Authority and Incumbency Certificate ("Certificate") hereby certifies to Company as follows:

1. I am a duly appointed officer, manager, partner, member or other appointed official with the power and authority to act on behalf of the Customer and, in particular, with the power and authority to execute and deliver this Certificate.

2. CAR WASH MANAGEMENT, LLC ("Customer") and Regions Bank, an Alabama banking corporation, d/b/a Ascentium Capital ("Company") intend to enter into from time to time certain equipment lease agreements, finance agreements, loan agreements, conditional sale agreements or other agreements (each an "Agreement") pursuant to which Company will provide financing to the Customer or will agree to sell, lease or otherwise finance certain items of personal property to or for the Customer as more fully described in the Agreement.

3. Customer has taken and will take such action as may be necessary to authorize Customer to enter into and perform its obligations under the Agreements including, without limitation, the taking of all necessary action under Customer's organization documents or otherwise including, without limitation, the adoption of resolutions and obtaining all necessary consents.

4. The individual listed below ("Signer") is a duly appointed and qualified officer, manager, partner, member or other appointed official of the Customer, has the official title with Customer as indicated below and is authorized and empowered to execute and deliver the Agreements and such other instruments and documents on behalf of Customer as may be deemed necessary or appropriate by the Signer in connection with the Agreements and that any such Agreements and other instruments and documents executed by the Signer are and will be the valid and binding obligation of the Customer.

I DO FURTHER CERTIFY that the signature appearing below is the true and genuine signature of the Signer named below, and that the Signer is duly elected and currently serving the Customer in the official capacity and with the title that is set forth below adjacent to his or her signature.

| Signature: | ⊠ | *[signature]* |
|---|---|---|
| Printed Name and Title: | | JOSE RENE ORTIZ, Member |

5. Company shall rely upon this Certificate and statements contained herein. Customer agrees that a facsimile or other copy of this Certificate, as executed, shall be deemed the equivalent of the originally executed copy for all purposes.

**The undersigned Certifier must be a different officer, manager, partner, member or other appointed official of the Customer than the above-named Signer (this Certificate must be countersigned by a second person).**

IN WITNESS WHEREOF the Certifier has executed this Certificate as of _January 8th_, 20 _24_.

X: _____

Printed Name: _Andrew Williams_

Title: _Member_

161-20230401

ASC00083



**DELIVERY AND ACCEPTANCE CERTIFICATE**
**Agreement No. 2763169**

Ascentium Capital
23970 HWY 59 N
Kingwood, TX 77339-1535
AscentiumCapital.com

To:       Regions Bank, an Alabama banking corporation d/b/a Ascentium Capital ("Ascentium")

The undersigned hereby certifies: (i) that all of the property which is to be leased, financed or sold, as applicable, pursuant to the rental agreement, lease agreement, equipment finance agreement, note, security agreement, loan and security agreement, conditional sale agreement or similar document referenced above (which may be one or more schedules to a master agreement) (the "Agreement") between Regions Bank d/b/a Ascentium Capital as payee, lessor, lender, secured party or seller and the undersigned as renter, lessee, debtor, buyer or other obligor (the "Equipment"), has been delivered to, and received by, the undersigned, (ii) the Equipment conforms in all respects to that ordered by the undersigned, (iii) its condition is satisfactory in all respects to the undersigned and (iv) that the Equipment is accepted by the undersigned under the Agreement in all respects, and the undersigned hereby irrevocably directs Ascentium to pay the equipment suppliers the purchase price of the Equipment.

The undersigned agrees that a facsimile or other copy of this Delivery and Acceptance Certificate, as executed, shall be deemed the equivalent of the originally executed copy for all purposes. By executing this Delivery and Acceptance Certificate the undersigned irrevocably acknowledges and agrees that the undersigned's non-terminable payment and other obligations under the Agreement have commenced.

**CUSTOMER: CAR WASH MANAGEMENT, LLC**

Signature:

Printed Name:       JOSE RENE ORTIZ

Title:       Member

Date Signed:       1 / 8 / 24

371-20230401

ASC00081

Lisa Mitts Patrick, ESQ. #134522
THE LAW OFFICE OF LISA MITTS PATRICK
112 E. Amerige Ave, Suite 313
Fullerton, CA 92832
Phone: 714-990-3693 / Fax: 657-234-0012
Email: lolmp2021@gmail.com

Attorney for Defendant,
Cross Complainant, JOSE RENE ORTIZ

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

REGIONS BANK, an Alabama State Bank dba
ASCENTIUM CAPITAL

          Plaintiff,

vs.

CAR WASH MANAGEMENT, LLC, a
Delaware Limited Liability Company, CAR
WASH MANAGEMENT, LLC, a Hawaii
Limited Liability Company, WEST COVINA
CAR WASH LLC, a California Limited
Liability Company, JOSE RENE ORTIZ, aka
JOSE R. ORTIZ aka JOSE ORTIZ, an
individual, ANDREW WILLIAMS, aka
ANDREW P. WILLIAMS, aka ANDREW
WILLIAMS, an individual, WASHWORLD,
INC., a Wisconsin Corporation, DOES 1-100, inclusive,

          Defendants,

---------------------------------------------------

JOSE RENE ORTIZ,
          Cross Complainant,

vs.

ANDREW PAUL WILLIAMS, aka
ANDREW P. WILLIAMS, aka ANDREW
WILLIAMS, an individual, CAR WASH
MANAGEMENT, LLC, a Delaware Limited
Liability Company, CAR WASH MANAGEMENT,
LLC, a Hawaii Limited Liability Company,
WASHWORLD, INC., a Wisconsin Corporation,
and ROES 1 to 35, inclusive,

          Cross Defendants

---------------------------------------------------

AND OTHER RELATED CROSS ACTIONS

---------------------------------------------------

Case No: 2:25-CV-00359

JOSE RENE ORTIZ RESPONSE
TO WASHWORLD, INC.'S
INTERROGATORIES, SET ONE

1

REQUESTING  PARTY:   WASHWORLD, INC

RESPONDING PARTY:    JOSE RENE ORTIZ

SET NO:                        ONE (Q#16-30)

RESPONDING PARTY, DEFENDANT/CROSS COMPLAINANT JOSE RENE ORTIZ, provides the following responses to WASHWORLD, INC.'S Interrogatories (Set One). RESPONDING PARTY has not completed discovery, his investigation of facts relating to this case, or his preparation for hearing. Consequently, the following Responses are given without prejudice to RESPONDING PARTY's right to produce supplemental responses at any time and/ or produce, at the time of hearing, additional evidence that may be discovered later relating to the matters set forth herein.

**RESPONSE TO INTERROGATORY NO. 16:**

RESPONDING PARTY obtained the role of a sales representative for CAR WASH MANAGEMENT when he started with them. He can't remember when he started, but he worked there only awhile, maybe a year or so. (He will try to find any record that might show when he first started and upon request will supplement this response.) He left the company around May 2024.  RESPONDING PARTY had no official title with  CAR WASH MANAGEMENT.

**RESPONSE TO INTERROGATORY NO. 17:**

RESPONDING PARTY was employed by ANDREW WILLIAMS via his CAR WASH businesses, and marketed and sold car wash equipment to various customers in southern California, such as gas stations with drive through car washes or car wash stations that had more elaborate equipment.  He also helped install and service/repair car wash equipment.  He worked independently and maintained a flexible schedule, as he was salaried. He had no ownership interest in any of ANDREW WILLIAMS' companies, and only was made a "member" of one of his LLCs when ANDREW offered that to him as additional salary 'someday' when the company made enough money to bring him in as a stockholder or some percentage of ownership which he did not completely understand. He did see his name as "member" in various places. The company never hit that level of profit, so the expectation of some ownership interest, never

2

materialized. RESPONDING PARTY quit working for WILLIAMS shortly after WILLIAMS refused to pay him back for a loan he had asked for.

**RESPONSE TO INTERROGATORY NO. 18:**

RESPONDING PARTY had no official title with WEST COVINA CAR WASH, other than being referred to as in sales or installation and repair.

**RESPONSE TO INTERROGATORY NO. 19:**

RESPONDING PARTY would travel to business locations in southern California to sell car wash equipment, and worked on installing and servicing various equipment, some at their location, some at their customers'.

**RESPONSE TO INTERROGATORY NO. 20:**

RESPONDING PARTY understood that he had no authority or duties to sign contracts on behalf of CAR WASH MANAGEMENT and WEST COVINA CAR WASH the companies which were owned by ANDREW WILLIAMS in one capacity or another.

**RESPONSE TO INTERROGATORY NO. 21:**

RESPONDING PARTY lacked authority to sign contracts on behalf of CAR WASH MANAGEMENT but as the companies were owned by ANDREW WILLIAMS, when he was asked by ANDREW WILLIAMS, essentially still his boss, to sign company documents (without being given opportunity to read, copy or get legal or any advice about the documents), he did not understand what they were, or in particular, what an Authority and Incumbency Certificate in Exhibit 1 was. He recalls any amounts on the documents he did glance at, being like that amount stated on the first page of Exhibit 1, less than $40,000.00 and believed the documents had something to do with their sales since he was in sales.

ANDREW WILLIAMS approached RESPONDING PARTY with Exhibit 1 while he was working outside on January 8, 2024 around noon alongside at least one other co-worker. WILLIAMS informed RESPONDING PARTY that he needs to sign the forms and said it was just a formality and something he implied he had to, thinking it had something to do with their sales and feeling his employment might be impaired if he questioned ANDREW especially in front of the other employee(s). ANDREW WILLIAMS never gave him a copy or let him read the documents.

3

**RESPONSE TO INTERROGATORY NO. 22:**

Objection, compound. Without waiving the objection in general, see Response to No. 21 RESPONDING PARTY normally worked outside when working with equipment, and that day, along with a coworker by the name of TRAVIS BEAUDOIN who was an "operational manager" for CAR WASH MANAGEMENT. RESPONDING PARTY and Travis were working outside on January 8, 2024 around noon ANDREW WILLIAMS approached RESPONDING PARTY with Exhibit 1 implying he needed to sign it. Mr. BEAUDOIN witnessed CROSS COMPLAINANT sign Exhibit 1. RESPONDING PARTY also witnessed BEAUDOIN sign another document at that same time, but is unaware as to what that document pertained to and is not familiar with BEAUDOIN's authority. He assumed he had some with his being referred to as a "manager." RESPONDING PARTY assumed both documents related to sales they were working on.

**RESPONSE TO INTERROGATORY NO. 23:**

RESPONDING PARTY has no recollection of any involvement with cancelling an AVW order and switching it to Washworld, including any communications relating to that transaction.

**RESPONSE TO INTERROGATORY NO. 24:**

RESPONDING PARTY loaned ANDREW WILLIAMS a personal loan once for about $35,000.00 using an advance on his credit card. He has no recollection what ANDREW told him he needed it form, but was assured it would be reimbursed right away. It never was.

**RESPONSE TO INTERROGATORY NO. 25:**

Objection, said request impermissibly requires relation back to other documents in order to determine the call of the question. Without waiving objection, RESPONDING PARTY has made a diligent search and reasonable effort to identify documents responsive to this request. He can think of only his credit card statements showing the amounts given to ANDREW WILLIAMS. They had no written agreement, only an oral "gentleman's" handshake type of agreement, and RESPONDING PARTY does not recall there being any kind of text or email thread which would exist relative to this.

4

**RESPONSE TO INTERROGATORY NO. 26:**

Objection, said request impermissibly requires relation back to other documents in order to determine the call of the question, and seeks a legal interpretation and conclusions and opinion to determine the elements of the alleged cause of action pleaded so as to 'refute' all of them. Without waiving objection, RESPONDING PARTY had no actual or perceived management authority, financial authority, contractual authority (except as it related to their selling the equipment to their customers) of any kind, on behalf of any of the said of ANDREW's businesses, or any other duties or obligations or to act on their behalf, except as an employee in sales and sometimes installation or repair. He was merely a 'member' in an LLC which he understood had no ownership implications and he would only become a stockholder with ANDREW once the company's growth hit a certain point and made money, which it never did. He was not given time or opportunity to read what he was asked (impliedly required ) to sign by his employer, to-wit still his 'boss' and never got copies to look at later. He did not know or understand the legal implications of what he was told to sign, thus he had no intention whatsoever to try and 'scam' anyone because he didn't even know that there was going to be a scam by ANDREW. RESPONDING PARTY was as much a victim of ANDREW WILLIAMS as the other parties in this case.

**RESPONSE TO INTERROGATORY NO. 27:**

Objection, said request seeks a legal interpretation and conclusions and opinion to determine the elements of the alleged cause of action pleaded and at this stage without having any discovery information from any other party in this case, this RESPONDING PARTY is not able to identify "all" facts at this, or any time. Without waiving objection, RESPONDING PARTY understands primarily from the other allegations by other parties, since he was not privy to any of the alleged transactions and subsequent loss of the money, that the Plaintiff made a loan to WILLIAMS and instead of giving WILLIAMS the money, they gave WASHWORLD the money on WILLIAMS' behalf. WASHWORLD did not have an order pending from WILLIAMS or his companies for those funds, but WASHWORLD kept the money anyway, never asked the bank about it, and on their own, decided to apply it to an outstanding invoice WILLIAMS owed them for something entirely different, and then sent the rest of the money to WILLIAMS—not back to the bank. I never knew any of this was happening.

5

Then WILLIAMS allegedly did not make payments on the loan to the Plaintiff bank and the Plaintiff got mad and tried to sue WILLIAMS and since they can't find him because he is apparently a snake, they are taking this out on WASHWORLD and on me. Again I knew none of this until I was sued. WASHWORLD, by not returning the money to the bank (which it should have done if it didn't know what the money was for when they first got it), they got me on the hook with arguments from the bank that I signed some documents that WILLIAMS got me to sign and are alleging now that I agreed (knowingly) to be responsible for ANDREW WILLIASM or his company's debts, which I most certainly did not. If I end up responsible to the bank, then WASHWORLD should certainly be responsible to me as that was very irresponsible to play with money of this amount so frivolously, and it's only fair (equitable) that they share the burden I shouldn't have in the first place.

