Xitlaly Estrada (SBN 333403)
Ava Claypool (SBN 327059)
**Baker & Hostetler LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone:  310-979-8430
Email:     *xestrada@bakerlaw.com*
           *aclaypool@bakerlaw.com*

Michael D. Gannon (*pro hac vice*)
Katharine H. Walton (*pro hac vice*)
**Baker & Hostetler LLP**
One North Wacker Drive, Suite 3700
Chicago, IL 60606
Telephone:  312-416-6200
Email:     *mgannon@bakerlaw.com*
           *kwalton@bakerlaw.com*

*Attorney for*
WASHWORLD, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

<table>
<tr><td>

REGIONS BANK, dba ASCENTIUM CAPITAL,

    Plaintiff,

    v.

CAR WASH MANAGEMENT, LLC, CAR WASH MANAGEMENT, LLC, WEST COVINA CAR WASH LLC, JOSE RENE ORTIZ, ANDREW PAUL WILLIAMS, WASHWORLD, INC., DOES 1-100, inclusive,

    Defendants.

---

JOSE RENE ORTIZ,

    Cross Complainant,

    v.

ANDREW PAUL WILLIAMS, CAR WASH MANAGEMENT, LLC, CAR WASH MANAGEMENT, LLC, WASHWORLD, INC., and DOES 1 to 35, inclusive,

    Cross Defendants.

</td><td>

**DEFENDANT WASHWORLD, INC.'S MOTION TO DISMISS ANDREW P. WILLIAMS'S FIRST AMENDED COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT (DKT. 186)**

**(1) NOTICE OF MOTION**

**(2) MEMORANDUM OF POINTS AND AUTHORITIES**

**(3) DECLARATION**

**(4) PROPOSED ORDER**

DATE:    July 27, 2026
TIME:    10:00 AM
CTRM:    8D

</td></tr>
</table>

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

WASHWORLD, INC.,

   Counter Plaintiff,

 v.

REGIONS BANK, D/B/A ASCENTIUM CAPITAL,

   Counter Defendant.

WASHWORLD, INC.,

   Cross Claimant,

 v.

CAR WASH MANAGEMENT, LLC,

   Cross Defendant.

ANDREW PAUL WILLIAMS,

   Counter Claimant, Cross-Claimant, and Third-Party Plaintiff,

 v.

REGIONS BANK dba ASCENTIUM CAPITAL, JOSE RENE ORTIZ, MARIA L. ORTIZ, THE ORTIZ FAMILY TRUST OF 2024, WASHWORLD, INC., PETER MATHENY, ROES 1-50.

   Counter Defendants, Cross-Defendants, and Third-Party Defendants.

2

**TO THE HONORABLE COURT, AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on July 27, 2026 at 10:00 A.M., or as soon thereafter as counsel may be heard, in Courtroom 8D of the United States Courthouse, located at United States Courthouse, 350 W. First Street, Los Angeles, CA 90012, Defendant Washworld, Inc. ("Washworld") will and hereby does move (the "Motion") for an order dismissing Andrew Williams' ("Williams") First Amended Counterclaim, Crossclaim, and Third-Party Complaint. (ECF No. 186.) This Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 17 Williams lacks standing to assert the claims at issue, has failed to prosecute them in the name of the real party in interest, and fails to state a claim upon which relief can be granted.

Washworld bases its Motion on this Notice, the accompanying Memorandum of Points and Authorities, and Proposed Order, the pleadings, papers and records on file in this action, and such oral argument as may be presented at the time of the hearing.

Dated:  June 24, 2026

**BAKER & HOSTETLER LLP**

By:  */s/ Katharine Walton*
Katharine Walton

*Attorneys for Defendant*
WASHWORLD, INC.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..............................................................................................1

II. WILLIAMS'S CLAIMS SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(B)(1) AND 17 BECAUSE WILLIAMS DOES NOT HOLD THE CLAIMS ...................................................................................3

III. WILLIAMS'S CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER 12(B)(6).....................................................4

IV. THE AIDING AND ABETTING BREACH OF FIDUCIARY DUTY CLAIM SHOULD BE DISMISSED.....................................................5

   A. RELEVANT ALLEGATIONS ........................................................5

   B. ELEMENTS OF A CLAIM FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY ..................................................6

   C. THE CLAIM FAILS BECAUSE THE ALLEGED SUBSTANTIAL ASSISTANCE PREDATED THE ACTUAL KNOWLEDGE............................7

   D. WILLIAMS AFFIRMATIVELY ALLEGES WASHWORLD ACTED IN GOOD FAITH, WHICH UNDERCUTS KNOWING ASSISTANCE..................8

   E. KNOWLEDGE OF TRANSACTION FACTS IS NOT ACTUAL KNOWLEDGE OF A FIDUCIARY BREACH ................................9

   F. LATER ALLEGED CONDUCT DOES NOT CURE THE DEFECT..................10

   G. THE CLAIMED INJURIES ARE DERIVATIVE, ESTATE-OWNED, OR TOO ATTENUATED TO SUPPORT WILLIAMS'S INDIVIDUAL CLAIMS......10

V. THE CLAIM OF INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE SHOULD BE DISMISSED .........................................................................................11

   A. RELEVANT ALLEGATIONS ......................................................11

   B. ELEMENTS OF INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE ........................................12

   C. THE CLAIM OF INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE SHOULD BE DISMISSED BECAUSE

Baker & Hostetler LLP
ATTORNEYS AT LAW
LOS ANGELES

WILLIAMS DOES NOT PLAUSIBLY PLEAD AN INDEPENDENTLY WRONGFUL ACT BY WASHWORLD ......................................................13

1.    The Alleged Termination of CWM's Distributor Relationship Does Not, Without More, Plead Independent Wrongfulness ...................................................................14

2.    The Alleged Direct Dealing With H&S Energy and Conserv Fuels Is Not Independently Wrongful as Pleaded ......15

3.    The Alleged Redirecting of Website and Trade-Show Leads Is Not Independently Wrongful As Pleaded .................16

4.    The Aiding and Abetting Theory Is Conclusory Because Williams Did Not Plead Washworld's Actual Knowledge of Ortiz's Breach of Fiduciary Duty or That Washworld Knowingly Assisted With the Breach.......................................16

5.    The Claim Also Fails Because The Alleged Relationships And Injuries Belong to CWM, not Williams Individually .......17

6.    Williams Does Not Adequately Plead a Specific Prospective Economic Relationship With A Probability of Future Benefit to Him Personally ............................................18

VI.    WILLIAMS FAILED TO PLEAD A VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200 ......................19

A.    CALIFORNIA'S UNFAIR COMPETITION LAW .........................................19

B.    THE UCL CLAIM RESTS ON CONCLUSORY ALLEGATIONS, NOT PLAUSIBLE FACTS ...............................................................................19

