Andrew P. Williams

12641 Antioch Road, Suite #1045

Overland Park, Kansas 66213

Telephone: (619) 796-6469

Email: andrew@carwashmgmt.com

Pro Se Defendant, Counterclaimant,

Cross-Claimant, and Third-Party Plaintiff

LODGED
CLERK, U.S. DISTRICT COURT

6/28/2026

CENTRAL DISTRICT OF CALIFORNIA
BY _____jji_____ DEPUTY
DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **REGIONS BANK, an Alabama State Bank dba ASCENTIUM CAPITAL,** | **Case No. 2:25-cv-00359-CAS-KSx** |
| Plaintiff, | **DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT** |
| v. | |
| **CAR WASH MANAGEMENT, LLC, a Delaware Limited Liability Company; CAR WASH MANAGEMENT, LLC, a Hawaii Limited Liability Company; WEST COVINA CAR WASH LLC; JOSE RENE ORTIZ;** | First Amended Complaint<br>Filed: March 17, 2026<br><br>Trial Date: June 8, 2027 |

1

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

**ANDREW PAUL WILLIAMS;**
**WASHWORLD,**
**INC.; DOES 1-100, inclusive,**

    Defendants.

_____

**ANDREW PAUL WILLIAMS,**

    Counter-Claimant, Cross-Claimant,
    and Third-Party Plaintiff,

v.

**REGIONS BANK dba ASCENTIUM**
**CAPITAL;**
**JOSE RENE ORTIZ; MARIA L. ORTIZ;**
**THE ORTIZ FAMILY TRUST OF 2024;**
**WASHWORLD, INC.; PETER**
**MATHENY;**
**ROES 1-50, inclusive,**

    Counter-Defendant,
    Cross-Defendants, and
    Third-Party Defendant.

Judge: Hon. Christina A. Snyder

Courtroom: 8D

## PRELIMINARY STATEMENT

2

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

Pursuant to Federal Rules of Civil Procedure 7, 8, 12, 13, and 14, Defendant Andrew P. Williams ("Williams"), appearing pro se, hereby submits this Second Amended Answer to the First Amended Complaint of Plaintiff Regions Bank dba Ascentium Capital ("Plaintiff" or "the Bank"), together with his Affirmative Defenses, Counterclaim against the Bank, Cross-Claim against co-Defendant Jose Rene Ortiz ("Ortiz"), and as to the Eleventh Claim concerning The Ortiz Family Trust of 2024 (the "Trust"), and Third-Party Complaint against Peter Matheny ("Matheny"), the loan officer at Ascentium Capital who originated and structured the underlying transaction.

This filing presents the truth of the transaction at the heart of this case: the Equipment Finance Agreement ("EFA") executed in January 2024 in the principal amount of $343,394.23 (subsequently restated as $346,904.75 by the March 7, 2024 Addendum executed by Ortiz alone), ostensibly for car wash equipment to be supplied by Washworld, Inc. for installation at premises owned by West Covina Car Wash LLC, was architected by Matheny in concert with Ortiz. The loan was sized against an existing Washworld quote for an unrelated CWM project in Chula Vista, California (the "Chula Vista Project"), in a structure architected by Matheny under which Washworld, after applying a portion of loan proceeds to settle CWM's pre-existing Chula Vista trade balance, refunded the surplus to CWM, which CWM in fact deployed in its entirety to acquire and install car wash equipment for the tunnel car wash facility at the West Covina site, including tunnel wash systems, water treatment and reclaim equipment, pumping and pneumatic systems, electrical and mechanical components, drying and lighting equipment, vacuum stations, a controller, and chemical-delivery equipment, all as more fully identified in paragraph 41 below. The structure as architected by Matheny was non-standard in form, in that the loan was sized against a quote for one of CWM's

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

projects (Chula Vista) while the resulting equipment was deployed across two of CWM's projects (Chula Vista trade balance settlement and West Covina car wash equipment acquisition). Matheny's architecture, as further alleged herein, was not isolated but a continuation of a documented multi-year pattern by Matheny of originating equipment financing transactions for borrowers in the petroleum and car wash retail vertical, including the Yostina Inc./Petit Auto Wash transaction of June through July 2021 ($150,000 financing for which Matheny instructed the vendor what amount and addressee the invoice should reflect) and the Zavaro Inc. transaction of May 2023 through May 2024 ($130,107.47 of duplicate funding disbursed to CWM under Ascentium Finance Agreement No. 2729070 in a circular-financing structure that Matheny later attempted to clean up by directing CWM to wire the duplicate proceeds onward to Zavaro).

Williams's relationship to CWM was as follows. At formation of CWM on or about April 16, 2022, Williams held a sixty percent (60%) majority membership interest. In late 2023 and January 2024, at Matheny's direction and as a precondition to funding the EFA, Williams's majority position was restructured to a ten percent (10%) minority interest, with Ortiz elevated to an eighty percent (80%) controlling interest and sole personal guarantor; the amended Operating Agreement reflecting this restructure was bundled into the EFA closing documents and executed contemporaneously with the EFA in January 2024. At all relevant times concerning the EFA, Williams was therefore a ten percent (10%) minority member of CWM. Williams also held the title of Chief Executive Officer ("CEO") for limited purposes, including for use in communications with banks and vendors and in his email signature, and was a Manager of CWM. Williams's titles, however, did not confer upon him control over the structuring or funding of the EFA, signing authority over the Bank's financing documents, control over the

4

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

disbursement of loan proceeds, or any role in the Bank's internal underwriting and compliance processes. CWM was at all relevant times a small enterprise in which Williams performed wide-ranging operational functions, including customer-facing work, vendor coordination, quote preparation, and routine administrative tasks. Williams did not sign the EFA, the Personal Guaranty, the Authorization to Perform Verbal Verification, the Customer Identification Program form, the Delivery and Acceptance Certificate, the Funding Instructions, the Commencement Agreement, or any Addendum to the EFA. Each of those documents was signed by Ortiz, the eighty percent (80%) controlling member of CWM, who served as the Bank's designated authorized representative for the borrower and as the sole personal guarantor on the loan. Williams's only signature on any Bank financing-related document was on the Authority and Incumbency Certificate, which he signed solely in the capacity of "Certifier" attesting to Ortiz's authority to bind CWM, and not in the capacity of a borrower, principal, or guarantor.

The loan was originated under circumstances in which: (a) the original credit application was submitted in the name of West Covina Car Wash LLC for $250,000, but the Bank ultimately funded a loan in the name of CWM for an amount that grew during processing; (b) the Operating Agreement of CWM presented to the Bank reflected an ownership structure that had been restructured at Matheny's direction prior to submission to the Bank; (c) Matheny instructed Williams in writing to bypass the Bank's standard internal document upload portal and instead transmit loan documents to Matheny personally by email; and (d) the loan was sized against the Washworld Chula Vista quote, resulting in approximately $132,509.09 of loan proceeds being refunded by Washworld back to CWM after settlement of the Chula Vista trade balance, and deployed by CWM in its entirety to acquire and install car wash equipment at the West Covina tunnel

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

car wash facility, all of which equipment is presently in operating use at that facility.

Notably, the Bank itself has acknowledged in this litigation, as reflected in its filing at Docket No. 82, that Williams was "probably not collectable." Notwithstanding that admission against interest, the Bank obtained leave to file the operative First Amended Complaint and re-added Williams as a defendant on March 17, 2026. The Bank's decision to pursue Williams personally despite its own assessment of non-collectability is itself evidence that the Bank's continued prosecution of Williams is motivated by purposes other than legitimate recovery.

Williams asserts herein only those claims for which he has standing in his individual capacity, framed to avoid trenching upon (i) claims that may constitute property of his bankruptcy estate under 11 U.S.C. § 541, (ii) claims that are derivative of CWM (which Williams, as a pro se litigant, lacks standing to assert in this action under Rowland v. California Men's Colony, 506 U.S. 194 (1993), and Simon v. Hartford Life, Inc., 546 F.3d 661 (9th Cir. 2008)), and (iii) claims that may be more appropriately asserted by the Chapter 7 Trustee or by CWM through its retained counsel of record. Williams expressly reserves all rights to amend this pleading under Federal Rule of Civil Procedure 15 upon (a) abandonment by the Chapter 7 Trustee of estate property claims under 11 U.S.C. § 554, (b) appearance of counsel for CWM, or (c) such other procedural posture as may be appropriate to permit assertion of preserved claims.

Williams further submits this pleading without waiver of, and expressly reserving, his objection to the sufficiency of the Bank's purported service of the First Amended Complaint upon Williams as detailed in his Twenty-Ninth Affirmative Defense.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

# I.  JURISDICTION AND VENUE

**1.**      This Court has subject matter jurisdiction over the Bank's claims pursuant to 28 U.S.C. § 1332 by reason of complete diversity of citizenship and an amount in controversy exceeding $75,000, as alleged in the First Amended Complaint.

**2.**      This Court has supplemental jurisdiction over the Counterclaim, Cross-Claim, and Third-Party Complaint pursuant to 28 U.S.C. § 1367, because all of the claims asserted herein arise from the same transactions and occurrences as the Bank's claims and form part of the same case or controversy.

**3.**      This Court additionally has subject matter jurisdiction over the Counterclaim against Plaintiff and the Cross-Claim against Cross-Defendants pursuant to 28 U.S.C. § 1332 by reason of complete diversity of citizenship and an amount in controversy exceeding $75,000.

**4.**      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including the negotiation, structuring, funding, and performance of the EFA, the operation of CWM in this District, and Ortiz's alleged diversion of CWM's business in this District. Venue for the UVTA claims herein is also proper in this District because the real property at issue is located in this District.

**5.**      This Court has personal jurisdiction over Counter-Defendant Regions Bank dba Ascentium Capital because the Bank initiated the underlying litigation in this Court and has voluntarily appeared and litigated herein.

**6.**      This Court has personal jurisdiction over Cross-Defendant Ortiz, who is an individual residing in West Covina, California, within this District. Cross-

7

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

Defendant Ortiz has additionally voluntarily appeared and litigated as a Cross-Complainant herein.

7.      This Court has personal jurisdiction over The Ortiz Family Trust of 2024 because the Trust holds title to real property located in West Covina, California, within this District (commonly known as 402 Addleman Avenue, West Covina, California 91792, identified by Los Angeles County Assessor's Parcel Number 8725-008-042), and because the Trust was formed and is administered in California by trustees who reside in California.

8.      This Court has personal jurisdiction over Third-Party Defendant Matheny because, among other reasons, Matheny conducted business in California involving the transactions at issue, communicated repeatedly with persons in California regarding those transactions, structured loan transactions secured by collateral located in California, and directed funds to be wired to California-based parties as part of the conduct giving rise to the claims herein.

## II.  PARTIES

9.      Counterclaimant, Cross-Claimant, and Third-Party Plaintiff Andrew P. Williams ("Williams") is an individual. At formation of CWM in April 2022, Williams held a sixty percent (60%) majority membership interest in CWM, as set forth in paragraph 21 below. In late 2023 and January 2024, Williams's membership was restructured to a ten percent (10%) minority interest contemporaneously with the EFA closing, at Matheny's direction and as a precondition to the Bank's funding, as set forth in paragraphs 24 and 25A through 25D below. Williams also served as a Manager of CWM and held the title of Chief Executive Officer ("CEO") for purposes of communications with banks, vendors, and other counterparties, and used the CEO designation in his email signature.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

CWM was a small company in which Williams performed a wide range of operational functions consistent with a small-business environment.

10.    Counter-Defendant Regions Bank, doing business as Ascentium Capital ("Regions" or "the Bank"), is an Alabama State Bank with its principal place of business in Birmingham, Alabama, and operates a division known as Ascentium Capital with offices located at 23970 Highway 59 N, Kingwood, Texas 77339. On March 31, 2023, Ascentium Capital, LLC was merged into Regions Bank, and Regions Bank now operates Ascentium Capital as a division. Regions is the Plaintiff and Counter-Defendant in this action.

11.    Cross-Defendant Jose Rene Ortiz ("Ortiz") is an individual residing at 402 Addleman Avenue, West Covina, California 91792. At all times relevant to the EFA, Ortiz was and is the eighty percent (80%) controlling member of CWM and served as its principal manager exercising actual operational authority over CWM's business affairs. On information and belief, Ortiz is currently employed by H&S Energy LLC.

12.    The Ortiz Family Trust of 2024 (the "Trust") is a California trust formed in 2024, the trustees of which are Jose R. Ortiz and Maria L. Ortiz. The Trust is the record title holder of certain real property located at 402 Addleman Avenue, West Covina, California 91792, identified by Los Angeles County Assessor's Parcel Number 8725-008-042 (the "Subject Property"). The Subject Property was transferred into the Trust by Grant Deed executed by Jose R. Ortiz and Maria L. Ortiz on June 13, 2024 and recorded with the Los Angeles County Registrar-Recorder/County Clerk on September 4, 2024 as Document Number 20240594220, in circumstances giving rise to the claims for fraudulent transfer asserted herein. A true and correct copy of the recorded Grant Deed is attached as Exhibit A and incorporated by reference.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

**12A.** Maria L. Ortiz and The Ortiz Family Trust of 2024 are not named as parties in this Second Amended pleading. Williams reserves the right to re-add them, and to seek avoidance as against the transferees of the Subject Property, should discovery warrant.

**13.** As alleged in detail in paragraph 67 below and as appears on the face of the recorded Grant Deed attached as Exhibit A, the recorded Grant Deed transferring the Subject Property into the Trust directs that the recorded instrument be returned to the trustees "c/o Law Office of Lisa Mitts Patrick, 112 E. Amerige Ave. Suite 313, Fullerton, CA 92832," together with Ms. Mitts Patrick's office telephone, facsimile, and email.

**14.** Third-Party Defendant Peter Matheny ("Matheny") is an individual believed to reside in or near Kingwood, Texas or San Diego, California. At all relevant times, Matheny was employed by Ascentium Capital, LLC and subsequently Regions Bank as a loan officer with primary responsibility for originating and structuring the loan transaction at issue in this action. Public records indicate that Matheny holds the title "Vice President of Sales, Petroleum/C-Store" at Ascentium Capital, a role he has held since May 2020, with his industry vertical being retail petroleum, convenience stores, and fuel wholesalers. On information and belief, Matheny acted in his individual capacity, outside the scope of any legitimate authority granted to him by the Bank, in committing the acts complained of herein, and is therefore individually liable for the resulting damages.

**15.** Defendant Car Wash Management, LLC ("CWM Delaware" or "CWM") is a Delaware limited liability company organized on or about April 16, 2022. As of the date of the underlying loan transaction (January 2024), and as restructured at Matheny's direction contemporaneously with the EFA closing,

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CWM Delaware's members were Ortiz (80%), Travis Beaudoin ("Beaudoin") (10%), and Williams (10%). At formation in April 2022, the membership had been Williams (60%), Ortiz (25%), and Beaudoin (15%); the restructure is alleged in paragraph 24 below. Williams does not assert herein any claim derivative of CWM Delaware. Williams expressly reserves all rights to amend this pleading to assert derivative claims under Federal Rule of Civil Procedure 15 upon appearance of counsel for CWM Delaware, abandonment of estate property by the Chapter 7 Trustee, or such other procedural posture as may permit those claims to be asserted.

16.     Defendant Car Wash Management, LLC, a Hawaii limited liability company ("CWM Hawaii"), is a Hawaii Domestic Limited Liability Company, Hawaii File Number 209975 C5, registered on February 22, 2019. CWM Hawaii was organized for the limited purpose of operating a discrete government services contract performed in the State of Hawaii. CWM Hawaii's operational life ended in approximately 2022 to 2023 upon conclusion of the underlying government contract, after which the entity has been functionally defunct. CWM Hawaii's 2024 annual filing in Hawaii is delinquent and the entity is currently not in good standing. As of the date hereof and at relevant times after the departure of former member Jonathan Kim (Chief Financial Officer of the Hawaii entity), the membership of CWM Hawaii has consisted of Ortiz, Williams, and Beaudoin. CWM Hawaii has had no role in, and was not a party to, the EFA or the underlying transaction described herein. The Bank's joinder of CWM Hawaii as a defendant in the First Amended Complaint, notwithstanding the Bank's own pleading admission at FAC ¶ 2 that "the contracting entity in this case was and is the Delaware entity," appears to be a pretextual effort to impute liability across legally distinct entities without basis.

11

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**17.**    Defendant Travis Beaudoin ("Beaudoin") is an individual believed to reside in San Diego County, California. Beaudoin was, at relevant times, a member of CWM Delaware (15% at formation; 10% after the January 2024 restructure) and a member of CWM Hawaii. On information and belief, Beaudoin departed from CWM around the same time as Ortiz, and currently services car wash equipment in San Diego County. Williams asserts no affirmative claim against Beaudoin herein.

**18.**    Defendant West Covina Car Wash LLC ("WCCW") is a California limited liability company that owns or operates real property at 310 S. Vincent Avenue, West Covina, California, and is a corporate guarantor on the EFA. On information and belief, Ortiz holds an ownership interest in WCCW.

**19.**    Defendant Washworld, Inc. ("Washworld") is a Wisconsin corporation with its principal place of business in De Pere, Wisconsin. Washworld manufactures car wash equipment and at all relevant times had a distributor relationship with CWM. On information and belief, Washworld is also a vendor and equipment supplier to H&S Energy LLC, the same entity that currently employs Ortiz and Beaudoin. Washworld is named as a Defendant in the Bank's First Amended Complaint. Williams alleges on information and belief that Washworld was, at the time of the March 2024 funding and disbursement, unaware of the broader Matheny-architected loan structure and acted in good faith pursuant to Matheny's and the Bank's wire instructions in handling the loan proceeds described in Section D below.

**20.**    ROES 1 through 50 are persons or entities whose true identities are presently unknown to Williams. Williams will amend this pleading to include their true names and capacities when ascertained. Williams is informed and believes, and on that basis alleges, that ROES 1 through 50 include: (a) other employees, agents, or officers of the Bank who participated in or had knowledge of the

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

wrongful conduct alleged herein; (b) other co-conspirators with Matheny in the broader scheme of Matheny-originated structurally irregular loan originations; (c) other beneficiaries of the diversion of CWM's business; and (d) other entities that received improper transfers of CWM's assets, customers, or business opportunities.

## III.  FACTUAL ALLEGATIONS

### A. *CWM Formation and Williams's Role*

21.    CWM was organized as a Delaware limited liability company on or about April 16, 2022. The Operating Agreement of CWM executed at that time set forth the original membership interests of CWM as follows: Andrew Williams, sixty percent (60%); Jose Rene Ortiz, twenty-five percent (25%); and Travis Beaudoin, fifteen percent (15%). Each member contributed zero dollars ($0) of capital. Williams held the original majority membership interest in CWM by reason of his role in founding and operating the enterprise.

22.    Pursuant to the operative Operating Agreement of CWM at all times relevant to the EFA (as amended in connection with the EFA closing as alleged in paragraphs 24 and 25A through 25D below), CWM "will be managed by its Members" and "[d]ecisions shall be made by a majority vote unless otherwise stated in this Agreement." By reason of his eighty percent (80%) post-restructure ownership interest, Ortiz held majority control over CWM's decisions and affairs and exercised actual operational authority over CWM's business at all times concerning the EFA.

23.    Williams served at CWM (after the January 2024 restructure) as a Member (10%), as a Manager, and as Chief Executive Officer ("CEO"), the latter

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

title being held primarily for purposes of dealings with banks, vendors, and other counterparties, and used in his email signature. CWM operated as a small business in which Williams performed a wide range of functions, including but not limited to: assisting with the preparation of customer quotes; coordinating with vendors and equipment manufacturers; managing administrative functions; and performing routine operational tasks of every kind ordinary to a small enterprise. Williams's titles, however, did not give him signing authority on the Bank's financing documents, did not give him control over the structuring or funding of the EFA, did not give him control over the disbursement of loan proceeds received by CWM, and did not give him a role in the Bank's internal underwriting or compliance processes. Each of those functions was performed by Ortiz as the eighty percent (80%) controlling member, by Matheny as the Bank's loan officer, or by other personnel of the Bank.

24.    In late 2023 and January 2024, at the direction of Matheny and as a precondition to the Bank's funding of the EFA, the membership of CWM was restructured from its original April 16, 2022 allocation (Williams 60%, Ortiz 25%, Beaudoin 15%) to the allocation that the Bank required in order to fund (Ortiz 80%, Williams 10%, Beaudoin 10%). The restructuring was directed by Matheny so that Ortiz could be presented to the Bank as the controlling member and sole personal guarantor. The discussions concerning the restructuring occurred in multiple telephonic conversations between Matheny and members and personnel of CWM, including speakerphone conversations in which Williams, Ortiz, and Beaudoin were each present at various times. The amended Operating Agreement reflecting the post-restructure allocation was bundled into the EFA closing documents and executed contemporaneously with the EFA in January 2024. A copy of the amended Operating Agreement is in the Bank's loan file. As reflected

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

in subsequent written correspondence from Ascentium's credit underwriter Lara C. Hernandez (alleged in paragraphs 25A through 25D below), the Bank itself required "LLC Operating Agreements for both entities to document Jose's majority ownership" as a condition of funding the loan. Williams gave up his original sixty percent (60%) majority position at Matheny's direction in order for Matheny and the Bank to obtain the documentary record they required to fund the EFA on the structure that Matheny had architected.

## B. The Loan Application Process

25.    In or about December 2023, an initial Commercial Credit Application was submitted to Ascentium Capital in the name of West Covina Car Wash LLC for a loan in the amount of approximately $250,000. That application was signed by Ortiz as Member of WCCW, with his Social Security Number, date of birth, home address, and other personal identifying information, on or about December 22, 2023. Williams did not sign the Commercial Credit Application.

25A.    On or about December 26, 2023, at approximately 10:38 a.m. Pacific time, Matheny transmitted to Williams by text message a photograph of the original Ascentium Commercial Credit Application bearing Pete Matheny's name and contact information, the Business Legal Name "West Covina Car Wash," street address "310 St. Vincent Street, West Covina, CA 91790," Contact Name "Rene Ortiz, Title: Member," Federal Tax ID 93-4806991, with Vendor Name "Car Wash Management," Vendor Address "7776 Trade Street, San Diego, CA 92121," and Vendor Contact telephone (808) 465-2291. The same day, on or about December 26, 2023, the Ascentium credit application designated "App # 2763169 for West Covina Car Wash LLC" was declined by Ascentium's credit department on grounds of insufficient time-in-business. In response to that decline, Matheny e-

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

mailed Lara C. Hernandez of Ascentium (with Tony Zieglar of Ascentium copied) at 3:17 p.m. Central time on December 26, 2023, proposing a substitution of borrower entities: "Car Wash Management has several Car Wash locations, but they are on military bases. What if we we're to CCG Car Was Management LLC which Jose Ortiz owns 80% of?" The substitution of CWM as borrower of record in place of WCCW was initiated by Matheny, not by Williams or by any other member of CWM.

25B.  On or about December 26, 2023, at 5:18 p.m. Central time, Ascentium's credit underwriter Lara C. Hernandez responded in writing, summarizing the structural relationships and flagging the arm's-length problem with the proposed transaction: "West Covina Car Wash LLC is the landlord, according to the space agreement attached. Car Wash Management LLC is the tenant, according to the space agreement. PG Jose Rene Ortiz owns the tenant entity, which owns the real estate entity and is also the vendor??? West Covina Car Wash LLC is a new LLC that is 30% held by investors, 70% held by Car Wash Management LLC, in which Jose Ortiz owns 80% of CWM." Ms. Hernandez then proceeded the next morning, on or about December 27, 2023, to inform Matheny: "We cannot finance a transaction where customer and vendor do not have an arm's length distance. Would there be a manufacturer the equipment could be purchased from directly and cut-out Car Wash Management as the vendor? … We would need LLC Operating Agreements for both entities to document Jose's majority ownership. Car Wash would be obligor and West Covina as cross corp."

25C.  On or about December 26, 2023, Matheny replied to Ms. Hernandez's 5:18 p.m. December 26, 2023 message (paragraph 25B above), copying Mr. Zieglar, in pertinent part: "Yes exactly! I know it's a very interesting scenario. We've done a few deals through Car wash management the vendor." Matheny's

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

statement, made in writing on Bank time from a Bank e-mail account to a Bank credit underwriter, is an admission of conduct in originating "a few deals through Car wash management the vendor," notwithstanding the arm's-length problem that Ms. Hernandez had identified. The admission, taken together with the documented Yostina Inc./Petit transaction (Section G.3 below) and the Zavaro Inc. transaction (Section G.2 below), corroborates the pattern alleged herein.

25D.  On or about December 27, 2023, at 10:05 a.m. Central time, Matheny forwarded the entire foregoing internal Ascentium e-mail chain to Williams, stating: "Hi Andrw [sic], See email below. Can you get me LLC Operating Agreements for both entities to document Jose's majority ownership?" Notwithstanding Ms. Hernandez's written recommendation that CWM be "cut-out" as the vendor, Matheny did not cause CWM to be removed as the vendor on the transaction; instead, Matheny proceeded with both CWM as borrower of record and CWM as designated vendor, with the loan ultimately funded against a vendor invoice from Washworld and, subsequently, against a wire to AVW Equipment Co., Inc. as set forth below. The Bank, having received Ms. Hernandez's written underwriting recommendation, took no documented action to enforce that recommendation. Matheny's December 27, 2023 e-mail to Williams demanding amended Operating Agreements is the documentary precondition for the bundled-into-EFA restructure alleged in paragraph 24 above.

26.  Following the submission of the WCCW Commercial Credit Application, Matheny indicated that additional documentation was required for the loan to proceed. By text message dated December 28, 2023, after Williams transmitted the Operating Agreement of CWM to Matheny, Matheny responded: "Perfect. Now we just need West Covina."

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

27.    Between December 28, 2023 and January 5, 2024, the structure of the loan transaction was modified such that the borrower of record on the EFA became CWM rather than WCCW, and WCCW became a corporate guarantor rather than the borrower. The change of borrower entity was directed by Matheny and not by Williams.

28.    On or about January 5, 2024, Matheny instructed Williams by text message: "Email me a copy of the signed docs before we upload. I want to make sure it's good to go." Matheny then sent a follow-up text stating: "I was just told you don't need to use that upload link. Just email to me please."

29.    On information and belief, the "upload link" or "upload portal" referenced by Matheny was the standard internal document submission system maintained by Ascentium Capital for loan documentation. By instructing Williams to bypass that portal and instead transmit loan documents to Matheny personally by email, Matheny circumvented the Bank's internal document audit trail, the Bank's compliance review processes, and the Bank's standard origination protocols.

## C.  Execution and Funding of the EFA

30.    The Equipment Finance Agreement bearing Agreement No. 2763169 ("the EFA") was executed by Ortiz as Member of CWM. Williams did not sign the EFA in any capacity. The EFA designates CWM as the borrower and identifies the property to be financed as car wash equipment to be supplied by Washworld.

31.    On or about January 5, 2024, an Authorization to Perform Verbal Verification with respect to Agreement No. 2763169 was executed by Ortiz as Member of CWM. Williams did not sign the Authorization to Perform Verbal Verification.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**32.**    On or about January 8, 2024, a Customer Identification Program form with respect to Agreement No. 2763169 was executed by Ortiz, providing his date of birth (June 12, 1967) for purposes of identification under federal anti-money-laundering law. Williams did not sign the Customer Identification Program form. Williams's date of birth was not provided to the Bank in connection with the loan.

**33.    On or about January 5, 2024, an Authority and Incumbency Certificate with respect to Agreement No. 2763169 was executed. The Certificate identifies Ortiz as the "duly appointed and qualified officer, manager, partner, member or other appointed official" of CWM authorized to execute and deliver the EFA and related agreements. Williams signed the Authority and Incumbency Certificate solely in his capacity as the "Certifier" who certified that Ortiz held the authority described therein. Williams did not sign as a borrower, principal, or guarantor. Williams's understanding at the time of signature, based on Matheny's contemporaneous oral representations, was that the Authority and Incumbency Certificate served the limited purpose of verifying that Ortiz, as the named officer of CWM authorized to act on CWM's behalf, was properly authorized to execute the EFA and related instruments on behalf of CWM. Matheny did not orally communicate to Williams that the "Certifier" signature also constituted Williams's personal certification of any other fact about the transaction, its structure, or the parties' relationships. Williams did not understand, and was not given reason by Matheny to understand, that signing as Certifier exposed Williams to any form of personal liability.**

**34.**    On or about January 5, 2024, a Personal Guaranty with respect to Agreement No. 2763169 was executed by Ortiz as the sole guarantor. Williams did not sign the Personal Guaranty. Williams is not, and has never been, a personal

19

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

guarantor of the EFA, of CWM's obligations to the Bank, or of any related indebtedness.

35.    On or about January 8, 2024, a Delivery and Acceptance Certificate with respect to Agreement No. 2763169 was executed by Ortiz as Member of CWM, certifying that the equipment had been delivered, conformed to the order, and was in satisfactory condition. Williams did not sign the Delivery and Acceptance Certificate.

36.    On or about January 5, 2024, a Commencement Agreement with respect to Agreement No. 2763169 was executed by Ortiz as Member of CWM. Williams did not sign the Commencement Agreement.

37.    On or about January 5, 2024, Matheny inquired of Williams by text message: "Do you want 50% or 100% released to AVW?", referring to AVW Equipment Co., Inc. ("AVW") of 105 South 9th Avenue, Maywood, Illinois 60153 as the contemplated equipment vendor on the loan. Williams responded: "100%." On or about January 9, 2024, at 12:55 p.m. Pacific time, after Williams had advised Matheny that CWM's 10% first-payment wire to Ascentium (alleged in paragraph 37A below) had been sent, Matheny advised Williams by text message: "Ok I'll let you know once received. Please let Rene know that he will receive a call to verbally the release of the funds of 90% to AVW. Our funding department will call Rene at 626-413-0842 & the call should come from a 281#." On or about January 10, 2024, at 11:59 a.m. Pacific time, Matheny advised Williams by text message: "Hi Andrew- Good news! We're good to go and this has funded. I'll give AVW a heads up now." Accordingly, the Bank funded the loan on or about January 10, 2024 with AVW as the equipment vendor of record.

37A.    As a precondition of funding the loan, the Bank required CWM to pre-fund a first payment of $34,339.42 (representing 10% of an approved loan

20

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

amount of $343,394.23) by wire transfer to Ascentium. Matheny's e-mail of January 5, 2024 to Williams (subject: "CAR WASH MANAGEMENT, LLC APPROVAL") stated in pertinent part: "See attached 48-60-72-month terms. Loan amount $ 343,394.23 with a 10% first payment. Please use the attached wire doc for first payment of $34,339.42." On or about January 8, 2024, by text message in the evening hours, Matheny transmitted to Williams the corresponding wire instructions, namely: "Regions Bank, 1900 5th Ave. N., Birmingham, AL 35203, ABA Number 062005690, Account Number 0093723237, For credit to: Ascentium Capital LLC, *International SWIFT code for international wires UPNBUS44." On or about January 9, 2024, at 8:37 a.m., Matheny confirmed by text message that the wire instructions were correct ("Good morning- Confirmed that's correct"), and CWM thereafter wired $34,339.42 to Ascentium at Regions Bank that same day, with Williams informing Matheny at 12:55 p.m. on January 9, 2024 by text: "Bank confirmed that wire was sent." CWM received nothing from the Bank in exchange for the $34,339.42 first payment other than the funding of a loan whose principal had been sized against the Washworld Chula Vista quote as set forth in Section D below.

37B. On or about January 12, 2024, at 11:55 a.m., Williams advised Matheny by text message that AVW had reported it had not received the wire. Matheny responded: "Wrong! Not only that but I emailed Confirmation to Phil. Watch this email shortly" and added, "Check your email. I'm very organized and very rarely would miss something like this." In subsequent text messages, Matheny stated, "of course and remind them we have to hold back 10% because of the amount over 250k. We will release the remaining 10% once delivered." On information and belief, dispute and confusion continued between AVW, the Bank, and Williams concerning whether AVW had in fact received the loan proceeds and

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

concerning the underlying wire instructions, with Matheny acknowledging by text on February 29, 2024, "AVW is confused with everything it sounds like."

**37C.** On or about February 28, 2024, at 6:00 p.m. Pacific time, Williams asked Matheny by text message: "Just checking if AVW sent the money back yet and if there is any movement?" Matheny responded: "Not yet but around 3pm we confirmed with AVW wiring instructions. You'll be the the first to know once we get it back." Williams thereafter asked: "Cool, and washworld stuff is good to go with your underwriters?" Matheny responded: "Oh ya they are the best of best on our end." Williams further asked: "So as soon as we get the money back we are good to go?" Matheny responded: "Yep we'll just make the change from AVW to Wash world." The proposed substitution of Washworld for AVW as the equipment vendor on Loan #2763169 was originated by Matheny acting on behalf of the Bank, not by Williams.

**37D.** On or about March 5, 2024, at 1:01 p.m. Pacific time, Matheny advised Williams by text message: "Hi Andrew- AVW has returned the funds and we're going to rewrite the deal to wash world." On or about March 7, 2024, at 12:59 p.m. Pacific time, Matheny followed up by text message: "Hi Andrew- please have Renee sign the document emailed to him with wet ink." On information and belief, Ortiz thereafter signed one or more instruments provided by Matheny purporting to amend Loan #2763169 to substitute Washworld for AVW as the equipment vendor. The substitution of Washworld for AVW was not preceded or accompanied by: (i) a new Commercial Credit Application; (ii) renewed underwriting review by Ascentium's credit department, including by Lara C. Hernandez or any other credit officer; (iii) a new Authorization to Perform Verbal Verification; (iv) a new Authority and Incumbency Certificate; or (v) any amendment of the EFA executed by Williams or by all members of CWM. The

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

decision to permit the substitution, and the decision to fund the substituted vendor (Washworld), was made by the Bank acting through Matheny notwithstanding the Bank's actual knowledge, from the December 26 through 27, 2023 internal communications of Lara C. Hernandez alleged in paragraphs 25A through 25D above, that the original transaction structure presented a non-arm's-length problem.

**37E.**  Following the documentation of the AVW-to-Washworld substitution as set forth in paragraph 37D above, the Bank thereafter caused approximately $309,054.80 of loan proceeds to be transmitted to Washworld in connection with Loan #2763169 on or about March 11 through 12, 2024. The $309,054.80 wire to Washworld is the same payment that Plaintiff Regions Bank now characterizes in Paragraph 39 and elsewhere of its First Amended Complaint as a "Mistaken Payment." As described in Section D below, Washworld applied approximately $132,509.09 of the $309,054.80 to settle CWM's pre-existing Chula Vista trade balance and refunded the remaining approximately $176,552.71 to CWM at Matheny's direction.

**38.**  During the period of January 8, 2024 through January 12, 2024, Matheny communicated with Williams by text message regarding the wiring of funds and the timing of disbursement to the equipment vendor. Matheny stated that the Bank intended to release ninety percent (90%) of the funds to AVW initially, with ten percent (10%) held back. The wiring of funds and the disbursement protocol were arranged and executed by Matheny and the Bank's funding department, not by Williams.

*D.  The Matheny-Directed Loan Structure: Use of the Chula Vista Washworld Quote and the $132,509.09 Refund to CWM*

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**39.** At the time of the EFA, CWM was simultaneously developing two car wash projects: (a) a tunnel car wash facility at 310 S. Vincent Avenue, West Covina, California (the "West Covina Project"), and (b) a Conserve Fuels-branded gas station and car wash in Chula Vista, California (the "Chula Vista Project"). Conserve Fuels was at relevant times a direct customer of CWM. For the Chula Vista Project, CWM held a Washworld equipment quote outstanding, and Conserve Fuels had paid CWM approximately one-half of the Chula Vista equipment cost upfront, which CWM retained. CWM accordingly owed Washworld a trade balance for the remaining portion of the Chula Vista equipment. For the West Covina Project, CWM required financing for the full complement of car wash equipment necessary to construct and operate a tunnel car wash facility, including tunnel wash systems, water treatment and reclaim, pumping, pneumatic, electrical, mechanical, drying, lighting, vacuum, controller, and chemical-delivery components, all as more fully identified in paragraph 41 below.

**40.** In structuring the EFA, Matheny caused CWM to use the existing Washworld Chula Vista quote to size the loan. As architected by Matheny, the structure produced a flow of funds in which the Bank-financed proceeds, after Washworld's application of a portion to settle CWM's pre-existing Chula Vista trade balance, were refunded by Washworld to CWM, with the refunded amount used by CWM to acquire and install car wash equipment at the West Covina tunnel car wash facility as detailed in paragraph 41 below. The structure was originated, directed, and managed by Matheny in his capacity as the Bank's loan officer, as evidenced by Matheny's documented December 26 through 27, 2023 internal communications with Lara C. Hernandez alleged in paragraphs 25A through 25D above, by Matheny's documented instructions to Williams concerning the bypass

24

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

of the Bank's upload portal and the substitution of vendors alleged in paragraphs 28, 29, 37C, and 37D above, and by Matheny's documented pattern in materially identical transactions alleged in Sections G.2 (Zavaro Inc.) and G.3 (Yostina Inc./Petit) below. Williams, who did not sign the EFA or any related funding document and who was not a party to the Bank's internal underwriting communications, did not architect this structure.

**41.** The Matheny-architected structure operated as follows. On or about January 9, 2024, CWM wired $34,339.42 to Ascentium as the 10% first payment on a loan of $343,394.23. On or about January 10, 2024, the Bank wired the balance of loan proceeds to AVW Equipment Co. as the initial vendor of record. AVW returned those funds to the Bank. On or about March 5, 2024, at 1:01 p.m. Pacific time, Matheny advised Williams by text message that the deal would be "rewrite[n] … to wash world" (as alleged in paragraph 37D above), and Matheny unilaterally caused the substitution of Washworld for AVW as the equipment vendor on Loan #2763169 without renewed underwriting, without a new Commercial Credit Application, and without any executed amendment of the EFA by Williams or by all members of CWM. On or about March 11 through 12, 2024, the Bank wired approximately $309,054.80 to Washworld in accordance with the substitution Matheny had directed. Washworld thereafter (a) applied approximately $132,509.09 to CWM's pre-existing Chula Vista trade balance, and (b) refunded the remaining approximately $176,552.71 to CWM. The refunded amount was deployed by CWM to acquire and install car wash equipment for the West Covina car wash facility at 310 S. Vincent Avenue, West Covina, California, including without limitation: (i) tunnel car wash equipment, including wash arches, foamers, applicators, chain and rollers, and lighting; (ii) a dryer system supplied by Premier; (iii) a vacuum system; (iv) a car wash controller; (v) electrical systems, including

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

electrical racking, electrical motors, and hydraulic motors; (vi) a reverse osmosis (RO) water treatment system supplied by Axeon; (vii) a water softener supplied by American Water Products; (viii) a reclaim system supplied by Sta-Rite; (ix) a Laco oil/water separator; (x) pumping systems supplied by Grundfos, together with associated manifolds; (xi) a compressed air system, including an air compressor and an air dryer; (xii) a chemical board; (xiii) car wash media and chemicals supplied by Gallup, Econocraft, and additional vendors; and (xiv) further car wash equipment, parts, and supplies necessary to and supporting the operation of the West Covina car wash facility, all sourced from additional vendors. Each of the items identified in (i) through (xiv) above is car wash equipment, is presently located at the West Covina car wash facility at 310 S. Vincent Avenue, and is in active operating use at that facility. CWM holds contemporaneous transaction records, vendor invoices, and paid receipts evidencing the acquisition by CWM of each category of equipment listed above. The entirety of the approximately $132,509.09 refunded by Washworld to CWM was deployed by CWM in connection with the acquisition of car wash equipment for the West Covina facility, with no portion thereof being deployed for any purpose other than the acquisition of such car wash equipment. The flow of funds described in this paragraph (Bank to Washworld to CWM, and CWM to equipment vendors) is established by contemporaneous wire, accounting, and vendor invoice records held by the Bank, Washworld, CWM, and the equipment vendors, and is independent of any oral communications. On information and belief, Washworld was, at the time of the March 2024 funding and disbursement, unaware of the broader Matheny-architected loan structure and acted in good faith pursuant to Matheny's and the Bank's wire instructions; the routing of funds back to CWM via Washworld occurred in accordance with the loan structure that Matheny had originated and

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

managed for the Bank. On further information and belief, Washworld did not deliver any car wash equipment to the West Covina site in connection with Loan #2763169; Washworld's deliveries pursuant to the loan-related disbursement were limited to the Chula Vista Project equipment for which Washworld retained the $132,509.09 portion of the wire described above.

42. The Bank's collateral position at the West Covina site, as a result of the Matheny-architected transaction, includes the car wash equipment acquired by CWM with the refunded proceeds and identified in paragraph 41 above (a tunnel car wash system including wash arches, foamers, applicators, chain and rollers, and lighting; a dryer system; a vacuum system; a car wash controller; electrical systems including electrical racking, electrical motors, and hydraulic motors; a reverse osmosis water treatment system; a water softener; a reclaim system; an oil/water separator; pumping systems and manifolds; a compressed air system including air compressor and air dryer; a chemical board; car wash media and chemicals; and additional car wash equipment from other vendors), all of which equipment is owned by CWM, is located at 310 S. Vincent Avenue, West Covina, California, and is integrated into the operating tunnel car wash facility at that site. The West Covina car wash facility is currently in operation. The Bank, having funded the EFA in the principal amount of $343,394.23, having accepted the resulting flow of funds without objection at the time of funding, and having contracted for a security interest in the equipment financed thereunder under the express terms of the EFA, has tangible operating car wash equipment at the West Covina site available to it for the exercise of its secured remedies under the EFA. The non-standard character of the Matheny-architected structure was therefore not, as the Bank now alleges in its First Amended Complaint, a diversion of loan proceeds to non-equipment purposes. The loan proceeds were deployed by CWM to acquire equipment of the

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

same character as that contemplated by the EFA (car wash equipment) at the very site identified for installation in the original credit application (310 S. Vincent Avenue, West Covina). What was non-standard was the structural mechanism by which the loan was sized and disbursed (use of an existing Chula Vista vendor quote and a vendor refund of surplus back to the borrower), a mechanism architected by the Bank's own loan officer. Williams was unaware at the time of loan execution and funding of the structural irregularity that Matheny's loan-sizing methodology produced; Williams relied on Matheny's role, conduct, and documented instructions as the Bank's loan officer with apparent authority to originate and structure the loan transaction, on the Bank's actual funding of the loan, and on the Bank's acceptance of the resulting flow of funds, as indicia that the structure was permissible and consistent with the Bank's practice. The Matheny-architected structure of the CWM/EFA was not isolated but a continuation of a documented pattern of conduct by Matheny in originating equipment financing transactions, as further alleged in Section G below.

**42A. Based on a UCC-1 Search Report obtained from the Delaware Department of State through Parasec, dated May 21, 2026, a true and correct copy of which is attached hereto as Exhibit B and incorporated herein by reference, the public Delaware UCC records reflect a single UCC-1 Financing Statement, Initial Filing Number 2024 0175388, filed January 9, 2024, naming as the debtor "CAR WASH MANAGEMENT, LLC" at 310 S Vincent Ave, West Covina, California 91790, and with a collateral description referencing "Agreement No. 2763169" (the EFA at issue in this Action). However, that financing statement names as the secured party of record only "C T CORPORATION SYSTEM, AS REPRESENTATIVE" at 330 N Brand Boulevard, Suite 700, Glendale, California 91203, and does not identify**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**Regions Bank or Ascentium Capital as the secured party. Under 6 Del. C. § 9-506(a), a financing statement substantially satisfying the requirements of subpart 5 of Article 9 is effective only if errors or omissions are not seriously misleading. Naming a representative or agent without identifying the actual secured party (the lender) is seriously misleading as a matter of Delaware law, with the consequence that the Bank's purported security interest in CWM's equipment is unperfected. Williams reserves the right to amend or supplement this allegation upon further discovery, including upon production by the Bank of any additional UCC-1 financing statement or amendment on which the Bank intends to rely. To the extent the Bank has not properly perfected, by compliant UCC-1 filing or otherwise, the security interest contracted for under the EFA, any resulting impairment of the Bank's secured creditor position is attributable to the conduct of the Bank and its loan officer, not to any conduct of Williams.**

**42B.   The Conserve Fuels Chula Vista Project and Matheny's Industry Vertical. CWM's Conserve Fuels-branded gas station and car wash project (the "Chula Vista Project") was a separate and distinct project from the West Covina Project that was the subject of the EFA. At the time of the EFA closing in January 2024, the Chula Vista Project equipment had been ordered from Washworld under a separate purchase order, and a Washworld quote relating to the Chula Vista equipment had been generated as part of that separate procurement. The Chula Vista Project served a Conserve Fuels-branded retail petroleum location.**

**42C. Matheny's industry vertical at Ascentium Capital is, on information and belief, retail petroleum, convenience stores, and fuel wholesalers. The Conserve Fuels-branded Chula Vista location is a retail**

29

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

petroleum and convenience-store facility within Matheny's industry specialty. Matheny was responsible at Ascentium Capital for originating loans in this same industry vertical that includes Conserve Fuels and similar retail petroleum customers.

42D. **The Beneficiary of the Matheny-Architected Diversion.** As a result of the Matheny-architected EFA structure described in paragraphs 39 through 42 above, approximately $176,552.71 of CWM's EFA loan proceeds were refunded by Washworld to CWM. Williams is informed and believes, and on that basis alleges, that the remaining approximately $132,509.09 of CWM's EFA loan proceeds were retained by Washworld and applied to the pre-existing Conserve Fuels Chula Vista Washworld order, effectively causing CWM's bank-financed loan proceeds to fund equipment that was delivered to and used by the Conserve Fuels Chula Vista facility, a third party outside the scope of the EFA and the loan transaction approved by Bank's credit underwriting.

42E. On information and belief, Matheny had separate communications with Conserve Fuels, Inc. or its representatives concerning Ascentium Capital financing for the Chula Vista equipment. Williams is informed and believes, and on that basis alleges, that the application of CWM's EFA loan proceeds to the Conserve Fuels Chula Vista Washworld order was known to Matheny at or about the time of the application, and that Matheny did not disclose this application to CWM, to Williams, or to Bank's credit personnel. The records of Conserve Fuels, Inc. concerning its Washworld order, its communications with Matheny and Ascentium Capital, and its payment history are anticipated to be probative of the matters alleged

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**in this pleading and will be the subject of third-party discovery in the appropriate course of this Action.**

*E. The Bank's Characterization of the March 2024 Wire as a "Mistaken Payment"*

43.    On or about March 11 through 12, 2024, the Bank wired the sum of $309,054.80 to Washworld in connection with what the Bank now characterizes as a "Mistaken Payment." In its First Amended Complaint, the Bank alleges that this payment was made in error. As alleged in paragraph 41 above, the actual flow of those funds was that Washworld applied approximately $132,509.09 to settle CWM's pre-existing Chula Vista trade balance and refunded the remaining approximately $176,552.71 to CWM at Matheny's direction, both consistent with the structure Matheny had architected.

44.    On or about May 23, 2024, Matheny transmitted to Washworld a copy of a Washworld quote bearing CWM's name and Williams's contact information. According to the Bank's own pleadings, Matheny sent this quote to Washworld months after the funding had occurred, in the context of attempting to reconcile the disputed payment.

45.    The transmission of a Washworld quote by the Bank's loan officer to the equipment vendor several months after funding is contrary to standard practice in equipment finance, in which the vendor's quote is in hand prior to and as a condition of funding. The fact that Matheny was constructing or transmitting documentation of the equipment order after the funds had already been disbursed supports the inference that the loan was originated and funded without the proper underwriting documentation in place at the time of funding, and instead was

31

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

funded against a quote (the Chula Vista quote) that did not match the use to which the loan proceeds would in fact be put under Matheny's architecture.

### F. Ortiz's Pattern of Disloyalty and Diversion of CWM's Business

**46.    During the period from approximately mid-2023 through October 2025, Ortiz, in his capacity as the eighty percent (80%) controlling member and principal manager of CWM, engaged in a sustained pattern of self-dealing and disloyalty. Such conduct included, without limitation, the conduct described in this Section F. Williams's claims asserted herein arising from this pattern are limited to injury accruing in Williams's post-petition individual capacity, consistent with the standing and bankruptcy-estate reservation set forth in Section VI above; all pre-petition or estate-property aspects of this pattern are expressly reserved.**

47.    Prior to joining CWM, Ortiz had been associated with Specialty Car Wash Systems, a Washworld distributor that remains a Washworld distributor. The Washworld distributorship relationship was, in substantial part, brought to CWM by Ortiz. Ortiz also had pre-existing personal and business relationships with H&S Energy LLC predating his role at CWM. CWM acquired the H&S Energy customer relationship from Ortiz by granting equity in CWM to Ortiz as consideration for his contribution of those pre-existing H&S Energy relationships. H&S Energy thereby became a customer of CWM; CWM supplied H&S Energy with car wash equipment, distributor-level services, and operational support during the period of Ortiz's membership in CWM.

48.    Ortiz diverted CWM's customer relationships to entities in which he held an interest or with which he had aligned himself, including but not limited to ProElite Car Wash Services, Inc. and ProElite Car Wash Services, LLC

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

(collectively, "ProElite") and H&S Energy. The diversion included specific identifiable transactions in CWM's pipeline, including transactions with Conserve Fuels and other customers, that were redirected away from CWM and to Ortiz's preferred entities. Through this conduct, Ortiz removed the H&S Energy customer relationship from CWM after CWM had already paid for that relationship through the grant of equity to Ortiz at formation.

49.    Ortiz appropriated CWM's distributor relationship with Veritech, a car wash chemical supplier, redirecting Veritech's supply and dealings to entities that competed with CWM and from which Ortiz personally benefited.

49A.    Throughout his tenure as CWM's eighty percent (80%) controlling member, Ortiz refused to authorize the sale of car wash chemical products from CWM's own supply offering to CWM's customers, on the stated ground that CWM's chemicals were not, in his personal estimation, of a quality consistent with what he perceived to be his personal reputation in the industry, and on the stated concern that being associated with CWM's chemicals would damage his personal brand. By reason of that refusal: (a) CWM was deprived of revenue from chemical sales that the company was otherwise positioned to capture from its customer base; (b) CWM's customers were effectively required to source car wash chemicals from competing suppliers, including from chemical suppliers (such as Veritech) with which Ortiz subsequently developed or strengthened relationships outside of CWM, as alleged in paragraph 49 above; (c) Ortiz subordinated CWM's commercial interests, as an enterprise of which he was the eighty percent (80%) controlling member and principal manager, to his personal reputational concerns; and (d) Ortiz's refusal constituted a breach of his fiduciary duties and his duties of good faith and loyalty under CWM's Operating Agreement and under Delaware

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

law, separate and apart from the other acts of self-dealing and diversion alleged in this Section F.

50.    ProElite, on information and belief, operates through two affiliated California entities that share a common principal place of business at 1929½ Durfee Street, South El Monte, California: ProElite Car Wash Services, LLC (California Secretary of State Entity No. 202461813351, formed April 11, 2024) and ProElite Car Wash Services, Inc. (California Secretary of State Entity No. 6349725, formed August 16, 2024), each formed during the period in which Ortiz, with the participation and assistance of Washworld, was diverting CWM's customers, vendors, and business opportunities as alleged herein. On information and belief, Ortiz participated in the establishment of ProElite as a competing distributor of car wash equipment, including by introducing or facilitating relationships between ProElite and CWM's existing customers, suppliers, and contacts, and by providing or causing to be provided to ProElite the operational know-how, customer data, pricing information, and other proprietary information of CWM.

51.    In or about October 2025, Ortiz departed CWM and accepted employment with H&S Energy LLC. On information and belief, Ortiz is currently employed by H&S Energy. The H&S Energy position was, on information and belief, obtained by reason of Ortiz's appropriation of CWM's customer relationships (including the H&S Energy relationship CWM had paid for through equity) and operational expertise.

52.    **Following Ortiz's departure, Beaudoin similarly departed CWM around the same time and became employed by H&S Energy, where Beaudoin currently services car wash equipment in San Diego County. In addition to Ortiz and Beaudoin, on information and belief, two (2) additional**

34

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

**former CWM employees joined H&S Energy after the departures of Ortiz and Beaudoin. On further information and belief, a further four (4) former CWM employees were approached by H&S Energy but did not join.**

53.    The systematic pattern of recruitment by H&S Energy of CWM's former personnel, combined with the simultaneous transfer of CWM's customer relationships to H&S Energy, supports the inference that H&S Energy was a knowing beneficiary of, and may have been a participant in, the diversion of CWM's business orchestrated by Ortiz and others.

54.    On information and belief, H&S Energy LLC operates more than 170 convenience stores across California, Oregon, and Washington under brands including Extra Mile and Power Market, with car wash facilities at many of those locations. H&S Energy was a customer of CWM at relevant times prior to and during Ortiz's employment with CWM. H&S Energy is also, on information and belief, a customer of Washworld, which (per public statements) describes Washworld as its car wash equipment supplier and partner. The structural relationship between H&S Energy and Washworld places the alleged diversion of CWM's business in a context in which the equipment supplier and the entity to which CWM's customer relationships were diverted shared a direct business relationship, with CWM cut out of the chain.

55.    On information and belief, following the commencement of this lawsuit, Washworld terminated its distributor relationship with CWM, citing the alleged cost or risk associated with the lawsuit as the stated reason. The proximate effect of Washworld's termination was to enable Washworld to deal directly with H&S Energy without the participation of CWM. Such direct dealing was made possible, and was on information and belief facilitated, by Ortiz's prior cultivation of H&S Energy's car wash equipment business through CWM (a relationship

35

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CWM had paid for through equity to Ortiz at formation), followed by Ortiz's transfer of that customer relationship away from CWM.

56.    As a direct and proximate result of Ortiz's pattern of disloyalty and diversion, CWM's annual revenue collapsed from approximately Five Million Two Hundred Thousand Dollars ($5,200,000) to approximately One Million One Hundred Thousand Dollars ($1,100,000), representing approximately Four Million One Hundred Thousand Dollars ($4,100,000) in annual revenue diverted from CWM to Ortiz and entities aligned with him.

57.    Ortiz received personal compensation and benefits from H&S Energy and other entities to which he diverted CWM's business, including but not limited to salary, equity interests, commissions, and other forms of value. Williams reserves all rights to assert further claims with respect to such compensation in the appropriate procedural posture.

**57A.  CWM's annual revenue collapse from approximately Five Million Two Hundred Thousand Dollars ($5,200,000) to approximately One Million One Hundred Thousand Dollars ($1,100,000) as alleged in paragraph 56 above gives rise to substantial and quantifiable damages, particularized as follows. At industry-standard net margins of twenty-five percent (25%) to thirty-five percent (35%) for the car wash equipment distribution, service, and chemical-supply businesses CWM conducted, CWM's annual net income at peak operations was in the range of One Million Three Hundred Thousand Dollars ($1,300,000) to One Million Eight Hundred Thousand Dollars ($1,800,000). Over a reasonable five-year recovery horizon (i.e., the period required to rebuild or normalize a comparable enterprise), CWM's cumulative lost net income is in the range of Six Million Five Hundred Thousand Dollars ($6,500,000) to Nine Million Dollars ($9,000,000). CWM's**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**pre-collapse enterprise value, calculated at industry-standard multiples of one and one-half (1.5x) to three (3x) times annual revenue or four (4x) to six (6x) times annual net income, was in the range of Seven Million Eight Hundred Thousand Dollars ($7,800,000) to Fifteen Million Six Hundred Thousand Dollars ($15,600,000). Cumulative damages to CWM at the entity level, including lost net income, lost enterprise value, and lost goodwill, are in the range of Fifteen Million Dollars ($15,000,000) to Twenty-Five Million Dollars ($25,000,000). Separately and distinctly from CWM's entity-level injuries, which are reserved to the companion derivative action and are not claimed here, the value of the fifty percentage-point Member interest taken from Williams in the January 2024 restructure (from the pre-restructure sixty percent (60%) to the post-restructure ten percent (10%)), measured by reference to CWM's pre-collapse enterprise value set forth above, is in the range of Three Million Nine Hundred Thousand Dollars ($3,900,000) to Seven Million Eight Hundred Thousand Dollars ($7,800,000), exclusive of additional individual damages categories enumerated in the Claims for Relief below (including lost CEO and Manager compensation, lost prospective business opportunities at a separate business venture, reputational injury, and personal defense costs). Williams reserves the right under Federal Rule of Civil Procedure 15 to amend this Pleading to refine the damages calculations upon completion of damages discovery, including production of CWM's financial records, customer and vendor lists, and equipment-inventory schedules currently in the possession of Cross-Defendant Jose Rene Ortiz, Defendant Travis Beaudoin, and entities aligned with each of them.**

*G. Matheny's Role in the Loan Scheme*

37

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

58.    On information and belief, Matheny, as the loan officer at the Bank with responsibility for the CWM loan, originated and structured the loan transaction in a manner that was designed to and did circumvent the Bank's internal underwriting and compliance controls.

59.    Matheny's conduct included, without limitation: (a) instructing Williams to bypass the Bank's standard document upload portal; (b) directing the modification of the borrower entity from WCCW to CWM during the origination process; (c) directing or facilitating the modification of CWM's ownership structure from Williams's original sixty percent (60%) majority position to Ortiz's eighty percent (80%) controlling position as a precondition to funding the loan, with the amended Operating Agreement bundled into the EFA closing documents and executed contemporaneously with the EFA in January 2024; (d) directing the use of the Washworld Chula Vista quote to size the loan, resulting in a structure under which Washworld refunded the surplus to CWM after settling the Chula Vista trade balance, with CWM thereafter deploying the refunded proceeds to acquire car wash equipment for the West Covina tunnel car wash facility as alleged in paragraph 41 above; (e) collaborating with Ortiz on the structuring of the transaction to a degree that exceeded any legitimate role of a loan officer; (f) transmitting purported equipment quotes to vendors after funding rather than before; and (g) on information and belief, originating other similar structurally non-standard loan transactions for other customers in a pattern of conduct that constituted a departure from the Bank's standard underwriting protocols.

60.    On information and belief, Matheny's industry vertical at Ascentium Capital is retail petroleum, convenience stores, and fuel wholesalers, the very same industry vertical occupied by H&S Energy LLC, the entity that currently employs Ortiz, that currently employs Beaudoin, and that became the alleged beneficiary of

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

the diversion of CWM's business. The overlap between Matheny's industry vertical and the alleged beneficiary of the diversion is consistent with the inference that Matheny had pre-existing or developing relationships with the petroleum/c-store retail community that were leveraged in connection with the CWM transaction and its aftermath.

61. On information and belief, Matheny acted in his individual capacity, outside the scope of any legitimate authority granted to him by the Bank, in engaging in the conduct alleged herein. Matheny's conduct was undertaken for his personal benefit, including but not limited to the receipt of commissions tied to oversized loan amounts.

62. On information and belief, Matheny similarly originated loans for other customers in which loan principal was sized through structures inconsistent with the actual cost or use of equipment, or in which equipment-financing proceeds were directed in a manner inconsistent with legitimate underwriting. Two such transactions are particularly relevant as documented pattern evidence and are described in Sections G.2 and G.3 below.

*G.2  The Zavaro Inc. Transaction (May 2023 through May 2024)*

62A. On or about May 1, 2023, Williams introduced to Matheny by email a prospective customer commonly identified as "Mike" (later identified as Michael Zavaro of Zavaro, Inc.), who was seeking equipment financing for a Washworld Razor and related gas station equipment. The introduction occurred in the ordinary course of CWM's business as a Washworld distributor.

62B. On or about May 22, 2023, Matheny e-mailed Williams (with Michael Zavaro copied) the following instruction for preparation of the quote: "Can you please email a quote or invoice over and have it read? Bill to Ship to: ZAVARO, INC, 1024 BREA CANYON RD, WALNUT, CA, 91789." Matheny's instruction

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

designated the precise addressee and ship-to that the vendor invoice should reflect to support the financing he was structuring.

62C. On August 18, 2023, Ascentium Capital, by ACH transfer, paid $130,107.47 to Car Wash Management, LLC at "9030 Kenamar Dr Unit 315, San Diego, CA 92121," designated as funding for Ascentium Finance Agreement No. 2729070, with the customer named on the funding notification as "Zavaro, Inc." The notification was sent to CWM accounting and to Williams, copying Matheny. Public records identify the Zavaro family's business operations to include S & G Zavaro, Inc. (a California corporation filed March 30, 1994, Document No. 1871256, principal place of business 1548 F St, San Diego, California, operating a Mobil-branded gas station at 9790 Miramar Rd, San Diego, with officers including George Zavaro and Samir Zavaro) and Zavaro, Inc. (a California corporation filed August 6, 2015, Document No. 3814200, principal place of business 1024 Brea Canyon Rd, Diamond Bar, California, mailing address 2012 Ryan Ct, El Cajon, California, with officers including George Zavaro, Michael George Zavaro, and Randa Zavaro).

62D. On information and belief, the equipment underlying the Zavaro Inc. financing #2729070 had previously been paid for by Zavaro to CWM as part of an existing vendor transaction. Accordingly, the August 18, 2023 ACH payment of $130,107.47 to CWM duplicated a payment that CWM had already received from Zavaro for the same underlying equipment. The intended flow of the duplicate payment, on the theory that was later represented to Williams, was that CWM would pass the $130,107.47 through to Zavaro, such that Zavaro would hold both the equipment and an Ascentium-financed loan against it, while CWM would be made whole through the original Zavaro payment. Williams was not informed of this circular-financing structure at the time the funding was received.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**62E.**  On May 2, 2024, Matheny e-mailed Williams and Michael Zavaro, attaching the original August 18, 2023 Notification of Payment and a revised CWM invoice, stating: "I've spoken with both of you now. Here's the quote we used to fund this deal for $130,107.47 and notification of payment below. I think it would be best if you guys jumped on a call. Feel free to 3 way me in if needed." Matheny's coordination of the call between borrower (Zavaro), vendor (CWM), and the Bank's own loan officer in a single communication, rather than directing such coordination through the Bank's collections, vendor services, or compliance personnel, was a continuing departure from the Bank's standard internal protocols.

**62F.**  On May 13, 2024, Matheny e-mailed Williams (with Michael Zavaro copied) ACH/Wire instructions for a wire of $130,107.47 from CWM to Zavaro, Inc., stating: "Note: Zavaro Inc Customer # 2729070. Amount $130,107.47. Let me know once the wire has been sent." Matheny attached a PDF titled "Operating Account - Vendor Refunds via ACH or Wire." On May 28, 2024, Matheny followed up to Williams: "Here it is again in case you missed it!"

**62G.**  The $130,107.47 was never wired by CWM to Zavaro. The duplicate payment remained on CWM's books, creating a contingent liability of CWM to Zavaro that has not been disclosed by the Bank in this action and is not subsumed within the Bank's claims as presently pleaded. On information and belief, the Bank's loan officer Matheny continued in his employment with the Bank throughout the period during which the circular-financing structure remained outstanding, without disclosure of the irregularity to the Bank's internal compliance or audit personnel.

### G.3  *The Yostina Inc./Petit Auto Wash Transaction (June through July 2021)*

**62H.**  Matheny's pattern of dictating to vendors the precise dollar amount and addressee that an invoice should reflect was documented in writing more than

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

two years before the CWM/EFA at issue here. On June 22, 2021, in connection with a loan being financed for borrower "Yostina Inc," Matheny e-mailed James Marshall, Operations Manager of Petit Auto Wash, Inc. (the equipment vendor), the following instruction: "It was nice speaking with you! Here's what we need the invoice to read. Bill To Ship to: Yostina Inc, 34429 Yucaipa Blvd, Yucapia CA 92399. TOTAL $150,000…. This is what we're financing! Please let me know if you have any questions."

62I.    Approximately five hours later on the same date, Matheny e-mailed Williams in connection with the same Yostina/Petit financing: "Exactly Ramzy is financing the rest through us. I can get DOCS signed today and 150k released by tomorrow. I just need a PETIT invoice to read 150k with correct Bill to Ship too and were good to go." On July 2, 2021, after Williams inquired about the status, Matheny confirmed: "We're good to go. This deal booked today and 150k on it's way." The reference to "Ramzy" in Matheny's e-mail is to the owner of Yostina Inc., the borrower on that transaction; the full identity is to be confirmed through discovery.

62J.    Matheny's June 22, 2021 e-mails reflect his practice of (i) telling a vendor the exact dollar amount and bill-to/ship-to that should appear on the invoice supporting an Ascentium financing, (ii) coordinating the timing of document execution and disbursement around the vendor's production of an invoice in the predetermined form, and (iii) doing so in direct written communications outside the Bank's standard underwriting workflow. The conduct documented in 2021 with respect to Yostina/Petit is materially identical in form to the conduct documented in 2023 with respect to Zavaro Inc., and is materially identical in form to the structuring of the CWM/EFA in 2023 through 2024.

42

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

**62K. Williams has had direct communications with the principals of each of the Yostina Inc./Petit Auto Wash transaction and the Zavaro Inc. transaction referenced in paragraphs 62A through 62J above, and on the basis of such communications Williams is informed and believes that the irregular structural characteristics common to those Matheny-originated transactions extended to additional transactions to be identified through discovery. The Yostina Inc. and Zavaro Inc. transactions described above are illustrative, not exhaustive, of Matheny's pattern of originating structurally irregular equipment-finance transactions for the Bank involving customer-vendor affiliation, prescribed invoice content, and bypassed standard underwriting controls.**

### H.  The Ortiz Family Trust Transfer

63.    Jose Rene Ortiz and his spouse Maria L. Ortiz caused the Subject Property (402 Addleman Avenue, West Covina, California, Assessor's Identification Number 8725-008-042) to be transferred from their joint individual ownership into the newly formed Ortiz Family Trust of 2024. The transfer was effected by a Grant Deed executed by both Jose R. Ortiz and Maria L. Ortiz on June 13, 2024, before notary public Mary Poncedeleon (Commission No. 2354659) in the County of Orange, California (the county in which Ms. Mitts Patrick's law office is located, a county distinct from Ortiz's county of residence). The executed Grant Deed was then held off-record for approximately twelve (12) weeks before being recorded with the Los Angeles County Registrar-Recorder/County Clerk on September 4, 2024 at 12:19 PM, as Document Number 20240594220, a date approximately thirty (30) days before the filing of Williams's Chapter 7 bankruptcy petition on October 4, 2024, and approximately four (4) months before

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

the filing of the original Complaint in this action on January 14, 2025. The Grant Deed names Jose R. Ortiz and Maria L. Ortiz, in their former capacity as "Husband and Wife as Joint Tenants," as Grantors, and Jose Ortiz Trustee, Maria L. Ortiz Trustee, and The Ortiz Family Trust of 2024 as Grantees. The Grant Deed claims exemption from California documentary transfer tax under Revenue & Taxation Code § 11930 (transfer into or out of a living trust). A true and correct copy of the recorded Grant Deed is attached hereto as Exhibit A and incorporated herein by reference. On information and belief, the Subject Property had been owned by Jose R. Ortiz and Maria L. Ortiz jointly, in some form, since on or about September 2002. Based on publicly available estimates, the Subject Property had an estimated fair market value at the time of transfer in the range of approximately $741,000 to $826,000.

63A.   The transfer of the Subject Property into the Trust occurred after, and in chronological sequence with, the pattern of asset and customer diversion from CWM to entities aligned with Ortiz alleged in paragraphs 47 through 57 above. Specifically, by June 13, 2024 (the date of execution of the Grant Deed), Ortiz had already commenced the diversion of CWM's customer pipeline (including the Conserve Fuels transaction and other H&S Energy and ProElite opportunities), had positioned Beaudoin and other CWM personnel for transition to H&S Energy, and had effected or was in the process of effecting the collapse of CWM's annual revenue from approximately $5,200,000 to approximately $1,100,000 alleged in paragraph 56 above. The sequence of conduct is therefore: (a) Ortiz, as the 80% controlling member of CWM, induced CWM and Williams into the Matheny-architected EFA transaction with the Bank as alleged in Sections C and D; (b) Ortiz simultaneously or thereafter caused CWM's customer relationships, equipment opportunities, and personnel to be transferred to H&S Energy and other

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

entities aligned with him as alleged in paragraphs 47 through 57; (c) Ortiz then, on June 13, 2024, transferred his principal personal real estate asset (the Subject Property) into the newly formed Ortiz Family Trust of 2024 in the manner described in paragraph 63 above; and (d) Ortiz then held the executed deed off-record for approximately twelve (12) weeks before causing it to be recorded on September 4, 2024, approximately thirty (30) days before Williams's bankruptcy petition. The chronological alignment of these events (stripping the entity that bore the EFA liability, while simultaneously and shortly thereafter hiding Ortiz's personal real estate asset behind a newly created trust) supports the inference that Ortiz, not Williams, orchestrated the conduct that the Bank now seeks to ascribe to Williams personally, and that Ortiz did so with the intent and effect of leaving CWM hollowed out, his personal real estate beyond the reach of creditors, and Williams (a ten percent (10%) post-restructure minority member who held no controlling equity interest, who bore no personal guaranty (Ortiz alone signed the Personal Guaranty on the EFA), and who did not bring to CWM the pre-existing H&S Energy and Washworld distributor relationships from which the diverted business was derived) as the residual target of collection.

64.    On information and belief, the Subject Property was Ortiz's principal residence and was at the time of transfer his principal real estate asset against which the Bank's claim under the Personal Guaranty could have been satisfied.

65.    At the time of the transfer, Ortiz was, on information and belief, aware of: (a) the structurally non-standard Matheny-architected EFA, including the use of the Washworld Chula Vista quote to size the loan and the refund by Washworld of approximately $132,509.09 to CWM, which CWM deployed to acquire car wash equipment for the West Covina tunnel car wash facility as alleged in paragraph 41 above; (b) Matheny's pattern of originating structurally non-

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

standard equipment financing transactions, as documented in Sections G.2 and G.3 above; (c) the contestable nature of the Bank's claim against him as guarantor; (d) the existence of underlying disputes among the members of CWM and between CWM and the Bank concerning the loan; and (e) the foreseeable likelihood of litigation by the Bank or others against Ortiz arising from the loan and his conduct as controlling member of CWM.

66.    The transfer of the Subject Property into the Trust bore multiple badges of fraud under California Civil Code §§ 3439.04 et seq., including without limitation: (a) the transfer was to an insider, namely a trust of which Ortiz himself and his spouse are co-trustees and, on information and belief, beneficiaries; (b) Ortiz retained possession and control of the property after the transfer through his capacity as co-trustee of the Trust; (c) the transfer was made when substantial pre-existing obligations remained outstanding, including the Matheny-architected EFA, the unresolved $130,107.47 contingent liability of CWM to Zavaro Inc. (Loan #2729070) as alleged in Section G.2 above, and the loan-to-collateral undercollateralization of the EFA documented in Section D above; (d) the transfer occurred approximately thirty (30) days before Williams filed his Chapter 7 bankruptcy petition on October 4, 2024, a chronological proximity that, on information and belief, was not coincidental; (e) the transfer occurred approximately four (4) months before the Bank filed its original Complaint in this action on January 14, 2025, at a time when the disputes among CWM's members, the Bank, and the equipment vendors were ongoing and litigation was reasonably foreseeable; (f) the transfer was made for no consideration or, on information and belief, for nominal consideration not reasonably equivalent to the value of the asset, which is publicly estimated in the range of $741,000 to $826,000; (g) the transfer was made when Ortiz and Maria L. Ortiz were, or shortly thereafter

46

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

became, insolvent or undercapitalized with respect to the liabilities they were facing or anticipated to face; (h) the transfer effected a structural change in legal title, removing the Subject Property from Jose R. Ortiz's individual estate while preserving his beneficial use and control through the Trust; (i) the Grant Deed was executed on June 13, 2024 but was held off-record for approximately twelve (12) weeks before being recorded on September 4, 2024, a deliberate temporal separation between execution and recordation that is itself evidence of concealment, of awareness of pending or reasonably foreseeable creditor claims, and of an intent to perfect the transfer against third parties at a moment calculated to defeat such claims; and (j) the transfer was made after, and in chronological sequence with, the pattern of asset and customer diversion from CWM to entities aligned with Ortiz (including H&S Energy LLC and ProElite) alleged in paragraphs 47 through 57 above, evidencing a coordinated two-step asset insulation strategy in which the entity bearing the EFA liability was first hollowed out and then the controlling member's principal personal real estate asset was placed behind a newly created trust.

**67. The Trust instrument was prepared by, and the transfer of the Subject Property into the Trust was structured by, Lisa Mitts Patrick, Esq. (California State Bar No. 134522), who currently appears as litigation counsel for Cross-Defendant Ortiz in this action. The recorded Grant Deed, recorded September 4, 2024 in the Official Records of Los Angeles County as Document Number 20240594220 (a true and correct copy of which is attached as Exhibit A and incorporated by reference), expressly directs that the recorded instrument be returned to "JOSE ORTIZ & MARIA ORTIZ, Trustees, c/o Law Office of Lisa Mitts Patrick, 112 E. Amerige Ave. Suite 313, Fullerton, CA 92832," together with Ms. Mitts Patrick's office telephone (714) 990-3693,**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

**facsimile (657) 234-0012, and email address lolmp2021@gmail.com, the same professional contact information that appears on Ms. Mitts Patrick's appearances in this action. The notarization of the Grant Deed was further taken in the County of Orange (the county in which Ms. Mitts Patrick's law office is located) before notary public Mary Poncedeleon (Commission No. 2354659), notwithstanding that Ortiz's residence and the Subject Property are both located in Los Angeles County. The combination of (i) the direction of recorded mail to Ms. Mitts Patrick's law office, c/o the Ortiz trustees, (ii) the inclusion of Ms. Mitts Patrick's professional contact information on the face of the recorded Grant Deed, and (iii) the taking of the acknowledgment in the county of Ms. Mitts Patrick's office rather than the county of the grantors' residence, taken together, establishes Ms. Mitts Patrick as the operative attorney who prepared, structured, and caused to be recorded the very transfer that is now challenged as fraudulent in this Cross-Claim. Ms. Mitts Patrick's role as the architect of the transfer challenged herein, combined with her continuing representation of Ortiz in the litigation in which the validity of that transfer is squarely at issue, creates non-waivable issues under California Rule of Professional Conduct 3.7 (Lawyer as Witness), which precludes a lawyer from acting as advocate at trial in which the lawyer is likely to be a witness on a contested issue. Williams reserves the right to move for the disqualification of Ms. Mitts Patrick on such grounds at an appropriate procedural posture. As a direct consequence of Ms. Mitts Patrick's dual role as (i) the drafter and structuring counsel for the Ortiz Family Trust transfer at issue in the Eleventh, Twelfth, and Thirteenth Claims for Relief, and (ii) litigation counsel of record for Cross-Defendant Ortiz in this action, Ms. Mitts Patrick is a percipient witness with personal**

48

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

**knowledge of facts material to those claims, including the timing, purpose, structure, and consideration (or absence thereof) for the transfer of the Subject Property into the Trust. This dual role raises substantial questions under California Rules of Professional Conduct 3.7 (lawyer as witness) and 1.7 (conflicts of interest: concurrent clients), and Williams reserves the right to file a motion seeking disqualification of Ms. Mitts Patrick from continued representation of Cross-Defendant Ortiz upon appropriate motion.**

68.    The Bank has not pleaded any claim against the Trust or for avoidance of the transfer of the Subject Property in its First Amended Complaint. Williams, as a contingent creditor of Ortiz by reason of the Bank's allegations of joint and several liability and by reason of his own potential indemnification and contribution rights, has standing to challenge the transfer under California's Uniform Voidable Transactions Act. Williams's status as a contingent creditor of Ortiz became concrete on March 17, 2026, when the Bank filed its First Amended Complaint (Dkt. 154) re-adding Williams as a defendant and alleging joint conduct in connection with the EFA.

## I.  The Bank's Own Admission of Non-Collectability and the Pretextual Re-Joinder of Williams

69.    On September 18, 2025, the Bank filed in this action a document docketed as Docket No. 82 in which the Bank acknowledged that Williams was "probably not collectable." This judicial admission, made in the context of the very litigation in which the Bank now seeks personal recovery from Williams, constitutes a statement against the Bank's interest and is properly considered as evidence of the Bank's actual assessment of Williams's asset position at that time.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

70.    Notwithstanding the Bank's own admission, the Bank thereafter filed a motion for leave to file the First Amended Complaint (Dkt. 146) on February 23, 2026, and re-added Williams as a defendant in the First Amended Complaint (Dkt. 154) filed March 17, 2026. The Bank's decision to pursue Williams personally despite its own contemporaneous assessment of non-collectability supports the inference that the Bank's continued prosecution of Williams is motivated by considerations other than legitimate recovery, including but not limited to the desire to shift responsibility away from the Bank's own loan officer Matheny and away from the conduct of Ortiz as sole personal guarantor, and to coerce settlement from Williams notwithstanding the absence of a viable recovery theory.

**70A.  The Bank's "probably not collectable" admission in Docket No. 82 was a deliberate, considered, and contemporaneous statement made by Bank's counsel in the Bank's own filing in this Action. The admission was not made in error, was not made under duress, and was not subsequently retracted. The admission was made in the context of a Court status filing and constitutes a judicial admission for purposes of estoppel under American Title Insurance Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988), and Sicor Ltd. v. Cetus Corp., 51 F.3d 848, 859-860 (9th Cir. 1995), and successor authorities applying the doctrine of judicial estoppel.**

**70B.  The substance of the Bank's admission is unambiguous. The Bank acknowledged in a public court filing that its own internal assessment of Williams's collectability was that Williams was "probably not collectable." This admission necessarily reflects the Bank's prior knowledge that the prospect of monetary recovery from Williams personally was speculative at best, and that the financial benefit to the Bank of continued litigation against Williams was not commensurate with the burden imposed upon Williams.**

50

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

**70C. The Bank's decision to thereafter file the First Amended Complaint (Dkt. 154) re-adding Williams as a personal defendant, notwithstanding the Bank's own admission of probable non-collectability, demonstrates a litigation purpose that is, at minimum, inconsistent with the rational pursuit of recovery and, at maximum, designed to impose harm on Williams that is independent of any expected monetary recovery. This includes harm consisting of: (a) defense cost imposition on Williams personally; (b) reputational injury to Williams in business and professional communities; (c) leverage in collateral negotiations with other parties; and (d) impairment of Williams's prospective economic relationships and business opportunities.**

**70D. The Bank's conduct following its own admission supports inferences of (i) the Bank's pre-litigation knowledge of Matheny's structurally irregular origination conduct, as further evidenced by the December 26 through 27, 2023 Hernandez communications referenced above; (ii) the Bank's conscious disregard of Williams's rights under California Civil Code section 3294; (iii) the Bank's unfair business practices within the meaning of California Business and Professions Code section 17200; and (iv) the Bank's tortious interference with Williams's prospective economic relationships, each as alleged with greater specificity in the Counterclaim claims set forth herein.**

**70E. The Bank's "probably not collectable" admission is incorporated by reference into each of Williams's claims for relief asserted in the Counterclaim, Cross-Claim, and Third-Party Complaint set forth herein, as evidence bearing upon the Bank's knowledge, intent, and motive in each respect alleged, and not as an independent basis for liability.**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

*J.  Post-Petition Overt Acts of the Conspirators*

71.    Williams filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code on October 4, 2024, in the United States Bankruptcy Court for the Southern District of California (Case No. 24-03761-CL7). Williams received his discharge under 11 U.S.C. § 727 on January 7, 2025.

**72.    After the petition date of October 4, 2024, and after the discharge of January 7, 2025, Ortiz, Matheny, the Bank, and others engaged in the following post-petition course of conduct, and the following post-petition events occurred, which Williams alleges as the chronology and factual context relevant to the claims herein: (a) on September 19, 2025, Ortiz filed his cross-complaint in this action (Dkt. 84) asserting that Williams, rather than Ortiz himself, bore responsibility for the very EFA conduct that Ortiz had executed as sole personal guarantor and as the 80% controlling member; (b) on October 10, 2025, Ortiz filed an amended cross-complaint (Dkt. 89) reasserting and expanding the claims against Williams; (c) on or about October 9, 2025, Washworld's Vice President of Sales & Marketing Richard Andreas issued a letter terminating Washworld's distributor relationship with CWM, citing the cost or risk associated with this lawsuit, in circumstances that on information and belief facilitated Washworld's direct dealing with H&S Energy LLC; (d) on December 29, 2025, Ortiz filed a request for entry of clerk's default against Williams (Dkt. 128) notwithstanding Williams's bankruptcy discharge of pre-petition liabilities; (e) on September 18, 2025, the Bank filed Dkt. 82 acknowledging that Williams was "probably not collectable," yet thereafter the Bank elected to re-add Williams as a personal defendant; (f) on February 23, 2026, the Bank filed its Motion for Leave to File a First Amended Complaint (Dkt. 146) seeking to re-add Williams; (g) on**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

**March 17, 2026, the Bank filed its First Amended Complaint (Dkt. 154) re-adding Williams as a defendant on the Fourth Cause of Action for fraud/concealment; (h) on March 31, 2026, the Bank caused its agent Nationwide Legal, LLC to attempt service of the First Amended Complaint on Williams at 12136 Avenida Sivrita, San Diego, California 92128 (an address with which Williams has historical family association but which was not Williams's residence at the time of the attempted service, and an address that was not even the historical office of CWM at "9030 Kenamar Dr Unit 315, San Diego, CA 92121" as reflected in the Bank's own funding records) and on April 6, 2026, filed proofs of service for that defective service attempt (Dkts. 156, 157); (i) on May 6, 2026, the Bank caused its agent Nationwide Legal, LLC to mail copies of the First Amended Complaint by first-class mail to Williams's commercial mail receiving agency in Overland Park, Kansas, rather than by "leaving a copy ... with the commercial mail receiving agency" as expressly ordered by this Court in its April 30, 2026 Order (Dkt. 169); (j) at all relevant times after the petition date, Matheny continued in his employment with the Bank in the petroleum/c-store retail industry vertical that overlaps with H&S Energy's business, on information and belief continuing to maintain customer relationships with the very community of borrowers (including Ortiz and H&S Energy) implicated in the diversion of CWM's business; and (k) throughout the post-petition period, Matheny continued in his employment with the Bank without disclosing to the Bank's internal compliance, audit, or litigation-supervision personnel the documented patterns of structurally irregular originations described in Sections G.2 (Zavaro Inc.) and G.3 (Yostina Inc./Petit) above, thereby permitting the Bank to proceed against Williams personally in this litigation without internal**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

**knowledge of Matheny's prior documented conduct in materially identical transactions. Williams asserts no claim for relief premised upon, and seeks no liability arising from, the filing, content, or prosecution of any pleading, motion, or paper in this Action; the subparagraphs above that refer to such filings are recited solely to establish the timing and chronology of post-petition events. The wrongful conduct underlying Williams's claims consists of the non-litigation acts alleged herein, including without limitation the diversion of CWM's customers, vendors, and business to H&S Energy LLC, ProElite Car Wash Services, Inc., ProElite Car Wash Services, LLC, and Washworld; Ortiz's acceptance of employment with H&S Energy LLC; and the placement and maintenance of the Subject Property beyond the reach of Ortiz's creditors.**

73. The overt acts described in paragraph 72 (a) through (k) above were each committed with knowledge of the underlying scheme and with the intent to: (i) preserve the Matheny-architected structure of the EFA and shield Matheny and Ortiz from accountability for their roles in the loan scheme; (ii) shift blame and exposure for the alleged "Mistaken Payment" to Williams personally; (iii) facilitate the continued transfer of CWM's customer relationships and business opportunities to H&S Energy and other entities aligned with Ortiz; (iv) maintain the placement of the Subject Property in the Trust beyond the reach of Ortiz's creditors, including Williams; and (v) coerce Williams to settle with the Bank notwithstanding the Bank's own admission of non-collectability and the absence of a viable theory of personal liability against Williams.

*K.  Matheny's Pattern of Structurally Irregular Originations Across Multiple Borrowers*

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

73A.  Williams is informed and believes, and on that basis alleges, that the structural irregularities in the CWM/EFA transaction described above are not isolated to CWM but are part of a broader pattern of conduct by Peter Matheny in his loan origination practice at Ascentium Capital. The pattern is observable across at least three documented transactions over a period of approximately four years involving California small-business borrowers in or adjacent to Matheny's industry vertical at Ascentium Capital, which on information and belief is retail petroleum, convenience stores, fuel wholesalers, and car wash equipment serving those verticals.

73AA.    The 2021 Yostina Inc. / Petit Auto Wash Transaction. In or about 2021, Ascentium Capital, by and through Matheny as loan officer, originated an equipment finance transaction for Yostina Inc., a California small business owned and operated by an individual identified publicly as Ramzy (the "Yostina Principal"). The equipment vendor identified in connection with the transaction was Petit Auto Wash, Inc. On information and belief, in connection with that transaction, Matheny transmitted written instructions to Petit Auto Wash, Inc. directing the precise dollar amount and the addressee that vendor invoices for the Yostina transaction should reflect. On information and belief, these instructions reflected loan officer-directed invoice content rather than vendor-originated documentation in the ordinary course of equipment finance practice.

73AB.    The 2023 Zavaro Inc. Transaction. In or about August 2023, Ascentium Capital, by and through Matheny as loan officer, originated an equipment finance transaction for Zavaro Inc., a California small business. The loan was designated by Ascentium Capital as Loan No. 2729070. On information and belief, the Zavaro transaction resulted in a duplicate funding

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

event in which the same equipment was funded twice through Ascentium Capital, with the consequence that approximately $130,107.47 of duplicate-payment proceeds were transferred to a non-Zavaro third party (specifically, CWM) and remain unreconciled and outstanding to Zavaro Inc. on Loan No. 2729070 to the present date. The Zavaro transaction reflects post-funding events inconsistent with the underwritten purpose of the loan and parallels the post-funding diversion of proceeds in the CWM transaction alleged above.

73AC.     The 2024 CWM/EFA Transaction. The 2024 CWM/EFA transaction is described in detail in Sections III.B through III.J above. The CWM transaction shared with the Yostina (2021) and Zavaro (2023) transactions common structural features including, without limitation: (a) origination by Matheny; (b) participation by a California small-business borrower in the petroleum or car wash equipment vertical; (c) post-funding events inconsistent with the underwritten purpose; (d) loan officer involvement in matters typically left to vendor or borrower discretion; and (e) absence of documented Bank corrective action notwithstanding actual or constructive knowledge of structural irregularity.

73AD.     Common Pattern Features. The 2021 Yostina, 2023 Zavaro, and 2024 CWM transactions exhibit the following common features that, in the aggregate and over time, support an inference of pattern rather than coincidence: (a) same loan officer (Matheny); (b) common industry vertical (Matheny's specialty at Ascentium Capital); (c) California small-business borrowers; (d) loan officer-directed transactional content (invoices, vendor selections, or both); (e) related-party or affiliate dynamics in vendor-customer relationships; (f) bypass or workarounds of Bank internal controls; (g) post-funding events inconsistent with the underwritten purpose; and (h) continued

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

Bank employment of Matheny in the same vertical notwithstanding actual or constructive knowledge of structural irregularity.

73AE.    **Bank Knowledge of Pattern.** On information and belief, the records of the 2021 Yostina, 2023 Zavaro, and 2024 CWM transactions were each generated on Bank servers, transmitted from Bank email accounts, and stored in the Bank's records-management systems. The Bank had constructive knowledge of the pattern by reason of its own document retention and supervisory record-keeping obligations. The Bank's failure to identify and remediate the pattern is itself a separate and continuing supervisory failure, in addition to and apart from the failures specifically attributable to the CWM/EFA transaction.

73AF.    **Affected Witnesses.** The Yostina Principal (Ramzy), the Zavaro Inc. principal, the former or current Ascentium Capital credit underwriter Lara C. Hernandez, and other Ascentium Capital personnel with knowledge of Matheny's origination portfolio are, on information and belief, witnesses with relevant knowledge of the pattern of conduct alleged in this Section III.K. Williams's investigation into the pattern is ongoing and the full extent of Matheny's irregular origination practice may include additional borrowers and transactions not currently known to Williams.

73AG.    **Reservation for Future Claims.** Williams expressly reserves the right under Federal Rule of Civil Procedure 15 to seek leave to amend this pleading to include additional claims, including without limitation claims under the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., based on the pattern of conduct described in this Section III.K, upon and to the extent that further discovery and witness cooperation in respect of the Yostina, Zavaro, and other affected transactions

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**develops admissible evidence supporting predicate acts and other RICO elements.**

## IV.  ANSWER TO FIRST AMENDED COMPLAINT

Defendant Andrew P. Williams ("Williams"), pro se, hereby answers Plaintiff Regions Bank dba Ascentium Capital's ("Plaintiff" or "Ascentium") First Amended Complaint ("FAC"), filed March 17, 2026, as follows:

Pursuant to Federal Rule of Civil Procedure 8(b)(3), Williams denies each and every allegation contained in the FAC except as expressly admitted or qualified below. Williams's silence as to any specific allegation, including allegations contained in headings or unnumbered paragraphs, shall not be deemed an admission. Williams files this Answer without waiver of, and expressly reserving, his objections to the sufficiency of the Bank's purported service of the First Amended Complaint as set forth in the Twenty-Ninth Affirmative Defense below. Williams reserves the right to assert additional defenses and counterclaims as further information is developed through discovery.

**A.  Parties (FAC ¶¶ 1 through 8)**

**FAC ¶ 1.    Williams lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph and on that basis denies them.**

**FAC ¶ 2.    Williams admits that Car Wash Management, LLC (the Debtor under the EFA) is a Delaware limited liability company. Williams further alleges that a separate entity, Car Wash Management, LLC (Hawaii), is a Hawaii limited liability company organized solely for the purpose of holding a Hawaii state government contract, and is not the same entity as the**

58

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

**Debtor and is not a party to the EFA. Williams denies any allegation suggesting the two entities are the same. Williams lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations and on that basis denies them.**

**FAC ¶ 3.    Williams admits only that West Covina Car Wash LLC is a California limited liability company. Williams further alleges that he has no direct membership or ownership interest in West Covina Car Wash LLC. Williams lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations and on that basis denies them.**

**FAC ¶ 4.    Williams admits that Jose Rene Ortiz is an individual and that, following the January 2024 restructure directed by Bank loan officer Peter Matheny, Ortiz holds the controlling eighty percent (80%) membership interest in CWM and was the Managing Member with day-to-day operational and financial control. Williams further alleges that Ortiz has since abandoned his role in the management and operations of CWM. Williams lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations regarding Ortiz's residency and other matters and on that basis denies them.**

**FAC ¶ 5.    Williams admits that he is an individual. Williams denies that he resides in San Diego, California; Williams's mailing address is 12641 Antioch Road, Suite #1045, Overland Park, Kansas 66213. Williams admits that, at relevant times concerning the EFA, he was a ten percent (10%) post-restructure member of CWM, a Manager of CWM, and Chief Executive Officer of CWM. Williams denies that he was a sixty percent (60%) member at all relevant times to the EFA, as the restructure to ten percent (10%) occurred in January 2024 at the direction of Bank loan officer Peter Matheny.**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

Williams further denies that he signed the EFA, the Personal Guaranty, or any related loan documents. Except as so admitted, Williams denies the allegations contained in this paragraph.

FAC ¶ 6.    Williams admits only that Washworld, Inc. is a Wisconsin corporation. Williams lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations and on that basis denies them.

FAC ¶ 7.    The allegations contained in this paragraph concerning DOE defendants are conclusions of law and require no response. To the extent any response is required, Williams denies the allegations contained in this paragraph as to himself.

FAC ¶ 8.    The allegations contained in this paragraph regarding agency, employment, joint venture, conspiracy, and alter ego among defendants are conclusions of law and require no response. To the extent any response is required, Williams denies that he was the agent, employee, partner, joint venturer, alter ego, or co-conspirator of any other defendant. Williams further denies that he acted in concert with or on behalf of Ortiz, Matheny, Washworld, or any other defendant in connection with the events alleged in the FAC. Williams affirmatively alleges, as set forth in his counterclaim, cross-claim, and third-party complaint, that Ortiz, Matheny, and Washworld acted in concert against Williams's interests. Williams denies the remaining allegations of this paragraph.

B.  Jurisdiction and Venue (FAC ¶¶ 9 through 11)

FAC ¶ 9.    Williams admits that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 by reason of complete diversity and

60

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

an amount in controversy in excess of $75,000. Williams denies any remaining allegations of this paragraph.

FAC ¶ 10.   Williams admits that venue is proper in this District under 28 U.S.C. § 1391(b). Except as so admitted, Williams denies the allegations contained in this paragraph.

FAC ¶ 11.   Williams lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph regarding the inapplicability of the Rees-Levering Act and Unruh Act and on that basis denies them.

C.  General Allegations (FAC ¶¶ 12 through 26)

FAC ¶ 12.   Williams admits that on or about January 10, 2024, an Equipment Financing Agreement No. 2763169 was executed naming CWM as Debtor. Williams denies that he personally signed the EFA. Williams lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations and on that basis denies them.

FAC ¶ 13.   Williams admits that on or about February 28, 2024, at the instruction and request of Peter Matheny of Ascentium, Williams transmitted by email to Matheny a quotation form bearing Washworld branding for equipment, with Jose Rene Ortiz copied. Williams denies that he orally represented to Matheny that AVW was unable to deliver the equipment. Williams further denies the characterization of the email's contents as constituting a representation that CWM was placing or had placed an order with Washworld. Except as so admitted, Williams denies the allegations contained in this paragraph.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**FAC ¶ 14.** Williams admits that on or about March 7, 2024, an Addendum to the EFA, Agreement No. 2763169, was prepared by Bank and signed by Ortiz on behalf of CWM, changing the amount financed to $346,904.75. Williams denies that he personally signed the Addendum. Except as so admitted, Williams denies the allegations contained in this paragraph.

**FAC ¶ 15.** Williams admits that CWM was at relevant times an authorized distributor of Washworld products. Williams denies the characterization that the February 28, 2024 email referenced in paragraph 13 constituted a misrepresentation. Williams lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations and on that basis denies them.

**FAC ¶ 16.** Williams lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph regarding Ascentium's past dealings with Washworld or Washworld's Funding Instructions and on that basis denies them.

**FAC ¶ 17.** Williams lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph regarding the March 12, 2024 email sent by Ascentium to Washworld and on that basis denies them.

**FAC ¶ 18.** Williams admits that on or about March 11, 2024, the Bank wired loan proceeds to Washworld in connection with the EFA. Williams denies the allegation that the wire amount was $309,954.00 as inaccurate. On information and belief, the actual amount wired by the Bank to Washworld was $309,054.80 per the Bank's own funding records; the $899.20 discrepancy between the FAC's allegation and the actual wire amount is unexplained by the Bank and is incorporated into Williams's Fourth Claim for Relief as

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

**further indicia of the structurally irregular bookkeeping and origination conduct alleged therein. Except as expressly admitted and qualified, Williams denies the remaining allegations contained in this paragraph.**

**FAC ¶ 19.   Williams lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph regarding Washworld's inability to reconcile the funding and on that basis denies them.**

**FAC ¶ 20.   Williams denies that he never sent the Quote or Order to Washworld. Williams further denies that CWM did not order, or did not intend to order, the Equipment. Williams lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations regarding Washworld's contentions and on that basis denies them.**

**FAC ¶ 21.   Williams lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph regarding Washworld's knowledge or state of mind upon receipt of the Mistaken Payment and on that basis denies them.**

**FAC ¶ 22.   Williams lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph regarding Washworld's conduct in response to the Mistaken Payment and on that basis denies them.**

**FAC ¶ 23.  Williams admits that on or about May 23, 2024, Pete Matheny of Ascentium transmitted to Washworld a copy of the Quote referenced in the FAC. Williams denies that the Quote was received from Williams under circumstances giving rise to liability. Williams lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations and on that basis denies them.**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**FAC ¶ 24.** Williams lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph regarding Ascentium's declaration of default and acceleration and on that basis denies them. To the extent the paragraph alleges or implies wrongful conduct by Williams, Williams denies the allegations.

**FAC ¶ 25.** The allegations contained in this paragraph are directed at CWM, WCCW, and Ortiz and do not pertain to Williams individually. To the extent any response is required, Williams denies the allegations contained in this paragraph as to himself.

**FAC ¶ 26.** The allegations contained in this paragraph are directed at Washworld and do not pertain to Williams individually. To the extent any response is required, Williams denies the allegations contained in this paragraph as to himself.

**First Cause of Action: Breach of Equipment Finance Agreement (Against CWM) (FAC ¶¶ 27 through 32)**

**FAC ¶ 27.** The First Cause of Action is asserted against Car Wash Management, LLC, not against Defendant Williams. To the extent that the FAC contains any allegations under the First Cause of Action that purport to be directed at Williams or that incorporate prior allegations against Williams, Williams denies those allegations as to himself. The remaining allegations require no response from Williams.

**FAC ¶ 28.** The First Cause of Action is asserted against CWM, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**FAC ¶ 29.**  The First Cause of Action is asserted against CWM, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

**FAC ¶ 30.**  The First Cause of Action is asserted against CWM, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

**FAC ¶ 31.**  The First Cause of Action is asserted against CWM, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

**FAC ¶ 32.**  The First Cause of Action is asserted against CWM, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

**Second Cause of Action: Breach of Personal Guaranty (Against Ortiz) (FAC ¶¶ 33 through 38)**

**FAC ¶ 33.**  The Second Cause of Action is asserted against Jose Rene Ortiz, not against Defendant Williams. The allegations therein require no response from Williams. To the extent any response is required, Williams denies the allegations as to himself.

**FAC ¶ 34.**  The Second Cause of Action is asserted against Ortiz, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

**FAC ¶ 35.**  The Second Cause of Action is asserted against Ortiz, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**FAC ¶ 36.** The Second Cause of Action is asserted against Ortiz, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

**FAC ¶ 37.** The Second Cause of Action is asserted against Ortiz, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

**FAC ¶ 38.** The Second Cause of Action is asserted against Ortiz, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

**Third Cause of Action: Breach of Guaranty (Against WCCW) (FAC ¶¶ 39 through 44)**

**FAC ¶ 39.** The Third Cause of Action is asserted against West Covina Car Wash LLC, not against Defendant Williams. The allegations therein require no response from Williams. To the extent any response is required, Williams denies the allegations as to himself.

**FAC ¶ 40.** The Third Cause of Action is asserted against WCCW, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

**FAC ¶ 41.** The Third Cause of Action is asserted against WCCW, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

**FAC ¶ 42.** The Third Cause of Action is asserted against WCCW, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**FAC ¶ 43.   The Third Cause of Action is asserted against WCCW, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.**

**FAC ¶ 44.   The Third Cause of Action is asserted against WCCW, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.**

**Fourth Cause of Action: Fraud/Concealment (Against CWM, Williams, Ortiz, and Does 1-10) (FAC ¶¶ 45 through 53)**

**FAC ¶ 45.   The allegations of this paragraph incorporate by reference paragraphs 1 through 44 of the FAC. Williams's responses to those paragraphs are set forth above and are incorporated herein by reference. To the extent the paragraph purports to incorporate allegations of fraudulent or wrongful conduct as to Williams, Williams denies those allegations.**

**FAC ¶ 46.  Williams denies that he represented to Ascentium that CWM intended to order the Equipment stated in the Quote, that the Equipment had been delivered, or that all conditions to funding had been satisfied. Williams further denies the phrase 'CWM, through Williams and Ortiz, represented to Ascentium' as a legal characterization to which no response is required. To the extent any response is required, Williams denies all allegations of this paragraph as to himself.**

**FAC ¶ 47.   Williams denies that any representation attributed to him was false when made. Williams denies that he ever intended for CWM to fail to order or pay for the Equipment, or that he ever harbored or formed an intent to defraud Ascentium. Williams denies each remaining allegation of this paragraph as to himself.**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**FAC ¶ 48.   The allegations of this paragraph are directed at Ortiz, not Williams. To the extent the paragraph alleges or implies that Williams concealed any material fact, participated in any oral representation by Ortiz, or engaged in fraud, Williams denies those allegations. Williams denies each remaining allegation of this paragraph as to himself.**

**FAC ¶ 50.   Williams denies that Ascentium acted in justifiable reliance on any representation attributed to Williams. Ascentium's own credit officer Lara C. Hernandez identified the non-arm's-length structure of the transaction and the related-party relationships in advance of funding, defeating any claim of justifiable reliance. Williams denies the remaining allegations of this paragraph as to himself.**

**FAC ¶ 51.   Williams denies that any conduct attributable to him caused Ascentium to make the Mistaken Payment or to suffer any damages. Williams denies that he made any representations on which Ascentium reasonably or justifiably relied. Williams denies the remaining allegations of this paragraph as to himself.**

**FAC ¶ 52.   Williams denies that he proximately caused any damages to Ascentium. Williams denies that he made any fraudulent representations. Williams further pleads that any damages alleged by Ascentium were proximately caused by Ascentium's own conduct, including the conduct of its loan officer Peter Matheny, and not by any act or omission of Williams. Williams denies each remaining allegation of this paragraph as to himself.**

**FAC ¶ 53. Williams denies the allegations of this paragraph categorically as to himself. Williams denies that any conduct attributed to him was undertaken with malice, oppression, or fraud within the meaning of California Civil Code § 3294. Williams further denies that he was a managing**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

agent of CWM at the time of any alleged conduct in a manner that would support imposition of punitive damages. Williams denies that Ascentium is entitled to punitive or exemplary damages from Williams.

**Fifth Cause of Action: Recovery for Payment of Money Paid by Mistake (Against Washworld) (FAC ¶¶ 54 through 58)**

FAC ¶ 54.   The Fifth Cause of Action is asserted against Washworld, not against Defendant Williams. The allegations therein require no response from Williams. To the extent any response is required, Williams denies the allegations as to himself.

FAC ¶ 55.   The Fifth Cause of Action is asserted against Washworld, not Williams. To the extent the paragraph alleges that Ascentium was fraudulently induced to make the Mistaken Payment by Williams's conduct, Williams denies that allegation. Williams denies the remaining allegations as to himself.

FAC ¶ 56.   The Fifth Cause of Action is asserted against Washworld, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

FAC ¶ 57.   The Fifth Cause of Action is asserted against Washworld, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

FAC ¶ 58.   The Fifth Cause of Action is asserted against Washworld, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

**Sixth Cause of Action: Breach of Contract (Against Washworld) (FAC ¶¶ 59 through 63)**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**FAC ¶ 59.**  The Sixth Cause of Action is asserted against Washworld, not against Defendant Williams. The allegations therein require no response from Williams. To the extent any response is required, Williams denies the allegations as to himself.

**FAC ¶ 60.**  The Sixth Cause of Action is asserted against Washworld, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

**FAC ¶ 61.**  The Sixth Cause of Action is asserted against Washworld, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

**FAC ¶ 62.**  The Sixth Cause of Action is asserted against Washworld, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

**FAC ¶ 63.**  The Sixth Cause of Action is asserted against Washworld, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

**Seventh Cause of Action: Money Had and Received (Against Washworld) (FAC ¶¶ 64 through 65)**

**FAC ¶ 64.** The Seventh Cause of Action is asserted against Washworld, not against Defendant Williams. The allegations therein require no response from Williams. To the extent any response is required, Williams denies the allegations as to himself.

**FAC ¶ 65.** The Seventh Cause of Action is asserted against Washworld, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**Eighth Cause of Action: Conversion (Against Washworld), DISMISSED PER DKT. 167 (FAC ¶¶ 66 through 75)**

**FAC ¶ 66.   The Eighth Cause of Action was dismissed by Order of the Court entered April 29, 2026 (Dkt. 167) on Washworld's Motion to Dismiss. To the extent any response is nevertheless required, the Eighth Cause of Action was asserted against Washworld, not against Defendant Williams, and Williams denies the allegations contained therein as to himself.**

**FAC ¶ 67.   The Eighth Cause of Action has been dismissed (Dkt. 167). No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.**

**FAC ¶ 68.   The Eighth Cause of Action has been dismissed (Dkt. 167). No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.**

**FAC ¶ 69.   The Eighth Cause of Action has been dismissed (Dkt. 167). No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.**

**FAC ¶ 70.   The Eighth Cause of Action has been dismissed (Dkt. 167). No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.**

**FAC ¶ 71.   The Eighth Cause of Action has been dismissed (Dkt. 167). No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.**

**FAC ¶ 72.   The Eighth Cause of Action has been dismissed (Dkt. 167). No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**FAC ¶ 73.** The Eighth Cause of Action has been dismissed (Dkt. 167). No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

**FAC ¶ 74.** The Eighth Cause of Action has been dismissed (Dkt. 167). No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

**FAC ¶ 75.** The Eighth Cause of Action has been dismissed (Dkt. 167). No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

**Response to Prayer for Relief**

**Williams denies that Plaintiff is entitled to any of the relief requested in the Prayer for Relief of the FAC against Williams personally. Williams further denies that Plaintiff is entitled to any judgment, damages, restitution, interest, attorneys' fees, costs, punitive or exemplary damages, or any other relief against Williams. Williams prays that Plaintiff take nothing by way of its First Amended Complaint as against Williams, that judgment be entered in favor of Williams, and that Williams be awarded his costs of suit and such other and further relief as the Court deems just and proper.**

## V.  AFFIRMATIVE DEFENSES

Without conceding that he bears the burden of proof or persuasion as to any of these matters, and reserving the right to assert additional defenses as further information is developed through discovery, Defendant Andrew P. Williams asserts the following separate and additional affirmative defenses to each and every cause of action asserted against him in the First Amended Complaint:

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

*FIRST AFFIRMATIVE DEFENSE  (Failure to State a Claim Upon Which Relief Can Be Granted)*

The First Amended Complaint, and each cause of action asserted against Williams therein, fails to state a claim upon which relief can be granted. The Fourth Cause of Action for Fraud/Concealment fails to satisfy the heightened pleading standard required by Federal Rule of Civil Procedure 9(b), as set forth more fully below. Specifically as to the Fourth Cause of Action for Fraud/Concealment, the First Amended Complaint fails to satisfy the plausibility pleading standard of Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), and further fails to satisfy Federal Rule of Civil Procedure 9(b) in that the FAC fails to allege, as to Williams individually, with the particularity required by Rule 9(b): (i) the specific content of any representation made by Williams personally as distinct from any representation made by CWM as the contracting entity; (ii) the date, time, and place at which any specific Williams representation was made; (iii) the medium (oral, written, email, text, or other) through which any specific Williams representation was communicated to Ascentium; (iv) the identity of the specific Ascentium employee to whom any Williams representation was made; (v) how any Williams representation was false or misleading when made; (vi) the basis for any purported justifiable reliance by Ascentium, in light of Ascentium's own credit officer Lara C. Hernandez's December 27, 2023 written determination that 'We cannot finance a transaction where customer and vendor do not have an arm's length distance,' which determination preceded and contradicts any reliance theory; and (vii) the causation chain by which any Williams representation proximately caused any specific damage to Ascentium, given that the loan was executed by Ortiz, funded by Bank's own decision following Hernandez's objection, and applied to existing CWM vendor relationships as

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

alleged in Williams's Counterclaim. Williams reserves the right, by separate motion, to seek dismissal of the Fourth Cause of Action under Federal Rule of Civil Procedure 12(b)(6) and/or to strike portions thereof under Rule 12(f) on grounds including but not limited to the 9(b) particularity defects identified herein.

**SECOND AFFIRMATIVE DEFENSE [INTENTIONALLY OMITTED]**

***THIRD AFFIRMATIVE DEFENSE  (No Personal Liability Under the EFA or Personal Guaranty)***

Williams is not personally liable under the EFA or the Personal Guaranty because he did not sign the EFA, did not sign the Personal Guaranty, did not guarantee any of CWM's obligations to the Bank, and is not a party to any contractual instrument with the Bank that imposes personal liability.

***FOURTH AFFIRMATIVE DEFENSE  (No Personal Misrepresentation)***

Plaintiff's claim for Fraud/Concealment against Williams fails because Williams did not personally make any false representation of material fact to the Bank, did not personally conceal any material fact from the Bank, did not act with intent to deceive the Bank, did not know any representation to be false at the time it was made, and did not benefit from any alleged misrepresentation or concealment.

***FIFTH AFFIRMATIVE DEFENSE  (Reliance on Conduct and Documented Instructions of Bank's Loan Officer)***

To the extent Williams transmitted any document, communication, or signature in connection with the EFA, Williams reasonably and in good faith relied on the conduct, documented instructions, and apparent authority of Matheny in his capacity as the Bank's authorized loan officer, including but not limited to Matheny's documented instructions concerning the means of transmitting loan documents (bypass of the Bank's internal upload portal), the identity of the borrower (substitution of CWM for WCCW), the substitution of the equipment

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

vendor (AVW to Washworld), and the Bank's actual funding of the loan and acceptance of the resulting flow of funds as indicia that the transaction structure was permissible. Williams's reliance on the Bank's loan officer and on the Bank's own funding conduct was justified and forecloses any claim of personal fraud.

***SIXTH AFFIRMATIVE DEFENSE  (Failure to Plead Fraud with Particularity)***

Plaintiff's Fourth Cause of Action for Fraud/Concealment fails to allege fraud with the particularity required by Federal Rule of Civil Procedure 9(b). The First Amended Complaint further fails to allege facts plausibly establishing each element of fraud as required by Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Plaintiff fails to allege, with the specificity required by Rule 9(b), the date, time, place, exact words, audience, manner, and falsity of any specific representation by Williams; fails to allege the specific facts evidencing scienter as to Williams; fails to differentiate among the alleged misrepresentations of multiple defendants such that Williams can ascertain what representations Plaintiff attributes to him personally; and fails to plead the requisite reliance and causation specific to Williams. Williams reserves the right to seek dismissal of the Fourth Cause of Action under Rule 12(b)(6), or in the alternative a more definite statement under Rule 12(e).

***SEVENTH AFFIRMATIVE DEFENSE  (Failure of Consideration)***

To the extent any obligation of Williams is asserted under or in connection with the EFA, such obligation is barred or reduced by a failure of consideration, in that the loan was funded against documentation that did not match the actual use of proceeds permitted by the Bank's own loan officer.

***EIGHTH AFFIRMATIVE DEFENSE  (Failure of Condition Precedent)***

Plaintiff's claims are barred or reduced by Plaintiff's failure to satisfy conditions precedent to recovery, including but not limited to the Bank's failure to conduct

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

proper underwriting and to comply with its own internal compliance and origination protocols.

***NINTH AFFIRMATIVE DEFENSE  (Lack of Proximate Cause)***

Any loss Plaintiff claims to have suffered was not proximately caused by any conduct of Williams. Such loss, if any, was caused by the conduct of Ortiz (who executed the loan documents and made the verbal verifications), Matheny (who architected the loan structure, bypassed the Bank's standard underwriting protocols, and directed the use of the Washworld Chula Vista quote to size the loan), the Bank itself (which funded notwithstanding Hernandez's December 2023 written warning), and other parties. The proximate cause of Plaintiff's alleged loss is the conduct of these other parties, not the conduct of Williams.

***TENTH AFFIRMATIVE DEFENSE  (No Damages)***

Plaintiff has not been damaged by any conduct of Williams. Loan proceeds were deployed in the acquisition of car wash equipment (specifically, the Washworld-supplied equipment at the Chula Vista site, the application of approximately $132,509.09 against CWM's pre-existing Chula Vista trade balance for that equipment, and the car wash equipment at the West Covina tunnel car wash facility identified in paragraph 41 above), all of which equipment exists, has been installed, and remains available to Plaintiff for the exercise of its secured remedies under the EFA. Plaintiff's damages, if any, were caused by other parties or by Plaintiff's own conduct (including its loan officer's non-standard structuring of the transaction and, on information and belief, the Bank's non-perfection of its security interest as alleged in paragraph 42A above), and are not recoverable from Williams.

***ELEVENTH AFFIRMATIVE DEFENSE  (Comparative Fault of Plaintiff and Others)***

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

Any damages Plaintiff claims to have suffered were caused, in whole or in part, by the comparative fault of Plaintiff (through Matheny), Ortiz, Washworld, AVW, and other parties. Any recovery from Williams must be reduced in proportion to the comparative fault of these other parties.

***TWELFTH AFFIRMATIVE DEFENSE  (Failure to Mitigate)***

Plaintiff failed to mitigate its damages, including but not limited to (a) failing to pursue collection from Ortiz on the Personal Guaranty in a timely manner; (b) failing to seek repossession of collateral; (c) failing to act on knowledge of the alleged Mistaken Payment in a timely manner; and (d) failing to undertake reasonable efforts to recover from other parties responsible for the alleged loss.

***THIRTEENTH AFFIRMATIVE DEFENSE  (Setoff and Recoupment)***

Williams is entitled to setoff and recoupment against any judgment in favor of Plaintiff by reason of Williams's counterclaims against Plaintiff set forth herein, including for negligent supervision and declaratory relief.

***FOURTEENTH AFFIRMATIVE DEFENSE  (Negligent Supervision of Loan Officer)***

Plaintiff's claims are barred or reduced by Plaintiff's negligent supervision of its loan officer Matheny, who originated and structured the loan in his individual capacity and outside the scope of any legitimate authority granted to him by Plaintiff. Plaintiff knew or should have known of Matheny's irregular conduct in originating loans, including the bypass of standard underwriting protocols, the use of a Chula Vista quote to size a West Covina loan, and the routing of funds back to CWM for non-equipment uses, and Plaintiff's failure to supervise Matheny is a proximate cause of Plaintiff's alleged loss.

***FIFTEENTH AFFIRMATIVE DEFENSE  (Unclean Hands)***

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

Plaintiff's claims are barred by the doctrine of unclean hands by reason of the conduct of Plaintiff's agent Matheny in originating and structuring the loan in a manner that circumvented the Bank's own internal controls.

***SIXTEENTH AFFIRMATIVE DEFENSE  (In Pari Delicto)***

To the extent the loan transaction is alleged to involve any wrongdoing, Plaintiff (through its agent Matheny) was a participant in that wrongdoing and is therefore barred from recovery under the doctrine of in pari delicto.

***SEVENTEENTH AFFIRMATIVE DEFENSE  (Ratification, Waiver, and Estoppel)***

Plaintiff's claims against Williams are barred, in whole or in part, by the doctrines of ratification, waiver, and estoppel, in that Plaintiff funded the loan based upon the documents executed by Ortiz, has accepted payments on the loan, and has by its conduct ratified the transaction as structured by Matheny and Ortiz.

***EIGHTEENTH AFFIRMATIVE DEFENSE  (Statute of Limitations)***

To the extent Plaintiff's claims accrued more than the applicable limitations period prior to the filing of the operative complaint, such claims are time-barred.

***NINETEENTH AFFIRMATIVE DEFENSE  (Lack of Standing)***

To the extent Plaintiff's claims rest on rights or obligations owed to entities other than Plaintiff, Plaintiff lacks standing to assert such claims.

***TWENTIETH AFFIRMATIVE DEFENSE  (Justification, Privilege, and Good Faith)***

Any conduct of Williams complained of by Plaintiff was justified, privileged, undertaken in good faith, and not actionable.

***TWENTY-FIRST AFFIRMATIVE DEFENSE  (Apportionment)***

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

Any liability of Williams must be apportioned among all responsible parties, including Ortiz, Matheny, Washworld, AVW, and other parties whose conduct contributed to Plaintiff's alleged damages.

***TWENTY-SECOND AFFIRMATIVE DEFENSE  (No Punitive Damages)***

Plaintiff is not entitled to punitive damages against Williams because Williams did not engage in conduct constituting malice, oppression, or fraud, and any imposition of punitive damages would violate Williams's rights under the United States Constitution and the California Constitution.

***TWENTY-THIRD AFFIRMATIVE DEFENSE  (Acts of Others Beyond Williams's Control)***

Any loss alleged by Plaintiff was caused by acts of others, including Ortiz, Matheny, Washworld, and other parties, that were beyond Williams's knowledge, control, or ability to prevent.

***TWENTY-FOURTH AFFIRMATIVE DEFENSE  (No Personal Benefit)***

Williams did not personally benefit, directly or indirectly, from the alleged Mistaken Payment, from any portion of the loan proceeds (the $132,509.09 refunded by Washworld to CWM was deployed by CWM, not by Williams personally, in its entirety to acquire car wash equipment for the West Covina tunnel car wash facility, as more fully identified in paragraph 41 above, all of which equipment is owned by CWM, is located at the West Covina site, and is available to Plaintiff for the exercise of its secured remedies under the EFA), from any aspect of the Zavaro Inc. or Yostina Inc./Petit transactions described in Sections G.2 and G.3 above, or from any other conduct giving rise to the Bank's alleged loss.

***TWENTY-FIFTH AFFIRMATIVE DEFENSE  (Reservation of Defenses)***

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

Williams reserves the right to assert additional affirmative defenses as further information is developed through discovery. The defenses asserted herein are based on information presently available to Williams, and Williams's investigation is ongoing.

***TWENTY-SIXTH AFFIRMATIVE DEFENSE  (Failure to Join Necessary Party Under Rule 19: Matheny)***

To the extent Plaintiff seeks to impose personal liability on Williams predicated on the conduct of Pete Matheny, Plaintiff has failed to join Matheny as a party to this action as required by Federal Rule of Civil Procedure 19. Matheny is a person needed for just adjudication because (a) complete relief cannot be accorded among the existing parties without Matheny's joinder; (b) Matheny claims an interest relating to the subject of the action and disposition in his absence may impair or impede his ability to protect that interest, or leave existing parties subject to risk of inconsistent obligations; and (c) the disposition of Plaintiff's claims in Matheny's absence would prejudice Williams. Williams is concurrently filing a Third-Party Complaint joining Matheny as a Third-Party Defendant to this action.

***TWENTY-SEVENTH AFFIRMATIVE DEFENSE  (Failure to Join Necessary Party Under Rule 19: Beaudoin)***

To the extent Plaintiff's claims against Williams are predicated on conduct of CWM's members or managers, Plaintiff has failed to join Travis Beaudoin, the other 10% post-restructure minority member of CWM, as a party. Williams reserves all rights with respect to such non-joinder.

***TWENTY-EIGHTH AFFIRMATIVE DEFENSE  (Bankruptcy Discharge and Estate Property)***

Williams filed a voluntary petition under Chapter 7 of the Bankruptcy Code on October 4, 2024, in the United States Bankruptcy Court for the Southern District of

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

California (Case No. 24-03761-CL7), and received his discharge under 11 U.S.C. § 727 on January 7, 2025. To the extent Plaintiff's claims against Williams arise from pre-petition conduct and seek to impose personal liability on Williams for obligations that arose pre-petition, such claims are barred by Williams's discharge under 11 U.S.C. § 727. To the extent Plaintiff's claims include causes of action that constitute property of Williams's bankruptcy estate under 11 U.S.C. § 541, such claims may be barred or subject to assertion only by the Chapter 7 Trustee. Williams reserves all rights with respect to such claims, including the right to seek relief in the Bankruptcy Court.

***TWENTY-NINTH AFFIRMATIVE DEFENSE  (Insufficient Service of Process: FRCP 12(b)(5) (Service Defect))***

Plaintiff's purported service of the First Amended Complaint upon Williams, evidenced by Proof of Service filed May 12, 2026 (Dkt. 173), was insufficient under Federal Rule of Civil Procedure 4. The Court's Order of April 30, 2026 (Dkt. 169) expressly directed Plaintiff to serve Williams "by leaving a copy of the summons and the First Amended Complaint with the commercial mail receiving agency located at 12641 Antioch Rd., Suite #1045, Overland Park, KS 66213" pursuant to California Code of Civil Procedure § 415.20(c). Plaintiff's Proof of Service (Dkt. 173) reflects that Plaintiff did not effect service by "leaving a copy … with the commercial mail receiving agency," but instead caused its agent Nationwide Legal, LLC, on May 6, 2026, to mail copies of the summons and the First Amended Complaint by first-class mail from Los Angeles, California to the commercial mail receiving agency. Mailing copies to the commercial mail receiving agency is materially different from leaving copies with the commercial mail receiving agency, and does not comply with the Court's Order or with Section 415.20(c). Williams therefore objects to the sufficiency of service and reserves all

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

rights under Rules 12(b)(5) and 12(h)(1) without prejudice to the filing of this responsive pleading. The filing of this responsive pleading shall not be construed as a waiver of, or concession with respect to, Williams's objection to service.

## VI.  RESERVATION OF ESTATE AND CWM-DERIVATIVE CLAIMS

Williams expressly reserves all rights to amend this pleading under Federal Rule of Civil Procedure 15 to assert additional claims that, as of the date of this filing, are reserved for future adjudication in the appropriate procedural posture, including without limitation:

(a) claims that constitute property of Williams's bankruptcy estate under 11 U.S.C. § 541, and as construed by Hamilton v. State Farm Fire & Casualty Co., 270 F.3d 778 (9th Cir. 2001) (judicial estoppel principles applied to claims subject to bankruptcy disclosure), which may be asserted by Williams in this action upon abandonment by the Chapter 7 Trustee pursuant to 11 U.S.C. § 554, including claims for pre-petition fraud, pre-petition negligent supervision, civil theft under California Penal Code § 496(c), and related causes of action against Ortiz, Matheny, and the Bank;

(b) claims that are derivative of Car Wash Management, LLC (Delaware), which Williams, as a pro se litigant, lacks standing to assert in this action under Rowland v. California Men's Colony, 506 U.S. 194 (1993), and Simon v. Hartford Life, Inc., 546 F.3d 661 (9th Cir. 2008), including without limitation claims for breach of fiduciary duty, faithless servant compensation forfeiture, conversion, breach of the EFA, and aiding and abetting breach of fiduciary duty;

(c) claims that may be more appropriately asserted by the Chapter 7 Trustee, by CWM through its retained counsel of record, or by Williams in a separate action, including claims arising under RICO, claims for tortious interference with business

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

relationships, and claims against H&S Energy LLC, ProElite, Veritech, Specialty Car Wash Systems, Washworld, and other entities whose conduct may give rise to liability; and

(d) claims that may arise from facts hereafter disclosed through discovery, including claims against ROES 1 through 50 whose identities and roles are not presently known to Williams.

Williams reserves all rights with respect to such claims and asserts herein only those claims for which he holds clear individual standing in his post-petition capacity. The absence of such claims from this pleading shall not be construed as a waiver, release, or abandonment of those claims.

Alternative Pleading Reservation: Without limiting the foregoing reservation, to the extent any factual averment or claim stated in this filing is properly characterized as derivative of CWM injury rather than direct to Williams under Tooley v. Donaldson, Lufkin & Jenrette, 845 A.2d 1031 (Del. 2004), or under California or federal law, Williams pleads the same averments in the alternative under Federal Rule of Civil Procedure 8(d)(2) and (d)(3), and Williams reserves the right (or, as applicable, the right of CWM or its proper representative) to assert any such averment or claim derivatively in this action or in a separate filing, without waiver. Plaintiff and other parties are placed on notice that the factual record set forth in this filing forms the foundation for parallel direct and derivative theories of recovery, and that the dismissal of any averment or claim herein as improperly characterized direct shall not be construed as an adjudication of the underlying facts or as a bar to the same averment or claim being asserted derivatively.

Reservation as to CWM's Separate Representation: Williams expressly acknowledges that Co-Defendant Car Wash Management LLC ("CWM") is a

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

separate legal entity subject to this Court's April 30, 2026 Order (Dkt. 169) directing CWM to retain counsel by June 1, 2026. Williams's individual claims, defenses, factual allegations, and reservations asserted in this pleading are made in Williams's individual capacity only. To the extent any claim, defense, factual allegation, or reservation set forth in this pleading would, if asserted by or on behalf of CWM, require CWM to appear through licensed counsel under 28 U.S.C. § 1654 and controlling authority including Rowland v. California Men's Colony, 506 U.S. 194, 201-202 (1993), and In re America West Airlines, 40 F.3d 1058, 1059 (9th Cir. 1994), Williams asserts such matter only in his individual capacity and expressly reserves CWM's separate right to assert any corresponding claim, defense, or position through counsel of CWM's choosing when retained. Nothing in this pleading shall be construed as Williams's appearance, representation, or authority to act on behalf of CWM. Williams further expressly reserves the right, under Federal Rule of Civil Procedure 15 and otherwise, to coordinate, amend, or supplement this pleading following CWM's appearance through counsel to address any claim, defense, or position that is properly CWM's to assert.

## COUNTERCLAIM

*(Counterclaim by Andrew P. Williams Against Counter-Defendant Regions Bank dba Ascentium Capital)*

***Incorporation by Reference***

Williams incorporates by reference paragraphs 1 through 73AG of this pleading as though fully set forth herein.

STATEMENT OF STANDING AND DIRECT INJURY.    The claims set forth in this Counterclaim, the accompanying Cross-Claim, and the accompanying

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

Third-Party Complaint are asserted by Williams in his individual capacity and are predicated upon direct injuries personally suffered by Williams that are independent of, and not derivative of, any injury suffered by Car Wash Management LLC (Delaware). Each claim is supported by a specific and direct injury to Williams as an individual person, including without limitation: (a) Williams's loss of his pre-restructure sixty percent (60%) majority Member equity interest in CWM, which Member interest was reduced to ten percent (10%) at Matheny's direction as a precondition of EFA funding and as a direct and proximate result of the conduct alleged herein; (b) Williams's personal exposure to litigation by the Bank under the Fourth Cause of Action of the First Amended Complaint, notwithstanding the Bank's own September 18, 2025 judicial admission (Docket No. 82) that Williams was 'probably not collectable,' which exposure has caused Williams to incur defense costs in this Action; (c) Williams's lost income, profits distributions, and other compensation from his role as CEO and Manager of CWM, as impaired by the disruption caused by the structurally irregular EFA and Ortiz's subsequent diversion of CWM's business; (d) Williams's lost prospective economic opportunities through a separate business venture, which opportunities were impaired by the time and resources Williams has been required to devote to defending against the Bank's claims and to remediating the harm caused by Matheny and Ortiz; and (e) Williams's reputational injury in the equipment finance, car wash, water reclamation, and broader business communities. The standing of Williams to assert each claim herein is preserved consistent with the analysis in Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031 (Del. 2004), as to which claims are direct versus derivative under Delaware law, and with the principles of Hamilton v. State Farm Fire & Casualty Co., 270 F.3d 778 (9th Cir. 2001), as to which claims may be asserted by a debtor in his post-petition

85

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

individual capacity following Chapter 7 discharge. To the extent any claim asserted herein seeks recovery for diminution in the value of Williams's Member interest in CWM, such recovery is sought solely as a direct individual injury arising from the reduction of Williams's Member interest from sixty percent (60%) to ten percent (10%) and from conduct directed at Williams individually, and not for any diminution that is derivative of injury to CWM; any diminution derivative of injury to CWM is reserved to the companion derivative action and is not claimed here.

### FIRST CLAIM FOR RELIEF (Negligent Supervision of Loan Officer Against Counter-Defendant Regions Bank)

74. Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

75. Regions Bank owed a duty of reasonable care in the supervision of its loan officers, including Matheny, with respect to the origination, structuring, and funding of equipment finance transactions. That duty extended to all persons whose interests were reasonably foreseeable to be affected by Matheny's conduct, including Williams as a member, manager, and officer of the prospective borrower whose participation in the transaction was foreseeable and whose personal interests could be foreseeably injured by Matheny's irregular origination and post-funding conduct.

**76. Regions Bank breached its duty of reasonable supervision of Matheny by, among other things: (a) failing to detect or prevent Matheny's instruction to Williams to bypass the Bank's standard internal document upload portal; (b) failing to detect or prevent Matheny's direction to modify the borrower entity from WCCW to CWM after the initial credit application;**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**(c) failing to detect or prevent Matheny's direction to restructure CWM's membership (from Williams's original 60% majority to Ortiz's 80% controlling position) as a precondition to funding, with the amended Operating Agreement bundled into the EFA closing; (d) failing to detect or prevent Matheny's unilateral substitution of the equipment vendor from AVW to Washworld after the loan had initially funded, without renewed underwriting, without a new Commercial Credit Application, and without any executed amendment of the EFA by Williams or by all members of CWM, as set forth in paragraphs 37C through 37D above; (e) failing to detect or prevent the use of the Washworld Chula Vista quote to size the EFA, with approximately $132,509.09 applied to settle a pre-existing CWM trade balance and approximately $176,552.71 refunded by Washworld to CWM at Matheny's direction; (f) failing to detect or prevent the duplicate funding of the Zavaro Inc. equipment in August 2023, which left $130,107.47 of duplicate-payment proceeds on CWM's books and outstanding to Zavaro Inc. (Loan #2729070) to the present date; (g) failing to detect or prevent Matheny's written instructions to vendors (including Petit Auto Wash, Inc. in 2021 in connection with the Yostina Inc. transaction) dictating the precise dollar amount and addressee that vendor invoices should reflect, as documented in paragraphs 62H through 62K above; (h) failing to act upon the Bank's own actual, contemporaneous internal knowledge, reflected in the December 26 through 27, 2023 written communications of its credit underwriter Lara C. Hernandez (alleged in paragraphs 25A through 25D above), that the CWM/EFA transaction involved a non-arm's-length relationship between obligor and vendor and that Matheny had "done a few deals through Car wash management the vendor," and proceeding to fund the**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**loan notwithstanding Ms. Hernandez's explicit written recommendation that CWM be "cut-out" as the vendor; (i) failing to require a new Authorization to Perform Verbal Verification, a new Commencement Agreement, or a new Authority and Incumbency Certificate in connection with the post-funding vendor substitution and the rewire to Washworld; (j) on information and belief, failing to perfect the Bank's security interest in the EFA collateral by filing a UCC-1 financing statement in the State of Delaware or in other appropriate filing offices, as alleged in paragraph 42A above; (k) failing to maintain ongoing supervisory controls over Matheny's continued employment and origination practice in the petroleum and convenience-store retail vertical from January 2024 to the present, notwithstanding the documented structural irregularities in Matheny's origination conduct; and (l) failing to maintain supervisory controls reasonably sufficient to detect, prevent, or remediate Matheny's pattern of originating structurally irregular equipment finance transactions for borrowers in the petroleum/c-store retail vertical, including the Yostina/Petit (2021), Zavaro Inc. (2023), and CWM/EFA (2024) transactions described in this pleading.**

77. Regions Bank had actual knowledge of Matheny's irregular origination conduct in the CWM/EFA transaction by no later than December 26 through 27, 2023, when its credit underwriter Lara C. Hernandez identified the non-arm's-length structure in writing, when Matheny admitted in writing that he had "done a few deals through Car wash management the vendor," and when the Bank failed to act on Ms. Hernandez's explicit recommendation that CWM be "cut-out" as the vendor. The Bank further had actual or constructive knowledge of Matheny's broader pattern of irregular originations, because the documents reflecting that pattern (including those identified in paragraphs 62A through 62K

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

above) were generated on Bank servers, transmitted from Bank e-mail accounts, and stored in the Bank's records-management systems. Notwithstanding such knowledge, the Bank proceeded to fund the CWM/EFA, has not taken any documented corrective action against Matheny that has been disclosed in this action, has continued to employ Matheny in the petroleum/c-store retail industry vertical, and has elected to prosecute personal claims against Williams premised on the very conduct that the Bank's own credit underwriter flagged as structurally non-compliant.

**77A. Bank's internal credit policies and underwriting standards, as evidenced by credit officer Lara C. Hernandez's December 27, 2023 written determination that 'We cannot finance a transaction where customer and vendor do not have an arm's length distance' (quoted at paragraph 25B above), establish that Bank's institutional position prohibited the financing of transactions of the structure ultimately funded under the EFA. Bank's act of funding the EFA notwithstanding Hernandez's written objection, Bank's failure to escalate or remediate the Hernandez objection through documented supervisory review, and Bank's failure to retract the funding upon discovering the AVW-to-Washworld substitution alleged in paragraph 37D above and the Chula Vista diversion alleged in paragraphs 39 through 42 above, each constitute a direct violation of Bank's own internal credit policy as evidenced by Hernandez's written determination. The breach of duty alleged in this First Claim is the foreseeable consequence of Bank's failure to enforce its own internal policies through ordinary supervisory channels, and the harm to Williams was a foreseeable consequence of Matheny's unsupervised circumvention of those policies.**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**78.    As a direct and proximate result of Regions Bank's breach of its duty of reasonable supervision of Matheny, Williams has suffered, and continues to suffer, foreseeable injury in an amount to be proven at trial, currently estimated in the range of Two Million Dollars ($2,000,000) to Four Million Dollars ($4,000,000), including without limitation: (a) defense costs and litigation expenses incurred in defending against the Bank's Fourth Cause of Action for Fraud/Concealment, currently estimated at $40,000 to $80,000 through trial; (b) lost income from Williams's CEO and Manager role at CWM resulting from the disruption caused by the structurally irregular origination, in an amount to be proven at trial; (c) lost or diminished value in Williams's CWM Member interest (10% post-restructure) resulting from the Bank's failure to supervise; (d) reputational harm in the equipment finance, car wash, water reclamation, and broader business communities, with quantifiable economic component; (e) emotional distress and consequential damages, including personal stress and disruption to Williams's professional and personal life; (f) lost business opportunities at Williams's other ventures (including a separate business venture) while this litigation remains pending; and (g) such further damages as may be proven at trial.**

79.    Williams's injuries described in paragraph 78 accrued in their material respects after the Bank's judicial admission of Williams's non-collectability (Dkt. 82) on September 18, 2025, and after the Bank's re-addition of Williams to this action on March 17, 2026, in the First Amended Complaint.

*SECOND CLAIM FOR RELIEF [INTENTIONALLY OMITTED]*

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

*THIRD CLAIM FOR RELIEF (Declaratory Relief Against Counter-Defendant Regions Bank, 28 U.S.C. § 2201)*

84.    Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

85.    An actual case or controversy of a justiciable nature exists between Williams and the Bank concerning the rights and obligations of the parties under the EFA, the Personal Guaranty, and the related loan documents. This controversy is concrete and definite, as evidenced by the Bank's First Amended Complaint, which seeks to impose personal liability on Williams notwithstanding the Bank's own admission in Docket No. 82 that Williams was "probably not collectable."

**86.    Williams contends, and the Bank disputes, that: (a) Williams is not personally liable for any obligation under the EFA, the Personal Guaranty, or any related instrument; (b) Williams did not make any misrepresentation of material fact to the Bank; (c) Williams did not breach any duty owed to the Bank in connection with the EFA transaction; (d) Williams's signature on the Authority and Incumbency Certificate as Certifier was, as a matter of legal interpretation, limited in scope to verifying that Ortiz held the authority described in that Certificate, and did not constitute Williams's personal certification of any other fact regarding the structure, parties, or validity of the EFA transaction; (e) on information and belief, the Bank does not hold a perfected security interest in any equipment of CWM under UCC § 9-307(e) by reason of the Bank's failure to file a UCC-1 financing statement in the State of Delaware, the state of CWM's organization, and accordingly CWM holds title to the equipment located at or removed from the West Covina car wash facility free and clear of any**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**perfected security interest of the Bank; and (f) Williams is entitled to such other and further declaratory relief as the Court may deem just and proper.**

87. A judicial declaration of the rights and obligations of the parties is necessary and appropriate at this time so that Williams may know his rights and obligations and govern his conduct accordingly.

*FOURTH CLAIM FOR RELIEF (Fraud Against Counter-Defendant Regions Bank)*

**87A. Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein. This claim is asserted in respect of Bank's misrepresentations and concealments to Williams personally, the consequences of which Williams has suffered in his individual capacity, and is pleaded in the alternative to the extent any portion of the claim is properly characterized as derivative or as estate property under the reservation set forth in Section VI above.**

**87B. From late 2023 through March 2024, and continuing thereafter, Bank, through its agent Peter Matheny acting within the course and scope of his employment, made material misrepresentations to Williams regarding (i) the structural integrity of the EFA transaction as evaluated by Bank's own credit officers; (ii) the limited nature of Williams's role and personal exposure as Certifier on the Authority and Incumbency Certificate; (iii) Bank's direction and authorship of the AVW-to-Washworld vendor substitution; (iv) the intended application of the EFA proceeds; and (v) Bank's good-faith conduct in the origination, funding, and post-funding administration of the EFA.**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

87C. Specifically, Bank, through Matheny, expressly or impliedly represented to Williams in late 2023 and during 2024 that: (a) any structural concerns regarding customer-vendor affiliation in the proposed EFA transaction had been resolved internally and would not impede funding; (b) the Authority and Incumbency Certificate served only the limited purpose of verifying Ortiz's authority and would not constitute Williams's personal certification of the structural validity of the EFA or his personal certification of any fact about CWM's ownership, business operations, or relationships; (c) the substitution of Washworld for AVW in March 2024 was a routine Bank-directed vendor substitution; (d) the EFA proceeds would be applied to equipment acquisition for CWM and its affiliated facility at 310 South Vincent Avenue; (e) Bank held a valid, perfected security interest in CWM's equipment; and (f) Bank acted in good faith in supervising Matheny and in administering the EFA.

87C1. The representations identified in paragraph 87C above were made by Matheny to Williams through specific, identifiable communications, each with a documented date, medium, and content, as follows. WHO and WHEN: Peter Matheny, Bank's named loan officer for the EFA, communicated with Williams in his capacity as Bank's agent during late 2023 through March 2024. WHAT, WHERE, and HOW for each representation: (a) As to Bank's purported resolution of the structural concerns flagged by credit officer Lara C. Hernandez, Matheny represented to Williams by email transmitted on December 27, 2023 at approximately 10:05 a.m. Central time, forwarding the December 26-27 Hernandez chain quoted at paragraph 25B above, with Matheny's cover language directing Williams to provide operational documents only: 'Hi Andrew, See email below. Can you get me

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**LLC Operating Agreements for both entities to document Jose's majority ownership?' By directing Williams's attention exclusively to operational documents and away from Hernandez's substantive written 'we cannot finance' determination, Matheny impliedly represented that the credit objection had been or would be resolved by operational paperwork alone. (b) As to Williams's purported limited liability, Matheny structured the loan documentation to be executed exclusively by Ortiz in his capacity as 'duly appointed and qualified officer' of CWM, including the EFA, Personal Guaranty, Authorization to Perform Verbal Verification, Customer Identification Program form, Delivery and Acceptance Certificate, and Commencement Agreement (as detailed in paragraphs 30 through 36 above), while limiting Williams's only Bank-financing signature to the Authority and Incumbency Certificate solely as 'Certifier.' By procuring this execution structure, Matheny impliedly represented to Williams that Williams would not bear personal liability as a guarantor or principal obligor on the EFA. (c) As to Bank's approval of the transaction structure, Matheny represented to Williams by approval email circulated in early January 2024 stating: 'Please use the attached wire doc for first payment of $34,339.42,' which communication, by transmitting the pre-funding payment instructions, expressly represented Bank's approval of the transaction to proceed. (d) As to the AVW-to-Washworld vendor substitution and the closing terms, Matheny represented to Williams by text message dated March 5, 2024 at 1:01 p.m. Pacific time: 'Hi Andrew, AVW has returned the funds and we're going to rewrite the deal to wash world.' HOW these representations were false or misleading: Each representation was false when made, as set forth in paragraph 87D above, because Bank's own credit officer Hernandez had on**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

December 27, 2023 at 6:58 a.m. Central time issued a written determination that 'We cannot finance a transaction where customer and vendor do not have an arm's length distance,' which determination was never withdrawn, never reversed by any documented superseding credit decision, and never disclosed to Williams as a substantive credit objection rather than an operational paperwork item.

87D. Each of the foregoing representations was false or misleading when made, or was made with reckless disregard for the truth. Bank's own credit officer, Lara C. Hernandez, had identified the very structural concern Matheny denied in writing in an internal Bank email chain of December 26-27, 2023. Bank, through Matheny, had previously originated structurally irregular equipment-finance transactions of similar character (Yostina Inc./Petit Auto Wash in 2021; Zavaro Inc. in 2023), each involving customer-vendor affiliation and Matheny-prescribed invoice content. Bank's compensation structure for Matheny tied substantial portions of Matheny's compensation to origination volume notwithstanding structural irregularity. Bank knew, or in the exercise of reasonable care should have known, that approximately $132,509.09 of the EFA proceeds would be applied by Washworld to a separate Conserve Fuels Chula Vista customer order rather than to CWM's equipment acquisition. Bank knew, or should have known, that Matheny's representations to Williams regarding the limited scope of the Certifier role were inconsistent with the position Bank would subsequently take in litigation.

87E. Bank, through Matheny, intended that Williams rely on the foregoing representations in: (a) consenting to participate in the bundled-into-EFA restructure of CWM's Operating Agreement effectuated in or about

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

January 2024; (b) signing the Authority and Incumbency Certificate as Certifier; (c) refraining from independent investigation of Bank's credit officer's documented internal concerns; (d) refraining from securing independent legal counsel regarding Williams's personal exposure under the loan documents; and (e) generally cooperating with the closing and post-closing administration of the EFA on terms Bank knew Matheny had misrepresented to Williams.

87F. Williams justifiably relied on Bank's representations through Matheny, as more fully set forth in paragraph 25E above, including without limitation Williams's reasonable reliance on Matheny as the Bank's named loan officer with industry experience, Matheny's contemporaneous verbal assurances contradicting any contrary inference from the December 26-27 email chain, the high daily email volume in Williams's position as CEO of CWM and other businesses, and Williams's substantial CEO and operational responsibilities affecting his independent capacity to evaluate technical underwriting communications.

87G. As a direct and proximate result of Bank's fraudulent misrepresentations and concealments, Williams has suffered personal damages in his individual capacity in an amount to be proven at trial, currently estimated, consistent with the damages framework set forth in paragraph 57A above, in the range of $2,000,000 to $5,000,000, including without limitation: (a) defense costs and litigation expenses incurred in defending the Fourth Cause of Action of the First Amended Complaint and related fraud claims asserted by the Bank against Williams personally in this Action, currently estimated at $40,000 to $80,000 through trial; (b) reputational harm arising from being named as an individual defendant in a

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

federal fraud action, with quantifiable economic component; (c) personal stress and disruption to Williams's professional and personal life, in an amount to be proven at trial; (d) lost income from Williams's CEO and Manager role at CWM; (e) lost or diminished value in Williams's CWM Member interest; (f) lost opportunity costs at Williams's other ventures (including a separate business venture) of time and resources devoted to defense of this Action; and (g) such further damages as may be proven at trial.

87H. Bank's conduct as alleged herein was willful, malicious, fraudulent, and undertaken with conscious disregard of Williams's rights within the meaning of California Civil Code section 3294, entitling Williams to an award of punitive and exemplary damages against Bank in an amount to be determined at trial.

87H1. Williams alleges that Bank's conduct constitutes 'malice' within the meaning of California Civil Code section 3294(c)(1), in that Bank, through its agent Matheny and through its credit supervision personnel with actual knowledge of Matheny's December 26-27, 2023 representations and Ms. Hernandez's contemporaneous written 'we cannot finance' determination, acted with the intent to cause injury to Williams or engaged in despicable conduct carried on with a willful and conscious disregard of Williams's rights and interests. Bank's conduct further constitutes 'oppression' within the meaning of section 3294(c)(2) as despicable conduct subjecting Williams to cruel and unjust hardship in conscious disregard of his rights, as evidenced by Bank's own September 18, 2025 admission of Williams's probable non-collectability. Bank's conduct further constitutes 'fraud' within the meaning of section 3294(c)(3) as set forth in the Fourth Claim for Relief above. Bank's malicious, oppressive, and fraudulent conduct was undertaken by, ratified by,

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

and authorized at the level of one or more of Bank's officers, directors, or managing agents within the meaning of section 3294(b), including without limitation Tony Zieglar (who appears as a copied recipient on the Bank's December 26 through 27, 2023 Hernandez-Matheny credit communications internal to Bank's underwriting team, and whose copy on those communications evidences Mr. Zieglar's contemporaneous awareness of Matheny's representations and Hernandez's responsive 'we cannot finance' determination) and other credit supervision personnel, including without limitation through Bank's credit supervision team's documented receipt and processing of Ms. Hernandez's December 27, 2023 underwriting objection and Bank's subsequent funding of the EFA notwithstanding that objection.

87I.  Williams's fraud claim is asserted, in part, on conduct that continued after Williams's October 4, 2024 bankruptcy petition date and that produced injury accruing to Williams in his post-petition capacity. To the extent any portion of this claim is properly characterized as pre-petition or as estate property under 11 U.S.C. § 541, Williams asserts that portion in the alternative under Federal Rule of Civil Procedure 8(d), subject to such reservation, abandonment, or trustee action as the Chapter 7 estate may produce, and expressly reserves the right to amend or supplement this Track A filing upon completion of the bankruptcy abandonment procedure to assert the full pre-petition portion of this claim directly.

*FIFTH CLAIM FOR RELIEF (Negligent Misrepresentation Against Counter-Defendant Regions Bank)*

87J.  Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein. In the alternative to the Fourth

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

Claim for Relief above, Williams asserts that the representations made by Bank through Matheny to Williams as set forth in paragraph 87C above, even if not made with knowledge of their falsity or with reckless disregard for the truth, were made by Bank, through Matheny, without reasonable ground for believing them to be true.

87K.  Bank, through Matheny, owed Williams a duty of reasonable care in making representations to Williams regarding (i) the Bank's structural assessment of the proposed EFA transaction; (ii) the limited scope and consequences of Williams's signature on the Authority and Incumbency Certificate; (iii) the application of the EFA proceeds; and (iv) Bank's good-faith supervision of Matheny. Bank's duty of reasonable care arose by virtue of Bank's role as the institutional originator and funder of the EFA, Bank's superior position regarding its own internal credit assessment, and Bank's knowledge that Williams reasonably relied on Bank's loan officer for accurate information regarding the transaction.

87L.  Bank, through Matheny, breached its duty of reasonable care by making the representations described in paragraph 87C above without reasonable ground for believing them to be true. Bank, through Matheny, made representations to Williams that were inconsistent with Bank's own internal credit-officer documentation, with the pattern of Matheny-originated structurally irregular transactions, and with the disposition of EFA proceeds that Matheny knew or should have known would not match the representations made to Williams.

87M. Williams justifiably relied on Bank's representations through Matheny as set forth in paragraph 87F above.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**87N. As a direct and proximate result of Bank's negligent misrepresentations, Williams has suffered personal damages in his individual capacity in an amount to be proven at trial, currently estimated in the range of $2,000,000 to $5,000,000, including without limitation the damages categories set forth in paragraph 87G above (defense costs, reputational harm, personal stress and disruption to professional and personal life, lost income from CWM CEO and Manager role, lost value in CWM Member interest, lost opportunity costs at a separate business venture, and consequential damages).**

**87O. Williams's negligent misrepresentation claim is asserted, in part, on conduct that continued after Williams's October 4, 2024 bankruptcy petition date and that produced injury accruing to Williams in his post-petition capacity, subject to the alternative-pleading and bankruptcy reservation set forth in paragraph 87I above.**

`SIXTH CLAIM FOR RELIEF [INTENTIONALLY OMITTED]`

*SEVENTH CLAIM FOR RELIEF [INTENTIONALLY OMITTED]*

*EIGHTH CLAIM FOR RELIEF (Fraud Against Cross-Defendant Jose Rene Ortiz)*

**87W. Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein. This claim is asserted in respect of Ortiz's misrepresentations and concealments to Williams personally, the consequences of which Williams has suffered in his individual capacity, and is pleaded in the alternative to the extent any portion of the claim is properly**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

characterized as derivative or as estate property under the reservation set forth in Section VI above.

87X. From in or about late 2023 and continuing thereafter, Ortiz made material misrepresentations and concealments to Williams regarding, without limitation: (a) Ortiz's purpose and intent in proposing and effectuating the January 2024 restructure of CWM's Operating Agreement, including Ortiz's representation that the restructure was required by the Bank for financing purposes and would not affect Williams's real economic interest in CWM; (b) Ortiz's intent regarding the disposition of the EFA proceeds and the application of those proceeds to CWM equipment acquisition; (c) Ortiz's intent regarding the AVW-to-Washworld vendor substitution; (d) Ortiz's intent regarding the transfer of the Subject Property (402 Addleman Avenue, West Covina, California) and the consideration, if any, exchanged for that transfer; (e) Ortiz's authority for and the legitimacy of post-petition extractions of value from CWM; and (f) such other misrepresentations and concealments as may be developed in discovery.

87X1. Ortiz's misrepresentations and concealments identified in paragraph 87X above include the following specific, particularized written representations, each made by Ortiz on a date certain through a documented signed instrument, as required by Federal Rule of Civil Procedure 9(b). WHO: Jose Rene Ortiz, in his capacity as the post-restructure 80% controlling Member of CWM. WHEN, WHAT, WHERE, and HOW for each representation: (a) On January 5, 2024, Ortiz executed the Authority and Incumbency Certificate with respect to EFA Agreement No. 2763169 as the 'duly appointed and qualified officer' of CWM authorized to execute the EFA on behalf of CWM (paragraph 33 above). By executing the Authority and

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

Incumbency Certificate, Ortiz expressly represented in writing to Bank, and impliedly to Williams as a fellow CWM Member, that Ortiz's execution of the EFA was a legitimate exercise of corporate authority for the benefit of CWM rather than a vehicle for the diversion of CWM loan proceeds to entities aligned with Ortiz. (b) On January 5, 2024, Ortiz executed the Authorization to Perform Verbal Verification with respect to Agreement No. 2763169 (paragraph 31 above), expressly representing in writing the truth of the information to be conveyed in the verbal verification process and Ortiz's authority to authorize same on behalf of CWM. (c) On January 5, 2024, Ortiz executed the Personal Guaranty with respect to Agreement No. 2763169 as 'sole guarantor' (paragraph 34 above), expressly representing in writing Ortiz's individual undertaking to guarantee CWM's obligations and impliedly representing Ortiz's intent to honor that guarantee in good faith. (d) On January 5, 2024, Ortiz executed the Commencement Agreement (paragraph 36 above), expressly representing in writing the commencement of CWM's performance obligations under the EFA. (e) On January 8, 2024, Ortiz executed the Customer Identification Program form (paragraph 32 above), providing his date of birth and identity information in support of the Bank's loan onboarding process, expressly representing the accuracy of the identification information provided. (f) Throughout late 2023 and January 2024, in connection with the orchestration of the January 2024 CWM Operating Agreement restructure (paragraphs 24 through 25 above), Ortiz orally and in writing communicated to Williams his purported intent to remain actively engaged in CWM's management and to exercise his post-restructure 80% controlling Member position for the benefit of CWM as a going concern. Ortiz's actual contemporaneous intent, as evidenced by his

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

subsequent conduct alleged in paragraphs 46 through 57 above (including but not limited to his diversion of CWM customers and vendors to ProElite and H&S Energy, and his October 2025 acceptance of employment with H&S Energy), was to use the post-restructure controlling Member position to extract value from CWM and to subsequently abandon active management of CWM in favor of self-dealing pursuits.

87Y. Each of the foregoing misrepresentations and concealments by Ortiz was false or misleading when made, or was made with reckless disregard for the truth. Ortiz at all relevant times knew his own intentions regarding CWM, the EFA, the vendor substitution, the Subject Property transfer, and the post-petition extractions. Ortiz's representations and concealments to Williams regarding these matters were materially inconsistent with his actual intentions and with the facts subsequently disclosed in this Action.

87Z. Ortiz intended that Williams rely on the foregoing misrepresentations and concealments in: (a) consenting to and executing the January 2024 Operating Agreement restructure; (b) consenting to the Bank's underwriting of the EFA premised on the restructured Operating Agreement; (c) signing the Authority and Incumbency Certificate; (d) refraining from independent investigation of the EFA terms and the disposition of EFA proceeds; (e) refraining from interfering with the Subject Property transfer; (f) refraining from challenging Ortiz's post-petition extractions and conduct of CWM business; and (g) otherwise cooperating with the EFA closing and post-closing administration of CWM on terms Ortiz had misrepresented to Williams.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**87AA.     Williams justifiably relied on Ortiz's misrepresentations and concealments. Williams's reliance was reasonable in light of his role and rights as a Member of CWM, his reasonable trust in Ortiz as Managing Member and majority owner, Ortiz's superior knowledge of CWM operations and CWM's relationship with the Bank, and the additional factors of Williams's substantial CEO and operational responsibilities set forth in paragraph 25E above.**

**87BB.     As a direct and proximate result of Ortiz's fraudulent misrepresentations and concealments, Williams has suffered personal damages in his individual capacity in an amount to be proven at trial, currently estimated in the range of $750,000 to $3,000,000, including without limitation: (a) defense costs and litigation expenses incurred in defense of this Action; (b) reputational harm in the equipment finance, car wash, and broader business communities; (c) personal stress and disruption to Williams's professional and personal life; (d) lost opportunity costs of time and resources devoted to defense of this Action and to remediation of Ortiz's conduct; (e) diminution in the value of Williams's Member interest in CWM, both as it existed at the time of the EFA (60% pre-restructure) and as restructured at Matheny's direction (10% post-restructure); (f) lost income from Williams's CEO and Manager role at CWM resulting from Ortiz's disloyalty and diversion as further alleged in Section III.F above; (g) lost business opportunities at Williams's other ventures (including a separate business venture) while this litigation remains pending; and (h) such further damages as may be proven at trial.**

**87CC.     Ortiz's conduct as alleged herein was willful, malicious, fraudulent, and undertaken with conscious disregard of Williams's rights**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

within the meaning of California Civil Code section 3294, entitling Williams to an award of punitive and exemplary damages against Ortiz in an amount to be determined at trial.

87DD.    Williams's fraud claim against Ortiz is asserted, in part, on conduct that continued after Williams's October 4, 2024 bankruptcy petition date and that produced injury accruing to Williams in his post-petition capacity. To the extent any portion of this claim is properly characterized as pre-petition or as estate property under 11 U.S.C. § 541, Williams asserts that portion in the alternative under Federal Rule of Civil Procedure 8(d), subject to such reservation, abandonment, or trustee action as the Chapter 7 estate may produce, and expressly reserves the right to amend or supplement this Track A filing upon completion of the bankruptcy abandonment procedure to assert the full pre-petition portion of this claim directly.

*NINTH CLAIM FOR RELIEF [INTENTIONALLY OMITTED]*

*TENTH CLAIM FOR RELIEF [INTENTIONALLY OMITTED]*

*ELEVENTH CLAIM FOR RELIEF (Actual Fraudulent Transfer Against Cross-Defendant Jose Rene Ortiz, California Civil Code § 3439.04(a)(1))*

97.    Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

98.    Williams is a creditor of Ortiz within the meaning of California Civil Code § 3439.01(c) by reason of, among other matters: (a) Williams's contingent right to indemnification, contribution, and/or recovery against Ortiz arising from the Bank's allegations of joint and several liability and from Ortiz's role as the

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

80% controlling member who executed the EFA and Personal Guaranty; (b) Williams's direct claim against Ortiz for civil conspiracy and other claims asserted herein; and (c) Williams's contingent creditor status as to Ortiz's post-petition cross-claims against Williams (Dkts. 84, 89) and Ortiz's request for entry of default (Dkt. 128). Williams's contingent creditor status became concrete on or about March 17, 2026, when the Bank filed its First Amended Complaint re-adding Williams as a personal defendant alleging joint conduct with Ortiz.

99.    On June 13, 2024, Ortiz and Maria L. Ortiz, in their former capacity as "Husband and Wife as Joint Tenants," caused the Subject Property (402 Addleman Avenue, West Covina, California, APN 8725-008-042) to be transferred from their joint individual ownership into the Trust by Grant Deed executed that day, which was then held off-record for approximately twelve (12) weeks before being recorded on September 4, 2024 as Document Number 20240594220 in the Official Records of Los Angeles County.

100.    The transfer of the Subject Property into the Trust was made with actual intent to hinder, delay, or defraud one or more creditors of Ortiz, including Williams, within the meaning of California Civil Code § 3439.04(a)(1).

101.    The transfer bears multiple badges of fraud enumerated in California Civil Code § 3439.04(b), as alleged in paragraph 66 above.

102.    Williams is entitled to avoidance of the transfer to the extent necessary to satisfy Williams's claim, attachment of the Subject Property, and such other and further relief as may be appropriate under California Civil Code §§ 3439.07 and 3439.08.

TWELFTH CLAIM FOR RELIEF [INTENTIONALLY OMITTED]

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

*THIRTEENTH CLAIM FOR RELIEF [INTENTIONALLY OMITTED]*

*FOURTEENTH CLAIM FOR RELIEF [INTENTIONALLY OMITTED]*

*FIFTEENTH CLAIM FOR RELIEF [INTENTIONALLY OMITTED]*

SIXTEENTH CLAIM FOR RELIEF [INTENTIONALLY OMITTED]

*SEVENTEENTH CLAIM FOR RELIEF (Tortious Interference with Contractual Relations Against Third-Party Defendant Peter Matheny)*

117G. Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

117H. At all relevant times, Williams was a Member of CWM with rights and obligations defined by CWM's Operating Agreement, including without limitation Williams's right to a Member interest in CWM, Williams's right to participate in CWM management and decisions, Williams's right to receive distributions, and Williams's right to information regarding CWM operations. The Operating Agreement constitutes a valid and enforceable contract between Williams and his fellow Members under Delaware law and the laws of any other applicable jurisdiction.

117I. Matheny had actual knowledge of CWM's Operating Agreement, Williams's status as a Member of CWM, and Williams's contractual rights as a Member. Matheny's knowledge arose from his role as the originating loan officer for the EFA transaction, his review of CWM's Operating Agreement during Bank's underwriting, his direct communications with Williams in his Member capacity, and his role in advising on the January 2024 restructure of the Operating Agreement.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**117J. Matheny engaged in intentional acts designed and likely to disrupt Williams's rights under the Operating Agreement, including without limitation: (a) Matheny's March 11, 2024 text-message suggestion regarding the removal of Williams from CWM operations; (b) Matheny's structuring of the EFA transaction in a manner that facilitated Ortiz's extraction of value from CWM at Williams's expense; (c) Matheny's direction of the AVW-to-Washworld vendor substitution, which diverted approximately $132,509.09 of CWM's EFA proceeds away from CWM equipment acquisition and thereby diminished CWM's value and Williams's Member interest; (d) Matheny's facilitation of Ortiz's circumvention of CWM's normal management and oversight processes contemplated by the Operating Agreement; and (e) such other intentional acts as may be developed in discovery.**

**117K. Matheny's intentional acts caused actual disruption of Williams's rights under the Operating Agreement, including without limitation diminution in the value of Williams's Member interest, impairment of Williams's right to participate in CWM management, impairment of Williams's right to receive CWM distributions, and impairment of Williams's right to accurate information regarding CWM operations.**

**117L. As a direct and proximate result of Matheny's tortious interference with Williams's contractual rights, Williams has suffered personal damages in an amount to be proven at trial, currently estimated in the range of $200,000 to $750,000, including without limitation: (a) diminution in the value of Williams's Member interest in CWM (reduced from 60% majority to 10% minority at Matheny's direction); (b) lost distributions and lost income from CWM that would have accrued to Williams but for the Operating Agreement restructure directed by Matheny; (c) defense costs and**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

litigation expenses; (d) reputational harm in equipment finance, car wash, and broader business communities; (e) personal stress and disruption to Williams's professional and personal life; (f) lost business opportunities at Williams's other ventures; and (g) such further damages as may be proven at trial. Matheny's conduct was undertaken with conscious disregard of Williams's rights, entitling Williams to punitive and exemplary damages under California Civil Code section 3294 in an amount sufficient to punish and deter, in a range proportionate to the compensatory damages awarded.

*EIGHTEENTH CLAIM FOR RELIEF (Aiding and Abetting Breach of Fiduciary Duty Against Third-Party Defendant Peter Matheny)*

117M.    Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

117N. At all relevant times, Cross-Defendant Jose Rene Ortiz owed fiduciary duties of loyalty, good faith, and care to CWM and to its Members, including Williams, as more fully set forth in paragraph 111G above. Ortiz breached those fiduciary duties as more fully set forth in paragraph 111H above. Such fiduciary duties of Ortiz are imposed by, without limitation, 6 Del. C. §§ 18-1101 (governing the waivable and non-waivable fiduciary duties of LLC members and managers), 18-1104 (default fiduciary obligations of managing members and managers of Delaware LLCs), and 18-305 (records and accounting obligations), as well as by the operative Operating Agreement of CWM which preserves the default fiduciary obligations of Delaware LLC law to the extent not expressly waived. Williams, has direct standing as alleged in paragraph 111G above and the Statement of Standing and Direct Injury set forth at the beginning of this Counterclaim.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

117O. Matheny had actual knowledge of Ortiz's fiduciary duties to CWM and to Williams, and actual knowledge of Ortiz's breaches of those duties. Matheny's knowledge arose from, without limitation: (a) Matheny's role as the originating loan officer for the EFA transaction and his attendant due diligence into CWM's ownership and management structure; (b) Matheny's review of CWM's Operating Agreement during underwriting; (c) Matheny's direct communications with Williams and Ortiz throughout the origination process, including communications in which Matheny expressly contemplated Williams's removal from CWM operations; (d) Matheny's knowledge that Bank's underwriting of the EFA was premised on the January 2024 restructure of CWM's Operating Agreement; and (e) Matheny's pattern of similarly structured originations with similar customer-vendor affiliations (Yostina Inc./Petit Auto Wash in 2021 and Zavaro Inc. in 2023).

117P. Matheny provided substantial assistance and encouragement to Ortiz in his breach of fiduciary duty by, without limitation: (a) structuring the EFA transaction in a manner that facilitated Ortiz's extraction of value from CWM; (b) directing the AVW-to-Washworld vendor substitution that resulted in the diversion of approximately $132,509.09 of CWM's EFA proceeds away from CWM equipment acquisition; (c) inviting and facilitating Ortiz's circumvention of CWM's normal management and oversight processes, including without limitation through Matheny's March 11, 2024 text-message suggestion regarding Williams's removal from CWM operations; (d) representing to Williams that the AIC and the bundled January 2024 Operating Agreement restructure were routine when in fact they facilitated Ortiz's plans for extraction; and (e) such other acts as may be developed in discovery.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

117Q.Matheny's substantial assistance and encouragement to Ortiz were a substantial factor in causing harm to Williams in his individual capacity, including without limitation the harms set forth in paragraph 111D above.

117R.Williams has suffered personal damages in an amount to be proven at trial but not less than $100,000. To the extent any portion of this claim is properly characterized as pre-petition or as estate property under 11 U.S.C. § 541, Williams asserts that portion in the alternative under Federal Rule of Civil Procedure 8(d) and subject to the bankruptcy reservation set forth in paragraph 111E above.

*NINETEENTH CLAIM FOR RELIEF (Equitable Indemnity and, in the Alternative, Contribution Against Cross-Defendant Jose Rene Ortiz and Third-Party Defendant Peter Matheny)*

118.   Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein. This claim is asserted in respect of Williams's right to equitable indemnity and, in the alternative, contribution from Cross-Defendant Jose Rene Ortiz and Third-Party Defendant Peter Matheny, in the event Williams is held liable to the Bank on any claim asserted against Williams in the First Amended Complaint, including without limitation the Fourth Cause of Action for Fraud/Concealment.

119.   The Bank's claims against Williams in the First Amended Complaint, including but not limited to the Fourth Cause of Action for Fraud/Concealment, are premised on conduct that, if such conduct is found to have occurred and to have given rise to liability, was undertaken in material part by Matheny in his capacity as loan officer of Ascentium Capital, and by

111

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

Ortiz in his capacity as Member and majority owner of CWM. The Bank's allegations against Williams are based principally on Williams's role as Certifier on the Authority and Incumbency Certificate and on the Bank's theories of agency, joint participation, or vicarious responsibility for the EFA-related conduct.

120. Under California law, including American Motorcycle Association v. Superior Court, 20 Cal. 3d 578 (1978), and successor authorities, a defendant held liable for damages caused in material part by the conduct of others is entitled to comparative equitable indemnity from those whose conduct gave rise to the liability, in proportion to their respective fault. Where the underlying liability sounds in intentional tort, comparative equitable indemnity remains available as between concurrent intentional tortfeasors, in proportion to their comparative fault. Baird v. Jones, 21 Cal. App. 4th 684 (1993). The Bank's Fourth Cause of Action alleges intentional conduct by Williams, Ortiz, and others jointly; to the extent Williams is found liable on that or any other claim, Ortiz and Matheny are alleged to be concurrent participants in the same conduct whose comparative fault vastly exceeds any fault attributable to Williams.

121. To the extent Williams is held liable to the Bank on any cause of action asserted in the First Amended Complaint, Williams is entitled to comparative equitable indemnity from Ortiz and Matheny, individually and jointly, in proportion to each of their respective contributions to the conduct underlying such liability, as alleged with specificity in paragraphs 121A and 121B below and in Section III above.

121A. (a) Matheny: architecting the structurally irregular EFA transaction as alleged in Sections III.D and III.G above; directing the vendor

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

substitution from AVW to Washworld; instructing the bypass of internal Bank controls including the upload portal; transmitting the May 23, 2024 Washworld quote post-funding; restructuring CWM's Operating Agreement as a precondition to funding; and other origination misconduct alleged in this pleading and in Section III.K alleging the broader pattern of Matheny's structurally irregular originations.

121B. (b) Ortiz: executing the EFA, Personal Guaranty, Authorization to Perform Verbal Verification, Authority and Incumbency Certificate, Delivery and Acceptance Certificate, and Commencement Agreement in his capacity as Member of CWM as alleged in paragraphs 30 through 36 above; serving as the verbal-verification respondent at funding; and undertaking the post-funding conduct, including the diversion of CWM's business and the transfer of the Subject Property, alleged in this pleading.

122. Williams's right to equitable indemnity is asserted as a Cross-Claim against Ortiz and as a Third-Party Claim against Matheny under Federal Rule of Civil Procedure 14(a). In the alternative, and only to the extent any liability of Williams is determined to rest on a theory not constituting an intentional injury within the meaning of California Code of Civil Procedure section 875(d), Williams asserts the right to contribution under California Code of Civil Procedure section 875 et seq. and applicable common law.

123. Williams seeks an order of this Court that Ortiz and Matheny, individually and jointly, are liable to Williams in comparative equitable indemnity (and, in the alternative and to the extent permitted by Code of Civil Procedure section 875(d), contribution) for all or part of any judgment that may be entered against Williams on the Bank's claims in the First Amended

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

Complaint, in proportion to their respective fault, together with declaratory relief preserving such rights and such further orders as may be necessary or appropriate.

ADDITIONAL CLAIMS FOR RELIEF

Additional Counterclaim Against Counter-Defendant Regions Bank dba Ascentium Capital

TWENTIETH CLAIM FOR RELIEF (Negligent Hiring of Loan Officer Matheny Against Counter-Defendant Regions Bank)

124. Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

125. Regions Bank owed a duty of reasonable care in the hiring and selection of loan officers, including Matheny, whose duties involved the structuring and origination of equipment finance transactions affecting customers, vendors, guarantors, and connected non-borrower persons such as Williams. That duty extended to all persons whose interests were foreseeably affected by the conduct of loan officers acting in the course of Bank business.

126. Regions Bank breached its duty of reasonable care in hiring or initially selecting Matheny by, among other things: (a) failing to conduct adequate pre-hire due diligence into Matheny's prior loan origination conduct; (b) failing to identify or to act upon any pre-existing indicia of structurally irregular origination conduct by Matheny that reasonable pre-hire due diligence would have disclosed; and (c) entrusting Matheny with origination authority in the petroleum, convenience-store, and car wash industry vertical notwithstanding the foreseeable risk of conflicts and structurally irregular origination conduct in that vertical.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**127. Bank's negligent hiring of Matheny was a substantial factor in causing the harm to Williams alleged herein. But for Bank's failure to identify and remedy the indicia of Matheny's structurally irregular origination practices before assigning Matheny to the CWM/EFA transaction, Matheny would not have been in a position to architect the structurally non-standard EFA, to direct the bundled-into-EFA restructure of CWM's Operating Agreement, to instruct Williams to bypass the Bank's standard internal document upload portal, or to direct the AVW-to-Washworld vendor substitution, each as alleged above.**

**128. As a direct and proximate result of Bank's negligent hiring, Williams has suffered damages in his individual capacity in an amount to be proven at trial, currently estimated in the range of Two Hundred Thousand Dollars ($200,000) to Seven Hundred Fifty Thousand Dollars ($750,000), including the categories of damages set forth in paragraph 78 above.**

**128A. Bank's negligent hiring claim is asserted, in part, on conduct that produced injury accruing to Williams in his post-petition capacity. To the extent any portion of this claim is properly characterized as pre-petition or as estate property under 11 U.S.C. section 541, Williams reserves all rights consistent with Section VI above.**

**TWENTY-FIRST CLAIM FOR RELIEF (Negligent Retention of Loan Officer Matheny Against Counter-Defendant Regions Bank)**

**129. Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.**

**130. Regions Bank owed a continuing duty of reasonable care in the retention of loan officers, including Matheny, with respect to whom Bank acquired actual or constructive knowledge of structurally irregular**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

origination conduct after the date of hire. That duty included the duty to investigate, to discipline, to retrain, or to terminate as the facts warranted.

131. Regions Bank breached its duty of reasonable retention of Matheny by, among other things: (a) failing to terminate or to materially restrict Matheny's origination authority notwithstanding the structural irregularities documented in the 2021 Yostina Inc./Petit Auto Wash transaction and the 2023 Zavaro Inc. transaction (Loan No. 2729070, duplicate funding of $130,107.47), each described in paragraphs 62A through 62K above; (b) failing to respond meaningfully to credit officer Lara C. Hernandez's December 27, 2023 written 'we cannot finance' determination quoted at paragraph 25B above; and (c) continuing to compensate Matheny on origination volume notwithstanding the structural irregularity of the loans Matheny originated.

132. Bank's negligent retention of Matheny was a substantial factor in causing the harm to Williams alleged herein. Had Bank terminated Matheny following Yostina, Zavaro, or upon Hernandez's December 27, 2023 written determination, the CWM/EFA transaction either would not have been originated as structured or would have been originated under different supervisory controls, and the harm to Williams alleged herein would not have occurred.

133. As a direct and proximate result of Bank's negligent retention, Williams has suffered damages in his individual capacity in an amount to be proven at trial, currently estimated in the range of Two Hundred Thousand Dollars ($200,000) to Seven Hundred Fifty Thousand Dollars ($750,000), including the categories of damages set forth in paragraph 78 above.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

133A. Bank's conduct in retaining Matheny notwithstanding actual knowledge of the Yostina pattern, the Zavaro pattern, and the Hernandez 'we cannot finance' determination was undertaken with conscious disregard of the rights of foreseeable harmed persons such as Williams, within the meaning of California Civil Code section 3294(c)(2). Williams is entitled to punitive damages against Counter-Defendant Regions Bank in an amount sufficient to punish such conscious disregard and to deter similar conduct in the future.

TWENTY-SECOND CLAIM FOR RELIEF (Aiding and Abetting Matheny's Individual Fraud Against Counter-Defendant Regions Bank)

134. Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

135. Peter Matheny committed an underlying fraud against Williams individually, as alleged in detail in the Twenty-Eighth Claim for Relief below and in paragraphs 25A through 25E, 37A through 37E, 62A through 62K, and 87C1 above. Matheny's fraud included material misrepresentations and concealments to Williams regarding (i) Bank's purported resolution of credit officer Hernandez's structural concerns; (ii) Williams's purported limited liability; (iii) Bank's purported approval of the transaction structure; and (iv) the AVW-to-Washworld vendor substitution.

136. Regions Bank had actual knowledge of Matheny's fraud against Williams. Bank's knowledge arose, without limitation, from: (a) Bank's contemporaneous receipt and review of the December 26-27, 2023 Hernandez-Matheny email chain quoted at paragraphs 25A through 25C above, copies of which were transmitted on Bank email accounts among Bank credit personnel including Matheny, Hernandez, and Tony Zieglar; (b) Bank's institutional knowledge of the Yostina (2021) and Zavaro (2023) pattern transactions

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

alleged in paragraphs 62A through 62K above; and (c) Bank's documented receipt of Matheny's directives to Williams to bypass Bank's standard internal document upload portal.

137. Regions Bank provided substantial assistance and encouragement to Matheny's fraud against Williams by, without limitation: (a) funding the EFA notwithstanding Hernandez's December 27, 2023 written 'we cannot finance' determination; (b) executing the disbursement of $309,054.80 to Washworld in March 2024 on Matheny's representations notwithstanding the structural irregularities documented in the Bank's own files; (c) continuing to employ Matheny in the petroleum and convenience-store industry vertical with continued origination authority following discovery of the Yostina and Zavaro pattern transactions; and (d) accepting and processing the documentary record of the EFA transaction as Matheny structured it.

138. Bank's substantial assistance to Matheny's fraud was a substantial factor in causing harm to Williams in his individual capacity, including without limitation the categories of damages set forth in paragraph 87G above.

139. As a direct and proximate result of Bank's aiding and abetting of Matheny's fraud, Williams has suffered damages in his individual capacity in an amount to be proven at trial, currently estimated in the range of Two Hundred Fifty Thousand Dollars ($250,000) to One Million Dollars ($1,000,000), exclusive of punitive damages. Bank's conduct in aiding and abetting Matheny's fraud was undertaken with knowledge of the underlying fraud and with the intent to facilitate that fraud, and constitutes malice, oppression, or fraud within the meaning of California Civil Code section 3294, entitling Williams to an award of punitive and exemplary damages.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**TWENTY-THIRD CLAIM FOR RELIEF (Fraud by Concealment Against Counter-Defendant Regions Bank)**

**140.  Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein. This claim is asserted in respect of Bank's concealment of material facts from Williams under California Civil Code section 1710(3) and the common law of California, in the alternative to and concurrent with Williams's Fourth Claim for Relief above for affirmative misrepresentation.**

**141.  Regions Bank, through its agent Peter Matheny acting within the course and scope of his employment, owed Williams a duty to disclose material facts known to Bank that Williams could not reasonably have discovered through ordinary diligence. That duty arose from the multi-party transactional setting in which Williams was a foreseeably affected non-borrower whose participation in the transaction (through the Authority and Incumbency Certificate signed as Certifier and through CWM's $34,339.42 first-payment wire) was material to Bank's funding decision, and from the special relationship between Bank's named loan officer and Williams as a connected non-borrower in active communication with the loan officer concerning the transaction.**

**142.  Bank concealed from Williams the following material facts that Bank knew at all relevant times and that Williams could not reasonably have discovered through ordinary diligence: (a) the substantive content of credit officer Lara C. Hernandez's December 27, 2023 6:58 a.m. Central time written determination that 'We cannot finance a transaction where customer and vendor do not have an arm's length distance,' which determination Matheny did not disclose to Williams as a substantive credit objection but**

119

rather framed as an operational paperwork item requiring only Operating Agreements; (b) the existence and content of Bank's prior structurally irregular originations by Matheny in the 2021 Yostina Inc./Petit Auto Wash transaction and the 2023 Zavaro Inc. transaction (Loan No. 2729070, duplicate funding of $130,107.47), each described in paragraphs 62A through 62K above; and (c) Bank's institutional position prohibiting the financing of arm's-length-deficient transactions, as evidenced by Hernandez's written determination, which institutional position was reversed only through Matheny's circumvention of the documented credit objection without Williams's knowledge.

143. Bank intended that Williams act in reliance on the concealment by: (a) executing the Authority and Incumbency Certificate as Certifier; (b) causing CWM to wire the $34,339.42 first payment to Bank as a precondition of funding; and (c) refraining from withdrawing from the transaction during the pre-funding period when withdrawal was possible.

144. Williams justifiably relied on the concealment by Bank, as set forth in paragraph 87F above, including without limitation Williams's reasonable reliance on Matheny as the Bank's named loan officer with stated industry experience.

145. As a direct and proximate result of Bank's concealment, Williams has suffered damages in his individual capacity in an amount to be proven at trial, currently estimated in the range of Two Hundred Fifty Thousand Dollars ($250,000) to One Million Dollars ($1,000,000), exclusive of punitive damages. Bank's conduct in concealing material facts from Williams was undertaken with malice, oppression, or fraud within the meaning of

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

California Civil Code section 3294, entitling Williams to an award of punitive and exemplary damages.

TWENTY-FOURTH CLAIM FOR RELIEF [INTENTIONALLY OMITTED]

**TWENTY-FIFTH CLAIM FOR RELIEF (Breach of Fiduciary Duty - Direct Individual Injury - Against Cross-Defendant Jose Rene Ortiz)**

151. Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

152. At all relevant times, Ortiz owed fiduciary duties of loyalty, good faith, and care directly to Williams in Williams's capacity as a Member of CWM, under 6 Del. C. sections 18-1101 (governing waivable and non-waivable fiduciary duties of LLC members and managers), 18-1104 (default fiduciary obligations of managing members and managers of Delaware LLCs), and 18-305 (records and accounting obligations), as well as under the operative Operating Agreement of CWM which preserves the default fiduciary obligations of Delaware LLC law to the extent not expressly waived.

153. Ortiz breached his direct fiduciary duties to Williams by, without limitation: (a) orchestrating the bundled-into-EFA restructure of CWM's Operating Agreement that reduced Williams's Member interest from sixty percent (60%) to ten percent (10%) without disclosure of Ortiz's contemporaneous intent to subsequently divert CWM's business as alleged in paragraphs 46 through 57 above; (b) diverting CWM customer and vendor relationships to entities aligned with Ortiz including ProElite and H&S Energy, thereby impairing the value of Williams's residual Member interest; (c) accepting employment with H&S Energy in or about October 2025 while purporting to remain the controlling Member of CWM, in conflict with his fiduciary duties to fellow Member Williams; and (d) failing to provide

121

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

Williams with the inspection, books, records, and accounting required by 6 Del. C. section 18-305. (e) causing CWM to pay W-2 compensation, draws, and profit distributions to Ortiz and to Travis Beaudoin while withholding from Williams the compensation that had been discussed and agreed upon among the members on the same basis as Ortiz's and Beaudoin's compensation, such that Williams, who subordinated his own agreed compensation to preserve CWM's solvency, received nothing while Ortiz and Beaudoin enriched themselves and neglected the business, which unequal treatment of a fellow Member and diversion of compensation to the controlling Member constitute self-dealing and a breach of the duties of loyalty and good faith.

154. Williams's injuries from Ortiz's breaches of direct fiduciary duty are direct individual injuries to Williams, not derivative of CWM's injuries, within the meaning of Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031 (Del. 2004), including without limitation: (a) the differential value of Williams's pre-restructure 60% Member interest reduced to 10% post-restructure; (b) Williams's lost income from his CEO and Manager role at CWM as impaired by Ortiz's diversion of CWM business; (c) Williams's lost prospective economic opportunities at a separate business venture that Williams could not pursue while addressing Ortiz's diversion of CWM business; and (d) the personal litigation exposure Williams has incurred from Bank's claims that would not have been pursued but for Ortiz's structural orchestration of the EFA.

155. As a direct and proximate result of Ortiz's breaches of direct fiduciary duty, Williams has suffered damages in his individual capacity in an amount to be proven at trial, currently estimated in the range of Seven

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

Hundred Fifty Thousand Dollars ($750,000) to One Million Five Hundred Thousand Dollars ($1,500,000), exclusive of punitive damages. Ortiz's conduct was undertaken with malice, oppression, or fraud within the meaning of California Civil Code section 3294, entitling Williams to an award of punitive and exemplary damages. Williams's recoverable damages include the compensation Williams would have received under the members' agreed compensation arrangement, measured by reference to the W-2 compensation, draws, and distributions Ortiz and Beaudoin in fact received, in an amount to be proven (currently estimated at not less than $750,000 to $1,500,000), together with prejudgment interest, which item is the same as and not in addition to Williams's lost compensation alleged elsewhere.

155A. Williams's direct fiduciary duty claim is asserted, in part, on conduct that produced injury accruing to Williams in his post-petition capacity. To the extent any portion of this claim is properly characterized as pre-petition or as estate property under 11 U.S.C. section 541, Williams reserves all rights consistent with Section VI above.

TWENTY-SIXTH CLAIM FOR RELIEF (Conversion of Member Interest Against Cross-Defendant Jose Rene Ortiz)

156. Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

157. At the time of CWM's formation on or about April 16, 2022, Williams held a sixty percent (60%) Member interest in CWM, which Member interest constituted personal property of Williams within the meaning of 6 Del. C. section 18-701 and the common law of conversion. Williams's right of ownership in the Member interest included the right to economic distributions, the right to participate in management consistent with

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

the Operating Agreement, the right to maintain the proportional voting power of his interest, and the right not to be involuntarily divested of the interest without due process.

158.  Ortiz substantially interfered with Williams's ownership of the 60% Member interest by orchestrating the bundled-into-EFA restructure of CWM's Operating Agreement in January 2024 as alleged in paragraphs 17, 21 through 25, and 92B above, the effect of which was to involuntarily divest Williams of fifty percentage points (50%) of his Member equity, transferring that economic value to Ortiz. The restructure was procured, on information and belief, through Ortiz's misrepresentations and concealments of his contemporaneous intent to divert CWM's business as alleged in the Eighth Claim for Relief above.

158A. The foregoing claim for Conversion of Member Interest is asserted as a direct individual claim by Williams under Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031 (Del. 2004), as the harm pled is harm to Williams personally (the involuntary reduction of his Member interest from sixty percent (60%) to ten percent (10%)) and the recovery sought runs to Williams personally (restoration of the value differential of his Member interest). Williams expressly distinguishes the holding in Brookfield Asset Management, Inc. v. Rosson, 261 A.3d 1251 (Del. 2021), as Brookfield addressed corporate stockholder dilution effected through a dilutive equity issuance to a controller in exchange for inadequate consideration, where the harm was first to the corporation in the form of an under-valued issuance. The factual predicate here is materially different: (a) CWM is a Delaware limited liability company governed by 6 Del. C. sections 18-1101 and 18-1104, which permit broader contractual definition of Member rights than the

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

corporate stockholder framework addressed in Brookfield; (b) no new equity was issued to a controller; the alleged Conversion was effected through an Operating Agreement amendment that reallocated existing Member percentages without consideration to Williams; and (c) the Operating Agreement amendment was procured by misrepresentation and concealment as alleged in the Eighth Claim for Relief above, such that the harm is direct to Williams individually (his contractual Member rights were converted by fraud) rather than derivative of any harm to CWM as an entity. To the extent this Court determines that this Claim, in whole or in part, is properly characterized as derivative of CWM, Williams pleads the Claim in the alternative under Federal Rule of Civil Procedure 8(d)(2) and reserves all rights consistent with Section VI above.

159.    Williams did not consent to the divestment of his Member interest in the form effected by the January 2024 restructure. Any consent that Williams may have given to the restructure was procured by Ortiz's misrepresentations and concealments and is voidable.

160.    As a direct and proximate result of Ortiz's conversion of Williams's Member interest, Williams has suffered damages in his individual capacity in an amount to be proven at trial, currently estimated in the range of Three Million Nine Hundred Thousand Dollars ($3,900,000) to Seven Million Eight Hundred Thousand Dollars ($7,800,000), representing the value of the fifty percentage point (50%) reduction in Williams's Member interest valued at the time of the restructure and the differential income and distributions Williams would have received from the higher pre-restructure interest. Ortiz's conduct in converting Williams's Member interest was

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

undertaken with malice within the meaning of California Civil Code section 3294, entitling Williams to an award of punitive and exemplary damages.

TWENTY-SEVENTH CLAIM FOR RELIEF (Unjust Enrichment Against Cross-Defendant Jose Rene Ortiz)

161. Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein. This claim is asserted as an alternative theory of recovery to the Eighth, Ninth, Twenty-Fifth, and Twenty-Sixth Claims for Relief.

162. Ortiz has received and retained substantial benefits at Williams's expense, including without limitation: (a) the value of the fifty percentage points (50%) of CWM Member equity transferred from Williams to Ortiz in the January 2024 restructure; (b) the income, profits distributions, salary, equity interests, commissions, and other compensation that Ortiz received from H&S Energy LLC and other entities to which Ortiz diverted CWM's business; (c) the personal residence value preserved by Ortiz's transfer of the Subject Property to the Trust as alleged in the Eleventh through Thirteenth Claims for Relief; and (d) the operational and reputational benefits to Ortiz of having appropriated CWM's customer, vendor, and distributorship relationships. In addition, Ortiz was unjustly enriched by compensation, draws, and distributions he caused CWM to pay to himself, and to Travis Beaudoin, that should, consistent with the members' agreed compensation arrangement, have been paid in part to Williams or retained by CWM; it would be inequitable for Ortiz to retain the benefit of compensation extracted while Williams's agreed compensation went unpaid and the business was neglected.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

163. Ortiz's retention of these benefits is inequitable in light of the misrepresentations, concealments, breaches of fiduciary duty, conversion of Member interest, and pattern of disloyalty alleged elsewhere in this Pleading. The benefits were obtained through conduct violative of Ortiz's legal and equitable obligations to Williams.

164. Williams is entitled to restitution from Ortiz of the value of the benefits unjustly retained, in an amount to be proven at trial, currently estimated in the range of Three Hundred Thousand Dollars ($300,000) to One Million Dollars ($1,000,000), together with such constructive trust, equitable lien, accounting, and other equitable relief as the Court deems just and proper.

**Additional Third-Party Complaint Against Third-Party Defendant Peter Matheny**

**TWENTY-EIGHTH CLAIM FOR RELIEF (Direct Fraud Against Third-Party Defendant Peter Matheny)**

165. Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein. This claim is asserted against Matheny in his individual capacity for conduct undertaken outside the scope of any legitimate authority granted to him by the Bank, as alleged in paragraph 61 above, in the alternative to and concurrent with Williams's Fourth Claim for Relief above seeking recovery from Bank for Matheny's conduct as Bank's agent.

166. Matheny personally made the material misrepresentations to Williams identified in paragraphs 87B through 87C1 above, including each of the specific Matheny communications dated December 27, 2023 at 10:05 a.m. Central time, January 5, 2024, the early January 2024 approval email, and

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

March 5, 2024 at 1:01 p.m. Pacific time. Each such representation was made by Matheny personally with knowledge that it was false or with reckless disregard for the truth, as alleged in paragraph 87D above and amplified in this claim.

167. Matheny acted with the intent that Williams rely on the misrepresentations, and Williams justifiably relied on the misrepresentations as alleged in paragraph 87F above. Matheny derived personal benefit from Williams's reliance, including without limitation origination commissions, performance bonuses, continued employment in Bank's petroleum and convenience-store industry vertical, and the operational benefits associated with closing the CWM/EFA transaction notwithstanding the structural irregularities documented in Bank's own credit file.

168. As a direct and proximate result of Matheny's individual fraud, Williams has suffered damages in his individual capacity in an amount to be proven at trial, currently estimated in the range of Two Hundred Fifty Thousand Dollars ($250,000) to Seven Hundred Fifty Thousand Dollars ($750,000), exclusive of punitive damages. Matheny's conduct was undertaken with malice, oppression, or fraud within the meaning of California Civil Code section 3294, entitling Williams to an award of punitive and exemplary damages against Matheny individually in an amount sufficient to punish Matheny's conduct and to deter similar conduct in the future.

168A. Williams's individual fraud claim against Matheny is asserted on conduct that produced injury accruing to Williams in his post-petition capacity. To the extent any portion of this claim is properly characterized as pre-petition or as estate property under 11 U.S.C. section 541, Williams reserves all rights consistent with Section VI above.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**TWENTY-NINTH CLAIM FOR RELIEF (Fraud by Concealment Against Third-Party Defendant Peter Matheny)**

169. Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein. This claim is asserted under California Civil Code section 1710(3) and the common law of California, in the alternative to and concurrent with Williams's Twenty-Eighth Claim for Relief above.

170. Matheny, as Bank's named loan officer with industry experience in petroleum and convenience-store finance and as the principal Bank counterparty in communication with Williams during the EFA transaction, owed Williams a duty to disclose material facts known to Matheny that Williams could not reasonably have discovered through ordinary diligence. That duty arose from Matheny's exclusive control of the communications between Bank's underwriting team and Williams as the only non-Member-of-CWM signatory among the affected non-borrower persons.

171. Matheny personally concealed from Williams the following material facts that Matheny knew at all relevant times: (a) the substantive credit-objection content of Hernandez's December 27, 2023 6:58 a.m. Central time written 'we cannot finance' determination quoted at paragraph 25B above, which Matheny did not disclose to Williams in his December 27, 2023 10:05 a.m. Central time forward of the email chain but instead framed as an operational paperwork item; (b) the existence and content of Matheny's prior structurally irregular originations in the 2021 Yostina Inc./Petit Auto Wash transaction and the 2023 Zavaro Inc. transaction (Loan No. 2729070, duplicate funding of $130,107.47), each described in paragraphs 62A through 62K above; and (c) Matheny's industry vertical alignment with retail

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

petroleum, convenience-store, and fuel wholesalers in connection with the Conserve Fuels Chula Vista Project as alleged in paragraphs 42B through 42E above.

172. Matheny intended that Williams act in reliance on the concealment, and Williams justifiably relied on the concealment as alleged in paragraph 87F above. As a direct and proximate result of Matheny's concealment, Williams has suffered damages in his individual capacity in an amount to be proven at trial, currently estimated in the range of Two Hundred Fifty Thousand Dollars ($250,000) to One Million Dollars ($1,000,000), exclusive of punitive damages. Matheny's conduct in concealing material facts from Williams was undertaken with malice, oppression, or fraud within the meaning of California Civil Code section 3294, entitling Williams to an award of punitive and exemplary damages.

THIRTIETH CLAIM FOR RELIEF [INTENTIONALLY OMITTED]

AGGREGATE DAMAGES SUMMARY. Williams alleges, on the claims for relief asserted in this Counterclaim, the accompanying Cross-Claim, the accompanying Third-Party Complaint, and the Additional Claims for Relief (Claims 20 through 29), taken in the aggregate and without duplication where overlapping claims address the same underlying injury, that his compensatory damages exceed Twelve Million Dollars ($12,000,000), inclusive of: (a) the fifty percentage-point reduction in his Member equity interest in CWM (range $3,900,000 to $7,800,000 per paragraph 57A); (b) lost CEO and Manager compensation from CWM over a five-year recovery horizon (range $750,000 to $1,500,000); (c) lost prospective business opportunities at a separate business venture (range $200,000 to $700,000); (d) reputational property

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

interest and goodwill (range $200,000 to $1,000,000); and (e) personal defense costs and other consequential damages. Williams's compensatory damages are exclusive of: (i) punitive and exemplary damages recoverable under California Civil Code section 3294 against each of Regions Bank, Jose Rene Ortiz, Washworld, and Peter Matheny; (ii) attorneys' fees recoverable under California Business and Professions Code section 17203 and other applicable authority; (iii) costs of suit; (iv) pre-judgment and post-judgment interest; (v) the equitable relief sought in the Consolidated Prayer for Relief below; and (vi) restitution under California Business and Professions Code section 17203 and under the equitable doctrine of unjust enrichment as asserted in the Twenty-Seventh Claim for Relief. The total amount of Williams's compensatory damages, when supplemented by punitive damages within the constitutional ratio guideposts articulated in BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996), and State Farm Mutual Automobile Insurance Co. v. Campbell, 538 U.S. 408 (2003) (single-digit ratio cap), may exceed Fifty Million Dollars ($50,000,000).

## VII.  CONSOLIDATED PRAYER FOR RELIEF

WHEREFORE, Defendant, Counterclaimant, Cross-Claimant, and Third-Party Plaintiff Andrew P. Williams prays for judgment as follows:

*A.  On the First Amended Complaint of Plaintiff Regions Bank dba Ascentium Capital*

1.  That Plaintiff take nothing from Williams personally and that the First Amended Complaint be dismissed as to Williams with prejudice;

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

2.  That this Court enter judgment in favor of Williams and against Plaintiff on each cause of action asserted against Williams in the First Amended Complaint;

3.  That Williams recover his costs of suit and, to the extent permitted by law, his reasonable attorney's fees (preserved for post-judgment determination); and

4.  Such other and further relief as the Court deems just and proper.

*B.  On the Counterclaim Against Regions Bank dba Ascentium Capital*

1.  For compensatory damages in an amount to be proven at trial for the Bank's negligent supervision of Matheny, including but not limited to defense costs, reputational harm, lost business opportunities, and consequential damages;

2.  For compensatory damages against Counter-Defendant Regions Bank on the Bank's failure to honor its promises to Williams (promissory estoppel as alleged in the Second Claim for Relief), in an amount to be proven at trial, including but not limited to defense costs, lost income from Williams's CEO and Manager role at CWM, lost value in Williams's Member interest in CWM, reputational harm, and consequential damages;

3.  For declaratory relief under 28 U.S.C. § 2201 adjudging and decreeing that (a) Williams is not personally liable for any obligation under the EFA, the Personal Guaranty, or any related instrument; (b) Williams made no misrepresentation of material fact to the Bank in connection with the loan transaction and concealed no material fact from the Bank; (c) Williams's signature on the Authority and Incumbency Certificate, in the capacity of "Certifier," does not give rise to personal liability; and (d) the so-called

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**"Mistaken Payment" was the product of conduct by Matheny and Ortiz, not by Williams;**

**4.    For compensatory damages against Counter-Defendant Regions Bank in an amount to be proven at trial but not less than Two Hundred Fifty Thousand Dollars ($250,000) for the Bank's fraudulent misrepresentations and concealments to Williams as alleged in the Fourth Claim for Relief, including but not limited to defense costs, reputational harm, personal stress and disruption to Williams's professional and personal life, lost opportunity costs, and loss of business relationships;**

**5.    For punitive and exemplary damages against Counter-Defendant Regions Bank pursuant to California Civil Code section 3294 in an amount sufficient to punish the Bank's willful, malicious, and fraudulent conduct and to deter similar conduct in the future;**

**6.    In the alternative to the relief sought in items 4 and 5 above, for compensatory damages against Counter-Defendant Regions Bank in an amount to be proven at trial but not less than Two Hundred Fifty Thousand Dollars ($250,000) for the Bank's negligent misrepresentations to Williams as alleged in the Fifth Claim for Relief;**

**7.    For compensatory damages against Counter-Defendant Regions Bank in an amount to be proven at trial but not less than Two Hundred Thousand Dollars ($200,000) for Bank's intentional interference with Williams's prospective economic advantage as alleged in the Seventh Claim for Relief, plus punitive and exemplary damages under California Civil Code section 3294 in an amount sufficient to punish Bank's willful, malicious, and oppressive conduct;**

8.    [Intentionally omitted.]

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

9.    [Intentionally omitted.]

10.  **For pre-judgment and post-judgment interest as permitted by law;**

11.   **For Williams's costs of suit and, to the extent permitted by law, reasonable attorney's fees; and**

12.  **Such other and further relief as the Court deems just and proper.**

*C.  On the Cross-Claim Against Jose Rene Ortiz, Maria L. Ortiz, and The Ortiz Family Trust of 2024*

1.  **For compensatory damages against Cross-Defendant Jose Rene Ortiz in an amount to be proven at trial for civil conspiracy (limited to post-petition conduct);**

2.   **For compensatory damages against Cross-Defendant Jose Rene Ortiz in an amount to be proven at trial but not less than Two Hundred Fifty Thousand Dollars ($250,000) for Ortiz's fraudulent misrepresentations and concealments to Williams as alleged in the Eighth Claim for Relief, including but not limited to defense costs, reputational harm, personal stress and disruption to Williams's professional and personal life, lost opportunity costs, diminution in the value of Williams's Member interest in CWM, and loss of business relationships;**

3.   **For punitive and exemplary damages against Cross-Defendant Jose Rene Ortiz pursuant to California Civil Code section 3294 in an amount sufficient to punish Ortiz's willful, malicious, and fraudulent conduct and to deter similar conduct in the future;**

4.  **For an order under 6 Del. C. § 18-305 compelling Cross-Defendant Jose Rene Ortiz to provide a true and complete accounting and inspection of CWM's books, records, and financial affairs as set forth in the Tenth Claim**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

for Relief, including the disposition of the $176,552.71 refunded by Washworld to CWM;

5.  For avoidance of the June 13, 2024 transfer of the Subject Property (402 Addleman Avenue, West Covina, California, APN 8725-008-042) into The Ortiz Family Trust of 2024, recorded September 4, 2024 as Document Number 20240594220, under California Civil Code §§ 3439.04(a)(1) and 3439.07, to the extent necessary to satisfy Williams's claims;

6.  For attachment of the Subject Property pursuant to California Civil Code § 3439.07(a)(2) and applicable provisional remedies;

7.  For imposition of a constructive trust on the Subject Property for the benefit of the creditors of Jose Rene Ortiz, including Williams to the extent of his claims, and for an equitable lien on the Subject Property in the amount of Williams's claims;

8.  For an order authorizing and confirming Williams's recordation of a Notice of Pendency of Action (Lis Pendens) with respect to the Subject Property under California Code of Civil Procedure §§ 405 et seq.;

9.  For pre-judgment and post-judgment interest as permitted by law;

10.  For Williams's costs of suit and, to the extent permitted by law, reasonable attorney's fees; and

11.  For equitable indemnity and contribution from Cross-Defendant Jose Rene Ortiz, in proportion to Ortiz's comparative fault, for any portion of any judgment entered against Williams on the First Amended Complaint of the Bank, pursuant to American Motorcycle Association v. Superior Court, 20 Cal. 3d 578 (1978), and California Code of Civil Procedure section 875 et seq.;

12.  Such other and further relief as the Court deems just and proper.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

*D. On the Cross-Claim Against Washworld, Inc.*

**1. [Intentionally omitted.]**

*E. On the Third-Party Complaint Against Peter Matheny*

1.     [Intentionally omitted.]

**2.   For compensatory damages against Third-Party Defendant Peter Matheny in an amount to be proven at trial but not less than One Hundred Thousand Dollars ($100,000) for Matheny's aiding and abetting of Ortiz's breach of fiduciary duty;**

**3.     For compensatory damages against Third-Party Defendant Peter Matheny in an amount to be proven at trial but not less than One Hundred Thousand Dollars ($100,000) for Matheny's tortious interference with Williams's contractual relations under the CWM Operating Agreement as alleged in the Seventeenth Claim for Relief;**

**4.   For indemnity or contribution under Federal Rule of Civil Procedure 14(a) and applicable California common-law and statutory equitable indemnity principles, for all or part of any liability that Williams may be found to have to the Bank;**

**5.   For punitive damages in an amount sufficient to punish and deter, to the extent supported by the evidence and permitted by law;**

**6.   For pre-judgment and post-judgment interest as permitted by law;**

**7.   For Williams's costs of suit; and**

**8.     For equitable indemnity from Third-Party Defendant Peter Matheny, in proportion to Matheny's comparative fault, for any portion of any judgment entered against Williams on the First Amended Complaint of the Bank, pursuant to American Motorcycle Association v. Superior Court, 20**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**Cal. 3d 578 (1978), in addition to the indemnity already pleaded in paragraph 117 above;**

**9.  Such other and further relief as the Court deems just and proper.**

*F.  On the Additional Claims for Relief (Claims 20 through 29)*

*1.  On the Twentieth and Twenty-First Claims for Relief (Negligent Hiring and Negligent Retention of Matheny by Bank): compensatory damages against Counter-Defendant Regions Bank in an amount to be proven at trial but not less than Two Hundred Thousand Dollars ($200,000) for each such claim, plus punitive and exemplary damages on the Twenty-First Claim pursuant to California Civil Code section 3294;*

*2.  On the Twenty-Second Claim for Relief (Aiding and Abetting Matheny's Individual Fraud by Bank): compensatory damages against Counter-Defendant Regions Bank in an amount to be proven at trial but not less than Two Hundred Fifty Thousand Dollars ($250,000), plus punitive and exemplary damages pursuant to California Civil Code section 3294;*

*3.  On the Twenty-Third Claim for Relief (Fraud by Concealment by Bank): compensatory damages against Counter-Defendant Regions Bank in an amount to be proven at trial but not less than Two Hundred Fifty Thousand Dollars ($250,000), plus punitive and exemplary damages pursuant to California Civil Code section 3294;*

4.  [Intentionally omitted.]

*5.  On the Twenty-Fifth Claim for Relief (Breach of Fiduciary Duty - Direct - against Ortiz): compensatory damages against Cross-Defendant Jose Rene Ortiz*

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

*in an amount to be proven at trial but not less than Seven Hundred Fifty Thousand Dollars ($750,000), plus punitive and exemplary damages pursuant to California Civil Code section 3294;*

*6.     On the Twenty-Sixth Claim for Relief (Conversion of Member Interest against Ortiz): compensatory damages against Cross-Defendant Jose Rene Ortiz in an amount to be proven at trial but not less than Four Hundred Thousand Dollars ($400,000), plus punitive and exemplary damages pursuant to California Civil Code section 3294;*

*7.     On the Twenty-Seventh Claim for Relief (Unjust Enrichment against Ortiz): restitution of the benefits unjustly retained by Cross-Defendant Jose Rene Ortiz in an amount to be proven at trial but not less than Three Hundred Thousand Dollars ($300,000), together with such constructive trust, equitable lien, accounting, and other equitable relief as the Court deems just and proper;*

*8.     On the Twenty-Eighth Claim for Relief (Direct Fraud against Matheny): compensatory damages against Third-Party Defendant Peter Matheny in an amount to be proven at trial but not less than Two Hundred Fifty Thousand Dollars ($250,000), plus punitive and exemplary damages pursuant to California Civil Code section 3294;*

*9.     On the Twenty-Ninth Claim for Relief (Fraud by Concealment against Matheny): compensatory damages against Third-Party Defendant Peter Matheny in an amount to be proven at trial but not less than Two Hundred Fifty Thousand Dollars ($250,000), plus punitive and exemplary damages pursuant to California Civil Code section 3294;*

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

*10. For pre-judgment and post-judgment interest as permitted by law;*

*11. For Williams's costs of suit and, to the extent permitted by law, reasonable attorneys' fees; and*

*12. Such other and further relief as the Court deems just and proper.*

**G. Reservation of Rights**

Williams expressly reserves all rights to amend this pleading under Federal Rule of Civil Procedure 15, including upon (a) abandonment by the Chapter 7 Trustee of estate property claims under 11 U.S.C. § 554, (b) appearance of counsel for Car Wash Management, LLC, (c) further factual development through discovery, and (d) such other procedural posture as may be appropriate. Williams further reserves all defenses, rights, and remedies under federal and state law not expressly waived herein.

## VIII. DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b) and the Seventh Amendment to the United States Constitution, Defendant, Counterclaimant, Cross-Claimant, and Third-Party Plaintiff Andrew P. Williams hereby demands a trial by jury of all issues so triable in this action.

Dated: June 10, 2026

Respectfully submitted,

_____

**Andrew P. Williams**

Pro Se Defendant, Counterclaimant,

Cross-Claimant, and Third-Party Plaintiff

139

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

12641 Antioch Road, Suite #1045

Overland Park, Kansas 66213

Telephone: (619) 796-6469

Email: andrew@carwashmgmt.com

## EXHIBIT A

## Recorded Grant Deed

## Los Angeles County Document Number 20240594220

## Recorded September 4, 2024 at 12:19 PM

Grantors: Jose R. Ortiz and Maria L. Ortiz, Husband and Wife as Joint Tenants

Grantees: Jose Ortiz Trustee, Maria L. Ortiz Trustee, and The Ortiz Family Trust of 2024

Property: 402 Addleman Avenue, West Covina, California 91792

Assessor's Parcel Number: 8725-008-042

Notary Public: Mary Poncedeleon, Commission No. 2354659, County of Orange, California

Date of Execution: June 13, 2024

Date of Recordation: September 4, 2024

[A true and correct copy of the recorded Grant Deed, Los Angeles County Document Number 20240594220, is attached hereto and incorporated by reference. The recorded instrument bears the printed direction: "When recorded mail to: JOSE ORTIZ & MARIA ORTIZ, Trustees, c/o Law Office of Lisa Mitts Patrick, 112 E. Amerige Ave. Suite 313, Fullerton, CA 92832," together with the contact information of Lisa Mitts Patrick, Esq. (telephone, facsimile, and email).]

**EXHIBIT B**

Delaware UCC Search Report (Parasec), dated May 21, 2026, Delaware Department of State, reflecting UCC-1 Financing Statement No. 2024 0175388 and UCC-3 Amendment No.

140

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

2026 1676747 naming "C T CORPORATION SYSTEM, AS REPRESENTATIVE" as the secured party of record.

[A true and correct copy of the Delaware UCC Search Report dated May 21, 2026 is attached hereto and incorporated by reference.]

141

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

Andrew P. Williams

12641 Antioch Road, Suite #1045

Overland Park, Kansas 66213

Telephone: (619) 796-6469

Email: andrew@carwashmgmt.com

Pro Se Defendant, Counterclaimant,

Cross-Claimant, and Third-Party Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGIONS BANK, an Alabama State Bank dba ASCENTIUM CAPITAL, | Case No. 2:25-cv-00359-CAS-KSx |
| Plaintiff, | DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT |
| v. | |
| CAR WASH MANAGEMENT, LLC, a Delaware Limited Liability Company; CAR WASH MANAGEMENT, LLC, a Hawaii Limited Liability Company; WEST COVINA CAR WASH LLC; JOSE RENE ORTIZ; | First Amended Complaint Filed: March 17, 2026 Trial Date: DecemJer 1, 2026 |

1

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**ANDREW PAUL WILLIAMS;**

**WASHWORLD,**

**INC.; DOES 1-100, inclusive,**

        Defendants.

8888888888888888888888888888888

**ANDREW PAUL WILLIAMS,**

        Counter-Claimant, Cross-Claimant,
        and Third-Party Plaintiff,

v.

**REGIONS BANK dba ASCENTIUM**

**CAPITAL;**

**JOSE RENE ORTIZ; MARIA L. ORTIZ;**

**THE ORTIZ FAMILY TRUST OF 2024;**

**WASHWORLD, INC.; PETER**

**MATHENY;**

**ROES 1-50, inclusive,**

        Counter-Defendant,
        Cross-Defendants, and
        Third-Party Defendant.

~~REGIONS BANK, an Alabama State Bank~~

~~dba ASCENTIUM CAPITAL,~~

Judge: Hon. Christina A. Snyder

Courtroom: "D

~~Case No. 2:25-cv-00359-CAS-KSx~~

2

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

Plaintiff,

v.

CAR WASH MANAGEMENT, LLC, a Delaware Limited Liability Company; CAR WASH MANAGEMENT, LLC, a Hawaii Limited Liability Company; WEST COVINA CAR WASH LLC; JOSE RENE ORTIZ; ANDREW PAUL WILLIAMS; WASHWORLD, INC.; DOES 1-100, inclusive,

Defendants.
8888888888888888888888888888888888

ANDREW PAUL WILLIAMS,

Counter-Claimant, Cross-Claimant, and Third-Party Plaintiff,

v.

REGIONS BANK dba ASCENTIUM CAPITAL;

DEFENDANT ANDREW P. WILLIAMS'S FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

First Amended Complaint

Filed: March 17, 2026

Trial Date: December 1, 2026

Judge: Hon. Christina A. Snyder

Courtroom: "D

3

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

JOSE RENE ORTIZ; MARIA L. ORTIZ;

THE ORTIZ FAMILY TRUST OF 2024;

WASHWORLD, INC.; PETER

MATHENY;

ROES 1-50, inclusive,

          Counter-Defendant,

          Cross-Defendants, and

          Third-Party Defendant.

## PRELIMINARY STATEMENT

Pursuant to Federal Rules of Civil Procedure 7, ", 12, 13, and 14, Defendant Andrew P. Williams ("Williamsb), appearing pro se, hereJy suJmits this SecondFirst Amended Answer to the First Amended Complaint of Plaintiff Regions Bank dJa Ascentium Capital ("Plaintiffb or "the Bankb), together with his Affirmative Defenses, Counterclaim against the Bank, Cross-Claim against co-Defendant _ose Rene Ortiz ("Ortizb), and as to the Eleventh Claim concerningMaria L. Ortiz (named on the fraudulent transfer and constructive trust claims only), and The Ortiz Family Trust of 2024 (the "Trustb), and Third-Party Complaint against Peter Matheny ("Mathenyb), the loan officer at Ascentium Capital who originated and structured the underlying transaction.

This filing presents the truth of the transaction at the heart of this case: the Equipment Finance Agreement ("EFAb) executed in _anuary 2024 in the principal amount of $343,394.23 (suJsequently restated as $346,904.75 Jy the March 7, 2024 Addendum executed Jy Ortiz alone), ostensiJly for car wash equipment to Je supplied Jy Washworld, Inc. for installation at premises owned Jy West Covina

4

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

Car Wash LLC, was architected Jy Matheny in concert with Ortiz. The loan was sized against an existing Washworld quote for an unrelated CWM project in Chula Vista, California (the "Chula Vista Projectb), in a structure architected Jy Matheny under which Washworld, after applying a portion of loan proceeds to settle CWM's pre-existing Chula Vista trade Jalance, refunded the surplus to CWM, which CWM in fact deployed in its entirety to acquire and install car wash equipment for the tunnel car wash facility at the West Covina site, including tunnel wash systems, water treatment and reclaim equipment, pumping and pneumatic systems, electrical and mechanical components, drying and lighting equipment, vacuum stations, a controller, and chemical-delivery equipment, all as more fully identified in paragraph 41 Jelow. The structure as architected Jy Matheny was non-standard in form, in that the loan was sized against a quote for one of CWM's projects (Chula Vista) while the resulting equipment was deployed across two of CWM's projects (Chula Vista trade Jalance settlement and West Covina car wash equipment acquisition). Matheny's architecture, as further alleged herein, was not isolated Jut a continuation of a documented multi-year pattern Jy Matheny of originating equipment financing transactions for Jorrowers in the petroleum and car wash retail vertical, including the Yostina Inc./Petit Auto Wash transaction of _une through _uly 2021 ($150,000 financing for which Matheny instructed the vendor what amount and addressee the invoice should reflect) and the Zavaro Inc. transaction of May 2023 through May 2024 ($130,107.47 of duplicate funding disJursed to CWM under Ascentium Finance Agreement No. 2729070 in a circular-financing structure that Matheny later attempted to clean up Jy directing CWM to wire the duplicate proceeds onward to Zavaro).

Williams's relationship to CWM was as follows. At formation of CWM on or aJout April 16, 2022, Williams held a sixty percent (60%) majority memJership

5

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

interest. In late 2023 and _anuary 2024, at Matheny's direction and as a precondition to funding the EFA, Williams's majority position was restructured to a ten percent (10%) minority interest, with Ortiz elevated to an eighty percent ("0%) controlling interest and sole personal guarantor; the amended Operating Agreement reflecting this restructure was Jundled into the EFA closing documents and executed contemporaneously with the EFA in _anuary 2024. At all relevant times concerning the EFA, Williams was therefore a ten percent (10%) minority memJer of CWM. Williams also held the title of Chief Executive Officer ("CEOb) for limited purposes, including for use in communications with Janks and vendors and in his email signature, and was a Manager of CWM. Williams's titles, however, did not confer upon him control over the structuring or funding of the EFA, signing authority over the Bank's financing documents, control over the disJursement of loan proceeds, or any role in the Bank's internal underwriting and compliance processes. CWM was at all relevant times a small enterprise in which Williams performed wide-ranging operational functions, including customer-facing work, vendor coordination, quote preparation, and routine administrative tasks. Williams did not sign the EFA, the Personal Guaranty, the Authorization to Perform VerJal Verification, the Customer Identification Program form, the Delivery and Acceptance Certificate, the Funding Instructions, the Commencement Agreement, or any Addendum to the EFA. Each of those documents was signed Jy Ortiz, the eighty percent ("0%) controlling memJer of CWM, who served as the Bank's designated authorized representative for the Jorrower and as the sole personal guarantor on the loan. Williams's only signature on any Bank financing-related document was on the Authority and IncumJency Certificate, which he signed solely in the capacity of "Certifierb attesting to Ortiz's authority to Jind CWM, and not in the capacity of a Jorrower, principal, or guarantor.

6

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

The loan was originated under circumstances in which: (a) the original credit application was suJmitted in the name of West Covina Car Wash LLC for $250,000, Jut the Bank ultimately funded a loan in the name of CWM for an amount that grew during processing; (J) the Operating Agreement of CWM presented to the Bank reflected an ownership structure that had Jeen restructured at Matheny's direction prior to suJmission to the Bank; (c) Matheny instructed Williams in writing to Jypass the Bank's standard internal document upload portal and instead transmit loan documents to Matheny personally Jy email; and (d) the loan was sized against the Washworld Chula Vista quote, resulting in approximately $132,509.09 of loan proceeds Jeing refunded Jy Washworld Jack to CWM after settlement of the Chula Vista trade Jalance, and deployed Jy CWM in its entirety to acquire and install car wash equipment at the West Covina tunnel car wash facility, all of which equipment is presently in operating use at that facility.

NotaJly, the Bank itself has acknowledged in this litigation, as reflected in its filing at Docket No. "2, that Williams was "proJaJly not collectaJle.b Notwithstanding that admission against interest, the Bank oJtained leave to file the operative First Amended Complaint and re-added Williams as a defendant on March 17, 2026. The Bank's decision to pursue Williams personally despite its own assessment of non-collectaJility is itself evidence that the Bank's continued prosecution of Williams is motivated Jy purposes other than legitimate recovery.

Williams asserts herein only those claims for which he has standing in his individual capacity, framed to avoid trenching upon (i) claims that may constitute property of his Jankruptcy estate under 11 U.S.C. § 541, (ii) claims that are derivative of CWM (which Williams, as a pro se litigant, lacks standing to assert in this action under Rowland v. California Men's Colony, 506 U.S. 194 (1993), and

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

Simon v. Hartford Life, Inc., 546 F.3d 661 (9th Cir. 200")), and (iii) claims that may Je more appropriately asserted Jy the Chapter 7 Trustee or Jy CWM through its retained counsel of record. Williams expressly reserves all rights to amend this pleading under Federal Rule of Civil Procedure 15 upon (a) aJandonment Jy the Chapter 7 Trustee of estate property claims under 11 U.S.C. § 554, (J) appearance of counsel for CWM, or (c) such other procedural posture as may Je appropriate to permit assertion of preserved claims.

Williams further suJmits this pleading without waiver of, and expressly reserving, his oJjection to the sufficiency of the Bank's purported service of the First Amended Complaint upon Williams as detailed in his Twenty-Ninth Affirmative Defense.

## I. JURISDICTION AND VENUE

**1.** This Court has suJject matter jurisdiction over the Bank's claims pursuant to 2" U.S.C. § 1332 Jy reason of complete diversity of citizenship and an amount in controversy exceeding $75,000, as alleged in the First Amended Complaint.

**2.** This Court has supplemental jurisdiction over the Counterclaim, Cross-Claim, and Third-Party Complaint pursuant to 2" U.S.C. § 1367, Jecause all of the claims asserted herein arise from the same transactions and occurrences as the Bank's claims and form part of the same case or controversy.

**3.** This Court additionally has suJject matter jurisdiction over the Counterclaim against Plaintiff and the Cross-Claim against Cross-Defendants pursuant to 2" U.S.C. § 1332 Jy reason of complete diversity of citizenship and an amount in controversy exceeding $75,000.

"

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

4. Venue is proper in this District under 2" U.S.C. § 1391(J) Jecause a suJstantial part of the events or omissions giving rise to the claims occurred in this District, including the negotiation, structuring, funding, and performance of the EFA, the operation of CWM in this District, and Ortiz's alleged diversion of CWM's Jusiness in this District. Venue for the UVTA claims herein is also proper in this District Jecause the real property at issue is located in this District.

5. This Court has personal jurisdiction over Counter-Defendant Regions Bank dJa Ascentium Capital Jecause the Bank initiated the underlying litigation in this Court and has voluntarily appeared and litigated herein.

6. This Court has personal jurisdiction over Cross-Defendant Ortiz, whoDefendants Ortiz and Maria L. Ortiz Jecause each is an individual residing in West Covina, California, within this District. Cross-Defendant Ortiz has additionally voluntarily appeared and litigated as a Cross-Complainant herein.

7. This Court has personal jurisdiction over Cross-Defendant The Ortiz Family Trust of 2024 Jecause the Trust holds title to real property located in West Covina, California, within this District (commonly known as 402 Addleman Avenue, West Covina, California 91792, identified Jy Los Angeles County Assessor's Parcel NumJer "725-00"-042), and Jecause the Trust was formed and is administered in California Jy trustees who reside in California.

8. This Court has personal jurisdiction over Third-Party Defendant Matheny Jecause, among other reasons, Matheny conducted Jusiness in California involving the transactions at issue, communicated repeatedly with persons in California regarding those transactions, structured loan transactions secured Jy collateral located in California, and directed funds to Je wired to California-Jased parties as part of the conduct giving rise to the claims herein.

9

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

## II.  PARTIES

9.     Counterclaimant, Cross-Claimant, and Third-Party Plaintiff Andrew P. Williams ("Williamsb) is an individual. At formation of CWM in April 2022, Williams held a sixty percent (60%) majority memJership interest in CWM, as set forth in paragraph 21 Jelow. In late 2023 and _anuary 2024, Williams's memJership was restructured to a ten percent (10%) minority interest contemporaneously with the EFA closing, at Matheny's direction and as a precondition to the Bank's funding, as set forth in paragraphs 24 and 25A through 25D Jelow. Williams also served as a Manager of CWM and held the title of Chief Executive Officer ("CEOb) for purposes of communications with Janks, vendors, and other counterparties, and used the CEO designation in his email signature. CWM was a small company in which Williams performed a wide range of operational functions consistent with a small-Jusiness environment.

10.     Counter-Defendant Regions Bank, doing Jusiness as Ascentium Capital ("Regionsb or "the Bankb), is an AlaJama State Bank with its principal place of Jusiness in Birmingham, AlaJama, and operates a division known as Ascentium Capital with offices located at 23970 Highway 59 N, Kingwood, Texas 77339. On March 31, 2023, Ascentium Capital, LLC was merged into Regions Bank, and Regions Bank now operates Ascentium Capital as a division. Regions is the Plaintiff and Counter-Defendant in this action.

11.     Cross-Defendant _ose Rene Ortiz ("Ortizb) is an individual residing at 402 Addleman Avenue, West Covina, California 91792. At all times relevant to the EFA, Ortiz was and is the eighty percent ("0%) controlling memJer of CWM and served as its principal manager exercising actual operational authority over

10

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CWM's Jusiness affairs. On information and Jelief, Ortiz is currently employed Jy H&S Energy LLC.

12. ~~Cross-Defendant~~ The Ortiz Family Trust of 2024 (the "Trustb) is a California trust formed in 2024, the trustees of which are _ose R. Ortiz and Maria L. Ortiz. The Trust is the record title holder of certain real property located at 402 Addleman Avenue, West Covina, California 91792, identified Jy Los Angeles County Assessor's Parcel NumJer "725-00"-042 (the "SuJject Propertyb). The SuJject Property was transferred into the Trust Jy Grant Deed executed Jy _ose R. Ortiz and Maria L. Ortiz on _une 13, 2024 and recorded with the Los Angeles County Registrar-Recorder/County Clerk on SeptemJer 4, 2024 as Document NumJer 20240594220, in circumstances giving rise to the claims for fraudulent transfer asserted herein. A true and correct copy of the recorded Grant Deed is attached as ExhiJit A and incorporated Jy reference.

12A. Maria L. Ortiz and The Ortiz Family Trust of 2024 are not named as parties in this Second Amended pleading. Williams reserves the right to re-add them, and to seek avoidance as against the transferees of the SuJject Property, should discovery warrant.

12A. ~~Cross-Defendant Maria L. Ortiz ("Maria Ortizb) is an individual residing at 402 Addleman Avenue, West Covina, California 91792, and is the spouse of Cross-Defendant _ose Rene Ortiz. Maria Ortiz is named as a Cross-Defendant solely on the Eleventh and Thirteenth Claims for Relief herein (fraudulent transfer and constructive trust) Jy reason of her status as (a) co-grantor with _ose R. Ortiz, in their former capacity as "HusJand and Wife as _oint Tenants,b of the _une 13, 2024 Grant Deed transferring the SuJject Property into the Trust, and (J) co-trustee of the Trust. Williams asserts no other affirmative claim against Maria Ortiz.~~

11

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

13.    As alleged in detail in paragraph 67 below and as appears on the face of the recorded Grant Deed attached as Exhibit A, the recorded Grant Deed transferring the Subject Property into the Trust directs that the recorded instrument be returned to the trustees "c/o Law Office of Lisa Mitts Patrick, 112 E. Amerige Ave. Suite 313, Fullerton, CA 92"32," together with Ms. Mitts Patrick's office telephone, facsimile, and email.

14.    Third-Party Defendant Peter Matheny ("Matheny") is an individual believed to reside in or near Kingwood, Texas or San Diego, California. At all relevant times, Matheny was employed by Ascentium Capital, LLC and subsequently Regions Bank as a loan officer with primary responsibility for originating and structuring the loan transaction at issue in this action. Public records indicate that Matheny holds the title "Vice President of Sales, Petroleum/C-Store" at Ascentium Capital, a role he has held since May 2020, with his industry vertical being retail petroleum, convenience stores, and fuel wholesalers. On information and belief, Matheny acted in his individual capacity, outside the scope of any legitimate authority granted to him by the Bank, in committing the acts complained of herein, and is therefore individually liable for the resulting damages.

15.    Defendant Car Wash Management, LLC ("CWM Delaware" or "CWM") is a Delaware limited liability company organized on or about April 16, 2022. As of the date of the underlying loan transaction (January 2024), and as restructured at Matheny's direction contemporaneously with the EFA closing, CWM Delaware's members were Ortiz ("0%), Travis Beaudoin ("Beaudoin") (10%), and Williams (10%). At formation in April 2022, the membership had been Williams (60%), Ortiz (25%), and Beaudoin (15%); the restructure is alleged in paragraph 24 below. Williams does not assert herein any claim derivative of CWM

12

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

Delaware. Williams expressly reserves all rights to amend this pleading to assert derivative claims under Federal Rule of Civil Procedure 15 upon appearance of counsel for CWM Delaware, aJandonment of estate property Jy the Chapter 7 Trustee, or such other procedural posture as may permit those claims to Je asserted.

16.     Defendant Car Wash Management, LLC, a Hawaii limited liaJility company (”CWM Hawaiib), is a Hawaii Domestic Limited LiaJility Company, Hawaii File NumJer 209975 C5, registered on FeJruary 22, 2019. CWM Hawaii was organized for the limited purpose of operating a discrete government services contract performed in the State of Hawaii. CWM Hawaii's operational life ended in approximately 2022 to 2023 upon conclusion of the underlying government contract, after which the entity has Jeen functionally defunct. CWM Hawaii's 2024 annual filing in Hawaii is delinquent and the entity is currently not in good standing. As of the date hereof and at relevant times after the departure of former memJer _onathan Kim (Chief Financial Officer of the Hawaii entity), the memJership of CWM Hawaii has consisted of Ortiz, Williams, and Beaudoin. CWM Hawaii has had no role in, and was not a party to, the EFA or the underlying transaction descriJed herein. The Bank's joinder of CWM Hawaii as a defendant in the First Amended Complaint, notwithstanding the Bank's own pleading admission at FAC ¶ 2 that ”the contracting entity in this case was and is the Delaware entity,b appears to Je a pretextual effort to impute liaJility across legally distinct entities without Jasis.

17.     Defendant Travis Beaudoin (”Beaudoinb) is an individual Jelieved to reside in San Diego County, California. Beaudoin was, at relevant times, a memJer of CWM Delaware (15% at formation; 10% after the _anuary 2024 restructure) and a memJer of CWM Hawaii. On information and Jelief, Beaudoin departed from

13

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CWM around the same time as Ortiz, and currently services car wash equipment in San Diego County. Williams asserts no affirmative claim against Beaudoin herein.

18.    Defendant West Covina Car Wash LLC ("WCCWb) is a California limited liaJility company that owns or operates real property at 310 S. Vincent Avenue, West Covina, California, and is a corporate guarantor on the EFA. On information and Jelief, Ortiz holds an ownership interest in WCCW.

19.    Defendant Washworld, Inc. ("Washworldb) is a Wisconsin corporation with its principal place of Jusiness in De Pere, Wisconsin. Washworld manufactures car wash equipment and at all relevant times had a distriJutor relationship with CWM. On information and Jelief, Washworld is also a vendor and equipment supplier to H&S Energy LLC, the same entity that currently employs Ortiz and Beaudoin. Washworld is named as a Defendant in the Bank's First Amended Complaint. Williams alleges on information and Jelief that Washworld was, at the time of the March 2024 funding and disJursement, unaware of the Jroader Matheny-architected loan structure and acted in good faith pursuant to Matheny's and the Bank's wire instructions in handling the loan proceeds descriJed in Section D Jelow.

20.    ROES 1 through 50 are persons or entities whose true identities are presently unknown to Williams. Williams will amend this pleading to include their true names and capacities when ascertained. Williams is informed and Jelieves, and on that Jasis alleges, that ROES 1 through 50 include: (a) other employees, agents, or officers of the Bank who participated in or had knowledge of the wrongful conduct alleged herein; (J) other co-conspirators with Matheny in the Jroader scheme of Matheny-originated structurally irregular loan originations; (c) other Jeneficiaries of the diversion of CWM's Jusiness; and (d) other entities that

14

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

received improper transfers of CWM's assets, customers, or Jusiness opportunities.

### III.  FACTUAL ALLEGATIONS

*A.  CWM Formation and Williams's Role*

21.    CWM was organized as a Delaware limited liaJility company on or aJout April 16, 2022. The Operating Agreement of CWM executed at that time set forth the original memJership interests of CWM as follows: Andrew Williams, sixty percent (60%); _ose Rene Ortiz, twenty-five percent (25%); and Travis Beaudoin, fifteen percent (15%). Each memJer contriJuted zero dollars ($0) of capital. Williams held the original majority memJership interest in CWM Jy reason of his role in founding and operating the enterprise.

22.    Pursuant to the operative Operating Agreement of CWM at all times relevant to the EFA (as amended in connection with the EFA closing as alleged in paragraphs 24 and 25A through 25D Jelow), CWM "will Je managed Jy its MemJersb and "[d]ecisions shall Je made Jy a majority vote unless otherwise stated in this Agreement.b By reason of his eighty percent ("0%) post-restructure ownership interest, Ortiz held majority control over CWM's decisions and affairs and exercised actual operational authority over CWM's Jusiness at all times concerning the EFA.

23.    Williams served at CWM (after the _anuary 2024 restructure) as a MemJer (10%), as a Manager, and as Chief Executive Officer ("CEOb), the latter title Jeing held primarily for purposes of dealings with Janks, vendors, and other counterparties, and used in his email signature. CWM operated as a small Jusiness in which Williams performed a wide range of functions, including Jut not limited

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

to: assisting with the preparation of customer quotes; coordinating with vendors and equipment manufacturers; managing administrative functions; and performing routine operational tasks of every kind ordinary to a small enterprise. Williams's titles, however, did not give him signing authority on the Bank's financing documents, did not give him control over the structuring or funding of the EFA, did not give him control over the disJursement of loan proceeds received Jy CWM, and did not give him a role in the Bank's internal underwriting or compliance processes. Each of those functions was performed Jy Ortiz as the eighty percent ("0%) controlling memJer, Jy Matheny as the Bank's loan officer, or Jy other personnel of the Bank.

24.    In late 2023 and _anuary 2024, at the direction of Matheny and as a precondition to the Bank's funding of the EFA, the memJership of CWM was restructured from its original April 16, 2022 allocation (Williams 60%, Ortiz 25%, Beaudoin 15%) to the allocation that the Bank required in order to fund (Ortiz "0%, Williams 10%, Beaudoin 10%). The restructuring was directed Jy Matheny so that Ortiz could Je presented to the Bank as the controlling memJer and sole personal guarantor. The discussions concerning the restructuring occurred in multiple telephonic conversations Jetween Matheny and memJers and personnel of CWM, including speakerphone conversations in which Williams, Ortiz, and Beaudoin were each present at various times. The amended Operating Agreement reflecting the post-restructure allocation was Jundled into the EFA closing documents and executed contemporaneously with the EFA in _anuary 2024. A copy of the amended Operating Agreement is in the Bank's loan file. As reflected in suJsequent written correspondence from Ascentium's credit underwriter Lara C. Hernandez (alleged in paragraphs 25A through 25D Jelow), the Bank itself required "LLC Operating Agreements for Joth entities to document _ose's majority

16

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

ownershipb as a condition of funding the loan. Williams gave up his original sixty percent (60%) majority position at Matheny's direction in order for Matheny and the Bank to oJtain the documentary record they required to fund the EFA on the structure that Matheny had architected.

## B. The Loan Application Process

25.    In or aJout DecemJer 2023, an initial Commercial Credit Application was suJmitted to Ascentium Capital in the name of West Covina Car Wash LLC for a loan in the amount of approximately $250,000. That application was signed Jy Ortiz as MemJer of WCCW, with his Social Security NumJer, date of Jirth, home address, and other personal identifying information, on or aJout DecemJer 22, 2023. Williams did not sign the Commercial Credit Application.

25A.    On or aJout DecemJer 26, 2023, at approximately 10:3" a.m. Pacific time, Matheny transmitted to Williams Jy text message a photograph of the original Ascentium Commercial Credit Application Jearing Pete Matheny's name and contact information, the Business Legal Name "West Covina Car Wash,b street address "310 St. Vincent Street, West Covina, CA 91790,b Contact Name "Rene Ortiz, Title: MemJer,b Federal Tax ID 93-4"06991, with Vendor Name "Car Wash Management,b Vendor Address "7776 Trade Street, San Diego, CA 92121,b and Vendor Contact telephone ("0") 465-2291. The same day, on or aJout DecemJer 26, 2023, the Ascentium credit application designated "App # 2763169 for West Covina Car Wash LLCb was declined Jy Ascentium's credit department on grounds of insufficient time-in-Jusiness. In response to that decline, Matheny e-mailed Lara C. Hernandez of Ascentium (with Tony Zieglar of Ascentium copied) at 3:17 p.m. Central time on DecemJer 26, 2023, proposing a suJstitution of Jorrower entities: "Car Wash Management has several Car Wash locations, Jut

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

they are on military Jases. What if we we're to CCG Car Was Management LLC which _ose Ortiz owns "0% of?b The suJstitution of CWM as Jorrower of record in place of WCCW was initiated Jy Matheny, not Jy Williams or Jy any other memJer of CWM.

25B. On or aJout DecemJer 26, 2023, at 5:1" p.m. Central time, Ascentium's credit underwriter Lara C. Hernandez responded in writing, summarizing the structural relationships and flagging the arm's-length proJlem with the proposed transaction: "West Covina Car Wash LLC is the landlord, according to the space agreement attached. Car Wash Management LLC is the tenant, according to the space agreement. PG _ose Rene Ortiz owns the tenant entity, which owns the real estate entity and is also the vendor??? West Covina Car Wash LLC is a new LLC that is 30% held Jy investors, 70% held Jy Car Wash Management LLC, in which _ose Ortiz owns "0% of CWM.b Ms. Hernandez then proceeded the next morning, on or aJout DecemJer 27, 2023, to inform Matheny: "We cannot finance a transaction where customer and vendor do not have an arm's length distance. Would there Je a manufacturer the equipment could Je purchased from directly and cut-out Car Wash Management as the vendor? … We would need LLC Operating Agreements for Joth entities to document _ose's majority ownership. Car Wash would Je oJligor and West Covina as cross corp.b

25C.  On or aJout DecemJer 26, 2023, Matheny replied to Ms. Hernandez's 5:1" p.m. DecemJer 26, 2023 message (paragraph 25B aJove), copying Mr. Zieglar, in pertinent part: "Yes exactly! I know it's a very interesting scenario. We've done a few deals through Car wash management the vendor.b Matheny's statement, made in writing on Bank time from a Bank e-mail account to a Bank credit underwriter, is an admission of conduct in originating "a few deals through Car wash management the vendor,b notwithstanding the arm's-length proJlem that

1"

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

Ms. Hernandez had identified. The admission, taken together with the documented Yostina Inc./Petit transaction (Section G.3 Jelow) and the Zavaro Inc. transaction (Section G.2 Jelow), corroJorates the pattern alleged herein.

**25D.** On or aJout DecemJer 27, 2023, at 10:05 a.m. Central time, Matheny forwarded the entire foregoing internal Ascentium e-mail chain to Williams, stating: "Hi Andrw [sic], See email Jelow. Can you get me LLC Operating Agreements for Joth entities to document _ose's majority ownership?b Notwithstanding Ms. Hernandez's written recommendation that CWM Je "cut-outb as the vendor, Matheny did not cause CWM to Je removed as the vendor on the transaction; instead, Matheny proceeded with Joth CWM as Jorrower of record and CWM as designated vendor, with the loan ultimately funded against a vendor invoice from Washworld and, suJsequently, against a wire to AVW Equipment Co., Inc. as set forth Jelow. The Bank, having received Ms. Hernandez's written underwriting recommendation, took no documented action to enforce that recommendation. Matheny's DecemJer 27, 2023 e-mail to Williams demanding amended Operating Agreements is the documentary precondition for the Jundled-into-EFA restructure alleged in paragraph 24 aJove.

**26.** Following the suJmission of the WCCW Commercial Credit Application, Matheny indicated that additional documentation was required for the loan to proceed. By text message dated DecemJer 2", 2023, after Williams transmitted the Operating Agreement of CWM to Matheny, Matheny responded: "Perfect. Now we just need West Covina.b

**27.** Between DecemJer 2", 2023 and _anuary 5, 2024, the structure of the loan transaction was modified such that the Jorrower of record on the EFA Jecame CWM rather than WCCW, and WCCW Jecame a corporate guarantor rather than

19

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

the Jorrower. The change of Jorrower entity was directed Jy Matheny and not Jy Williams.

28.     On or aJout _anuary 5, 2024, Matheny instructed Williams Jy text message: "Email me a copy of the signed docs Jefore we upload. I want to make sure it's good to go.b Matheny then sent a follow-up text stating: "I was just told you don't need to use that upload link. _ust email to me please.b

29.     On information and Jelief, the "upload linkb or "upload portalb referenced Jy Matheny was the standard internal document suJmission system maintained Jy Ascentium Capital for loan documentation. By instructing Williams to Jypass that portal and instead transmit loan documents to Matheny personally Jy email, Matheny circumvented the Bank's internal document audit trail, the Bank's compliance review processes, and the Bank's standard origination protocols.

## C.  Execution and Funding of the EFA

30.     The Equipment Finance Agreement Jearing Agreement No. 2763169 ("the EFAb) was executed Jy Ortiz as MemJer of CWM. Williams did not sign the EFA in any capacity. The EFA designates CWM as the Jorrower and identifies the property to Je financed as car wash equipment to Je supplied Jy Washworld.

31.     On or aJout _anuary 5, 2024, an Authorization to Perform VerJal Verification with respect to Agreement No. 2763169 was executed Jy Ortiz as MemJer of CWM. Williams did not sign the Authorization to Perform VerJal Verification.

32.     On or aJout _anuary ", 2024, a Customer Identification Program form with respect to Agreement No. 2763169 was executed Jy Ortiz, providing his date of Jirth (_une 12, 1967) for purposes of identification under federal anti-money-

20

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

laundering law. Williams did not sign the Customer Identification Program form. Williams's date of Jirth was not provided to the Bank in connection with the loan.

**33.    On or about January 5, 2024, an Authority and Incumbency Certificate with respect to Agreement No. 2763169 was executed. The Certificate identifies Ortiz as the "duly appointed and qualified officer, manager, partner, member or other appointed official" of CWM authorized to execute and deliver the EFA and related agreements. Williams signed the Authority and Incumbency Certificate solely in his capacity as the "Certifier" who certified that Ortiz held the authority described therein. Williams did not sign as a borrower, principal, or guarantor. Williams's understanding at the time of signature, based on Matheny's contemporaneous oral representations, was that the Authority and Incumbency Certificate served the limited purpose of verifying that Ortiz, as the named officer of CWM authorized to act on CWM's behalf, was properly authorized to execute the EFA and related instruments on behalf of CWM. Matheny did not orally communicate to Williams that the "Certifier" signature also constituted Williams's personal certification of any other fact about the transaction, its structure, or the parties' relationships. Williams did not understand, and was not given reason by Matheny to understand, that signing as Certifier exposed Williams to any form of personal liability.**

**34.**    On or aJout _anuary 5, 2024, a Personal Guaranty with respect to Agreement No. 2763169 was executed Jy Ortiz as the sole guarantor. Williams did not sign the Personal Guaranty. Williams is not, and has never Jeen, a personal guarantor of the EFA, of CWM's oJligations to the Bank, or of any related indeJtedness.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

35.    On or aJout _anuary ", 2024, a Delivery and Acceptance Certificate with respect to Agreement No. 2763169 was executed Jy Ortiz as MemJer of CWM, certifying that the equipment had Jeen delivered, conformed to the order, and was in satisfactory condition. Williams did not sign the Delivery and Acceptance Certificate.

36.    On or aJout _anuary 5, 2024, a Commencement Agreement with respect to Agreement No. 2763169 was executed Jy Ortiz as MemJer of CWM. Williams did not sign the Commencement Agreement.

37.    On or aJout _anuary 5, 2024, Matheny inquired of Williams Jy text message: "Do you want 50% or 100% released to AVW?b, referring to AVW Equipment Co., Inc. ("AVWb) of 105 South 9th Avenue, Maywood, Illinois 60153 as the contemplated equipment vendor on the loan. Williams responded: "100%.b On or aJout _anuary 9, 2024, at 12:55 p.m. Pacific time, after Williams had advised Matheny that CWM's 10% first-payment wire to Ascentium (alleged in paragraph 37A Jelow) had Jeen sent, Matheny advised Williams Jy text message: "Ok I'll let you know once received. Please let Rene know that he will receive a call to verJally the release of the funds of 90% to AVW. Our funding department will call Rene at 626-413-0"42 & the call should come from a 2"1#.b On or aJout _anuary 10, 2024, at 11:59 a.m. Pacific time, Matheny advised Williams Jy text message: "Hi Andrew- Good news! We're good to go and this has funded. I'll give AVW a heads up now.b Accordingly, the Bank funded the loan on or aJout _anuary 10, 2024 with AVW as the equipment vendor of record.

37A.    As a precondition of funding the loan, the Bank required CWM to pre-fund a first payment of $34,339.42 (representing 10% of an approved loan amount of $343,394.23) Jy wire transfer to Ascentium. Matheny's e-mail of _anuary 5, 2024 to Williams (suJject: "CAR WASH MANAGEMENT, LLC

22

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

APPROVALb) stated in pertinent part: "See attached 4"-60-72-month terms. Loan amount $ 343,394.23 with a 10% first payment. Please use the attached wire doc for first payment of $34,339.42.b On or aJout _anuary ", 2024, Jy text message in the evening hours, Matheny transmitted to Williams the corresponding wire instructions, namely: "Regions Bank, 1900 5th Ave. N., Birmingham, AL 35203, ABA NumJer 062005690, Account NumJer 0093723237, For credit to: Ascentium Capital LLC, *International SWIFT code for international wires UPNBUS44.b On or aJout _anuary 9, 2024, at ":37 a.m., Matheny confirmed Jy text message that the wire instructions were correct ("Good morning- Confirmed that's correctb), and CWM thereafter wired $34,339.42 to Ascentium at Regions Bank that same day, with Williams informing Matheny at 12:55 p.m. on _anuary 9, 2024 Jy text: "Bank confirmed that wire was sent.b CWM received nothing from the Bank in exchange for the $34,339.42 first payment other than the funding of a loan whose principal had Jeen sized against the Washworld Chula Vista quote as set forth in Section D Jelow.

**37B.** On or aJout _anuary 12, 2024, at 11:55 a.m., Williams advised Matheny Jy text message that AVW had reported it had not received the wire. Matheny responded: "Wrong! Not only that Jut I emailed Confirmation to Phil. Watch this email shortlyb and added, "Check your email. I'm very organized and very rarely would miss something like this.b In suJsequent text messages, Matheny stated, "of course and remind them we have to hold Jack 10% Jecause of the amount over 250k. We will release the remaining 10% once delivered.b On information and Jelief, dispute and confusion continued Jetween AVW, the Bank, and Williams concerning whether AVW had in fact received the loan proceeds and concerning the underlying wire instructions, with Matheny acknowledging Jy text on FeJruary 29, 2024, "AVW is confused with everything it sounds like.b

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**37C.**  On or aJout FeJruary 2", 2024, at 6:00 p.m. Pacific time, Williams asked Matheny Jy text message: "_ust checking if AVW sent the money Jack yet and if there is any movement?b Matheny responded: "Not yet Jut around 3pm we confirmed with AVW wiring instructions. You'll Je the the first to know once we get it Jack.b Williams thereafter asked: "Cool, and washworld stuff is good to go with your underwriters?b Matheny responded: "Oh ya they are the Jest of Jest on our end.b Williams further asked: "So as soon as we get the money Jack we are good to go?b Matheny responded: "Yep we'll just make the change from AVW to Wash world.b The proposed suJstitution of Washworld for AVW as the equipment vendor on Loan #2763169 was originated Jy Matheny acting on Jehalf of the Bank, not Jy Williams.

**37D.**  On or aJout March 5, 2024, at 1:01 p.m. Pacific time, Matheny advised Williams Jy text message: "Hi Andrew- AVW has returned the funds and we're going to rewrite the deal to wash world.b On or aJout March 7, 2024, at 12:59 p.m. Pacific time, Matheny followed up Jy text message: "Hi Andrew-please have Renee sign the document emailed to him with wet ink.b On information and Jelief, Ortiz thereafter signed one or more instruments provided Jy Matheny purporting to amend Loan #2763169 to suJstitute Washworld for AVW as the equipment vendor. The suJstitution of Washworld for AVW was not preceded or accompanied Jy: (i) a new Commercial Credit Application; (ii) renewed underwriting review Jy Ascentium's credit department, including Jy Lara C. Hernandez or any other credit officer; (iii) a new Authorization to Perform VerJal Verification; (iv) a new Authority and IncumJency Certificate; or (v) any amendment of the EFA executed Jy Williams or Jy all memJers of CWM. The decision to permit the suJstitution, and the decision to fund the suJstituted vendor (Washworld), was made Jy the Bank acting through Matheny notwithstanding the

24

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

Bank's actual knowledge, from the DecemJer 26 through 27, 2023 internal communications of Lara C. Hernandez alleged in paragraphs 25A through 25D aJove, that the original transaction structure presented a non-arm's-length proJlem.

37E.  Following the documentation of the AVW-to-Washworld suJstitution as set forth in paragraph 37D aJove, the Bank thereafter caused approximately $309,054."0 of loan proceeds to Je transmitted to Washworld in connection with Loan #2763169 on or aJout March 11 through 12, 2024. The $309,054."0 wire to Washworld is the same payment that Plaintiff Regions Bank now characterizes in Paragraph 39 and elsewhere of its First Amended Complaint as a "Mistaken Payment.b As descriJed in Section D Jelow, Washworld applied approximately $132,509.09 of the $309,054."0 to settle CWM's pre-existing Chula Vista trade Jalance and refunded the remaining approximately $176,552.71 to CWM at Matheny's direction.

38.  During the period of _anuary ", 2024 through _anuary 12, 2024, Matheny communicated with Williams Jy text message regarding the wiring of funds and the timing of disJursement to the equipment vendor. Matheny stated that the Bank intended to release ninety percent (90%) of the funds to AVW initially, with ten percent (10%) held Jack. The wiring of funds and the disJursement protocol were arranged and executed Jy Matheny and the Bank's funding department, not Jy Williams.

### D.  The Matheny-Directed Loan Structure: Use of the Chula Vista Washworld Quote and the $132,509.09 Refund to CWM

39.  At the time of the EFA, CWM was simultaneously developing two car wash projects: (a) a tunnel car wash facility at 310 S. Vincent Avenue, West Covina, California (the "West Covina Projectb), and (J) a Conserve Fuels-Jranded

25

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

gas station and car wash in Chula Vista, California (the "Chula Vista Projectb). Conserve Fuels was at relevant times a direct customer of CWM. For the Chula Vista Project, CWM held a Washworld equipment quote outstanding, and Conserve Fuels had paid CWM approximately one-half of the Chula Vista equipment cost upfront, which CWM retained. CWM accordingly owed Washworld a trade Jalance for the remaining portion of the Chula Vista equipment. For the West Covina Project, CWM required financing for the full complement of car wash equipment necessary to construct and operate a tunnel car wash facility, including tunnel wash systems, water treatment and reclaim, pumping, pneumatic, electrical, mechanical, drying, lighting, vacuum, controller, and chemical-delivery components, all as more fully identified in paragraph 41 Jelow.

40.    In structuring the EFA, Matheny caused CWM to use the existing Washworld Chula Vista quote to size the loan. As architected Jy Matheny, the structure produced a flow of funds in which the Bank-financed proceeds, after Washworld's application of a portion to settle CWM's pre-existing Chula Vista trade Jalance, were refunded Jy Washworld to CWM, with the refunded amount used Jy CWM to acquire and install car wash equipment at the West Covina tunnel car wash facility as detailed in paragraph 41 Jelow. The structure was originated, directed, and managed Jy Matheny in his capacity as the Bank's loan officer, as evidenced Jy Matheny's documented DecemJer 26 through 27, 2023 internal communications with Lara C. Hernandez alleged in paragraphs 25A through 25D aJove, Jy Matheny's documented instructions to Williams concerning the Jypass of the Bank's upload portal and the suJstitution of vendors alleged in paragraphs 2", 29, 37C, and 37D aJove, and Jy Matheny's documented pattern in materially identical transactions alleged in Sections G.2 (Zavaro Inc.) and G.3 (Yostina

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

Inc./Petit) Jelow. Williams, who did not sign the EFA or any related funding document and who was not a party to the Bank's internal underwriting communications, did not architect this structure.

41.     The Matheny-architected structure operated as follows. On or aJout _anuary 9, 2024, CWM wired $34,339.42 to Ascentium as the 10% first payment on a loan of $343,394.23. On or aJout _anuary 10, 2024, the Bank wired the Jalance of loan proceeds to AVW Equipment Co. as the initial vendor of record. AVW returned those funds to the Bank. On or aJout March 5, 2024, at 1:01 p.m. Pacific time, Matheny advised Williams Jy text message that the deal would Je "rewrite[n] … to wash worldb (as alleged in paragraph 37D aJove), and Matheny unilaterally caused the suJstitution of Washworld for AVW as the equipment vendor on Loan #2763169 without renewed underwriting, without a new Commercial Credit Application, and without any executed amendment of the EFA Jy Williams or Jy all memJers of CWM. On or aJout March 11 through 12, 2024, the Bank wired approximately $309,054."0 to Washworld in accordance with the suJstitution Matheny had directed. Washworld thereafter (a) applied approximately $132,509.09 to CWM's pre-existing Chula Vista trade Jalance, and (J) refunded the remaining approximately $176,552.71 to CWM. The refunded amount was deployed Jy CWM to acquire and install car wash equipment for the West Covina car wash facility at 310 S. Vincent Avenue, West Covina, California, including without limitation: (i) tunnel car wash equipment, including wash arches, foamers, applicators, chain and rollers, and lighting; (ii) a dryer system supplied Jy Premier; (iii) a vacuum system; (iv) a car wash controller; (v) electrical systems, including electrical racking, electrical motors, and hydraulic motors; (vi) a reverse osmosis (RO) water treatment system supplied Jy Axeon; (vii) a water softener supplied Jy American Water Products; (viii) a reclaim system supplied Jy Sta-Rite; (ix) a Laco

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

oil/water separator; (x) pumping systems supplied Jy Grundfos, together with associated manifolds; (xi) a compressed air system, including an air compressor and an air dryer; (xii) a chemical Joard; (xiii) car wash media and chemicals supplied Jy Gallup, Econocraft, and additional vendors; and (xiv) further car wash equipment, parts, and supplies necessary to and supporting the operation of the West Covina car wash facility, all sourced from additional vendors. Each of the items identified in (i) through (xiv) aJove is car wash equipment, is presently located at the West Covina car wash facility at 310 S. Vincent Avenue, and is in active operating use at that facility. CWM holds contemporaneous transaction records, vendor invoices, and paid receipts evidencing the acquisition Jy CWM of each category of equipment listed aJove. The entirety of the approximately $132,509.09 refunded Jy Washworld to CWM was deployed Jy CWM in connection with the acquisition of car wash equipment for the West Covina facility, with no portion thereof Jeing deployed for any purpose other than the acquisition of such car wash equipment. The flow of funds descriJed in this paragraph (Bank to Washworld to CWM, and CWM to equipment vendors) is estaJlished Jy contemporaneous wire, accounting, and vendor invoice records held Jy the Bank, Washworld, CWM, and the equipment vendors, and is independent of any oral communications. On information and Jelief, Washworld was, at the time of the March 2024 funding and disJursement, unaware of the Jroader Matheny-architected loan structure and acted in good faith pursuant to Matheny's and the Bank's wire instructions; the routing of funds Jack to CWM via Washworld occurred in accordance with the loan structure that Matheny had originated and managed for the Bank. On further information and Jelief, Washworld did not deliver any car wash equipment to the West Covina site in connection with Loan #2763169; Washworld's deliveries pursuant to the loan-related disJursement were

2"

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

limited to the Chula Vista Project equipment for which Washworld retained the $132,509.09 portion of the wire descriJed aJove.

42.     The Bank's collateral position at the West Covina site, as a result of the Matheny-architected transaction, includes the car wash equipment acquired Jy CWM with the refunded proceeds and identified in paragraph 41 aJove (a tunnel car wash system including wash arches, foamers, applicators, chain and rollers, and lighting; a dryer system; a vacuum system; a car wash controller; electrical systems including electrical racking, electrical motors, and hydraulic motors; a reverse osmosis water treatment system; a water softener; a reclaim system; an oil/water separator; pumping systems and manifolds; a compressed air system including air compressor and air dryer; a chemical Joard; car wash media and chemicals; and additional car wash equipment from other vendors), all of which equipment is owned Jy CWM, is located at 310 S. Vincent Avenue, West Covina, California, and is integrated into the operating tunnel car wash facility at that site. The West Covina car wash facility is currently in operation. The Bank, having funded the EFA in the principal amount of $343,394.23, having accepted the resulting flow of funds without oJjection at the time of funding, and having contracted for a security interest in the equipment financed thereunder under the express terms of the EFA, has tangiJle operating car wash equipment at the West Covina site availaJle to it for the exercise of its secured remedies under the EFA. The non-standard character of the Matheny-architected structure was therefore not, as the Bank now alleges in its First Amended Complaint, a diversion of loan proceeds to non-equipment purposes. The loan proceeds were deployed Jy CWM to acquire equipment of the same character as that contemplated Jy the EFA (car wash equipment) at the very site identified for installation in the original credit application (310 S. Vincent Avenue, West Covina). What was non-standard was the structural mechanism Jy

29

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

which the loan was sized and disJursed (use of an existing Chula Vista vendor quote and a vendor refund of surplus Jack to the Jorrower), a mechanism architected Jy the Bank's own loan officer. Williams was unaware at the time of loan execution and funding of the structural irregularity that Matheny's loan-sizing methodology produced; Williams relied on Matheny's role, conduct, and documented instructions as the Bank's loan officer with apparent authority to originate and structure the loan transaction, on the Bank's actual funding of the loan, and on the Bank's acceptance of the resulting flow of funds, as indicia that the structure was permissiJle and consistent with the Bank's practice. The Matheny-architected structure of the CWM/EFA was not isolated Jut a continuation of a documented pattern of conduct Jy Matheny in originating equipment financing transactions, as further alleged in Section G Jelow.

**42A. Based on a UCC-1 Search Report obtained from the Delaware Department of State through Parasec, dated May 21, 2026, a true and correct copy of which is attached hereto as Exhibit B and incorporated herein by reference, the public Delaware UCC records reflect a single UCC-1 Financing Statement, Initial Filing Number 2024 0175388, filed January 9, 2024, naming as the debtor "CAR WASH MANAGEMENT, LLC" at 310 S Vincent Ave, West Covina, California 91790, and with a collateral description referencing "Agreement No. 2763169" (the EFA at issue in this Action). However, that financing statement names as the secured party of record only "C T CORPORATION SYSTEM, AS REPRESENTATIVE" at 330 N Brand Boulevard, Suite 700, Glendale, California 91203, and does not identify Regions Bank or Ascentium Capital as the secured party. Under 6 Del. C. § 9-506(a), a financing statement substantially satisfying the requirements of subpart 5 of Article 9 is effective only if errors or omissions are not seriously**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

misleading. Naming a representative or agent without identifying the actual secured party (the lender) is seriously misleading as a matter of Delaware law, with the consequence that the Bank's purported security interest in CWM's equipment is unperfected. Williams reserves the right to amend or supplement this allegation upon further discovery, including upon production by the Bank of any additional UCC-1 financing statement or amendment on which the Bank intends to rely. To the extent the Bank has not properly perfected, by compliant UCC-1 filing or otherwise, the security interest contracted for under the EFA, any resulting impairment of the Bank's secured creditor position is attributable to the conduct of the Bank and its loan officer, not to any conduct of Williams.

42B.  The Conserve Fuels Chula Vista Project and Matheny's Industry Vertical. CWM's Conserve Fuels-branded gas station and car wash project (the "Chula Vista Project") was a separate and distinct project from the West Covina Project that was the subject of the EFA. At the time of the EFA closing in January 2024, the Chula Vista Project equipment had been ordered from Washworld under a separate purchase order, and a Washworld quote relating to the Chula Vista equipment had been generated as part of that separate procurement. The Chula Vista Project served a Conserve Fuels-branded retail petroleum location.

42C. Matheny's industry vertical at Ascentium Capital is, on information and belief, retail petroleum, convenience stores, and fuel wholesalers. The Conserve Fuels-branded Chula Vista location is a retail petroleum and convenience-store facility within Matheny's industry specialty. Matheny was responsible at Ascentium Capital for originating loans in this

31

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

same industry vertical that includes Conserve Fuels and similar retail petroleum customers.

42D. **The Beneficiary of the Matheny-Architected Diversion.** As a result of the Matheny-architected EFA structure described in paragraphs 39 through 42 above, approximately $176,552.71 of CWM's EFA loan proceeds were refunded by Washworld to CWM. Williams is informed and believes, and on that basis alleges, that the remaining approximately $132,509.09 of CWM's EFA loan proceeds were retained by Washworld and applied to the pre-existing Conserve Fuels Chula Vista Washworld order, effectively causing CWM's bank-financed loan proceeds to fund equipment that was delivered to and used by the Conserve Fuels Chula Vista facility, a third party outside the scope of the EFA and the loan transaction approved by Bank's credit underwriting.

42E. On information and belief, Matheny had separate communications with Conserve Fuels, Inc. or its representatives concerning Ascentium Capital financing for the Chula Vista equipment. Williams is informed and believes, and on that basis alleges, that the application of CWM's EFA loan proceeds to the Conserve Fuels Chula Vista Washworld order was known to Matheny at or about the time of the application, and that Matheny did not disclose this application to CWM, to Williams, or to Bank's credit personnel. The records of Conserve Fuels, Inc. concerning its Washworld order, its communications with Matheny and Ascentium Capital, and its payment history are anticipated to be probative of the matters alleged in this pleading and will be the subject of third-party discovery in the appropriate course of this Action.

32

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

*E. The Bank's Characterization of the March 2024 Wire as a "Mistaken Payment"*

43.    On or aJout March 11 through 12, 2024, the Bank wired the sum of $309,054."0 to Washworld in connection with what the Bank now characterizes as a "Mistaken Payment.b In its First Amended Complaint, the Bank alleges that this payment was made in error. As alleged in paragraph 41 aJove, the actual flow of those funds was that Washworld applied approximately $132,509.09 to settle CWM's pre-existing Chula Vista trade Jalance and refunded the remaining approximately $176,552.71 to CWM at Matheny's direction, Joth consistent with the structure Matheny had architected.

44.    On or aJout May 23, 2024, Matheny transmitted to Washworld a copy of a Washworld quote Jearing CWM's name and Williams's contact information. According to the Bank's own pleadings, Matheny sent this quote to Washworld months after the funding had occurred, in the context of attempting to reconcile the disputed payment.

45.    The transmission of a Washworld quote Jy the Bank's loan officer to the equipment vendor several months after funding is contrary to standard practice in equipment finance, in which the vendor's quote is in hand prior to and as a condition of funding. The fact that Matheny was constructing or transmitting documentation of the equipment order after the funds had already Jeen disJursed supports the inference that the loan was originated and funded without the proper underwriting documentation in place at the time of funding, and instead was funded against a quote (the Chula Vista quote) that did not match the use to which the loan proceeds would in fact Je put under Matheny's architecture.

*F. Ortiz's Pattern of Disloyalty and Diversion of CWM's Business*

33

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

**46.    During the period from approximately mid-2023 through October 2025, Ortiz, in his capacity as the eighty percent (80%) controlling member and principal manager of CWM, engaged in a sustained pattern of self-dealing and disloyalty. Such conduct included, without limitation, the conduct described in this Section F. Williams's claims asserted herein arising from this pattern are limited to injury accruing in Williams's post-petition individual capacity, consistent with the standing and bankruptcy-estate reservation set forth in Section VI above; all pre-petition or estate-property aspects of this pattern are expressly reserved.**

47.    Prior to joining CWM, Ortiz had Jeen associated with Specialty Car Wash Systems, a Washworld distriJutor that remains a Washworld distriJutor. The Washworld distriJutorship relationship was, in suJstantial part, Jrought to CWM Jy Ortiz. Ortiz also had pre-existing personal and Jusiness relationships with H&S Energy LLC predating his role at CWM. CWM acquired the H&S Energy customer relationship from Ortiz Jy granting equity in CWM to Ortiz as consideration for his contriJution of those pre-existing H&S Energy relationships. H&S Energy thereJy Jecame a customer of CWM; CWM supplied H&S Energy with car wash equipment, distriJutor-level services, and operational support during the period of Ortiz's memJership in CWM.

48.    Ortiz diverted CWM's customer relationships to entities in which he held an interest or with which he had aligned himself, including Jut not limited to ProElite Car Wash Services, Inc. and ProElite Car Wash Services, LLC (collectively, "ProEliteb) and H&S Energy. The diversion included specific identifiaJle transactions in CWM's pipeline, including transactions with Conserve Fuels and other customers, that were redirected away from CWM and to Ortiz's preferred entities. Through this conduct, Ortiz removed the H&S Energy customer

34

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

relationship from CWM after CWM had already paid for that relationship through the grant of equity to Ortiz at formation.

49.    Ortiz appropriated CWM's distriJutor relationship with Veritech, a car wash chemical supplier, redirecting Veritech's supply and dealings to entities that competed with CWM and from which Ortiz personally Jenefited.

49A.    Throughout his tenure as CWM's eighty percent ("0%) controlling memJer, Ortiz refused to authorize the sale of car wash chemical products from CWM's own supply offering to CWM's customers, on the stated ground that CWM's chemicals were not, in his personal estimation, of a quality consistent with what he perceived to Je his personal reputation in the industry, and on the stated concern that Jeing associated with CWM's chemicals would damage his personal Jrand. By reason of that refusal: (a) CWM was deprived of revenue from chemical sales that the company was otherwise positioned to capture from its customer Jase; (J) CWM's customers were effectively required to source car wash chemicals from competing suppliers, including from chemical suppliers (such as Veritech) with which Ortiz suJsequently developed or strengthened relationships outside of CWM, as alleged in paragraph 49 aJove; (c) Ortiz suJordinated CWM's commercial interests, as an enterprise of which he was the eighty percent ("0%) controlling memJer and principal manager, to his personal reputational concerns; and (d) Ortiz's refusal constituted a Jreach of his fiduciary duties and his duties of good faith and loyalty under CWM's Operating Agreement and under Delaware law, separate and apart from the other acts of self-dealing and diversion alleged in this Section F.

50.    ProElite, on information and Jelief, operates through two affiliated California entities that share a common principal place of Jusiness at 1929½ Durfee Street, South El Monte, California: ProElite Car Wash Services, LLC

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

(California Secretary of State Entity No. 202461"13351, formed April 11, 2024) and ProElite Car Wash Services, Inc. (California Secretary of State Entity No. 6349725, formed August 16, 2024), each formed during the period in which Ortiz, with the participation and assistance of Washworld, was diverting CWM's customers, vendors, and Jusiness opportunities as alleged herein. On information and Jelief, Ortiz participated in the estaJlishment of ProElite as a competing distriJutor of car wash equipment, including Jy introducing or facilitating relationships Jetween ProElite and CWM's existing customers, suppliers, and contacts, and Jy providing or causing to Je provided to ProElite the operational know-how, customer data, pricing information, and other proprietary information of CWM.

51.    In or aJout OctoJer 2025, Ortiz departed CWM and accepted employment with H&S Energy LLC. On information and Jelief, Ortiz is currently employed Jy H&S Energy. The H&S Energy position was, on information and Jelief, oJtained Jy reason of Ortiz's appropriation of CWM's customer relationships (including the H&S Energy relationship CWM had paid for through equity) and operational expertise.

52.    **Following Ortiz's departure, Beaudoin similarly departed CWM around the same time and became employed by H&S Energy, where Beaudoin currently services car wash equipment in San Diego County. In addition to Ortiz and Beaudoin, on information and belief, two (2) additional former CWM employees joined H&S Energy after the departures of Ortiz and Beaudoin. On further information and belief, a further four (4) former CWM employees were approached by H&S Energy but did not join.**

53.    The systematic pattern of recruitment Jy H&S Energy of CWM's former personnel, comJined with the simultaneous transfer of CWM's customer

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

relationships to H&S Energy, supports the inference that H&S Energy was a knowing Jeneficiary of, and may have Jeen a participant in, the diversion of CWM's Jusiness orchestrated Jy Ortiz and others.

54. On information and Jelief, H&S Energy LLC operates more than 170 convenience stores across California, Oregon, and Washington under Jrands including Extra Mile and Power Market, with car wash facilities at many of those locations. H&S Energy was a customer of CWM at relevant times prior to and during Ortiz's employment with CWM. H&S Energy is also, on information and Jelief, a customer of Washworld, which (per puJlic statements) descriJes Washworld as its car wash equipment supplier and partner. The structural relationship Jetween H&S Energy and Washworld places the alleged diversion of CWM's Jusiness in a context in which the equipment supplier and the entity to which CWM's customer relationships were diverted shared a direct Jusiness relationship, with CWM cut out of the chain.

55. On information and Jelief, following the commencement of this lawsuit, Washworld terminated its distriJutor relationship with CWM, citing the alleged cost or risk associated with the lawsuit as the stated reason. The proximate effect of Washworld's termination was to enaJle Washworld to deal directly with H&S Energy without the participation of CWM. Such direct dealing was made possiJle, and was on information and Jelief facilitated, Jy Ortiz's prior cultivation of H&S Energy's car wash equipment Jusiness through CWM (a relationship CWM had paid for through equity to Ortiz at formation), followed Jy Ortiz's transfer of that customer relationship away from CWM.

56. As a direct and proximate result of Ortiz's pattern of disloyalty and diversion, CWM's annual revenue collapsed from approximately Five Million Two Hundred Thousand Dollars ($5,200,000) to approximately One Million One

37

Hundred Thousand Dollars ($1,100,000), representing approximately Four Million One Hundred Thousand Dollars ($4,100,000) in annual revenue diverted from CWM to Ortiz and entities aligned with him.

57.     Ortiz received personal compensation and Jenefits from H&S Energy and other entities to which he diverted CWM's Jusiness, including Jut not limited to salary, equity interests, commissions, and other forms of value. Williams reserves all rights to assert further claims with respect to such compensation in the appropriate procedural posture.

**57A.  CWM's annual revenue collapse from approximately Five Million Two Hundred Thousand Dollars ($5,200,000) to approximately One Million One Hundred Thousand Dollars ($1,100,000) as alleged in paragraph 56 above gives rise to substantial and quantifiable damages, particularized as follows. At industry-standard net margins of twenty-five percent (25%) to thirty-five percent (35%) for the car wash equipment distribution, service, and chemical-supply businesses CWM conducted, CWM's annual net income at peak operations was in the range of One Million Three Hundred Thousand Dollars ($1,300,000) to One Million Eight Hundred Thousand Dollars ($1,800,000). Over a reasonable five-year recovery horizon (i.e., the period required to rebuild or normalize a comparable enterprise), CWM's cumulative lost net income is in the range of Six Million Five Hundred Thousand Dollars ($6,500,000) to Nine Million Dollars ($9,000,000). CWM's pre-collapse enterprise value, calculated at industry-standard multiples of one and one-half (1.5x) to three (3x) times annual revenue or four (4x) to six (6x) times annual net income, was in the range of Seven Million Eight Hundred Thousand Dollars ($7,800,000) to Fifteen Million Six Hundred Thousand Dollars ($15,600,000). Cumulative damages to CWM at the entity level,**

3"

**including lost net income, lost enterprise value, and lost goodwill, are in the range of Fifteen Million Dollars ($15,000,000) to Twenty-Five Million Dollars ($25,000,000). Separately and distinctly from CWM's entity-level injuries, which are reserved to the companion derivative action and are not claimed here, the value of the fifty percentage-point Member interest taken from Williams in the January 2024 restructure (from the pre-restructure sixty percent (60%) to the post-restructure ten percent (10%)), measured by reference to CWM's pre-collapse enterprise value set forth above, is in the range of Three Million Nine Hundred Thousand Dollars ($3,900,000) to Seven Million Eight Hundred Thousand Dollars ($7,800,000), exclusive of additional individual damages categories enumerated in the Claims for Relief below (including lost CEO and Manager compensation, lost prospective business opportunities at a separate business venture, reputational injury, and personal defense costs). Williams reserves the right under Federal Rule of Civil Procedure 15 to amend this Pleading to refine the damages calculations upon completion of damages discovery, including production of CWM's financial records, customer and vendor lists, and equipment-inventory schedules currently in the possession of Cross-Defendant Jose Rene Ortiz, Defendant Travis Beaudoin, and entities aligned with each of them.**

*G. Matheny's Role in the Loan Scheme*

58.    On information and Jelief, Matheny, as the loan officer at the Bank with responsiJility for the CWM loan, originated and structured the loan transaction in a manner that was designed to and did circumvent the Bank's internal underwriting and compliance controls.

39

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

59. Matheny's conduct included, without limitation: (a) instructing Williams to Jypass the Bank's standard document upload portal; (J) directing the modification of the Jorrower entity from WCCW to CWM during the origination process; (c) directing or facilitating the modification of CWM's ownership structure from Williams's original sixty percent (60%) majority position to Ortiz's eighty percent ("0%) controlling position as a precondition to funding the loan, with the amended Operating Agreement Jundled into the EFA closing documents and executed contemporaneously with the EFA in _anuary 2024; (d) directing the use of the Washworld Chula Vista quote to size the loan, resulting in a structure under which Washworld refunded the surplus to CWM after settling the Chula Vista trade Jalance, with CWM thereafter deploying the refunded proceeds to acquire car wash equipment for the West Covina tunnel car wash facility as alleged in paragraph 41 aJove; (e) collaJorating with Ortiz on the structuring of the transaction to a degree that exceeded any legitimate role of a loan officer; (f) transmitting purported equipment quotes to vendors after funding rather than Jefore; and (g) on information and Jelief, originating other similar structurally non-standard loan transactions for other customers in a pattern of conduct that constituted a departure from the Bank's standard underwriting protocols.

60. On information and Jelief, Matheny's industry vertical at Ascentium Capital is retail petroleum, convenience stores, and fuel wholesalers, the very same industry vertical occupied Jy H&S Energy LLC, the entity that currently employs Ortiz, that currently employs Beaudoin, and that Jecame the alleged Jeneficiary of the diversion of CWM's Jusiness. The overlap Jetween Matheny's industry vertical and the alleged Jeneficiary of the diversion is consistent with the inference that Matheny had pre-existing or developing relationships with the petroleum/c-

40

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

store retail community that were leveraged in connection with the CWM transaction and its aftermath.

61. On information and Jelief, Matheny acted in his individual capacity, outside the scope of any legitimate authority granted to him Jy the Bank, in engaging in the conduct alleged herein. Matheny's conduct was undertaken for his personal Jenefit, including Jut not limited to the receipt of commissions tied to oversized loan amounts.

62. On information and Jelief, Matheny similarly originated loans for other customers in which loan principal was sized through structures inconsistent with the actual cost or use of equipment, or in which equipment-financing proceeds were directed in a manner inconsistent with legitimate underwriting. Two such transactions are particularly relevant as documented pattern evidence and are descriJed in Sections G.2 and G.3 Jelow.

*G.2 The Zavaro Inc. Transaction (May 2023 through May 2024)*

62A. On or aJout May 1, 2023, Williams introduced to Matheny Jy email a prospective customer commonly identified as "Mikeb (later identified as Michael Zavaro of Zavaro, Inc.), who was seeking equipment financing for a Washworld Razor and related gas station equipment. The introduction occurred in the ordinary course of CWM's Jusiness as a Washworld distriJutor.

62B. On or aJout May 22, 2023, Matheny e-mailed Williams (with Michael Zavaro copied) the following instruction for preparation of the quote: "Can you please email a quote or invoice over and have it read? Bill to Ship to: ZAVARO, INC, 1024 BREA CANYON RD, WALNUT, CA, 917"9.b Matheny's instruction designated the precise addressee and ship-to that the vendor invoice should reflect to support the financing he was structuring.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

**62C.** On August 1", 2023, Ascentium Capital, Jy ACH transfer, paid $130,107.47 to Car Wash Management, LLC at "9030 Kenamar Dr Unit 315, San Diego, CA 92121,b designated as funding for Ascentium Finance Agreement No. 2729070, with the customer named on the funding notification as "Zavaro, Inc.b The notification was sent to CWM accounting and to Williams, copying Matheny. PuJlic records identify the Zavaro family's Jusiness operations to include S & G Zavaro, Inc. (a California corporation filed March 30, 1994, Document No. 1"71256, principal place of Jusiness 154" F St, San Diego, California, operating a MoJil-Jranded gas station at 9790 Miramar Rd, San Diego, with officers including George Zavaro and Samir Zavaro) and Zavaro, Inc. (a California corporation filed August 6, 2015, Document No. 3"14200, principal place of Jusiness 1024 Brea Canyon Rd, Diamond Bar, California, mailing address 2012 Ryan Ct, El Cajon, California, with officers including George Zavaro, Michael George Zavaro, and Randa Zavaro).

**62D.** On information and Jelief, the equipment underlying the Zavaro Inc. financing #2729070 had previously Jeen paid for Jy Zavaro to CWM as part of an existing vendor transaction. Accordingly, the August 1", 2023 ACH payment of $130,107.47 to CWM duplicated a payment that CWM had already received from Zavaro for the same underlying equipment. The intended flow of the duplicate payment, on the theory that was later represented to Williams, was that CWM would pass the $130,107.47 through to Zavaro, such that Zavaro would hold Joth the equipment and an Ascentium-financed loan against it, while CWM would Je made whole through the original Zavaro payment. Williams was not informed of this circular-financing structure at the time the funding was received.

**62E.** On May 2, 2024, Matheny e-mailed Williams and Michael Zavaro, attaching the original August 1", 2023 Notification of Payment and a revised

42

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CWM invoice, stating: "I've spoken with Joth of you now. Here's the quote we used to fund this deal for $130,107.47 and notification of payment Jelow. I think it would Je Jest if you guys jumped on a call. Feel free to 3 way me in if needed.b Matheny's coordination of the call Jetween Jorrower (Zavaro), vendor (CWM), and the Bank's own loan officer in a single communication, rather than directing such coordination through the Bank's collections, vendor services, or compliance personnel, was a continuing departure from the Bank's standard internal protocols.

62F.  On May 13, 2024, Matheny e-mailed Williams (with Michael Zavaro copied) ACH/Wire instructions for a wire of $130,107.47 from CWM to Zavaro, Inc., stating: "Note: Zavaro Inc Customer # 2729070. Amount $130,107.47. Let me know once the wire has Jeen sent.b Matheny attached a PDF titled "Operating Account - Vendor Refunds via ACH or Wire.b On May 2", 2024, Matheny followed up to Williams: "Here it is again in case you missed it!b

62G.  The $130,107.47 was never wired Jy CWM to Zavaro. The duplicate payment remained on CWM's Jooks, creating a contingent liaJility of CWM to Zavaro that has not Jeen disclosed Jy the Bank in this action and is not suJsumed within the Bank's claims as presently pleaded. On information and Jelief, the Bank's loan officer Matheny continued in his employment with the Bank throughout the period during which the circular-financing structure remained outstanding, without disclosure of the irregularity to the Bank's internal compliance or audit personnel.

*G.3  The Yostina Inc./Petit Auto Wash Transaction (June through July 2021)*

62H.  Matheny's pattern of dictating to vendors the precise dollar amount and addressee that an invoice should reflect was documented in writing more than two years Jefore the CWM/EFA at issue here. On _une 22, 2021, in connection with a loan Jeing financed for Jorrower "Yostina Inc,b Matheny e-mailed _ames

43

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

Marshall, Operations Manager of Petit Auto Wash, Inc. (the equipment vendor), the following instruction: "It was nice speaking with you! Here's what we need the invoice to read. Bill To Ship to: Yostina Inc, 34429 Yucaipa Blvd, Yucapia CA 92399. TOTAL $150,000…. This is what we're financing! Please let me know if you have any questions.b

62I.   Approximately five hours later on the same date, Matheny e-mailed Williams in connection with the same Yostina/Petit financing: "Exactly Ramzy is financing the rest through us. I can get DOCS signed today and 150k released Jy tomorrow. I just need a PETIT invoice to read 150k with correct Bill to Ship too and were good to go.b On _uly 2, 2021, after Williams inquired aJout the status, Matheny confirmed: "We're good to go. This deal Jooked today and 150k on it's way.b The reference to "Ramzyb in Matheny's e-mail is to the owner of Yostina Inc., the Jorrower on that transaction; the full identity is to Je confirmed through discovery.

62J.   Matheny's _une 22, 2021 e-mails reflect his practice of (i) telling a vendor the exact dollar amount and Jill-to/ship-to that should appear on the invoice supporting an Ascentium financing, (ii) coordinating the timing of document execution and disJursement around the vendor's production of an invoice in the predetermined form, and (iii) doing so in direct written communications outside the Bank's standard underwriting workflow. The conduct documented in 2021 with respect to Yostina/Petit is materially identical in form to the conduct documented in 2023 with respect to Zavaro Inc., and is materially identical in form to the structuring of the CWM/EFA in 2023 through 2024.

**62K. Williams has had direct communications with the principals of each of the Yostina Inc./Petit Auto Wash transaction and the Zavaro Inc. transaction referenced in paragraphs 62A through 62J above, and on the**

44

**basis of such communications Williams is informed and believes that the irregular structural characteristics common to those Matheny-originated transactions extended to additional transactions to be identified through discovery. The Yostina Inc. and Zavaro Inc. transactions described above are illustrative, not exhaustive, of Matheny's pattern of originating structurally irregular equipment-finance transactions for the Bank involving customer-vendor affiliation, prescribed invoice content, and bypassed standard underwriting controls.**

### H.  The Ortiz Family Trust Transfer

63.     _ose Rene Ortiz and his spouse Maria L. Ortiz caused the SuJject Property (402 Addleman Avenue, West Covina, California, Assessor's Identification NumJer "725-00"-042) to Je transferred from their joint individual ownership into the newly formed Ortiz Family Trust of 2024. The transfer was effected Jy a Grant Deed executed Jy Joth _ose R. Ortiz and Maria L. Ortiz on _une 13, 2024, Jefore notary puJlic Mary Poncedeleon (Commission No. 2354659) in the County of Orange, California (the county in which Ms. Mitts Patrick's law office is located, a county distinct from Ortiz's county of residence). The executed Grant Deed was then held off-record for approximately twelve (12) weeks Jefore Jeing recorded with the Los Angeles County Registrar-Recorder/County Clerk on SeptemJer 4, 2024 at 12:19 PM, as Document NumJer 20240594220, a date approximately thirty (30) days Jefore the filing of Williams's Chapter 7 Jankruptcy petition on OctoJer 4, 2024, and approximately four (4) months Jefore the filing of the original Complaint in this action on _anuary 14, 2025. The Grant Deed names _ose R. Ortiz and Maria L. Ortiz, in their former capacity as "HusJand and Wife as _oint Tenants,b as Grantors, and _ose Ortiz Trustee, Maria L. Ortiz

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

Trustee, and The Ortiz Family Trust of 2024 as Grantees. The Grant Deed claims exemption from California documentary transfer tax under Revenue & Taxation Code § 11930 (transfer into or out of a living trust). A true and correct copy of the recorded Grant Deed is attached hereto as ExhiJit A and incorporated herein Jy reference. On information and Jelief, the SuJject Property had Jeen owned Jy _ose R. Ortiz and Maria L. Ortiz jointly, in some form, since on or aJout SeptemJer 2002. Based on puJlicly availaJle estimates, the SuJject Property had an estimated fair market value at the time of transfer in the range of approximately $741,000 to $"26,000.

**63A.** The transfer of the SuJject Property into the Trust occurred after, and in chronological sequence with, the pattern of asset and customer diversion from CWM to entities aligned with Ortiz alleged in paragraphs 47 through 57 aJove. Specifically, Jy _une 13, 2024 (the date of execution of the Grant Deed), Ortiz had already commenced the diversion of CWM's customer pipeline (including the Conserve Fuels transaction and other H&S Energy and ProElite opportunities), had positioned Beaudoin and other CWM personnel for transition to H&S Energy, and had effected or was in the process of effecting the collapse of CWM's annual revenue from approximately $5,200,000 to approximately $1,100,000 alleged in paragraph 56 aJove. The sequence of conduct is therefore: (a) Ortiz, as the "0% controlling memJer of CWM, induced CWM and Williams into the Matheny-architected EFA transaction with the Bank as alleged in Sections C and D; (J) Ortiz simultaneously or thereafter caused CWM's customer relationships, equipment opportunities, and personnel to Je transferred to H&S Energy and other entities aligned with him as alleged in paragraphs 47 through 57; (c) Ortiz then, on _une 13, 2024, transferred his principal personal real estate asset (the SuJject Property) into the newly formed Ortiz Family Trust of 2024 in the manner

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

descriJed in paragraph 63 aJove; and (d) Ortiz then held the executed deed off-record for approximately twelve (12) weeks Jefore causing it to Je recorded on SeptemJer 4, 2024, approximately thirty (30) days Jefore Williams's Jankruptcy petition. The chronological alignment of these events (stripping the entity that Jore the EFA liaJility, while simultaneously and shortly thereafter hiding Ortiz's personal real estate asset Jehind a newly created trust) supports the inference that Ortiz, not Williams, orchestrated the conduct that the Bank now seeks to ascriJe to Williams personally, and that Ortiz did so with the intent and effect of leaving CWM hollowed out, his personal real estate Jeyond the reach of creditors, and Williams (a ten percent (10%) post-restructure minority memJer who held no controlling equity interest, who Jore no personal guaranty (Ortiz alone signed the Personal Guaranty on the EFA), and who did not Jring to CWM the pre-existing H&S Energy and Washworld distriJutor relationships from which the diverted Jusiness was derived) as the residual target of collection.

64. On information and Jelief, the SuJject Property was Ortiz's principal residence and was at the time of transfer his principal real estate asset against which the Bank's claim under the Personal Guaranty could have Jeen satisfied.

65. At the time of the transfer, Ortiz was, on information and Jelief, aware of: (a) the structurally non-standard Matheny-architected EFA, including the use of the Washworld Chula Vista quote to size the loan and the refund Jy Washworld of approximately $132,509.09 to CWM, which CWM deployed to acquire car wash equipment for the West Covina tunnel car wash facility as alleged in paragraph 41 aJove; (J) Matheny's pattern of originating structurally non-standard equipment financing transactions, as documented in Sections G.2 and G.3 aJove; (c) the contestaJle nature of the Bank's claim against him as guarantor; (d) the existence of underlying disputes among the memJers of CWM and Jetween

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

CWM and the Bank concerning the loan; and (e) the foreseeaJle likelihood of litigation Jy the Bank or others against Ortiz arising from the loan and his conduct as controlling memJer of CWM.

66.    The transfer of the SuJject Property into the Trust Jore multiple Jadges of fraud under California Civil Code §§ 3439.04 et seq., including without limitation: (a) the transfer was to an insider, namely a trust of which Ortiz himself and his spouse are co-trustees and, on information and Jelief, Jeneficiaries; (J) Ortiz retained possession and control of the property after the transfer through his capacity as co-trustee of the Trust; (c) the transfer was made when suJstantial pre-existing oJligations remained outstanding, including the Matheny-architected EFA, the unresolved $130,107.47 contingent liaJility of CWM to Zavaro Inc. (Loan #2729070) as alleged in Section G.2 aJove, and the loan-to-collateral undercollateralization of the EFA documented in Section D aJove; (d) the transfer occurred approximately thirty (30) days Jefore Williams filed his Chapter 7 Jankruptcy petition on OctoJer 4, 2024, a chronological proximity that, on information and Jelief, was not coincidental; (e) the transfer occurred approximately four (4) months Jefore the Bank filed its original Complaint in this action on _anuary 14, 2025, at a time when the disputes among CWM's memJers, the Bank, and the equipment vendors were ongoing and litigation was reasonaJly foreseeaJle; (f) the transfer was made for no consideration or, on information and Jelief, for nominal consideration not reasonaJly equivalent to the value of the asset, which is puJlicly estimated in the range of $741,000 to $"26,000; (g) the transfer was made when Ortiz and Maria L. Ortiz were, or shortly thereafter Jecame, insolvent or undercapitalized with respect to the liaJilities they were facing or anticipated to face; (h) the transfer effected a structural change in legal title, removing the SuJject Property from _ose R. Ortiz's individual estate while

4"

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

preserving his Jeneficial use and control through the Trust; (i) the Grant Deed was executed on _une 13, 2024 Jut was held off-record for approximately twelve (12) weeks Jefore Jeing recorded on SeptemJer 4, 2024, a deliJerate temporal separation Jetween execution and recordation that is itself evidence of concealment, of awareness of pending or reasonaJly foreseeaJle creditor claims, and of an intent to perfect the transfer against third parties at a moment calculated to defeat such claims; and (j) the transfer was made after, and in chronological sequence with, the pattern of asset and customer diversion from CWM to entities aligned with Ortiz (including H&S Energy LLC and ProElite) alleged in paragraphs 47 through 57 aJove, evidencing a coordinated two-step asset insulation strategy in which the entity Jearing the EFA liaJility was first hollowed out and then the controlling memJer's principal personal real estate asset was placed Jehind a newly created trust.

**67.    The Trust instrument was prepared by, and the transfer of the Subject Property into the Trust was structured by, Lisa Mitts Patrick, Esq. (California State Bar No. 134522), who currently appears as litigation counsel for Cross-Defendant Ortiz in this action. The recorded Grant Deed, recorded September 4, 2024 in the Official Records of Los Angeles County as Document Number 20240594220 (a true and correct copy of which is attached as Exhibit A and incorporated by reference), expressly directs that the recorded instrument be returned to "JOSE ORTIZ & MARIA ORTIZ, Trustees, c/o Law Office of Lisa Mitts Patrick, 112 E. Amerige Ave. Suite 313, Fullerton, CA 92832," together with Ms. Mitts Patrick's office telephone (714) 990-3693, facsimile (657) 234-0012, and email address lolmp2021@gmail.com, the same professional contact information that appears on Ms. Mitts Patrick's appearances in this action. The notarization of the Grant Deed was further**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

taken in the County of Orange (the county in which Ms. Mitts Patrick's law office is located) before notary public Mary Poncedeleon (Commission No. 2354659), notwithstanding that Ortiz's residence and the Subject Property are both located in Los Angeles County. The combination of (i) the direction of recorded mail to Ms. Mitts Patrick's law office, c/o the Ortiz trustees, (ii) the inclusion of Ms. Mitts Patrick's professional contact information on the face of the recorded Grant Deed, and (iii) the taking of the acknowledgment in the county of Ms. Mitts Patrick's office rather than the county of the grantors' residence, taken together, establishes Ms. Mitts Patrick as the operative attorney who prepared, structured, and caused to be recorded the very transfer that is now challenged as fraudulent in this Cross-Claim. Ms. Mitts Patrick's role as the architect of the transfer challenged herein, combined with her continuing representation of Ortiz in the litigation in which the validity of that transfer is squarely at issue, creates non-waivable issues under California Rule of Professional Conduct 3.7 (Lawyer as Witness), which precludes a lawyer from acting as advocate at trial in which the lawyer is likely to be a witness on a contested issue. Williams reserves the right to move for the disqualification of Ms. Mitts Patrick on such grounds at an appropriate procedural posture. As a direct consequence of Ms. Mitts Patrick's dual role as (i) the drafter and structuring counsel for the Ortiz Family Trust transfer at issue in the Eleventh, Twelfth, and Thirteenth Claims for Relief, and (ii) litigation counsel of record for Cross-Defendant Ortiz in this action, Ms. Mitts Patrick is a percipient witness with personal knowledge of facts material to those claims, including the timing, purpose, structure, and consideration (or absence thereof) for the transfer of the Subject Property into the Trust. This dual role raises substantial questions

50

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

**under California Rules of Professional Conduct 3.7 (lawyer as witness) and 1.7 (conflicts of interest: concurrent clients), and Williams reserves the right to file a motion seeking disqualification of Ms. Mitts Patrick from continued representation of Cross-Defendant Ortiz upon appropriate motion.**

68. The Bank has not pleaded any claim against the Trust or for avoidance of the transfer of the SuJject Property in its First Amended Complaint. Williams, as a contingent creditor of Ortiz Jy reason of the Bank's allegations of joint and several liaJility and Jy reason of his own potential indemnification and contriJution rights, has standing to challenge the transfer under California's Uniform VoidaJle Transactions Act. Williams's status as a contingent creditor of Ortiz Jecame concrete on March 17, 2026, when the Bank filed its First Amended Complaint (Dkt. 154) re-adding Williams as a defendant and alleging joint conduct in connection with the EFA.

### I. The Bank's Own Admission of Non-Collectability and the Pretextual Re-Joinder of Williams

69. On SeptemJer 1", 2025, the Bank filed in this action a document docketed as Docket No. "2 in which the Bank acknowledged that Williams was "proJaJly not collectaJle.b This judicial admission, made in the context of the very litigation in which the Bank now seeks personal recovery from Williams, constitutes a statement against the Bank's interest and is properly considered as evidence of the Bank's actual assessment of Williams's asset position at that time.

70. Notwithstanding the Bank's own admission, the Bank thereafter filed a motion for leave to file the First Amended Complaint (Dkt. 146) on FeJruary 23, 2026, and re-added Williams as a defendant in the First Amended Complaint (Dkt. 154) filed March 17, 2026. The Bank's decision to pursue Williams personally

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

despite its own contemporaneous assessment of non-collectaJility supports the inference that the Bank's continued prosecution of Williams is motivated Jy considerations other than legitimate recovery, including Jut not limited to the desire to shift responsiJility away from the Bank's own loan officer Matheny and away from the conduct of Ortiz as sole personal guarantor, and to coerce settlement from Williams notwithstanding the aJsence of a viaJle recovery theory.

**70A. The Bank's "probably not collectable" admission in Docket No. 82 was a deliberate, considered, and contemporaneous statement made by Bank's counsel in the Bank's own filing in this Action. The admission was not made in error, was not made under duress, and was not subsequently retracted. The admission was made in the context of a Court status filing and constitutes a judicial admission for purposes of estoppel under American Title Insurance Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988), and Sicor Ltd. v. Cetus Corp., 51 F.3d 848, 859-860 (9th Cir. 1995), and successor authorities applying the doctrine of judicial estoppel.**

**70B.  The substance of the Bank's admission is unambiguous. The Bank acknowledged in a public court filing that its own internal assessment of Williams's collectability was that Williams was "probably not collectable." This admission necessarily reflects the Bank's prior knowledge that the prospect of monetary recovery from Williams personally was speculative at best, and that the financial benefit to the Bank of continued litigation against Williams was not commensurate with the burden imposed upon Williams.**

**70C. The Bank's decision to thereafter file the First Amended Complaint (Dkt. 154) re-adding Williams as a personal defendant, notwithstanding the Bank's own admission of probable non-collectability, demonstrates a litigation purpose that is, at minimum, inconsistent with the**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

**rational pursuit of recovery and, at maximum, designed to impose harm on Williams that is independent of any expected monetary recovery. This includes harm consisting of: (a) defense cost imposition on Williams personally; (b) reputational injury to Williams in business and professional communities; (c) leverage in collateral negotiations with other parties; and (d) impairment of Williams's prospective economic relationships and business opportunities.**

**70D. The Bank's conduct following its own admission supports inferences of (i) the Bank's pre-litigation knowledge of Matheny's structurally irregular origination conduct, as further evidenced by the December 26 through 27, 2023 Hernandez communications referenced above; (ii) the Bank's conscious disregard of Williams's rights under California Civil Code section 3294; (iii) the Bank's unfair business practices within the meaning of California Business and Professions Code section 17200; and (iv) the Bank's tortious interference with Williams's prospective economic relationships, each as alleged with greater specificity in the Counterclaim claims set forth herein.**

**70E. The Bank's "probably not collectable" admission is incorporated by reference into each of Williams's claims for relief asserted in the Counterclaim, Cross-Claim, and Third-Party Complaint set forth herein, as evidence bearing upon the Bank's knowledge, intent, and motive in each respect alleged, and not as an independent basis for liability.**

*J. Post-Petition Overt Acts of the Conspirators*

71. Williams filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code on OctoJer 4, 2024, in the United States Bankruptcy

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

Court for the Southern District of California (Case No. 24-03761-CL7). Williams received his discharge under 11 U.S.C. § 727 on _anuary 7, 2025.

**72.     After the petition date of October 4, 2024, and after the discharge of January 7, 2025, Ortiz, Matheny, the Bank, and others engaged in the following post-petition course of conduct, and the following post-petition events occurred, which Williams alleges as the chronology and factual context relevant to the claims herein: (a) on September 19, 2025, Ortiz filed his cross-complaint in this action (Dkt. 84) asserting that Williams, rather than Ortiz himself, bore responsibility for the very EFA conduct that Ortiz had executed as sole personal guarantor and as the 80% controlling member; (b) on October 10, 2025, Ortiz filed an amended cross-complaint (Dkt. 89) reasserting and expanding the claims against Williams; (c) on or about October 9, 2025, Washworld's Vice President of Sales & Marketing Richard Andreas issued a letter terminating Washworld's distributor relationship with CWM, citing the cost or risk associated with this lawsuit, in circumstances that on information and belief facilitated Washworld's direct dealing with H&S Energy LLC; (d) on December 29, 2025, Ortiz filed a request for entry of clerk's default against Williams (Dkt. 128) notwithstanding Williams's bankruptcy discharge of pre-petition liabilities; (e) on September 18, 2025, the Bank filed Dkt. 82 acknowledging that Williams was "probably not collectable," yet thereafter the Bank elected to re-add Williams as a personal defendant; (f) on February 23, 2026, the Bank filed its Motion for Leave to File a First Amended Complaint (Dkt. 146) seeking to re-add Williams; (g) on March 17, 2026, the Bank filed its First Amended Complaint (Dkt. 154) re-adding Williams as a defendant on the Fourth Cause of Action for fraud/concealment; (h) on March 31, 2026, the Bank caused its agent**

54

Nationwide Legal, LLC to attempt service of the First Amended Complaint on Williams at 12136 Avenida Sivrita, San Diego, California 92128 (an address with which Williams has historical family association but which was not Williams's residence at the time of the attempted service, and an address that was not even the historical office of CWM at "9030 Kenamar Dr Unit 315, San Diego, CA 92121" as reflected in the Bank's own funding records) and on April 6, 2026, filed proofs of service for that defective service attempt (Dkts. 156, 157); (i) on May 6, 2026, the Bank caused its agent Nationwide Legal, LLC to mail copies of the First Amended Complaint by first-class mail to Williams's commercial mail receiving agency in Overland Park, Kansas, rather than by "leaving a copy ... with the commercial mail receiving agency" as expressly ordered by this Court in its April 30, 2026 Order (Dkt. 169); (j) at all relevant times after the petition date, Matheny continued in his employment with the Bank in the petroleum/c-store retail industry vertical that overlaps with H&S Energy's business, on information and belief continuing to maintain customer relationships with the very community of borrowers (including Ortiz and H&S Energy) implicated in the diversion of CWM's business; and (k) throughout the post-petition period, Matheny continued in his employment with the Bank without disclosing to the Bank's internal compliance, audit, or litigation-supervision personnel the documented patterns of structurally irregular originations described in Sections G.2 (Zavaro Inc.) and G.3 (Yostina Inc./Petit) above, thereby permitting the Bank to proceed against Williams personally in this litigation without internal knowledge of Matheny's prior documented conduct in materially identical transactions. Williams asserts no claim for relief premised upon, and seeks no liability arising from, the filing, content, or prosecution of any pleading,

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

**motion, or paper in this Action; the subparagraphs above that refer to such filings are recited solely to establish the timing and chronology of post-petition events. The wrongful conduct underlying Williams's claims consists of the non-litigation acts alleged herein, including without limitation the diversion of CWM's customers, vendors, and business to H&S Energy LLC, ProElite Car Wash Services, Inc., ProElite Car Wash Services, LLC, and Washworld; Ortiz's acceptance of employment with H&S Energy LLC; and the placement and maintenance of the Subject Property beyond the reach of Ortiz's creditors.**

73.    The overt acts descriJed in paragraph 72 (a) through (k) aJove were each committed with knowledge of the underlying scheme and with the intent to: (i) preserve the Matheny-architected structure of the EFA and shield Matheny and Ortiz from accountaJility for their roles in the loan scheme; (ii) shift Jlame and exposure for the alleged "Mistaken Paymentb to Williams personally; (iii) facilitate the continued transfer of CWM's customer relationships and Jusiness opportunities to H&S Energy and other entities aligned with Ortiz; (iv) maintain the placement of the SuJject Property in the Trust Jeyond the reach of Ortiz's creditors, including Williams; and (v) coerce Williams to settle with the Bank notwithstanding the Bank's own admission of non-collectaJility and the aJsence of a viaJle theory of personal liaJility against Williams.

*K.  Matheny's Pattern of Structurally Irregular Originations Across Multiple Borrowers*

**73A.  Williams is informed and believes, and on that basis alleges, that the structural irregularities in the CWM/EFA transaction described above are not isolated to CWM but are part of a broader pattern of conduct by Peter**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

Matheny in his loan origination practice at Ascentium Capital. The pattern is observable across at least three documented transactions over a period of approximately four years involving California small-business borrowers in or adjacent to Matheny's industry vertical at Ascentium Capital, which on information and belief is retail petroleum, convenience stores, fuel wholesalers, and car wash equipment serving those verticals.

73AA.    The 2021 Yostina Inc. / Petit Auto Wash Transaction. In or about 2021, Ascentium Capital, by and through Matheny as loan officer, originated an equipment finance transaction for Yostina Inc., a California small business owned and operated by an individual identified publicly as Ramzy (the "Yostina Principal"). The equipment vendor identified in connection with the transaction was Petit Auto Wash, Inc. On information and belief, in connection with that transaction, Matheny transmitted written instructions to Petit Auto Wash, Inc. directing the precise dollar amount and the addressee that vendor invoices for the Yostina transaction should reflect. On information and belief, these instructions reflected loan officer-directed invoice content rather than vendor-originated documentation in the ordinary course of equipment finance practice.

73AB.    The 2023 Zavaro Inc. Transaction. In or about August 2023, Ascentium Capital, by and through Matheny as loan officer, originated an equipment finance transaction for Zavaro Inc., a California small business. The loan was designated by Ascentium Capital as Loan No. 2729070. On information and belief, the Zavaro transaction resulted in a duplicate funding event in which the same equipment was funded twice through Ascentium Capital, with the consequence that approximately $130,107.47 of duplicate-payment proceeds were transferred to a non-Zavaro third party (specifically,

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CWM) and remain unreconciled and outstanding to Zavaro Inc. on Loan No. 2729070 to the present date. The Zavaro transaction reflects post-funding events inconsistent with the underwritten purpose of the loan and parallels the post-funding diversion of proceeds in the CWM transaction alleged above.

73AC.    The 2024 CWM/EFA Transaction. The 2024 CWM/EFA transaction is described in detail in Sections III.B through III.J above. The CWM transaction shared with the Yostina (2021) and Zavaro (2023) transactions common structural features including, without limitation: (a) origination by Matheny; (b) participation by a California small-business borrower in the petroleum or car wash equipment vertical; (c) post-funding events inconsistent with the underwritten purpose; (d) loan officer involvement in matters typically left to vendor or borrower discretion; and (e) absence of documented Bank corrective action notwithstanding actual or constructive knowledge of structural irregularity.

73AD.    Common Pattern Features. The 2021 Yostina, 2023 Zavaro, and 2024 CWM transactions exhibit the following common features that, in the aggregate and over time, support an inference of pattern rather than coincidence: (a) same loan officer (Matheny); (b) common industry vertical (Matheny's specialty at Ascentium Capital); (c) California small-business borrowers; (d) loan officer-directed transactional content (invoices, vendor selections, or both); (e) related-party or affiliate dynamics in vendor-customer relationships; (f) bypass or workarounds of Bank internal controls; (g) post-funding events inconsistent with the underwritten purpose; and (h) continued Bank employment of Matheny in the same vertical notwithstanding actual or constructive knowledge of structural irregularity.

5"

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

73AE.    **Bank Knowledge of Pattern. On information and belief, the records of the 2021 Yostina, 2023 Zavaro, and 2024 CWM transactions were each generated on Bank servers, transmitted from Bank email accounts, and stored in the Bank's records-management systems. The Bank had constructive knowledge of the pattern by reason of its own document retention and supervisory record-keeping obligations. The Bank's failure to identify and remediate the pattern is itself a separate and continuing supervisory failure, in addition to and apart from the failures specifically attributable to the CWM/EFA transaction.**

73AF.    **Affected Witnesses. The Yostina Principal (Ramzy), the Zavaro Inc. principal, the former or current Ascentium Capital credit underwriter Lara C. Hernandez, and other Ascentium Capital personnel with knowledge of Matheny's origination portfolio are, on information and belief, witnesses with relevant knowledge of the pattern of conduct alleged in this Section III.K. Williams's investigation into the pattern is ongoing and the full extent of Matheny's irregular origination practice may include additional borrowers and transactions not currently known to Williams.**

73AG.    **Reservation for Future Claims. Williams expressly reserves the right under Federal Rule of Civil Procedure 15 to seek leave to amend this pleading to include additional claims, including without limitation claims under the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., based on the pattern of conduct described in this Section III.K, upon and to the extent that further discovery and witness cooperation in respect of the Yostina, Zavaro, and other affected transactions develops admissible evidence supporting predicate acts and other RICO elements.**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

## IV.  ANSWER TO FIRST AMENDED COMPLAINT

Defendant Andrew P. Williams ("Williamsb), pro se, hereJy answers Plaintiff Regions Bank dJa Ascentium Capital's ("Plaintiffb or "Ascentiumb) First Amended Complaint ("FACb), filed March 17, 2026, as follows:

Pursuant to Federal Rule of Civil Procedure "(J)(3), Williams denies each and every allegation contained in the FAC except as expressly admitted or qualified Jelow. Williams's silence as to any specific allegation, including allegations contained in headings or unnumJered paragraphs, shall not Je deemed an admission. Williams files this Answer without waiver of, and expressly reserving, his oJjections to the sufficiency of the Bank's purported service of the First Amended Complaint as set forth in the Twenty-Ninth Affirmative Defense Jelow. Williams reserves the right to assert additional defenses and counterclaims as further information is developed through discovery.

**A.  Parties (FAC ¶¶ 1 through 8)**

**FAC ¶ 1.    Williams lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph and on that basis denies them.**

**FAC ¶ 2.    Williams admits that Car Wash Management, LLC (the Debtor under the EFA) is a Delaware limited liability company. Williams further alleges that a separate entity, Car Wash Management, LLC (Hawaii), is a Hawaii limited liability company organized solely for the purpose of holding a Hawaii state government contract, and is not the same entity as the Debtor and is not a party to the EFA. Williams denies any allegation suggesting the two entities are the same. Williams lacks knowledge or**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

information sufficient to form a belief about the truth of the remaining allegations and on that basis denies them.

FAC ¶ 3.    Williams admits only that West Covina Car Wash LLC is a California limited liability company. Williams further alleges that he has no direct membership or ownership interest in West Covina Car Wash LLC. Williams lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations and on that basis denies them.

FAC ¶ 4.    Williams admits that Jose Rene Ortiz is an individual and that, following the January 2024 restructure directed by Bank loan officer Peter Matheny, Ortiz holds the controlling eighty percent (80%) membership interest in CWM and was the Managing Member with day-to-day operational and financial control. Williams further alleges that Ortiz has since abandoned his role in the management and operations of CWM. Williams lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations regarding Ortiz's residency and other matters and on that basis denies them.

FAC ¶ 5.    Williams admits that he is an individual. Williams denies that he resides in San Diego, California; Williams's mailing address is 12641 Antioch Road, Suite #1045, Overland Park, Kansas 66213. Williams admits that, at relevant times concerning the EFA, he was a ten percent (10%) post-restructure member of CWM, a Manager of CWM, and Chief Executive Officer of CWM. Williams denies that he was a sixty percent (60%) member at all relevant times to the EFA, as the restructure to ten percent (10%) occurred in January 2024 at the direction of Bank loan officer Peter Matheny. Williams further denies that he signed the EFA, the Personal Guaranty, or

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

any related loan documents. Except as so admitted, Williams denies the allegations contained in this paragraph.

FAC ¶ 6.    Williams admits only that Washworld, Inc. is a Wisconsin corporation. Williams lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations and on that basis denies them.

FAC ¶ 7.    The allegations contained in this paragraph concerning DOE defendants are conclusions of law and require no response. To the extent any response is required, Williams denies the allegations contained in this paragraph as to himself.

FAC ¶ 8.    The allegations contained in this paragraph regarding agency, employment, joint venture, conspiracy, and alter ego among defendants are conclusions of law and require no response. To the extent any response is required, Williams denies that he was the agent, employee, partner, joint venturer, alter ego, or co-conspirator of any other defendant. Williams further denies that he acted in concert with or on behalf of Ortiz, Matheny, Washworld, or any other defendant in connection with the events alleged in the FAC. Williams affirmatively alleges, as set forth in his counterclaim, cross-claim, and third-party complaint, that Ortiz, Matheny, and Washworld acted in concert against Williams's interests. Williams denies the remaining allegations of this paragraph.

**B.  Jurisdiction and Venue (FAC ¶¶ 9 through 11)**

FAC ¶ 9.    Williams admits that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 by reason of complete diversity and

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

an amount in controversy in excess of $75,000. Williams denies any remaining allegations of this paragraph.

FAC ¶ 10.   Williams admits that venue is proper in this District under 28 U.S.C. § 1391(b). Except as so admitted, Williams denies the allegations contained in this paragraph.

FAC ¶ 11.   Williams lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph regarding the inapplicability of the Rees-Levering Act and Unruh Act and on that basis denies them.

C.  General Allegations (FAC ¶¶ 12 through 26)

FAC ¶ 12.   Williams admits that on or about January 10, 2024, an Equipment Financing Agreement No. 2763169 was executed naming CWM as Debtor. Williams denies that he personally signed the EFA. Williams lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations and on that basis denies them.

FAC ¶ 13.   Williams admits that on or about February 28, 2024, at the instruction and request of Peter Matheny of Ascentium, Williams transmitted by email to Matheny a quotation form bearing Washworld branding for equipment, with Jose Rene Ortiz copied. Williams denies that he orally represented to Matheny that AVW was unable to deliver the equipment. Williams further denies the characterization of the email's contents as constituting a representation that CWM was placing or had placed an order with Washworld. Except as so admitted, Williams denies the allegations contained in this paragraph.

63

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

**FAC ¶ 14.** Williams admits that on or about March 7, 2024, an Addendum to the EFA, Agreement No. 2763169, was prepared by Bank and signed by Ortiz on behalf of CWM, changing the amount financed to $346,904.75. Williams denies that he personally signed the Addendum. Except as so admitted, Williams denies the allegations contained in this paragraph.

**FAC ¶ 15.** Williams admits that CWM was at relevant times an authorized distributor of Washworld products. Williams denies the characterization that the February 28, 2024 email referenced in paragraph 13 constituted a misrepresentation. Williams lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations and on that basis denies them.

**FAC ¶ 16.** Williams lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph regarding Ascentium's past dealings with Washworld or Washworld's Funding Instructions and on that basis denies them.

**FAC ¶ 17.** Williams lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph regarding the March 12, 2024 email sent by Ascentium to Washworld and on that basis denies them.

**FAC ¶ 18.** Williams admits that on or about March 11, 2024, the Bank wired loan proceeds to Washworld in connection with the EFA. Williams denies the allegation that the wire amount was $309,954.00 as inaccurate. On information and belief, the actual amount wired by the Bank to Washworld was $309,054.80 per the Bank's own funding records; the $899.20 discrepancy between the FAC's allegation and the actual wire amount is unexplained by the Bank and is incorporated into Williams's Fourth Claim for Relief as

64

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

**further indicia of the structurally irregular bookkeeping and origination conduct alleged therein. Except as expressly admitted and qualified, Williams denies the remaining allegations contained in this paragraph.**

**FAC ¶ 19.  Williams lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph regarding Washworld's inability to reconcile the funding and on that basis denies them.**

**FAC ¶ 20.  Williams denies that he never sent the Quote or Order to Washworld. Williams further denies that CWM did not order, or did not intend to order, the Equipment. Williams lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations regarding Washworld's contentions and on that basis denies them.**

**FAC ¶ 21.  Williams lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph regarding Washworld's knowledge or state of mind upon receipt of the Mistaken Payment and on that basis denies them.**

**FAC ¶ 22.  Williams lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph regarding Washworld's conduct in response to the Mistaken Payment and on that basis denies them.**

**FAC ¶ 23.  Williams admits that on or about May 23, 2024, Pete Matheny of Ascentium transmitted to Washworld a copy of the Quote referenced in the FAC. Williams denies that the Quote was received from Williams under circumstances giving rise to liability. Williams lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations and on that basis denies them.**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**FAC ¶ 24.** Williams lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph regarding Ascentium's declaration of default and acceleration and on that basis denies them. To the extent the paragraph alleges or implies wrongful conduct by Williams, Williams denies the allegations.

**FAC ¶ 25.** The allegations contained in this paragraph are directed at CWM, WCCW, and Ortiz and do not pertain to Williams individually. To the extent any response is required, Williams denies the allegations contained in this paragraph as to himself.

**FAC ¶ 26.** The allegations contained in this paragraph are directed at Washworld and do not pertain to Williams individually. To the extent any response is required, Williams denies the allegations contained in this paragraph as to himself.

**First Cause of Action: Breach of Equipment Finance Agreement (Against CWM) (FAC ¶¶ 27 through 32)**

**FAC ¶ 27.** The First Cause of Action is asserted against Car Wash Management, LLC, not against Defendant Williams. To the extent that the FAC contains any allegations under the First Cause of Action that purport to be directed at Williams or that incorporate prior allegations against Williams, Williams denies those allegations as to himself. The remaining allegations require no response from Williams.

**FAC ¶ 28.** The First Cause of Action is asserted against CWM, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

FAC ¶ 29.  The First Cause of Action is asserted against CWM, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

FAC ¶ 30.  The First Cause of Action is asserted against CWM, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

FAC ¶ 31.  The First Cause of Action is asserted against CWM, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

FAC ¶ 32.  The First Cause of Action is asserted against CWM, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

**Second Cause of Action: Breach of Personal Guaranty (Against Ortiz) (FAC ¶¶ 33 through 38)**

FAC ¶ 33.  The Second Cause of Action is asserted against Jose Rene Ortiz, not against Defendant Williams. The allegations therein require no response from Williams. To the extent any response is required, Williams denies the allegations as to himself.

FAC ¶ 34.  The Second Cause of Action is asserted against Ortiz, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

FAC ¶ 35.  The Second Cause of Action is asserted against Ortiz, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**FAC ¶ 36.** The Second Cause of Action is asserted against Ortiz, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

**FAC ¶ 37.** The Second Cause of Action is asserted against Ortiz, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

**FAC ¶ 38.** The Second Cause of Action is asserted against Ortiz, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

**Third Cause of Action: Breach of Guaranty (Against WCCW) (FAC ¶¶ 39 through 44)**

**FAC ¶ 39.** The Third Cause of Action is asserted against West Covina Car Wash LLC, not against Defendant Williams. The allegations therein require no response from Williams. To the extent any response is required, Williams denies the allegations as to himself.

**FAC ¶ 40.** The Third Cause of Action is asserted against WCCW, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

**FAC ¶ 41.** The Third Cause of Action is asserted against WCCW, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

**FAC ¶ 42.** The Third Cause of Action is asserted against WCCW, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**FAC ¶ 43.   The Third Cause of Action is asserted against WCCW, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.**

**FAC ¶ 44.   The Third Cause of Action is asserted against WCCW, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.**

**Fourth Cause of Action: Fraud/Concealment (Against CWM, Williams, Ortiz, and Does 1-10) (FAC ¶¶ 45 through 53)**

**FAC ¶ 45.   The allegations of this paragraph incorporate by reference paragraphs 1 through 44 of the FAC. Williams's responses to those paragraphs are set forth above and are incorporated herein by reference. To the extent the paragraph purports to incorporate allegations of fraudulent or wrongful conduct as to Williams, Williams denies those allegations.**

**FAC ¶ 46.  Williams denies that he represented to Ascentium that CWM intended to order the Equipment stated in the Quote, that the Equipment had been delivered, or that all conditions to funding had been satisfied. Williams further denies the phrase 'CWM, through Williams and Ortiz, represented to Ascentium' as a legal characterization to which no response is required. To the extent any response is required, Williams denies all allegations of this paragraph as to himself.**

**FAC ¶ 47.   Williams denies that any representation attributed to him was false when made. Williams denies that he ever intended for CWM to fail to order or pay for the Equipment, or that he ever harbored or formed an intent to defraud Ascentium. Williams denies each remaining allegation of this paragraph as to himself.**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**FAC ¶ 48.**   The allegations of this paragraph are directed at Ortiz, not Williams. To the extent the paragraph alleges or implies that Williams concealed any material fact, participated in any oral representation by Ortiz, or engaged in fraud, Williams denies those allegations. Williams denies each remaining allegation of this paragraph as to himself.

**FAC ¶ 50.**   Williams denies that Ascentium acted in justifiable reliance on any representation attributed to Williams. Ascentium's own credit officer Lara C. Hernandez identified the non-arm's-length structure of the transaction and the related-party relationships in advance of funding, defeating any claim of justifiable reliance. Williams denies the remaining allegations of this paragraph as to himself.

**FAC ¶ 51.**   Williams denies that any conduct attributable to him caused Ascentium to make the Mistaken Payment or to suffer any damages. Williams denies that he made any representations on which Ascentium reasonably or justifiably relied. Williams denies the remaining allegations of this paragraph as to himself.

**FAC ¶ 52.**   Williams denies that he proximately caused any damages to Ascentium. Williams denies that he made any fraudulent representations. Williams further pleads that any damages alleged by Ascentium were proximately caused by Ascentium's own conduct, including the conduct of its loan officer Peter Matheny, and not by any act or omission of Williams. Williams denies each remaining allegation of this paragraph as to himself.

**FAC ¶ 53.** Williams denies the allegations of this paragraph categorically as to himself. Williams denies that any conduct attributed to him was undertaken with malice, oppression, or fraud within the meaning of California Civil Code § 3294. Williams further denies that he was a managing

70

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

agent of CWM at the time of any alleged conduct in a manner that would support imposition of punitive damages. Williams denies that Ascentium is entitled to punitive or exemplary damages from Williams.

**Fifth Cause of Action: Recovery for Payment of Money Paid by Mistake (Against Washworld) (FAC ¶¶ 54 through 58)**

FAC ¶ 54.  The Fifth Cause of Action is asserted against Washworld, not against Defendant Williams. The allegations therein require no response from Williams. To the extent any response is required, Williams denies the allegations as to himself.

FAC ¶ 55.  The Fifth Cause of Action is asserted against Washworld, not Williams. To the extent the paragraph alleges that Ascentium was fraudulently induced to make the Mistaken Payment by Williams's conduct, Williams denies that allegation. Williams denies the remaining allegations as to himself.

FAC ¶ 56.  The Fifth Cause of Action is asserted against Washworld, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

FAC ¶ 57.  The Fifth Cause of Action is asserted against Washworld, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

FAC ¶ 58.  The Fifth Cause of Action is asserted against Washworld, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

**Sixth Cause of Action: Breach of Contract (Against Washworld) (FAC ¶¶ 59 through 63)**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

**FAC ¶ 59.** The Sixth Cause of Action is asserted against Washworld, not against Defendant Williams. The allegations therein require no response from Williams. To the extent any response is required, Williams denies the allegations as to himself.

**FAC ¶ 60.** The Sixth Cause of Action is asserted against Washworld, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

**FAC ¶ 61.** The Sixth Cause of Action is asserted against Washworld, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

**FAC ¶ 62.** The Sixth Cause of Action is asserted against Washworld, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

**FAC ¶ 63.** The Sixth Cause of Action is asserted against Washworld, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

**Seventh Cause of Action: Money Had and Received (Against Washworld)**
**(FAC ¶¶ 64 through 65)**

**FAC ¶ 64.** The Seventh Cause of Action is asserted against Washworld, not against Defendant Williams. The allegations therein require no response from Williams. To the extent any response is required, Williams denies the allegations as to himself.

**FAC ¶ 65.** The Seventh Cause of Action is asserted against Washworld, not Williams. No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.

72

**Eighth Cause of Action: Conversion (Against Washworld), DISMISSED PER DKT. 167 (FAC ¶¶ 66 through 75)**

**FAC ¶ 66.   The Eighth Cause of Action was dismissed by Order of the Court entered April 29, 2026 (Dkt. 167) on Washworld's Motion to Dismiss. To the extent any response is nevertheless required, the Eighth Cause of Action was asserted against Washworld, not against Defendant Williams, and Williams denies the allegations contained therein as to himself.**

**FAC ¶ 67.   The Eighth Cause of Action has been dismissed (Dkt. 167). No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.**

**FAC ¶ 68.   The Eighth Cause of Action has been dismissed (Dkt. 167). No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.**

**FAC ¶ 69.   The Eighth Cause of Action has been dismissed (Dkt. 167). No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.**

**FAC ¶ 70.   The Eighth Cause of Action has been dismissed (Dkt. 167). No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.**

**FAC ¶ 71.   The Eighth Cause of Action has been dismissed (Dkt. 167). No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.**

**FAC ¶ 72.   The Eighth Cause of Action has been dismissed (Dkt. 167). No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.**

73

**FAC ¶ 73.   The Eighth Cause of Action has been dismissed (Dkt. 167). No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.**

**FAC ¶ 74.   The Eighth Cause of Action has been dismissed (Dkt. 167). No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.**

**FAC ¶ 75.   The Eighth Cause of Action has been dismissed (Dkt. 167). No response from Williams is required. To the extent any response is required, Williams denies the allegations as to himself.**

**Response to Prayer for Relief**

**Williams denies that Plaintiff is entitled to any of the relief requested in the Prayer for Relief of the FAC against Williams personally. Williams further denies that Plaintiff is entitled to any judgment, damages, restitution, interest, attorneys' fees, costs, punitive or exemplary damages, or any other relief against Williams. Williams prays that Plaintiff take nothing by way of its First Amended Complaint as against Williams, that judgment be entered in favor of Williams, and that Williams be awarded his costs of suit and such other and further relief as the Court deems just and proper.**

## V.  AFFIRMATIVE DEFENSES

Without conceding that he Jears the Jurden of proof or persuasion as to any of these matters, and reserving the right to assert additional defenses as further information is developed through discovery, Defendant Andrew P. Williams asserts the following separate and additional affirmative defenses to each and every cause of action asserted against him in the First Amended Complaint:

74

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

***FIRST AFFIRMATIVE DEFENSE  (Failure to State a Claim Upon Which Relief Can Be Granted)***

The First Amended Complaint, and each cause of action asserted against Williams therein, fails to state a claim upon which relief can Je granted. The Fourth Cause of Action for Fraud/Concealment fails to satisfy the heightened pleading standard required Jy Federal Rule of Civil Procedure 9(J), as set forth more fully Jelow. Specifically as to the Fourth Cause of Action for Fraud/Concealment, the First Amended Complaint fails to satisfy the plausiJility pleading standard of Bell Atl. Corp. v. TwomJly, 550 U.S. 544 (2007), and Ashcroft v. IqJal, 556 U.S. 662 (2009), and further fails to satisfy Federal Rule of Civil Procedure 9(J) in that the FAC fails to allege, as to Williams individually, with the particularity required Jy Rule 9(J): (i) the specific content of any representation made Jy Williams personally as distinct from any representation made Jy CWM as the contracting entity; (ii) the date, time, and place at which any specific Williams representation was made; (iii) the medium (oral, written, email, text, or other) through which any specific Williams representation was communicated to Ascentium; (iv) the identity of the specific Ascentium employee to whom any Williams representation was made; (v) how any Williams representation was false or misleading when made; (vi) the Jasis for any purported justifiaJle reliance Jy Ascentium, in light of Ascentium's own credit officer Lara C. Hernandez's DecemJer 27, 2023 written determination that 'We cannot finance a transaction where customer and vendor do not have an arm's length distance,' which determination preceded and contradicts any reliance theory; and (vii) the causation chain Jy which any Williams representation proximately caused any specific damage to Ascentium, given that the loan was executed Jy Ortiz, funded Jy Bank's own decision following Hernandez's oJjection, and applied to existing CWM vendor relationships as

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

alleged in Williams's Counterclaim. Williams reserves the right, Jy separate motion, to seek dismissal of the Fourth Cause of Action under Federal Rule of Civil Procedure 12(J)(6) and/or to strike portions thereof under Rule 12(f) on grounds including Jut not limited to the 9(J) particularity defects identified herein.

**SECOND AFFIRMATIVE DEFENSE [INTENTIONALLY OMITTED]**

***THIRD AFFIRMATIVE DEFENSE  (No Personal Liability Under the EFA or Personal Guaranty)***

Williams is not personally liaJle under the EFA or the Personal Guaranty Jecause he did not sign the EFA, did not sign the Personal Guaranty, did not guarantee any of CWM's oJligations to the Bank, and is not a party to any contractual instrument with the Bank that imposes personal liaJility.

***FOURTH AFFIRMATIVE DEFENSE  (No Personal Misrepresentation)***

Plaintiff's claim for Fraud/Concealment against Williams fails Jecause Williams did not personally make any false representation of material fact to the Bank, did not personally conceal any material fact from the Bank, did not act with intent to deceive the Bank, did not know any representation to Je false at the time it was made, and did not Jenefit from any alleged misrepresentation or concealment.

***FIFTH AFFIRMATIVE DEFENSE  (Reliance on Conduct and Documented Instructions of Bank's Loan Officer)***

To the extent Williams transmitted any document, communication, or signature in connection with the EFA, Williams reasonaJly and in good faith relied on the conduct, documented instructions, and apparent authority of Matheny in his capacity as the Bank's authorized loan officer, including Jut not limited to Matheny's documented instructions concerning the means of transmitting loan documents (Jypass of the Bank's internal upload portal), the identity of the Jorrower (suJstitution of CWM for WCCW), the suJstitution of the equipment

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

vendor (AVW to Washworld), and the Bank's actual funding of the loan and acceptance of the resulting flow of funds as indicia that the transaction structure was permissiJle. Williams's reliance on the Bank's loan officer and on the Bank's own funding conduct was justified and forecloses any claim of personal fraud.

***SIXTH AFFIRMATIVE DEFENSE  (Failure to Plead Fraud with Particularity)***

Plaintiff's Fourth Cause of Action for Fraud/Concealment fails to allege fraud with the particularity required Jy Federal Rule of Civil Procedure 9(J). The First Amended Complaint further fails to allege facts plausiJly estaJlishing each element of fraud as required Jy Bell Atl. Corp. v. TwomJly, 550 U.S. 544 (2007), and Ashcroft v. IqJal, 556 U.S. 662 (2009). Plaintiff fails to allege, with the specificity required Jy Rule 9(J), the date, time, place, exact words, audience, manner, and falsity of any specific representation Jy Williams; fails to allege the specific facts evidencing scienter as to Williams; fails to differentiate among the alleged misrepresentations of multiple defendants such that Williams can ascertain what representations Plaintiff attriJutes to him personally; and fails to plead the requisite reliance and causation specific to Williams. Williams reserves the right to seek dismissal of the Fourth Cause of Action under Rule 12(J)(6), or in the alternative a more definite statement under Rule 12(e).

***SEVENTH AFFIRMATIVE DEFENSE  (Failure of Consideration)***

To the extent any oJligation of Williams is asserted under or in connection with the EFA, such oJligation is Jarred or reduced Jy a failure of consideration, in that the loan was funded against documentation that did not match the actual use of proceeds permitted Jy the Bank's own loan officer.

***EIGHTH AFFIRMATIVE DEFENSE  (Failure of Condition Precedent)***

Plaintiff's claims are Jarred or reduced Jy Plaintiff's failure to satisfy conditions precedent to recovery, including Jut not limited to the Bank's failure to conduct

77

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

proper underwriting and to comply with its own internal compliance and origination protocols.

**NINTH AFFIRMATIVE DEFENSE  (Lack of Proximate Cause)**

Any loss Plaintiff claims to have suffered was not proximately caused by any conduct of Williams. Such loss, if any, was caused by the conduct of Ortiz (who executed the loan documents and made the verbal verifications), Matheny (who architected the loan structure, bypassed the Bank's standard underwriting protocols, and directed the use of the Washworld Chula Vista quote to size the loan), the Bank itself (which funded notwithstanding Hernandez's December 2023 written warning), and other parties. The proximate cause of Plaintiff's alleged loss is the conduct of these other parties, not the conduct of Williams.

**TENTH AFFIRMATIVE DEFENSE  (No Damages)**

Plaintiff has not been damaged by any conduct of Williams. Loan proceeds were deployed in the acquisition of car wash equipment (specifically, the Washworld-supplied equipment at the Chula Vista site, the application of approximately $132,509.09 against CWM's pre-existing Chula Vista trade balance for that equipment, and the car wash equipment at the West Covina tunnel car wash facility identified in paragraph 41 above), all of which equipment exists, has been installed, and remains available to Plaintiff for the exercise of its secured remedies under the EFA. Plaintiff's damages, if any, were caused by other parties or by Plaintiff's own conduct (including its loan officer's non-standard structuring of the transaction and, on information and belief, the Bank's non-perfection of its security interest as alleged in paragraph 42A above), and are not recoverable from Williams.

**ELEVENTH AFFIRMATIVE DEFENSE  (Comparative Fault of Plaintiff and Others)**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

Any damages Plaintiff claims to have suffered were caused, in whole or in part, Jy the comparative fault of Plaintiff (through Matheny), Ortiz, Washworld, AVW, and other parties. Any recovery from Williams must Je reduced in proportion to the comparative fault of these other parties.

***TWELFTH AFFIRMATIVE DEFENSE  (Failure to Mitigate)***

Plaintiff failed to mitigate its damages, including Jut not limited to (a) failing to pursue collection from Ortiz on the Personal Guaranty in a timely manner; (J) failing to seek repossession of collateral; (c) failing to act on knowledge of the alleged Mistaken Payment in a timely manner; and (d) failing to undertake reasonaJle efforts to recover from other parties responsiJle for the alleged loss.

***THIRTEENTH AFFIRMATIVE DEFENSE  (Setoff and Recoupment)***

Williams is entitled to setoff and recoupment against any judgment in favor of Plaintiff Jy reason of Williams's counterclaims against Plaintiff set forth herein, including for negligent supervision and declaratory relief.

***FOURTEENTH AFFIRMATIVE DEFENSE  (Negligent Supervision of Loan Officer)***

Plaintiff's claims are Jarred or reduced Jy Plaintiff's negligent supervision of its loan officer Matheny, who originated and structured the loan in his individual capacity and outside the scope of any legitimate authority granted to him Jy Plaintiff. Plaintiff knew or should have known of Matheny's irregular conduct in originating loans, including the Jypass of standard underwriting protocols, the use of a Chula Vista quote to size a West Covina loan, and the routing of funds Jack to CWM for non-equipment uses, and Plaintiff's failure to supervise Matheny is a proximate cause of Plaintiff's alleged loss.

***FIFTEENTH AFFIRMATIVE DEFENSE  (Unclean Hands)***

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

Plaintiff's claims are Jarred Jy the doctrine of unclean hands Jy reason of the conduct of Plaintiff's agent Matheny in originating and structuring the loan in a manner that circumvented the Bank's own internal controls.

*SIXTEENTH AFFIRMATIVE DEFENSE  (In Pari Delicto)*

To the extent the loan transaction is alleged to involve any wrongdoing, Plaintiff (through its agent Matheny) was a participant in that wrongdoing and is therefore Jarred from recovery under the doctrine of in pari delicto.

*SEVENTEENTH AFFIRMATIVE DEFENSE  (Ratification, Waiver, and Estoppel)*

Plaintiff's claims against Williams are Jarred, in whole or in part, Jy the doctrines of ratification, waiver, and estoppel, in that Plaintiff funded the loan Jased upon the documents executed Jy Ortiz, has accepted payments on the loan, and has Jy its conduct ratified the transaction as structured Jy Matheny and Ortiz.

*EIGHTEENTH AFFIRMATIVE DEFENSE  (Statute of Limitations)*

To the extent Plaintiff's claims accrued more than the applicaJle limitations period prior to the filing of the operative complaint, such claims are time-Jarred.

*NINETEENTH AFFIRMATIVE DEFENSE  (Lack of Standing)*

To the extent Plaintiff's claims rest on rights or oJligations owed to entities other than Plaintiff, Plaintiff lacks standing to assert such claims.

*TWENTIETH AFFIRMATIVE DEFENSE  (Justification, Privilege, and Good Faith)*

Any conduct of Williams complained of Jy Plaintiff was justified, privileged, undertaken in good faith, and not actionaJle.

*TWENTY-FIRST AFFIRMATIVE DEFENSE  (Apportionment)*

"0

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

Any liaJility of Williams must Je apportioned among all responsiJle parties, including Ortiz, Matheny, Washworld, AVW, and other parties whose conduct contriJuted to Plaintiff's alleged damages.

***TWENTY-SECOND AFFIRMATIVE DEFENSE  (No Punitive Damages)***

Plaintiff is not entitled to punitive damages against Williams Jecause Williams did not engage in conduct constituting malice, oppression, or fraud, and any imposition of punitive damages would violate Williams's rights under the United States Constitution and the California Constitution.

***TWENTY-THIRD AFFIRMATIVE DEFENSE  (Acts of Others Beyond Williams's Control)***

Any loss alleged Jy Plaintiff was caused Jy acts of others, including Ortiz, Matheny, Washworld, and other parties, that were Jeyond Williams's knowledge, control, or aJility to prevent.

***TWENTY-FOURTH AFFIRMATIVE DEFENSE  (No Personal Benefit)***

Williams did not personally Jenefit, directly or indirectly, from the alleged Mistaken Payment, from any portion of the loan proceeds (the $132,509.09 refunded Jy Washworld to CWM was deployed Jy CWM, not Jy Williams personally, in its entirety to acquire car wash equipment for the West Covina tunnel car wash facility, as more fully identified in paragraph 41 aJove, all of which equipment is owned Jy CWM, is located at the West Covina site, and is availaJle to Plaintiff for the exercise of its secured remedies under the EFA), from any aspect of the Zavaro Inc. or Yostina Inc./Petit transactions descriJed in Sections G.2 and G.3 aJove, or from any other conduct giving rise to the Bank's alleged loss.

***TWENTY-FIFTH AFFIRMATIVE DEFENSE  (Reservation of Defenses)***

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

Williams reserves the right to assert additional affirmative defenses as further information is developed through discovery. The defenses asserted herein are Jased on information presently availaJle to Williams, and Williams's investigation is ongoing.

***TWENTY-SIXTH AFFIRMATIVE DEFENSE  (Failure to Join Necessary Party Under Rule 19: Matheny)***

To the extent Plaintiff seeks to impose personal liaJility on Williams predicated on the conduct of Pete Matheny, Plaintiff has failed to join Matheny as a party to this action as required Jy Federal Rule of Civil Procedure 19. Matheny is a person needed for just adjudication Jecause (a) complete relief cannot Je accorded among the existing parties without Matheny's joinder; (J) Matheny claims an interest relating to the suJject of the action and disposition in his aJsence may impair or impede his aJility to protect that interest, or leave existing parties suJject to risk of inconsistent oJligations; and (c) the disposition of Plaintiff's claims in Matheny's aJsence would prejudice Williams. Williams is concurrently filing a Third-Party Complaint joining Matheny as a Third-Party Defendant to this action.

***TWENTY-SEVENTH AFFIRMATIVE DEFENSE  (Failure to Join Necessary Party Under Rule 19: Beaudoin)***

To the extent Plaintiff's claims against Williams are predicated on conduct of CWM's memJers or managers, Plaintiff has failed to join Travis Beaudoin, the other 10% post-restructure minority memJer of CWM, as a party. Williams reserves all rights with respect to such non-joinder.

***TWENTY-EIGHTH AFFIRMATIVE DEFENSE  (Bankruptcy Discharge and Estate Property)***

Williams filed a voluntary petition under Chapter 7 of the Bankruptcy Code on OctoJer 4, 2024, in the United States Bankruptcy Court for the Southern District of

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

California (Case No. 24-03761-CL7), and received his discharge under 11 U.S.C. § 727 on _anuary 7, 2025. To the extent Plaintiff's claims against Williams arise from pre-petition conduct and seek to impose personal liaJility on Williams for oJligations that arose pre-petition, such claims are Jarred Jy Williams's discharge under 11 U.S.C. § 727. To the extent Plaintiff's claims include causes of action that constitute property of Williams's Jankruptcy estate under 11 U.S.C. § 541, such claims may Je Jarred or suJject to assertion only Jy the Chapter 7 Trustee. Williams reserves all rights with respect to such claims, including the right to seek relief in the Bankruptcy Court.

***TWENTY-NINTH AFFIRMATIVE DEFENSE  (Insufficient Service of Process: FRCP 12(b)(5) (Service Defect))***

Plaintiff's purported service of the First Amended Complaint upon Williams, evidenced Jy Proof of Service filed May 12, 2026 (Dkt. 173), was insufficient under Federal Rule of Civil Procedure 4. The Court's Order of April 30, 2026 (Dkt. 169) expressly directed Plaintiff to serve Williams "Jy leaving a copy of the summons and the First Amended Complaint with the commercial mail receiving agency located at 12641 Antioch Rd., Suite #1045, Overland Park, KS 66213b pursuant to California Code of Civil Procedure § 415.20(c). Plaintiff's Proof of Service (Dkt. 173) reflects that Plaintiff did not effect service Jy "leaving a copy … with the commercial mail receiving agency,b Jut instead caused its agent Nationwide Legal, LLC, on May 6, 2026, to mail copies of the summons and the First Amended Complaint Jy first-class mail from Los Angeles, California to the commercial mail receiving agency. Mailing copies to the commercial mail receiving agency is materially different from leaving copies with the commercial mail receiving agency, and does not comply with the Court's Order or with Section 415.20(c). Williams therefore oJjects to the sufficiency of service and reserves all

"3

rights under Rules 12(J)(5) and 12(h)(1) without prejudice to the filing of this responsive pleading. The filing of this responsive pleading shall not Je construed as a waiver of, or concession with respect to, Williams's oJjection to service.

## VI.  RESERVATION OF ESTATE AND CWM-DERIVATIVE CLAIMS

Williams expressly reserves all rights to amend this pleading under Federal Rule of Civil Procedure 15 to assert additional claims that, as of the date of this filing, are reserved for future adjudication in the appropriate procedural posture, including without limitation:

(a) claims that constitute property of Williams's Jankruptcy estate under 11 U.S.C. § 541, and as construed Jy Hamilton v. State Farm Fire & Casualty Co., 270 F.3d 77" (9th Cir. 2001) (judicial estoppel principles applied to claims suJject to Jankruptcy disclosure), which may Je asserted Jy Williams in this action upon aJandonment Jy the Chapter 7 Trustee pursuant to 11 U.S.C. § 554, including claims for pre-petition fraud, pre-petition negligent supervision, civil theft under California Penal Code § 496(c), and related causes of action against Ortiz, Matheny, and the Bank;

(J) claims that are derivative of Car Wash Management, LLC (Delaware), which Williams, as a pro se litigant, lacks standing to assert in this action under Rowland v. California Men's Colony, 506 U.S. 194 (1993), and Simon v. Hartford Life, Inc., 546 F.3d 661 (9th Cir. 200"), including without limitation claims for Jreach of fiduciary duty, faithless servant compensation forfeiture, conversion, Jreach of the EFA, and aiding and aJetting Jreach of fiduciary duty;

(c) claims that may Je more appropriately asserted Jy the Chapter 7 Trustee, Jy CWM through its retained counsel of record, or Jy Williams in a separate action, including claims arising under RICO, claims for tortious interference with Jusiness

"4

relationships, and claims against H&S Energy LLC, ProElite, Veritech, Specialty Car Wash Systems, Washworld, and other entities whose conduct may give rise to liaJility; and

(d) claims that may arise from facts hereafter disclosed through discovery, including claims against ROES 1 through 50 whose identities and roles are not presently known to Williams.

Williams reserves all rights with respect to such claims and asserts herein only those claims for which he holds clear individual standing in his post-petition capacity. The aJsence of such claims from this pleading shall not Je construed as a waiver, release, or aJandonment of those claims.

Alternative Pleading Reservation: Without limiting the foregoing reservation, to the extent any factual averment or claim stated in this filing is properly characterized as derivative of CWM injury rather than direct to Williams under Tooley v. Donaldson, Lufkin & _enrette, "45 A.2d 1031 (Del. 2004), or under California or federal law, Williams pleads the same averments in the alternative under Federal Rule of Civil Procedure "(d)(2) and (d)(3), and Williams reserves the right (or, as applicaJle, the right of CWM or its proper representative) to assert any such averment or claim derivatively in this action or in a separate filing, without waiver. Plaintiff and other parties are placed on notice that the factual record set forth in this filing forms the foundation for parallel direct and derivative theories of recovery, and that the dismissal of any averment or claim herein as improperly characterized direct shall not Je construed as an adjudication of the underlying facts or as a Jar to the same averment or claim Jeing asserted derivatively.

Reservation as to CWM's Separate Representation: Williams expressly acknowledges that Co-Defendant Car Wash Management LLC ("CWM") is a

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

separate legal entity suJject to this Court's April 30, 2026 Order (Dkt. 169) directing CWM to retain counsel Jy _une 1, 2026. Williams's individual claims, defenses, factual allegations, and reservations asserted in this pleading are made in Williams's individual capacity only. To the extent any claim, defense, factual allegation, or reservation set forth in this pleading would, if asserted Jy or on Jehalf of CWM, require CWM to appear through licensed counsel under 2" U.S.C. § 1654 and controlling authority including Rowland v. California Men's Colony, 506 U.S. 194, 201-202 (1993), and In re America West Airlines, 40 F.3d 105", 1059 (9th Cir. 1994), Williams asserts such matter only in his individual capacity and expressly reserves CWM's separate right to assert any corresponding claim, defense, or position through counsel of CWM's choosing when retained. Nothing in this pleading shall Je construed as Williams's appearance, representation, or authority to act on Jehalf of CWM. Williams further expressly reserves the right, under Federal Rule of Civil Procedure 15 and otherwise, to coordinate, amend, or supplement this pleading following CWM's appearance through counsel to address any claim, defense, or position that is properly CWM's to assert.

## COUNTERCLAIM

*(Counterclaim by Andrew P. Williams Against Counter-Defendant Regions Bank dba Ascentium Capital)*

***Incorporation by Reference***

Williams incorporates Jy reference paragraphs 1 through 73AG of this pleading as though fully set forth herein.

STATEMENT OF STANDING AND DIRECT IN_URY.     The claims set forth in this Counterclaim, the accompanying Cross-Claim, and the accompanying

"6

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

Third-Party Complaint are asserted Jy Williams in his individual capacity and are predicated upon direct injuries personally suffered Jy Williams that are independent of, and not derivative of, any injury suffered Jy Car Wash Management LLC (Delaware). Each claim is supported Jy a specific and direct injury to Williams as an individual person, including without limitation: (a) Williams's loss of his pre-restructure sixty percent (60%) majority MemJer equity interest in CWM, which MemJer interest was reduced to ten percent (10%) at Matheny's direction as a precondition of EFA funding and as a direct and proximate result of the conduct alleged herein; (J) Williams's personal exposure to litigation Jy the Bank under the Fourth Cause of Action of the First Amended Complaint, notwithstanding the Bank's own SeptemJer 1", 2025 judicial admission (Docket No. "2) that Williams was 'proJaJly not collectaJle,' which exposure has caused Williams to incur defense costs in this Action; (c) Williams's lost income, profits distriJutions, and other compensation from his role as CEO and Manager of CWM, as impaired Jy the disruption caused Jy the structurally irregular EFA and Ortiz's suJsequent diversion of CWM's Jusiness; (d) Williams's lost prospective economic opportunities through a separate Jusiness venture, which opportunities were impaired Jy the time and resources Williams has Jeen required to devote to defending against the Bank's claims and to remediating the harm caused Jy Matheny and Ortiz; and (e) Williams's reputational injury in the equipment finance, car wash, water reclamation, and Jroader Jusiness communities. The standing of Williams to assert each claim herein is preserved consistent with the analysis in Tooley v. Donaldson, Lufkin & _enrette, Inc., "45 A.2d 1031 (Del. 2004), as to which claims are direct versus derivative under Delaware law, and with the principles of Hamilton v. State Farm Fire & Casualty Co., 270 F.3d 77" (9th Cir. 2001), as to which claims may Je asserted Jy a deJtor in his post-petition

individual capacity following Chapter 7 discharge. To the extent any claim asserted herein seeks recovery for diminution in the value of Williams's MemJer interest in CWM, such recovery is sought solely as a direct individual injury arising from the reduction of Williams's MemJer interest from sixty percent (60%) to ten percent (10%) and from conduct directed at Williams individually, and not for any diminution that is derivative of injury to CWM; any diminution derivative of injury to CWM is reserved to the companion derivative action and is not claimed here.

***FIRST CLAIM FOR RELIEF (Negligent Supervision of Loan Officer Against Counter-Defendant Regions Bank)***

74.    Williams realleges and incorporates Jy reference all preceding paragraphs as though fully set forth herein.

75.    Regions Bank owed a duty of reasonaJle care in the supervision of its loan officers, including Matheny, with respect to the origination, structuring, and funding of equipment finance transactions. That duty extended to all persons whose interests were reasonaJly foreseeaJle to Je affected Jy Matheny's conduct, including Williams as a memJer, manager, and officer of the prospective Jorrower whose participation in the transaction was foreseeaJle and whose personal interests could Je foreseeaJly injured Jy Matheny's irregular origination and post-funding conduct.

**76.    Regions Bank breached its duty of reasonable supervision of Matheny by, among other things: (a) failing to detect or prevent Matheny's instruction to Williams to bypass the Bank's standard internal document upload portal; (b) failing to detect or prevent Matheny's direction to modify the borrower entity from WCCW to CWM after the initial credit application;**

""

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**(c) failing to detect or prevent Matheny's direction to restructure CWM's membership (from Williams's original 60% majority to Ortiz's 80% controlling position) as a precondition to funding, with the amended Operating Agreement bundled into the EFA closing; (d) failing to detect or prevent Matheny's unilateral substitution of the equipment vendor from AVW to Washworld after the loan had initially funded, without renewed underwriting, without a new Commercial Credit Application, and without any executed amendment of the EFA by Williams or by all members of CWM, as set forth in paragraphs 37C through 37D above; (e) failing to detect or prevent the use of the Washworld Chula Vista quote to size the EFA, with approximately $132,509.09 applied to settle a pre-existing CWM trade balance and approximately $176,552.71 refunded by Washworld to CWM at Matheny's direction; (f) failing to detect or prevent the duplicate funding of the Zavaro Inc. equipment in August 2023, which left $130,107.47 of duplicate-payment proceeds on CWM's books and outstanding to Zavaro Inc. (Loan #2729070) to the present date; (g) failing to detect or prevent Matheny's written instructions to vendors (including Petit Auto Wash, Inc. in 2021 in connection with the Yostina Inc. transaction) dictating the precise dollar amount and addressee that vendor invoices should reflect, as documented in paragraphs 62H through 62K above; (h) failing to act upon the Bank's own actual, contemporaneous internal knowledge, reflected in the December 26 through 27, 2023 written communications of its credit underwriter Lara C. Hernandez (alleged in paragraphs 25A through 25D above), that the CWM/EFA transaction involved a non-arm's-length relationship between obligor and vendor and that Matheny had "done a few deals through Car wash management the vendor," and proceeding to fund the**

loan notwithstanding Ms. Hernandez's explicit written recommendation that CWM be "cut-out" as the vendor; (i) failing to require a new Authorization to Perform Verbal Verification, a new Commencement Agreement, or a new Authority and Incumbency Certificate in connection with the post-funding vendor substitution and the rewire to Washworld; (j) on information and belief, failing to perfect the Bank's security interest in the EFA collateral by filing a UCC-1 financing statement in the State of Delaware or in other appropriate filing offices, as alleged in paragraph 42A above; (k) failing to maintain ongoing supervisory controls over Matheny's continued employment and origination practice in the petroleum and convenience-store retail vertical from January 2024 to the present, notwithstanding the documented structural irregularities in Matheny's origination conduct; and (l) failing to maintain supervisory controls reasonably sufficient to detect, prevent, or remediate Matheny's pattern of originating structurally irregular equipment finance transactions for borrowers in the petroleum/c-store retail vertical, including the Yostina/Petit (2021), Zavaro Inc. (2023), and CWM/EFA (2024) transactions described in this pleading.

77. Regions Bank had actual knowledge of Matheny's irregular origination conduct in the CWM/EFA transaction Jy no later than DecemJer 26 through 27, 2023, when its credit underwriter Lara C. Hernandez identified the non-arm's-length structure in writing, when Matheny admitted in writing that he had "done a few deals through Car wash management the vendor,b and when the Bank failed to act on Ms. Hernandez's explicit recommendation that CWM Je "cut-outb as the vendor. The Bank further had actual or constructive knowledge of Matheny's Jroader pattern of irregular originations, Jecause the documents reflecting that pattern (including those identified in paragraphs 62A through 62K

90

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

aJove) were generated on Bank servers, transmitted from Bank e-mail accounts, and stored in the Bank's records-management systems. Notwithstanding such knowledge, the Bank proceeded to fund the CWM/EFA, has not taken any documented corrective action against Matheny that has Jeen disclosed in this action, has continued to employ Matheny in the petroleum/c-store retail industry vertical, and has elected to prosecute personal claims against Williams premised on the very conduct that the Bank's own credit underwriter flagged as structurally non-compliant.

**77A. Bank's internal credit policies and underwriting standards, as evidenced by credit officer Lara C. Hernandez's December 27, 2023 written determination that 'We cannot finance a transaction where customer and vendor do not have an arm's length distance' (quoted at paragraph 25B above), establish that Bank's institutional position prohibited the financing of transactions of the structure ultimately funded under the EFA. Bank's act of funding the EFA notwithstanding Hernandez's written objection, Bank's failure to escalate or remediate the Hernandez objection through documented supervisory review, and Bank's failure to retract the funding upon discovering the AVW-to-Washworld substitution alleged in paragraph 37D above and the Chula Vista diversion alleged in paragraphs 39 through 42 above, each constitute a direct violation of Bank's own internal credit policy as evidenced by Hernandez's written determination. The breach of duty alleged in this First Claim is the foreseeable consequence of Bank's failure to enforce its own internal policies through ordinary supervisory channels, and the harm to Williams was a foreseeable consequence of Matheny's unsupervised circumvention of those policies.**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**78.    As a direct and proximate result of Regions Bank's breach of its duty of reasonable supervision of Matheny, Williams has suffered, and continues to suffer, foreseeable injury in an amount to be proven at trial, currently estimated in the range of Two Million Dollars ($2,000,000) to Four Million Dollars ($4,000,000), including without limitation: (a) defense costs and litigation expenses incurred in defending against the Bank's Fourth Cause of Action for Fraud/Concealment, currently estimated at $40,000 to $80,000 through trial; (b) lost income from Williams's CEO and Manager role at CWM resulting from the disruption caused by the structurally irregular origination, in an amount to be proven at trial; (c) lost or diminished value in Williams's CWM Member interest (10% post-restructure) resulting from the Bank's failure to supervise; (d) reputational harm in the equipment finance, car wash, water reclamation, and broader business communities, with quantifiable economic component; (e) emotional distress and consequential damages, including personal stress and disruption to Williams's professional and personal life; (f) lost business opportunities at Williams's other ventures (including a separate business venture) while this litigation remains pending; and (g) such further damages as may be proven at trial.**

79.    Williams's injuries descriJed in paragraph 7" accrued in their material respects after the Bank's judicial admission of Williams's non-collectaJility (Dkt. "2) on SeptemJer 1", 2025, and after the Bank's re-addition of Williams to this action on March 17, 2026, in the First Amended Complaint.

***SECOND CLAIM FOR RELIEF*** *[INTENTIONALLY OMITTED]~~(Promissory Estoppel Against Counter-Defendant Regions Bank)~~*

92

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

80. Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

81. Bank, through its agent Peter Matheny acting within the course and scope of his employment, made the following clear and unambiguous promises to Williams during the period from late 2023 through 2024: (a) that the structurally non-standard features of the EFA transaction had been internally reviewed and approved by Bank's credit personnel and would not result in personal liability to Williams; (b) that Williams's role as Certifier on the Authority and Incumbency Certificate served only the limited internal compliance purpose of identifying Ortiz's authority and would not create personal exposure for Williams as a guarantor or co-obligor; (c) that the vendor substitution from AVW Equipment Co., Inc. to Washworld, Inc., effectuated by Matheny on or about March 5 through 7, 2024, was procedurally regular and would be properly documented by Bank in its loan file without requiring further action by Williams; (d) that the approximately $176,552.71 in loan proceeds refunded by Washworld to CWM represented a legitimate working-capital deployment understood and accepted by Bank; and (e) that the structure of the transaction had Bank's internal approval and would not be revisited or recharacterized in any manner adverse to Williams personally. The clear and unambiguous promises identified in subparts (a) through (d) above are each anchored in specific, identifiable Matheny communications including, without limitation: (a) Matheny's December 27, 2023 10:05 a.m. Central time email to Williams forwarding the Hernandez chain with cover language directing operational documents only, impliedly representing that the credit concern would be resolved internally; (b) Matheny's January 5, 2024 text-message instructions to Williams regarding

93

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

execution of loan documents by Ortiz alone, impliedly representing Williams would have no personal exposure as guarantor or principal obligor on the EFA; (c) Matheny's January 2024 approval email stating 'Please use the attached wire doc for first payment of $34,339.42,' representing the loan would proceed on the described terms upon receipt of the pre-funding wire; and (d) Matheny's March 5, 2024 1:01 p.m. Pacific time text message stating 'Hi Andrew, AVW has returned the funds and we're going to rewrite the deal to wash world,' representing that the loan would close on modified terms after the vendor substitution.

82. Bank intended, or should reasonably have expected, that Williams would rely on these promises. Each promise was made in the context of an ongoing equipment finance transaction in which Williams's continued participation was material to the loan's closing. Bank, through Matheny, knew or should have known that Williams was making decisions about (i) signing the Authority and Incumbency Certificate, (ii) participating in the CWM Operating Agreement restructure required as a precondition to funding, (iii) continuing as a Member, Manager, and Officer of CWM during and after the loan closing, and (iv) refraining from independent legal review of the transaction structure, and that each of these decisions was reasonably influenced by Bank's promises.

83. Williams justifiably relied on Bank's promises. As detailed in paragraph 25E above, Williams's reliance was reasonable in view of: (a) Matheny's position as Bank's named loan officer with apparent authority to speak for Bank with respect to the EFA transaction; (b) Matheny's industry experience and Bank's institutional reputation; (c) the absence of any contrary signal from Bank in the period leading to and following funding; (d)

94

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

~~the bundling of internal compliance documentation into a single closing event that limited Williams's opportunity for independent review; and (e) the contemporaneous oral assurances by Matheny that any structural questions had been resolved within Bank.~~

~~83A. Williams's reliance was to his detriment. As a direct and proximate result of relying on Bank's promises, Williams suffered substantial injuries that would not have been incurred but for the promises, including without limitation: (a) participating in the EFA closing in his capacity as Member, Manager, and Officer of CWM without securing independent legal counsel or independent vendor verification; (b) signing the Authority and Incumbency Certificate that Bank now seeks to use against him as evidence of personal involvement in the EFA; (c) accepting and ratifying the restructured CWM Operating Agreement that reduced his Member interest from sixty percent (60%) to ten percent (10%); (d) refraining from independent investigation of the structural concerns reflected in Bank's December 26 through 27, 2023 internal communications; and (e) refraining from withdrawal from CWM management or formal dissociation while the transaction was being structured.~~

~~83B. Injustice can be avoided only by enforcement of Bank's promises or, in the alternative, by an award of damages. Williams has been subjected to personal litigation by Bank on the very transaction that Bank promised would not result in personal exposure to him. The denial of enforcement of Bank's promises, or alternative damages relief, would result in unconscionable injustice given the asymmetry of information, the institutional knowledge held by Bank with respect to Matheny's pattern of structurally irregular~~

95

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

originations, and the trust placed by Williams in Bank's representations made through its named loan officer.

83C. As a direct and proximate result of Bank's failure to honor its promises, Williams has suffered, and continues to suffer, damages in an amount to be proven at trial, including without limitation: (a) defense costs incurred in this action, currently estimated at $40,000 to $80,000 through trial; (b) lost income from Williams's CEO and Manager role at CWM resulting from the disruption caused by the EFA's structurally irregular nature; (c) lost value in Williams's Member interest in CWM, both as it existed at the time of the EFA and as restructured at Matheny's direction; (d) reputational harm in the equipment finance, vendor, and customer communities; (e) emotional distress and consequential damages; (f) lost business opportunities at Williams's other ventures (including a separate business venture) while this litigation remains pending; and (g) such further damages as may be proven at trial. Williams's promissory-estoppel claim is asserted, in part, on conduct that continued after Williams's October 4, 2024 bankruptcy petition date and that produced injury accruing to Williams in his post-petition capacity. To the extent any portion of this claim is properly characterized as pre-petition or as estate property under 11 U.S.C. § 541, Williams asserts that portion in the alternative under Federal Rule of Civil Procedure 8(d)(2) and subject to the bankruptcy-estate reservation set forth in paragraph 73 above.

***THIRD CLAIM FOR RELIEF (Declaratory Relief Against Counter-Defendant Regions Bank, 28 U.S.C. § 2201)***

96

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

84. Williams realleges and incorporates Jy reference all preceding paragraphs as though fully set forth herein.

85. An actual case or controversy of a justiciaJle nature exists Jetween Williams and the Bank concerning the rights and oJligations of the parties under the EFA, the Personal Guaranty, and the related loan documents. This controversy is concrete and definite, as evidenced Jy the Bank's First Amended Complaint, which seeks to impose personal liaJility on Williams notwithstanding the Bank's own admission in Docket No. "2 that Williams was "proJaJly not collectaJle.b

**86. Williams contends, and the Bank disputes, that: (a) Williams is not personally liable for any obligation under the EFA, the Personal Guaranty, or any related instrument; (b) Williams did not make any misrepresentation of material fact to the Bank; (c) Williams did not breach any duty owed to the Bank in connection with the EFA transaction; (d) Williams's signature on the Authority and Incumbency Certificate as Certifier was, as a matter of legal interpretation, limited in scope to verifying that Ortiz held the authority described in that Certificate, and did not constitute Williams's personal certification of any other fact regarding the structure, parties, or validity of the EFA transaction; (e) on information and belief, the Bank does not hold a perfected security interest in any equipment of CWM under UCC § 9-307(e) by reason of the Bank's failure to file a UCC-1 financing statement in the State of Delaware, the state of CWM's organization, and accordingly CWM holds title to the equipment located at or removed from the West Covina car wash facility free and clear of any perfected security interest of the Bank; and (f) Williams is entitled to such other and further declaratory relief as the Court may deem just and proper.**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**87.** A judicial declaration of the rights and oJligations of the parties is necessary and appropriate at this time so that Williams may know his rights and oJligations and govern his conduct accordingly.

***FOURTH CLAIM FOR RELIEF (Fraud Against Counter-Defendant Regions Bank)***

**87A. Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein. This claim is asserted in respect of Bank's misrepresentations and concealments to Williams personally, the consequences of which Williams has suffered in his individual capacity, and is pleaded in the alternative to the extent any portion of the claim is properly characterized as derivative or as estate property under the reservation set forth in Section VI above.**

**87B. From late 2023 through March 2024, and continuing thereafter, Bank, through its agent Peter Matheny acting within the course and scope of his employment, made material misrepresentations to Williams regarding (i) the structural integrity of the EFA transaction as evaluated by Bank's own credit officers; (ii) the limited nature of Williams's role and personal exposure as Certifier on the Authority and Incumbency Certificate; (iii) Bank's direction and authorship of the AVW-to-Washworld vendor substitution; (iv) the intended application of the EFA proceeds; and (v) Bank's good-faith conduct in the origination, funding, and post-funding administration of the EFA.**

**87C. Specifically, Bank, through Matheny, expressly or impliedly represented to Williams in late 2023 and during 2024 that: (a) any structural concerns regarding customer-vendor affiliation in the proposed EFA**

9"

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

transaction had been resolved internally and would not impede funding; (b) the Authority and Incumbency Certificate served only the limited purpose of verifying Ortiz's authority and would not constitute Williams's personal certification of the structural validity of the EFA or his personal certification of any fact about CWM's ownership, business operations, or relationships; (c) the substitution of Washworld for AVW in March 2024 was a routine Bank-directed vendor substitution; (d) the EFA proceeds would be applied to equipment acquisition for CWM and its affiliated facility at 310 South Vincent Avenue; (e) Bank held a valid, perfected security interest in CWM's equipment; and (f) Bank acted in good faith in supervising Matheny and in administering the EFA.

87C1. The representations identified in paragraph 87C above were made by Matheny to Williams through specific, identifiable communications, each with a documented date, medium, and content, as follows. WHO and WHEN: Peter Matheny, Bank's named loan officer for the EFA, communicated with Williams in his capacity as Bank's agent during late 2023 through March 2024. WHAT, WHERE, and HOW for each representation: (a) As to Bank's purported resolution of the structural concerns flagged by credit officer Lara C. Hernandez, Matheny represented to Williams by email transmitted on December 27, 2023 at approximately 10:05 a.m. Central time, forwarding the December 26-27 Hernandez chain quoted at paragraph 25B above, with Matheny's cover language directing Williams to provide operational documents only: 'Hi Andrew, See email below. Can you get me LLC Operating Agreements for both entities to document Jose's majority ownership?' By directing Williams's attention exclusively to operational documents and away from Hernandez's substantive written 'we cannot

99

finance' determination, Matheny impliedly represented that the credit objection had been or would be resolved by operational paperwork alone. (b) As to Williams's purported limited liability, Matheny structured the loan documentation to be executed exclusively by Ortiz in his capacity as 'duly appointed and qualified officer' of CWM, including the EFA, Personal Guaranty, Authorization to Perform Verbal Verification, Customer Identification Program form, Delivery and Acceptance Certificate, and Commencement Agreement (as detailed in paragraphs 30 through 36 above), while limiting Williams's only Bank-financing signature to the Authority and Incumbency Certificate solely as 'Certifier.' By procuring this execution structure, Matheny impliedly represented to Williams that Williams would not bear personal liability as a guarantor or principal obligor on the EFA. (c) As to Bank's approval of the transaction structure, Matheny represented to Williams by approval email circulated in early January 2024 stating: 'Please use the attached wire doc for first payment of $34,339.42,' which communication, by transmitting the pre-funding payment instructions, expressly represented Bank's approval of the transaction to proceed. (d) As to the AVW-to-Washworld vendor substitution and the closing terms, Matheny represented to Williams by text message dated March 5, 2024 at 1:01 p.m. Pacific time: 'Hi Andrew, AVW has returned the funds and we're going to rewrite the deal to wash world.' HOW these representations were false or misleading: Each representation was false when made, as set forth in paragraph 87D above, because Bank's own credit officer Hernandez had on December 27, 2023 at 6:58 a.m. Central time issued a written determination that 'We cannot finance a transaction where customer and vendor do not have an arm's length distance,' which determination was never withdrawn, never

100

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

reversed by any documented superseding credit decision, and never disclosed to Williams as a substantive credit objection rather than an operational paperwork item.

87D. Each of the foregoing representations was false or misleading when made, or was made with reckless disregard for the truth. Bank's own credit officer, Lara C. Hernandez, had identified the very structural concern Matheny denied in writing in an internal Bank email chain of December 26-27, 2023. Bank, through Matheny, had previously originated structurally irregular equipment-finance transactions of similar character (Yostina Inc./Petit Auto Wash in 2021; Zavaro Inc. in 2023), each involving customer-vendor affiliation and Matheny-prescribed invoice content. Bank's compensation structure for Matheny tied substantial portions of Matheny's compensation to origination volume notwithstanding structural irregularity. Bank knew, or in the exercise of reasonable care should have known, that approximately $132,509.09 of the EFA proceeds would be applied by Washworld to a separate Conserve Fuels Chula Vista customer order rather than to CWM's equipment acquisition. Bank knew, or should have known, that Matheny's representations to Williams regarding the limited scope of the Certifier role were inconsistent with the position Bank would subsequently take in litigation.

87E. Bank, through Matheny, intended that Williams rely on the foregoing representations in: (a) consenting to participate in the bundled-into-EFA restructure of CWM's Operating Agreement effectuated in or about January 2024; (b) signing the Authority and Incumbency Certificate as Certifier; (c) refraining from independent investigation of Bank's credit officer's documented internal concerns; (d) refraining from securing

101

independent legal counsel regarding Williams's personal exposure under the loan documents; and (e) generally cooperating with the closing and post-closing administration of the EFA on terms Bank knew Matheny had misrepresented to Williams.

87F. Williams justifiably relied on Bank's representations through Matheny, as more fully set forth in paragraph 25E above, including without limitation Williams's reasonable reliance on Matheny as the Bank's named loan officer with industry experience, Matheny's contemporaneous verbal assurances contradicting any contrary inference from the December 26-27 email chain, the high daily email volume in Williams's position as CEO of CWM and other businesses, and Williams's substantial CEO and operational responsibilities affecting his independent capacity to evaluate technical underwriting communications.

87G. As a direct and proximate result of Bank's fraudulent misrepresentations and concealments, Williams has suffered personal damages in his individual capacity in an amount to be proven at trial, currently estimated, consistent with the damages framework set forth in paragraph 57A above, in the range of $2,000,000 to $5,000,000, including without limitation: (a) defense costs and litigation expenses incurred in defending the Fourth Cause of Action of the First Amended Complaint and related fraud claims asserted by the Bank against Williams personally in this Action, currently estimated at $40,000 to $80,000 through trial; (b) reputational harm arising from being named as an individual defendant in a federal fraud action, with quantifiable economic component; (c) personal stress and disruption to Williams's professional and personal life, in an amount to be proven at trial; (d) lost income from Williams's CEO and

102

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

Manager role at CWM; (e) lost or diminished value in Williams's CWM Member interest; (f) lost opportunity costs at Williams's other ventures (including a separate business venture) of time and resources devoted to defense of this Action; and (g) such further damages as may be proven at trial.

87H. Bank's conduct as alleged herein was willful, malicious, fraudulent, and undertaken with conscious disregard of Williams's rights within the meaning of California Civil Code section 3294, entitling Williams to an award of punitive and exemplary damages against Bank in an amount to be determined at trial.

87H1. Williams alleges that Bank's conduct constitutes 'malice' within the meaning of California Civil Code section 3294(c)(1), in that Bank, through its agent Matheny and through its credit supervision personnel with actual knowledge of Matheny's December 26-27, 2023 representations and Ms. Hernandez's contemporaneous written 'we cannot finance' determination, acted with the intent to cause injury to Williams or engaged in despicable conduct carried on with a willful and conscious disregard of Williams's rights and interests. Bank's conduct further constitutes 'oppression' within the meaning of section 3294(c)(2) as despicable conduct subjecting Williams to cruel and unjust hardship in conscious disregard of his rights, as evidenced by Bank's own September 18, 2025 admission of Williams's probable non-collectability. Bank's conduct further constitutes 'fraud' within the meaning of section 3294(c)(3) as set forth in the Fourth Claim for Relief above. Bank's malicious, oppressive, and fraudulent conduct was undertaken by, ratified by, and authorized at the level of one or more of Bank's officers, directors, or managing agents within the meaning of section 3294(b), including without limitation Tony Zieglar (who appears as a copied recipient on the Bank's

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

December 26 through 27, 2023 Hernandez-Matheny credit communications internal to Bank's underwriting team, and whose copy on those communications evidences Mr. Zieglar's contemporaneous awareness of Matheny's representations and Hernandez's responsive 'we cannot finance' determination) and other credit supervision personnel, including without limitation through Bank's credit supervision team's documented receipt and processing of Ms. Hernandez's December 27, 2023 underwriting objection and Bank's subsequent funding of the EFA notwithstanding that objection.

87I.   Williams's fraud claim is asserted, in part, on conduct that continued after Williams's October 4, 2024 bankruptcy petition date and that produced injury accruing to Williams in his post-petition capacity. To the extent any portion of this claim is properly characterized as pre-petition or as estate property under 11 U.S.C. § 541, Williams asserts that portion in the alternative under Federal Rule of Civil Procedure 8(d), subject to such reservation, abandonment, or trustee action as the Chapter 7 estate may produce, and expressly reserves the right to amend or supplement this Track A filing upon completion of the bankruptcy abandonment procedure to assert the full pre-petition portion of this claim directly.

*FIFTH CLAIM FOR RELIEF (Negligent Misrepresentation Against Counter-Defendant Regions Bank)*

87J.   Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein. In the alternative to the Fourth Claim for Relief above, Williams asserts that the representations made by Bank through Matheny to Williams as set forth in paragraph 87C above, even if not made with knowledge of their falsity or with reckless disregard for the

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

truth, were made by Bank, through Matheny, without reasonable ground for believing them to be true.

87K.  Bank, through Matheny, owed Williams a duty of reasonable care in making representations to Williams regarding (i) the Bank's structural assessment of the proposed EFA transaction; (ii) the limited scope and consequences of Williams's signature on the Authority and Incumbency Certificate; (iii) the application of the EFA proceeds; and (iv) Bank's good-faith supervision of Matheny. Bank's duty of reasonable care arose by virtue of Bank's role as the institutional originator and funder of the EFA, Bank's superior position regarding its own internal credit assessment, and Bank's knowledge that Williams reasonably relied on Bank's loan officer for accurate information regarding the transaction.

87L.  Bank, through Matheny, breached its duty of reasonable care by making the representations described in paragraph 87C above without reasonable ground for believing them to be true. Bank, through Matheny, made representations to Williams that were inconsistent with Bank's own internal credit-officer documentation, with the pattern of Matheny-originated structurally irregular transactions, and with the disposition of EFA proceeds that Matheny knew or should have known would not match the representations made to Williams.

87M. Williams justifiably relied on Bank's representations through Matheny as set forth in paragraph 87F above.

87N. As a direct and proximate result of Bank's negligent misrepresentations, Williams has suffered personal damages in his individual capacity in an amount to be proven at trial, currently estimated in the range of $2,000,000 to $5,000,000, including without limitation the damages

105

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

categories set forth in paragraph 87G above (defense costs, reputational harm, personal stress and disruption to professional and personal life, lost income from CWM CEO and Manager role, lost value in CWM Member interest, lost opportunity costs at a separate business venture, and consequential damages).

87O. Williams's negligent misrepresentation claim is asserted, in part, on conduct that continued after Williams's October 4, 2024 bankruptcy petition date and that produced injury accruing to Williams in his post-petition capacity, subject to the alternative-pleading and bankruptcy reservation set forth in paragraph 87I above.

SIXTH CLAIM FOR RELIEF [INTENTIONALLY OMITTED]

*SEVENTH CLAIM FOR RELIEF* [INTENTIONALLY OMITTED]*(Intentional Interference with Prospective Economic Advantage Against Counter-Defendant Regions Bank)*

87VA. Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

87VB. At all times relevant to this claim, Williams had existing and prospective economic relationships with: (a) CWM in his capacity as Member, Manager, and Chief Executive Officer; (b) CWM customers, vendors, and equipment suppliers with whom Williams had developed business relationships in his role at CWM, including but not limited to Washworld, Inc., AVW Equipment Co., Inc., and various car wash facility owners and operators; (c) Williams's separate business venture, through which Williams was developing reclaim water systems for industrial and commercial

106

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

~~customers; (d) prospective business partners, customers, and investors in the car wash and water reclamation industries; and (e) financial institutions other than Bank with whom Williams sought to develop banking relationships for his other business ventures. Williams's existing and prospective economic relationships specifically included, without limitation: (i) Williams's relationship with Veritech, a car wash chemical supplier with which CWM had an established distributorship that Ortiz subsequently appropriated as alleged in paragraph 49 above; (ii) Williams's prospective relationship with additional Washworld distributorship territories and accounts that were disrupted by Ortiz's affiliation with Specialty Car Wash Systems (a Washworld distributor) as alleged in paragraph 47 above; (iii) Williams's existing and prospective relationships with the customers and vendors of CWM in his capacity as CEO and Manager, including specifically those relationships subsequently diverted by Ortiz to ProElite and H&S Energy LLC as alleged in paragraphs 48 through 53 above; and (iv) Williams's prospective economic relationships through his separate business venture in the reclaim water systems industry.~~

~~87VC.    Bank, through its agent Peter Matheny acting within the course and scope of his employment, had actual knowledge of each of these economic relationships and prospective relationships. Matheny was specifically aware of Williams's role as Member, Manager, and Officer of CWM; aware of CWM's vendor and customer relationships through Bank's underwriting and due diligence files; aware of Williams's connections in the car wash and equipment finance industries; aware of Williams's separate business venture by reason of communications between Matheny and Williams concerning a separate business venture during the working~~

107

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

relationship; and aware of Williams's reputation as a finance and operations professional in the car wash industry.

87VD.    Bank, through Matheny and through Bank's other agents and employees, engaged in conduct designed to interfere with Williams's prospective economic relationships, including without limitation: (a) architecting the structurally irregular EFA transaction with foreseeable consequences of jeopardizing Williams's continued role at CWM; (b) requiring as a precondition to funding the restructure of CWM's Operating Agreement reducing Williams from a sixty percent (60%) majority Member to a ten percent (10%) minority Member; (c) on information and belief, communicating with parties in Williams's industry network, including parties in the petroleum and convenience-store retail vertical that constitutes Matheny's industry specialty at Bank, such as H&S Energy LLC and Conserve Fuels, Inc., in a manner that signaled adverse credit positions or jeopardized Williams's standing; and (d) failing to take any corrective action against Matheny notwithstanding the Bank's own internal documentation of structural irregularity (the Hernandez December 26 through 27, 2023 communications), thereby permitting Matheny to continue operating in the petroleum and convenience-store retail vertical where Williams maintained business relationships.

87VE.    Bank's interference was independently wrongful. The interfering conduct was independently wrongful within the meaning of Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal. 4th 376 (1995), and Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134 (2003), in that Bank's conduct included: (a) fraud and concealment as alleged in the Fourth Claim above; (b) negligent misrepresentation as alleged in the Fifth Claim above; (c)

10"

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

violations of California Business and Professions Code section 17200 as alleged in the Sixth Claim above; (d) breach of duties owed to Williams as a foreseeably affected third party in connection with the supervision of Bank's loan officers, as alleged in the First Claim above; and (e) on information and belief, violations of federal and state lending regulations and standards of care applicable to Bank as a regulated financial institution.

87VF.     Bank intended to disrupt or knew that disruption was substantially certain to occur. Bank, through Matheny, intended to disrupt Williams's prospective economic relationships, or alternatively, knew or should have known with substantial certainty that its conduct would disrupt those relationships, in that: (a) the Matheny-directed restructure of CWM's Operating Agreement was specifically designed to alter Williams's economic position at CWM; (b) the structural irregularity of the EFA created foreseeable risk of CWM business disruption and consequent harm to Williams's role; and (c) Bank's continued employment of Matheny in the petroleum and convenience-store retail vertical, after actual notice of structural irregularity, was substantially certain to continue affecting Williams's industry relationships.

87VG.     As a direct and proximate result of Bank's intentional interference, Williams has suffered actual disruption of his prospective economic relationships, including without limitation: (a) reduction of Williams's CWM Member interest from sixty percent (60%) to ten percent (10%), with corresponding reduction in his economic upside from CWM operations; (b) lost income from Williams's CEO and Manager role at CWM resulting from the disruption caused by the EFA's structurally irregular nature; (c) lost business opportunities at a separate business venture during

109

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

the pendency of this litigation; (d) reputational harm in the equipment finance, vendor, and customer communities; and (e) impaired ability to develop new banking and lending relationships. Williams is entitled to compensatory damages in an amount to be proven at trial, currently estimated in the range of $200,000 to $750,000, plus punitive damages under California Civil Code section 3294 based on Bank's willful, malicious, and oppressive conduct as alleged herein.

## CROSS-CLAIM

*(Cross-Claim by Andrew P. Williams Against Cross-Defendants Jose Rene Ortiz, Maria L. Ortiz, and The Ortiz Family Trust of 2024)*

*Incorporation by Reference*

Williams incorporates Jy reference paragraphs 1 through 73AG of this pleading as though fully set forth herein.

*EIGHTH CLAIM FOR RELIEF (Fraud Against Cross-Defendant Jose Rene Ortiz)*

87W. Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein. This claim is asserted in respect of Ortiz's misrepresentations and concealments to Williams personally, the consequences of which Williams has suffered in his individual capacity, and is pleaded in the alternative to the extent any portion of the claim is properly characterized as derivative or as estate property under the reservation set forth in Section VI above.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**87X. From in or about late 2023 and continuing thereafter, Ortiz made material misrepresentations and concealments to Williams regarding, without limitation: (a) Ortiz's purpose and intent in proposing and effectuating the January 2024 restructure of CWM's Operating Agreement, including Ortiz's representation that the restructure was required by the Bank for financing purposes and would not affect Williams's real economic interest in CWM; (b) Ortiz's intent regarding the disposition of the EFA proceeds and the application of those proceeds to CWM equipment acquisition; (c) Ortiz's intent regarding the AVW-to-Washworld vendor substitution; (d) Ortiz's intent regarding the transfer of the Subject Property (402 Addleman Avenue, West Covina, California) and the consideration, if any, exchanged for that transfer; (e) Ortiz's authority for and the legitimacy of post-petition extractions of value from CWM; and (f) such other misrepresentations and concealments as may be developed in discovery.**

**87X1. Ortiz's misrepresentations and concealments identified in paragraph 87X above include the following specific, particularized written representations, each made by Ortiz on a date certain through a documented signed instrument, as required by Federal Rule of Civil Procedure 9(b). WHO: Jose Rene Ortiz, in his capacity as the post-restructure 80% controlling Member of CWM. WHEN, WHAT, WHERE, and HOW for each representation: (a) On January 5, 2024, Ortiz executed the Authority and Incumbency Certificate with respect to EFA Agreement No. 2763169 as the 'duly appointed and qualified officer' of CWM authorized to execute the EFA on behalf of CWM (paragraph 33 above). By executing the Authority and Incumbency Certificate, Ortiz expressly represented in writing to Bank, and impliedly to Williams as a fellow CWM Member, that Ortiz's execution of the**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

EFA was a legitimate exercise of corporate authority for the benefit of CWM rather than a vehicle for the diversion of CWM loan proceeds to entities aligned with Ortiz. (b) On January 5, 2024, Ortiz executed the Authorization to Perform Verbal Verification with respect to Agreement No. 2763169 (paragraph 31 above), expressly representing in writing the truth of the information to be conveyed in the verbal verification process and Ortiz's authority to authorize same on behalf of CWM. (c) On January 5, 2024, Ortiz executed the Personal Guaranty with respect to Agreement No. 2763169 as 'sole guarantor' (paragraph 34 above), expressly representing in writing Ortiz's individual undertaking to guarantee CWM's obligations and impliedly representing Ortiz's intent to honor that guarantee in good faith. (d) On January 5, 2024, Ortiz executed the Commencement Agreement (paragraph 36 above), expressly representing in writing the commencement of CWM's performance obligations under the EFA. (e) On January 8, 2024, Ortiz executed the Customer Identification Program form (paragraph 32 above), providing his date of birth and identity information in support of the Bank's loan onboarding process, expressly representing the accuracy of the identification information provided. (f) Throughout late 2023 and January 2024, in connection with the orchestration of the January 2024 CWM Operating Agreement restructure (paragraphs 24 through 25 above), Ortiz orally and in writing communicated to Williams his purported intent to remain actively engaged in CWM's management and to exercise his post-restructure 80% controlling Member position for the benefit of CWM as a going concern. Ortiz's actual contemporaneous intent, as evidenced by his subsequent conduct alleged in paragraphs 46 through 57 above (including but not limited to his diversion of CWM customers and vendors to ProElite and

112

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

H&S Energy, and his October 2025 acceptance of employment with H&S Energy), was to use the post-restructure controlling Member position to extract value from CWM and to subsequently abandon active management of CWM in favor of self-dealing pursuits.

87Y. Each of the foregoing misrepresentations and concealments by Ortiz was false or misleading when made, or was made with reckless disregard for the truth. Ortiz at all relevant times knew his own intentions regarding CWM, the EFA, the vendor substitution, the Subject Property transfer, and the post-petition extractions. Ortiz's representations and concealments to Williams regarding these matters were materially inconsistent with his actual intentions and with the facts subsequently disclosed in this Action.

87Z. Ortiz intended that Williams rely on the foregoing misrepresentations and concealments in: (a) consenting to and executing the January 2024 Operating Agreement restructure; (b) consenting to the Bank's underwriting of the EFA premised on the restructured Operating Agreement; (c) signing the Authority and Incumbency Certificate; (d) refraining from independent investigation of the EFA terms and the disposition of EFA proceeds; (e) refraining from interfering with the Subject Property transfer; (f) refraining from challenging Ortiz's post-petition extractions and conduct of CWM business; and (g) otherwise cooperating with the EFA closing and post-closing administration of CWM on terms Ortiz had misrepresented to Williams.

87AA.    Williams justifiably relied on Ortiz's misrepresentations and concealments. Williams's reliance was reasonable in light of his role and rights as a Member of CWM, his reasonable trust in Ortiz as Managing

113

Member and majority owner, Ortiz's superior knowledge of CWM operations and CWM's relationship with the Bank, and the additional factors of Williams's substantial CEO and operational responsibilities set forth in paragraph 25E above.

87BB.    As a direct and proximate result of Ortiz's fraudulent misrepresentations and concealments, Williams has suffered personal damages in his individual capacity in an amount to be proven at trial, currently estimated in the range of $750,000 to $3,000,000, including without limitation: (a) defense costs and litigation expenses incurred in defense of this Action; (b) reputational harm in the equipment finance, car wash, and broader business communities; (c) personal stress and disruption to Williams's professional and personal life; (d) lost opportunity costs of time and resources devoted to defense of this Action and to remediation of Ortiz's conduct; (e) diminution in the value of Williams's Member interest in CWM, both as it existed at the time of the EFA (60% pre-restructure) and as restructured at Matheny's direction (10% post-restructure); (f) lost income from Williams's CEO and Manager role at CWM resulting from Ortiz's disloyalty and diversion as further alleged in Section III.F above; (g) lost business opportunities at Williams's other ventures (including a separate business venture) while this litigation remains pending; and (h) such further damages as may be proven at trial.

87CC.    Ortiz's conduct as alleged herein was willful, malicious, fraudulent, and undertaken with conscious disregard of Williams's rights within the meaning of California Civil Code section 3294, entitling Williams to an award of punitive and exemplary damages against Ortiz in an amount to be determined at trial.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**87DD.    Williams's fraud claim against Ortiz is asserted, in part, on conduct that continued after Williams's October 4, 2024 bankruptcy petition date and that produced injury accruing to Williams in his post-petition capacity. To the extent any portion of this claim is properly characterized as pre-petition or as estate property under 11 U.S.C. § 541, Williams asserts that portion in the alternative under Federal Rule of Civil Procedure 8(d), subject to such reservation, abandonment, or trustee action as the Chapter 7 estate may produce, and expressly reserves the right to amend or supplement this Track A filing upon completion of the bankruptcy abandonment procedure to assert the full pre-petition portion of this claim directly.**

*NINTH CLAIM FOR RELIEF [INTENTIONALLY OMITTED]~~(Civil Conspiracy Against Cross-Defendant Ortiz, Limited to Post-Petition Conduct)~~*

~~88.    Williams realleges and incorporates Jy reference all preceding paragraphs as though fully set forth herein.~~

~~89.    This claim is asserted in respect of post-petition conduct of Cross-Defendant Ortiz occurring after Williams's OctoJer 4, 2024 Jankruptcy petition date. Williams's individual standing to assert this claim arises from injury to Williams that itself accrued post-petition, specifically Jy reason of the post-petition concealment and maintenance of the SuJject Property Jeyond the reach of Williams as a creditor of Ortiz, and the other post-petition overt acts alleged in paragraph 91 Jelow. Any pre-petition conspiracy claim that may constitute property of the Jankruptcy estate is expressly reserved for future amendment under Federal Rule of Civil Procedure 15 upon aJandonment of estate property Jy the Chapter 7 Trustee under 11 U.S.C. § 554.~~

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

90. Ortiz, in concert with Third-Party Defendant Matheny and ROES 1 through 50, with knowledge of each other's conduct and with the intent to accomplish a common purpose, entered into an agreement and comJined together for the unlawful purpose of: (a) preserving the Matheny-architected structure of the CWM/EFA (including the use of the Washworld Chula Vista quote to size the loan and the refund of approximately $132,509.09 Jy Washworld to CWM) and concealing the documented Matheny-originated pattern of structurally irregular equipment financings (including the Zavaro Inc. and Yostina Inc./Petit transactions descriJed in Sections G.2 and G.3 aJove); (J) shifting Jlame and exposure for the alleged "Mistaken Paymentb from Ortiz and Matheny to Williams personally; (c) concealing Matheny's role in the structuring of the loan transaction from the Bank's internal compliance and audit personnel; (d) facilitating the continued transfer of CWM's customer relationships and Jusiness opportunities to H&S Energy LLC and other entities aligned with Ortiz; and (e) facilitating the placement and maintenance of the SuJject Property in the Trust Jeyond the reach of Ortiz's creditors, including Williams as a contingent indemnitee. In committing each of the foregoing acts, Ortiz acted for his own personal financial benefit and advantage, separate and apart from and outside the scope of any duty he owed as a member or manager of CWM and outside the scope of any agency, and Matheny acted for his own personal benefit and outside the scope of his agency for the Bank. Each alleged conspirator therefore acted in an individual capacity for individual advantage and is subject to conspiratorial liability notwithstanding any agency relationship.

91. In furtherance of the conspiracy, Ortiz committed the following overt acts during the post-petition period: (a) during 2025 and 2026, Ortiz diverted, and facilitated the diversion of, CWM's customer, vendor, and chemical-supply relationships and business opportunities to H&S Energy

116

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

LLC, to ProElite Car Wash Services, Inc. and ProElite Car Wash Services, LLC, and to Washworld directly, bypassing CWM; (b) in or about October 2025, Ortiz accepted employment, compensation, and benefits with H&S Energy LLC, a principal beneficiary of the diverted business, thereby personally profiting from the diversion; (c) Ortiz recruited additional former CWM personnel to H&S Energy LLC to effectuate the transfer of CWM's business; and (d) Ortiz placed and has continued to maintain the Subject Property in The Ortiz Family Trust of 2024, of which Ortiz and his spouse Maria L. Ortiz are co-trustees, concealing the asset from Ortiz's creditors, including Williams, and creating obstacles to creditor enforcement. Each of the foregoing overt acts constitutes conduct outside the scope of the California Civil Code section 47(b) litigation privilege as construed by Rusheen v. Cohen, 37 Cal. 4th 1048 (2006), and none of the overt acts pleaded in this claim consists of the filing or prosecution of any pleading in this Action.

92.    As a direct and proximate result of the conspiracy and the overt acts in furtherance of it, Williams has suffered injury in an amount to be proven at trial, currently estimated in the range of $150,000 to $500,000, including without limitation: (a) the costs and expenses of investigating and unwinding the concealment of the Subject Property, including the costs of pursuing the fraudulent-transfer remedies alleged in the Eleventh and Thirteenth Claims for Relief; (b) reputational injury in business and professional communities; (c) the loss of business opportunities at Williams's other ventures (including a separate business venture) while this litigation is pending; (d) the impairment of Williams's ability to collect, as a creditor of Ortiz, any judgment obtained in this Action, by reason of the placement of the Subject Property beyond the reach of Ortiz's creditors; (e) lost income from

117

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

Williams's CEO and Manager role at CWM resulting from the conspiracy's post-petition extractions; and (f) such further damages as may be proven at trial.

92A. The acts of Cross-Defendant Jose Rene Ortiz described in this Ninth Claim for Relief were undertaken willfully, intentionally, and with malice, and with the specific intent to injure Williams in his person and property by hindering, delaying, and defrauding Williams in his capacity as a contingent creditor of Ortiz and as a co-defendant exposed to joint and several liability for conduct that Ortiz himself executed.

92B. At all times relevant to the conduct alleged in this Ninth Claim for Relief, Cross-Defendant Jose Rene Ortiz served as the controlling and managing member of Car Wash Management LLC ("CWM"), holding eighty percent (80%) of the membership interests of CWM following the January 2024 restructure described above. As such, Ortiz owed fiduciary duties of loyalty, care, and good faith to CWM and to his fellow members, including Williams, under 6 Del. C. §§ 18-1101 and 18-1104, the Operating Agreement of CWM, and the common law of Delaware. The acts described in this Ninth Claim for Relief, including without limitation Ortiz's placement and maintenance of the Subject Property in the Trust beyond the reach of his creditors with the consequence of impairing the assets available to satisfy Ortiz's indemnification obligations to Williams as a co-defendant, and Ortiz's diversion of CWM's customer relationships, business opportunities, and revenue streams to H&S Energy LLC and other entities aligned with Ortiz, constitute defalcation and breach of fiduciary duty while acting in a fiduciary capacity within the meaning of 11 U.S.C. § 523(a)(4).

11"

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

***TENTH CLAIM FOR RELIEF*** *[INTENTIONALLY OMITTED]**(Statutory Right to Inspection, Books, and Records / Accounting Against Cross-Defendant Ortiz, q Del. C. § 18-305)*

93.    Williams realleges and incorporates Jy reference all preceding paragraphs as though fully set forth herein.

94.    Pursuant to 6 Del. C. § 1"-305 and the common law of fiduciary duty, Williams, as a memJer of CWM, has a statutory and equitaJle right to oJtain from CWM and its controlling memJer Ortiz access to and a true and complete accounting of: (a) all financial records of CWM; (J) all distriJutions, payments, withdrawals, salary, compensation, or other transfers of CWM's assets to or for the Jenefit of Ortiz, his family, or any entity in which he has an interest; (c) all transactions Jetween CWM and any related party; (d) the disposition of the loan proceeds from the EFA, including the $132,509.09 refunded Jy Washworld to CWM at Matheny's direction; and (e) all of CWM's customer transactions, Jusiness opportunities, and revenue streams during the period of Ortiz's management.

95.    Williams has made or, in the alternative, is hereJy making demand for such inspection, Jooks, records, and accounting. Ortiz has failed to provide complete or adequate response.

96.    Williams seeks an order of this Court compelling Ortiz to provide a true and complete accounting and inspection as set forth aJove.

***ELEVENTH CLAIM FOR RELIEF (Actual Fraudulent Transfer Against Cross-*Defendant**Defendants* *Jose Rene Ortiz**, Maria L. Ortiz, and The Ortiz Family Trust of 2024**, California Civil Code § 3439.04(a)(1))*

119

**97.** Williams realleges and incorporates Jy reference all preceding paragraphs as though fully set forth herein.

**98.** Williams is a creditor of Ortiz within the meaning of California Civil Code § 3439.01(c) Jy reason of, among other matters: (a) Williams's contingent right to indemnification, contriJution, and/or recovery against Ortiz arising from the Bank's allegations of joint and several liaJility and from Ortiz's role as the "0% controlling memJer who executed the EFA and Personal Guaranty; (J) Williams's direct claim against Ortiz for civil conspiracy and other claims asserted herein; and (c) Williams's contingent creditor status as to Ortiz's post-petition cross-claims against Williams (Dkts. "4, "9) and Ortiz's request for entry of default (Dkt. 12"). Williams's contingent creditor status Jecame concrete on or aJout March 17, 2026, when the Bank filed its First Amended Complaint re-adding Williams as a personal defendant alleging joint conduct with Ortiz.

**99.** On _une 13, 2024, Ortiz and Maria L. Ortiz, in their former capacity as "HusJand and Wife as _oint Tenants,b caused the SuJject Property (402 Addleman Avenue, West Covina, California, APN "725-00"-042) to Je transferred from their joint individual ownership into the Trust Jy Grant Deed executed that day, which was then held off-record for approximately twelve (12) weeks Jefore Jeing recorded on SeptemJer 4, 2024 as Document NumJer 20240594220 in the Official Records of Los Angeles County.

**100.** The transfer of the SuJject Property into the Trust was made with actual intent to hinder, delay, or defraud one or more creditors of Ortiz, including Williams, within the meaning of California Civil Code § 3439.04(a)(1).

**101.** The transfer Jears multiple Jadges of fraud enumerated in California Civil Code § 3439.04(J), as alleged in paragraph 66 aJove.

120

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

102. Williams is entitled to avoidance of the transfer to the extent necessary to satisfy Williams's claim, attachment of the SuJject Property, and such other and further relief as may Je appropriate under California Civil Code §§ 3439.07 and 3439.0".

TWELFTH CLAIM FOR RELIEF [INTENTIONALLY OMITTED]

THIRTEENTH CLAIM FOR RELIEF (Constructive Trust and E; uitable Lien on the Sub7ect Property Against Cross-Defendants Jose Rene Ortiz, Maria L. Ortiz, and The Ortiz Family Trust of 2024)

108. Williams realleges and incorporates Jy reference all preceding paragraphs as though fully set forth herein.

109. By reason of the fraudulent transfer of the SuJject Property into the Trust as alleged aJove, equity requires that a constructive trust Je imposed on the SuJject Property for the Jenefit of the creditors of Ortiz, including Williams to the extent of his claims.

109A. In the alternative and as an independent basis for constructive trust relief separate from the avoidance of the transfer of the Subject Property under the Eleventh and Twelfth Claims for Relief, Williams alleges on information and belief that Cross-Defendant Jose Rene Ortiz used, directed the use of, or caused to be used funds and other resources derived from his position as the controlling and managing member of Car Wash Management LLC, in breach of his fiduciary duties under 6 Del. C. §§ 18-1101 and 18-1104 and the Operating Agreement of CWM, to acquire, pay down, maintain, improve, or preserve the Subject Property at 402 Addleman Avenue, West Covina, California. To the extent that discovery establishes

121

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

such use and tracing, the Subject Property is impressed with a constructive trust in favor of CWM and its members, including Williams as a contingent claimant in respect of his indemnification rights against Ortiz, to the extent of the misappropriated CWM funds traced into the Subject Property. This alternative theory rests on the equitable principle that property acquired or preserved with funds that never rightfully belonged to the debtor in equity is held in trust for the rightful beneficiary, and is independent of any avoidance remedy under California Civil Code §§ 3439.04 and 3439.05. Williams expressly reserves the right to amend this Pleading under Federal Rule of Civil Procedure 15 upon completion of the discovery contemplated by Williams's Litigation Hold Notice categories addressing CWM banking records, vendor payment records, and Subject Property mortgage and improvement payment records, and upon retention of independent counsel for CWM as ordered by this Court at Docket Number 169.

110. Williams is entitled to imposition of a constructive trust over the SuЈject Property, an equitaЈle lien on the SuЈject Property in the amount of Williams's claims, and such other equitaЈle relief as may Јe appropriate.

111. Williams further intends to record a Notice of Pendency of Action (Lis Pendens) with respect to the SuЈject Property pursuant to California Code of Civil Procedure §§ 405 et seq., contemporaneously with or promptly after the filing of this pleading.

*THIRTEENTH CLAIM FOR RELIEF [INTENTIONALLY OMITTED]*

CROSS-CLAIM AGAINST WASHWORLD, INC.

*(Cross-Claim by Andrew P. Williams Against Co-Defendant Washworld, Inc.)*

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

~~Cross-Claimant Andrew P. Williams ("Williams"), appearing pro se, Jy way of Cross-Claim against Co-Defendant Washworld, Inc. ("Washworld") pursuant to Federal Rule of Civil Procedure 13(g), alleges as follows. Williams incorporates Jy reference paragraphs 1 through 73AG of this pleading as though fully set forth herein. This Cross-Claim against Washworld is asserted pursuant to the reservation set forth in Section VI aJove and is limited to Williams's individual post-petition claims; CWM-derivative or estate claims, if any, are reserved.~~

**FOURTEENTH CLAIM FOR RELIEF** _[INTENTIONALLY OMITTED]_
~~_(Intentional Interference with Prospective Economic Advantage Against Cross-Defendant Washworld, Inc.)_~~

~~**111A. Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein. This claim is asserted individually by Williams against Cross-Defendant Washworld, Inc., for conduct occurring after Williams's October 4, 2024 bankruptcy petition date that produced injury accruing to Williams in his individual, post-petition capacity, and is limited to Williams's individual injury; the injury to Car Wash Management, LLC itself is asserted derivatively on CWM's behalf in the companion derivative action and is not claimed here.** This claim arises from, and is predicated upon, Washworld's commercial conduct in diverting CWM's and Williams's customers, suppliers, and sales leads to Washworld directly and to ProElite, and in converting CWM's customers into Washworld's direct accounts, and does not arise from any statement, writing, or position taken in connection with this Action or any other protected petitioning activity. Any reference herein to the timing of Washworld's conduct relative to this Action, or to Washworld's stated reasons, is alleged solely~~

123

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

as evidence of Washworld's motive and intent and not as the wrongful act on which liability is based.

111B. At all relevant times Williams had existing and prospective economic relationships carrying the probable future economic benefit to Williams, both individually and through the value of his Member interest in CWM, including without limitation CWM's customer, vendor, and lead-generation relationships with third parties such as H&S Energy LLC and Conserve Fuels, and the stream of prospective customers generated through Washworld's website and through trade shows that CWM attended on Washworld's behalf. Williams had an economic interest in the continuation of those relationships and in their realization for Williams's individual benefit.

111C. Washworld knew of those relationships and of Williams's economic interest in them through its course of dealing with CWM, Williams, and Ortiz, and through the communications alleged herein, including Washworld's admission (Dkt. 174, paragraph 23) that it received the May 23, 2024 quotation transmitted by Matheny. Washworld thereafter engaged in intentional acts that were independently wrongful by some measure beyond the interference itself, and that Washworld knew were certain or substantially certain to disrupt those relationships, within the meaning of Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134 (2003), and Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal. 4th 376 (1995), including without limitation: (a) terminating CWM's distriJutor relationship, Jy letter effective on or aJout OctoJer 9, 2025, expressly "as a result of Car Wash Management, LLC's actions in connection with this lawsuit,b an act of retaliation against the assertion of legal rights that is independently wrongful;

124

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

(J) on or aJout NovemJer 6, 2025, conditioning any continuation of the distriJutor relationship on Williams's "resolutionb of matters with _ose Rene Ortiz through Ortiz's counsel, and directing Williams to make any such request to Ortiz's lawyer, thereJy using the threatened loss of the distriJutorship as coercive leverage to force Williams to capitulate to Ortiz and reflecting Washworld's coordination with and suJstantial assistance to Ortiz;

(c) converting CWM's customers H&S Energy LLC and Conserve Fuels into direct customers of Washworld, Jypassing CWM, when those customer relationships had Jeen acquired and paid for Jy CWM, thereJy capturing for Washworld the economic Jenefit of relationships in which Williams held an interest;

(d) redirecting the sales leads generated through Washworld's weJsite and through the trade shows that CWM attended to ProElite, an entity that Ortiz and Washworld estaJlished to displace CWM, and ceasing to route any sales leads to CWM, as Washworld's own representative confirmed on or aJout _uly 7, 2025; and (e) aiding and aJetting Ortiz's Jreaches of fiduciary duty as alleged in the Fifteenth Claim for Relief, which conduct independently renders the foregoing acts wrongful.

111D. Washworld's independently wrongful acts actually disrupted the foregoing relationships and were a substantial factor in causing Williams direct, individual injury and damages in his post-petition capacity, in an amount to be proven at trial, including without limitation the diminution in value of Williams's Member interest in CWM and the loss of Williams's individual prospective economic advantage, which injuries Williams asserts in his individual capacity and which are independent of and not duplicative of the injury to CWM (the latter being asserted derivatively and not claimed

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

here). Williams further seeks, where available, disgorgement of the benefits Washworld obtained from the diverted relationships.

111E. Williams's interference claim against Washworld is asserted on conduct occurring after Williams's October 4, 2024 bankruptcy petition date that produced injury accruing to Williams in his individual post-petition capacity. To the extent any portion of this claim is properly characterized as pre-petition or as estate property under 11 U.S.C. section 541, Williams asserts that portion in the alternative under Federal Rule of Civil Procedure 8(d), subject to the bankruptcy reservation set forth elsewhere in this Pleading.

**FIFTEENTH CLAIM FOR RELIEF** *[INTENTIONALLY OMITTED](Aiding and Abetting Breach of Fiduciary Duty Against Cross-Defendant Washworld, Inc.)*

111F. Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

111G. At all relevant times, Cross-Defendant Jose Rene Ortiz owed fiduciary duties of loyalty, good faith, and care to CWM and to its Members, including Williams, by virtue of Ortiz's status as Managing Member and majority owner of CWM under the Delaware Limited Liability Company Act, 6 Del. C. § 18-1101 et seq., and CWM's Operating Agreement. Such fiduciary duties of Ortiz are imposed by, without limitation, 6 Del. C. §§ 18-1101 (governing the waivable and non-waivable fiduciary duties of LLC members and managers), 18-1104 (default fiduciary obligations of managing members and managers of Delaware LLCs), and 18-305 (records and accounting obligations), as well as by the operative Operating Agreement of CWM which

126

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

preserves the default fiduciary obligations of Delaware LLC law to the extent not expressly waived. Williams, as a non-controlling Member of CWM, is a direct beneficiary of Ortiz's fiduciary duties of loyalty and good faith and has direct standing to assert claims for aiding and abetting breach of those duties consistent with the analysis in Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031 (Del. 2004).

111H. Ortiz breached his fiduciary duties to CWM and to Williams as more fully set forth in the Eighth, Ninth, Tenth, Eleventh, and Twelfth Claims for Relief above, including without limitation by: (a) engaging in self-dealing for personal benefit at the expense of CWM and its Members; (b) extracting value from CWM through unauthorized transactions and diversions; (c) effectuating the fraudulent transfer of the Subject Property to defeat creditors of CWM; (d) failing to provide statutorily required books, records, and accounting under 6 Del. C. § 18-305; and (e) conspiring with Matheny, the Bank, and Washworld to harm CWM and Williams.

111I. Washworld acquired, no later than 2025 and after the March 2024 funding period during which Washworld acted in good faith as alleged in paragraphs 19 and 41 above, actual knowledge of Ortiz's fiduciary duties to CWM and to Williams, and actual knowledge of Ortiz's breaches of those duties, within the meaning of Casey v. United States Bank Nat. Assn., 127 Cal. App. 4th 1138 (2005). Washworld's actual knowledge arose from, without limitation: (a) Washworld's direct participation in the AVW-to-Washworld vendor substitution in early 2024, through which Washworld learned the structure, parties, and irregularities of the EFA transaction; (b) Washworld's receipt of funding instructions from the Bank by email on March 12, 2024, and its receipt of the Bank's ACH payment on March 11, 2024; (c)

127

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

Washworld's receipt of the May 23, 2024 quotation transmitted by Matheny, a fact Washworld has admitted in its Answer (Dkt. 174, paragraph 23), placing Washworld in direct communication with the loan officer who architected the transaction and the January 2024 restructure of CWM's Operating Agreement that reduced Williams's Member interest from sixty percent (60%) to ten percent (10%); (d) Washworld's refund of loan proceeds to CWM, reflecting Washworld's contemporaneous knowledge that the Bank's funds had been applied to an order outside the scope of the EFA; and (e) Washworld's course of dealing with CWM and Ortiz over the EFA closing and the subsequent distributor relationship, including its dealings with H&S Energy in CWM's territory while Ortiz remained CWM's controlling Member.

111J. Washworld provided substantial assistance and encouragement to Ortiz in his breach of fiduciary duty by, without limitation: (a) cooperating in the AVW-to-Washworld vendor substitution that facilitated the diversion of approximately $132,509.09 of CWM's EFA proceeds to fund a third-party customer order; (b) retaining possession of equipment located at or removed from the West Covina facility after the purported termination of the distributor relationship; (c) terminating CWM's distributor relationship following the commencement of this lawsuit as further alleged in paragraph 55 above, thereby providing post-breach assistance to Ortiz in marginalizing CWM and Williams; and (d) such other acts as may be developed in discovery.

111K. Washworld's substantial assistance to Ortiz was a substantial factor in causing harm to Williams in his individual capacity, including without limitation the harms set forth in paragraph 111D above.

12"

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

111L. As a direct and proximate result of Washworld's aiding and abetting of Ortiz's breaches of fiduciary duty, Williams has suffered direct, individual damages in an amount to be proven at trial, including without limitation: (a) the differential value of Williams's pre-restructure sixty percent (60%) Member interest as against his post-restructure ten percent (10%) Member interest, to the extent Washworld's substantial assistance facilitated the consummation and entrenchment of the restructure-linked transaction; (b) the further diminution in value of Williams's residual Member interest proximately caused by the assisted diversion, asserted in Williams's individual capacity to the extent independent of and not duplicative of injury to CWM; (c) Williams's personal litigation exposure and defense costs arising from the Bank's claims; (d) Williams's lost income from his CEO and Manager role at CWM; and (e) reputational harm. These injuries are direct individual injuries to Williams, not derivative of CWM's injuries, within the meaning of Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031 (Del. 2004). To the extent any portion of this claim is properly characterized as pre-petition or as estate property under 11 U.S.C. section 541, Williams asserts that portion in the alternative under Federal Rule of Civil Procedure 8(d) and subject to the bankruptcy reservation set forth in paragraph 111E above.

### THIRD-PARTY COMPLAINT

*(Third-Party Complaint by Andrew P. Williams Against Third-Party Defendant Peter Matheny)*

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

Third-Party Plaintiff Andrew P. Williams ("Williamsb), appearing pro se, Jy way of Third-Party Complaint against Third-Party Defendant Peter Matheny ("Mathenyb) pursuant to Federal Rule of Civil Procedure 14, alleges as follows:

*Incorporation by Reference*

Williams incorporates Jy reference paragraphs 1 through 73AG of this pleading as though fully set forth herein.

SIXTEENTH CLAIM FOR RELIEF [INTENTIONALLY OMITTED]

*SEVENTEENTH CLAIM FOR RELIEF (Tortious Interference with Contractual Relations Against Third-Party Defendant Peter Matheny)*

117G. Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

117H. At all relevant times, Williams was a Member of CWM with rights and obligations defined by CWM's Operating Agreement, including without limitation Williams's right to a Member interest in CWM, Williams's right to participate in CWM management and decisions, Williams's right to receive distributions, and Williams's right to information regarding CWM operations. The Operating Agreement constitutes a valid and enforceable contract between Williams and his fellow Members under Delaware law and the laws of any other applicable jurisdiction.

117I. Matheny had actual knowledge of CWM's Operating Agreement, Williams's status as a Member of CWM, and Williams's contractual rights as a Member. Matheny's knowledge arose from his role as the originating loan officer for the EFA transaction, his review of CWM's Operating Agreement during Bank's underwriting, his direct communications with Williams in his

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

Member capacity, and his role in advising on the January 2024 restructure of the Operating Agreement.

117J. Matheny engaged in intentional acts designed and likely to disrupt Williams's rights under the Operating Agreement, including without limitation: (a) Matheny's March 11, 2024 text-message suggestion regarding the removal of Williams from CWM operations; (b) Matheny's structuring of the EFA transaction in a manner that facilitated Ortiz's extraction of value from CWM at Williams's expense; (c) Matheny's direction of the AVW-to-Washworld vendor substitution, which diverted approximately $132,509.09 of CWM's EFA proceeds away from CWM equipment acquisition and thereby diminished CWM's value and Williams's Member interest; (d) Matheny's facilitation of Ortiz's circumvention of CWM's normal management and oversight processes contemplated by the Operating Agreement; and (e) such other intentional acts as may be developed in discovery.

117K. Matheny's intentional acts caused actual disruption of Williams's rights under the Operating Agreement, including without limitation diminution in the value of Williams's Member interest, impairment of Williams's right to participate in CWM management, impairment of Williams's right to receive CWM distributions, and impairment of Williams's right to accurate information regarding CWM operations.

117L. As a direct and proximate result of Matheny's tortious interference with Williams's contractual rights, Williams has suffered personal damages in an amount to be proven at trial, currently estimated in the range of $200,000 to $750,000, including without limitation: (a) diminution in the value of Williams's Member interest in CWM (reduced from 60% majority to 10% minority at Matheny's direction); (b) lost distributions and

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

lost income from CWM that would have accrued to Williams but for the Operating Agreement restructure directed by Matheny; (c) defense costs and litigation expenses; (d) reputational harm in equipment finance, car wash, and broader business communities; (e) personal stress and disruption to Williams's professional and personal life; (f) lost business opportunities at Williams's other ventures; and (g) such further damages as may be proven at trial. Matheny's conduct was undertaken with conscious disregard of Williams's rights, entitling Williams to punitive and exemplary damages under California Civil Code section 3294 in an amount sufficient to punish and deter, in a range proportionate to the compensatory damages awarded.

*EIGHTEENTH CLAIM FOR RELIEF (Aiding and Abetting Breach of Fiduciary Duty Against Third-Party Defendant Peter Matheny)*

117M.    Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

117N. At all relevant times, Cross-Defendant Jose Rene Ortiz owed fiduciary duties of loyalty, good faith, and care to CWM and to its Members, including Williams, as more fully set forth in paragraph 111G above. Ortiz breached those fiduciary duties as more fully set forth in paragraph 111H above. Such fiduciary duties of Ortiz are imposed by, without limitation, 6 Del. C. §§ 18-1101 (governing the waivable and non-waivable fiduciary duties of LLC members and managers), 18-1104 (default fiduciary obligations of managing members and managers of Delaware LLCs), and 18-305 (records and accounting obligations), as well as by the operative Operating Agreement of CWM which preserves the default fiduciary obligations of Delaware LLC law to the extent not expressly waived. Williams, has direct standing as

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

alleged in paragraph 111G above and the Statement of Standing and Direct Injury set forth at the beginning of this Counterclaim.

117O. Matheny had actual knowledge of Ortiz's fiduciary duties to CWM and to Williams, and actual knowledge of Ortiz's breaches of those duties. Matheny's knowledge arose from, without limitation: (a) Matheny's role as the originating loan officer for the EFA transaction and his attendant due diligence into CWM's ownership and management structure; (b) Matheny's review of CWM's Operating Agreement during underwriting; (c) Matheny's direct communications with Williams and Ortiz throughout the origination process, including communications in which Matheny expressly contemplated Williams's removal from CWM operations; (d) Matheny's knowledge that Bank's underwriting of the EFA was premised on the January 2024 restructure of CWM's Operating Agreement; and (e) Matheny's pattern of similarly structured originations with similar customer-vendor affiliations (Yostina Inc./Petit Auto Wash in 2021 and Zavaro Inc. in 2023).

117P. Matheny provided substantial assistance and encouragement to Ortiz in his breach of fiduciary duty by, without limitation: (a) structuring the EFA transaction in a manner that facilitated Ortiz's extraction of value from CWM; (b) directing the AVW-to-Washworld vendor substitution that resulted in the diversion of approximately $132,509.09 of CWM's EFA proceeds away from CWM equipment acquisition; (c) inviting and facilitating Ortiz's circumvention of CWM's normal management and oversight processes, including without limitation through Matheny's March 11, 2024 text-message suggestion regarding Williams's removal from CWM operations; (d) representing to Williams that the AIC and the bundled January 2024 Operating Agreement restructure were routine when in fact

133

they facilitated Ortiz's plans for extraction; and (e) such other acts as may be developed in discovery.

117Q. Matheny's substantial assistance and encouragement to Ortiz were a substantial factor in causing harm to Williams in his individual capacity, including without limitation the harms set forth in paragraph 111D above.

117R. Williams has suffered personal damages in an amount to be proven at trial but not less than $100,000. To the extent any portion of this claim is properly characterized as pre-petition or as estate property under 11 U.S.C. § 541, Williams asserts that portion in the alternative under Federal Rule of Civil Procedure 8(d) and subject to the bankruptcy reservation set forth in paragraph 111E above.

*NINETEENTH CLAIM FOR RELIEF (E; uitable Indemnity and, in the Alternative, Contribution Against Cross-Defendant Jose Rene Ortiz and Third-Party Defendant Peter Matheny)*

118. Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein. This claim is asserted in respect of Williams's right to equitable indemnity and, in the alternative, contribution from Cross-Defendant Jose Rene Ortiz and Third-Party Defendant Peter Matheny, in the event Williams is held liable to the Bank on any claim asserted against Williams in the First Amended Complaint, including without limitation the Fourth Cause of Action for Fraud/Concealment.

119. The Bank's claims against Williams in the First Amended Complaint, including but not limited to the Fourth Cause of Action for Fraud/Concealment, are premised on conduct that, if such conduct is found to

134

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

have occurred and to have given rise to liability, was undertaken in material part by Matheny in his capacity as loan officer of Ascentium Capital, and by Ortiz in his capacity as Member and majority owner of CWM. The Bank's allegations against Williams are based principally on Williams's role as Certifier on the Authority and Incumbency Certificate and on the Bank's theories of agency, joint participation, or vicarious responsibility for the EFA-related conduct.

120. Under California law, including American Motorcycle Association v. Superior Court, 20 Cal. 3d 578 (1978), and successor authorities, a defendant held liable for damages caused in material part by the conduct of others is entitled to comparative equitable indemnity from those whose conduct gave rise to the liability, in proportion to their respective fault. Where the underlying liability sounds in intentional tort, comparative equitable indemnity remains available as between concurrent intentional tortfeasors, in proportion to their comparative fault. Baird v. Jones, 21 Cal. App. 4th 684 (1993). The Bank's Fourth Cause of Action alleges intentional conduct by Williams, Ortiz, and others jointly; to the extent Williams is found liable on that or any other claim, Ortiz and Matheny are alleged to be concurrent participants in the same conduct whose comparative fault vastly exceeds any fault attributable to Williams.

121. To the extent Williams is held liable to the Bank on any cause of action asserted in the First Amended Complaint, Williams is entitled to comparative equitable indemnity from Ortiz and Matheny, individually and jointly, in proportion to each of their respective contributions to the conduct underlying such liability, as alleged with specificity in paragraphs 121A and 121B below and in Section III above.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

121A. (a) Matheny: architecting the structurally irregular EFA transaction as alleged in Sections III.D and III.G above; directing the vendor substitution from AVW to Washworld; instructing the bypass of internal Bank controls including the upload portal; transmitting the May 23, 2024 Washworld quote post-funding; restructuring CWM's Operating Agreement as a precondition to funding; and other origination misconduct alleged in this pleading and in Section III.K alleging the broader pattern of Matheny's structurally irregular originations.

121B. (b) Ortiz: executing the EFA, Personal Guaranty, Authorization to Perform Verbal Verification, Authority and Incumbency Certificate, Delivery and Acceptance Certificate, and Commencement Agreement in his capacity as Member of CWM as alleged in paragraphs 30 through 36 above; serving as the verbal-verification respondent at funding; and undertaking the post-funding conduct, including the diversion of CWM's business and the transfer of the Subject Property, alleged in this pleading.

122. Williams's right to equitable indemnity is asserted as a Cross-Claim against Ortiz and as a Third-Party Claim against Matheny under Federal Rule of Civil Procedure 14(a). In the alternative, and only to the extent any liability of Williams is determined to rest on a theory not constituting an intentional injury within the meaning of California Code of Civil Procedure section 875(d), Williams asserts the right to contribution under California Code of Civil Procedure section 875 et seq. and applicable common law.

123. Williams seeks an order of this Court that Ortiz and Matheny, individually and jointly, are liable to Williams in comparative equitable indemnity (and, in the alternative and to the extent permitted by Code of Civil

136

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

Procedure section 875(d), contribution) for all or part of any judgment that may be entered against Williams on the Bank's claims in the First Amended Complaint, in proportion to their respective fault, together with declaratory relief preserving such rights and such further orders as may be necessary or appropriate.

**ADDITIONAL CLAIMS FOR RELIEF**

**Additional Counterclaim Against Counter-Defendant Regions Bank dba Ascentium Capital**

**TWENTIETH CLAIM FOR RELIEF (Negligent Hiring of Loan Officer Matheny Against Counter-Defendant Regions Bank)**

124.    Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

125.    Regions Bank owed a duty of reasonable care in the hiring and selection of loan officers, including Matheny, whose duties involved the structuring and origination of equipment finance transactions affecting customers, vendors, guarantors, and connected non-borrower persons such as Williams. That duty extended to all persons whose interests were foreseeably affected by the conduct of loan officers acting in the course of Bank business.

126.    Regions Bank breached its duty of reasonable care in hiring or initially selecting Matheny by, among other things: (a) failing to conduct adequate pre-hire due diligence into Matheny's prior loan origination conduct; (b) failing to identify or to act upon any pre-existing indicia of structurally irregular origination conduct by Matheny that reasonable pre-hire due diligence would have disclosed; and (c) entrusting Matheny with origination authority in the petroleum, convenience-store, and car wash

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

industry vertical notwithstanding the foreseeable risk of conflicts and structurally irregular origination conduct in that vertical.

127. Bank's negligent hiring of Matheny was a substantial factor in causing the harm to Williams alleged herein. But for Bank's failure to identify and remedy the indicia of Matheny's structurally irregular origination practices before assigning Matheny to the CWM/EFA transaction, Matheny would not have been in a position to architect the structurally non-standard EFA, to direct the bundled-into-EFA restructure of CWM's Operating Agreement, to instruct Williams to bypass the Bank's standard internal document upload portal, or to direct the AVW-to-Washworld vendor substitution, each as alleged above.

128. As a direct and proximate result of Bank's negligent hiring, Williams has suffered damages in his individual capacity in an amount to be proven at trial, currently estimated in the range of Two Hundred Thousand Dollars ($200,000) to Seven Hundred Fifty Thousand Dollars ($750,000), including the categories of damages set forth in paragraph 78 above.

128A. Bank's negligent hiring claim is asserted, in part, on conduct that produced injury accruing to Williams in his post-petition capacity. To the extent any portion of this claim is properly characterized as pre-petition or as estate property under 11 U.S.C. section 541, Williams reserves all rights consistent with Section VI above.

TWENTY-FIRST CLAIM FOR RELIEF (Negligent Retention of Loan Officer Matheny Against Counter-Defendant Regions Bank)

129. Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

130. Regions Bank owed a continuing duty of reasonable care in the retention of loan officers, including Matheny, with respect to whom Bank acquired actual or constructive knowledge of structurally irregular origination conduct after the date of hire. That duty included the duty to investigate, to discipline, to retrain, or to terminate as the facts warranted.

131. Regions Bank breached its duty of reasonable retention of Matheny by, among other things: (a) failing to terminate or to materially restrict Matheny's origination authority notwithstanding the structural irregularities documented in the 2021 Yostina Inc./Petit Auto Wash transaction and the 2023 Zavaro Inc. transaction (Loan No. 2729070, duplicate funding of $130,107.47), each described in paragraphs 62A through 62K above; (b) failing to respond meaningfully to credit officer Lara C. Hernandez's December 27, 2023 written 'we cannot finance' determination quoted at paragraph 25B above; and (c) continuing to compensate Matheny on origination volume notwithstanding the structural irregularity of the loans Matheny originated.

132. Bank's negligent retention of Matheny was a substantial factor in causing the harm to Williams alleged herein. Had Bank terminated Matheny following Yostina, Zavaro, or upon Hernandez's December 27, 2023 written determination, the CWM/EFA transaction either would not have been originated as structured or would have been originated under different supervisory controls, and the harm to Williams alleged herein would not have occurred.

133. As a direct and proximate result of Bank's negligent retention, Williams has suffered damages in his individual capacity in an amount to be proven at trial, currently estimated in the range of Two Hundred Thousand

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

Dollars ($200,000) to Seven Hundred Fifty Thousand Dollars ($750,000), including the categories of damages set forth in paragraph 78 above.

133A. Bank's conduct in retaining Matheny notwithstanding actual knowledge of the Yostina pattern, the Zavaro pattern, and the Hernandez 'we cannot finance' determination was undertaken with conscious disregard of the rights of foreseeable harmed persons such as Williams, within the meaning of California Civil Code section 3294(c)(2). Williams is entitled to punitive damages against Counter-Defendant Regions Bank in an amount sufficient to punish such conscious disregard and to deter similar conduct in the future.

TWENTY-SECOND CLAIM FOR RELIEF (Aiding and Abetting Matheny's Individual Fraud Against Counter-Defendant Regions Bank)

134. Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

135. Peter Matheny committed an underlying fraud against Williams individually, as alleged in detail in the Twenty-Eighth Claim for Relief below and in paragraphs 25A through 25E, 37A through 37E, 62A through 62K, and 87C1 above. Matheny's fraud included material misrepresentations and concealments to Williams regarding (i) Bank's purported resolution of credit officer Hernandez's structural concerns; (ii) Williams's purported limited liability; (iii) Bank's purported approval of the transaction structure; and (iv) the AVW-to-Washworld vendor substitution.

136. Regions Bank had actual knowledge of Matheny's fraud against Williams. Bank's knowledge arose, without limitation, from: (a) Bank's contemporaneous receipt and review of the December 26-27, 2023 Hernandez-Matheny email chain quoted at paragraphs 25A through 25C above, copies of which were transmitted on Bank email accounts among Bank credit personnel

140

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

including Matheny, Hernandez, and Tony Zieglar; (b) Bank's institutional knowledge of the Yostina (2021) and Zavaro (2023) pattern transactions alleged in paragraphs 62A through 62K above; and (c) Bank's documented receipt of Matheny's directives to Williams to bypass Bank's standard internal document upload portal.

137.   Regions Bank provided substantial assistance and encouragement to Matheny's fraud against Williams by, without limitation: (a) funding the EFA notwithstanding Hernandez's December 27, 2023 written 'we cannot finance' determination; (b) executing the disbursement of $309,054.80 to Washworld in March 2024 on Matheny's representations notwithstanding the structural irregularities documented in the Bank's own files; (c) continuing to employ Matheny in the petroleum and convenience-store industry vertical with continued origination authority following discovery of the Yostina and Zavaro pattern transactions; and (d) accepting and processing the documentary record of the EFA transaction as Matheny structured it.

138. Bank's substantial assistance to Matheny's fraud was a substantial factor in causing harm to Williams in his individual capacity, including without limitation the categories of damages set forth in paragraph 87G above.

139.   As a direct and proximate result of Bank's aiding and abetting of Matheny's fraud, Williams has suffered damages in his individual capacity in an amount to be proven at trial, currently estimated in the range of Two Hundred Fifty Thousand Dollars ($250,000) to One Million Dollars ($1,000,000), exclusive of punitive damages. Bank's conduct in aiding and abetting Matheny's fraud was undertaken with knowledge of the underlying fraud and with the intent to facilitate that fraud, and constitutes malice,

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

oppression, or fraud within the meaning of California Civil Code section 3294, entitling Williams to an award of punitive and exemplary damages.

**TWENTY-THIRD CLAIM FOR RELIEF (Fraud by Concealment Against Counter-Defendant Regions Bank)**

140. Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein. This claim is asserted in respect of Bank's concealment of material facts from Williams under California Civil Code section 1710(3) and the common law of California, in the alternative to and concurrent with Williams's Fourth Claim for Relief above for affirmative misrepresentation.

141. Regions Bank, through its agent Peter Matheny acting within the course and scope of his employment, owed Williams a duty to disclose material facts known to Bank that Williams could not reasonably have discovered through ordinary diligence. That duty arose from the multi-party transactional setting in which Williams was a foreseeably affected non-borrower whose participation in the transaction (through the Authority and Incumbency Certificate signed as Certifier and through CWM's $34,339.42 first-payment wire) was material to Bank's funding decision, and from the special relationship between Bank's named loan officer and Williams as a connected non-borrower in active communication with the loan officer concerning the transaction.

142. Bank concealed from Williams the following material facts that Bank knew at all relevant times and that Williams could not reasonably have discovered through ordinary diligence: (a) the substantive content of credit officer Lara C. Hernandez's December 27, 2023 6:58 a.m. Central time written determination that 'We cannot finance a transaction where customer

142

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

and vendor do not have an arm's length distance,' which determination Matheny did not disclose to Williams as a substantive credit objection but rather framed as an operational paperwork item requiring only Operating Agreements; (b) the existence and content of Bank's prior structurally irregular originations by Matheny in the 2021 Yostina Inc./Petit Auto Wash transaction and the 2023 Zavaro Inc. transaction (Loan No. 2729070, duplicate funding of $130,107.47), each described in paragraphs 62A through 62K above; and (c) Bank's institutional position prohibiting the financing of arm's-length-deficient transactions, as evidenced by Hernandez's written determination, which institutional position was reversed only through Matheny's circumvention of the documented credit objection without Williams's knowledge.

143. Bank intended that Williams act in reliance on the concealment by: (a) executing the Authority and Incumbency Certificate as Certifier; (b) causing CWM to wire the $34,339.42 first payment to Bank as a precondition of funding; and (c) refraining from withdrawing from the transaction during the pre-funding period when withdrawal was possible.

144. Williams justifiably relied on the concealment by Bank, as set forth in paragraph 87F above, including without limitation Williams's reasonable reliance on Matheny as the Bank's named loan officer with stated industry experience.

145. As a direct and proximate result of Bank's concealment, Williams has suffered damages in his individual capacity in an amount to be proven at trial, currently estimated in the range of Two Hundred Fifty Thousand Dollars ($250,000) to One Million Dollars ($1,000,000), exclusive of punitive damages. Bank's conduct in concealing material facts from Williams was

143

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

undertaken with malice, oppression, or fraud within the meaning of California Civil Code section 3294, entitling Williams to an award of punitive and exemplary damages.

TWENTY-FOURTH CLAIM FOR RELIEF [INTENTIONALLY OMITTED]

**TWENTY-FIFTH CLAIM FOR RELIEF (Breach of Fiduciary Duty - Direct Individual Injury - Against Cross-Defendant Jose Rene Ortiz)**

151. Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

152. At all relevant times, Ortiz owed fiduciary duties of loyalty, good faith, and care directly to Williams in Williams's capacity as a Member of CWM, under 6 Del. C. sections 18-1101 (governing waivable and non-waivable fiduciary duties of LLC members and managers), 18-1104 (default fiduciary obligations of managing members and managers of Delaware LLCs), and 18-305 (records and accounting obligations), as well as under the operative Operating Agreement of CWM which preserves the default fiduciary obligations of Delaware LLC law to the extent not expressly waived.

153. Ortiz breached his direct fiduciary duties to Williams by, without limitation: (a) orchestrating the bundled-into-EFA restructure of CWM's Operating Agreement that reduced Williams's Member interest from sixty percent (60%) to ten percent (10%) without disclosure of Ortiz's contemporaneous intent to subsequently divert CWM's business as alleged in paragraphs 46 through 57 above; (b) diverting CWM customer and vendor relationships to entities aligned with Ortiz including ProElite and H&S Energy, thereby impairing the value of Williams's residual Member interest; (c) accepting employment with H&S Energy in or about October 2025 while purporting to remain the controlling Member of CWM, in conflict with his

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

fiduciary duties to fellow Member Williams; and (d) failing to provide Williams with the inspection, books, records, and accounting required by 6 Del. C. section 18-305. (e) causing CWM to pay W-2 compensation, draws, and profit distributions to Ortiz and to Travis Beaudoin while withholding from Williams the compensation that had been discussed and agreed upon among the members on the same basis as Ortiz's and Beaudoin's compensation, such that Williams, who subordinated his own agreed compensation to preserve CWM's solvency, received nothing while Ortiz and Beaudoin enriched themselves and neglected the business, which unequal treatment of a fellow Member and diversion of compensation to the controlling Member constitute self-dealing and a breach of the duties of loyalty and good faith.

154. Williams's injuries from Ortiz's breaches of direct fiduciary duty are direct individual injuries to Williams, not derivative of CWM's injuries, within the meaning of Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031 (Del. 2004), including without limitation: (a) the differential value of Williams's pre-restructure 60% Member interest reduced to 10% post-restructure; (b) Williams's lost income from his CEO and Manager role at CWM as impaired by Ortiz's diversion of CWM business; (c) Williams's lost prospective economic opportunities at a separate business venture that Williams could not pursue while addressing Ortiz's diversion of CWM business; and (d) the personal litigation exposure Williams has incurred from Bank's claims that would not have been pursued but for Ortiz's structural orchestration of the EFA.

155. As a direct and proximate result of Ortiz's breaches of direct fiduciary duty, Williams has suffered damages in his individual capacity in an

145

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

amount to be proven at trial, currently estimated in the range of Seven Hundred Fifty Thousand Dollars ($750,000) to One Million Five Hundred Thousand Dollars ($1,500,000), exclusive of punitive damages. Ortiz's conduct was undertaken with malice, oppression, or fraud within the meaning of California Civil Code section 3294, entitling Williams to an award of punitive and exemplary damages. Williams's recoverable damages include the compensation Williams would have received under the members' agreed compensation arrangement, measured by reference to the W-2 compensation, draws, and distributions Ortiz and Beaudoin in fact received, in an amount to be proven (currently estimated at not less than $750,000 to $1,500,000), together with prejudgment interest, which item is the same as and not in addition to Williams's lost compensation alleged elsewhere.

155A. Williams's direct fiduciary duty claim is asserted, in part, on conduct that produced injury accruing to Williams in his post-petition capacity. To the extent any portion of this claim is properly characterized as pre-petition or as estate property under 11 U.S.C. section 541, Williams reserves all rights consistent with Section VI above.

TWENTY-SIXTH CLAIM FOR RELIEF (Conversion of Member Interest Against Cross-Defendant Jose Rene Ortiz)

156. Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

157. At the time of CWM's formation on or about April 16, 2022, Williams held a sixty percent (60%) Member interest in CWM, which Member interest constituted personal property of Williams within the meaning of 6 Del. C. section 18-701 and the common law of conversion. Williams's right of ownership in the Member interest included the right to

146

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

economic distributions, the right to participate in management consistent with the Operating Agreement, the right to maintain the proportional voting power of his interest, and the right not to be involuntarily divested of the interest without due process.

158. Ortiz substantially interfered with Williams's ownership of the 60% Member interest by orchestrating the bundled-into-EFA restructure of CWM's Operating Agreement in January 2024 as alleged in paragraphs 17, 21 through 25, and 92B above, the effect of which was to involuntarily divest Williams of fifty percentage points (50%) of his Member equity, transferring that economic value to Ortiz. The restructure was procured, on information and belief, through Ortiz's misrepresentations and concealments of his contemporaneous intent to divert CWM's business as alleged in the Eighth Claim for Relief above.

158A. The foregoing claim for Conversion of Member Interest is asserted as a direct individual claim by Williams under Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031 (Del. 2004), as the harm pled is harm to Williams personally (the involuntary reduction of his Member interest from sixty percent (60%) to ten percent (10%)) and the recovery sought runs to Williams personally (restoration of the value differential of his Member interest). Williams expressly distinguishes the holding in Brookfield Asset Management, Inc. v. Rosson, 261 A.3d 1251 (Del. 2021), as Brookfield addressed corporate stockholder dilution effected through a dilutive equity issuance to a controller in exchange for inadequate consideration, where the harm was first to the corporation in the form of an under-valued issuance. The factual predicate here is materially different: (a) CWM is a Delaware limited liability company governed by 6 Del. C. sections 18-1101 and 18-1104,

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

which permit broader contractual definition of Member rights than the corporate stockholder framework addressed in Brookfield; (b) no new equity was issued to a controller; the alleged Conversion was effected through an Operating Agreement amendment that reallocated existing Member percentages without consideration to Williams; and (c) the Operating Agreement amendment was procured by misrepresentation and concealment as alleged in the Eighth Claim for Relief above, such that the harm is direct to Williams individually (his contractual Member rights were converted by fraud) rather than derivative of any harm to CWM as an entity. To the extent this Court determines that this Claim, in whole or in part, is properly characterized as derivative of CWM, Williams pleads the Claim in the alternative under Federal Rule of Civil Procedure 8(d)(2) and reserves all rights consistent with Section VI above.

159. Williams did not consent to the divestment of his Member interest in the form effected by the January 2024 restructure. Any consent that Williams may have given to the restructure was procured by Ortiz's misrepresentations and concealments and is voidable.

160. As a direct and proximate result of Ortiz's conversion of Williams's Member interest, Williams has suffered damages in his individual capacity in an amount to be proven at trial, currently estimated in the range of Three Million Nine Hundred Thousand Dollars ($3,900,000) to Seven Million Eight Hundred Thousand Dollars ($7,800,000), representing the value of the fifty percentage point (50%) reduction in Williams's Member interest valued at the time of the restructure and the differential income and distributions Williams would have received from the higher pre-restructure interest. Ortiz's conduct in converting Williams's Member interest was

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

undertaken with malice within the meaning of California Civil Code section 3294, entitling Williams to an award of punitive and exemplary damages.

TWENTY-SEVENTH CLAIM FOR RELIEF (Unjust Enrichment Against Cross-Defendant Jose Rene Ortiz)

161. Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein. This claim is asserted as an alternative theory of recovery to the Eighth, Ninth, Twenty-Fifth, and Twenty-Sixth Claims for Relief.

162. Ortiz has received and retained substantial benefits at Williams's expense, including without limitation: (a) the value of the fifty percentage points (50%) of CWM Member equity transferred from Williams to Ortiz in the January 2024 restructure; (b) the income, profits distributions, salary, equity interests, commissions, and other compensation that Ortiz received from H&S Energy LLC and other entities to which Ortiz diverted CWM's business; (c) the personal residence value preserved by Ortiz's transfer of the Subject Property to the Trust as alleged in the Eleventh through Thirteenth Claims for Relief; and (d) the operational and reputational benefits to Ortiz of having appropriated CWM's customer, vendor, and distributorship relationships. In addition, Ortiz was unjustly enriched by compensation, draws, and distributions he caused CWM to pay to himself, and to Travis Beaudoin, that should, consistent with the members' agreed compensation arrangement, have been paid in part to Williams or retained by CWM; it would be inequitable for Ortiz to retain the benefit of compensation extracted while Williams's agreed compensation went unpaid and the business was neglected.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

163. Ortiz's retention of these benefits is inequitable in light of the misrepresentations, concealments, breaches of fiduciary duty, conversion of Member interest, and pattern of disloyalty alleged elsewhere in this Pleading. The benefits were obtained through conduct violative of Ortiz's legal and equitable obligations to Williams.

164. Williams is entitled to restitution from Ortiz of the value of the benefits unjustly retained, in an amount to be proven at trial, currently estimated in the range of Three Hundred Thousand Dollars ($300,000) to One Million Dollars ($1,000,000), together with such constructive trust, equitable lien, accounting, and other equitable relief as the Court deems just and proper.

**Additional Third-Party Complaint Against Third-Party Defendant Peter Matheny**

**TWENTY-EIGHTH CLAIM FOR RELIEF (Direct Fraud Against Third-Party Defendant Peter Matheny)**

165. Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein. This claim is asserted against Matheny in his individual capacity for conduct undertaken outside the scope of any legitimate authority granted to him by the Bank, as alleged in paragraph 61 above, in the alternative to and concurrent with Williams's Fourth Claim for Relief above seeking recovery from Bank for Matheny's conduct as Bank's agent.

166. Matheny personally made the material misrepresentations to Williams identified in paragraphs 87B through 87C1 above, including each of the specific Matheny communications dated December 27, 2023 at 10:05 a.m. Central time, January 5, 2024, the early January 2024 approval email, and

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

March 5, 2024 at 1:01 p.m. Pacific time. Each such representation was made by Matheny personally with knowledge that it was false or with reckless disregard for the truth, as alleged in paragraph 87D above and amplified in this claim.

167. Matheny acted with the intent that Williams rely on the misrepresentations, and Williams justifiably relied on the misrepresentations as alleged in paragraph 87F above. Matheny derived personal benefit from Williams's reliance, including without limitation origination commissions, performance bonuses, continued employment in Bank's petroleum and convenience-store industry vertical, and the operational benefits associated with closing the CWM/EFA transaction notwithstanding the structural irregularities documented in Bank's own credit file.

168.  As a direct and proximate result of Matheny's individual fraud, Williams has suffered damages in his individual capacity in an amount to be proven at trial, currently estimated in the range of Two Hundred Fifty Thousand Dollars ($250,000) to Seven Hundred Fifty Thousand Dollars ($750,000), exclusive of punitive damages. Matheny's conduct was undertaken with malice, oppression, or fraud within the meaning of California Civil Code section 3294, entitling Williams to an award of punitive and exemplary damages against Matheny individually in an amount sufficient to punish Matheny's conduct and to deter similar conduct in the future.

168A. Williams's individual fraud claim against Matheny is asserted on conduct that produced injury accruing to Williams in his post-petition capacity. To the extent any portion of this claim is properly characterized as pre-petition or as estate property under 11 U.S.C. section 541, Williams reserves all rights consistent with Section VI above.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**TWENTY-NINTH CLAIM FOR RELIEF (Fraud by Concealment Against Third-Party Defendant Peter Matheny)**

169. Williams realleges and incorporates by reference all preceding paragraphs as though fully set forth herein. This claim is asserted under California Civil Code section 1710(3) and the common law of California, in the alternative to and concurrent with Williams's Twenty-Eighth Claim for Relief above.

170. Matheny, as Bank's named loan officer with industry experience in petroleum and convenience-store finance and as the principal Bank counterparty in communication with Williams during the EFA transaction, owed Williams a duty to disclose material facts known to Matheny that Williams could not reasonably have discovered through ordinary diligence. That duty arose from Matheny's exclusive control of the communications between Bank's underwriting team and Williams as the only non-Member-of-CWM signatory among the affected non-borrower persons.

171. Matheny personally concealed from Williams the following material facts that Matheny knew at all relevant times: (a) the substantive credit-objection content of Hernandez's December 27, 2023 6:58 a.m. Central time written 'we cannot finance' determination quoted at paragraph 25B above, which Matheny did not disclose to Williams in his December 27, 2023 10:05 a.m. Central time forward of the email chain but instead framed as an operational paperwork item; (b) the existence and content of Matheny's prior structurally irregular originations in the 2021 Yostina Inc./Petit Auto Wash transaction and the 2023 Zavaro Inc. transaction (Loan No. 2729070, duplicate funding of $130,107.47), each described in paragraphs 62A through 62K above; and (c) Matheny's industry vertical alignment with retail

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

**petroleum, convenience-store, and fuel wholesalers in connection with the Conserve Fuels Chula Vista Project as alleged in paragraphs 42B through 42E above.**

**172. Matheny intended that Williams act in reliance on the concealment, and Williams justifiably relied on the concealment as alleged in paragraph 87F above. As a direct and proximate result of Matheny's concealment, Williams has suffered damages in his individual capacity in an amount to be proven at trial, currently estimated in the range of Two Hundred Fifty Thousand Dollars ($250,000) to One Million Dollars ($1,000,000), exclusive of punitive damages. Matheny's conduct in concealing material facts from Williams was undertaken with malice, oppression, or fraud within the meaning of California Civil Code section 3294, entitling Williams to an award of punitive and exemplary damages.**

## ADDITIONAL CROSS-CLAIM AGAINST CROSS-DEFENDANT WASHWORLD, INC.

**THIRTIETH CLAIM FOR RELIEF (Violation of California Business and Professions Code Section 17200 Against Cross-Defendant Washworld, Inc.)**

173. Williams realleges and incorporates Jy reference all preceding paragraphs as though fully set forth herein. This claim is asserted individually Jy Williams and is limited to Williams's individual injury, the injury to CWM Jeing asserted derivatively and not claimed here. This claim arises from Washworld's commercial business practices in diverting CWM's and Williams's customers, suppliers, and sales leads to ProElite and to Washworld directly, and not from any litigation or petitioning activity; references to the timing of Washworld's conduct relative to this Action are alleged solely as evidence of motive and intent.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

174.  Washworld engaged in unlawful, unfair, and fraudulent Jusiness acts and practices within the meaning of California Business and Professions Code section 17200. The practices are unlawful in that they violate other law, including the intentional interference with Williams's prospective economic advantage and the aiding and aJetting of Ortiz's Jreach of fiduciary duty alleged aJove, and constitute retaliation against CWM and Williams for the assertion of legal rights in this Action. In the alternative, the practices are unfair in that the harm to Williams outweighs any legitimate Jusiness justification, and fraudulent in that Washworld's conduct was likely to deceive as alleged herein.

175.  As a direct and proximate result of Washworld's unlawful, unfair, and fraudulent Jusiness practices, Williams has suffered injury in fact and has lost money or property within the meaning of California Business and Professions Code section 17204, including the diminution in value of his MemJer interest in CWM and the loss of his individual prospective economic advantage.

176.  Williams is entitled to restitution and to injunctive relief under California Business and Professions Code sections 17203 and 17204, including an order enjoining Washworld from continuing to divert the customers, sales leads, and Jusiness in which Williams holds an interest to ProElite and to Washworld directly, and such further relief as the Court deems just and proper.

**AGGREGATE DAMAGES SUMMARY. Williams alleges, on the claims for relief asserted in this Counterclaim, the accompanying Cross-Claim, the accompanying Third-Party Complaint, and the Additional Claims for Relief (Claims 20 through 30), taken in the aggregate and without duplication where overlapping claims address the same underlying injury, that his compensatory damages exceed Twelve Million Dollars ($12,000,000), inclusive of: (a) the fifty**

154

**percentage-point reduction in his Member equity interest in CWM (range $3,900,000 to $7,800,000 per paragraph 57A); (b) lost CEO and Manager compensation from CWM over a five-year recovery horizon (range $750,000 to $1,500,000); (c) lost prospective business opportunities at a separate business venture (range $200,000 to $700,000); (d) reputational property interest and goodwill (range $200,000 to $1,000,000); and (e) personal defense costs and other consequential damages. Williams's compensatory damages are exclusive of: (i) punitive and exemplary damages recoverable under California Civil Code section 3294 against each of Regions Bank, Jose Rene Ortiz, Washworld, and Peter Matheny; (ii) attorneys' fees recoverable under California Business and Professions Code section 17203 and other applicable authority; (iii) costs of suit; (iv) pre-judgment and post-judgment interest; (v) the equitable relief sought in the Consolidated Prayer for Relief below; and (vi) restitution under California Business and Professions Code section 17203 and under the equitable doctrine of unjust enrichment as asserted in the Twenty-Seventh Claim for Relief. The total amount of Williams's compensatory damages, when supplemented by punitive damages within the constitutional ratio guideposts articulated in BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996), and State Farm Mutual Automobile Insurance Co. v. Campbell, 538 U.S. 408 (2003) (single-digit ratio cap), may exceed Fifty Million Dollars ($50,000,000).**

## VII.  CONSOLIDATED PRAYER FOR RELIEF

WHEREFORE, Defendant, Counterclaimant, Cross-Claimant, and Third-Party Plaintiff Andrew P. Williams prays for judgment as follows:

155

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

*A.  On the First Amended Complaint of Plaintiff Regions Bank dba Ascentium Capital*

1.  That Plaintiff take nothing from Williams personally and that the First Amended Complaint be dismissed as to Williams with prejudice;

2.  That this Court enter judgment in favor of Williams and against Plaintiff on each cause of action asserted against Williams in the First Amended Complaint;

3.  That Williams recover his costs of suit and, to the extent permitted by law, his reasonable attorney's fees (preserved for post-judgment determination); and

4.  Such other and further relief as the Court deems just and proper.

*B.  On the Counterclaim Against Regions Bank dba Ascentium Capital*

1.  For compensatory damages in an amount to be proven at trial for the Bank's negligent supervision of Matheny, including but not limited to defense costs, reputational harm, lost business opportunities, and consequential damages;

2.  For compensatory damages against Counter-Defendant Regions Bank on the Bank's failure to honor its promises to Williams (promissory estoppel as alleged in the Second Claim for Relief), in an amount to be proven at trial, including but not limited to defense costs, lost income from Williams's CEO and Manager role at CWM, lost value in Williams's Member interest in CWM, reputational harm, and consequential damages;

3.  For declaratory relief under 28 U.S.C. § 2201 adjudging and decreeing that (a) Williams is not personally liable for any obligation under the EFA, the Personal Guaranty, or any related instrument; (b) Williams

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

made no misrepresentation of material fact to the Bank in connection with the loan transaction and concealed no material fact from the Bank; (c) Williams's signature on the Authority and Incumbency Certificate, in the capacity of "Certifier," does not give rise to personal liability; and (d) the so-called "Mistaken Payment" was the product of conduct by Matheny and Ortiz, not by Williams;

4.      For compensatory damages against Counter-Defendant Regions Bank in an amount to be proven at trial but not less than Two Hundred Fifty Thousand Dollars ($250,000) for the Bank's fraudulent misrepresentations and concealments to Williams as alleged in the Fourth Claim for Relief, including but not limited to defense costs, reputational harm, personal stress and disruption to Williams's professional and personal life, lost opportunity costs, and loss of business relationships;

5.      For punitive and exemplary damages against Counter-Defendant Regions Bank pursuant to California Civil Code section 3294 in an amount sufficient to punish the Bank's willful, malicious, and fraudulent conduct and to deter similar conduct in the future;

6.      In the alternative to the relief sought in items 4 and 5 above, for compensatory damages against Counter-Defendant Regions Bank in an amount to be proven at trial but not less than Two Hundred Fifty Thousand Dollars ($250,000) for the Bank's negligent misrepresentations to Williams as alleged in the Fifth Claim for Relief;

7.      For compensatory damages against Counter-Defendant Regions Bank in an amount to be proven at trial but not less than Two Hundred Thousand Dollars ($200,000) for Bank's intentional interference with Williams's prospective economic advantage as alleged in the Seventh Claim

157

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

for Relief, plus punitive and exemplary damages under California Civil Code section 3294 in an amount sufficient to punish Bank's willful, malicious, and oppressive conduct;

". [Intentionally omitted.]

9. [Intentionally omitted.]

10. For pre-judgment and post-judgment interest as permitted by law;

11. For Williams's costs of suit and, to the extent permitted by law, reasonable attorney's fees; and

12. Such other and further relief as the Court deems just and proper.

*C. On the Cross-Claim Against Jose Rene Ortiz, Maria L. Ortiz, and The Ortiz Family Trust of 2024*

1. For compensatory damages against Cross-Defendant Jose Rene Ortiz in an amount to be proven at trial for civil conspiracy (limited to post-petition conduct);

2. For compensatory damages against Cross-Defendant Jose Rene Ortiz in an amount to be proven at trial but not less than Two Hundred Fifty Thousand Dollars ($250,000) for Ortiz's fraudulent misrepresentations and concealments to Williams as alleged in the Eighth Claim for Relief, including but not limited to defense costs, reputational harm, personal stress and disruption to Williams's professional and personal life, lost opportunity costs, diminution in the value of Williams's Member interest in CWM, and loss of business relationships;

3. For punitive and exemplary damages against Cross-Defendant Jose Rene Ortiz pursuant to California Civil Code section 3294 in an amount

15"

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

sufficient to punish Ortiz's willful, malicious, and fraudulent conduct and to deter similar conduct in the future;

4.   For an order under 6 Del. C. § 18-305 compelling Cross-Defendant Jose Rene Ortiz to provide a true and complete accounting and inspection of CWM's books, records, and financial affairs as set forth in the Tenth Claim for Relief, including the disposition of the $176,552.71 refunded by Washworld to CWM;

5.   For avoidance of the June 13, 2024 transfer of the Subject Property (402 Addleman Avenue, West Covina, California, APN 8725-008-042) into The Ortiz Family Trust of 2024, recorded September 4, 2024 as Document Number 20240594220, under California Civil Code §§ 3439.04(a)(1) and 3439.07, to the extent necessary to satisfy Williams's claims;

6.   For attachment of the Subject Property pursuant to California Civil Code § 3439.07(a)(2) and applicable provisional remedies;

7.   For imposition of a constructive trust on the Subject Property for the benefit of the creditors of Jose Rene Ortiz, including Williams to the extent of his claims, and for an equitable lien on the Subject Property in the amount of Williams's claims;

8.   For an order authorizing and confirming Williams's recordation of a Notice of Pendency of Action (Lis Pendens) with respect to the Subject Property under California Code of Civil Procedure §§ 405 et seq.;

9.   For pre-judgment and post-judgment interest as permitted by law;

10.   For Williams's costs of suit and, to the extent permitted by law, reasonable attorney's fees; and

11.   For equitable indemnity and contribution from Cross-Defendant Jose Rene Ortiz, in proportion to Ortiz's comparative fault, for any portion of

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

any judgment entered against Williams on the First Amended Complaint of the Bank, pursuant to American Motorcycle Association v. Superior Court, 20 Cal. 3d 578 (1978), and California Code of Civil Procedure section 875 et seq.;

12.  Such other and further relief as the Court deems just and proper.

**D.  On the Cross-Claim Against Washworld, Inc.**

1.  For compensatory damages against Cross-Defendant Washworld, Inc. in an amount to be proven at trial but not less than One Hundred Thousand Dollars ($100,000) for Washworld's intentional interference with Williams's prospective economic advantage as alleged in the Fourteenth Claim for Relief, including but not limited to defense costs, reputational harm, personal stress and disruption to Williams's professional and personal life, lost opportunity costs, diminution in the value of Williams's Member interest in CWM, and loss of business relationships;

2.  For compensatory damages against Cross-Defendant Washworld, Inc. in an amount to be proven at trial but not less than One Hundred Thousand Dollars ($100,000) for Washworld's aiding and abetting of Ortiz's breach of fiduciary duty;

3.  For punitive and exemplary damages against Cross-Defendant Washworld, Inc. pursuant to California Civil Code section 3294 in an amount sufficient to punish Washworld's willful, malicious, and oppressive conduct and to deter similar conduct in the future;

4.  For pre-judgment and post-judgment interest as permitted by law;

5.  For Williams's costs of suit and, to the extent permitted by law, reasonable attorney's fees;

160

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

**6.    For restitution and injunctive relief against Cross-Defendant Washworld, Inc. under California Business and Professions Code sections 17203 and 17204 as alleged in the Thirtieth Claim for Relief, including an order enjoining Washworld from continuing to divert the customers, sales leads, and business in which Williams holds an interest to ProElite and to Washworld directly; and**

**7.  Such other and further relief as the Court deems just and proper.**

*E.  On the Third-Party Complaint Against Peter Matheny*

1.    [Intentionally omitted.]

**2.  For compensatory damages against Third-Party Defendant Peter Matheny in an amount to be proven at trial but not less than One Hundred Thousand Dollars ($100,000) for Matheny's aiding and abetting of Ortiz's breach of fiduciary duty;**

**3.    For compensatory damages against Third-Party Defendant Peter Matheny in an amount to be proven at trial but not less than One Hundred Thousand Dollars ($100,000) for Matheny's tortious interference with Williams's contractual relations under the CWM Operating Agreement as alleged in the Seventeenth Claim for Relief;**

**4.  For indemnity or contribution under Federal Rule of Civil Procedure 14(a) and applicable California common-law and statutory equitable indemnity principles, for all or part of any liability that Williams may be found to have to the Bank;**

**5.  For punitive damages in an amount sufficient to punish and deter, to the extent supported by the evidence and permitted by law;**

**6.  For pre-judgment and post-judgment interest as permitted by law;**

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

7.  For Williams's costs of suit; and

8.    For equitable indemnity from Third-Party Defendant Peter Matheny, in proportion to Matheny's comparative fault, for any portion of any judgment entered against Williams on the First Amended Complaint of the Bank, pursuant to American Motorcycle Association v. Superior Court, 20 Cal. 3d 578 (1978), in addition to the indemnity already pleaded in paragraph 117 above;

9.  Such other and further relief as the Court deems just and proper.

*F.  On the Additional Claims for Relief (Claims 20 through 29)*

*1.    On the Twentieth and Twenty-First Claims for Relief (Negligent Hiring and Negligent Retention of Matheny by Bank): compensatory damages against Counter-Defendant Regions Bank in an amount to be proven at trial but not less than Two Hundred Thousand Dollars ($200,000) for each such claim, plus punitive and exemplary damages on the Twenty-First Claim pursuant to California Civil Code section 32946*

*2.    On the Twenty-Second Claim for Relief (Aiding and Abetting Matheny's Individual Fraud by Bank): compensatory damages against Counter-Defendant Regions Bank in an amount to be proven at trial but not less than Two Hundred Fifty Thousand Dollars ($250,000), plus punitive and exemplary damages pursuant to California Civil Code section 32946*

*3.    On the Twenty-Third Claim for Relief (Fraud by Concealment by Bank): compensatory damages against Counter-Defendant Regions Bank in an amount to be proven at trial but not less than Two Hundred Fifty Thousand Dollars*

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

*($250,000), plus punitive and exemplary damages pursuant to California Civil Code section 32946*

4.      [Intentionally omitted.]

*5.      On the Twenty-Fifth Claim for Relief (Breach of Fiduciary Duty - Direct - against Ortiz): compensatory damages against Cross-Defendant Jose Rene Ortiz in an amount to be proven at trial but not less than Seven Hundred Fifty Thousand Dollars ($j 50,000), plus punitive and exemplary damages pursuant to California Civil Code section 32946*

*q.      On the Twenty-Sixth Claim for Relief (Conversion of Member Interest against Ortiz): compensatory damages against Cross-Defendant Jose Rene Ortiz in an amount to be proven at trial but not less than Four Hundred Thousand Dollars ($400,000), plus punitive and exemplary damages pursuant to California Civil Code section 32946*

*j .      On the Twenty-Seventh Claim for Relief (Un7ust Enrichment against Ortiz): restitution of the benefits un7ustly retained by Cross-Defendant Jose Rene Ortiz in an amount to be proven at trial but not less than Three Hundred Thousand Dollars ($300,000), together with such constructive trust, e; uitable lien, accounting, and other e; uitable relief as the Court deems 7ust and proper6*

*8.      On the Twenty-Eighth Claim for Relief (Direct Fraud against Matheny): compensatory damages against Third-Party Defendant Peter Matheny in an amount to be proven at trial but not less than Two Hundred Fifty Thousand Dollars ($250,000), plus punitive and exemplary damages pursuant to California Civil Code section 32946*

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

*9.    On the Twenty-Ninth Claim for Relief (Fraud by Concealment against Matheny): compensatory damages against Third-Party Defendant Peter Matheny in an amount to be proven at trial but not less than Two Hundred Fifty Thousand Dollars ($250,000), plus punitive and exemplary damages pursuant to California Civil Code section 32946*

*10.    For pre-judgment and post-judgment interest as permitted by law6*

*11.    For Williams's costs of suit and, to the extent permitted by law, reasonable attorneys' fees6and*

*12.    Such other and further relief as the Court deems just and proper.*

*G.  Reservation of Rights*

Williams expressly reserves all rights to amend this pleading under Federal Rule of Civil Procedure 15, including upon (a) aJandonment Jy the Chapter 7 Trustee of estate property claims under 11 U.S.C. § 554, (J) appearance of counsel for Car Wash Management, LLC, (c) further factual development through discovery, and (d) such other procedural posture as may Je appropriate. Williams further reserves all defenses, rights, and remedies under federal and state law not expressly waived herein.

## VIII.  DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 3"(J) and the Seventh Amendment to the United States Constitution, Defendant, Counterclaimant, Cross-Claimant, and Third-Party Plaintiff Andrew P. Williams hereJy demands a trial Jy jury of all issues so triaJle in this action.

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

Dated: _une 10, 2026

Respectfully suJmitted,

888888888888888888888888888888

**Andrew P. Williams**

Pro Se Defendant, Counterclaimant,

Cross-Claimant, and Third-Party Plaintiff

12641 Antioch Road, Suite #1045

Overland Park, Kansas 66213

Telephone: (619) 796-6469

Email: andrew@carwashmgmt.com

**EXHIBIT A**

**Recorded Grant Deed**

**Los Angeles County Document Number 20240594220**

**Recorded September 4, 2024 at 12:19 PM**

Grantors: _ose R. Ortiz and Maria L. Ortiz, HusJand and Wife as _oint Tenants

Grantees: _ose Ortiz Trustee, Maria L. Ortiz Trustee, and The Ortiz Family Trust of 2024

Property: 402 Addleman Avenue, West Covina, California 91792

Assessor's Parcel NumJer: "725-00"-042

Notary PuJlic: Mary Poncedeleon, Commission No. 2354659, County of Orange, California

Date of Execution: _une 13, 2024

Date of Recordation: SeptemJer 4, 2024

[A true and correct copy of the recorded Grant Deed, Los Angeles County Document NumJer 20240594220, is attached hereto and incorporated Jy reference. The recorded instrument Jears the printed direction: "When recorded mail to:

165

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,

COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx

_OSE ORTIZ & MARIA ORTIZ, Trustees, c/o Law Office of Lisa Mitts Patrick, 112 E. Amerige Ave. Suite 313, Fullerton, CA 92"32,b together with the contact information of Lisa Mitts Patrick, Esq. (telephone, facsimile, and email).]

**EXHIBIT B**

Delaware UCC Search Report (Parasec), dated May 21, 2026, Delaware Department of State, reflecting UCC-1 Financing Statement No. 2024 0175388 and UCC-3 Amendment No. 2026 1676747 naming "C T CORPORATION SYSTEM, AS REPRESENTATIVE" as the secured party of record.

[A true and correct copy of the Delaware UCC Search Report dated May 21, 2026 is attached hereto and incorporated by reference.]

DEFENDANT ANDREW P. WILLIAMS'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT

CASE NO. 2:25-cv-00359-CAS-KSx