Andrew K. Alper (State Bar No. 088876)
aalper@frandzel.com
FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, California 90017-2427
Telephone: (323) 852-1000
Facsimile: (323) 651-2577

Attorneys for Plaintiff and Counter-Defendant, Regions Bank An Alabama State Bank dba Ascentium Capital and Third Party Defendant Peter Matheny

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

REGIONS BANK, an Alabama State Bank dba ASCENTIUM CAPITAL,,

Plaintiff,

v.

CAR WASH MANAGEMENT, LLC, a Delaware Limited Liability Company, CAR WASH MANAGEMENT, LLC, a Hawaii Limited Liability Company, WEST COVINA CAR WASH LLC, a California Limited Liability Company, JOSE RENE ORTIZ, aka JOSE R. ORTIZ, aka JOSE ORTIZ, an individual, ANDREW PAUL WILLIAMS, aka ANDREW P. WILLIAMS, aka ANDREW WILLIAMS, an individual, WASHWORLD, INC., a Wisconsin Corporation, DOES 1-100, inclusive,

Defendant.

---

JOSE RENE ORTIZ,

Cross-Complaint,

v.

ANDREW PAUL WILLIAMS, CAR

Case No. 2:25-cv-00359 CAS (KSx)

**NOTICE OF MOTION AND MOTION OF COUNTER-DEFENDANT REGIONS BANK TO DISMISS ANDREW P. WILLIAMS SECOND AMENDED COUNTERCLAIM FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND MOTION FOR A MORE DEFINITE STATEMENT (F.R.C.P. Rule 12(b)(1) and (e); MOTION TO STRIKE (Rule 12(f)); AND FOR LACK OF STANDING PURSUANT TO F.R.C.P. Rule 17); MEMORANDUM OF POINTS AND AUTHORITIES**

*Filed concurrently with Declaration of Andrew K. Alper; Request for Judicial Notice; and Proposed Order*

Date: September 28, 2026
Time: 10:00 a.m.
Crtrm.: 8D

| | |
|---|---|
| WASH MANAGEMENT, LLC, CAR WASH MANAGEMENT, LLC, WASHWORLD, INC., and ROES 1 to 35, inclusive,<br><br>Cross Defendants. | |
| WASHWORLD, INC.,<br><br>Counter-Claimant,<br><br>v.<br><br>REGIONS BANK D/B/A ASCENTIUM CAPITAL,<br><br>Counter-Defendant | |
| WASHWORLD, INC.,<br><br>Cross-Claimant,<br><br>v.<br><br>CAR WASH MANAGEMENT LLC<br><br>Cross-Defendant. | |
| ANDREW PAUL WILLIAMS,<br><br>Counter Claimant, Cross-Claimant, and Third-Party Plaintiff,<br><br>v.<br><br>REGIONS BANK dba ASCENTIUM CAPITAL, JOSE RENE ORTIZ, MARIA L. ORTIZ, THE ORTIZ FAMILY TRUST OF 2024, WASHWORLD, INC., PETER MATHENY, ROES 1-50, inclusive.<br><br>Counter Defendants, Cross-Defendants, and Third-Party Defendants. | |

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 3

II. THE BIZARRE WILLIAMS COUNTERCLAIM ........ 5

III. THE WILLIAMS AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM AND THIRD PARTY COMPLAINT AND HOW IT IS DIFFERENT FROM THE FIRST AMENDED COUNTERCLAIM AND THIRD PARTY CLAIM ........ 7

IV. LEGAL STANDARDS ........ 8

**A. WILLIAMS LACK OF STANDING** ........ 8

**B. THE WILLIAMS BANKRUPTCY CONTRADICTS THE ALLEGATIONS IN THE COUNTERCLAIM AND DEMONSTRATES HIS BAD FAITH IN FILING THE COUNTERCLAIM AND IS JUDICIALLY ESTOPPED FROM FILING THEM** ........ 10

V. EACH CLAIM FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ........ 14

**A. NEGLIGENCE CLAIMS** ........ 14

**B. FRAUD CLAIMS** ........ 15

**C. NEGLIGENT MISREPRESENTATION-FIFTH CLAIM FOR RELIEF.** ........ 16

**D. THE SECOND CLAIM FOR PROMISSORY ESTOPPEL FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED** ........ 17

**E. THE THIRD CLAIM FOR DECLARATORY RELIEF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED** ........ 17

**F. THE INTENTIONAL INTERFERENCE CLAIM IN THE SEVENTH CLAIM FOR RELIEF DOES NOT STATE A CLAIM FOR RELIEF WHICH CAN BE GRANTED** ........ 18

**G. DAMAGES MUST BE STRICKEN** ........ 18

# TABLE OF AUTHORITIES


Page(s)

**Cases**

*Ah Quin v. County of Kauai Dept of Trans.* 733 F3d 267 (9th Cir. 2013) .......... 13

*Ashcroft v. Iqbal* 556 U.S. 662 (2009) .......... 8

*Berkley v. Dowds* (2007) 152 Cal. App. 4th 518, 526 .......... 14

*Canova v. Trustee of Imperial Irrigation District Employees Pension Plan* (2007) 150 Cal. App. 4th 1487 .......... 19

*Casey v. U.S. Bank Nat. Assn.* (2005) 127 Cal. App. 4th 1138, *1149* .......... 15

*Cocoa AJ Holdings, LLC v. Schneider,* (2025) 115 Cal. App. 5th 980 .......... 20

*Della Penna v Toyota Motor Sales, USA* (1995) 11 Cal. 4th 376 .......... 20

*Fitzgerald v. Gem Funding* 2022 WL 4537881. (U.S.D.C. N.D. Cal. 2022) .......... 9, 10

*Gafcon v. Ponsor & Assocs.* (2002) 98 Cal. App. 4th 1388 .......... 19

*Gil v. Bank of America* (2006) 138 Cal. App. 4th 1371 .......... 15

*Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal. App. 4th 411 .......... 18