**RESPONSE TO INTERROGATORY NO. 28:**

Objection, said request seeks a legal interpretation and conclusions and opinion to determine the elements of the alleged cause of action pleaded and at this stage without having any discovery information from any other party in this case, including the various documents that are believed to be in the possession of each party, that this RESPONDING PARTY has not seen to provide information, or to identify language therein. Further, in the RESPONDING PARTY'S limited knowledge of equitable indemnity, it is understood that this applies since there is no contract between these parties, nor is there any other type of legal form of indemnity applicable, only equitable based on the court's determination of fairness, not contract or documents. Without waiving objection, in the spirit of responding, RESPONDING PARTY is unable to formulate a better response to this question as written.

**RESPONSE TO INTERROGATORY NO. 29:**

See response to No. 21, 22, 26 and 27. I cannot break up what happened by individual statements, or exact dates or communication methods, just the general recollection I have. I do recall in addition however, that at some point just before this lawsuit, I received a call from a Pete Matheny of the bank Ascentium who explained to me that I am being held responsible for some large amount of money on behalf of WILLIAMS and his CAR WASH MANAGEMENT, LLC. WILLIAMS never disclosed to me, any terms and conditions for any agreement with Ascentium so this, and the amount he was alleging was surprising.

6

**RESPONSE TO INTERROGATORY NO. 30:**

Objection, the request impermissibly requires relation back to another document in order to understand the call of the question. Without waiving objection as to Ascentium alleging that I had any intentions at all with the bank, that is categorically false. I did not even know who they were, or what WILLIAMS was doing with them to intend to do anything with them and did not know they were on the documents WILLIAMS made me sign, assuring me it was a formality on something that I understood had to do with our sales. I never got any money. I never saw any money. I never knew there WAS money being sent by the bank to Washworld. I never knew Washworld was sending the money on to WILLIAMS. I never knew WILLIAMS received any money. I never knew he owed the bank any money. I never knew he didn't pay the bank their money. I never kept any money. I never benefitted or profited in any way from this transaction whatsoever.

Discovery is ongoing. If any information has been omitted unintentionally, RESPONDING PARTY reserves the right to amend or supplement these responses or to apply to the Court for relief from such mistake, inadvertence, or excusable neglect.

Respectfully,

LAW OFFICE OF LISA MITTS PATRICK

Dated: 2/6/24

LISA MITTS PATRICK, ESQ
Attorney for Defendant

7

**FEDERAL COURT PROOF OF SERVICE**

Case No: 2:25-cv-00359

STATE OF CALIFORNIA, COUNTY OF ORANGE

At the time of service, I was over the age of 18 years of age and not a party to this action. My business address is 112 E. Amerige Ave., Suite 313, Fullerton CA, 92832.

On 2/6/26, I served true copies of the following document(s):

**RESPONSE OF JOSE RENE ORTIZ TO WASHWORLD'S SPECIAL INTERROGATORIES, SET ONE**

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

**SEE ATTACHED SERVICE LIST**

The documents were served by the following means:

(X) BY EMAIL OR ELECTRONIC TRANSMISSION) Based on a court order or an agreement of the parties to accept service by email or electronic transmission, I caused the documents to be sent from e-mail address lolmp2021@gmail.com to the persons at the e-email addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

() By Fax. I sent the documents to the above listed parties by fax to the number listed on their pleading and the transmission was complete and with no errors.

() By Mail. I placed a true copy of the document in the United States Mail in a sealed envelope with the postage thereon fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on 2/6/26, at Fullerton, California.

*Kathleen Micalizzi*

Kathleen Micalizzi

8

## SERVICE LIST

Case No: 2:25-cv-00359

Andrew K. Alper, Esq.
FRANDZEL, ROBINS, BLOOM and CSATO
1000 Wilshire Blvd., 19th Floor
Los Angeles, CA 90017-2427

Phone: 323-852-1000
Fax: 325-651-2577
Email: aalper@franzel.com
trobins@franzel.com


Attorney for Plaintiff


Xitlaly Estrada (SBN 333403)
**Baker & Hostetler LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone: 310-979-8430
Email: *xestrada@bakerlaw.com*
*aclaypool@bakerlaw.com*

*Attorney for Defendant* WASHWORLD, INC.

Michael D. Gannon (*pro hac vice*)
Katharine H. Walton (*pro hac vice*)
**Baker & Hostetler LLP**
One North Wacker Drive, Suite 3700
Chicago , IL 60606
Telephone: 312-416-6200
Email: *mgannon@bakerlaw.com*
*kwalton@bakerlaw.com*

Attorney for Defendant WASHWORLD, INC.

**The Law Office of LISA MITTS PATRICK**
112 E. Amerige Ave.
Suite 313
Fullerton, CA 92832

Phone: (714) 990-3693  •  Fax: (657) 234-0012  •  Email:lolmp2021@gmail.com

March 2, 2026

Email: *mgannon@bakerlaw.com*
*kwalton@bakerlaw.com*

Michael D. Gannon (*pro hac vice*)
Katharine H. Walton (*pro hac vice*)
**Baker & Hostetler LLP**
One North Wacker Drive, Suite 3700
Chicago, IL 60606

### RE: Regions Bank v. Washworld, Williams, Ortiz et. al.

Dear Ms. Walton:

Enclosed please find attached the verification slips corresponding to the first Set of discovery responses served previously. We apologize for the delay in forwarding these documents and appreciate your understanding.

Amended Responses with the questions included will be forthcoming. If you have any questions regarding this, feel free to contact our office.

Sincerely,

*[signature]*

LISA MITTS PATRICK
Attorney at Law

LMP:awp
Enclosures: Verifications x 2

Cc: Andrew K. Alper, Esq.
FRANDZEL, ROBINS, BLOOM and CSATO
1000 Wilshire Blvd., 19th Floor
Los Angeles, CA 90017-2427

Email: aalper@franzel.com

VERIFICATION - C.C.P. §446 and C.C.P. §2015.5

STATE OF CALIFORNIA, COUNTY OF ORANGE

I, the undersigned, declare:  I am the Defendant/Cross Complainant in the above entitled action;  I have read the foregoing **DEFENDANT/CROSS COMPLAINANT RENE JOSE ORTIZ' RESPONSES TO INTERROGATORIES, SET ONE, PROPOUNDED BY DEFENDANT/CROSS COMPLAINANT WASHWORLD, INC.** know the contents thereof; and the same is true of my own knowledge, except as to matters which are therein stated upon my information and belief, and as to those matters, I believe it to be true.

I certify (or declare) under penalty of perjury under the laws of the state of California, that the foregoing is true and correct.

February 6, 2026
Dated

Signature of Declarant

RENE JOSE ORTIZ

Type or Print Full Name

# EXHIBIT E

Andrew K. Alper (State Bar No. 088876)
aalper@frandzel.com
Thomas M. Robins (State Bar No. 054423)
trobins@frandzel.com
FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, California 90017-2427
Telephone: (323) 852-1000
Facsimile: (323) 651-2577

Attorneys for Plaintiff,
REGIONS BANK, an Alabama State
Bank, dba Ascentium Capital

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| REGIONS BANK, an Alabama State Bank dba ASCENTIUM CAPITAL,<br><br>Plaintiff,<br><br>v.<br><br>CAR WASH MANAGEMENT, LLC, a Delaware Limited Liability Company, CAR WASH MANAGEMENT, LLC, a Hawaii Limited Liability Company, WEST COVINA CAR WASH LLC, a California Limited Liability Company, JOSE RENE ORTIZ, aka JOSE R. ORTIZ, aka JOSE ORTIZ, an individual, ANDREW PAUL WILLIAMS, aka ANDREW P. WILLIAMS, aka ANDREW WILLIAMS, an individual, WASHWORLD, INC., a Wisconsin Corporation, DOES 1-100, inclusive,<br><br>Defendant.<br><br>JOSE RENE ORTIZ,<br><br>Cross-Complaint,<br><br>v.<br><br>ANDREW PAUL WILLIAMS, CAR WASH MANAGEMENT, LLC, CAR WASH MANAGEMENT, LLC, WASHWORLD, INC., and ROES 1 to 35, inclusive,<br><br>Cross Defendants. | **Case No. 25-CV-00359 CAS (KSx)**<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1. **BREACH OF EQUIPMENT FINANCE AGREEMENT**<br><br>2. **BREACH OF GUARANTY**<br><br>3. **BREACH OF GUARANTY**<br><br>4. **FRAUD/CONCEALMENT**<br><br>5. **RECOVERY FOR PAYMENT OF MONEY BY MISTAKE, UNJUST ENRICHMENT**<br><br>6. **BREACH OF CONTRACT**<br><br>7. **MONEY HAD AND RECEIVED**<br><br>8. **CONVERSION** |

5852976v1 | 100287-0289

1

COMPLAINT

WASHWORLD, INC.,

        Plaintiff,

    v.

CAR WASH MANAGEMENT LLC,

        Cross-Defendant.

Plaintiff complains as follows:

## GENERAL ALLEGATIONS

A.    **Parties**

1.    At all times herein mentioned, Plaintiff Regions Bank was and is an Alabama State Bank with its principal place of business in the State of Alabama. Regions Bank is doing business under the name of Ascentium Capital.  At all times herein mentioned Regions Bank is and has been qualified to conduct business in the State of California and is referred to herein as "Ascentium."

2.    Ascentium is informed and believes and therein alleges that at all times herein mentioned, Defendant Car Wash Management, LLC was and is a limited liability company, organized and existing under the laws of the State of Delaware with its principal place of business in the City of West Covina, County of Los Angeles, State of California ("CWM" or "Debtor"). Ascentium also is informed and believes and therein alleges that at all times herein mentioned there exists, or at one time existed, a Hawaii limited liability company with the name Car Wash Management, LLC, which had or has one or more of the same members / managers as the Delaware entity.  While Ascentium believes that the contracting entity in this case was and is the Delaware entity, whenever reference is made to "Debtor" or "CWM" it shall be deemed to collectively refer to both entities. Ascentium is further informed and believes and thereon alleges that there are no members who are citizens of the State of Alabama.

3.    Ascentium is informed and believes and therein alleges that at all times herein mentioned Defendant West Covina Car Wash LLC was and is a limited liability company,

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

organized and existing under the laws of the State of California with its principal place of business in the City of West Covina, County of Los Angeles, State of California whose sole member is CWM ("WCCW"). Ascentium is informed and believes and thereon alleges that there are no members of WCCW who are residents of the State of Alabama. In fact, Ascentium is informed and believes and thereon alleges that its sole member is CWM.

4. At all times herein mentioned, Defendant Jose Rene Ortiz, aka Jose R. Ortiz; aka Jose Ortiz ("Ortiz"), was and is an individual who was and is a member of CWM and resides in the City of West Covina, County of Los Angeles, State of California.

5. At all times herein mentioned, Defendant Andrew Paul Williams, aka Andrew P. Williams, aka Andrew Williams ("Williams") was and is an individual who was and is a member and/or officer of CWM and resides in the County of San Diego, State of California.

6. Ascentium is informed and believes and therein alleges that at all times herein mentioned, Defendant Washworld, Inc. was and is a corporation organized and existing under the laws of the State of Wisconsin with its principal place of business in Wisconsin and is authorized to and doing business in the County of Los Angeles, State of California ("Washworld"). Ascentium is informed and believes and thereon alleges that no officers or directors are residents of the State of Alabama.

7. The true names and capacities, whether individual, corporate, partnership, association, limited liability company or otherwise are unknown to Ascentium who therefore sues such defendants by such fictitious names as Does 1-100, Inclusive. Ascentium is informed and believes and thereon alleges that no fictitiously named Defendant is a resident or citizen of Alabama. Ascentium is informed and believes and therein alleges that each of the fictitiously named defendants is in some manner responsible for the events and damages alleged herein. When the true names and capacities and connection of such fictitious defendants are ascertained, Ascentium will seek leave to amend this complaint accordingly or will name such defendants as a Doe defendant.

8. Ascentium is informed and believes and therein alleges that at all times herein mentioned each of the defendants that is named in the caption of this Complaint was and/or is the

agent, officer, employee, joint venturer, aider and abettor and/or co-conspirator of each other defendants, and in acting and/or failing to act as alleged herein, was so doing in the course and scope of such capacity and relationship.

**B.  Jurisdiction and Venue**

9.  Jurisdiction is proper under 28 U.S.C. §1332(a) in that there is complete diversity of citizenship between Ascentium and all Defendants and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

10.  Venue is proper in this Court because a substantial part of the events or omissions giving rise to the causes of action in this Complaint occurred in this District in Los Angeles County, California and  Defendant Ortiz resides in this District and defendants CWM and WCCW do business in this District. In addition, Plaintiff is informed and believes that the personal property which is the subject of the allegations in this case may be within this Judicial District.

11.  This action is not subject to the provisions of Section 2981, et seq. (Rees-Levering Act) and/or Section 1801 et seq. (Unruh Act) of the Civil Code of the State of California.