C.    WILLIAMS DOES NOT PLEAD A DIRECT LOSS OF MONEY OR PROPERTY .................................................................................................20

D.    THE CLAIM SEEKS NONRESTITUTIONARY DAMAGES DISGUISED AS UCL RELIEF .........................................................................................20

E.    THE "UNLAWFUL" PRONG FAILS BECAUSE THE PREDICATE VIOLATIONS ARE NOT PLAUSIBLY PLEADED ......................................21

F.    THE "UNFAIR" AND "FRAUDULENT" PRONGS ARE ALSO CONCLUSORY ..............................................................................................21

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

G.    THE REQUEST FOR INJUNCTIVE RELIEF IS UNSUPPORTED ...................22

VII.   CONCLUSION ...............................................................................................22

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Master Lease LLC v. IdantaPartners, Ltd.*,
225 Cal.App.4th 1451 (2014) ..............................................................................6, 10

*Arabian v. Organic Candy Factory*,
No. 217CV05410ODWPLA, 2018 WL 1406608 (C.D. Cal. Mar.
19, 2018) ...................................................................................................................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..............................................................................................4, 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................................4

*Brown v. Department of Water & Power*,
2024 WL 5466666 (C.D. Cal. 2024) .........................................................................3

*Casey v. U.S. Bank Nat'l Ass'n*,
127 Cal.App.4th 1138 (2005) ............................................................................6, 7, 9

*Cocoa AJ Holdings, LLC v. Schneider*,
115 Cal. App. 5th 980 (2025) ..................................................................................12

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) .....................................................................................5

*Drink Tank Ventures, LLC v. Real Soda in Real Bottles, Ltd.*,
286 Cal. Rptr. 3d 333 (Ct. App. 2d Dist. 2021) .....................................................14

*Farm Credit Services v. American State Bank*,
339 F.3d 764 (8th Cir. 2003) .....................................................................................4

*Fox Paine & Co., LLC v. Twin City Fire Ins. Co.*,
104 Cal. App. 5th 1034 (2024) ..................................................................................6

*Gainesville Investor, LLC v. Astroenergy Solar, Inc.*,
2022 WL 1422810 (C.D. Cal. 2022) .....................................................................3, 20

*Ixchel Pharma, LLC v. Biogen, Inc.*,
470 P.3d 571 (Cal. 2020)....................................................................................12, 13

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Kenney v. Wells Fargo Bank, N.A.*,
791 F. Supp. 3d 1163 (C.D. Cal. 2025) ................................................................. 3

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) .......................................................................... 19

*Korea Supply Co. v. Lockheed Martin Corp.*,
63 P.3d 937 (Cal. 2003) ........................................................................ 12

*Lee v. Luxottica Retail N. Am., Inc.*,
65 Cal. App. 5th 793 (2021) ............................................................. 19

*Nasrawi v. BuckConsultants LLC*,
231 Cal.App.4th 328 (2014) .......................................................... 6, 9

*Optima Tax Relief LLC v. Channel Clarity, Inc.*,
No. SACV141902JLSJCGX, 2015 WL 12765016 (C.D. Cal. Aug. 26, 2015) ............................................................................. 21

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
946 F. Supp. 2d 957 (N.D. Cal. 2013), *aff'd,* 609 F. App'x 497 (9th Cir. 2015) ........................................................................ 18

*Shroyer v. New Cingular Wireless Servs., Inc.*,
622 F.3d 1035 (9th Cir. 2010) ........................................................... 7

*Solarmore Mgmt. Servs., Inc. v. Bankruptcy Estate of DC Solar Sols.*,
2021 WL 3077470 (E.D. Cal. 2021) ................................................. 3

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
845 A.2d 1031 (Del. 2004) .............................................................. 3

*Vacchiano v. Wessell*,
2014 WL 1225301 (C.D. Cal. 2014) ................................................ 4

*Wazana Bros. Int'l, Inc. v. Int'l Laser Grp., Inc.*,
No. CV 12-1850 PA, 2013 WL 12124386 (C.D. Cal. Mar. 25, 2013) (Anderson, J.) ......................................................................... 4

*Youst v. Longo*,
43 Cal.3d 64 (1987) ........................................................................ 18

**Statutes**

Cal. Bus. & Prof. Code § 17200 (2025) ............................................... 1, 2, 23

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

WASHWORLD'S MP&A I/S/O MOTION TO DISMISS WILLIAMS'S AMENDED COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT
CASE NO.: 2:25-CV-00359-CAS-KS

**Rules**

Fed. R. Civ. P. 8 ...........................................................................................................19, 22

Fed. R. Civ. P. 9(b) ...............................................................................................................22

Fed. R. Civ. P. 12(b)(1)........................................................................................................1, 2

Fed. R. Civ. P. 12(b)(6) ................................................................................................2, 4, 7, 9

Fed. R. Civ. P. 17 ...........................................................................................................1, 2, 3, 4

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

WASHWORLD'S MP&A I/S/O MOTION TO DISMISS WILLIAMS'S AMENDED COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT
CASE NO.: 2:25-CV-00359-CAS-KS

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.      INTRODUCTION

Andrew P. Williams filed a **<u>26-count</u>**, 164-page document covering counterclaims, crossclaims, and third-party complaint, that are best described as a ramble untethered to any coherent legal theory or facts.  He brings three claims against Washworld: (1) aiding and abetting Mr. Ortiz's breach of fiduciary duty, (2) intentional interference with prospective economic advantage, and (3) a violation of California Business and Professions Code Section 17200.  Each must be dismissed both because Williams does not hold the claims and because his pleading does not contain sufficient factual matter to state any claim that is plausible on its face.

As a threshold matter, all three claims fail because the alleged injuries belong to Car Wash Management ("CWM"), not to Williams individually. A member of an LLC cannot assert claims based on injury to the entity, whether framed as lost business, diverted relationships, or diminution in ownership value. Because the alleged harm is to CWM's business operations, customers, and goodwill, the claims must be dismissed under Rules 12(b)(1) and 17 for lack of standing and failure to prosecute in the name of the real party in interest.

As to the first claim, Williams alleges that Defendant Jose Rene Ortiz breached fiduciary duties owed to CWM and to Williams.  The claim against Washworld requires that Washworld had actual **<u>knowledge</u>** of Ortiz's alleged fiduciary breach and that Washworld **<u>knowingly</u>** provided substantial assistance in the breach. Remarkably, Williams's own allegations defeat both elements.