*Hamilton v. State Farm Fire & Casualty Co.* 270 Fed 778 (9th Cir. 2001) .......... 13

People ex. Rel. *Harris v. Rizzo* (2013) 214 Cal. App. 4th 921 .......... 16


FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

*Hay v. First Interstate Bank of Kalispel, N.A.*
978 F. 2d. 555 (9th Cir. 1992) .......... 13

*Ixchel Pharma, LLC v. Biogen, Inc.*
9 Cal. 5th 1130 (2020) .......... 20

*Jolley v. Chase Home Finance, LLC.*
(2013) 213 Cal. App. 4th 872 .......... 14

*Kenney v. JP Morgan Chase Bank, N.A.*
2025 WL 2117415 (U.S.D.C. Central District of Cal.) .......... 15

*Korea Supply Co. v. Lockheed Martin Corp.*
29 Cal. 4th 1134 (2003) .......... 20

*Lazar v. Superior Court*
(1996) 12 Cal. 4th 631 .......... 17

*New Hampshire v. Maine*
532 U.S. 742 (2001) .......... 13

*Nymark v. Heart Fed. Savings & Loan Assn.*
(1991) 231 Cal. App. 3d 1089 .......... 14

*QDOS, Inc. v. Signature Financial, Inc.*
(2017) 17 Cal. App. 5th 990 .......... 15

*Ragland v. U.S. Bank National Assn.*
(2012) 209 Cal. App. 4th 182 .......... 16

*Rutman Wine Co. v. E. & J. Gallo Winery*
829 F.2d 729 (9th Cir. 1987) .......... 8

*Sheen v. Wells Fargo Bank*
(2022) 12 Cal. 5th 90 .......... 15

*Shell Petroleum, N.V. v. Graves*
709 F 2d 593,595 (9th Cir. 1083) .......... 9

*Sherman v. British Leyland,*
601 F2d 429 (9th Cir. 1979) .......... 9, 10

*Software Design & Application, Ltd. V. Hoefer & Arnett, Inc.*
(1996) 49 Cal. App. 4th 472 .......... 15

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

*Tarmann v. State Farm*
(1991) 2 Cal. App. 4th 153 .......... 16, 17

**Statutes**

11 U.S.C. § 521(a)(1)(B) .......... 13

California Civil Code § 47(b) .......... 7

Civil Code § 1624(a)(7) .......... 17

Civil Code § 1709 and 1710 (2) .......... 17

Civil Code § 3294 (a) and (b) .......... 21

Code of Civil Procedure § 1856 .......... 17

**Federal Statutes and Rules**

Bankruptcy Rule 1007(b)(1) .......... 13

Federal Rule of Civil Procedure, Rule 8 .......... 9

Federal Rule of Civil Procedure, Rule 8(a)(2) and (d) .......... 6

Federal Rule of Civil Procedure, Rule 9(b) .......... 16

Federal Rule of Civil Procedure, Rule 12(b) .......... 8

Federal Rule of Civil Procedure, Rule 12(b)(6) .......... 8

Federal Rule of Civil Procedure, Rule 12(f) .......... 21

Federal Rule of Civil Procedure, Rule 17 .......... 9

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

TO THE COURT, COUNTER-CLAIMANT ANDREW P. WILLIAMS AND TO ALL PARTIES TO THEIR COUNSEL OF RECORD:

NOTICE IS HEREBY GIVEN that on September 28, 2026, at 10:00 a.m. or as soon thereafter as counsel may be heard in the above-entitled Court located at 350 W 1st Street, Suite 4311 Los Angeles, CA 90012-4565 in Courtroom 8D of the Honorable Christina Snyder, Plaintiff and Counter-defendant Regions Bank dba Ascentium Capital ("Plaintiff") will and does hereby move this Court for an order dismissing the Second Amended Answer, Affirmative Defenses, Counterclaim, Cross-claims, and Third Party Claims ("Counterclaim") filed by Defendant, Cross-defendant, and Counter-claimant Andrew P. Williams ("Williams") as a result of the Counterclaim's failure to state a claim upon which relief may be granted against Plaintiff pursuant to Federal Rules of Civil Procedure (F.R.C.P.) Rule 12(b)(6). Plaintiff also moves for dismissal of the Counterclaim and the Claims contained therein based on Williams' lack of standing in accordance with F.R.C.P. Rule 17 and also pursuant to F.R.C.P. Rule 12(b)(7) to the extent the Court finds it applicable since Car Wash Management, LLC ("CWM") is not a party to the Counterclaim and, to the extent any claims alleged by Williams could possibly exist they would be Claims of CWM not Williams. If the Court does not grant either of the foregoing motions for dismissal then Plaintiff also moves for a More Definite Statement pursuant to Rule 12(e) and to strike damage allegations pursuant to Rule 12(b)(f). In addition, besides the failure to state claims directed against Plaintiff in the Counterclaim, Williams is judicially estopped from asserting his Claims as a result of his conduct in his Bankruptcy case filed in the United States Bankruptcy Court for the Southern District of California case number 24-03761-CL7 ("the Williams Bankruptcy") which is set forth on page 81 of the Affirmative Defenses in his Counterclaim and then refers to it multiple times in the Counterclaim. Finally, a Third Party Complaint is a separate pleading from the Answer, Counterclaim and Cross-claims and must be filed separately which it is not (F.R.C.P. Rule 14(a).

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

This Motion is made following communications between counsel for Plaintiff and Williams both orally and in writing. Moreover, Plaintiff previously filed a Motion to Dismiss the First Amended Answer, Affirmative Defenses, Counterclaim, Cross-claim and Third party Claim set for hearing on August 10, 2026, which was made moot by the filing of the Second Amended Counterclaim. That Motion to Dismiss is close to identical to this Motion and therefore Williams knows all the facts and law upon which this Motion is based prior to filing it. (see Declaration of Andrew K. Alper complying with Local Rule 7-3 as to meeting and conferring on this Motion).