**C.  The CWM Equipment Finance Agreement**

12.  On or about January 10, 2024, CWM, as "Debtor," with a listed address of 310 S. Vincent Ave., West Covina, CA 91790, entered into Equipment Financing Agreement No. 2763169 (the "EFA") with Ascentium in order to finance the acquisition of equipment for the financed amount of $343,394.23 to be repaid with one initial payment of $34,339.71 and 71 monthly payments of $5,918.76.  CWM is also sometimes referred to herein not only as CWM but as Debtor.  In connection with execution of the EFA, Debtor also executed the following documents:  Authorization to Perform Verbal Verification, Prepayment Addendum, Authority and Incumbency Certificate,  and Commencement Agreement whereby Debtor requested that Ascentium pay the supplier of the Equipment before the Equipment was delivered, installed and operational.  True and correct copies of the EFA and the other documents described in this paragraph are attached hereto collectively as Exhibit "1" and incorporated herein by this reference. Reference to the "EFA" shall include all of the documents described in this paragraph.  The EFA was to finance Debtor's purchase of equipment for the operation of a car wash initially from a

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

vendor identified as AVW Equipment Company, Inc. ("AVW"). Pursuant to the EFA, Ascentium wired $309,054.80 of the $343,394.23 to AVW.

**D.  The Amendment and Switch to Washworld as Vendor**

13.     After the EFA was signed, on or about February 28, 2024, Williams, on behalf of Debtor, orally represented to Pete Matheny, a Vice President of Ascentium, that AVW was unable to deliver the equipment purchased by CWM in a timely fashion and that CWM had experienced other "red flags" regarding some business practices of AVW. Accordingly, CWM was canceling the purchase with AVW, obtaining a full refund of the Ascentium funding proceeds from AVW, and was purchasing the necessary equipment from Washworld. This representation was confirmed in a February 28, 2024 email from Williams to Matheny, that was copied to Ortiz, and which transmitted what was represented to be a purchase quote from a different vendor-Washworld on a Washworld form, a true and correct copy of which is attached hereto as Exhibit 2 and incorporated herein by this reference ("the Quote"). The equipment set forth in the EFA and Quote is hereinafter referred to as "the Equipment." The money paid to AVM was refunded to Ascentium.

14.     Based on the representations of Williams, alleged above, on or about March 7, 2024, Ascentium prepared and sent to CWM and CWM, by Ortiz, executed and delivered to Ascentium an Addendum, Agreement No. 2763169 changing the amount financed from $343,394.23 to $346,904.75 and also changing the payment schedule from 1 payment at $34,339.71, followed by 71 payments at $5,918.76, to 1 payment at $34,339.71 followed by 1 payment at $5,987.29, followed by 70 payments at $5,987,29, a true and correct copy of which is attached hereto as Exhibit "3" and incorporated herein by this reference. On or about March 11, 2024, Ortiz verbally acknowledged to Ascentium and Ascentium documented that communication with Ortiz that the Equipment had been received by CWM.

**E.  The Relationship Between CWM and Washworld**

15.     Ascentium is informed and believes and therein alleges that, at the time of the February 28, 2024, email referred to in paragraph 12, CWM was an authorized distributor of Washworld products. Prior to the CWM transaction in February, 2024, Ascentium had funded

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

5852976v1 | 100287-0289

5

two unrelated loan transactions to different customers in the form of Equipment Finance Agreements involving the purchase of Washworld equipment where CWM had been the "primary vendor" to Ascentium's customer and approximately another 20 transactions where Washworld had been the "primary vendor" or one of its other distributors had been the "primary vendor." Ascentium is informed and believes and thereon alleges that at all times herein mentioned the relationship between CWM and Washworld was such that CWM was given access to and was authorized to issue quotes on Washworld forms, such as the quote Williams sent to Ascentium set forth in paragraph 12. Further, the custom and practice between Ascentium and Washworld is that most of the time these Orders were not signed by Washworld.

**F.     The Washworld Funding Instructions**

16.     In connection with Ascentium's past dealings with Washworld, on or about February 28, 2023, Washworld, by its controller, Jon Tyezkowski, an authorized representative, executed and delivered to Ascentium written "Funding Instructions", a true and correct copy of which is attached hereto as Exhibit "4" and incorporated herein by this reference.  The Funding Instructions listed Washworld's email address as "controller@washworldinc.com" and provided, among other things:

> Payee [Washworld] agrees any funds received from Ascentium are for the sole purpose of advancing funds for Payee's customer to pay the purchase orders, invoices, quotes, or proposals for the application transaction.  If funds to which Payee is not entitled are deposited into Payee's account or otherwise received by Payee, Payee agrees to promptly remit any such funds to or as directed by Ascentium.

**G.     The Mistaken Payment**

17.     On March 12, 2024, Ascentium sent an email to ajohnson@washworldinc.com and controller@washworldinc.com transmitting a "Payment Notification" stating:

| | |
|---|---|
| Invoice # : | Car Wash Management, Inc. |
| Payment Type : | Equipment |
| Customer Name : | Car Wash Management, Inc. |
| Finance Agreement # : | 2763169 |
| Payment Method : | ACH |
| Date : | March 11, 2024 |
| Amount : | $309,054.80 |

Among other things, the Payment Notification stated:

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

> If you have questions about this payment, please contact your Vendor Services Representative, Maria Negri, at MariaNegri@ascentiumcapital.com or (281) 902-1938.

18. Ascentium in fact sent payment by Automated Clearinghouse Debit ("ACH") to Washworld in the amount of $309,954.00 on March 11, 2024 (the "Mistaken Payment") for posting to the Washworld bank account listed in the Funding Instructions, and, on information and belief, same was posted and credited to such account on March 12, 2024. A true and correct copy of evidence of the Mistaken Payment is attached hereto, marked Exhibit "5" and incorporated herein by this reference.

19. Despite the fact that Washworld could not reconcile or match the funding it received from Ascentium to any Order it had issued (as opposed to all other previous customer orders that Ascentium had funded to Washworld which had a clear match to the Order total and amount funded, at no time did Washworld contact Maria Negri or anyone else at Ascentium regarding the receipt of this CWM payment or inquire why that payment was made or what Order it was for. At no time did Washworld reference the Finance Agreement # referred to above to contact Ascentium regarding receipt of the payment.

**H.     The Fraud**

20. Ascentium is informed and believes and therein alleges that Washworld alleges and contends that CWM ever sent the Quote or Order, Exhibit "2", to Washworld and never ordered, or intended to order, any of the equipment stated in the Quote identified in paragraph 12, Exhibit "2" from Washworld.

21. Ascentium is informed and believes and therein alleges that when Washworld received the Mistaken Payment, it knew, had reason to know and/or should have known that there had been no order for equipment from CWM for either itself or a customer of CWM in the amount of the Mistaken Payment or in any amount even approaching the amount of the Mistaken Payment to which Ascentium was the lender.

22. Instead of contacting Ascentium regarding the Mistaken Payment as stated in the Payment Notice and as required by the Funding Instructions, Ascentium is informed and believes and therein alleges that Washworld contacted CWM regarding the Mistaken Payment and was told

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

5852976v1 | 100287-0289

7

COMPLAINT

by CWM that the payment should be applied to an order by one of its customers Conserv Fuels, located in Chula Vista, California, that had a remaining balance due of $132,509.09 on a prior CWM/Washworld Order unrelated to Ascentium and that Washworld applied a portion of the Mistaken Payment to pay that balance and sent a payment back to CWM in the amount of $176,552.71 on March 19, 2024. Ascentium is informed and believes and thereon alleges that Washworld contends that CWM sent the $176,552.71 back to CWM because Williams represented that this money was to buy additional equipment from another vendor or supplier and not Washworld. At no time did anyone at Washworld make inquiry of Ascentium regarding the reason for the Mistaken Payment, what equipment or purchase order or contract number it related to, or whether the amount or any of it should be returned to Ascentium despite the requirement to do so under the Funding Instructions. Instead, Washworld concealed the true facts from Ascentium.

23. On or about May 23, 2024, Pete Matheny of Ascentium sent to Washworld a copy of the Quote (Exhibit "2") on Washworld's form that had been received from Williams. Washworld never responded in any fashion, did not inform Ascentium that such the Quote or any similar quote had been issued by or provided to Washworld and did not inform Ascentium of the facts alleged in paragraph 20 until on or about September 26, 2024, in response to further follow up from Pete Matheny.

24. Once Ascentium became fully aware of the facts as it knows them now, Ascentium i) declared the EFA in default and accelerated the entire balance of the loan by making demand for immediate payment of the entire loan balance upon CWM, WCCW and Ortiz via the Notice of Default and Acceleration letter ("Acceleration Letter"), and ii) contact Washworld in an attempt to obtain the return of the Mistaken Payment.

25. CWM, WCCW and Ortiz failed and refused to pay the accelerated balance or to respond to the Acceleration Letter.

26. Washworld failed and refused to respond to Ascentium's attempts to request return the Mistaken Payment and is informed and believes and thereon alleges that Washworld actually concealed the true facts regarding the additional $176,552.71 sent to CWM as set forth below.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

## FIRST CAUSE OF ACTION

### (Against CWM for Breach of EFA)

27. Ascentium incorporates herein by this reference, paragraphs 1-25, Inclusive, as though fully set forth at length.

28. Ascentium has performed all terms, conditions, covenants, and promises on its part required to be performed in accordance with the terms of the EFA as amended and all other related documents and instruments executed in connection therewith.

29. Debtor defaulted by breaching many of the covenants set forth in paragraphs 2, 6 and 10 of the EFA based on its conduct set forth above and also failed to make the payments due on the EFA from and after October, 2024. Ascentium has elected to accelerate and declared the entire balance of the EFA immediately due and payable. The accelerated amount due as of October 30, 2024, is as follows:

| | |
|---|---|
| Past Due Payments: | $17,478.45 |
| Late Charges: | 648.72 |
| Insurance Charges for insurance Debtor failed to obtain: | 499.94 |
| Future Payments Accelerated (3% value discount applied) | 393,891.05 |
| TOTAL | $350,997.00 |

Interest accrues on the amount due at the rate of $172.53 per day from and after October 30, 2024 until payment in full or date of entry of judgment. On October 30, 2024, the Acceleration Letter was sent to Debtor and all guarantors (1) demanding payment of the amounts due and (2) possession of the Equipment. Debtor and (as alleged below) all guarantors have failed and refused to pay the amounts due and owing as alleged herein and, on information and belief, there is no equipment to turn over to Ascentium. A true and correct copy of the Acceleration Letter is attached hereto, marked Exhibit "6" and is incorporated herein by this reference.

30. Ascentium is informed and believes and therein alleges that none of the Equipment that was to be financed by the EFA was delivered to or received by the Debtor, which is another breach of the EFA and that the representation made by Ortiz that the Equipment had been received was false.

31. Ascentium has not yet repossessed any Equipment nor will it likely be able to since

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

the Equipment referred to in the Order probably did not exist and this Complaint is not for a deficiency.

32.    Pursuant to the EFA, Ascentium is entitled to recover its reasonable attorney fees and costs in enforcing its rights thereunder.  Ascentium has employed counsel and has incurred and will in the future incur reasonable attorneys fees and costs to be set by the Court according to proof.

## SECOND CAUSE OF ACTION

### (For Breach of Guaranty against Defendant Ortiz)

33.    Ascentium incorporates herein by this reference paragraphs 1-32, inclusive, as though fully set forth and length.

34.    In connection with Debtor executing and delivering the EFA, Ortiz made, executed, and delivered to Ascentium his Personal Guaranty, Agreement No. 2763169, dated January 5, 2024 (the "Ortiz Guaranty") of the obligations of Debtor under the EFA, a true and correct copy of which is attached hereto as Exhibit "7" and incorporated herein by this reference.

35.    Ascentium has performed all terms, conditions, covenants, and promises on its part required to be performed pursuant to the terms of the Ortiz Guaranty.

36.    Demand has been made on Debtor and Ortiz to pay all sums due to Ascentium, but Debtor and Ortiz have failed to do so.  As a result, Ascentium has declared the Ortiz Guaranty to be in default and has made demand on Ortiz to pay the full amount due pursuant to the terms of the EFA and the Ortiz Guaranty, but Ortiz has failed to do so.

37.    As a result of the foregoing, Ascentium is entitled to recover all amounts alleged to be due under the EFA in paragraph 25 above in at least the sum of $350,997.00 plus interest, in an amount according to proof.

38.    Pursuant to the Ortiz Guaranty, Ascentium is entitled to recover its expenses, including reasonable attorney's fees in enforcing the Ortiz Guaranty.

## THIRD CAUSE OF ACTION

### (For Breach of Guaranty against WCCW)

39.    Ascentium incorporates herein by this reference paragraphs 1-39, Inclusive, as

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

5852976v1 | 100287-0289

10

COMPLAINT

though fully set forth and length.

40. In connection with Debtor executing and delivering the EFA, WCCW made, executed, and delivered to Ascentium its Guaranty, Agreement No. 2763169, dated January 5, 2024 (the "WCCW Guaranty") of the obligations of Debtor under the EFA, a true and correct copy of which is attached hereto as Exhibit "8" and incorporated herein by this reference.

41. Ascentium has performed all terms, conditions, covenants, and promises on its part required to be performed pursuant to the terms of the WCCW Guaranty.

42. Demand has been made on Debtor and WCCW to pay all sums due to Ascentium, but Debtor and WCCW have failed to do so. As a result, Ascentium has declared the WCCW Guaranty to be in default and has made demand on WCCW to pay the full amount due pursuant to the terms of the EFA and the WCCW Guaranty, but WCCW has failed to do so.

43. As a result of the foregoing, Ascentium is entitled to recover all amounts alleged to be due under the EFA in paragraph 25 above in at least the sum of $350,997.00 plus interest but in an amount according to proof.

44. Pursuant to the WCCW Guaranty, Ascentium is entitled to recover its expenses, including reasonable attorneys' fees in enforcing the WCCW Guaranty.

### FOURTH CAUSE OF ACTION

**(For Fraud/Concealment against CWM, Williams, and Ortiz and Does 1-10 Inclusive)**

45. Ascentium incorporates herein by this reference paragraphs 1-44, inclusive, as though fully set forth and length.

46. CWM, through Williams and Ortiz, represented to Ascentium that CWM intended to order the Equipment stated in the Quote, Exhibit 2 hereto, the purchase of which would be the subject of the EFA, as amended by Exhibit "3'.