Specifically, the pleading alleges that Washworld acquired actual knowledge only "**<u>no later than 2025</u>**" and only **<u>after</u>** Ascentium funded the loan in March 2024. It also alleges that Washworld acted in good faith during that March 2024 period. Yet Williams relies on conduct that occurred during the March 2024 timeframe as the alleged substantial assistance.  That chronology is fatal: Washworld could not knowingly assist a fiduciary breach before it allegedly knew of the breach.  In other

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1

WASHWORLD'S MP&A I/S/O MOTION TO DISMISS WILLIAMS'S AMENDED COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT
CASE NO.: 2:25-CV-00359-CAS-KS

words, conduct undertaken before actual knowledge cannot be "knowing" substantial assistance.

The aiding and abetting claim fails for other important reasons. In particular, the facts alleged show, at most, knowledge of transaction mechanics—not **actual knowledge** of a fiduciary breach. Moreover, as noted above, Williams pleads that the alleged harms flow from Car Wash Management. But if the injury belongs to Car Wash Management, Williams cannot assert it individually.

As to the second claim, Williams does not plausibly allege that Washworld's own conduct was **independently wrongful under a determinable legal standard**, as required by California law. The claim also is defective because, like the aiding and abetting claim above, the alleged relationships and injuries belong to CWM, not Williams individually.

As to the third claim, Williams asserts an individual claim against Washworld under California's Unfair Competition Law ("UCL"), Business and Professions Code Section 17200, based on alleged diversion of customers, suppliers, sales leads, and business opportunities. But the pleading offers only generalized conclusions. It does not identify any specific diverted customer, supplier, sales lead, transaction, communication, actor, date, or item of money or property taken from Williams and held by Washworld.

This claim also fails because the alleged injuries are either derivative of alleged harm to CWM or are expectancy-based damages, not restitutionary losses recoverable under the UCL. Because Williams has not pleaded facts showing UCL standing, a cognizable UCL remedy, or a plausible unlawful, unfair, or fraudulent business practice, Williams's claim alleging a violation of the UCL should be dismissed.

In sum, Williams's claims for (1) aiding and abetting breach of fiduciary duty, (2) intentional interference with prospective economic advantage, and (3) violation of California Business and Professions Code Section 17200 should be dismissed

2

WASHWORLD'S MP&A I/S/O MOTION TO DISMISS WILLIAMS'S AMENDED COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT
CASE NO.: 2:25-CV-00359-CAS-KS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

under Rules 12(b)(1), 17, and 12(b)(6) for failure to assert claims he owns and for failure to state a claim upon which relief can be granted.

## II. WILLIAMS'S CLAIMS SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(B)(1) AND 17 BECAUSE WILLIAMS DOES NOT HOLD THE CLAIMS

Courts within the Ninth Circuit uniformly hold that a member of an LLC cannot sue for harm to the LLC.[1] Some courts reach this holding based on Article III standing, others based on prudential standing, and others based on Rule 17's requirement that the plaintiff be the real party in interest. Regardless of the courts' rationales, however, the outcome is always the same: dismissal.

For example, in *Brown v. Department of Water & Power*, 2024 WL 5466666, (C.D. Cal. 2024), Judge Wilson dismissed claims brought by an LLC member notwithstanding that "a financial injury to [the LLC] certainly has a negative financial effect on Plaintiff," explaining:

> The members of an LLC generally do not have [Article III] standing to sue on the basis of injuries sustained by the LLC. This is because members of an LLC do not have an ownership interest in property to which the LLC holds title. Accordingly, where the gravamen of the complaint is injury to an LLC's property, the right of action lies with the LLC, not the individual members . . . .

*Id.* *3-4.

Judge Hsu applied similar reasoning in *Kenney v. Wells Fargo Bank, N.A.*, granting a motion to dismiss under Rules 12(b)(1) and 17 because "[c]ourts have rejected individual standing based on reputational fallout or lost business opportunities where the alleged injury flows from harm to a corporate entity." 791 F. Supp. 3d 1163, 1168 (C.D. Cal. 2025); *see also CF Gainesville Investor, LLC v. Astroenergy Solar, Inc.*, 2022 WL 1422810, *4 (C.D. Cal. 2022) ("Even though plaintiff owns 100 percent membership interests . . . members of an LLC lack

---

[1] Since CWM is a Delaware LLC, under *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004), the determinative question is (1) who suffered the alleged harm and (2) who would receive the benefit of any recovery. Here, even if Delaware law applies, both factors point to CWM.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

standing to assert individual claims based on harm to the LLC."); *Solarmore Mgmt. Servs., Inc. v. Bankruptcy Estate of DC Solar Sols.*, 2021 WL 3077470, *3 (E.D. Cal. 2021) ("In general . . . members of an LLC lack prudential standing to assert individual claims based on harm to the … LLC … ."); *Vacchiano v. Wessell*, 2014 WL 1225301, *3-4 (C.D. Cal. 2014) (holding that FRCP 17 and prudential standing requirements preclude an entity's owner from pursuing a claim for funds taken from the entity's account).

The same result follows here for the same reasons. Williams's pleading makes clear that the alleged injuries are to CWM, not to Plaintiff personally: termination of the distributor relationship, redirection of sales leads, and conversion of customers and vendor relationships allegedly resulted in harm to CWM's business operations. (ECF No. 186 ¶¶ 48-56, 111C-111D.) These are quintessential entity-level injuries. Williams cannot manufacture standing through a diminution in the value of his ownership interest, which is legally insufficient to support a direct claim. Simply put, Williams does not hold the claims, and regardless of their validity, all claims should be dismissed on this basis.

## III.    WILLIAMS'S CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER 12(B)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. (emphasis added). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wazana Bros. Int'l, Inc. v. Int'l Laser Grp., Inc.*, No. CV 12-

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1850 PA (PJWX), 2013 WL 12124386, at *2 (C.D. Cal. Mar. 25, 2013) (Anderson, J.) (citing *Farm Credit Services v. American State Bank*, 339 F.3d 764, 767 (8th Cir. 2003)). Conclusory allegations unsupported by factual content do not satisfy Rule 8. Ashcroft v. Iqbal, 556 U.S. 662 (2009). And the Court is not "required to accept as true allegations that contradict exhibits attached to the Complaint . . . ." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

## IV.   THE AIDING AND ABETTING BREACH OF FIDUCIARY DUTY CLAIM SHOULD BE DISMISSED

### A.   RELEVANT ALLEGATIONS

Williams's pleading asserts a Fifteenth Claim for Relief for aiding and abetting breach of fiduciary duty against Washworld. (ECF No. 186 ¶¶ 111F-111L.) The claim is based on Ortiz's alleged fiduciary duties to **CWM** and its members, including Williams, and Ortiz's alleged breaches of those duties through self-dealing, unauthorized diversions, failure to provide books and records, and related conduct. (*Id.*)

As to Washworld, Williams alleges that Washworld acquired actual knowledge of Ortiz's fiduciary duties and breaches **"no later than 2025"** and **after** the Ascentium sent money to Washworld in March 2024. (*Id.* ¶ 111I.) The pleading also alleges that Washworld acted in good faith during that March 2024 funding period:

> Washworld was, at the time of the March 2024 funding and disbursement, unaware of the broader Matheny-architected loan structure and acted in good faith pursuant to Matheny's and the Bank's wire instructions in handling the loan proceeds . . .
>
> ***
>
> Washworld was, at the time of the March 2024 funding and disbursement, unaware of the broader Matheny-architected loan structure and acted in good faith pursuant to Matheny's and the Bank's wire instructions; the routing of funds back to CWM via

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

WASHWORLD'S MP&A I/S/O MOTION TO DISMISS WILLIAMS'S AMENDED COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY
COMPLAINT
CASE NO.: 2:25-CV-00359-CAS-KS

Washworld occurred in accordance with the loan structure that Matheny had originated and managed for the Bank.