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Request for Judicial Notice submitted herewith, the pleadings and papers on file herein, the Declaration of Andrew K. Alper submitted herewith, and further Reply papers filed to any Opposition by Williams with respect to this Motion and oral and documentary evidence and argument as may be presented to the Court at the time of hearing. While the Motions are different, some of the same issues have already been discussed in the Motion to Dismiss the Cross-claims of Williams by Washworld, Inc. and the Court can also take judicial notice of Washworld's Motion to Dismiss First Amended Cross-claims.

DATED: August 24, 2026

FRANDZEL ROBINS BLOOM & CSATO, L.C.

By: ____________________

ANDREW K. ALPER
Attorneys for Plaintiff and Counter-Defendant, Regions Bank an Alabama State Bank dba Ascentium Capital

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff previously filed a Motion to Dismiss Willams First Amended Answer, Affirmative Defenses, Counterclaim, Cross-claims and Third Party Complaint (for Plaintiff's purpose in this Motion "the FAC") and this Motion is close to being identical to the Motion to Dismiss the FAC which was not heard by the Court as noticed on August 10, 2026, because the Court granted Williams the ability to file this Second Amended Answer, Affirmative Defenses, Counterclaim, Cross-claims and Third Party Claims ("Counterclaim"). The difference between the FAC and tis Counterclaim is that Williams eliminated some contentions and Claims. He did not change the Claims. Therefore, the prior Motion to Dismiss is generally the same as this Motion to Dismiss.

As previously pointed out to the Court, it is difficult to concisely discuss all of the contrived fictional allegations contained in the Counterclaim in the 164 pages of text in the Counterclaim. The easiest and most determinative issue here for the Counterclaim is that Williams has no standing to assert most if not all of the allegations in the Counterclaim because, even if Claims could be properly pleaded, they are claims of Car Wash Management, LLC ("CWM") and not Claims of Williams. Moreover, as the Court will see, Williams' utter dishonesty permeates this case which is evident by documents and pleadings filed in the Williams Bankruptcy which he filed in October, 2024, and he cannot now make allegations and contentions he either hid from the Bankruptcy Court and Trustee or simply chooses to dishonestly allege them in the Counterclaim. That being said, Plaintiff sets forth some of the more relevant facts and law and grounds for the Motion to Dismiss below.

## CONCISE FACTUAL BACKGROUND

Plaintiff will not be able to set forth a full recitation of facts of this case because of space limitations but at least a more complete factual recitation can be

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

found, for example, in Plaintiff's Opposition to Motion to Dismiss Counterclaim filed by Washworld, Inc. ("Washworld") (Docket no. 194) and the Declaration of Jerry Noon (Docket number 71-2 filed on August 25, 2025). Car Wash Management, LLC ("CWM") entered into Equipment Financing Agreement No. 2763169 (the "EFA") with Plaintiff in order for Plaintiff to make a loan to CWM to finance the acquisition of car wash equipment for the financed amount of $343,394.23 with respect to equipment presumably being acquired by CWM from Washworld its equipment supplier. Pursuant to the terms of the EFA, after an initial payment, CWM was required to make 71 monthly payments until the loan was paid in full. In connection with execution of the EFA, CWM, by and through Jose Rene Ortiz ("Ortiz") also executed, among other documents, an Authorization to Perform Verbal Verification, Prepayment Addendum, Delivery and Acceptance Certificate, and Commencement Agreement whereby CWM requested that Plaintiff pay the supplier of the equipment, Washworld, before the equipment was delivered, installed and operational. Ortiz also personally guaranteed the loan. Williams is not a party to the loan nor did he sign any contract to Guaranty the loan. However, Williams conduct with respect to this transaction is the driving force that started the issues with this loan.

As a result of receiving the order for the equipment from Williams on behalf of CWM, Plaintiff paid initial loan proceeds of $309,054.80 to Washworld. (admitted in the Washworld Answer and Counterclaim).

As it turns out, Washworld never delivered the equipment to fund Plaintiff's loan that is the subject of the Purchase Order sent to Plaintiff by CWM through Williams to reflect the equipment being sold to CWM. After Washworld received the $309,054.80 from Plaintiff for CWM, instead of contacting Plaintiff to ask why Washworld was receiving this money if Washworld was not selling this equipment to CWM, instead Washworld inexplicably contacted CWM by and through Williams who directed Washworld to pay $132,509.09 of the $309,054.80 funded

by Plaintiff for a **different** customer of Washworld, Conserv Fuels, totally unrelated to the loan being made by Plaintiff. According to Washworld, this sum paid off a different balance owed to Washworld for different equipment so Washworld used the $132,509.09 to pay off a different transaction with Conserv Fuels then sent the balance of $176,552.71 from the $309,054.80 to CWM and presumably to Williams. Of course, CWM defaulted in making its payments on the EFA and Ortiz defaulted on his Guaranty by not making the monthly payments on the loan. While the equipment on the Purchase Order sent to Plaintiff served as collateral for the loan there was no equipment because Washworld did not sell this equipment to CWM. Williams did not enter into the loan with Plaintiff nor did he personally guaranty it and therefore Williams was never sued for breach of contract. Yet that does not stop Williams in the Counterclaim from alleging drts es that do not exist to him and torts committed by Plaintiff when Williams was not a party to the Loan.