47. The representation was false when made; the true facts were that Williams and Ortiz never intended to cause CWM to order the Equipment listed in the Quote.

48. In addition, and in connection with the fraud, Ortiz orally represented to Ascentium that the Equipment had been delivered when in fact it was never delivered to perpetuate and conceal the fraud.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

49.     The representations were made with the intent to induce Ascentium to make the Mistaken Payment to Washworld, so that they could cause Washworld to apply a portion thereof to the outstanding invoice for another customer of CWM and to send the balance to CWM as working capital or for whatever other reason CWM needed the money for but nothing to do with the Equipment or the EFA. In addition, Plaintiff is informed and believes and thereon alleges that in order to conceal why the $176,552.71 was being remitted from Washworld to CWM, it was not really for CWM to acquire equipment for Conserv Fuels from another vendor but instead it was paid as a commission to CWM on the Conserv Fuels Order.

50.     In reliance on the representations, Ascentium made the Mistaken Payment to Washworld,  Ascentium's reliance was reasonable in view of (a) Ascentium's history in dealing with CWM and Washworld, (b) the history of the EFA transaction where CWM apparently ordered equipment from AVW which refunded the payment previously made by Ascentium to AVW, (c) CWM's status as a distributor of Washworld which, among other things, provided CWM with access to Washworld's order forms, (d) the apparent bonafides of the Quote, (e) CWM obligating itself under the EFA as amended to pay the amounts due thereunder, which was personally guaranteed by Ortiz and WCCW, (f) the contractual obligation of Washworld to contact Ascentium if there were any questions regarding payments and (g) the transaction was handled as prior transactions with Washworld sending the Payment Notification along with the $309,054.52 wired to Washworld; (h) that in most of the Washworld transactions the Order forms were not signed by Washworld and the custom and practice and course of dealing with Washworld in previous transactions was no different as in this transaction.

51.     Had Ascentium known the true facts, it never would have made the Mistaken Payment to Washworld or entered into the EFA.

52.     As a direct and proximate result of Ascentium's reliance on the fraudulent misrepresentations, Ascentium has been damaged in the amount of the Mistaken Payment plus interest thereon from and after the date of payment.

53.     The conduct of CWM, Williams, Ortiz, as its managing agents, was done with oppression, fraud and malice within the meaning of Civil Code § 3294.  As managing agents and

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

5852976v1 | 100287-0289

12

COMPLAINT

officers and/or members Williams and Ortiz had the authority to act on behalf of CWM. Ascentium is therefore entitled to recover punitive and exemplary damages from each of such defendants in an amount according to proof.

## FIFTH CAUSE OF ACTION

### (Against Washworld for Recovery of Money Paid by Mistake)

54.    Ascentium incorporates herein by this reference paragraphs 1-52, Inclusive, as though fully set forth and length.

55.    As alleged herein, Ascentium was fraudulently induced to make the Mistaken Payment to Washworld.

56.    Upon receipt of the Mistaken Payment, Washworld knew, had reason to know, and/or should have known, the Payment was, in fact, mistaken and was not on account of any then-pending transaction, because of, among other things, the following:  (a) there was then pending no order from CWM with a payment due from CWM in the amount of the Mistaken Payment or in an amount even remotely similar to that amount, (b) the receipt of the Mistaken Payment in fact caused Washworld to question what it was for and to make inquiry of CWM as to what obligation it was related to, (c) instead of following the instructions in the Payment Notice to direct any questions regarding the payment referred to therein to Ascentium, Washworld made the conscious and intentional decision to not do so but to direct questions to CWM even though the Mistaken Payment was paid by Ascentium to Washworld, (d) instead of following the requirements of the Funding Instructions, Washworld made the conscious and intentional decision not to contact Ascentium regarding same; (e) in all its prior dealings on transactions funded by Ascentium, Washworld had never received a payment that it did not readily associate with a known pending transaction involving equipment that was being sold, (f) on information and belief, Washworld had never before received a payment on account by a purchase order for an Ascentium transaction or transaction involving CWM as the borrower, or relating to any other distributor as the borrower, or direct sale that was over double the amount owed on the transaction to which it was applied, (g) on information and belief, Washworld was not expecting a funding from Ascentium at the time in any amount let alone the amount of the Mistaken Payment, (h) on

5852976v1 | 100287-0289

13

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

information and belief, Washworld knew that purchases of its products were funded by loans or leases that were intended to be secured by the equipment being purchased, thus sending more than 50% of the purported overpayment to the customer instead of the lender, could well be contrary to the contractual relationship between the customer and the lender, (i) on information and belief, Washworld had never before been confronted with a situation where it had received a payment from a vendor's financing source where the customer being financed requested that more than 50% of the amount received be returned not to the funding source but to the intended obligor, (j) on information and belief, Washworld received no reasonably credible explanation from CWM as to why the amount of the Mistaken Payment was more than twice what was owed on the obligation of CWM's customer Conserv Fuels, to which the payment was applied or a credible explanation for the request that the overage be paid to CWM rather than returned to Ascentium and (k) the Mistaken Payment was larger than any prior payment received from Ascentium.

57.    Washworld retained the Mistaken Payment in bad faith and with reason to know that it was Mistaken and without complying with its obligation to make inquiry under the Funding Instructions and the request that was contained in the Payment Notice. Moreover, Plaintiff is informed and believes that the additional $176,552.71 remitted back to CWM and contrary to what the Funding Instructions required Washworld to do with the money and then accounted for this $176,552.71 as a commission paid by Washworld to CWM rather than what Washworld stated to Ascentium the reason was why this money was remitted back to CWM which was to buy ancillary equipment.

58.    By reason of the foregoing and by the conduct of Washworld in this transaction, in order to avoid an unjust enrichment of Washworld, Ascentium is entitled to restitution from Washworld of the entirety of the Mistaken Payment plus interest thereon from and after the date of the Mistaken Payment in an amount according to proof.

### SIXTH CAUSE OF ACTION

**(Against Washworld for Breach of Contract)**

59.    Ascentium incorporates herein by this reference paragraphs 1-58, inclusive, as though fully set forth and length.

5852976v1 | 100287-0289

14

60.     Pursuant to the Funding Instructions, Exhibit "4", Washworld was contractually obligated to remit the Mistaken Payment to Ascentium by reason of the fact that at the time of Washworld's receipt of same, there existed no valid purchase order, invoice, quote or proposal to which the Mistaken Payment related and thus same constituted funds to which Washworld, as payee, was not entitled, all as Washworld knew, had reason to know or should have known.

61.     Ascentium is informed and believes and therein alleges that when it received the Mistaken Payment, Washworld employees in fact had questions as to why same had been received.  Instead of directing the questions to Ascentium, Washworld directed the questions to CWM,  and Williams, and/or possibly to Ortiz and, based on statements from these defendants, Washworld applied a portion of such funds to payment of an invoice it knew, had reason to know, or should have known, was not the intended subject of the Mistaken Payment and remitted the balance to CWM by and through Williams and/or Ortiz.

62.     To the extent there were conditions to be performed by Ascentium in connection with the Funding Instructions such conditions, covenants and promises were performed by Ascentium.

63.     As a direct and proximate result of Washworld's breach of the Funding Instructions, Ascentium has been damaged in the amount of the Mistaken Payment and is thus entitled to recover the full amount thereof from Washworld plus interest thereon from and after the date of the Mistaken Payment in an amount according to proof.

### SEVENTH CAUSE OF ACTION

### (For Money Had and Received Against Washworld)

64.     Ascentium incorporates herein by this reference paragraphs 1-58, inclusive, as though fully set forth and length.

65.     Within the two years last past, Washworld became indebted to Ascentium for money had and received for the use and benefit of Ascentium in the amount of the Mistaken Payment, no part of which has been paid. As a result, Ascentium is entitled to the amount of the Mistaken Payment together with interest thereon from and after the date of the Mistaken Payment in an amount according to proof.

5852976v1 | 100287-0289

15

COMPLAINT

## EIGHTH CAUSE OF ACTION

### (For Conversion as Against Washworld and Does 1-10)

66. Plaintiff refers to paragraphs 1-52, and 54-58, Inclusive, by reference as if set forth in full.

67. Plaintiff entered into the EFA with CWM which EFA was guaranteed by Ortiz and WCCW to make payments for the delivery of the Equipment which was collateral for the loan evidenced by the EFA.

68. Washworld had executed the Funding Instructions with Ascentium so that in any transactions where it was the supplier of equipment, the loan proceeds for the borrower would be paid not to the borrower but to Washworld as the supplier in accordance with the terms of the Funding Instructions.

69. As stated above, in accordance with the EFA, the Commencement Agreement, the verbal verification that was done by Ortiz representing the Equipment was delivered and received by CWM and Ascentium was instructed to pay the $309,054.52 to Washworld.

70. Washworld was paid the $309,054.52 on or about March 12, 2024, and also received the Payment Notification setting forth why this sum was being paid to Washworld. At no time after the $309,054.52 was paid to Washworld was Ascentium contacted by Washworld as to why this payment was received from Ascentium. Instead, Washworld contends that it contacted Williams who instructed Washworld to apply the $132,509.09 to the Conserv Fuels alleged outstanding order and the $176,552.71 was remitted to CWM and never paid to Ascentium.

71. At all times herein mentioned Ascentium was not a volunteer in paying the $309,054.52 to Washworld or for the acquisition for the Equipment which never existed or was ordered.

72. Conversion is the wrongful act of dominion over the property of another. There does not have to be a wrongful intent but only that a defendant acted knowingly that it was not entitled to use or possession of property and any interference with the right to possession of another's property constitutes a conversion.

73. At the time that the $309,054.52 was wired to Washworld, and Washworld

5852976v1 | 100287-0289

16

COMPLAINT

contends that it did not know why this money was sent to Washworld even though it had the ability to contact Ascentium by and through Marie Negri or anyone else with Ascentium and could also refer to the Finance Contract # on the Payment Notification, Washworld intentionally failed to do so. Moreover, Washworld had received many such Payment Notifications from Ascentium in the past and Ascentium is informed and believes and thereon alleges that it never had any such issues with Washworld Orders and payments in the past. Further, the Funding Instructions specifically state that the funds must be tied to a specific transaction or Order and the retention of the $132,509.09 and then the payment made of $176,552.71 to Washworld was not in accordance with the terms of the Funding Instructions or any practice or custom of Washworld with Ascentium on prior transactions.

74. Instead, the money was converted by Washworld by first paying on a different Order and it got the benefit of being paid on an Order that the money was not intended for. Second, Ascentium is informed and believes and thereon alleges that it used the $176,552.71 to pay a commission to CWM which was a further direct benefit to Washworld by not paying its own money to Washworld as a commission.

75. Washworld converted the $309,054.52 which was not provided to Washworld for anything other than selling the Equipment to CWM with the loan proceeds furnished by Ascentium to Washworld and was used for Washworld's benefit. Therefore, Plaintiff is entitled to the converted sum of $309,054.52 together with interest thereon at the legal rate from and after March 12, 2024, in an amount according to proof.

WHEREFORE, Ascentium prays for judgment against Defendants, and each of them, as follows:

**On the First, Second and Third Causes of Action**

1. For the principal sum of $350,997.00 which also includes late charges;

2. For interest in the sum of $172.53 per day from and after October 30, 2024, until paid in full or date of entry of judgment;

3. For further late fees in an amount according to proof;

4. For reasonable attorneys fees in an amount according to proof;

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

5852976v1 | 100287-0289

17

COMPLAINT

**On the Fourth Cause of Action**

5.     For damages in the amount of $309,054.52;

6.     For interest at the legal rate from March 12, 2024 until date of entry of judgment in an amount according to proof;

7.     For punitive and exemplary damages in an amount according to proof;

**On the Fifth Cause of Action**

8.     For restitution in the amount of $309,054.52;

9.     For interest at the legal rate on all damages according to proof;

**On the Sixth and Eighth Causes of Action**

10.     For damages in the amount of $309.054.52;

11.     For interest at the legal rate on all damages according to proof;

**On the Seventh Cause of Action**

12.     For damages in the amount of $309.054.52;

13.     For interest at the legal rate on all damages according to proof;

**On All Causes of Action**

14.     For costs of suit incurred herein; and

15.     For such other and further relief as the Court deems just and proper.

DATED:  February 20, 2026          FRANDZEL ROBINS BLOOM & CSATO, L.C.

By: _____

ANDREW K. ALPER
Attorneys for Plaintiff REGIONS BANK, an
Alabama State Bank and as Successor by Merger
to ASCENTIUM CAPITAL, LLC

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

5852976v1 | 100287-0289                    18
COMPLAINT

# EXHIBIT F

Lisa Mitts Patrick, ESQ. #134522
THE LAW OFFICE OF LISA MITTS PATRICK
112 E. Amerige Ave, Suite 313
Fullerton, CA 92832
Phone: 714-990-3693 / Fax: 657-234-0012
Email: lolmp2021@gmail.com

Attorney for Defendant,
Cross Complainant, JOSE RENE ORTIZ

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

REGIONS BANK, an Alabama State Bank dba ASCENTIUM CAPITAL

Plaintiff,

vs.

CAR WASH MANAGEMENT, LLC, a Delaware Limited Liability Company, CAR WASH MANAGEMENT, LLC, a Hawaii Limited Liability Company, WEST COVINA CAR WASH LLC, a California Limited Liability Company, JOSE RENE ORTIZ, aka JOSE R. ORTIZ aka JOSE ORTIZ, an individual, ANDREW WILLIAMS, aka ANDREW P. WILLIAMS, aka ANDREW WILLIAMS, an individual, WASHWORLD, INC., a Wisconsin Corporation, DOES 1-100, inclusive,

Defendants,

-----------------------------------------------------------

JOSE RENE ORTIZ,
Cross Complainant,

vs.