***

. . . the March 2024 funding period, during which Washworld acted in good faith as alleged in paragraphs 19 and 41 above . . .

(*Id.* ¶¶ 19, 41, 111I.)

Despite that timing, Williams identifies the March 2024 AVW-to-Washworld vendor substitution and related proceeds flow as key alleged substantial assistance. (*Id.* ¶¶ 37C–37E, 41.) Williams also points to later conduct, including alleged equipment retention and termination of Car Wash Management's distributor relationship, but the pleading does not allege facts showing that those later acts were undertaken with actual knowledge of, or for the purpose of advancing, any identified fiduciary breach by Ortiz rather than reflecting independent commercial decisions.

## B.   ELEMENTS OF A CLAIM FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

To plead aiding and abetting breach of fiduciary duty, Williams must allege facts showing: "(1) a third party's breach of fiduciary duties owed to plaintiff; (2) defendant's actual knowledge of that breach of fiduciary duties; (3) substantial assistance or encouragement by defendant to the third party's breach; and (4) defendant's conduct was a substantial factor in causing harm to plaintiff." *Nasrawi v. BuckConsultants LLC*, 231 Cal.App.4th 328, 343 (2014). "[C]ausation is an essential element of an aiding and abetting claim, i.e., plaintiff must show that the aider and abettor provided assistance that was a substantial factor in causing the harm suffered." *American Master Lease LLC v. IdantaPartners, Ltd.*, 225 Cal.App.4th 1451, 1476 (2014).

"[L]iability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted." *Casey*

6

WASHWORLD'S MP&A I/S/O MOTION TO DISMISS WILLIAMS'S AMENDED COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT
CASE NO.: 2:25-CV-00359-CAS-KS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*v. U.S. Bank Nat'l Ass'n*, 127 Cal.App.4th 1138, 1145 (2005). Allegations that show only knowledge of a transaction—or that require inferential leaps to reach knowledge of wrongdoing—are insufficient as a matter of law. *Fox Paine & Co., LLC v. Twin City Fire Ins. Co.*, 104 Cal. App. 5th 1034, 1059 (2024) ("Moreover, knowledge alone, even specific knowledge, is not enough to state a claim for aiding and abetting. **California law 'necessarily' requires that for aiding and abetting liability to attach, a defendant have made 'a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act**.'") (emphasis added).

### C.    THE CLAIM FAILS BECAUSE THE ALLEGED SUBSTANTIAL ASSISTANCE PREDATED THE ACTUAL KNOWLEDGE

The principal defect in this claim is temporal. Williams alleges that Washworld acquired actual knowledge **"no later than 2025."** (ECF No. 186 ¶ 111I.) But the alleged substantial assistance is anchored to March 2024 conduct, including the AVW-to-Washworld vendor substitution and loan-proceeds flow. (ECF No. 186 ¶¶ 37C–37E, 41.)

That chronology is fatal to the aiding and abetting theory. A defendant cannot knowingly assist a fiduciary breach before it allegedly possesses actual knowledge of that breach. Actual knowledge must exist at the time of the alleged assistance, not be inferred retroactively. *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138 (2005) ("[T]he complaint must allege the defendant's actual knowledge of the specific breach of fiduciary duty for which it seeks to hold the defendant liable.") At most, the pleading alleges Washworld participated in an ordinary commercial transaction before any knowledge is claimed to exist. That is legally insufficient, because ordinary commercial conduct undertaken without contemporaneous knowledge cannot satisfy the "knowing assistance" element as a matter of law. *Id.* Accordingly, the alleged conduct does not plausibly show that Washworld knowingly assisted any fiduciary breach.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Williams therefore pleads himself out of the knowledge element. Where the complaint's own timeline negates contemporaneous knowledge, dismissal is required under Rule 12(b)(6) because the element is not plausibly alleged. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). He cannot rely on the same March 2024 conduct both as pre-knowledge activity and as the basis for liability. Those positions are irreconcilable.

**D.   WILLIAMS AFFIRMATIVELY ALLEGES WASHWORLD ACTED IN GOOD FAITH, WHICH UNDERCUTS KNOWING ASSISTANCE**

This temporal defect is independently confirmed by Williams's own good-faith allegations. The claim states that Washworld acquired knowledge after the March 2024 funding period, during which Washworld "acted in good faith pursuant to [the lender's] instructions." (ECF No. 186 ¶¶ 19, 41.) That allegation directly negates any inference of knowing assistance during the only period in which assistance is alleged.

If Washworld acted in good faith during the March 2024 funding and disbursement period, its conduct during that period cannot plausibly be characterized as knowing assistance in Ortiz's breach of fiduciary duty. Good-faith compliance with lender-directed vendor substitution or payment/refund instructions is not equivalent to awareness of fiduciary misconduct, particularly where the same pleading attributes the transaction structure and instructions to the lender and its employee rather than to Washworld. (ECF No. 186 ¶¶ 25A–25D, 40–41.) The pleaded facts thus identify Washworld as a passive actor following instructions, not a knowing participant. Where the complaint itself assigns decision-making authority to another actor and characterizes Washworld's conduct as good-faith compliance, the knowledge element is necessarily absent.

This is not a factual question; it is a pleading defect. The pleading itself supplies both the relevant chronology and the dispositive characterization of Washworld's conduct. Where a complaint affirmatively alleges good-faith conduct

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

during the only period in which any "assistance" allegedly occurred, it forecloses the required element of knowing participation as a matter of law. The Court may accept well-pleaded facts as true, but it need not—and may not—accept Williams's legal conclusion that those same facts amount to aiding and abetting. Because the pleaded facts negate the mental state required by *Nasrawi*, the claim fails under Rule 12(b)(6).

## E. KNOWLEDGE OF TRANSACTION FACTS IS NOT ACTUAL KNOWLEDGE OF A FIDUCIARY BREACH

Williams's pleading attempts to establish actual knowledge by alleging that Washworld knew or learned about the vendor substitution, Ascentium's funding instructions, the ACH payment, the May 23, 2024 quotation, the refund of loan proceeds, and the course of dealing among CWM, Ortiz, and H&S Energy. (ECF No. 186 ¶ 111I.)