## II. <u>THE BIZARRE WILLIAMS COUNTERCLAIM</u>

As repeated again, Williams who is not obligated to Plaintiff on the EFA for the loan as the EFA was entered into by CWM **not by** Williams with Plaintiff, Williams did not Guaranty the EFA as Ortiz is the Guarantor; and the only Claims filed against Williams by Plaintiff are based on the orchestration of the fraud on Plaintiff, but that has not stopped Williams from filing a massive rambling Counterclaim against Plaintiff, a Third Party Complaint against Peter Matheny, who was the salesperson at Plaintiff involved with the loan, Cross-claims against Ortiz and Washworld and further Third Party Claims against Mrs. Ortiz and the Ortiz Family Trust. Searching through the 164 pages of the Counterclaim it is like trying to find Waldo in a puzzle to figure out where the Counterclaim and other claims start and stop. The first seven Claims in the Counterclaim are against Plaintiff, there is no Eighth Claim for Relief but instead the Cross-claims start against Ortiz with a Ninth and Tenth Claim and then the Eleventh and Thirteenth Claims are against Ortiz. Maria Ortiz, and the Ortiz Family Trust with no Twelfth Claim followed by a



FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

Fourteenth and Fifteenth Claim against Washworld then followed by a Third Party Complaint against Peter Matheny ("Matheny") with no Sixteenth Claim but a Seventeenth and Eighteenth Claim against Matheny then back to the Nineteenth Claim which includes both Third Party Defendants and Cross-defendants then we go to something Williams terms as ADDITIONAL CLAIMS FOR RELIEF which starts with Additional Counterclaims against Plaintiff in the Twentieth through Twenty-Third Counterclaims then there is another switch back a Twenty-Fifth through Twenty-Seventh Claims against Ortiz on the Cross-complaint and then back to the Third Party Complaint with Claims Twenty-Eight and Twenty-Nine against Matheny then the next switch is back to the Cross-claim against Washworld with Claim Thirty against Washworld. Then to top it off, all of the damages for each Claim in the Counterclaim, the Cross-claims and the Third Party Claims are aggregated at the end against all parties.

This hiding the ball in the switching Claims throughout the 164 pages (and many of the claims are nothing more than repetition of previous Claims) is not allowed as a matter of law. F.R.C.P. Rule 8(a)(2) and (d) require "a short and concise" pleading. This mess is anything but short and concise. The same is true for the affirmative defenses in the Answer but Plaintiff is not going to waste the Court's time with a Motion to Strike them although the Court has the ability to sua sponte do so.

Essentially the Counterclaim against Plaintiff is based on Williams being damaged because Matheny, Plaintiff's salesman, "irregularly" structured the loan transaction and knew absolutely everything about the transaction including that CWM and/or Williams was going to end up with the $176,552.71 as working capital. And, of course, Matheny also knew that non-borrower and customer of CWM and Washworld, Conserve Fuels, would pay for equipment with the $132,509.09 and Plaintiff would not have the equipment that was in the Purchase Order from Washworld as collateral for the loan to CWM. At times Williams states

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

there is a conspiracy with Ortiz ending up with a larger share of CWM because Plaintiff required it and then Ortiz also ended up taking CWM customers for himself and at times there is no conspiracy. Then there is the damage caused by Ortiz in stealing CWM's customers clients to Williams' substantial income from CWM. Apparently Williams believes that the alleged CWM damages are **his** damages and not the damages of a company of which he is allegedly a 10% owner or maybe a 60% owner. But other than his allegations of derivative damages from his interest or income from CWM the only other claim that Williams has against Plaintiff is that this lawsuit has damaged him. And, of course, filing a lawsuit is absolutely privileged under *California Civil Code 47(b)* and the filing of the Complaint against Williams has no facts on how Williams was damaged even if such a Claim stated facts. Plaintiff will discuss some of the further allegations of the Counterclaim as it deals with each Claim below. But the Court will see from the Williams Bankruptcy documents below that Williams has been dishonest in the allegations set forth in the Counterclaim.

## III. THE WILLIAMS SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSS-CLAIM AND THIRD PARTY COMPLAINT AND HOW IT IS DIFFERENT FROM THE FIRST AMENDED COUNTERCLAIM AND THIRD PARTY CLAIM

As the Court knows from the pleadings in this case, Williams refused to grant Plaintiff an extension to respond to the FAC even though he was in the process of filing the Counterclaim forcing Plaintiff to file a Motion to Dismiss, Strike and For More Definite Statement similar to this Motion (see Docket number 204)("the FAC Motion to Dismiss"). Because the Court granted Williams Motion for leave to file this Counterclaim Plaintiff's FAC Motion was never considered by the Court because it was moot. However, Plaintiff and Williams never had to meet and confer on this Motion because Williams had a complete pleading to consider since at all times Williams was aware this Motion would be filed with the Court. In fact,

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

Williams filed an Opposition to the FAC Motion and Plaintiff filed a Reply (see Docket nos. 217 and 222). However, Plaintiff and Williams did confer on the filing of this Motion and nothing was accomplished.

The difference between the Second Amended Williams Counterclaim ("which is called "Counterclaim" in this Motion eliminated Claims against Plaintiff as to the Second Claim for Promissory Estoppel, Seventh Claim for Intentional Infliction of Emotional Distress (there was no Sixth Claim) and Twenty- Third Claim for Fraud). Therefore, the difference between this Motion to Dismiss and the prior FAC Motion to Dismiss is the elimination of the discussion of those Claims but if for any reason they are relevant because Williams still incorporates facts from one Claim to the other in the Claims that still exist, the Court is requested to take judicial notice of the FAC Motion to Dismiss.

## IV. LEGAL STANDARDS

Federal Rule of Civil Procedure, Rule 12(b) permits a responding party to assert various defenses to complaints or counterclaims by motion including a failure to state a claim upon which relief may be granted (Fed. Rule Civ. Proc. 12(b)(6); *Ashcroft v. Iqbal* (2009) 556 U.S. 662, 678. (Stated claim for relief must be plausible on its face also citing *Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544, 570.) A Rule 12(b)(6) motion tests the legal sufficiency of a claim or claims stated in the Complaint [or Counterclaim]. *Rutman Wine Co. v. E. & J. Gallo Winery* (9th Cir. 1987) 829 F.2d 729, 738. To determine whether a claim is plausible a court must take notice of elements of a claim and a plaintiff [or counterclaimant] must prove the stated claim (*Ashcroft supra* at 556 U.S. at 681). As stated above this Counterclaim clearly also violates F.R.C.P. 8.