ANDREW PAUL WILLIAMS, aka ANDREW P. WILLIAMS, aka ANDREW WILLIAMS, an individual, CAR WASH MANAGEMENT, LLC, a Delaware Limited Liability Company, CAR WASH MANAGEMENT, LLC, a Hawaii Limited Liability Company, WASHWORLD, INC., a Wisconsin Corporation, and ROES 1 to 35, inclusive,

Cross Defendants

-----------------------------------------------------------

AND OTHER RELATED CROSS ACTIONS

-----------------------------------------------------------

Case No: 2:25-CV-00359

JOSE RENE ORTIZ RESPONSE TO ASCENTIUM'S INTERROGATORIES, SET ONE

1

REQUESTING PARTY: REGION'S BANK

RESPONDING PARTY: JOSE RENE ORTIZ

SET NO: ONE (Q#1-19)

RESPONDING PARTY, DEFENDANT/CROSS COMPLAINANT JOSE RENE ORTIZ, provides the following responses to REGION'S BANK'S Interrogatories (Set One).

RESPONDING PARTY has not completed discovery, his investigation of facts relating to this case, or his preparation for hearing. Consequently, the following Responses are given without prejudice to RESPONDING PARTY's right to produce supplemental responses at any time and/or produce, at the time of hearing, additional evidence that may be discovered later relating to the matters set forth herein.

**INTERROGATORY NO. 1:**

From the last five years from the date of these interrogatories, state all written or oral COMMUNICATIONS YOU had with Andrew Paul Williams ("WILLIAMS"), including, the dates when they occurred, who if anyone was present and when the COMMUNICATIONS occurred, and the substance and content of such COMMUNICATIONS concerning the sale or acquisition of goods or equipment by or for the benefit of Car Wash Management, LLC ("CWM") or West Covina Car Wash, LLC ("WEST COVINA")

**RESPONSE TO INTERROGATORY NO. 1:**

Objection, overbroad, burdensome and calls for speculation as to general communications with an individual over such a long period of time. Without waiving objection, Responding Party cannot recall that many details but identifies having encountered WILLIAMS roughly every other day while working with his company, and they communicated mostly (barely) on mundane work-related matters like fixing machinery (Responding Party's primary role) and sometimes about pending sales, while working as a technician at Andrew Williams company. When WILLIAMS moved more

often to his San Diego location, the contact was even less frequent.  ANDREW spoke about the subject loan only a few times when having him sign the documents needed to get a company loan, and maybe once or twice after.  After Responding Party quit in around May of 2024 after learning of WILLIAMS' money problems, he has received periodic text messages from WILLIAMS. Responding Party refuses to answer those texts. Responding Party has no further knowledge as to dates, times, people who were present except that Travis Beaudoini a co-worker (spelling uncertain) was present when WILLIAMS insisted they both sign the loan documents. Responding Party does not know what Travis signed.

**INTERROGATORY NO. 2:**

For the last five years from the date of these interrogatories, state all written or oral COMMUNICATIONS YOU had with Washworld, Inc. a Wisconsin corporation ("WASHWORLD"), including who the COMMUNICATIONS occurred with, the date or dates they occurred, and who if anyone was present when the COMMUNICATIONS occurred, and the substance and content of the COMMUNICATIONS concerning the sale or acquisition of goods or equipment by or for the benefit of CWM for WEST COVINA.

**RESPONSE TO INTERROGATORY NO. 2:**

Objection, overbroad, burdensome and calls for speculation as to general communications with an a "company" over such a long period of time. Without waiving the objection, Responding Party cannot recall that much detail, but for the past years Responding Party has communicated with Washworld somewhat often about sales, as the company he works for now, does business with them and he also communicated with them about sales before that.  When he calls about items to purchase, he usually speaks to Jim and for parts he will send a general email. He does not have any records to identify dates, times etc and does not recall details such as dates, times or persons present.

- 3 -

**INTERROGATORY NO. 3:**

For the last five years from the date of these interrogatories, state all written and oral COMMUNICATIONS YOU had with ASCENTIUM including who the COMMUNICATIONS occurred with, when they occurred, who if anyone was present when the COMMUNICATIONS occurred, concerning the sale or acquisition of goods or equipment by or for the benefit of CWM or WEST COVINA or any other car wash.

**RESPONSE TO INTERROGATORY NO. 3:**

Objection, overbroad, burdensome and calls for speculation as to general communications with an a "company" over such a long period of time. Without waiving the objection, Responding Party does not recall that much detail, but had no communications with Ascentium about the loan before it was funded, and only one call from someone there about delivery of products prior to the issuance of the loan money, and one maybe two more calls with their representative after Responding Party quit WILLIAMS, said person telling him that WILLIAMS wasn't paying on the loan and they were going to make Responding Party responsible. He does not recall details such as dates, times or persons present, and has no records in his possession to review to refresh his recollection.

**INTERROGATORY NO. 4:**

State all facts as to YOUR execution of the Equipment Finance Agreement No. 2763169 (the "EFA" on behalf of CWM, including, but not limited to, who requested to execute the EFA, who was present when the EFA was executed and all COMMUNICATIONS regarding the execution of the EFA. A true and correct copy of the EFA is attached hereto marked Exhibit "1".

**RESPONSE TO INTERROGATORY NO. 4**

Objection, compound, vague and confusing and overbroad as to "all" facts which may or may not yet be known to Responding Party when he has not yet received all discovery from other parties. Without waiving objection, as to Responding Party's understanding of the question, and as to facts

- 4 -

RESPONSE BY ORTIZ TO SPECIAL INTERROGATORIES FROM ASCENTIUM

known to this point, all documents marked as Exhibits were presumably signed by Responding Party at the same time when presented to Responding Party by WILLIAMS while Responding Party was outside working on repairing car washing equipment for West Covina Car Wash with helper Travis Beaudoin (spelling uncertain), and was presented papers he had to sign as all of them were needed to sign it to get a loan so they can stay in business. He was not given opportunity to read the documents, nor copies of what he signed, and does not recall signing these Exhibit documents other than he felt that he had to sign whatever was presented because his 'boss' told him to.

**INTERROGATORY NO. 5:**

State all facts as to YOUR execution of the Authorization to Perform Verbal Verification (the "Authorization") on behalf of CWM, including, but not limited to, the names of the persons who requested that YOU execute the Authorization, the names of any persons who was present when the Authorization was executed and all COMMUNICATIONS regarding the execution of the Authorization. A true and correct copy of the Authorization is attached hereto marked Exhibit "2".

**RESPONSE TO INTERROGATORY NO. 5:**

Objection, compound, vague and confusing and overbroad as to "all" facts which may or may not yet be known to Responding Party when he has not yet received all discovery from other parties. Without waiving objection, as to Responding Party's understanding of the question, and as to all facts known to this point, all documents marked as Exhibits were presumably signed by Responding Party at the same time when presented to Responding Party by WILLIAMS while Responding Party was outside working on repairing car washing equipment for West Covina Car Wash with helper Travis Beaudoin (spelling uncertain), and was presented papers he had to sign as all of them were needed to sign it to get a loan to stay in business. He was not given opportunity to read the documents, nor copies of what he signed, and does not recall signing these Exhibit documents other than he felt that he had to sign whatever was presented because his 'boss' told him to.

RESPONSE BY ORTIZ TO SPECIAL INTERROGATORIES FROM ASCENTIUM

**INTERROGATORY NO. 6:**

_State all facts as to YOU execution of the Commencement Agreement (the "Agreement") on behalf of CWM, including, but not limited to, the names of persons who requested that YOU execute the Agreement, the names of all persons who were present when the Agreement was executed and all COMMUNICATIONS stated regarding the execution of the Agreement. A true and correct copy of the Agreement is attached hereto marked Exhibit "3".

**RESPONSE TO INTERROGATORY NO. 6:**

Objection, compound, vague and confusing and overbroad as to "all" facts which may or may not yet be known to Responding Party when he has not yet received all discovery from other parties. Without waiving objection, as to Responding Party's understanding of the question, and as to facts known to this point, all documents marked as Exhibits were presumably signed by Responding Party at the same time when presented to Responding Party by WILLIAMS while Responding Party was outside working on repairing car washing equipment for West Covina Car Wash with helper Travis Beaudoin (spelling uncertain), and was presented papers he had to sign as all of them were needed to sign it to get a loan so they can stay in business.  He was not given opportunity to read the documents, nor copies of what he signed, and does not recall signing these Exhibit documents other than he felt that he had to sign whatever was presented because his 'boss' told him to.

**INTERROGATORY NO. 7:**

State all facts as to YOUR execution of the Personal Guaranty (the "Guaranty") including, but not limited to, the names of the persons who requested that YOU execute the Guaranty, each and every fact as to why YOU executed the Guaranty, the names of persons who were present when the Guaranty was executed, the substance and content of all COMMUNICATIONS regarding the execution of the Guaranty and any other documents YOU executed in connection with the Guaranty. A true and correct copy of the Guaranty is attached hereto marked Exhibit "4".

- 6 -

**RESPONSE TO INTERROGATORY NO. 7:**

Objection, compound, vague and confusing and overbroad as to "all" facts which may or may not yet be known to Responding Party when he has not yet received all discovery from other parties. Without waiving objection, as to Responding Party's understanding of the question, and as to all facts known to this point, all documents marked as Exhibits were presumably signed by Responding Party at the same time when presented to Responding Party by WILLIAMS while Responding Party was outside working on repairing car washing equipment for West Covina Car Wash with helper Travis Beaudoin (spelling uncertain), and was presented papers he had to sign as all of them were needed to sign it so they can get a loan to stay in business. He was not given opportunity to read the documents, nor copies of what he signed, and does not recall signing these Exhibit documents other than he felt that he had to sign whatever was presented because his 'boss' told him to.

**INTERROGATORY NO. 8:**

State all facts as to why WILLIAMS did not execute a Guaranty or why a guaranty was not required of WILLIAMS for the EFA, Exhibit "1" hereto.

**RESPONSE TO INTERROGATORY NO.8:**

Objection, calls for speculation. This Responding Party could not possibly know what was in the mind of WILLIAMS. Without waiving objection, that is a crucial question, why did the bank not require a guaranty by WILLIAMS? It seems that WILLIAMS was planning to be a crook to everyone by avoiding giving his own guaranty since he was the one who knew what was in the documents and obviously must have known his plans to abscond with the money.

**INTERROGATORY NO. 9:**

State all facts as to YOUR execution of the Delivery and Acceptance Certificate (the "CERTIFICATE") on behalf of the CWM, including, but not limited to, the names of the persons who requested that YOU execute the CERTIFICATE, the names of persons who were present when

the CERTIFICATE was executed, if equipment which was set forth in the EFA was not delivered to either West Covina Car Wash or CWM why the Certificate was executed by YOU if it was not actually delivered. A true and correct copy of the Certificate is attached hereto and marked Exhibit "5".

**RESPONSE TO INTERROGATORY NO. 9:**

Objection, compound, vague and confusing and overbroad as to "all" facts which may or may not yet be known to Responding Party when he has not yet received all discovery from other parties. Without waiving objection, as to Responding Party's understanding of the question, and as to facts known to this point,  all documents marked as Exhibits were presumably signed by Responding Party at the same time when presented to Responding Party by WILLIAMS while Responding Party was outside working on repairing car washing equipment for West Covina Car Wash with helper Travis Beaudoin (spelling uncertain), and was presented papers he had to sign as all of them were needed to sign it to get a loan so they can stay in business. He was not given opportunity to read the documents, nor copies of what he signed, and does not recall signing these Exhibit documents other than he felt that he had to sign whatever was presented because his 'boss' told him to. Further, Exhibit 5 which was presumably presented by the bank for signature(s), was signed/dated the same date as the other initial loan documents, thus it is paradoxical that any delivery could possibly have been confirmed by anyone as of that date since the funds were allegedly needed for the parts, yet the bank presented said documents to be signed apparently before delivery. Responding Party is therefore confused by the question suggesting that an actual delivery took place then and is unable to answer further.

**INTERROGATORY NO. 10:**

Was the equipment that was the subject of the EFA, Exhibit "1"  hereto, required to be delivered to WEST COVINA and, if so, was it ever delivered?

- 8 -

RESPONSE BY ORTIZ TO SPECIAL INTERROGATORIES FROM ASCENTIUM

**RESPONSE TO INTERROGATORY NO. 10:**

Objection, calls for speculation. Responding Party knew virtually nothing about the 'EFA" Exhibits 1 to 5, as WILLIAMS was the company person who sought the loan and handled all of it. Without waiving objection, no, not to West Covina. Responding Party's understanding (later) of the transaction was that Conserve Fuels bought parts from Washworld through Washworld's distributor ANDREW WILLIAMS. Conserve Fuels paid ANDREW WILLIAMS and his company, for the parts. ANDREW got them from Washworld, but apparently didn't pass the money from Conserve Fuels along to Washworld. He kept it. (Responding Party didn't know that at the time.) So he understood the loan was to pay Washworld for those parts since Williams had already presumably spent the money. It was all beginning to look like a pyramid scheme which is why Responding Party quit working there in around May of 2024—WILLIAMS would keep the cash from the first transaction and then use the money from the next to pay the first guy and then do it again in various transactions. WILLIAMS wasn't conducting business the right way. It is Responding Party's understanding that the parts were delivered to Conserve Fuels in Santa Maria, not where their corporate headquarters are located and when asked about that the one time the bank ever called, Responding Party said they were delivered as he understood that they were. He did not know the amount of the loan, or what it exactly was for to know there would be an overage.