Those allegations do not plausibly show actual knowledge of Ortiz's purported fiduciary breach. They allege, at most, knowledge of transaction mechanics and commercial relationships. Actual knowledge requires awareness that the conduct violates a fiduciary duty—not merely awareness that the conduct occurred after the fact. *Casey*, 127 Cal.App.4th at 1145.

Williams's pleading does not bridge that gap. It does not plausibly allege that Washworld knew the internal fiduciary duties arising from CWM's Operating Agreement, knew that Ortiz was breaching those duties, and then intentionally or knowingly provided assistance to that breach. Nor does it allege facts showing that Washworld understood the legal significance of the transaction or that any particular step in the transaction was improper.

Absent such allegations, the claim rests on impermissible inference stacking—equating a 2025 awareness of facts with awareness of wrongdoing in March 2024. (ECF No. 186 ¶ 111I.)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

WASHWORLD'S MP&A I/S/O MOTION TO DISMISS WILLIAMS'S AMENDED COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT
CASE NO.: 2:25-CV-00359-CAS-KS

## F.    LATER ALLEGED CONDUCT DOES NOT CURE THE DEFECT

Williams also points to later conduct, including alleged retention of equipment and termination of CWM's distributor relationship. But the pleading does not plausibly explain how those later acts assisted Ortiz's fiduciary breach, rather than reflecting separate commercial disputes between Washworld and CWM.

To satisfy aiding-and-abetting liability, the assistance must be tied to the breach itself. The complaint does not allege facts showing that those later actions furthered any fiduciary breach as opposed to reflecting ordinary commercial disputes.

Nor does the complaint plausibly allege causation. The alleged harms—ownership dilution, litigation exposure, reputational injury—are not connected to Washworld's "post-knowledge conduct" with the required "substantial factor" showing. *American Master Lease*, 225 Cal.App.4th at 1476.

## G.    THE CLAIMED INJURIES ARE DERIVATIVE, ESTATE-OWNED, OR TOO ATTENUATED TO SUPPORT WILLIAMS'S INDIVIDUAL CLAIMS

As discussed above, Williams attempts to plead direct individual injury, but the alleged harms largely flow from injury to CWM. Alleged diminution in member value, loss of customers, diversion of business, and reduction in enterprise value are company-level injuries. Williams's loss as a member is derivative of CWM's injury, and such injuries belong to the entity, not the individual member. Williams's attempt to recharacterize those injuries as "direct" does not suffice.

The pleading's bankruptcy reservation does not cure the standing problem. If a claim is derivative of injury to CWM, Williams cannot assert it individually. If a pre-petition claim belongs to the bankruptcy estate, Williams cannot maintain it individually merely by pleading a reservation or alternative characterization.

Finally, the damages theory is too attenuated. The claimed differential between Williams's 60% and 10% member interests, lost income, litigation exposure, defense costs, and reputational harm are not plausibly caused by Washworld's alleged knowing assistance of Ortiz's breach of a fiduciary duty. The pleading does not

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

10

connect those harms to post-knowledge conduct by Washworld with sufficient factual specificity.

## V. THE CLAIM OF INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE SHOULD BE DISMISSED

### A. RELEVANT ALLEGATIONS

Williams asserts the Fourteenth Claim for Relief individually against Washworld for conduct allegedly occurring after his October 4, 2024 bankruptcy petition date. (ECF No. 186 ¶¶ 111J, 111C.) He expressly states that the claim is limited to his individual post-petition injury, while CWM-derivative or estate claims are reserved or asserted elsewhere.

The claim is based on Washworld's alleged commercial conduct in diverting **CWM's** customers, suppliers, and sales leads to Washworld directly and to ProElite, and in converting CWM customers into direct Washworld accounts. (ECF No. 186 ¶¶ 111B–111D.) Williams identifies relationships involving H&S Energy LLC, Conserv Fuels, and website and trade-show leads allegedly generated while CWM acted on Washworld's behalf. (ECF No. 186 ¶ 111B.)

Williams alleges the following acts by Washworld were independently wrongful: (1) terminating CWM's distributor relationship by letter effective on or about October 9, 2025; (2) conditioning continuation of the distributorship on Williams's resolution of matters with Ortiz through Ortiz's counsel; (3) converting CWM's customers H&S Energy LLC and Conserv Fuels into direct Washworld customers; (4) redirecting website and trade-show leads to ProElite and ceasing to route leads to CWM; and (5) aiding and abetting Ortiz's alleged fiduciary breaches. (ECF No. 186 ¶ 111C.)

Williams alleges damages including diminution in the value of his member interest in CWM and loss of individual prospective economic advantage. (ECF No. 186 ¶ 111D.)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## B.     ELEMENTS OF INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

California recognizes a claim for intentional interference with prospective economic advantage where a plaintiff pleads and proves:

1.     The existence of an economic relationship between the plaintiff and a third party "that contains the probability of future economic benefit" to plaintiff;

2.     the defendant's knowledge of the relationship;

3.     intentionally wrongful acts by the defendant designed to disrupt the relationship, or acts undertaken with knowledge that disruption was substantially certain to occur;

4.     actual disruption of the relationship;

5.     economic harm proximately caused by the defendant's conduct; and

*Cocoa AJ Holdings, LLC v. Schneider*, 115 Cal. App. 5th 980, 992 (2025).

The California Supreme Court's decision in *Korea Supply Co. v. Lockheed Martin Corp*., 63 P.3d 937, 940 (Cal. 2003) is the leading authority. *Korea Supply* holds that the defendant's conduct must be wrongful "by some legal measure other than the fact of interference itself." The independently wrongful act must be conduct proscribed by a constitutional, statutory, regulatory, common-law, or other determinable legal standard. *Id.* at 954.

The California Supreme Court reaffirmed the function of the independent-wrongfulness requirement in *Ixchel Pharma, LLC v. Biogen, Inc*., 470 P.3d 571 (Cal. 2020). *Ixchel* explains that the requirement preserves space for legitimate business competition and prevents ordinary competitive conduct from becoming tortious merely because it disrupts another's expected economic advantage. *Id.* at 578-79.

For an economic interference claim, conclusory allegations that a defendant acted "wrongfully" are insufficient unless the pleading identifies facts showing conduct that is wrongful under an independent legal standard.  Importantly, the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

independent-wrongfulness element is not satisfied merely by alleging that the defendant:

- competed for customers;
- diverted business opportunities;
- terminated a commercial relationship; or
- acted with self-interest.

Instead, the plaintiff must plead facts showing that the defendant's own conduct violated an independent legal duty or prohibition. A label such as "retaliation," "coercion," "conversion," "bad faith," or "wrongful interference" is not enough unless the pleading connects that label to a determinable legal standard and facts plausibly satisfying that standard.