### A. WILLIAMS LACK OF STANDING

Clearly Williams has no standing in this case to present any of these Claims pursuant to F.R.C.P. 17. Williams is not a borrower or guarantor of the loan at issue. Instead he alleges that he is either a 60% owner or a 10% owner of CWM (see page

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

4 where Williams first alleges that his ownership interest was changed by Plaintiff from 60% to 10% which is then carried on throughout the Counterclaim in ¶¶9,11,21,22,23,24.59,pages 85 and 86, and in ¶¶78, 83A, 87VD just to name some of the portions of the Counterclaim where that statement is made). Yet Williams finds a way to allege 12 Claims against Plaintiff. He lacks standing to present any Claims. As stated in *Fitzgerald v. Gem Funding 2022 WL 4537881, p. 7.* (U.S.D.C. N.D. Cal. 2022) the standard is as follows:

"To establish injury in fact, a shareholder or member must be injured 'directly and independently" of the corporation or company. See also *Shell Petroleum, N.V. v. Graves* 709 F 2d 593,595 (9th Cir. 1083).

No such direct and independent harm exists here, let alone has been alleged. In *Sherman v. British Leyland,* 601 F2d 429, 439-440 (9th Cir. 1979) the 9th Circuit dismissed the claims brought by an officer and majority shareholder under the long-standing doctrine that individuals have no standing to allege corporate claims.

As stated in *Sherman*: "No claim or showing has been made that Vincent [the entity] during material times did not maintain its corporate existence separate and apart from Sherman, notwithstanding that the latter was president and sole stockholder of the corporation. The franchise in question was signed by Sherman for and on behalf of the corporation. No rights or remedies were reserved expressly in any of the written documents in favor of, or against, Sherman. It is true that the franchisor recognized the importance of Sherman's services and those of his wife to the corporation, and it is also true that by reason of Sherman's guarantee of certain obligations of the corporation to third parties the corporation became indebted to him. *But we have concluded that these circumstances do not warrant departure from the general rule of separation of identities nor afford Sherman standing to bring suit in his individual capacity as a shareholder or creditor on any of the claims asserted in this action.* whether under the Dealers Act, 11, the antirust laws 12 or the pendent state claims." [emphasis added]. The Court in *Sherman* also added

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

that corporations and limited liability companies are distinct legal entities and members generally lack prudential standing to pursue claims on a corporation's behalf even when the individual provides a personal guaranty. [*Fitzgerald supra at 7]*.

And in this case, there is no Williams loan or a personal guaranty of CWM's loan. Because Williams has not and cannot allege any separate direct and independent harm, all of the Claims must be dismissed.

**B. THE WILLIAMS BANKRUPTCY CONTRADICTS THE ALLEGATIONS IN THE COUNTERCLAIM AND DEMONSTRATES HIS BAD FAITH IN FILING THE COUNTERCLAIM AND IS JUDICIALLY ESTOPPED FROM FILING THEM**

In the Counterclaim is that Williams admits he filed bankruptcy on October 7, 2024. The pleadings filed by Williams are in the United States Bankruptcy Court Southern District Case Number 24-bk-03761 ("Willams Bankruptcy"). As all Debtors in bankruptcy are required to do, they must file Bankruptcy Schedules and a Statement of Financial Affairs which, among other things, sets forth their assets and liabilities and income and expenses and a truthful statement of the Debtor's financial affairs. When the Chapter 7 case is filed the assets of the Debtor become property of a bankruptcy trustee and the debtors property become property of the Bankruptcy Estate.

Starting at the top, Williams stated in his Petition and then in other pleadings that his address was 12136 Avenida Sivrita, San Diego, California 92121 to invoke the jurisdiction of that Court. He lied. Williams later states in a Declaration to the Court when he filed a motion to set aside a nondischargeable judgment against him he had no address and was told by his attorney to use that San Diego address-at that time he was couch-surfing (see Williams Declaration in support of motion to set aside the default and default judgment which part of the Request for Judicial Notice

Frandzel Robins Bloom & Csato, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, California 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

submitted herewith ("RJN")). In his Bankruptcy Schedules, Williams estimates his assets and liabilities to be under $50,000 (see page 7 of 8 of his Schedules). He estimates his assets at a whopping $1,700.00 (see Summary of Assets and Liabilities page 1). On Page 4 of the Schedule A/B he states he has a 60% ownership interest in Car Wash Management, LLC a Delaware corporation and it is worth zero (0). (See Schedules page 10). This statement is a stark contradiction since when the EFA loan was made in early 2024, Williams' interest in CWM was reduced from 60% to 10% In his Bankruptcy Schedules, there are no Claims against third parties listed and no one owes him any money when CWM got the loan from Plaintiff. (see Page 6 of the Schedule A/B). But then on Schedule C on Page 2 he states that he has a $33,700 exemption in CWM, a company he values at Zero in the Schedules which is odd to say the least. Williams also shows a number of other lawsuits against him in his Schedule E/F as well. Williams states that he has no income as Manager of CWM but is employed as its Manager (See Schedule I). And then he shows monthly living expenses of only $535.00 a month in Schedule J. it is difficult to comprehend an adult conducting business is living on monthly expenses of $535.00.

In Williams' Statement of Financial Affairs he states he has been living with friends and relatives for 3 years "couch surfing" while he and CWM were making substantial sums of money and wheeling and dealing according to his Counterclaim. In the Statement of Financial Affairs he says he made less than $10,000 a year for 3 years prior to filing bankruptcy and gets "help" from family and friends to survive. The Statement of Financial Affairs shows lawsuits filed against him on three car wash related transactions in which he was involved. He then discusses six car washes or car wash companies he was involved with and how 3 of them never operated or conducted business, 2 others which conducted business for a very short time and never discusses any income he received from any of his 6 business ventures. He states CWM is in business but Williams has generated no money from CWM. Plaintiff, Washworld and Ortiz were not stated as persons or entities who

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

Williams has claims against in his Bankruptcy Schedules or Statement of Financial Affairs and they are not creditors and never received notice of the Williams Bankruptcy.