**INTERROGATORY NO. 11:**

Was equipment ever purchased from AVW Equipment Company, Inc. by CWM or WEST COVINA and delivered to either WEST COVINA or CWM and, if so, describe the equipment when it was delivered and how much was paid for it?

/ / /

RESPONSE BY ORTIZ TO SPECIAL INTERROGATORIES FROM ASCENTIUM

**RESPONSE TO INTERROGATORY NO. 11:**

Objection, calls for speculation. Responding Party knew virtually nothing about the 'EFA" Exhibits 1 to 5, as WILLIAMS was the company person who sought the loan and handled all of it. Without waiving objection Responding Party states: not that he knows of.

**INTERROGATORY NO. 13:**

Set forth the structure of CWM as a limited liability company in January, 2024, including but not limited to who the members of CWM are, the percentage ownership of each member, which member(s) are responsible for management decisions of CWM, including entering into contracts and purchasing and/or leasing equipment for CWM.

**RESPONSE TO INTERROGATORY NO. 13:**

Objection, calls for speculation. Without waiving objection, Responding Party has no personal knowledge about the structure of ANDREW WILLIAMS' various companies. Also, said documents filed with the Secretary of State that would contain some of this information are equally available to Requesting Party by way of subpoena. Without waiving objection, Responding Party believes WILLIAMS at one time had 2 other partners in his businesses. He heard that those partners (names unknown) were so fed up with WILLIAMS' acts and omissions regarding money that they sued him for damages. He has no personal knowledge of this or which company(s) it was. That could probably be searched in court records somewhere.

**INTERROGATORY NO. 14:**

Set forth the structure of CWM as a limited liability company in January 2026, including but not limited to who the members of CWM are, the percentage ownership of each member, which member(s) are responsible for management decisions of CWM, including entering into contracts and purchasing and/or leasing equipment for CWM.

/ / /

- 10 -

**RESPONSE TO INTERROGATORY NO. 14:**

Objection, calls for speculation. Without waiving objection, Responding Party has no personal knowledge about the structure of ANDREW WILLIAMS companies. See response to No. 13 re 2024 as it would also apply to 2026.

**INTERROGATORY NO. 15:**

Set forth the structure of WEST COVINA as a limited liability company in January 2024 including but not limited to who the members of WEST COVINA are, the percentage ownership of each member, which member(s) are responsible for management decisions of WEST COVINA, including entering into contracts and purchasing and/or leasing equipment for WEST COVINA.

**RESPONSE TO INTERROGATORY NO. 15:**

Objection, calls for speculation. Without waiving objection, Responding Party has no personal knowledge about the structure of ANDREW WILLIAMS companies. Said documents filed with the Secretary of State that would contain some of this information are equally available to Requesting Party by way of subpoena. Without waiving objection, Responding Party, a repair technician and part time salesman, was at one time, offered by ANDREW WILLIAMS to become an owner in WEST COVINA CAR WASH once/if it ever became profitable. It never did and the offered ownership interest in the business never happened. Responding Party remained only an employee that was on occasion labelled by WILLIAMS a "Member" --a title he did not understand.

**INTERROGATORY NO. 16:**

Set forth the structure of WEST COVINA as a limited liability company in January 2026 including but not limited to who the members of WEST COVINA are, the percentage ownership of each member, which member(s) are responsible for management decisions of WEST COVINA, including entering into contracts and purchasing and/or leasing equipment for WEST COVINA.

/ / /

- 11 -

RESPONSE BY ORTIZ TO SPECIAL INTERROGATORIES FROM ASCENTIUM

**RESPONSE TO INTERROGATORY NO. 16:**

Objection, calls for speculation. Without waiving objection, Responding Party has no personal knowledge about the structure of ANDREW WILLIAMS' companies. Said documents filed with the Secretary of State that would contain some of this information are equally available to Requesting Party by way of subpoena. Without waiving objection, Responding Party believes WILLIAMS at one time had 2 other partners in his businesses. He heard that those partners (names unknown) were so fed up with WILLIAMS acts and omissions regarding money that they sued him for damages. Responding Party does not know the details or the outcome.

**INTERROATORY NO. 17:**

To the best of YOUR knowledge, set forth all facts as to why CWM instructed WASHWORLD to pay to Conserve Fuels, the sum of $132,509.09 from monies that WASHWORLD received from ASCENTIUM.

**RESPONSE TO INTERROGATORY NO. 17:**

Objection, calls for speculation. Responding Pary was not handling the above financial transaction and has no personal knowledge. The question is also vague and confusing in that Responding Party understood the Ascentium loan money came TO Washworld in full and they RETAINED that amount because of an unpaid invoice for parts for Conserve Fuels (or some company) and the rest was sent back by Washworld to WILLIAMS. Responding Party is not (and was not) aware that any money went from Washworld (once they got the bank's money) TO anyone else except WILLIAMS. Without waiving objection, it was Responding Party's assumption that this loan ANDREW WILLIAMS was talking about was a general loan to run the business, not for something specific, but if the Conserve Fuels invoice from Washworld (or Washworld's invoice to Conserve Fuels) was still unpaid, it probably made sense to issue payment to Washworld for the Conserve Fuel parts that Responding Party was informed and believes was delivered to them in Santa Maria.

- 12 -

Responding Party later learned Andrew took the money paid by Conserve Fuels and did not pass it on to Washworld for the purchase. In fact Responding Party later learned WILLIAMS did this more than once –taking the payment made by a customer for parts and spending it on himself, and then using the income/loan from the NEXT guy to pay for the first one until he couldn't do it any more and took off and went into hiding. WILLIAMS does seem to have a functioning company with technicians that work for him now out of a location in Ontario.

**INTERROGATORY NO. 18:**

Did YOU ever speak to anyone at WASHWORLD regarding their payment of $132,509.09 to Conserve Fuels? If YOU did, who did YOU speak with, the nature of the COMMUNICATION, and when did it occur?

**RESPONSE TO INTERROGATORY NO. 18:**

Objection. Compound. Without waiving objection, not that Responding Party recalls (as he never understood Washworld made a payment to Conserve Fuels, not even upon review of this Complaint) other than telling someone (maybe not at Washworld) that the parts were delivered to Conserve Fuels which is what he understood was the case. (See prior response herein.)

**INTERROGATORY NO. 19:**

Did YOU ever speak to anyone at ASCENTIUM regarding WASHWORLD's payment of $132,509.09 to Conserve Fuels? If YOU did, who did YOU speak with, the nature of the COMMUNCIATION, and when did it occur?

**RESPONSE TO INTERROGATORY NO. 19:**

Objection, compound. Without waiving objection, Responding Party does not recall that coming up in the few contacts had with Ascentium. In the few contacts at all, he spoke with a male rep of Ascentium after he had quit working for WILLIAMS due to all the fraud or irregularities in WILLIAMS' companies, and after the bank threatened to come after Responding Party. The bank

- 13 -

RESPONSE BY ORTIZ TO SPECIAL INTERROGATORIES FROM ASCENTIUM

# FEDERAL COURT PROOF OF SERVICE

Case No: 2:25-cv-00359

STATE OF CALIFORNIA, COUNTY OF ORANGE

At the time of service, I was over the age of 18 years of age and not a party to this action. My business address is 112 E. Amerige Ave., Suite 313, Fullerton CA, 92832.

On 2/20/26, I served true copies of the following document(s):

## RESPONSE OF JOSE RENE ORTIZ TO ASCENTIUM'S SPECIAL INTERROGATORIES, SET ONE

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

## SEE ATTACHED SERVICE LIST

The documents were served by the following means:

(X) BY EMAIL OR ELECTRONIC TRANSMISSION) Based on a court order or an agreement of the parties to accept service by email or electronic transmission, I caused the documents to be sent from e-mail address lolmp2021@gmail.com to the persons at the e-email addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

( ) By Fax. I sent the documents to the above listed parties by fax to the number listed on their pleading and the transmission was complete and with no errors.

( ) By Mail. I placed a true copy of the document in the United States Mail in a sealed envelope with the postage thereon fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on 2/20/26, at Fullerton, California.

*Kathleen Micalizzi*

Kathleen Micalizzi

- 15 -

RESPONSE BY ORTIZ TO SPECIAL INTERROGATORIES FROM ASCENTIUM

## <u>SERVICE LIST</u>

Case No: 2:25-cv-00359Andrew K. Alper, Esq.
FRANDZEL, ROBINS, BLOOM and CSATO
1000 Wilshire Blvd., 19th Floor
Los Angeles, CA 90017-2427

Phone: 323-852-1000
Fax: 325-651-2577
Email: aalper@franzel.com
trobins@franzel.com


Attorney for Plaintiff

Xitlaly Estrada (SBN 333403)
**Baker & Hostetler LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone: 310-979-8430
Email: *xestrada@bakerlaw.com*
*aclaypool@bakerlaw.com*

*Attorney for Defendant* WASHWORLD, INC.

Michael D. Gannon (*pro hac vice*)
Katharine H. Walton (*pro hac vice*)
**Baker & Hostetler LLP**
One North Wacker Drive, Suite 3700
Chicago , IL 60606
Telephone: 312-416-6200
Email: *mgannon@bakerlaw.com*
*kwalton@bakerlaw.com*

Attorney for Defendant WASHWORLD, INC.

- 16 -

RESPONSE BY ORTIZ TO SPECIAL INTERROGATORIES FROM ASCENTIUM

VERIFICATION - C.C.P. §446 and C.C.P. §2015.5

STATE OF CALIFORNIA, COUNTY OF ORANGE

I, the undersigned, declare:  I am the defendant/cross complainant in the above entitled action;  I have read the foregoing **DEFENDANT/CROSS COMPLAINANT RENE JOSE ORTIZ' RESPONSES TO INTERROGATORIES, SET ONE, PROPOUNDED BY PLAINTIFF REGIONS BANK, dba ASCENTIUM,** know the contents thereof; and the same is true of my own knowledge, except as to matters which are therein stated upon my information and belief, and as to those matters, I believe it to be true.

I certify (or declare) under penalty of perjury under the laws of the state of California, that the foregoing is true and correct.

February 20, 2026
_____
Dated

_____
Signature of Declarant

RENE JOSE ORTIZ
_____
Type or Print Full Name

VERIFICATION - C.C.P. §446 and C.C.P. §2015.5

STATE OF CALIFORNIA, COUNTY OF ORANGE

I, the undersigned, declare:  I am the defendant/cross complainant in the above entitled action;  I have read the foregoing **DEFENDANT/CROSS COMPLAINANT RENE JOSE ORTIZ' RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE, PROPOUNDED BY PLAINTIFF REGIONS BANK, dba ASCENTIUM**, know the contents thereof; and the same is true of my own knowledge, except as to matters which are therein stated upon my information and belief, and as to those matters, I believe it to be true.

I certify (or declare) under penalty of perjury under the laws of the state of California, that the foregoing is true and correct.

February 20, 2026

Dated

Signature of Declarant

RENE JOSE ORTIZ

Type or Print Full Name

# EXHIBIT G

## Jon Tyczkowski

| | |
|---|---|
| **From:** | VSR <vsr@AscentiumCapital.com> |
| **Sent:** | Tuesday, March 12, 2024 7:00 AM |
| **To:** | ajohnson@washworldinc.com; Controller |
| **Cc:** | PeteMatheny@AscentiumCapital.com |
| **Subject:** | [Caution External Sender] Notification of Payment from Ascentium Capital |



**Payment Notification**

**For:**   Wash World Inc
2222 American Blvd
De Pere, WI 54115

Thank you for choosing Ascentium Capital for your customer's financing needs. We value your patronage and are committed to bringing you best-in-class service.

This email notifies you that we have issued a payment for your customer's financing. Following is the information related to our payment to you.

This payment is for:

| | |
|---|---|
| **Invoice #:** | Car Wash Management, LLC |
| **Payment Type:** | Equipment |
| **Customer Name:** | Car Wash Management, LLC |
| **Finance Agreement #:** | 2763169 |

You will receive:

| | |
|---|---|
| **Payment Method:** | ACH |
| **Date:** | Mar 11 2024 |
| **Amount:** | $309,054.80 |

Ascentium has initiated an electronic funds transfer to your bank account for the financing deal #2763169. It will reflect in your bank account by the end of the business day tomorrow.

If you have questions about this payment, please contact your Vendor Services Representative, Maria Negri, at MariaNegri@AscentiumCapital.com or (281) 902-1938.

Ascentium is committed to providing applicants and customers with an exceptional financing experience. For further information on how you can

1

WW_0000001

assist us with this commitment, please see <u>Ascentium's Shared Commitments</u>.

For all of your customer financing needs, please contact your Ascentium Capital sales representative, Pete Matheny, at <u>PeteMatheny@AscentiumCapital.com</u> or 281.883.0201

23970 Highway 59 N
Kingwood, TX 77339



<u>www.AscentiumCapital.com</u>

2

WW_0000002

# EXHIBIT H

Andrew K. Alper (State Bar No. 088876)
aalper@frandzel.com
Christopher D. Crowell (State Bar No. 253103)
ccrowell@frandzel.com
FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, California 90017-2427
Telephone: (323) 852-1000
Facsimile: (323) 651-2577

Attorneys for Plaintiff and Counter-
Defendant, Regions Bank, an Alabama
State Bank dba Ascentium Capital

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| REGIONS BANK, an Alabama State Bank dba ASCENTIUM CAPITAL,<br><br>Plaintiff,<br><br>v.<br><br>CAR WASH MANAGEMENT, LLC, a Delaware Limited Liability Company, et al.,<br><br>Defendants. | Case No.  2:25-cv-00359 CASE (KSx)<br><br>**PLAINTIFF REGIONS BANK'S SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12 AND OBJECTIONS TO WASHWORLD, INC.'S FIRST SET OF INTERROGATORIES** |
| JOSE RENE ORTIZ,<br><br>Cross-Complaint,<br><br>v.<br><br>ANDREW PAUL WILLIAMS et al.,<br><br>Cross Defendants. | |
| WASHWORLD, INC.,<br><br>Counter-Claimant,<br><br>v.<br><br>REGIONS BANK D/B/A ASCENTIUM CAPITAL,<br><br>Counter-Defendant. | |

5841031v1 | 100287-0289

WASHWORLD, INC.,

        Cross-Claimant,

  vs.