## C.   THE CLAIM OF INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE SHOULD BE DISMISSED BECAUSE WILLIAMS DOES NOT PLAUSIBLY PLEAD AN INDEPENDENTLY WRONGFUL ACT BY WASHWORLD

The Fourteenth Claim fails as a matter of law because Williams does not plausibly allege that Washworld engaged in conduct that is independently wrongful under any determinable legal standard. Although Williams labels several acts as "independently wrongful," the alleged conduct consists of terminating a distributorship with CWM, allowing customers to order from Washworld directly, reallocating leads, and declining to continue routing opportunities through CWM. (ECF No. 186 ¶¶ 111C–111D.) Those allegations describe ordinary commercial conduct, not unlawful conduct.

Absent a contractual restriction, statutory prohibition, or other legal duty, a company is free to terminate a distributorship, deal directly with customers, and control how sales leads are allocated. *Cf. Ixchel Pharma, LLC*, 470 P.3d at 580. The complaint does not allege the existence of any exclusivity agreement, non-

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

13

WASHWORLD'S MP&A I/S/O MOTION TO DISMISS WILLIAMS'S AMENDED COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT
CASE NO.: 2:25-CV-00359-CAS-KS

termination provision, or other constraint on Washworld's conduct. (ECF No. 186 ¶¶ 111C–111D.)

The core theory—that Washworld "diverted" customers and leads toward Washworld or ProElite—is not independently wrongful. Competition for customers and control over distribution channels—even if it displaces an intermediary—is not tortious interference unless accomplished through independently unlawful means. *See, e.g.*, *Drink Tank Ventures, LLC v. Real Soda in Real Bottles, Ltd*., 286 Cal. Rptr. 3d 333, 344 (Ct. App. 2d Dist. 2021). The complaint does not plead such unlawful means. Williams alleges no facts showing fraud, defamation, trade secret misappropriation, statutory unfair competition, breach of a legal duty owed by Washworld to Williams, or violation of a specific contractual restriction binding Washworld. (ECF No. 186 ¶ 111C.)

The allegations therefore fail to cross the line from commercial competition into independently wrongful conduct. The claim pleads the legal conclusion that Washworld's conduct was "independently wrongful," but it does not plead the requisite factual allegations to establish Washworld's conduct was independently wrongful.

### 1.     The Alleged Termination of CWM's Distributor Relationship Does Not, Without More, Plead Independent Wrongfulness

Williams alleges that Washworld terminated CWM's distributor relationship "as a result of Car Wash Management, LLC's actions in connection with this lawsuit," and characterizes that termination as retaliation against the assertion of legal rights.  That allegation has three flaws.

First, the relationship allegedly terminated was CWM's distributor relationship, not a relationship with Williams. Williams therefore must explain why Washworld's termination of a relationship with CWM violated a legal duty owed to Williams individually. He cannot.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Second, the pleading does not allege the terms of any distributor agreement that prohibited termination, required cause, imposed a notice period, or otherwise made Washworld's termination unlawful.[2] If the relationship was terminable at will or terminable under the parties' agreement, termination alone is not an independently wrongful act.

Third, labeling the termination as "retaliation" does not identify a determinable legal standard. Retaliation can be unlawful in specific contexts, such as employment, civil rights, whistleblower, or anti-SLAPP settings, but Williams does not identify any statute or common-law rule that prohibited Washworld from ending a commercial distributorship based on allegations of fraud against a distributor. Without that legal predicate, the allegation remains a conclusory label.

**2.      The Alleged Direct Dealing With H&S Energy and Conserv Fuels Is Not Independently Wrongful as Pleaded**

Williams alleges that Washworld converted CWM's customers H&S Energy LLC and Conserv Fuels into direct Washworld customers, bypassing CWM, even though those relationships had allegedly been acquired and paid for by CWM. (ECF No. 186 ¶ 111C(c).)

This theory also does not plausibly plead independent wrongfulness. The pleading does not allege that H&S Energy or Conserv Fuels were contractually prohibited from dealing directly with Washworld, or that either entity had exclusive contracts with CWM.  Nor does it allege that Washworld obtained those customers through fraud, misrepresentation, defamation, misappropriation, breach of a confidentiality agreement, or violation of a non-solicitation covenant. The allegation that CWM "acquired and paid for" customer relationships does not itself create a legal prohibition against Washworld accepting direct orders from those customers. (ECF No. 186 ¶ 111C(c).)

_____

[2] This is not a surprise given that no such contract exists.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

At most, this portion of the claim alleges that Washworld captured business that CWM thought it would receive. That is the alleged interference itself, not an independent wrong.

### 3. The Alleged Redirecting of Website and Trade-Show Leads Is Not Independently Wrongful As Pleaded

Williams further alleges that Washworld redirected website and trade-show leads to ProElite and stopped routing leads to CWM. (ECF No. 186 ¶ 111C(d).)

Again, the pleading does not identify any obligation requiring Washworld to send leads to CWM or any restriction prohibiting Washworld from routing its own website leads to another distributor or business partner. If Williams contends that Washworld was contractually obligated to route leads to CWM, Williams is required to identify a contract containing that requirement; he cannot because there is no such contract. If Williams contends the leads were CWM property, he does not plead facts showing that status or explaining how Washworld's handling of its own website-generated leads was an independently wrongful act.

Absent such allegations, redirecting leads is ordinary commercial allocation of business opportunities, not an independently wrongful act.

### 4. The Aiding and Abetting Theory Is Conclusory Because Williams Did Not Plead Washworld's Actual Knowledge of Ortiz's Breach of Fiduciary Duty or That Washworld Knowingly Assisted With the Breach.

Williams's most specific attempt to plead independent wrongfulness is his allegation that Washworld aided and abetted Ortiz's breaches of fiduciary duty. However, this allegation is conclusory because the pleading fails to plausibly allege:

1. Ortiz owed fiduciary duties relevant to the challenged conduct;

2. Ortiz breached those duties;

3. Washworld had actual knowledge of Ortiz's breach; and

WASHWORLD'S MP&A I/S/O MOTION TO DISMISS WILLIAMS'S AMENDED COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT
CASE NO.: 2:25-CV-00359-CAS-KS

4.      Washworld knowingly gave substantial assistance or encouragement to the breach.

The Fourteenth Claim itself does not plead facts showing Washworld's actual knowledge of any fiduciary breach by Ortiz. (ECF No. 186 ¶ 111C.) It alleges coordination with Ortiz and that Washworld established or used ProElite to displace CWM, but coordination and commercial alignment are not the same as actual knowledge of fiduciary misconduct. (*Id.*) Williams makes a passing reference to his allegations contained in the Fifteenth Claim.  But as explained above in Section IV(C), the Fifteenth Claim does not supply nonconclusory facts establishing Washworld's actual knowledge of Ortiz's breach of fiduciary duty.   Nor does Fifteenth Claim supply nonconclusory facts that Washworld knowingly gave substantial assistance or encouragement to the breach.  As such, the aiding-and-abetting theory cannot serve as the independent wrong for the interference claim.