During the Williams Bankruptcy, creditors Anderson and Ashton filed a Complaint for Nondischargeability against Williams and was granted a default judgment for fraud. Williams filed a Declaration in that case which is part of the RJN to set the default and default judgment aside. The Court granted his Motion at the end of June, 2026, so now Williams has an active case going with creditors Ashton and Anderson. The highlights of Williams' declaration are important: (1) CWM invested in a car wash with three other persons and put in $200,000 at the end of 2023; (2) CWM had to over contribute to this venture and contributed $350,000; (3) there were substantial cost overruns on the car wash project and CWM contributed another $95,000; (4) the car wash that was the subject matter of this venture is the same car wash that was to get the equipment from Plaintiff's loan and which West Covina Car Wash, LLC guarantied; (5) Williams discusses the funds that he and CWM put into the car wash but during that time he had no assets per his Bankruptcy Schedules and the Declaration also discusses that tangible equipment was acquired for that facility. No further funds were put into the project and then Williams filed bankruptcy; (6) there is a long discussion in his Declaration of his ongoing illnesses where he was disabled at the same time he was involved with the loan from Plaintiff; and (7) that the car wash facility is open today under a different name. Who owns it? Who has the equipment?

Plaintiff spends a lot of time in this Motion discussing the Williams Bankruptcy because of the doctrine of judicial estoppel and how judicial estoppel should serve to bar the Counterclaim of Williams. When a Debtor files bankruptcy all of the Debtor's property becomes an asset of the Estate pursuant to 11 U.S.C. § 521(a)(1)(B) and Bankruptcy Rule 1007(b)(1). The Debtor has a duty to disclose all such assets and be truthful in the Debtor's disclosure of assets and liabilities and

income and expenses especially since the Debtor is filing Bankruptcy Schedules and Statement of Financial Affairs under penalty of perjury. Any claims and property the Debtor has must be disclosed and if it is not disclosed any claims the Debtor will not have been administered and the Debtor cannot later claim them. (see *Ah Quin v. County of Kauai Dept of Trans.* 733 F3d 267, 271 (9th Cir. 2013); *Hay v. First Interstate Bank of Kalispel, N.A.* 978 F. 2d. 555, 557 (9th Cir. 1992)). Judicial estoppel is an equitable doctrine intended to protect the integrity of the judicial process. Judicial estoppel will bar a party from making judicial statements in one pleading and then contradicting that representation later when it suits its goals (*New Hampshire v. Maine* 532 U.S. 742, 749-751 2001). Williams knows all about judicial estoppel since he cites to *Hamilton v. State Farm Fire & Casualty Co.* 270 Fed 778 (9th Cir. 2001) on page 82 of Williams' Counterclaim where he correctly states "judicial estoppel principles applied to claims subject to bankruptcy disclosure").

Williams' Declaration filed in the Williams Bankruptcy appears to contradict the information in the Bankruptcy Schedules and Statement of Financial Affairs about no claims or assets or ownership and no income of Williams. More important for this Motion, is that Williams makes grandiose claims about CWM in the Counterclaim and even more so with respect to the millions of dollars in damages that Williams has incurred as a result of the conduct of Plaintiff which clearly belies his financial condition set forth in the Williams Bankruptcy (see e.g. Counterclaim ¶¶57A where the bad faith allegations of damages start), but obviously he cannot have it both ways. He cannot file bankruptcy in late 2024 which then continued in 2025 and omit the fact in his bankruptcy that he had claims, assets, that he never had any income and now alleges in his Counterclaim that that he has been damaged in the millions of dollars because of all of his alleged lost assets and opportunities. If CWM had assets and claims and he was a 60% owner, even though as a result of Plaintiff's conduct Williams allegedly was forced to reduce his interest in CWM to

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

10% ownership approximately 7 months **before he filed his** Bankruptcy Petition as the Counterclaim so states where he asserted a 60% interest in CWM not the 10% interest he alleges in the Counterclaim. This dishonesty cannot be allowed and each Claim and all damages are subject to being barred as a result of his inconsistent pleadings and dishonest conduct in the Williams Bankruptcy by the doctrine of judicial estoppel.

## V. EACH CLAIM FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Plaintiff has discussed the issues of standing, judicial estoppel, and the procedural problems with the Counterclaim which ignore the Rule 8 and 9 requirements and all of these defects are applicable to all Claims. Set forth below is the discussion as to each Claim and why each Claim does not state facts upon which a Claim for Relief can be granted.

### A. NEGLIGENCE CLAIMS

The various negligence claims are in the First, Fifth, Twentieth, and Twenty-First Claims and can be dealt with at the same time. The elements of negligence are:

(1) Duty;

(2) Breach of duty;

(3) Causation; and

(4) Damages

(*Berkley v. Dowds* (2007) 152 Cal. App. 4th 518, 526).