CAR WASH MANAGEMENT, LLC,

        Cross-Defendant.

PROPOUNDING PARTY:  WASHWORLD, INC.

RESPONDING PARTY:    REGIONS BANK d/b/a ASCENTIUM CAPITAL

SET NO.:                         ONE

Plaintiff and Counter-defendant REGIONS BANK dba ASCENTIUM CAPITAL's ("Ascentium") hereby serves its Supplemental Response to Interrogatory No. 12 of the First Set of Special Interrogatories by Washworld, Inc. ("Washworld") as follows:

All of the Responses and Objections to the First Set of Interrogatories are unchanged except for the Supplemental Response to Interrogatory No. 12. Ascentium's discovery and factual investigation in this matter are continuing, and while Ascentium has made a diligent search and reasonable inquiry in responding to the Interrogatories, Ascentium reserves the right to introduce at trial factual matters or legal theories responsive to  Interrogatories, if any, discovered or developed after the time that these Responses are served. In addition, Ascentium reserves any and all rights that it may have to object at trial or any other proceeding to the introduction of any matter it produced or revealed during discovery.

**GENERAL RESERVATION OF RIGHTS**

Ascentium responds to each and every one of the interrogatories specifically subject to the following reservations of rights:

**1. Limitation on Use of the Responses**

Ascentium responds to the Interrogatories solely for the purpose of this action.

5841031v1 | 100287-0289

2

REGIONS BANK'S SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12 AND OBJECTIONS TO WASHWORLD, INC.'S FIRST SET OF INTERROGATORIES

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

No one may use these Responses for any other purpose or in any other action or proceeding. Ascentium specifically reserves any and all rights it may have to object or initiate action to prevent anyone from using any material or information Ascentium produces or reveals in these Responses for any other purposes.

## 2. Right to Object to Use of the Responses

By responding to the Interrogatories, Ascentium does not concede that any of the material or information that Ascentium produces or reveals in the Responses is admissible evidence. Ascentium specifically reserves any and all rights that Ascentium may have to object at the trial in this action, or trial of the causes of action alleged in this action in any other forum, to the introduction of any material or information that Ascentium produces or reveals in the Responses.

Ascentium responds to the Interrogatories based upon Ascentium's present knowledge or recollection of the information requested in the Interrogatories. Ascentium made a diligent search and a reasonable inquiry with respect to Ascentium's efforts to answer the Interrogatories. Ascentium reserves the right to supplement or amend these Responses in any way prior to trial in this action, or trial of the causes of action alleged in this action in any other forum, as additional facts underlying this action become known to Ascentium during investigation of the facts, which Ascentium has not yet completed.

Ascentium is continuing its investigation and analyses of the facts and law related to this case, and has not yet concluded its investigation, discovery and preparation for trial. Therefore, these Responses are given without prejudice to Ascentium's right to produce or use any subsequently discovered facts or writings or to add to, modify or otherwise change or amend the Responses herein. These Responses are based on writings and information currently available to Ascentium. The information is true and correct to the best of Ascentium's knowledge, as of this date, and is subject to correction, and supplementation for any inadvertent errors, mistakes, or omissions. electronic search. Ascentium has only conducted some

5841031v1 | 100287-0289

3

REGIONS BANK'S SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12 AND OBJECTIONS TO WASHWORLD, INC.'S FIRST SET OF INTERROGATORIES

reasonable searches as Ascentium believes is proper.

This preliminary statement and all General Objections and Reservation of Rights are hereby incorporated into each of the following Responses and referred to below as the General Objections.

**RESPONSES**

**SPECIAL INTERROGATORY NO. 1:**

Set forth all details related to why ASCENTIUM did not require CAR WASH MANAGEMENT to complete a new Delivery and Acceptance Certificate after CAR WASH MANAGEMENT switched vendors from AVW to WASHWORLD.

**RESPONSE TO SPECIAL INTERROGATORY NO. 1:**

The Preliminary Objections and General Objections to the extent necessary are incorporated by reference as if set forth in full (collectively "the Objections"). Without waiving any such Objections, Ascentium responds to the Interrogatory. Because it was not necessary. CAR WASH MANAGEMENT ("CWM") had executed the Commencement Agreement which authorized Ascentium to pay the supplier whether the Equipment had been delivered or not therefore eliminating the need for the Delivery and Acceptance Certificate.

**SPECIAL INTERROGATORY NO. 2:**

IDENTIFY the dates on which ASCENTIUM first provided WASHWORLD with documents related to CAR WASH MANAGEMENT'S EQUIPMENT FINANCING AGREEMENT, including, but not limited to, the order form identified in Paragraph 13 of the Complaint and the EQUIPMENT FINANCING AGREEMENT.

**RESPONSE TO SPECIAL INTERROGATORY NO. 2:**

The Objections are incorporated herein by this reference. Ascentium further objects to this Interrogatory on the grounds that the term documents is vague, ambiguous and uncertain. Without waiving the Objections, Ascentium believes

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

5841031v1 | 100287-0289                    4

REGIONS BANK'S SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12 AND OBJECTIONS TO
WASHWORLD, INC.'S FIRST SET OF INTERROGATORIES

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

that the date it supplied any documents other than the documents regarding the transfer or payment of money to WASHWORLD which occurred on March 12, 2024, was on or about May 23, 2024.

**SPECIAL INTERROGATORY NO. 3:**

Set forth all details related to whether ASCENTIUM verified with WASHWORLD before March 11, 2024 that CAR WASH MANAGEMENT placed the order that identified in the EQUIPMENT FINANCING AGREEMENT.

**RESPONSE TO SPECIAL INTERROGATORY NO. 3:**

The Objections are incorporated herein by this reference. Ascentium objects to this Interrogatory because it is vague, ambiguous and uncertain as to the term "verified." Further, given the relationship between CWM and WASHWORLD being that WASHWORLD is a distributor and may very well be an agent of WASHWORLD and if f CWM is an agent of WASHWORLD then it would have been on or about February 28, 2024, when the Order was transmitted to Ascentium by CWM.  If CWM is not the agent of WASHWORLD then it would have been during a telephone conversation between Pete Matheny of Ascentium and Jim Koch of WASHWORLD on May 23, 2024, and then on May 24, 2024. Ascentium did not learn that WASHWORLD did not supply equipment set forth in the Order to CWM or West Covina Car Wash until the communications with Mr. Koch.

**SPECIAL INTERROGATORY NO. 4:**

Set forth all details related to ASCENTIUM's underwriting and approval of the EQUIPMENT FINANCING AGREEMENT, including the identities of the ASCENTIUM employees by name and title who were involved with the transaction.

**RESPONSE TO SPECIAL INTERROGATORY NO. 4:**

The Objections are incorporated by reference as if set forth in full.

5841031v1 | 100287-0289

5

REGIONS BANK'S SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12 AND OBJECTIONS TO
WASHWORLD, INC.'S FIRST SET OF INTERROGATORIES

Ascentium objects to this Interrogatory on the grounds that it is vague, ambiguous, uncertain and overbroad. Further, the interrogatory is compound asking more than one question. Without waiving the Objections made herein, Ascentium went through its normal process in approving transactions except that both WASHWORLD, the supplier of the equipment, and CWM were known suppliers to Ascentium and therefore there was no reason to perform increased due diligence as to WASHWORLD qualifying as a supplier of the equipment. Ascentium will produce all such documents obtained and generated during the underwriting and approval process in connection with the production of documents concurrently herewith. Notwithstanding the foregoing, Ascentium obtained Operating Agreements and Real Estate Lease information from both West Covina Car Wash and CWM, ran credit checks on Jose Rene Ortiz ("Ortiz") the guarantor. Ascentium also spoke with Andrew Williams ("Williams") the CEO of CWM regarding these transactions. The transaction was initially submitted for West Covina Car Wash as the borrower but it did not have sufficient time in business to qualify as a borrower but did become a Guarantor in connection with this CWM transaction.  The transaction also changed when the supplier of the equipment changed from AVM Equipment Company ("AVM') to Washworld. Further, the amount of the loan increased when the equipment was to be acquired from Washworld and all such information is in the documents either being produced concurrently herewith or a short time thereafter.

**SPECIAL INTERROGATORY NO. 5:**

Set forth all details related to the change from AVW to WASHWORLD in the EQUIPMENT FINANCING AGREEMENT, including the identities of the ASCENTIUM employees by name and title who approved the change.

**RESPONSE TO SPECIAL INTERROGATORY NO. 5:**

The Objections are incorporated by reference. Further, Ascentium objects to this Interrogatory as being vague, ambiguous, uncertain and compound. Without

waiving the objections, Ascentium was advised by Williams that it would take too much time to have all of the equipment delivered, installed and operational from AVW and therefore CWM changed its supplier to Washworld which would immediately deliver the necessary equipment and the amount of the loan also increased. This increase was documented by an Addendum to the Equipment Finance Agreement. Since Washworld was a known supplier with Ascentium being a Tier 1 supplier the change created no issue for Ascentium. The employees involved were Pete Matheny, Vice President, Gary Houchins, Vice President and Steven Shabazian, Sales Manager, who are all employees of Ascentium.

**SPECIAL INTERROGATORY NO. 6:**

State all facts and details related to ASCENTIUM's March 2024 payment to WASHWORLD, including the identity of the ASCENTIUM employee(s) who authorized and sent the payment (by name and title), the identity of the ASCENTIUM employee(s) who sent the payment notification, the amount and date of the payment, and the method of payment.

**RESPONSE TO SPECIAL INTERROGATORY NO. 6:**

The Objections are incorporated herein by this reference. Further, Ascentium objects to this Interrogatory because it is compound. Without waiving the objections, Maria Negri initiated the Payment but the payment was sent by the bank. The amount and date of payment are on the Payment Notification which is produced in the Response to the Production of Documents. Notwithstanding the foregoing, the amount was $309,054.80 sent on March 11, 2024, by ACH.

**SPECIAL INTERROGATORY NO. 7:**

State all facts related to ASCENTIUM's February 2023 request that WASHWORLD submit the FUNDING INSTRUCTIONS, including the identity of the ASCENTIUM employee(s) who requested and reviewed the document, why it was requested, and the order or financing agreement, if any, that prompted the request.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**RESPONSE TO SPECIAL INTERROGATORY NO. 7:**

The Objections are incorporated by reference. Further, Ascentium objects to this Interrogatory since it is compound and the term "identity" is vague, ambiguous and uncertain. Without waiving the objections, The FUNDING INSTRUCTION form is required to be updated every 6 months by the supplier. Pete Matheny is the person who requested it. Based on a diligent search and inquiry it appears that a transaction involving Chino Valley was the last time that the request had been made to Washworld to execute the FUNDING INSTRUCTIONS. Discovery is continuing as to whether there was any other specific transaction that prompted sending out the FUNDING INSTRUCTION as opposed to just being a normal 6 month expiration where Ascentium requires a new FUNDING INSTRUCTION signed to update the FUNDING INSTRUCTION and if there was a specific transaction this Interrogatory will be amended and supplemented.

**SPECIAL INTERROGATORY NO. 8:**

State all facts related to ASCENTIUM's discovery of the fraud alleged in paragraphs 19-25 of the Complaint, including, but not limited to, the date on which the fraud was discovered, how the fraud was discovered, and the date on which ASCENTIUM deemed the payment "mistaken."

**RESPONSE TO SPECIAL INTERROGATORY NO. 8:**

The Objections are incorporated by reference. Further, Ascentium objects on the grounds that the Interrogatory is compound. Since Ascentium believes that most interrogatories are compound resulting in more than 25 interrogatories being asked exceeding the limit of Interrogatories to be propounded without Court Order. This objection will be part of every interrogatory from this point forward ("the Compound Objection"). Without waiving any objections, CWM did not make the payment due in May 2024, when it was due and as part of Ascentium trying to collect money and since CWM is a distributor of Washworld, Ascentium

REGIONS BANK'S SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12 AND OBJECTIONS TO
WASHWORLD, INC.'S FIRST SET OF INTERROGATORIES

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

contacted Washworld to find out the status of this transaction with Washworld. On May 23, 2024, Pete Matheny of Ascentium made contact with Jim Koch of Washworld and sent the Washworld invoice and the Payment Notification to Mr. Koch. Josh Theyel of Washworld was also involved in the communications as was Michael Zavaro of Ascentium who was copied with the communications. On May 24, 2024, Mr. Koch responded and advised Mr. Matheny that there was no order or equipment and that this money was used for a different order with Conserv Fuels to pay its outstanding invoice in the sum of $132,509.39 and then the rest of the money $176,552.71 was returned to CWM. Ascentium has now learned that Washworld has characterized that $176,552.71 payment as some sort of commission but Ascentium does not know why. However, Ascentium learned of Washworld's distribution of the money pursuant to a call Mr. Koch stated to Matheny of a telephone call Mr. Koch had with Williams and Washworld was allegedly following Williams' instructions for disbursement of the $309,054.80. Thus, the fraud was discovered during the communications with Washworld.

**SPECIAL INTERROGATORY NO. 9:**

State all facts that support or refute ASCENTIUM's allegation in paragraph 20 of the COMPLAINT that WASHWORLD "knew" or "had reason to know and/or should have known" of CAR WASH MANAGEMENT's, WILLIAMS', and ORTIZ's fraud.