Moreover, Williams cannot satisfy the independent-wrongfulness element by bootstrapping a separate aiding-and-abetting label onto the same commercial conduct that allegedly constitutes the interference.

### 5.      The Claim Also Fails Because The Alleged Relationships And Injuries Belong to CWM, not Williams Individually

Even if Williams had adequately alleged wrongful conduct (and he has not), the Fourteenth Claim is still defective because the relationships allegedly disrupted are **CWM** relationships. (ECF No. 186 ¶¶ 111A-111E.) Williams identifies CWM's customer, vendor, and lead-generation relationships; CWM's customers H&S Energy and Conserv Fuels; CWM's distributor relationship; and leads generated through CWM's work at trade shows. (*Id.*)

Williams attempts to plead around this problem by asserting that his injury is individual.  But the alleged harm includes diminution in value of his membership interest in CWM. As discussed above, diminution in the value of an LLC membership interest caused by injury to the LLC is derivative in nature. If the customers, leads,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

and distributorship belonged to CWM, then the injury from losing those relationships belongs to CWM, not to Williams individually.

As such, Williams has not plausibly pleaded a direct economic relationship between Williams personally and a third party carrying a probability of future economic benefit to Williams personally. Nor has he pleaded a direct injury distinct from harm to CWM.

### 6.    Williams Does Not Adequately Plead a Specific Prospective Economic Relationship With A Probability of Future Benefit to Him Personally

California law requires a probable economic relationship with a third party, not merely a hope of future business or an unidentified pool of potential customers. *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 980 (N.D. Cal. 2013), *aff'd,* 609 F. App'x 497 (9th Cir. 2015) ("To preclude liability based solely on speculation, the California Supreme Court has further required the plaintiff to prove a business relationship with a specific third party containing 'the probability of future economic benefit to the plaintiff.'") (quoting *Youst v. Longo*, 43 Cal.3d 64, 71 (1987). Williams identifies H&S Energy and Conserv Fuels by name, but he describes them as CWM customers. He also refers generally to website leads, trade-show leads, vendors, suppliers, and prospective customers.

To the extent the claim rests on unidentified website or trade-show leads, the pleading is too vague to establish a specific economic relationship with probable future economic benefit. To the extent the claim rests on H&S Energy and Conserv Fuels, the pleading does not plausibly establish that Williams individually—not CWM—had the protected economic relationship.

This provides a separate ground for dismissal.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## VI.   WILLIAMS FAILED TO PLEAD A VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200

### A.   CALIFORNIA'S UNFAIR COMPETITION LAW

California's Unfair Competition Law prohibits "unlawful, unfair or fraudulent" business acts or practices. A private plaintiff must plead that he suffered injury in fact and lost money or property as a result of the challenged practice. The UCL's private remedies are equitable in nature and generally limited to restitution and injunctive relief, not compensatory damages. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). Restitution under the UCL requires restoration of money or property in which the plaintiff has an ownership interest. Lost profits, lost market share, lost business opportunities, or anticipated but unearned income are damages, not restitution. *Lee v. Luxottica Retail N. Am., Inc.*, 65 Cal. App. 5th 793, 803 (2021) (citing *Korea Supply Co.*, 29 Cal. 4th 1134 (2003)).

### B.   THE UCL CLAIM RESTS ON CONCLUSORY ALLEGATIONS, NOT PLAUSIBLE FACTS

The UCL claim alleges that Washworld diverted "customers, suppliers, and sales leads" to ProElite and to Washworld directly. (ECF No. 186 ¶ 173.) That allegation is not enough. The pleading does not identify a single customer, supplier, sales lead, contract, transaction, communication, date, or Washworld actor involved in the alleged diversion. Nor does it explain how any alleged diversion caused a direct loss to Williams individually.

Rule 8 requires factual content permitting a reasonable inference of liability. A bare allegation that business was "diverted" is a conclusion, not a fact. Without allegations identifying what was diverted, when it was diverted, by whom, and how it injured Williams personally, the Thirtieth Claim does not cross the line from possibility to plausibility.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

WASHWORLD'S MP&A I/S/O MOTION TO DISMISS WILLIAMS'S AMENDED COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT
CASE NO.: 2:25-CV-00359-CAS-KS

## C.   WILLIAMS DOES NOT PLEAD A DIRECT LOSS OF MONEY OR PROPERTY

Williams alleges injury based on diminution in the value of his member interest in CWM and loss of individual prospective economic advantage. (ECF No. 186 ¶ 174.) Those allegations do not establish UCL standing. If customers, suppliers, leads, or business belonged to CWM, then any injury from their alleged diversion belongs to CWM. *CF Gainesville InvestoR, LLC*, 2022 WL 1422810, at *4. Williams's alleged diminution in membership value is, at most, an indirect injury derivative of alleged harm to the company. *Id.*

The pleading attempts to characterize the claim as individual, but labels do not control. The alleged business diverted from CWM is corporate or company property, and Williams's purported reduced ownership value is not a direct UCL loss unless the pleading identifies a separate item of money or property personally lost by the member. The UCL claim does not do so.

Nor is "lost prospective economic advantage" sufficient as pleaded. That phrase describes an expectancy or damages theory, not a concrete item of money or property lost by Williams as a result of Washworld's conduct. The UCL requires an actual economic loss caused by the challenged practice, not an abstract or speculative loss of future opportunity.

## D.   THE CLAIM SEEKS NONRESTITUTIONARY DAMAGES DISGUISED AS UCL RELIEF

Williams seeks restitution and an injunction, but the factual allegations do not support either remedy. The pleading does not identify any money or property that Washworld took from Williams and now possesses. Instead, the alleged harm consists of lost business opportunities, diminished membership value, and prospective economic loss. (ECF No. 186 ¶ 174.) Those are damages theories, not restitution.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

The UCL does not authorize compensatory damages or nonrestitutionary disgorgement in a private action. *Optima Tax Relief LLC v. Channel Clarity, Inc.*, No. SACV141902JLSJCGX, 2015 WL 12765016, at *8 (C.D. Cal. Aug. 26, 2015) ("Nonrestitutionary disgorgement of profits or monetary damages are not separately recoverable in a UCL action."). Because Williams has not identified money or property in which he has an ownership interest that could be restored to him, the claim fails to plead a cognizable UCL remedy.

E.  THE "UNLAWFUL" PRONG FAILS BECAUSE THE PREDICATE VIOLATIONS ARE NOT PLAUSIBLY PLEADED

Williams's claim invokes the UCL's "unlawful" prong by referring to his intentional interference with prospective economic advantage and aiding and abetting Ortiz's alleged breach of fiduciary duty claims. But the UCL claim does not independently plead facts establishing those predicate violations, and those claims fail for multiple independent reasons.