The negligence claims fail to allege the element of duty because there is no duty when a financial institution involved in the loan transaction which does not exceed a lender's role as a lender of money (See *Nymark v. Heart Fed. Savings & Loan Assn.*, (1991) 231 Cal. App. 3d 1089, 1093, fn. 1); *Jolley v. Chase Home Finance, LLC.* (2013) 213 Cal. App. 4th 872; *Sheen v. Wells Fargo Bank* (2022) 12 Cal 5th 90). And there is nothing in the Counterclaim showing that Plaintiff exceeded that role as a lender especially as to Williams who is not a party to the

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

loan. And when third parties are not involved in a lending relationship by being the borrower there is no duty to such parties. Williams is not a borrower or guarantor and is a non- party to any loan which Williams has no trouble stating in the Counterclaim multiple times and therefore any duties that Plaintiff may have had with respect to the loan certainly do not run to Williams (see *Gil v. Bank of America* (2006) 138 Cal. App. 4th 1371, 1381: *Software Design & Application, Ltd. V. Hoefer & Arnett, Inc.* (1996) 49 Cal App. 4th 472, 479; *Casey v. U.S. Bank Nat. Assn.* (2005) 127 Cal. App. 4th 1138,*1149*); *QDOS, Inc. v. Signature Financial, Inc.* (2017) 17 Cal. App. 5th 990, 1000 n.3. for cases showing there is no duty to a nonparty to a loan and even duties to parties to a loan are quite limited at best to special circumstances). And see also *Kenney v. JP Morgan Chase Bank, N.A. 2025 WL 2117415 (U.S.D.C.* Central District of Cal.) which discusses the application of the law to similar claims which exist in this case). Certainly, there is no contract which sets forth any duty or obligations of Plaintiff to Williams as to what Plaintiff must do for the benefit of Williams. There is clearly no breach of a duty since no duty exists. Causation is yet another problem because the causation that caused Williams' alleged damages (if any damages actually exist), is not alleged either. Therefore, no matter how it is couched in the various negligence claims, Williams cannot allege a duty, a breach of a duty, causation and damages and all of the negligence claims must be dismissed.

**B. FRAUD CLAIMS**

Fraud Claims exist in the Fourth, Fifth, Twenty-Second and Twenty-Fourth (aiding and abetting fraud), and Twenty-Third Claims (but the Twenty-Third Claim does not exist in this Counterclaim but is referred to in this discussion because the same law is applicable).

The elements of fraud are:

1. Misrepresentation of a fact (whether it is a misrepresentation, concealment or nondisclosure);

2. Knowledge of falsity (scienter);

3. Intent to Deceive and induce reliance;

4. Justifiable reliance on the misrepresentation; and

5. Damages (P*eople ex. Rel. Harris v. Rizzo* 214 Cal. App. 4th 921, 947 (2013); *Tarmann v. State Farm* 2 Cal. App. 4th 153 (1991).

Fraud must pleaded specifically as a matter of law with the facts stated as to each element (See F.R.C.P. Rule 9 (b)).

So exactly what fraud by Plaintiff is a fraud on Williams and not on CWM? Williams is not a borrower, obligor, or Guarantor on the loan that was the subject of the fraud. So there is not one element satisfied as to a fraud on Williams by Plaintiff. As to CWM, it is curious to see what the fraud was on CWM given that CWM received $176,552.71 from the $309,054.80 advanced under the EFA directly back from Washworld and then got the benefit of the other $132,509.00 of the $309,054.80 to pay a different transaction unrelated to this loan for Conserv Fuels (see ¶¶42A-D among many others throughout the 164 pages of the Counterclaim). So once again CWM is unable to allege a single element of a claim for fraud especially damages since there were none and as to Williams any fraud is even further attenuated since he is not a borrower or guarantor.

**C. NEGLIGENT MISREPRESENTATION-FIFTH CLAIM FOR RELIEF.**

Negligent Misrepresentation is handled in part above in subparts A and B since there is a discussion of both negligence and fraud. Negligent Misrepresentation is a species of fraud. The elements of a cause of action or claim for Negligent Misrepresentation are:

1. Misrepresentation of a past or existing fact;

2. Made without a reasonable ground for believing it to be true

3. Made with intent to induce another's reliance on the fact represented

4. Justifiable reliance on the misrepresentation; and

Frandzel Robins Bloom & Csato, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, California 90017-2427
(323) 852-1000

5. Resulting damage *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal. App. 4th 182, 196; See also Civil Code sections 1709 and 1710 (2)). See also *Tarmann supra at 155 and 156* discussing negligent misrepresentation claims*).*

A Claim or cause of action for Negligent misrepresentation which is a species of fraud is subject to a heightened pleading standard like fraud and must show sufficient facts as a matter of law (see *Lazar v. Superior Court* (1996) 12 Cal 4th 631, 645). The same arguments set forth above are true as to negligent misrepresentation as to the negligence and fraud allegations and do not have to be repeated.

**D. THE SECOND CLAIM FOR PROMISSORY ESTOPPEL FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Since the Promissory Estoppel was eliminated by the filing of the Second Amended Counterclaim there is no discussion of that Claim in this Motion but it was fully briefed in the FAC Motion to Dismiss if the Court believes it still has viability because of incorporation paragraphs.

**E. THE THIRD CLAIM FOR DECLARATORY RELIEF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

The Declaratory Relief Claim is totally unnecessary especially for Williams who is not a borrower, a guarantor, an obligor, and has no rights with respect to the loan at issue. Moreover, Williams fails to allege how he has any rights in the other alleged loans he mentions in passing in the Counterclaim in which CWM and Williams have nothing to do with. Williams fails to allege that he is a party to either loan, fails to allege that CWM is a party to these loans, fails to mention that both loans are current with Plaintiff, fails to state that there have not been any issues with these borrowers and it appears that Williams may be interfering with Plaintiff's loans to third parties, Zavaro, Inc. and Yostina, Inc./Petit Auto Wash. Williams also fails to attach a single document to the Counterclaim setting forth facts supporting

Frandzel Robins Bloom & Csato, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, California 90017-2427
(323) 852-1000

his wild statements about improper loans. But the fact remains how is Williams entitled to request Declaratory Relief on loans in which he has no standing?

Second, Declaratory Relief does not adjudge past wrongs or conduct but only future claims. There is no future claim to adjudicate. The loan was made to CWM, is in default, and the loan is being litigated and there is no reason for a declaratory relief claim (see *Canova v. Trustee of Imperial Irrigation Dist. Employees Pension Plan (2007) 150 Cal. App. 4th 1487, 1497; Gafcon v. Ponsor & Assocs. (2002) 98 Cal. App. 4th 1388, 1403).* Therefore, besides having no standing to allege this Claim, Williams has only alleged past wrongs and therefore this Claim must be dismissed.