**RESPONSE TO SPECIAL INTERROGATORY NO. 9:**

The Objections are incorporated by reference as if set forth in full.. Ascentium objects based on the Compound Objection. Ascentium also objects to the extent that it is seeking legal conclusions and also work product privileged communications. Without waiving all objections, when Washworld received the payment of $309,054.80 rather than contacting Ascentium as required in the Funding Instructions to ask why this sum was being sent to Washworld by Ascentium since Washworld contends it was not tied to any specific invoice,

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

instead it called Williams to ask why this money was being received and never communicated with Ascentium When Williams told Washworld that part of it was for Conserv Fuels and the rest should be paid to CWM, that should have triggered the fact that Ascentium did not pay money to Washworld so Washworld would give it to CWM and other transactions because Ascentium could have paid CWM directly if the $176,552.71 was to be paid by Washworld for  other equipment and not Washworld equipment, and it also should have alerted Washworld that something was not right with Williams' explanation but at no time did Washworld contact Ascentium as required in the Funding Instructions to ask why this money was paid. Moreover, pursuant to the FUNDING INSTRUCTIONS, this money advanced was for a specific transaction and if Washworld did not know what transaction the money was paid for then  Washworld should have asked for the order form or equipment list from Ascentium and failed to do so. Had it simply made one call or sent one email to Ascentium when the money was received then no one would have been damaged by the fraud and conduct of Williams, Ortiz and Washworld.

**SPECIAL INTERROGATORY NO. 10:**

State all facts that support or refute ASCENTIUM's allegation in Paragraph 21 of the Complaint that WASHWORLD was required to contact ASCENTIUM regarding the March 11, 2024 payment, including identifying the specific language in the Funding Instructions at Exhibit 4 of the Complaint that required WASHWORLD to do so.

**RESPONSE TO SPECIAL INTERROGATORY NO. 10:**

The Objections are incorporated herein by this reference. Further, Ascentium objects based on the Compound Objection and also because of the legal conclusions and work product privileges with respect to disclsoure of information sought by this Interrogatory. Without waiving the objections, the FUNDING INSTRUCTIONS speaks for itself and are produced in the production

of documents.

## SPECIAL INTERROGATORY NO. 11:

Identify all representations that CAR WASH MANAGEMENT, ORTIZ, and WILLIAMS allegedly made to ASCENTIUM to induce ASCENTIUM to make a payment to WASHWORLD, including each statement, who made the statement, the date on which each statement was made, the manner in which each statement was made (email, phone, in-person, etc.), to whom each statement was made, and the identities of any other persons present during each statement.

## RESPONSE TO SPECIAL INTERROGATORY NO. 11:

The Objections are incorporated by reference. Further, Ascentium objects based on the Compound Objection. This Interrogatory seeks many interrogatories at the same time which  exceed the 25 interrogatory limit. Further, this interrogatory has in part already been asked and answered in prior interrogatories. Ascentium is concurrently producing all written communications that are relevant and not privileged  in response to the Request for Production of Documents which contain such information. Further, this Interrogatory seeks privileged and legal information which will not be responded to. However, in summary, Ortiz signed a Delivery and Acceptance Receipt stating equipment had been received which was false; Ortiz also verbally advised Ascentium that the equipment had been received; Williams falsely advised Ascentium both orally and in writing that the equipment would not be acquired from AVW because it could not be timely delivered and the Order increased the amount due for the equipment but instead from Washworld which was false; after not receiving any equipment Williams and Ortiz both covered up the fraud by having payments made on the loan for some time before defaulting. To the extent that CWM is the agent of Washworld in this transaction such representations would then be attributed to Washworld; and the omission by Washworld in contacting Ascentium once it received the money and then sending it to Conserv Fuels and to CWM as Washworld represented to

Frandzel Robins Bloom & Csato, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, California 90017-2427
(323) 852-1000

5841031v1 | 100287-0289

11

Ascentium becomes a misrepresentation by omission as well.

**SPECIAL INTERROGATORY NO. 12:**

Set forth all facts that support or refute ASCENTIUM's allegation in Paragraph 47 of the Complaint that CAR WASH MANAGEMENT, WILLIAMS, and ORTIZ specifically intended to induce ASCENTIUM to make a payment to WASHWORLD, not AVW.

**RESPONSE TO SPECIAL INTERROGATORY NO. 12:**

The Objections are incorporated by reference. Further, Ascentium objects based on the Compound Objection. Further, to the extent that this interrogatory seeks a legal conclusion and subject to work product privilege it is subject to objection. Additionally, and as with other interrogatories, it appears by asking Ascentium to refute its own contentions is improper and seeks impermissible attorney client and work product privileged information. In addition, this interrogatory has already been partially asked in prior interrogatories.  Without waiving any objections, Ascentium asserts that it is pretty obvious that the conduct by all of the Defendants shows an intent to induce Ascentium for making a loan on equipment that did not exist and was never delivered to CWM or West Covina Car Wash and then CWM and Washworld ended up with the money for equipment never delivered to either CWM or West Covina Car Wash.

**SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 12**

This Supplemental Responses is in addition to the Response to Special Interrogatory No. 12 above. In addition, attached to this Supplemental Response are copies of the documents which Ascentium prepared when it orally verified with Defendant Ortiz that the equipment which was first delivered by AVW and then later delivered by Washworld to CWM was delivered, received and operational as Exhibits "1" and "2".

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

5841031v1 | 100287-0289

12

REGIONS BANK'S SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12 AND OBJECTIONS TO WASHWORLD, INC.'S FIRST SET OF INTERROGATORIES

**SPECIAL INTERROGATORY NO. 13:**

Set forth all conditions and obligations that ASCENTIUM was required to perform under the FUNDING INSTRUCTIONS, including the specific language used in the FUNDING INSTRUCTIONS that identifies those conditions and obligations.

**RESPONSE TO SPECIAL INTERROGATORY NO. 13:**

The Objections are incorporated herein by reference. Further, the Compound Objection is incorporated by reference. Further, the FUNDING INSTRUCTIONS speak for themselves as to any conditions. Ascentium also objects based on asking of legal conclusions and attorney client and/or work product privileged information. Without waiving any objections, the FUNDING INSTRUCTIONS are again produced concurrently with the response to the production of documents..

**SPECIAL INTERROGATORY NO. 14:**

Set forth all facts that support or refute that allegation in Paragraph 55 of the Complaint that WASHWORLD "retained the Mistaken Payment in bad faith and with reason to know that it was mistaken."

**RESPONSE TO SPECIAL INTERROGATORY NO. 14:**

The Objections are incorporated by reference. Further, Ascentium objects based on the Compound Objection. In addition, Ascentium is not going to set forth an answer which refutes its allegations in Paragraph 55 and it appears that the interrogatory seeks a legal conclusion and attorney client and/or work product privileged information. Finally, this interrogatory once again has been asked and answered in other interrogatories.

**SPECIAL INTERROGATORY NO. 15:**

Describe in detail all facts related to any DUE DILIGENCE that YOU performed related to CAR WASH MANAGEMENT's EQUIPMENT FINANCING AGREEMENT, including, but not limited to any verification of

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

CAR WASH MANAGEMENT's financial health, liabilities, and ownership structure.

**RESPONSE TO SPECIAL INTERROGATORY NO. 15:**

The Objections are incorporated by reference. In addition, the Compound Objection is incorporated by reference as if set forth in full. Further, Ascentium objects on the grounds that this interrogatory is irrelevant and does not lead to the discovery of admissible evidence. Ascentium also objects as to the violation of the financial privacy of third parties. Ascentium also objects because the interrogatory is vague, ambiguous and uncertain because Ascentium did not perform credit on an Equipment Finance Agreement so technically the answer to this interrogatory as written is none. Without waiving any objections, Ascentium will produce such documents in connection with its Response to the Request for Production of Documents unless otherwise the subject of an objection.

DATED:  February 9, 2026                  FRANDZEL ROBINS BLOOM & CSATO, L.C.

By: _____
ANDREW K. ALPER
Attorneys for Plaintiff and Counter-
Defendant Regions Bank, an Alabama State
Bank dba Ascentium Capital

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

# EXHIBIT 1

**Verbal Verification History - App # 2763169**

## Verbal Verification (Completed)

Date: Jan 10 2024 1:06PM

Verbal performed by: Aminah Ayers

Comments: Verbal Completed

### Individual Contacted

Signor, **JOSE ORTIZ**

(626) 413 - 0842 (CELL)

### Contact Information Questions/Responses

Is your Federal Tax ID Number 833696052? **Yes**

Is the Equipment address 310 S VINCENT AVE, WEST COVINA, CA 91790-2935? **Yes**

Is the BillTo address 310 S VINCENT AVE, WEST COVINA, CA 91790-2935? **Yes**

### Funding Information Question/Responses

Do you authorize Ascentium Captial LLC to release disbursement to: **Yes**

$309,054.80 | AVW EQUIPMENT COMPANY, INC.

Do you authorize Ascentium Capital LLC to pay your equipment suppliers and start your agreement? **Yes**

Were you able to complete all VSR - Verbal Misc special instructions? **Yes**

### Phone Recording Links

ASC00557

# EXHIBIT 2

## Verbal Verification (Completed)

Date: Mar 11 2024 1:45PM

Verbal performed by: Ashley Oneal

Comments: verbal completed

### Individual Contacted

Signor, **JOSE ORTIZ**

(626) 413 - 0842 (CELL)

### Contact Information Questions/Responses

Is your Federal Tax ID Number 833696052? **Yes**

Is the Equipment address 310 S VINCENT AVE, WEST COVINA, CA 91790-2935? **Yes**

Is the BillTo address 310 S VINCENT AVE, WEST COVINA, CA 91790-2935? **Yes**

### Funding Information Question/Responses

Do you authorize Ascentium Captial LLC to release disbursement to: **Yes**

$309,054.80 | Wash World Inc

Were you able to complete all VSR - Verbal Misc special instructions? **Yes**

### Phone Recording Links

ASC00558

## VERIFICATION

I have read the foregoing **PLAINTIFF REGIONS BANK'S SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12 AND OBJECTIONS TO WASHWORLD, INC.'S FIRST SET OF INTERROGATORIES** and know its contents.

☐ I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☒ I am Vice President and Asset Manager of REGIONS BANK, an Alabama State Bank dba ASCENTIUM CAPITAL, a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

> ☒ I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

> ☐ The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐ I am one of the attorneys for REGIONS BANK, a party to this action. Such party is absent from the county where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February  9 , 2026, at Kingwood, Texas

Jerry Noon
Print Name of Signatory

Signature

REGIONS BANK'S SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12 AND OBJECTIONS TO WASHWORLD, INC.'S FIRST SET OF INTERROGATORIES

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

## PROOF OF SERVICE

### Regions Bank v. Car Wash Management, LLC, etc., et al.
### Case No. 25-cv-00359-CAS-KS

I, the undersigned, declare and certify as follows:

I am over the age of eighteen years, not a party to the within action and employed in the County of Los Angeles, State of California. I am employed in the office of Frandzel Robins Bloom & Csato, L.C., members of the Bar of the above-entitled Court, and I made the service referred to below at their direction. My business address is 1000 Wilshire Boulevard, Nineteenth Floor, Los Angeles, CA 90017-2427.

On January 10, 2026, I served true copy(ies) of the **PLAINTIFF REGIONS BANK'S SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12 AND OBJECTIONS TO WASHWORLD, INC.'S FIRST SET OF INTERROGATORIES**, the original(s) of which is(are) affixed hereto. to the party(ies) on the attached service list.

### SEE ATTACHED SERVICE LIST

**BY MAIL:** I placed the envelope for collection and mailing at Los Angeles, California. The envelope was mailed with postage fully prepaid via First Class Mail. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused said document(s) to be transmitted by electronic mail. This service may be based on a court order, Code of Civil Procedure 1010.6, or an agreement among the parties to accept service by email. The name(s) and e-mail addresses of the person(s) served are set forth in the above service list. The document(s) were transmitted by electronic transmission and without error from the following email address: rsantamaria@frandzel.com.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on January 10, 2026, at Los Angeles, California.

_____
Rebecca Santamaria

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

5841031v1 | 100287-0289

1

REGIONS BANK'S SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12 AND OBJECTIONS TO WASHWORLD, INC.'S FIRST SET OF INTERROGATORIES

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**SERVICE LIST**
**Regions Bank v. Car Wash Management, LLC, etc., et al.**
**Case No. 25-cv-00359-CAS-KS**

| | |
|---|---|
| Michael D. Gannon (pro hac vice)<br>Katharine H. Walton (pro hac vice)<br>BakerHostetler<br>One North Wacker Drive, Suite 3700<br>Chicago, IL 60606-2859 | Tel:   312-416-8187<br>Email:     mgannon@bakerlaw.com<br>kwalton@bakerlaw.com<br><br>Attorney for Defendant Washworld, Inc. |
| Xitlaly Estrada<br>Ava Clayool<br>Baker & Hostetler LLP<br>1900 Avenue of the Stars, Suite 2700<br>Los Angeles, CA 90067-4301 | Tel:   310-442-8878<br>Email:     xestrada@bakerlaw.com<br>aclaypool@bakerlaw.com<br><br>Attorney for Defendant Washworld, Inc. |
| Lisa Mitts Patrick, Esq.<br>The Law Office Of Lisa Mitts Patrick<br>122 E. Amerige Ave., Suite 313<br>Fullerton, CA 92832 | Tel: (714) 990- 3693<br>Fax: (657) 234 - 0012<br>Email:     lolmp2021@gmail.com<br><br>Attorneys for Defendant and Cross-Complainant Jose Rene Ortiz, aka Jose R. Ortiz, aka Jose Ortiz, an individual |

5841031v1 | 100287-0289

2

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE AFFIRMATIVE DEFENSES