The pleading does not identify a specific economic relationship between Williams and a third party, Washworld's knowledge of that relationship, independently wrongful conduct by Washworld, or facts showing actual disruption and resulting economic harm to Williams. Likewise, the pleading does not allege facts showing that Washworld knowingly and substantially assisted Ortiz in breaching fiduciary duties owed to Williams. Williams tries to point back to earlier pleadings on the topics of aiding and abetting Ortiz's alleged breach of fiduciary duty and interference with prospective economic advantage, but as shown above, those claims are likewise deficient. A UCL claim cannot survive by incorporating inadequately pleaded predicate claims and reciting that the conduct was "unlawful."

F.  THE "UNFAIR" AND "FRAUDULENT" PRONGS ARE ALSO CONCLUSORY

The unfair-prong allegation merely states that the harm to Williams outweighs any legitimate business justification. That is a legal conclusion. The pleading does

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

21

not allege facts showing why the challenged conduct was unfair rather than ordinary competition, what policy the conduct violates, or why any alleged harm outweighs legitimate business justification.

The fraudulent-prong allegation is equally deficient. The pleading states that Washworld's conduct was likely to deceive, but it does not identify any deceptive statement, speaker, recipient, date, content, reliance, or causal loss. If the fraudulent-prong theory sounds in fraud, it must satisfy Rule 9(b). *Arabian v. Organic Candy Factory*, No. 217CV05410ODWPLA, 2018 WL 1406608, at *3 (C.D. Cal. Mar. 19, 2018). Even under Rule 8, however, the pleading fails because it does not describe what was deceptive or how any deception caused Williams to lose money or property.

### G.    THE REQUEST FOR INJUNCTIVE RELIEF IS UNSUPPORTED

Williams also seeks an injunction preventing Washworld from continuing to divert customers, sales leads, and business. But the pleading does not allege facts showing an ongoing practice, imminent future injury to Williams individually, or specific business opportunities at risk. Nor does it define the conduct to be enjoined with sufficient clarity. Because the claim is based on generalized allegations of business diversion, the requested injunction is unsupported by plausible factual allegations.

## VII.  CONCLUSION

The aiding and abetting breach of fiduciary duty claim should be dismissed both because Williams does not hold the claim and because it is not plausibly pleaded. Williams alleges that Washworld acquired knowledge only "no later than 2025," after the only alleged assistance in March 2024, and affirmatively pleads that Washworld acted in good faith during that period. He further relies on knowledge of transaction mechanics rather than knowledge of a fiduciary breach and seeks damages that are derivative or too attenuated. The pleading's own chronology—late-acquired knowledge coupled with good-faith March 2024 conduct—cannot support aiding-

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

WASHWORLD'S MP&A I/S/O MOTION TO DISMISS WILLIAMS'S AMENDED COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT
CASE NO.: 2:25-CV-00359-CAS-KS

and-abetting liability as a matter of law, and the claim independently fails because the alleged injury belongs to CWM, not to Williams.

Likewise, the claim for intentional interference with prospective economic advantage should be dismissed. California law does not permit a plaintiff to transform ordinary commercial competition, customer diversion, or termination of a business relationship into a tort claim merely by labeling the conduct "wrongful," "retaliatory," or "coercive." Williams must plead facts showing that Washworld's own conduct was independently wrongful under a determinable legal standard. The pleading does not do so. In addition, the claim fails for lack of standing and ownership because the economic relationships identified—customers, distributorship, and sales leads—are alleged to belong to CWM. Any resulting diminution in Williams's membership value is derivative and insufficient to support a direct claim.

Finally, Williams has failed to plead a violation of California Business and Professions Code Section 17200. Williams has not alleged nonconclusory facts showing that Washworld engaged in a specific unlawful, unfair, or fraudulent business practice; that Williams personally lost money or property; or that Washworld holds any money or property subject to restitution. The alleged injuries are derivative, speculative, or compensatory in nature and therefore do not support a private UCL claim. As with the other claims, the alleged harm is to CWM, rendering Williams an improper plaintiff. Accordingly, the Court should dismiss this claim.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

WASHWORLD'S MP&A I/S/O MOTION TO DISMISS WILLIAMS'S AMENDED COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT
CASE NO.: 2:25-CV-00359-CAS-KS

Dated:  June 24, 2026          **BAKER & HOSTETLER LLP**

By:  */s/ Katharine Walton*
     Katharine Walton

WASHWORLD, INC.


## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Washworld, Inc., certifies that this brief contains 6,496 words, which complies with the word limit of L.R. 11-6.1.

Dated:  June 24, 2026          **BAKER & HOSTETLER LLP**

By:  */s/ Katharine Walton*
     Katharine Walton

WASHWORLD, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# CERTIFICATE OF SERVICE

I am employed in Cook County, Illinois. I am over the age of eighteen years and not a party to the within-entitled action. My business address is One North Wacker Drive, Suite 3700, Chicago, IL 60606. On June 24, 2026, I served a copy of the within document(s):

**DEFENDANT WASHWORLD, INC.'S MOTION TO DISMISS WILLIAMS' AMENDED COUNTERCLAIM, CROSSCLAIMS, AND THIRD-PARTY COMPLAINT**

☑ **CM/ECF:** I hereby certify that a copy of the foregoing was electronically filed in this case with the clerk of the court and served through the Court's CM/ECF system, which will send notification of this filing to all registered CM/ECF users listed below.

| | |
|---|---|
| Andrew K. Alper (SBN 088876) **FRANDZEL ROBINS BLOOM & CSATO, L.C.** 1000 Wilshire Boulevard, Nineteenth Floor Los Angeles, CA 90017 Telephone:  323-852-1000 Facsimile:  323-651-2577 Email:       *aalper@frandzel.com* | *Attorneys for Plaintiff* REGIONS BANK |
| Lisa Mitts Patrick (SBN 134522) **LAW OFFICE OF LISA MITTS PATRICK** 112 E. Amerige Ave., Suite 313 Fullerton, CA 92832 Telephone:  714-990-3693 Facsimile:  657-234-0012 Email:       *lolmp2021@gmail.com* | *Attorneys for Defendant and Cross Defendant* JOSE RENE ORTIZ |

☑ **Email:** I hereby certify that on this date a true and correct copy of the foregoing was served via electronic mail on Andrew Williams, appearing pro se, at andrew@carwashmgmt.com. Transmission of the email was completed without error, and no notice of non-delivery was received indicating that service was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on June 24, 2026, at Chicago, Illinois.

*/s/ Katharine Walton*

BAKER & HOSTETLER LLP ATTORNEYS AT LAW LOS ANGELES