**F. THE INTENTIONAL INTERFERENCE CLAIM IN THE SEVENTH CLAIM FOR RELIEF DOES NOT STATE A CLAIM FOR RELIEF WHICH CAN BE GRANTED**

The Seventh Claim for Intentional Interference with Prospective Business Advantage has also been dismissed in this Second Amended Counterclaim but has been fully briefed in the FAC Motion to Dismiss if the Court believes it has any vitality in this Counterclaim at all.

**G. DAMAGES MUST BE STRICKEN**

The Counterclaim provides a grab bag of damages at the end of the Counterclaim on pages 154-156. Since all of the Claims must be stricken there are no damages to be awarded Williams. But in the event that the Court chooses to allow any Claim against Plaintiff, then Plaintiff requests that the attenuated damages such as reputational damages, personal stress damages, and punitive and exemplary damages which do not set forth any facts as to willful or malicious conduct by Plaintiff in accordance with *Civil Code §* 3294 (a) and (b) be stricken in accordance with F.R.C.P. Rule 12(f).

As a result of the foregoing, Plaintiff requests that its Motion to Dismiss be granted and the Counterclaim dismissed. If for any reason the Court believes that all

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

Claims in the Counterclaim should not be dismissed Plaintiff has brought up numerous areas where more definite statements are necessary.

DATED: August 24, 2026

FRANDZEL ROBINS BLOOM & CSATO, L.C.

By: ______________________
ANDREW K. ALPER
Attorneys for Plaintiff and Counter-Defendant, Regions Bank an Alabama State Bank dba Ascentium Capital

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Regions Bank certified that this brief contains 5755 words, which complies with the word limit of L.R. 11-6-1.

DATED: August 24, 2026

FRANDZEL ROBINS BLOOM & CSATO, L.C.

By: ______________________
ANDREW K. ALPER
Attorneys for Plaintiff, Regions Bank an Alabama State Bank dba Ascentium Capital

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

# PROOF OF SERVICE

**Regions Bank v. Car Wash Management, LLC, etc., et al.**
**Case No. 25-cv-00359-CAS-KS**

I, the undersigned, declare and certify as follows:

I am over the age of eighteen years, not a party to the within action and employed in the County of Los Angeles, State of California. I am employed in the office of Frandzel Robins Bloom & Csato, L.C., members of the Bar of the above-entitled Court, and I made the service referred to below at their direction. My business address is 1000 Wilshire Boulevard, Nineteenth Floor, Los Angeles, CA 90017-2427.

On August 24, 2026, I served true copy(ies) of the **NOTICE OF MOTION AND MOTION OF COUNTER-DEFENDANT REGIONS BANK TO DISMISS ANDREW P. WILLIAMS SECOND AMENDED COUNTERCLAIM FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND MOTION FOR A MORE DEFINITE STATEMENT (F.R.C.P. Rule 12(b)(1) and (e); MOTION TO STRIKE (Rule 12(f)); AND FOR LACK OF STANDING PURSUANT TO F.R.C.P. Rule 17); MEMORANDUM OF POINTS AND AUTHORITIES**, the original(s) of which is(are) affixed hereto. to the party(ies) on the service list.

**SEE SERVICE LIST**

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused said document(s) to be transmitted by electronic mail. This service may be based on a court order, Code of Civil Procedure 1010.6, or an agreement among the parties to accept service by email. The name(s) and e-mail addresses of the person(s) served are set forth in the above service list. The document(s) were transmitted by electronic transmission and without error from the following email address: bwilson@frandzel.com.

**BY MAIL:** I placed the envelope for collection and mailing at Los Angeles, California. The envelope was mailed with postage fully prepaid via First Class Mail. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on August 24, 2026, at Los Angeles, California.

Barbara Wilson

Barbara Wilson

**SERVICE LIST**
**Regions Bank v. Car Wash Management, LLC, etc., et al.**
**Case No. 25-cv-00359-CAS-KS**

| | |
|---|---|
| Michael D. Gannon (pro hac vice)<br>Katharine H. Walton-(pro hac vice)<br>BakerHostetler<br>One North Wacker Drive, Suite 3700<br>Chicago, IL 60606-2859 | Tel: 312-416-8187<br>Email: mgannon@bakerlaw.com<br>kwalton@bakerlaw.com<br><br>Attorney for Defendant Washworld, Inc. |
| Xitlaly Estrada<br>Ava Clayool<br>Baker & Hostetler LLP<br>1900 Avenue of the Stars, Suite 2700<br>Los Angeles, CA 90067-4301 | Tel: 310-442-8878<br>Email: xestrada@bakerlaw.com<br>aclaypool@bakerlaw.com<br><br>Attorney for Defendant Washworld, Inc. |
| Lisa Mitts Patrick, Esq.<br>The Law Office Of Lisa Mitts Patrick<br>112 E. Amerige Ave., Suite 313<br>Fullerton, CA 92832 | Tel: 714-990-3693<br>Fax: 657-234-0012<br>Email: lolmp2021@gmail.com<br><br>Attorneys for Defendant and Cross-Complainant Jose Rene Ortiz, aka Jose R. Ortiz, aka Jose Ortiz, an individual |
| Thomas D. Sands, Esq.<br>The Sands Law Group, APLC<br>205 S Broadway Ste 608<br>Los Angeles, CA 90012 | Tel: 213-788-4412<br>Fax: 833-329-7263<br>Email: info@tslg.law<br><br>Attorney for Car Wash Management, LLC |
| Andrew Paul Williams<br>12641 Antioch Rd. Suite # 1045<br>Overland Park, KS 66213-1701 | Tel: 619-796-6469<br>Email: andrew@carwashmgmt.com<br><br>Pro Per |

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000