Andrew K. Alper (State Bar No. 088876)
aalper@frandzel.com
FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, California 90017-2427
Telephone: (323) 852-1000
Facsimile: (323) 651-2577

Attorneys for Plaintiff and Counter-Defendant, Regions Bank An Alabama State Bank dba Ascentium Capital

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| REGIONS BANK, an Alabama State Bank dba ASCENTIUM CAPITAL,,<br><br>Plaintiff,<br><br>v.<br><br>CAR WASH MANAGEMENT, LLC, a Delaware Limited Liability Company, CAR WASH MANAGEMENT, LLC, a Hawaii Limited Liability Company, WEST COVINA CAR WASH LLC, a California Limited Liability Company, JOSE RENE ORTIZ, aka JOSE R. ORTIZ, aka JOSE ORTIZ, an individual, ANDREW PAUL WILLIAMS, aka ANDREW P. WILLIAMS, aka ANDREW WILLIAMS, an individual, WASHWORLD, INC., a Wisconsin Corporation, DOES 1-100, inclusive,<br><br>Defendant.<br><br>JOSE RENE ORTIZ,<br><br>Cross-Complaint,<br><br>v.<br><br>ANDREW PAUL WILLIAMS, CAR | Case No. 2:25-cv-00359 CAS KSx)<br><br>**PETER MATHENY'S REQUEST FOR JUDICIAL NOTICE IN CONNECTION WITH PETER MATHENY'S MOTION TO DISMISS ANDREW P. WILLIAMS THIRD PARTY COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND MOTION FOR A MORE DEFINITE STATEMENT (F.R.C.P. Rule 12(b)(1) and (e) MOTION TO STRIKE COUNTERCLAIM (Rule 12(f) AND FOR LACK OF STANDING PURSUANT TO F.R.C.P. Rule 17)**<br><br>**PART 2 of 2**<br><br>*Filed concurrently with Notice of Motion and Motion to Dismiss Counterclaim; Declaration of Andrew K. Alper; and Proposed Order*<br><br>Date: September 28, 2026<br>Time: 10:00 a.m.<br>Crtrm.: 8D |

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

WASH MANAGEMENT, LLC, CAR WASH MANAGEMENT, LLC, WASHWORLD, INC., and ROES 1 to 35, inclusive,

Cross Defendants.

WASHWORLD, INC.,

Counter Plaintiff,

v.

REGIONS BANK, D/B/A ASCENTIUM CAPITAL,

Cross Defendants.

WASHWORLD, INC.,

Cross Claimant,

v.

CAR WASH MANAGEMENT, LLC,

Cross Defendant.

ANDREW PAUL WILLIAMS,

Counter Claimant, Cross-Claimant, and Third-Party Plaintiff,

v.

REGIONS BANK dba ASCENTIUM CAPITAL, JOSE RENE ORTIZ, MARIA L. ORTIZ, THE ORTIZ FAMILY TRUST OF 2024, WASHWORLD, INC., PETER MATHENY, ROES 1-50, inclusive.

Counter Defendants, Cross-Defendants, and Third-Party Defendants,

TO THE COURT, COUNTER-CLAIMANT, ANDREW P. WILLIAMS AND ALL PARTIES TO THEIR COUNSEL OF RECORD:

In connection with the Motion to Dismiss, Peter Matheny hereby requests that the court take judicial notice of the following pleadings filed in the bankruptcy of Andrew P. Williams in the United States Bankruptcy Court Southern District of California Bankruptcy case number 24-cv-03761-CL7 and the adversary action filed in the Bankruptcy case as adversary case number 25-ap-90005-CL filed by Erik Anderson, Nick Ashton and Sandra Ashton against Andrew Paul Williams ("Adversary Action") in accordance with Federal Rules Of Evidence Rule 201 as follows:

**<u>IN THE BANKRUPTCY CASE</u>**

1. Bankruptcy Docket, Exhibit "1" hereto;
2. Bankruptcy Petition. Exhibit "2" hereto,
3. Bankruptcy Schedules, Exhibit "3" hereto;
4. Bankruptcy Statement of Financial Affairs, Exhibit "4" hereto;
5. Order of Discharge, Exhibit "5" hereto;

**<u>IN THE ADVERSARY ACTION</u>**

6. Adversary Docket, Exhibit "6" hereto;
7. Complaint, Exhibit "7" hereto;
8. Order granting Default Judgment against Andrew Paul Williams, Exhibit "8" (the underlying default judgment papers are 1090 pages as docket number 12 and Plaintiff is not attaching them to this request for judicial notice for that reason only);
9. Declaration of Andrew P Williams in support of motion to set aside default and default judgment, Exhibit "9" hereto (Plaintiff is excluding the motion to set aside the default and judgment since it is not evidence)
10. Supplemental Declaration of Andrew P. Williams in support of Motion to Set Aside Default and Default Judgment, Exhibit "10", hereto.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

11. Order from Court setting the judgment against Andrew P. Wiliams aside, Exhibit "11", hereto;

12. Answer of Andrew P. Williams to Complaint, Exhibit "12" hereto.

**PLEADINGS FROM THIS CASE**

13. Opposition to Motion to Dismiss Counterclaim of Washworld [Docket number 194].

14. Plaintiff and Counter-defendant Regions Bank dba Ascentium Capital ("Plaintiff") Motion to Dismiss Second Amended Answer, Affirmative Defenses, Counterclaim, Cross-claims and Third Party Claims and related documents which also includes a Request for Judicial Notice (Docket no 238)

15. The Court's order Granting Motion for Leave to file Second Amended Answer, Affirmative Defenses, Counter-claim, Cross-claim, and Third Party Complaint and the Amended Complaint (Docket no 223).

DATED: August 28, 2026

FRANDZEL ROBINS BLOOM & CSATO, L.C.

By: ______________________

ANDREW K. ALPER
Attorneys for Plaintiff and Counter-defendant, Regions Bank, an Alabama State Bank dba Ascentium Capital

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

# EXHIBIT 7

MARTIN A. ELIOPULOS, Esq. (Bar No. 149299)
elio@higgslaw.com
JAKE D. SESTI, Esq. (Bar No. 339005)
sestij@higgslaw.com
**HIGGS FLETCHER & MACK LLP**
401 West A Street, Suite 2600
San Diego, CA 92101-7913
Tel: 619.236.1551
Fax: 619.696.1410

Attorneys for Plaintiffs
ERIK ANDERSON, NICK ASHTON and
SANDRA ASHTON

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANDREW PAUL WILLIAMS<br><br>Debtor. | Case No. 3:24-bk-03761-CL7<br><br>Chapter 7 |
| ERIK ANDERSON, NICK ASHTON, and SANDRA ASHTON,<br><br>Plaintiffs,<br><br>v.<br><br>ANDREW PAUL WILLIAMS,<br><br>Defendant. | Adversary Case No.<br><br>**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT [11 U.S.C. § 523(a)(2)(A) and (a)(6)]**<br><br>Dept.: 1<br>Judge: Hon. Christopher B. Latham |

Plaintiffs, ERIK ANDERSON, NICK ASHTON, and SANDRA ASHTON (collectively "Plaintiffs"), allege as follows:

1. This is a complaint to determine the dischargeability of a debt under 11 U.S.C. § 523(a)(2)(A) and/or (a)(6) in the above captioned Chapter 7 case of Debtor, ANDREW PAUL WILLIAMS ("Debtor").

2. This dispute centers around a fraudulent scheme perpetrated by Debtor, CAR WASH MANAGEMENT, LLC, and JANETTE A. WILLIAMS (collectively, the "State Court Defendants"), to convert and steal $200,000.00 from the Plaintiffs under the guise of opening a car wash in West Covina, California to generate revenue and income for the Plaintiffs. Unfortunately, the car wash never opened, and the State Court Defendants absconded with the plaintiffs' money. Debtor has now filed

Chapter 7 bankruptcy and seeks to discharge the debt he owes the Plaintiffs. Accordingly, the Plaintiffs seek the Court's assistance in determining whether the debt owed by Debtor to Plaintiffs is nondischargeable pursuant to the bankruptcy code sections set forth above.

## I.

## PARTIES

3. Erik Anderson ("Erik") is and at all relevant times was an individual residing in the County of San Diego, State of California.

4. Nick Ashton ("Nick") is and at all relevant times was an individual residing in the County of San Diego, State of California.

5. Sandra Ashton ("Sandra") is and at all relevant times was an individual residing in the County of San Diego, State of California.

6. Debtor is and at all relevant times was an individual residing in the County of San Diego, State of California.

7. Janette A. Williams ("Janette") is and at all relevant times was an individual residing in the County of San Diego, State of California. Janette is Debtor's mother.

8. Car Wash Management, LLC ("CWM") is and at all relevant times was a Hawaiian limited liability company holding California entity no. 201916210030 with its principal place of business in the County of San Diego, State of California. Based upon information and belief, Debtor and Janette are principals, members and/or managers of CWM.

9. The Plaintiffs are informed and believe that CWM, on the one hand, and Debtor, on the other hand, are the alter egos of each other, and on that basis allege, there exists a unity of interest and ownership between them such that any individuality and separateness between them does not exist. The Plaintiffs are further informed and believe, and on that basis allege, Debtor commingled and/or used assets of CWM for his personal use, caused assets to be transferred to them and others

without adequate consideration, and withdrew funds from CWM's bank accounts for their personal use. Moreover, Debtor has completely controlled, dominated, managed, and operated CWM to be merely a conduit for his personal benefit, such that any individuality or separateness of CWM and Debtor does not exist.

10. Adherence to the fiction of the separate existence of Debtor and CWM as entities distinct from and among themselves would permit an abuse of the corporate privilege and would promote injustice in that the Plaintiffs are informed and believe, and on that basis allege, that CWM has become a mere shell and sham without capital or assets, and/or has been so inadequately capitalized that, compared with the business to be done and the risks of loss, its capitalization is illusory.

11. Further adherence to the fiction of the separate existence of CWM as an entity distinct from Debtor permits abuse of the corporate privilege and would sanction a fraud in that Debtor has withdrawn and distributed to themselves or others, large sums of CWM's assets without any consideration, all for the purpose of avoiding and preventing tracing of assets, findings of liability, attachment and execution by creditors, thereby rendering CWM immune from liability, insolvent and/or unable to meet its obligations.

## II.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over the matters set forth in this Complaint pursuant to 28 U.S.C. §§ 157(a) and 1334(a) because they arise out of and are related to the above captioned Chapter 7 case before this Court.

13. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (I), and this Court may, consistent with Article III of the Constitution, enter final orders or judgments and conduct a trial absent consent of the parties.

14. Venue of this adversary proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a) and (c) because Defendants' Chapter 7 case is

pending in this judicial district.

## III.

## GENERAL ALLEGATIONS

15. In October 2023, Debtor approached Erik and Nick with a business opportunity to own a car wash. In concept, a new entity would be formed (West Covina Car Wash ("WCCW")) which in turn would hire CWM to oversee construction of the car wash. Debtor provided Erik and Nick with a "proforma" and a "prospectus" promoting the opportunities that could be realized by investing with him in this plan. True and correct copies of these items are attached hereto as **Exhibit A.**

16. During subsequent discussions in October 2023 among Debtor, Erik, Nick and ultimately Sandra, the parties agreed to form a limited liability company in which CWM would be the primary owner (70%) while Erik, Nick and Sandra would each hold a ten percent (10%) interest.

17. Erik, Nick, and Sandra would be responsible for signage, painting, and marketing while CWM would build out the car wash. CWM would contribute $200,000 to the entity while Erik, Nick and Sandra would each contribute $66,666. Debtor assured the Plaintiffs the car wash would open before January 1, 2024. At the same time, Debtor was anxious and insistent in receiving the Plaintiffs' investment, claiming he had arranged a special lease agreement with the owner of the property where the car wash would be located.

18. On October 26-27, 2023, Nick, Erik, Sandra, and Debtor (on behalf of CWM) signed an operating agreement for "West Covina Car Wash, a Delaware Limited Liability Company. DBA Dam Car Wash." A true and correct copy of the operating agreement is attached hereto as **Exhibit B.** At the time, CWM was not in good standing with the California Franchise Tax Board or the California Secretary of State, and therefor was legally unable to conduct business in the State of California.

///

19. Thereafter, Debtor directed the Plaintiffs to deposit their contributions into a bank account which Debtor represented he had set up for WCCW. At that time, Debtor represented to the Plaintiffs there would be approximately $100,000 for operating capital in the account after considering construction and related costs for the car wash.

20. However, the Plaintiffs later learned the bank account was held in the name of CWM and wholly controlled by Debtor and the other State Court Defendants.

21. By December 2023, Debtor was not providing any company financial information to the Plaintiffs despite repeated requests for same. The Plaintiffs were frustrated as they did not have any transparency or access to the bank account where they had deposited their monies totaling $200,000.00. This led to a meeting between the Plaintiffs and Debtor that month where he brought a notepad with handwritten estimates of equipment and related costs for the car wash. During this meeting, Debtor told the Plaintiffs they were approximately $70,000.00 over budget (after just one month!) and that the Plaintiffs would have to make up the deficit through their expected profits. Until this meeting, Debtor repeatedly told the Plaintiffs the project was on schedule and on budget.

22. The Plaintiffs later discovered Debtor had been commingling the Plaintiffs' $200,000.00 investment with CWM's funds. The Plaintiffs demanded Debtor provide an accounting to demonstrate how he was keeping the Plaintiffs' investments separate and apart from any of Debtor's or CWM's other affairs. Over three months later, Debtor provided a report to the Plaintiffs prepared by Debtor and the other State Court Defendants. Not surprisingly, the report was deficient in several ways and did not provide the transparency and accounting the Plaintiffs were demanding.

///

///

23. The Plaintiffs next demanded Debtor open a new account dedicated to WCCW. Although Debtor opened the account, Debtor never transferred any of the Plaintiffs' monies into the account

24. By April-May 2024, the car wash was nowhere near close to opening. The Plaintiffs quickly learned vendors and contractors (painters, landscapers, designer) had never been paid, building permits had not been obtained and insurance had not been procured, leaving to question where the Plaintiffs' money went. The Plaintiffs were later told by associates of Debtor's that CWM had no money. At this point, Debtor's house of cards began to fall.

25. In a desperate attempt to salvage the situation, Debtor attempted to open the car wash in May 2024 only to be immediately shut down for not having the proper permits. To date, the car wash remains non-operable, and the Debtor has refused to return the Plaintiffs' monies.

26. On July 29, 2024, Plaintiffs filed a complaint against the State Court Defendants in the San Diego County Superior Court as Case No.: 24CU003299C alleging causes of action for: (i) fraud, deceit, and intentional misrepresentation; (ii) negligent misrepresentation; (iii) rescission of contract; (iv) misapplication of money; and (v) conversion (the "State Court Action").

27. On October 4, 2024, Debtor filed the above referenced chapter 7 bankruptcy case. As a result of the Chapter 7 bankruptcy case, the State Court Action is automatically stayed as to Debtor pursuant to 11 U.S.C. §362(a).

28. On December 19, 2024, Debtor filed a First Amended Complaint in the State Court Action for the limited purpose of adding and/or supplementing allegations and/or causes of action against Debtor's mother, Janette. The State Court Action remains pending against the other State Court Defendants.

///

///

///

## IV.

## FIRST CLAIM FOR RELIEF

### Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A)

29. Plaintiffs incorporate all allegations contained in paragraphs 1 through 28 of this Complaint as though fully set forth herein.

30. A debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretense, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition is not dischargeable. 11 U.S.C. § 523(a)(2)(A).

31. The Debtor's misrepresentations alleged above were made intentionally, with full knowledge that they were false.

32. As set forth above, Debtor made false representations to the Plaintiffs regarding Debtor's intentions and promises relative to the car wash enterprise. Debtor made these misrepresentations to the Plaintiffs during preparation of the operating agreement for WCCW and continued making false and fraudulent representations regarding the status and progress of the car wash and monies contributed by the Plaintiffs.

33. Debtor knew throughout discussions with, and documentation provided to, the Plaintiffs that Debtor did not have the intent to follow through with the promised commitments and representations and that Debtor intended to deceive Plaintiffs.

34. Debtor knew that the misrepresentations made to the Plaintiffs detailed above were false when Debtor made them, or that Debtor made the representations recklessly and without regard for their truth.

35. Since the beginning of their relationship, Debtor intended the Plaintiffs to rely upon their misrepresentations regarding their experience, qualifications, and promise to return the Plaintiffs' invested monies plus returns on those investments to induce the Plaintiffs to enter the operating agreement and to pay the monies.

36. The Plaintiffs reasonably relied upon Debtor's misrepresentations. The Plaintiffs would not have entered into the operating agreement or invested their money had they known the truth. The Plaintiffs did not suspect, or have reason to suspect, Debtor's misrepresentations might be untrue until, at the earliest, May 2024.

37. As a direct and proximate result of the foregoing conduct of Debtor, the Plaintiffs have sustained damages of least of $200,000.00, the exact amount of which will be subject to proof at time of trial.

38. It was foreseeable that the fraud committed by Debtor would impact the Plaintiffs negatively and cause damage.

39. The Plaintiffs' reliance on the above misrepresentations was justifiable and a substantial factor in causing the Plaintiffs' harm.

40. The aforementioned wrongful conduct of Debtor violates 11 U.S.C. § 523(a)(2)(A), and, as such, the amount of damages suffered by Plaintiffs as a result of Debtor's wrongful conduct is not dischargeable in this and any other future bankruptcy filed by Debtor.

**V.**

**SECOND CLAIM FOR RELIEF**

**Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(6)**

41. Plaintiffs incorporate all allegations contained in paragraphs 1 through 40 of this Complaint as though fully set forth herein.

42. A debt for willful and malicious injury by the debtor to another person or to property of another is not entitled to discharge. 11 U.S.C. § 523(a)(6).

43. To satisfy this standard, the debtor's conduct must have been "tortious," and the injury must have been "willful," and "malicious."

44. As detailed above, in October 2023 the Plaintiffs provided Debtor with $200,000.00 to be used toward WCCW and the enterprise related thereto.

///

///

45. However, while the Plaintiffs' monies were in the custody and control of the Debtor, Debtor used and misapplied the Plaintiffs' monies for his own use and to the exclusion of the Plaintiffs and the enterprise.

46. Despite demands for transparency, an accounting and a return of the Plaintiffs' monies, Debtor has refused and continues to refuse to return the monies to the Plaintiffs.

47. As a direct and proximate result of the Debtor's misapplication of the Plaintiffs' money and breach of his duties as trustee for the Plaintiffs' money, the Plaintiffs has been deprived of the sum of $200,000.00. Further, Debtor failed to use the Plaintiffs' monies for the car wash enterprise causing the Plaintiffs to suffer the loss of anticipated and promised profits and exposing the Plaintiffs to liabilities related to the enterprise.

48. Debtor's taking of Plaintiff's $200,000.00 was an illegal and "tortious" conversion under California state law in that:

a. At all times relevant, Plaintiffs had an ownership or right of possession of the $200,000.00;

b. Debtor converted Plaintiffs' $200,000.00 because Debtor's unauthorized use of the $200,000.00 was a wrongful act or disposition of Plaintiffs' property rights; and

c. Plaintiffs have been damaged in the amount of at least $200,000.00.

49. As alleged above, Debtor's actions were done in "willful" and "malicious manner," solely intending to harm Plaintiffs and take as much of Plaintiffs' money as possible.

50. Debtor's wrongful actions in illegally converting Plaintiffs' $200,000.00 under California law were "willful" because Debtor had a subjective motive to inflict injury on Plaintiffs, and/or knew that injury to Plaintiffs was substantially certain to occur from his conduct.

51. Debtor's wrongful actions in illegally converting Plaintiffs' $200,000.00 under California law, were "malicious" in that the illegal conversion of Plaintiffs' $200,000.00 by Debtor was:

a. A wrongful act;

b. Done intentionally;

c. Which necessarily caused injury to Plaintiffs; and

d. Was done without just cause or excuse.

52. The aforementioned wrongful conduct of Debtor violates 11 U.S.C. § 523(a)(6), and, as such, the amount of damages suffered by Plaintiffs as a result of Debtor's wrongful conduct is not dischargeable in this and any other future bankruptcy filed by Debtor.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray that this Court enter judgment against Debtor as follows:

1. That the full amount of damages totaling at least $200,000.00 owed by Debtor to Plaintiffs is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

2. That the full amount of damages totaling at least $200,000.00 owed by Debtor to Plaintiffs is excepted from discharge pursuant to 11 U.S.C. § 523(a)(6).

3. For costs of this Adversary Proceeding; and

4. For such other and further relief as this Court deems appropriate.

Dated: January 6, 2025

**HIGGS FLETCHER & MACK LLP**

By: /s/ *Martin A. Eliopulos*
MARTIN A. ELIOPULOS, ESQ.
JAKE D. SESTI, ESQ.
Attorneys for Plaintiffs
ERIK ANDERSON, NICK ASHTON and SANDRA ASHTON

# EXHIBIT A

## Car Wash Proforma West Covina

Cars washed at pricing of $9.00, $13.00, $15.00, $20.00 wash packages
Average revenue per wash of **$14.00** Hypothetical Average Revenue Per Wash: $14.00
All wash packages are 4 pass washes, each pass is one car length
Each Car Wash is capable of washing 1200+ cars per day
Proforma done for Southwest USA weather patterns

**Actual wash volume is dependent on competition, speed & type of traffic, visibility, weather and other factors**

| | Example 1 | Example 2 | Example 3 | |
|---|---|---|---|---|
| Cars Washed-Yearly Avg. | 109,500 | 146,000 | 182,500 | |
| Cars Per Day | 300 | 400 | 500 | |
| Automatic Wash Revenue | $1,533,000.00 | $2,044,000.00 | $2,555,000.00 | |
| | $0.00 | $0.00 | $0.00 | |
| **Total Revenue Yearly** | $1,533,000.00 | $2,044,000.00 | $2,555,000.00 | |
| **Operating Expenses** | | | | Operating expenses, cost per car |
| Variable Expenses | | | | **Examples 1,2,3** |
| Supplies: Soap, Wax, Salt | $54,750.00 | $73,000.00 | $91,250.00 | $0.50 |
| *Utilities: Gas | $1,095.00 | $1,460.00 | $1,825.00 | $0.01 |
| *Utilities: Water | $84,315.00 | $112,420.00 | $140,525.00 | $0.77 |
| *Utilities: Electric | $93,075.00 | $124,100.00 | $155,125.00 | $0.85 |
| Credit Card Fees | $28,470.00 | $37,960.00 | $47,450.00 | $0.26 |
| Fixed Expenses | | | | Operating expenses, fixed per year |
| Customer Claims | $3,000.00 | $3,000.00 | $1,000.00 | $3,000.00 |
| Utilities Phone & Internet | $2,400.00 | $2,400.00 | $2,400.00 | $2,400.00 |
| Insurance | $28,000.00 | $28,000.00 | $28,000.00 | $28,000.00 |
| Mowing/Landscaping/Plow | $6,000.00 | $6,000.00 | $2,000.00 | $6,000.00 |
| Labor ** | $200,000.00 | $200,000.00 | $200,000.00 | $200,000.00 |
| Management | $0.00 | $0.00 | $0.00 | $0.00 |
| Misc | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 |
| **Total Operating Expenses** | $506,105.00 | $593,340.00 | $674,575.00 | |
| Property Tax & Mortgage | $348,000.00 | $348,000.00 | $348,000.00 | |
| **Gross Operating Profit (EBITDA)** | $678,895.00 | $1,102,660.00 | $1,532,425.00 | |

To compare a hypothetical site input the following in the yellow highlighted cells:

Hypothetical Average revenue per wash
Hypothetical Cars Washed - Yearly Avg.
Hypothetical Expenses: Cost Per Car
Hypothetical Expenses: Fixed, Yearly
Estimate Labor As Desired

**EBITDA: Earnings Before Interest, Taxes, Depreciation and Amortization.**
The EBITDA metric is a variation of operating income (EBIT) because it excludes non-operating expenses and certain non-cash expenses. The purpose of these deductions is to remove the factors that business owners have discretion over, such as debt financing, capital struction, methods of depreciation and taxes (to some extent). It can be used to showcase a firm's financial performance without accounting for its capital structure.

*Utility rates vary

Site Notes:
Reclaim Used

Triple foamer & stand alone dryers installed

Electric, Total Cost Per KWH: $0.1346
Gas, Distribution Cost Per MCF: $0.8615
Gas, Usage Cost Per MCF: $3.8200
Water: Cost Per Cubic Feet: $0.0690; Cost Per CCF: $6.900
Sewer Cost Per Cubic Feet: $0.0406; Cost Per CCF: $4.06

Avg. Water Usage Per Car: 7.483 Cubic Feet (56 Gallons)
Includes: Washing bay once per week, softeners & R.O. reject

This is meant to be a guide and needs to be tailored to actual items mentioned above such as labor, utilities, pricing, and usage rates. Some washes experience much higher usage than the # of cars per day shown here.

# West Covina Prospectus

| Item | Cost |
|---|---|
| Painting | $22,000.00 |
| Training | $12,000.00 |
| T-Shirts / uniform | $4,000.00 |
| Landscaping | $4,000.00 |
| Labor, Vacuum | $1,500.00 |
| Labor bay, equip, pump | $3,000.00 |
| Misc\. Parts, fittings | $2,000.00 |
| Total: | $48,500.00 |

# EXHIBIT B

OPERATING AGREEMENT

For West Covina Car Wash, a Delaware Limited Liability Company, DBA, Dam Car Wash.

1. Formation

The members hereby form a Limited Liability Company ("Company") pursuant to the laws of the State of Delaware and agree to the terms and conditions set forth in this Operating Agreement.

2. Name

The name of the Company is West Covina Car wash, doing business as Dam Car Wash.

2.5. Registered Agent

Registered Agent Inc. 8 The Green, Ste A, Dover, DE 19901

3. Purpose

The purpose of the Company is to generate revenue for its members via the sales of car wash services.

4. Principal Place of Business

The principal place of business shall be 310 S Vincent Ave, West Covina, CA 91790.

5. Members and Contributions

The Members of the Company are:

- [Nick Ashton]: Contribution [$66,666], Ownership [10%]
- [Erik Anderson]: Contribution [$66,666], Ownership [10%]
- [Sandra Ashton]: Contribution [$66,666], Ownership [10%]
- [Car Wash Management LLC]: Contribution [$200,000], Ownership [70%]

6. Non-Diluting Membership Interests

Notwithstanding any provisions in this Agreement to the contrary, the membership interests of the Members, as described in Section 5, shall not be subject to dilution or reduction unless unanimously agreed upon in writing by all Members.

7. Management

The Company will be managed by its Members. Decisions shall be made by a majority vote unless otherwise stated in this Agreement.

8. Distribution of Profits and Losses

Profits and losses shall be distributed to the Members in proportion to their ownership percentages, as described in Section 5.

9. Membership Transfers

No Member may transfer or assign their interest in the Company without the unanimous written consent of the other Members.

10. Dissolution

The Company may be dissolved upon the unanimous agreement of the Members.

**11. Amendments**

This Agreement may be amended or modified only with the unanimous written consent of all Members.

**12. Governing Law**

This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware.

**13. Dispute Resolution**

Any disputes arising from this Agreement shall be resolved through mediation or, if unsuccessful, through binding arbitration in Delaware.

**14. Entire Agreement**

This Agreement constitutes the entire agreement between the parties and supersedes all prior discussions, negotiations, and agreements, whether oral or written.

*IN WITNESS WHEREOF*, the undersigned have executed this Operating Agreement as of [Date].

DocuSigned by:
Nick Ashton

Nick Ashton 10/26/2023

DocuSigned by:

Erik Anderson 10/27/2023

DocuSigned by:
Sandra Ashton

Sandra Ashton 10/26/2023

DocuSigned by:

Car Wash Management 10/26/2023

# EXHIBIT 8

CSD 3

Name, Address, Telephone No. & I.D. No.
Martin A. Elipulos, Esq. (SBN 149299)
Higgs Fletcher & Mack LLP
401 West A Street, Suite 2600
San Diego, CA 92101
Tel: 619-236-1551
Fax: 619-696-1410
Email: elio@higgslaw.com

Order Entered on
September 15, 2025
by Clerk U.S. Bankruptcy Court
Southern District of California

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West F Street, San Diego, California 92101-6991

| | |
|---|---|
| In Re ANDREW PAUL WILLIAMS<br>Debtor. | BANKRUPTCY NO. 24-bk-03761-CL7 |
| ERIK ANDERSON; NICK ASHTON; AND SANDRA ASHTON<br>Plaintiff(s) | ADVERSARY NO. 25-ap-90005-CL |
| v. ANDREW PAUL WILLIAMS<br>Defendant(s) | Date of Hearing:<br>Time of Hearing:<br>Name of Judge: Hon. Christopher B. Latha |

## ORDER ON
## PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

The court orders as set forth on the continuation pages attached and numbered 2 through 2 with exhibits, if any, for a total of 2 pages. Motion/Application Docket Entry No. 12 .

jro

//

//

//

//

DATED: September 15, 2025

[signature]
Judge, United States Bankruptcy Court

ORDER ON PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

DEBTOR: ANDREW PAUL WILLIAMS

CASE NO.:24-bk-03761-CL7
ADV NO.:25-ap-90005-CL

The Court, having considered the Motion for Entry of Default Judgment (the "Motion") and all supporting pleadings and papers filed by Plaintiffs, ERIK ANDERSON, NICK ASHTON and SANDRA ASHTON (collectively "Plaintiffs") on September 4, 2025 as ECF #12 in the above-referenced Adversary Proceeding filed against Debtor, ANDREW PAUL WILLIAMS ("Debtor"), and good cause appearing therefore, rules as follows:

1. The Motion is GRANTED;

2. The $195,000.00 debt owed by Debtor to Plaintiffs identified and established by Plaintiffs in the Motion, and in an amount less than prayed for by Plaintiffs in the adversary complaint filed on January 6, 2025, as ECF #1 in the above-referenced Adversary Proceeding, is hereby excepted from discharge pursuant to 11 U.S.C. sections 523(a)(2)(A) and (a)(6);and

3. Judgment is hereby entered in favor of Plaintiffs and against Debtor in the amount of $195,000.00.

IT IS SO ORDERED.



Signed by Judge Christopher B. Latham September 15, 2025

# EXHIBIT 9

CSD 1000 [12/01/03]

Name, Address, Telephone No. & I.D. No.
Andrew Paul Williams
12641 Antioch Rd Suite #1045
Overland Park KS 66213
(619) 796-6469

FILED
2026 MAR 12 PM 2:45

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
325 West F Street, San Diego, California 92101-6991

In Re Williams

Tax I.D.(EIN)# ______________ S.S.#XXX-XX-6131 Debtor.

BANKRUPTCY NO. 24-03761-CL7
25-90035-CL7

[add if filing in response to hearing]
Date of Hearing: June 8 2026
Time of Hearing: 10:30 am
Name of Judge: Hon. Christopher B. Latham

Declaration of Andrew

Andrew Paul Williams
Defendant, Pro Se
Mailing Address: 12641 Antioch Rd., Suite #1045
Overland Park, KS 66213
Telephone: (619) 796-6469
Email: andrew@carwashmgmt.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

*In re*

**ANDREW PAUL WILLIAMS,**

Debtor.

**ERIK ANDERSON, NICK ASHTON, and SANDRA ASHTON,**

Plaintiffs,

v.

**ANDREW PAUL WILLIAMS,**

Defendant.

Bankruptcy Case No. 24-03761-CL7
Chapter 7

Adv. Proc. No. 25-90005-CL

**DEFENDANT'S MOTION TO VACATE DEFAULT AND DEFAULT JUDGMENT PURSUANT TO FED. R. CIV. P 60(b) (Made Applicable by Fed. R. Bankr. P. 9024)**

Hearing Date: June 8, 2026
Hearing Time: 10:30 a.m.
Judge: Hon. Christopher B. Latham
Dept.: 1, Room 218

## DECLARATION OF ANDREW PAUL WILLIAMS IN SUPPORT OF MOTION TO VACATE DEFAULT AND DEFAULT JUDGMENT

I, Andrew Paul Williams, declare:

1. I am the defendant in the above-captioned adversary proceeding and the debtor in the underlying Chapter 7 bankruptcy case. I have personal knowledge of the facts stated herein. If called as a witness, I could and would testify competently to the matters set forth in this Declaration.

2. I make this Declaration in support of my Motion to Vacate Default and Default Judgment Pursuant to Federal Rule of Civil Procedure 60(b), filed and served concurrently herewith.

**A. Background and Business Relationship with Plaintiffs.**

3. I am the founder and Chief Executive Officer of Car Wash Management LLC ("CWM"), a Delaware limited liability company organized to develop and operate car wash facilities.

4. In or about September-October 2023, I was introduced to Plaintiffs Erik Anderson, Nick Ashton, and Sandra Ashton in connection with their interest in investing in a car wash project. The discussions led to a joint venture in which CWM and the three individual Plaintiffs would together fund the construction of a car wash at 310 South Vincent Avenue, West Covina, California.

5. The vehicle for the project was "West Covina Car Wash, LLC" ("WCCW"), a Delaware LLC formed for the venture, doing business as "Dam Car Wash."

6. The terms of the venture were memorialized in an Operating Agreement dated October 26-27, 2023, attached as Exhibit B to Plaintiffs' Adversary Complaint (ECF No. 1). Under the Operating Agreement, CWM took a 70% membership interest in exchange for a $200,000 capital contribution; Erik Anderson took 10% for $66,666; Nick Ashton took 10% for $66,666; and Sandra Ashton took 10% for $66,666. Plaintiffs' collective contribution at the equity level was thus $199,998.

7. The Operating Agreement attached as Exhibit B to the Complaint is a basic template that the parties signed in October 2023 to permit the venture to commence. Plaintiff Erik Anderson, who is a sophisticated business person, undertook responsibility for drafting a more elaborate operating agreement, working with his own attorney during the venture's formation. That more elaborate agreement was never completed or executed. I expect to produce, in connection with merits litigation, correspondence from Mr. Anderson transmitting his draft of the more elaborate operating agreement.

8. Section 13 of the Operating Agreement provides: "Any disputes arising from this Agreement shall be resolved through mediation or, if unsuccessful, through binding arbitration in Delaware." Section 12 provides that the Operating Agreement is governed by Delaware law. Plaintiffs did not invoke either mediation or arbitration before filing the State Court Action or this Adversary Complaint.

**B. CWM's Substantial Over-Contribution to the Project.**

9. CWM in fact contributed approximately **$350,000** to the West Covina project, that is, approximately **$150,000 in excess** of its $200,000 capital commitment, and approximately 175% of the Plaintiffs' combined $200,000 contribution. The detail of those contributions is reflected in CWM's bank statements and in the bank records that Plaintiffs themselves filed with their Motion for Default Judgment as ECF Nos. 12-3 and 12-4.

**10.** Plaintiffs' own filings and the Bank of America records they themselves submitted with their Motion for Default Judgment (ECF Nos. 12-3, 12-4) confirm that Sandra Ashton wired $100,000 from her revocable trust on October 30, 2023, and Erik Anderson wired $95,000 on November 21, 2023, for a total of $195,000. The Operating Agreement attached as Exhibit B to the Complaint stated each Plaintiff's equity commitment at $66,666, totaling $199,998. Plaintiffs collectively contributed approximately $4,998 less than their stated equity commitments under the Operating Agreement.

**11.** After cost overruns emerged on the project, in or about December 2024, I disclosed a $90,000 cost overrun to all three Plaintiffs in person at a meeting held at Nick Ashton's apartment in the University Towne Centre (UTC) area of La Jolla, California. Mr. Anderson's father, a former Chief Executive Officer of Blue Shield, was also present. All three Plaintiffs and I (on behalf of CWM) attended the meeting. The Plaintiffs expressed concern that further capital contributions by CWM could result in dilution of their respective 10% equity interests, consistent with Section 6 of the Operating Agreement (Non-Diluting Membership Interests), which prohibited dilution of any Member's interest absent unanimous written consent. Mr. Anderson's father proposed that the additional advances CWM would make to WCCW to cover the cost overrun and to permit the project to continue be characterized as loans from CWM to WCCW (rather than additional equity contributions), thereby preserving the existing 70/30 equity allocation under Section

5 of the Operating Agreement. I agreed to that structure on behalf of CWM. Mr. Anderson and Ms. Ashton agreed. Mr. Nick Ashton was vocal in his reluctance about the loan structure but, in order to permit the project to move forward, agreed as well. The parties accordingly agreed that approximately $95,000 of CWM's continuing advances to WCCW would be treated as a loan repayable to CWM. CWM has never been repaid and continues to bear that loss.

**C. The Car Wash Opened and Operated; Sun Day Carwash Continues to Operate Today.**

12. Paragraph 25 of the Adversary Complaint alleges that the car wash "remains non-operable." That allegation is materially false.

13. The car wash at 310 South Vincent Avenue, West Covina, **was built**, **did open**, and **did operate** for approximately one to two months in or about May-June 2024. During that period the car wash had business permits, commercial insurance, employees, point-of-sale receipts, credit-card processing transactions, and revenue.

14. Today, the same car wash facility, at the same address, is operating under the trade name "Sun Day Carwash." Sun Day Carwash maintains a Google business listing showing approximately 70 reviews averaging 4.8 stars; a Yelp business listing; and the City of West Covina's official Instagram account publicly featured Sun Day Carwash in a post dated December 15, 2025. The equipment installed by CWM at the West Covina location is the same equipment Sun Day Carwash is using today.

Screenshots of the public Google listing, Yelp listing, and City of West Covina Instagram post are attached as Exhibit B.

15. The replacement value of the equipment installed at 310 South Vincent Avenue is approximately $550,000. The funds I and CWM put into the project were converted into tangible, operating equipment that is producing revenue today. Plaintiffs were responsible under the venture for marketing, signage, exterior vinyl wraps, project administrative paperwork, and other launch-related responsibilities. Plaintiffs did not perform any of these obligations. Plaintiffs also collectively underpaid their stated equity commitments by approximately $5,000 (contributing $195,000 against the $199,998 commitment). When CWM later requested that Plaintiffs contribute additional capital to ensure the project could launch successfully, Plaintiffs refused outright. CWM advanced the additional capital itself. Plaintiffs further demanded that CWM shut the project down rather than complete it. Plaintiffs' refusal to perform their assigned non-financial responsibilities, their refusal to fully fund their stated equity commitments, their refusal to contribute additional capital when requested, and their demand that the project be shut down rather than completed substantially contributed to the venture's underperformance during its operating period and to the project's eventual closure.

**D. Bankruptcy Filing; Adversary Complaint.**

16. On October 4, 2024, I filed a voluntary petition for relief under Chapter 7 in this Court (Bankr. Case No. 24-03761-CL7). I was represented in the bankruptcy case by attorney Ronald E. Stadtmueller of San Diego.

17. On the instruction of attorney Stadtmueller, I listed "12136 Avenida Sivrita, San Diego, CA" as my address on the petition. **I did not in fact reside at that address.** That address is my parents' home. I made Mr. Stadtmueller aware of this fact at the time the petition was prepared. Mr. Stadtmueller instructed me to use the address anyway. The correct ZIP code for 12136 Avenida Sivrita is **92128** (Rancho Bernardo).

18. My discharge under Chapter 7 was entered on January 7, 2025. On January 6, 2025, the day before discharge, Plaintiffs filed the Adversary Complaint (ECF No. 1). The Summons issued the same day (ECF No. 2).

19. Service of the Summons and Complaint was made by mail on January 7, 2025, to "12136 Avenida Sivrita, San Diego, CA **92121**", the wrong ZIP code. The correct ZIP for the address is 92128. (See ECF Nos. 4, 5, 6-1.) The wrong ZIP appears in every certificate of service in the record. The two ZIP codes correspond to neighborhoods approximately eight miles apart. **ZIP code 92121 used in the certificate of service does not correspond to any address on Avenida Sivrita; rather, ZIP 92121 is the ZIP code of my business mailing address (7776 Trade Street, San Diego, CA 92121).** I did not receive the Summons and Complaint.

**E. Mr. Stadtmueller's Single-Email Abandonment of the Adversary Proceeding.**

**20.** Mr. Stadtmueller forwarded the Adversary Complaint to me by a single email. The email read in full as follows:

"Mr. Williams, See the attached Adversary Complaint filed in your case alleging non dischargeability of a debt. As you know my representation does not include defense of any Adversary Proceedings. If you wish to discuss the case and receive a referral to someone who may be willing to represent you in this matter please contact me Wednesday. You must file a timely Answer to the Complaint or the plaintiff will be able to obtain a default judgment. Ron."

**21.** I attach to this Declaration as **Exhibit A** a true and correct copy of Mr. Stadtmueller's email. Mr. Stadtmueller never followed up. He did not telephone me. He did not refer me to any specific counsel. He did not file a notice of limited representation in the adversary proceeding. He took no further action of any kind. He did this knowing that I had no other counsel for the adversary proceeding; that he himself had instructed me to list a non-residence address on the bankruptcy petition; that the Complaint had been served by mail to that address; and that I was, at the time, in serious medical and personal crisis.

**F. My Active Medical Crisis During the Response Period, Documented in Contemporaneous Kaiser**

**22.** I have been a Kaiser Permanente patient for many years and have an extensive Kaiser medical record. During the period from December 30, 2024 through March 3, 2025, the period spanning, including, and continuing after the response window

for the Adversary Complaint. I had **at least eight medical encounters** with Kaiser Permanente, primarily with the Department of Rheumatology, in active management of an Adult-Onset Still's Disease ("AOSD") flare. Because the underlying records contain extensive private health information substantially exceeding what is necessary for purposes of this Motion, I am lodging the records under seal pursuant to a separately filed Motion to File Documents Under Seal. The summary statements set forth in this Section F are based on those records and are supported by the specific dated entries cited.

23. **Diagnostic baseline.** I was diagnosed with Adult-Onset Still's Disease in February 2017 and have been under active rheumatology care since that time. AOSD is a rare, severe systemic autoimmune disease characterized by recurrent flares of high inflammatory markers, fevers, evanescent rash, severe joint pain, debilitating fatigue, and elevated liver enzymes. The disease can result in multi-organ involvement and typically requires sustained high-dose corticosteroids and biologic immunosuppressant therapy. In my case, AOSD has produced severe, recurrent flares requiring multiple emergency department visits, aggressive intravenous corticosteroid intervention, ongoing biologic immunosuppressant therapy, and Schedule II opioid analgesia for pain management. The disease has had profound and sustained impact on my functional capacity and ability to engage in normal personal and professional activities. (See sealed medical record, Exhibit E.) My

diagnosis and treatment history pre-date the events giving rise to this Adversary Proceeding by approximately seven years.

24. **Pre-response baseline visit, December 30, 2024. Six days before the Adversary Complaint was filed** (Plaintiffs filed January 6, 2025). I was seen by Dr. Firoozeh Motamedi at Kaiser Rheumatology with daily body aches and pains "like having the flu," as documented in her contemporaneous progress note. I had been experiencing those symptoms for an extended period. The note documents that I described feeling "lethargic and as if [I'd] been hit by a bus upon waking," and significantly worse after exertion. The treatment plan documented at that visit included ordering inflammatory labs and considering a switch to another biologic such as canakinumab or tocilizumab. (See sealed medical record, Exhibit E [12/30/2024 Office Visit, Motamedi].)

25. **January 30, 2025, Emergency Department, Kaiser San Diego Medical Center.** On January 30, 2025, within the response period, I presented to the Kaiser ED with whole-body urticarial rash, fatigue, weakness, and severe joint pain that I described to the treating physician as feeling "like being hit by a bus," with difficulty breathing on movement. The treating physician (Dr. K.L. Welker Cassius) diagnosed an AOSD flare, in consultation with rheumatology (Dr. Motamedi). My objective laboratory values demonstrated severe systemic inflammation: **C-reactive protein (CRP) 124.1 mg/L (reference ≤7.4)**; white blood cell count 12.6 (elevated); tachycardia 100-109 beats per minute. I was prescribed **high-dose oral prednisone**

**(60 mg daily for seven days)** and discharged to follow up with rheumatology. (See sealed medical record, Exhibit F [1/30/2025 ED records].)

26. **February 2, 2025, Second Emergency Department Visit.** Three days later, on February 2, 2025, three days before my answer was due, I returned to the Kaiser ED with throat swelling, the sensation of throat closing, brief difficulty breathing, ongoing myalgias, fatigue, and generalized weakness. The treating physician (Dr. M.B. Del Valle), in consultation with rheumatology, administered **intravenous Solu-Medrol (methylprednisolone 250 mg)**, a high-dose intravenous corticosteroid; intravenous Toradol (ketorolac); and **oxycodone-acetaminophen (Percocet)** for pain. Objective laboratory values continued to show severe inflammation: CRP 109.6 mg/L; ESR 38 (elevated). I was discharged on a Schedule II opioid prescription with a referral to rheumatology the next day. (See sealed medical record, Exhibit E [2/2/2025 ED records].)

27. **February 3, 2025, Rheumatology Video Visit, Dr. Liu.** The day after the second ED visit, I was seen by Kaiser Rheumatologist Dr. Paul Y. Liu by video. Dr. Liu's progress note confirms the AOSD flare, increases my prednisone to **80 mg daily** with a structured taper, initiates **tocilizumab (Actemra) injectable biologic therapy** every two weeks, and continues my Percocet prescription "as needed for pain." The note documents that I was "diffuse[ly]" rashed, with continued symptoms. Dr. Liu also documents that I had been seen at the ED twice within the prior four days. (See sealed medical record, Exhibit E [2/3/2025 Liu video visit].)

28. **February 10, 2025, Rheumatology Office Visit, Dr. Motamedi, TREATING PHYSICIAN'S WORK-RESTRICTION NOTE.** On February 10, 2025, five days after my answer was due, and eight days before the Clerk's entry of default, I was seen in person by Dr. Motamedi. Her progress note records that I described to her: severe joint pain moving from joint to joint, recent significant pain in the left second PIP and left ankle, muscle cramping throughout my body, difficulty controlling body temperature with night sweats and chills, a rash that comes and goes, difficulty swallowing, lack of appetite, and weight loss of 10-12 pounds. My objective labs at that visit showed: WBC 18.4 (elevated, with leukocytosis); CRP 40.49 (elevated; reference ≤7.4); ESR 52 (elevated; reference 0-15); ALT 116 (elevated; reference <55). The Plan section of Dr. Motamedi's progress note expressly documents:

"**Work Limitations** Patient reports difficulty with daily activities and work due to symptoms. **-Provide work restriction note for 4 weeks.**"

29. **I emphasize this finding.** On February 10, 2025, five days after my answer in the Adversary Proceeding was due, my treating rheumatologist of long standing made a contemporaneous, signed, and dated medical determination that I had **"difficulty with daily activities and work due to symptoms"** and prescribed a **four-week work restriction**. That determination, embedded in a treating physician's contemporaneous progress note, is independent of any retrospective evaluation and

is supported by objective laboratory values reflecting active severe systemic inflammation.

30. **February 12, 2025, Rheumatology Telephone Visit, Dr. Motamedi.** Two days later, Dr. Motamedi spoke with me by telephone. Her progress note documents: "Patient is on prednisone 80 mg daily, he continues to have diffuse myalgias and arthralgias, **hard to get out of the bed and hard to walk**." My self-reported Percocet use was "1-2 Percocet per day for joint pain." Continued ALT elevation and leukocytosis (WBC 18,000 on prednisone) are documented. (See sealed medical record, Exhibit E [2/12/2025 Motamedi telephone visit].)

31. **February 18, 2025, Clerk's entry of default issued.** (See ECF No. 7.)

32. **Continuing care after default.** On February 25, 2025, Dr. Motamedi's office contacted me by telephone. On March 3, 2025, I had a Hospital Outpatient Visit at Kaiser. (See sealed medical record, Exhibit E [2/25/2025 Motamedi telephone; 3/3/2025 outpatient visit].) My active rheumatology management of this AOSD flare continued throughout this period.

33. **Medication regimen during the response period.** From the February 2, 2025 ED discharge through and beyond the entry of default on February 18, 2025, my documented active medication regimen included: (a) **high-dose prednisone (80 mg daily)**; (b) **tocilizumab (Actemra) 162 mg subcutaneous injection every two weeks** (initiated 2/3/2025); (c) **oxycodone-acetaminophen (Percocet) 5-325 mg,**

taken at 1-2 tablets per day for joint pain; (d) Bactrim DS three times weekly (later discontinued by Dr. Motamedi due to elevated liver enzymes); and (e) Dupixent injectable. This regimen consists of a high-dose oral corticosteroid, a biologic immunosuppressant, and a Schedule II opioid analgesic, each of which independently produces fatigue, cognitive effects, and impaired functional capacity.

34. **Chronic psychiatric baseline.** Independent of the AOSD flare, I have a long history of severe major depressive disorder, chronic post-traumatic stress disorder, and an anxiety disorder, documented in Kaiser psychiatric records. My Kaiser records reflect Behavioral Health Indicator scores in the severe range (80-89) and PHQ-9 scores in the severe major depression range (17-22) **as far back as November 2021**. My present diagnoses, confirmed by Dr. Reshma G. Bhat, M.D., are: Major Depressive Disorder, Recurrent Episode, Severe (DSM-5 / ICD-10 F33.2); Chronic Posttraumatic Stress Disorder (F43.12); and Anxiety Disorder, Other Specified (F41.8). My treating psychiatrist also contemporaneously documented avoidance behaviors that materially affected my functional capacity during the response period. The specific clinical observations and their documented relationship to the symptoms of my diagnosed conditions are set forth in the sealed Exhibit E and are not described in further detail on the public record.

35. **Personal circumstances.** During this period, I had no stable residence following the failure of the West Covina venture and the collapse of CWM's revenue. I did not reside at the parents' address listed on my petition. I did not have regular and

reliable access to mail at any one location. In December 2024, my father suffered a heart attack, and his recovery and ongoing care consumed substantial portions of my time and emotional resources during the response period.

36. **Combined effect.** The combination of (i) two Emergency Department visits during the answer period (1/30/25 and 2/2/25); (ii) intravenous high-dose corticosteroids; (iii) initiation of biologic immunosuppressant therapy; (iv) Schedule I opioid analgesia; (v) **a treating-physician work restriction note dated February 10, 2025 covering a four-week period**, that is, the period spanning the entry of default on February 18, 2025; (vi) chronic severe major depressive disorder and chronic PTSD documented at Kaiser back to 2021; (vii) homelessness; (viii) my father's recent cardiac event; and (ix) abandonment of the adversary case by my bankruptcy counsel through a single email and no follow-up, **rendered me functionally incapable of recognizing, processing, and responding to legal process** mailed to a non-residence address with the wrong ZIP code during the response period. I did not appreciate, in real time, that an Adversary Proceeding had been initiated, that I was unrepresented in it, that an answer was due, that default had been entered, or that judgment had been entered.

36A. **Convergence of crisis facts during the response period.** I want the Court to understand the convergence of these facts during the response period. I was not merely unwell. Simultaneously, I was: (a) under active emergency hospital care twice within four days for a life-threatening autoimmune flare; (b) initiating biologic immunosuppression

therapy with a Schedule II opioid for pain control; (c) on a four-week treating-physician work restriction; (d) carrying long-documented severe Major Depressive Disorder, chronic PTSD, and an Anxiety Disorder, the full clinical detail of which is set forth in the sealed Exhibit E; (e) without stable housing; (f) watching the West Covina venture, Car Wash Management, LLC's revenue, and my own business reputation collapse in real time, with vendors and customers actively pursuing me and my company for payments and answers I could not provide; (g) responding to my father's recent cardiac event and his ongoing recovery; and (h) abandoned in the Adversary Proceeding by my bankruptcy counsel through a single email and no follow-up. The fair characterization of my circumstances during the response period is not that I was unwell; it is that I was in a documented, acute, life-threatening medical and psychiatric crisis, occurring simultaneously with the collapse of my business and the loss of stable housing, while pro se and effectively abandoned by counsel. No reasonable factfinder could conclude that an individual in those circumstances had the practical capacity to identify, process, and respond to an Adversary Complaint mailed to a non-residence address with the wrong ZIP code. The medical and clinical facts are detailed above and in the sealed Exhibit E.

**G. When I Learned of the Default Judgment; This Motion.**

37. I did not have meaningful actual notice of the default judgment until **March 2026**, when Plaintiffs commenced post-judgment collection by filing the Application for Examination, Abstract of Judgment, and Request for Issuance of Writ of Execution (ECF Nos. 19-22), and the Writ of Execution issued March 30, 2026 (ECF No. 28).

**38.** Promptly after I came on actual notice of the judgment, I began to gather evidence, locate and review the docket, identify legal grounds, and prepare this Motion. Given my pro se status, the volume of the record, the medical and personal circumstances I have described, and the time required to obtain corroborating evidence, the time elapsed between actual notice and filing of this Motion is reasonable.

**39.** I have filed this Motion within one year of the entry of the Amended Default Judgment (ECF No. 17, October 7, 2025), satisfying Federal Rule of Civil Procedure 60(c)(1).

**H. Meritorious Defenses I Will Present If Permitted to Litigate on the Merits.**

**40.** If permitted to file an answer and litigate on the merits, I will present the following defenses, among others: (a) Plaintiffs' own bank records show CWM contributed approximately $350,000 to the project, approximately 175% of the Plaintiffs' actual cash contribution, conduct fundamentally inconsistent with the scienter required under §523(a)(2)(A); (b) Plaintiffs are sophisticated investors who reviewed and signed the Operating Agreement, with Plaintiff Anderson having undertaken responsibility for drafting a more elaborate operating agreement (working with his own counsel) that was never executed, defeating any unsophisticated-victim narrative or claim of justifiable reliance; (c) Plaintiffs themselves underpaid their stated equity commitments by approximately $5,000; refused to perform their assigned launch responsibilities (marketing, signage, exterior vinyl wraps, project administrative paperwork, and related promotional activities), refused to contribute

additional capital when CWM later requested it despite cost overruns; and demanded that CWM shut the project down rather than complete it, conduct constituting breaches of Plaintiffs' fiduciary duties as members of WCCW under Delaware law (the governing law per Operating Agreement § 12) and substantially contributing to the venture's underperformance and closure; (d) Section 13 of the Operating Agreement requires mediation followed by binding arbitration in Delaware, which Plaintiffs bypassed; (e) Plaintiffs' alleged $195,000 in losses represents capital contributions to WCCW (a separate Delaware LLC), not funds personally obtained by me; to the extent any portion is recoverable as nondischargeable fraud, the analysis must focus on what I personally received, not on Plaintiffs' gross contributions to a separate entity; and (f) the equipment is operating today at the same location as Sun Day Carwash, demonstrating that the funds were converted to productive assets, not dissipated; and (g) Plaintiff Erik Anderson, the lead plaintiff in this proceeding, personally and directly instructed me, in a verbal communication that occurred in the presence of a third party who was then present, not to open the car wash facility at 310 South Vincent Avenue, West Covina, California. Notwithstanding Plaintiffs' express instruction not to open, I completed construction of the facility using primarily my own and CWM's funds (approximately $350,000 of the approximately $550,000 total project spend); the car wash opened; and it continues to operate today under the trade name "Sun Day Carwash." Plaintiffs' present attempt to recharacterize my completion and opening of the project, conduct that was directly contrary to their own express

instruction, as a "willful and malicious injury" under 11 U.S.C. § 523(a)(6) is logically incoherent. A debtor cannot "willfully injure" a creditor by doing precisely what the creditor expressly directed the debtor not to do, where the result was the conversion of the creditor's prior capital contribution into a tangible operating asset rather than a personal benefit to the debtor.

41. If granted leave to answer, I will, within 21 days of the Court's Order, file a verified Answer asserting the foregoing affirmative defenses, together with counterclaims against Plaintiffs for: (a) breach of Section 13 of the Operating Agreement (Plaintiffs' bypassing of the contractually mandated mediation and Delaware arbitration through the filing of the State Court Action and this Adversary Proceeding); (b) breach of Plaintiffs' fiduciary duties as members of WCCW under Delaware law (including Plaintiffs' refusal to perform their assigned launch responsibilities, refusal to contribute additional capital when requested, demand to shut the project down rather than complete it, and underpayment of stated equity commitments by approximately $5,000); and (c) breach of contract for Plaintiffs' failure to perform their non-financial obligations under the venture. I will simultaneously move to compel mediation and binding arbitration in Delaware pursuant to Operating Agreement § 13 and the Federal Arbitration Act, 9 U.S.C. § 4. I will also reserve, and intend to pursue, sanctions under Federal Rule of Bankruptcy Procedure 9011 for Plaintiffs' filings in violation of the Operating Agreement's arbitration clause and for Plaintiffs' material misrepresentation in

Complaint paragraph 25 that the car wash "remains non-operable." My counterclaims will seek all available remedies, including compensatory damages, attorneys' fees and costs, specific performance compelling arbitration, and punitive damages where supported by the evidence.

**I. The May 4, 2026 Court Hearing and Plaintiffs' Counsel's Admission of Non-Service.**

**42.** On May 4, 2026, I appeared in person, pro se, in Department 1, Room 218 of the Jacob Weinberger United States Courthouse, before the Honorable Christopher B. Latham, United States Bankruptcy Judge, for the Judgment Debtor Examination scheduled by this Court's Order to Appear for Examination dated March 25, 2026 (ECF No. 24). Plaintiffs' counsel, Martin A. Eliopulos, did not appear in person; he appeared by telephone. Plaintiffs' counsel did not have a court reporter present, citing his secretary's illness. The hearing was recorded by the Court's digital audio recording system.

**43.** At that hearing, on the record, I stated to the Court that I had not been served any papers in this matter. Plaintiffs' counsel responded by repeatedly inquiring of the Court, on three separate occasions, with increasing emphasis, how I knew about the hearing, stating in substance: "How did he know about this meeting?"; "I want to know how he knew about this meeting"; and "I really want to know how Mr. Williams knew about this meeting." Plaintiffs' counsel further stated, in substance: "We haven't served him papers yet, how does he know about this meeting?"; and "I don't think we have served him papers yet." A copy of the Court's digital audio

recording of the May 4, 2026 hearing has been requested and will be lodged with the Court as a supplemental exhibit when received; a certified written transcript will follow.

**44.** The Court did not engage with Plaintiffs' counsel's repeated inquiry into the source of my notice of the hearing. The Court did not address Plaintiffs' counsel's admission of non-service. The Court praised my voluntary appearance, stated on the record that the Court was glad I had shown up, and continued the matter, instructing Plaintiffs' counsel and me to coordinate the rescheduling between ourselves. No testimony was taken. The Court did not set a new examination date. As of the filing of this Motion, no new Order to Appear for Examination has been issued, no new examination date has been set, and Plaintiffs' counsel has not served on me any subpoena, order, or other process related to a continued examination.

**45.** The events of the May 4, 2026 hearing are directly relevant to this Motion: (a) Plaintiffs' counsel's on-the-record acknowledgment that he had not served the March 25, 2026 Order to Appear (ECF No. 24) prior to the noticed examination corroborates the pattern of defective service that is also reflected in the original 2025 service of process at the wrong ZIP code, and supports the alternative ground for relief under Rule 60(b)(4); (b) the Court's on-the-record acknowledgment of my voluntary appearance evidences my good-faith conduct under Pioneer's fourth factor and Falk's "non-culpable conduct" factor; and (c) no testimony was taken, and the procedural posture of the underlying judgment, the Writ of Execution (ECF

No. 28), the Abstract of Judgment (ECF No. 19), and any related collection activity therefore remains as it was before May 4, 2026, save that the previously-scheduled examination has been continued without date.

**J. Closing.**

**46.** I respectfully request that the Court vacate the Clerk's Entry of Default (ECF No. 7), the Order on Plaintiffs' Motion for Default Judgment (ECF No. 13), the Default Judgment (ECF No. 15), and the Amended Default Judgment (ECF No. 17), grant me leave to file an Answer, and stay all collection activity pending decision.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 5/12, 2026, at San Diego.

[signature]

ANDREW PAUL WILLIAMS

Defendant, Pro Se

## EXHIBITS TO DECLARATION OF ANDREW PAUL WILLIAMS

**Exhibit A:** Email from Ronald E. Stadtmueller forwarding the Adversary Complaint and disclaiming representation.

**Exhibit B:** Screenshots of public Google business listing, Yelp listing, and City of West Covina Instagram post (December 15, 2025) for Sun Day Carwash at 310 S. Vincent Ave., West Covina, CA.

**Exhibit C:** Photographs and videos of the car wash equipment in operation at 310 S. Vincent Ave.

**Exhibit D:** POS receipts, credit-card processing records, and contemporaneous transaction documentation showing the car wash's operation.

**Exhibit E: [FILED UNDER SEAL]** Kaiser Permanente Southern California medical records, including: (1) Office Visit and Progress Note, Dr. F. Motamedi, December 30, 2024 (Rheumatology); (2) Emergency Department records and After Visit Summary, January 30, 2025; (3) Emergency Department records and After Visit Summary, February 2, 2025; (4) Video Visit Progress Note and After Visit Summary, Dr. P. Liu, February 3, 2025 (Rheumatology); (5) Office Visit Progress Note and After Visit Summary, Dr. F. Motamedi, February 10, 2025 (Rheumatology), including the four-week work-restriction directive; (6) Telephone Visit Progress Note and After Visit Summary, Dr. F. Motamedi, February 12, 2025 (Rheumatology); (7) Initial Video Psychiatric Evaluation by Dr. R. Bhat, April 8, 2026, and corresponding After Visit Summary; and (8) historical psychiatric

records and behavioral-health screening data from 2021-2022, including the BHI, PHQ-9, and GAD-7 score history. Lodged separately under the concurrently filed Motion to File Documents Under Seal.

**Exhibit F:** Documentation of father's December 2024 cardiac event.

**Exhibit G:** Third-party declaration(s) of witness(es) to the operation of the car wash.

**Exhibit H:** Email from Plaintiff Erik Anderson transmitting his draft of the Operating Agreement (Gmail message ID 18dd243a80038dd7), to be filed when authenticated.

# EXHIBIT A

## TO DECLARATION OF ANDREW PAUL WILLIAMS
## IN SUPPORT OF MOTION TO VACATE DEFAULT JUDGMENT

**Email from Ronald E. Stadtmueller, Esq.**
**to Andrew Paul Williams**
**Forwarding Adversary Complaint**

*Dated January 6, 2025, at 8:25 P.M.*

*In re Andrew Paul Williams*

Bankruptcy Case No. 24-bk-03761-CL7

Adversary Proceeding No. 25-ap-90005-CL

United States Bankruptcy Court, Southern District of California

# EXHIBIT A

## Email Communication from Ronald E. Stadtmueller, Esq.

| | |
|---|---|
| **From:** | Ronald E. Stadtmueller, Esq. <ronstadtmueller@aol.com> |
| **To:** | Andrew Paul Williams |
| **Date:** | Monday, January 6, 2025, at 8:25 P.M. |
| **Subject:** | FW: 25-90005-CL Complaint |
| **Attachment:** | AP 25-90005.pdf (Adversary Complaint, ECF No. 1) |

## VERBATIM TEXT OF EMAIL BODY:

> *Mr. Williams*
>
> *See the attached Adversary Complaint filed in your case alleging non dischargeability of a debt. As you know my representation does not include defense of any Adversary Proceedings. If you wish to discuss the case and receive a referral to someone who may be willing to represent you in this matter please contact me Wednesday.*
>
> *You must file a timely Answer to the Complaint or the plaintiff will be able to obtain a default judgment.*
>
> *Ron*
>
> *Ronald E. Stadtmueller*
>
> *10755 Scripps Poway Pkwy., #370*
>
> *San Diego, CA 92131*
>
> *858-564-9310*

# EXHIBIT A (continued)

## Material Forwarded with Stadtmueller Email — Court NEF

*The following Notice of Electronic Filing ("NEF") issued by the United States Bankruptcy Court for the Southern District of California was forwarded as the body content of the email transmitted by Mr. Stadtmueller. It is reproduced verbatim from the email:*

```
From: [illegible]
Sent: Monday, January [illegible] PM
To: [illegible]
Subject: [illegible]-CL Complaint

U.S. Bankruptcy Court
Southern District of California
Notice of Electronic Filing

The following transaction was received from Martin A. [illegible]
entered on [illegible] PM PST and filed on [illegible]

Case Name: Anderson et al. v. Williams
Case Number: 25-90005-CL
Document Number: 1

Docket Text:
Adversary case [illegible]. Complaint by Erik Anderson, Mark
Ashton, Sandra Ashton against Andrew Paul Williams. Nature of
Suit: (62 (Dischargeability - 523(a)(2), false pretenses, false
representation, actual fraud)) (68 (Dischargeability - 523(a)(6),
willful and malicious injury)), Fee Amount $350.00 Filed by
Martin A. [illegible] on behalf of Erik Anderson, Mark Ashton,
Sandra Ashton.

25-90005-CL Notice will not be electronically mailed to:
Andrew Paul Williams
12136 Avenida Sivrita
San Diego, CA 92121
```

# EXHIBIT A (continued)

**Significance and Authentication**

## SIGNIFICANCE OF THIS EXHIBIT

1. Abandonment by single email. This email sent on January 6, 2025, at 8:25 P.M. (approximately two hours and forty minutes after the Adversary Complaint was filed) constituted the entirety of Mr. Stadtmueller's communication to me regarding the adversary proceeding. Mr. Stadtmueller did not telephone me, send any follow-up correspondence, refer me to specific replacement counsel, or file any notice of limited scope of representation. He thereafter took no further action of any kind regarding the adversary matter.

2. Defective service address in court NEF. The forwarded Notice of Electronic Filing reproduced on the preceding page shows that the United States Bankruptcy Court's own electronic notification system recorded my mailing address with the wrong ZIP code: "San Diego, CA 92121." The correct ZIP code for 12136 Avenida Sivrita is 92128. This same incorrect ZIP code recurs in all subsequent service documents filed by Plaintiffs (ECF Nos. 2, 4, 5, and 6-1). The defective address originated in the court's NEF and was never corrected.

3. Notice not electronically mailed. The NEF expressly states that notice "will not be electronically mailed to" me, and identifies only paper service to the wrong-ZIP address. I had no electronic filing account; service was limited to a single mailing addressed to a non-residence with an incorrect ZIP code.

4. Counsel's actual knowledge. Mr. Stadtmueller received the same NEF, observed the incorrect ZIP code, and was at the time my counsel of record in the underlying bankruptcy. He nonetheless transmitted no further communication to me, took no protective step on my behalf, and made no record-correction effort.

## AUTHENTICATION

The foregoing is a true and correct verbatim copy of the email I received from Ronald E. Stadtmueller, Esq., my former bankruptcy counsel, regarding the adversary complaint filed

against me by Erik Anderson, Nick Ashton, and Sandra Ashton (Adv. No. 25-ap-90005-CL). The email was sent from Mr. Stadtmueller's email address (ronstadtmueller@aol.com) at the time and date stated above. The verbatim text reproduced herein, including the forwarded Notice of Electronic Filing from the United States Bankruptcy Court, is reproduced exactly as it appeared in the email I received. I authenticate this exhibit under penalty of perjury under the laws of the United States as part of my Declaration filed concurrently herewith.

# EXHIBIT B

## TO DECLARATION OF ANDREW PAUL WILLIAMS
## IN SUPPORT OF MOTION TO VACATE DEFAULT JUDGMENT

**Public Record Evidence**
**Sun Day Carwash — Currently Operating at 310 S. Vincent Ave**
**West Covina, California 91790**

*In re Andrew Paul Williams*

Bankruptcy Case No. 24-bk-03761-CL7

Adversary Proceeding No. 25-ap-90005-CL

United States Bankruptcy Court, Southern District of California

# EXHIBIT B

*Public Record Evidence of Operating Car Wash at 310 S. Vincent Ave*

## PURPOSE OF THIS EXHIBIT

This exhibit consists of screenshots and printouts from publicly accessible online sources documenting that a car wash business known as "Sun Day Carwash" is currently operating at 310 South Vincent Avenue, West Covina, California 91790 — the same address at which Car Wash Management, LLC ("CWM") constructed and installed car wash equipment using funds contributed by Plaintiffs Erik Anderson, Nick Ashton, and Sandra Ashton (collectively, "Plaintiffs").

These records directly contradict the central allegation of paragraph 25 of the Adversary Complaint (ECF No. 1) that the car wash "remains non-operable." Plaintiffs' own bank records filed at ECF Nos. 12-3 and 12-4 corroborate the substantial expenditures on equipment that remain installed and in active commercial use at this location.

## CONTENTS OF THIS EXHIBIT:

Tab B-1: Sun Day Carwash Official Website (sundaycarwash.com) — Locations Page Confirming Operation at 310 S. Vincent Ave

Tab B-2: City of West Covina Official Instagram Post (December 15, 2025) — Welcoming Sun Day Carwash to the City

Tab B-3: Google Search Results — Sun Day Carwash Business Listing (84 Google reviews, 4.8 stars, currently open)

Tab B-4: Instagram Posts (@socalfam.explores) — Interior Photographs of Car Wash Equipment in Operation

## AUTHENTICATION

I authenticate the screenshots contained herein under penalty of perjury under the laws of the United States as part of my Declaration filed concurrently herewith. Each screenshot was

captured by me from the publicly accessible website indicated and is a true and accurate copy of what appeared on that website at the time of capture.

# TAB B-1

## Sun Day Carwash Official Website — Locations Page

*sundaycarwash.com — Confirmation of West Covina Operation at 310 S. Vincent Ave*

### Where you'll find us.

Blackstone →
5546 N Blackstone Ave, Fresno, CA 93710

Santa Rosa St. →
363 Santa Rosa St, San Luis Obispo, CA 93405

Calle Joaquin →
1460 Calle Joaquin, San Luis Obispo, CA 93405

Atascadero →
9105 Principal Ave, Atascadero, CA 93422

Paso Robles →
2120 Spring St, Paso Robles, CA 93446

Highland Park →
5128 N Figueroa St, Los Angeles CA 90042

West Covina →
310 S Vincent Ave, West Covina, CA 91790




*SIGNIFICANCE: This is the official corporate website of Sun Day Carwash. It identifies West Covina at 310 South Vincent Avenue, West Covina, CA 91790 as one of their operating locations. This constitutes an admission by the entity currently operating the car wash that it is, in fact, operating at the exact address at which the equipment funded by Plaintiffs' $195,000 contribution and CWM's approximately $350,000 contribution was installed.*

*Source: sundaycarwash.com (Sun Day Carwash official website) — Date captured: May 12, 2026*

# TAB B-2

## City of West Covina Official Instagram Post

*Verified Municipal Account (@westcovinacity) — December 15, 2025*




*SIGNIFICANCE: This post originates from the official, verified municipal Instagram account of the City of West Covina (note the blue verified checkmark next to @westcovinacity). The post, dated December 15, 2025, officially welcomes Sun Day Carwash as a new community sponsor located at 310 South Vincent Avenue, West Covina. This is a governmental confirmation that the car wash at the same address as CWM's installed equipment is operating as an active commercial enterprise.*

*Source: Instagram @westcovinacity (official verified municipal account) · Post date: December 15, 2025 · Date captured: May 12, 2026*

# TAB B-3

## Google Search Results — "Sun Day Car Wash West Covina"

*Aggregated Public Listings (Google Business, Yelp, Instagram)*




*SIGNIFICANCE: Google search results aggregate multiple independent public listings confirming active commercial operation: (i) Google Business profile showing 4.8 stars with 84 Google reviews, address 310 S Vincent Ave, West Covina, CA 91790, phone (626) 587-0044, status "Open" with hours "Closes 8 PM"; (ii) Yelp listing "SUN DAY CARWASH - Updated May 2026 - 20 Reviews"; (iii) Instagram video post from @socalfam.explores referencing "Sun Day Car Wash is NOW OPEN in West Covina." Multiple independent sources confirm operational status.*

*Source: Google Search Date captured: May 12, 2026*

# TAB B-4

## Instagram Posts — Interior of Operating Car Wash at 310 S. Vincent Ave

*Source: @socalfam.explores   Tagged Location: @sundaycarwash*




*First view: Interior of operating car wash facility showing Sun Day Carwash branded entrance arch ("Bright and Shiny") and equipment in active use. Posted with caption "Sun Day Car Wash is NOW OPEN in West Covina!"*

# TAB B-4 (continued)




*Second view: Tunnel interior showing wash bay with Sun Day Carwash overhead signage and operational wash equipment (curtains, sprayers, conveyor visible) — equipment originally installed by CWM at this location.*

*SIGNIFICANCE OF TAB B-4: These photographs depict the interior of the car wash currently operating at 310 South Vincent Avenue. The wash equipment visible — including the tunnel structure, curtain system, and overhead branding integration — represents the same physical infrastructure that was constructed and installed using the approximately $550,000 in combined Plaintiff and CWM funding. The car wash is not "non-operable" as alleged in paragraph 25 of the Complaint; it is operating as an active commercial business under the Sun Day Carwash brand.*

*Source: Instagram @socalfam.explores · Location tag: @sundaycarwash · Date captured: May 12, 2026*

# EXHIBIT 10

FILED
2026 JUN -1 PM 1:21
CLERK
U.S. BANKRUPTCY CT
SO. DIST. OF CALIF

Andrew P. Williams
12641 Antioch Road, Suite #1045
Overland Park, Kansas 66213
Telephone: (619) 796-6469
Email: andrew@carwashmgmt.com
Defendant and Debtor, In Pro Per

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ANDREW PAUL WILLIAMS, Debtor. | Bankr. Case No. 24-03761-CL7<br>Chapter 7<br>Adv. Proc. No. 25-90005-CL |
| ERIK ANDERSON, NICK ASHTON, and SANDRA ASHTON, Plaintiffs,<br>v.<br>ANDREW PAUL WILLIAMS, Defendant. | **SUPPLEMENTAL DECLARATION OF ANDREW PAUL WILLIAMS IN SUPPORT OF REPLY TO MOTION TO VACATE DEFAULT AND DEFAULT JUDGMENT**<br>Date: June 8, 2026 Time: 10:30 a.m.<br>Dept.: 1, Room 218<br>Judge: Hon. Christopher B. Latham |

**SUPPLEMENTAL DECLARATION OF ANDREW PAUL WILLIAMS IN SUPPORT OF REPLY TO MOTION TO VACATE DEFAULT AND DEFAULT JUDGMENT**

I, ANDREW PAUL WILLIAMS, declare as follows:



2

1. I am the Defendant in the above-captioned adversary proceeding. I am over the age of 18 and competent to make this Declaration. I have personal knowledge of the matters stated herein and could and would testify to them competently if called as a witness. This Supplemental Declaration supplements my original Declaration filed at ECF No. 30-1 on May 12, 2026, and is submitted in support of my concurrently-filed Reply in Support of Motion to Vacate Default and Default Judgment.

## I. THE STADTMUELLER EMAIL AND THE FORWARDED NOTICE OF ELECTRONIC FILING (EXHIBIT 1).

2. On January 6, 2025 at 8:25 PM Pacific Time, I received an email from my Chapter 7 bankruptcy counsel Ronald E. Stadtmueller. The email was sent from "ronstadtmueller@aol.com" to my email address "andrew@carwashmgmt.com." The email forwarded the Notice of Electronic Filing originally generated by this Court's CM/ECF system from "info_casb@casb.uscourts.gov" at 5:45 PM Pacific Time the same day. A true and correct copy is attached as Exhibit 1.

3. Plaintiffs' Opposition (ECF No. 40 at 6) characterizes that email as one in which counsel "offered to defend Debtor or refer Debtor to different counsel." That characterization is contradicted by the text of the email itself.

4. The substantive text of Mr. Stadtmueller's email reads in full: "Mr. Williams, See the attached Adversary Complaint filed in your case alleging non dischargeability of a debt. As you know my representation does not include defense of any Adversary Proceedings. If you wish to discuss the case and receive a referral to someone who may be willing to represent you in this matter please contact me Wednesday. You must file a timely Answer to the Complaint or the plaintiff will be able to obtain a default judgment. Ron."

5. Mr. Stadtmueller did not offer to defend me in the adversary proceeding. He stated the opposite: "my representation does not include defense of any Adversary Proceedings." Mr. Stadtmueller did not refer me to different counsel. He offered the possibility of a referral, contingent on my initiating contact on a specific day (Wednesday). I did not initiate that contact

and Mr. Stadtmueller did not follow up. I received no further communications from Mr. Stadtmueller related to the adversary proceeding during the response period or thereafter.

**II. THE COURT'S NOTICE OF ELECTRONIC FILING SHOWS ZIP CODE 92121.**

6. The Notice of Electronic Filing attached as part of Exhibit 1 is the automatic message generated by this Court's CM/ECF system at 5:45 PM on January 6, 2025, the moment Plaintiffs' counsel Martin A. Eliopulos electronically filed the adversary complaint. It is a system-generated record reflecting the case caption, document filing information, and the parties' addresses as submitted to the Court by the filing party.

7. The Notice of Electronic Filing states: "25-90005-CL Notice will not be electronically mailed to: Andrew Paul Williams 12136 Avenida Sivrita San Diego, CA 92121."

8. The ZIP code 92121 reflected on the Court's Notice of Electronic Filing is the same wrong ZIP code that appears on every Plaintiff-generated certificate of service in the adversary proceeding docket (ECF Nos. 4, 6, 7, 8, 10, 13, 15, 17, 18).

**III. THE PETITION BEARS THE INCORRECT ZIP CODE 92121; THE CORRECT ZIP CODE FOR THE ADDRESS IS 92128 (EXHIBIT 2).**

9. On October 4, 2024, I filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code, captioned In re Andrew Paul Williams, Case No. 24-03761-CL7. At that time I had no residence of my own and was staying temporarily with others; on the advice of my bankruptcy counsel, the petition listed my parents' address, 12136 Avenida Sivrita, as my address of record. The address page of the petition is attached as Exhibit 2.

10. The petition lists the address as "12136 Avenida Sivrita, San Diego, CA 92121." That ZIP code is incorrect. The correct ZIP code for 12136 Avenida Sivrita is 92128, which corresponds to the Rancho Bernardo area of San Diego. The United States Postal Service confirms this: when the Bankruptcy Noticing Center processed the address, the Postal Service's address standardization automatically corrected it to "92128-4547" (ECF Nos. 8 and 10).

11. ZIP code 92121 is a different ZIP code in a different area of San Diego (Sorrento Valley and Mira Mesa), approximately eight miles distant, served by a different United States Postal Service sorting facility. The street address 12136 Avenida Sivrita does not exist within ZIP code 92121.

12. Plaintiffs' Opposition asserts (Opp. 9) that "Plaintiffs served Debtor at the address and zip code set forth in his Chapter 7 petition." The petition does bear ZIP code 92121 (Exhibit 2); that ZIP code, however, is incorrect, as the Postal Service's own standardization of the address to 92128-4547 confirms (ECF Nos. 8 and 10). Plaintiffs mailed the summons and complaint to that incorrect ZIP code, 92121, in which the street address 12136 Avenida Sivrita does not exist. Because I was not residing at that address and the mailing was directed to a ZIP code in which the address does not exist, I did not receive the summons and complaint.

**IV. PLAINTIFFS' OWN CONTEMPORANEOUS TEXT MESSAGES AND CONDUCT ESTABLISH PERSONAL KNOWLEDGE THAT THE CAR WASH WAS OPERATIONAL (EXHIBIT 3).**

13. Plaintiffs Erik Anderson and Nick Ashton had personal knowledge that the car wash was operational well before they filed Complaint paragraph 25 on January 6, 2025. Their personal knowledge is established by their own contemporaneous text messages and by their personal use of the operating car wash.

14. Authentication of Exhibit 3 text messages. The text-message screenshots attached as Exhibit 3 are true and correct copies of messages exchanged between myself, Plaintiff Erik Anderson, and Plaintiff Nick Ashton during late 2023 and early 2024. They are admissible under Federal Rule of Evidence 901(b)(4) (distinctive characteristics, contents, internal patterns, and circumstances). The authenticating circumstances are:

(a) Source device: The screenshots were captured from my personal mobile telephone, which has remained in my exclusive possession at all relevant times. The messages have not been deleted, altered, or modified.

(b) Identifying telephone numbers: The group thread visible in the screenshots is identified at the top by participant names and telephone numbers. Plaintiff Erik Anderson appears in the thread at

the telephone number ending 1151. Plaintiff Nick Ashton appears as a named participant in the same group message thread. Both numbers and names are independently verifiable through Plaintiffs' own filings in this and related proceedings.

(c) Time stamps: Each message bears an automatic system-generated time stamp within the message thread. The time stamps are sequential and consistent.

(d) Distinctive content: The messages discuss specific operational features of the car wash at 310 South Vincent Avenue, West Covina, California, in detail that only the parties to the venture would possess. Plaintiff Anderson's responses ("Hell yeah," "Looking like a real car wash!") reflect direct personal observation.

(e) Chain of custody: The messages were stored continuously on my device from receipt to screenshot capture for this Declaration. I have made no edits, redactions, or modifications. The screenshots reflect the messages as they existed at the time of receipt.

(f) One item within Exhibit 3 is a screenshot that Plaintiff Anderson captured on his own device and transmitted into the group thread (a screenshot within a screenshot). It is authenticated by the same distinctive characteristics described above and by Plaintiff Anderson's own act of transmitting it into the thread.

15. December 14, 2023, property walkthrough scheduling. The messages reflected in Exhibit 3 were exchanged in a group text thread among myself, Plaintiff Erik Anderson, and Plaintiff Nick Ashton. On December 14, 2023, Plaintiff Erik Anderson, from the telephone number ending 1151, wrote: "Is Thursday 12/21 a good day for you to walk the property?" I responded: "That day is good, what time." Plaintiff Anderson responded: "Anytime between 8:00am to 2:00pm. Is 11:00am good for you?" I responded: "That works." The property walkthrough was scheduled and took place on or about December 21, 2023.

16. January 6, 2024, one year before the Complaint was filed. On Saturday, January 6, 2024, at 8:37 PM, I sent the group text message: "We have a day of testing and cleaning and we will be done." Plaintiff Erik Anderson responded: "Hell yeah."

17. January 9, 2024, operational features. On Tuesday, January 9, 2024, at 12:51 PM, I sent the group an itemized list of the car wash's operational features: "Foam bath, spot free rinse dryers, Triple foam, Polish, Foam waterfall, wax, undercarrige, Ceramic." Plaintiffs responded: "Thanks."

18. "Looking like a real car wash!" On a subsequent date reflected in Exhibit 3, I sent Plaintiffs photographs of the operating car wash site, including photographs of vehicles at the wash. Plaintiff Erik Anderson responded: "Looking like a real car wash!"; "Yeah it looks good"; and "Get some new plants in there and it'll be awesome." After I sent additional photographs of a clean, dry, post-wash vehicle, Plaintiff Erik Anderson responded: "Thanks for the pics."

18A. Plaintiff Anderson's shared screenshot of his own vehicle at the operating wash. On a date reflected in Exhibit 3, Plaintiff Erik Anderson transmitted into our group message thread a screenshot he had captured from his own mobile device. That screenshot depicts Plaintiff Anderson's own exchange with a third party, together with imagery of Plaintiff Anderson's own vehicle at the operating car wash site. Plaintiff Anderson personally captured and shared this image, further establishing his contemporaneous personal knowledge that the car wash was operational.

19. February 2024, Plaintiffs personally operated their vehicles through the wash. In or about February 2024, Plaintiff Erik Anderson and Plaintiff Nick Ashton each personally drove their own vehicles through the operating car wash to test the equipment. Each Plaintiff observed his own vehicle being washed by the car wash. Each Plaintiff was physically present at the operating wash site at 310 South Vincent Avenue, West Covina, California, during that operation.

20. Percipient witnesses. Jose Rene Ortiz and Travis Beaudoin were physically present at the car wash site during operations and personally observed Plaintiffs Anderson and Ashton each take their respective vehicles through the operating car wash. Each is a percipient witness to the car wash's operation and to Plaintiffs' personal use of it.

21. The representation in Complaint paragraph 25, filed January 6, 2025, that the car wash "remains non-operable" was not an inadvertent inaccuracy or an interpretive dispute. It was filed

by Plaintiffs against the backdrop of their own contemporaneous written acknowledgments of the car wash's operation, and against the backdrop of Plaintiffs' personal use of the operating car wash. Plaintiffs had personal knowledge that paragraph 25 was false at the moment it was filed.

**V. AUTHENTICATION OF EXHIBITS.**

22. The exhibits to this Supplemental Declaration are true and correct copies of the originals, as follows:

Exhibit 1: The email from Ronald E. Stadtmueller of January 6, 2025 at 8:25 PM, including the forwarded Notice of Electronic Filing from this Court's CM/ECF system sent at 5:45 PM the same day. Preserved in my email account and printed to PDF for this filing. No alterations.

Exhibit 2: The address page of my Chapter 7 voluntary petition, filed October 4, 2024, in In re Andrew Paul Williams, Case No. 24-03761-CL7, retrieved from the public PACER docket of that case. The petition reflects ZIP code 92121, which is incorrect for the reasons stated in paragraphs 10 through 12.

Exhibit 3: Screenshots of text message exchanges from my mobile device between myself and Plaintiffs Erik Anderson and Nick Ashton, taken from the group message thread that I maintained with Plaintiffs during the relevant period. The screenshots include the time stamps and identifying participant information within the thread itself. I have preserved the original messages on my device and have not altered them. Authenticated under Federal Rule of Evidence 901(b)(4) (distinctive characteristics) as set forth in paragraph 14 above.

**VI. ATTESTATION.**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 1 day of June, 2026.

A.P. Williams

Andrew Paul Williams

Defendant, Pro Se

# EXHIBIT 1

Email from Ronald E. Stadtmueller dated January 6, 2025, including the forwarded Notice of Electronic Filing (showing ZIP 92121).

*The Exhibit 1 email follows immediately behind this cover sheet.*

**From: Ronald E. Stadtmueller <ronstadtmueller@aol.com>**
**Sent: Monday, January 6, 2025 8:25 PM**
**To: Andrew Williams <andrew@carwashmgmt.com>**
**Subject: FW: 25-90005-CL Complaint**
**Attachment: AP 25-90005.pdf (Adversary Complaint)**

---

Mr. Williams,

See the attached Adversary Complaint filed in your case alleging non dischargeability of a debt. As you know my representation does not include defense of any Adversary Proceedings. If you wish to discuss the case and receive a referral to someone who may be willing to represent you in this matter please contact me Wednesday.

You must file a timely Answer to the Complaint or the plaintiff will be able to obtain a default judgment.

Ron

Ronald E. Stadtmueller

10755 Scripps Poway Pkwy., #370

San Diego, CA 92131

858-564-9310

Confidentiality Notice:

This message is a confidential and privileged communication, intended only for the use of the individual or entity to whom it is addressed, and should not be read or used by anyone else. This message is not intended to give legal advice, such must be sought from the attorney of your choosing. If you have received this message in error, please immediately notify me by return e-mail; delete the message from your system, and retain no hard copies.

From: info_casb@casb.uscourts.gov <info_casb@casb.uscourts.gov>
Sent: Monday, January 6, 2025 5:45 PM
To: casb_ccf@casb.uscourts.gov
Subject: 25-90005-CL Complaint

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30-page limit do not apply.

U.S. Bankruptcy Court

Southern District of California

Notice of Electronic Filing

The following transaction was received from Martin A. Eliopulos entered on 1/6/2025 at 5:45 PM PST and filed on 1/6 2025

Case Name:

Anderson et al v. Williams

Case Number:

25-90005-CL

Document Number:

1

Case Name:

Andrew Paul Williams

Case Number:

24-03761-CL7

Document Number:

14

Docket Text:
Adversary case 25-90005. Complaint by Erik Anderson, Nick Ashton, Sandra Ashton against Andrew Paul Williams. Nature of Suit: 62 (Dischargeability - 523(a)(2), false pretenses, false representation, actual fraud) 68 (Dischargeability - 523(a)(6), willful and malicious injury) , Fee Amount $ 350.00 Filed by Martin A. Eliopulos on behalf of Erik Anderson, Nick Ashton, Sandra Ashton. (Eliopulos, Martin)

The following document(s) are associated with this transaction.

Document description:Main Document
Original filename:2025-01-06 - Anderson v. Williams - AP Complaint.pdf
Electronic document Stamp:
[STAMP CASBStamp_ID=875559582 [Date=1/6/2025] [FileNumber=20560759-0]
[90eccf6336f58f1c42ffb9b480628f7ac0b0a58caa116febb1ecca8fb6f7bb6fd6639
38f8facce7912fb6490fe26b6e63e3c3ae8b5c1f9907fd38313f68c088d]]
Document description:Main Document
Original filename:2025-01-06 - Anderson v. Williams - AP Complaint.pdf
Electronic document Stamp:
[STAMP CASBStamp_ID=875559582 [Date=1/6/2025] [FileNumber=20560760-0]
[27d976df9a1540eaaa44b4a7e04f4f4b21e2736a480de8fdde1f560436a7868e0f4d8
80ae26e61b3101253509beeb543ee7d35e06aaee043e7f7398819ee36ef]]

25-90005-CL Notice will be electronically mailed to:

Martin A. Eliopulos on behalf of Plaintiffs Erik Anderson
elio@higgslaw.com , begaym@higgslaw.com

Martin A. Eliopulos on behalf of Plaintiffs Nick Ashton
elio@higgslaw.com , begaym@higgslaw.com

Martin A. Eliopulos on behalf of Plaintiffs Sandra Ashton
elio@higgslaw.com , begaym@higgslaw.com

25-90005-CL Notice will not be electronically mailed to:

Andrew Paul Williams
12136 Avenida Sivrita
San Diego, CA 92121

24-03761-CL7 Notice will be electronically mailed to:

Martin A. Eliopulos on behalf of Plaintiffs Erik Anderson
elio@higgslaw.com , begaym@higgslaw.com

Martin A. Eliopulos on behalf of Plaintiffs Nick Ashton
elio@higgslaw.com , begaym@higgslaw.com

Martin A. Eliopulos on behalf of Plaintiffs Sandra Ashton
elio@higgslaw.com , begaym@higgslaw.com

Leslie T. Gladstone
candic@flgsd.com ,
christinb@flgsd.com;sandray@flgsd.com;ltg@trustesolutions.net;andrewl@flgsd.com

Ronald E. Stadtmueller on behalf of Debtor Andrew Paul Williams
ronstadtmueller@aol.com

United States Trustee
ustp.region15@usdoj.gov

24-03761-CL7 Notice will not be electronically mailed to:

# EXHIBIT 2

Address pages of Defendant's Chapter 7 voluntary petition,
In re Andrew Paul Williams, Case No. 24-03761-CL7,
reflecting the incorrect ZIP code 92121.
(The correct ZIP code is 92128 - see Supplemental Declaration paragraphs 10-12.)

*The Exhibit 2 petition pages follow immediately behind this cover sheet.*

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

Southern District of California

Case number *(If known)*: ____________

Chapter you are filing under:

- ☑ Chapter 7
- ☐ Chapter 11
- ☐ Chapter 12
- ☐ Chapter 13

☐ Check if this is an amended filing

Official Form 101

# Voluntary Petition for Individuals Filing for Bankruptcy

06/24

**The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be *yes* if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.**

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

## Part 1: Identify Yourself

| | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **1. Your full name**<br>Write the name that is on your government-issued picture identification (for example, your driver's license or passport).<br><br>Bring your picture identification to your meeting with the trustee. | Andrew<br>First name<br>Paul<br>Middle name<br>Williams<br>Last name<br><br>Suffix (Sr., Jr., II, III) | First name<br>Middle name<br>Last name<br>Suffix (Sr., Jr., II, III) |
| **2. All other names you have used in the last 8 years**<br>Include your married or maiden names and any assumed, trade names and *doing business as* names.<br><br>Do NOT list the name of any separate legal entity such as a corporation, partnership, or LLC that is not filing this petition. | First name<br>Middle name<br>Last name<br>First name<br>Middle name<br>Last name<br>Business name (if applicable)<br>Business name (if applicable) | First name<br>Middle name<br>Last name<br>First name<br>Middle name<br>Last name<br>Business name (if applicable)<br>Business name (if applicable) |


Copyright © Financial Software Solutions, LLC BlueStylus

Debtor 1 Andrew Paul Williams
First Name Middle Name Last Name

Case number (if known)

**3. Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)**

Debtor 1: xxx – xx – 6 1 3 1
OR
9 xx – xx –

Debtor 2: xxx – xx –
OR
9 xx – xx –

**About Debtor 1:**

**About Debtor 2 (Spouse Only in a Joint Case):**

**4. Your Employer Identification Number (EIN), if any.**

Debtor 1:
EIN
EIN

Debtor 2:
EIN
EIN

**5. Where you live**

Debtor 1:

12136 Avenida Sivrita
Number Street

San Diego CA 92121
City State ZIP Code

SAN DIEGO
County

**If your mailing address is different from the one above, fill it in here.** Note that the court will send any notices to you at this mailing address.

7776 Trade Street, Suite E
Number Street

P.O. Box

San Diego CA 92121
City State ZIP Code

**If Debtor 2 lives at a different address:**

Number Street

City State ZIP Code

County

**If Debtor 2's mailing address is different from yours, fill it in here.** Note that the court will send any notices to this mailing address.

Number Street

P.O. Box

City State ZIP Code

**6. Why you are choosing *this district* to file for bankruptcy**

Debtor 1:

*Check one:*

☑ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason. Explain. (See 28 U.S.C. § 1408.)

Debtor 2:

*Check one:*

☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason. Explain. (See 28 U.S.C. § 1408.)


Copyright © Financial Software Solutions, LLC BlueStylus

# EXHIBIT 3

Screenshots of text-message exchanges between Defendant and Plaintiffs Erik Anderson and Nick Ashton (late 2023 - early 2024).

*The Exhibit 3 screenshots follow immediately behind this cover sheet.*


3:47
Eric Anderson SD Design, Ni...
Hey Nick,
When would be a good time to walkthrough the Car Wash with you or Andrew ?
Is Tuesday 12/19 a good day ?
Let me check
Message
Q W E R T Y U I O P
A S D F G H J K L
Would this work Andrew?
19th I got something going on all day
How about Thursday next week
That would work better
Okay cool


3:47
Eric Anderson SD Design, Ni...
Is Tuesday 12/19 a good day ?
Let me check
That day won't work, is there day
+1 (619) 905-1151
Is Thursday 12/21 a good day for you to walk the property ?
That day is good, what time
+1 (619) 905-1151
Anytime between 8:00am to 2:00pm.
Is 11:00am good for you ?
iMessage
Q W E R T Y U I O P
A S D F G H J K L
That works
Did that landscap
ver come by
AT&T • Text message


3:48
Eric Anderson SD Design, Ni...
No problem
We have a day of testing and cleaning and we will be done
Hell yeah
Ttt
Foam bath, spot free rinse dryers
Triple foam
Polish
Foam waterfall, wax, undercarrige
Ceramic
Thanks


3:48
Eric Anderson SD Design, Ni...
Looking like a real car wash!
The red Mulch make it look amazing
Yeah it looks good
Get some new plants in there and it'll be awesome
For sure
Thanks for the pics
AT&T • Text message

3:48

Eric Anderson SD Design, Ni...

Thanks for the pics




Got a clean dry shinny car out of it




2:33
5G 46
SK
Can you send me a photo of this area? Straight shot from 20-30 ft away
Message
Cash
Q W E R T Y U I O P
A S D F G H J K L
Z X C V B N M
space

# EXHIBIT 11

Order Entered on
June 16, 2026
by Clerk U.S. Bankruptcy Court
Southern District of California

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

| | |
|---|---|
| In re:<br>ANDREW PAUL WILLIAMS,<br>Debtor. | BANKRUPTCY NO. 24-03761-CL7 |
| ERIK ANDERSON, NICK ASHTON, & SANDRA ASHTON,<br>Plaintiffs. | ADVERSARY NO. 25-90005-CL |
| v.<br>ANDREW PAUL WILLIAMS,<br>Defendant. | Date of Hearing: June 8, 2026<br>Time of Hearing: 10:30 a.m.<br>Name of Judge: Christopher B. Latham |

**ORDER ON DEFENDANT'S MOTION FOR RELIEF FROM DEFAULT AND DEFAULT JUDGMENT**

IT IS HEREBY ORDERED as set forth on the continuation page(s) attached, numbered two (2) through seven (7).

DATED: June 16, 2026

Judge, United States Bankruptcy Court

The court has considered Debtor-Defendant Andrew Paul Williams's motion to set aside default and vacate default judgment (ECF Nos. 30, 31 & 37), Plaintiffs' opposition (ECF No. 40), Debtor's reply and supporting declaration (ECF Nos. 42 & 43), oral argument at the hearing on the matter, and its own docket. It will **grant** the motion as follows.

## Background

Debtor filed a voluntary petition on October 4, 2024 (Case No. 24-03761-CL7, ECF No. 1). On January 6, 2025, Plaintiffs Erik Anderson, Nick Ashton, and Sandra Ashton timely brought this adversary seeking relief under §§ 523(a)(2) & (a)(6). The complaint generally alleges that Debtor engaged in a fraudulent scheme inducing Plaintiffs to invest $200,000 in a joint venture to open a carwash (ECF No. 1). But Debtor never started such a business.[1] *Id.* Instead, he converted the funds to his own uses. *Id.*

On January 6, 2025 Debtor's former attorney, Ronald E. Stadtmueller, emailed him a copy of the adversary complaint, noted that the adversary was outside the scope of his representation, and advised him to file a timely response or face default judgment (ECF No. 30). Debtor was served process at his address of record on January 7, 2026 (ECF No. 4).

Debtor did not respond to the complaint, and the court entered default in February 2025 (ECF No. 7). Plaintiffs then moved for default judgment in September 2025 (ECF No. 12). The court then entered default judgment for Plaintiffs in October 2025 (ECF No. 17). Under it, Debtor is liable to Plaintiffs for $195,000, and that debt is nondischargeable. *Id.*

Debtor moved for relief via the present motion in May 2026 (ECF No. 30). In it, he explains how he was medically incapacitated during the time between receiving service and the responsive pleading deadline. *Id.* He also alleges that he experienced periodic homelessness and was caring for a relative in the months that followed. *Id.*

## Legal Standards

### *Setting Aside Default*

The court may set aside an entry of default for good cause. FED. R. CIV. P. 55. To determine that, a court must consider three factors: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether he has no meritorious defense; or (3) whether reopening the default judgment would prejudice the other party. *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle ("Mesle")*, 615 F.3d 1085, 1091 (9th Cir. 2010).

[1] The court notes that Debtor disputes the alleged events, claiming that he did open the carwash for one or two months (ECF No. 30).

This standard is disjunctive – such that satisfaction of any of these factors is sufficient reason to refuse to set aside the default. *Id.*; *cf. Brady v. United States*, 211 F3d 499, 504 (9th Cir. 2000) ("court's discretion is '*especially broad*' when ... it is entry of default that is being set aside, rather than a default judgment") (emphasis supplied).

*Vacating Default Judgment*

Rule 55(c) of the Federal Rules of Civil Procedure provides that the court "may set aside a default judgment under Rule 60(b)."[2] Rule 60(b) allows relief from a final judgment for "(1) mistake, inadvertence, surprise, or excusable neglect." In deciding whether to vacate a default judgment under Rule 60(b)(1), the court applies the same three factors governing the inquiry into "good cause" under Rule 55(c). *Mesle*, 615 F.3d at 1091.

This determination "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Svcs. Co. v. Brunswick Assoc. Ltd.*, 507 U.S. 380, 395 (1993). However,

> [The court's] discretion [under Rule 60(b)] is limited by three considerations. First, since Rule 60(b) is remedial in nature, it must be liberally applied. *Schwab v. Bullock's Inc.*, 508 F.2d 353, 355 (9th Cir. 1974). Second, default judgments are generally disfavored and cases should be decided on their merits. *Id.* Third, where defendant seeks timely relief from the judgment and has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment. *Id.*

*Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987).

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001) (emphasis in original). Thus, culpability exists "where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Id.* at 698. Indeed, under Rule 60(b)(1), ordinary negligence may be the basis for relief so long as it is "excusable." *Pioneer Inv. Svcs. Co.*, 507 U.S. at 394-95.

In deciding whether a defendant has presented a meritorious defense, "[the] underlying concern . . . is to determine whether there is some possibility that the outcome of the suit after a full trial will

---

[2] Rules 7055 and 9024 of the Federal Rules of Bankruptcy Procedure incorporate Rules 55 and 60 of the Federal Rules of Civil Procedure, respectively. The court notes that Rule 60(b) applies to "Final Judgment[s], Order[s], or Proceeding[s]." The standards for setting aside default under Rule 55(c) and vacating default judgment under Rule 60(b)(1) are essentially identical. *See Franchise Holding II, LLC v. Huntington Rests. Group, Inc.*, 375 F.3d 922, 925 (9th Cir. 2004).

be contrary to the result achieved by the default." *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986).

> "A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense. But the burden on a party seeking to vacate a default judgment is not extraordinarily heavy." *See TCI Group*, 244 F.3d at 700 (citations omitted). All that is necessary to satisfy the "meritorious defense" requirement is to allege sufficient facts that, if true, would constitute a defense: "the question whether the factual allegation [i]s true" is not to be determined by the court when it decides the motion to set aside the default. *Id.* Rather, that question "would be the subject of the later litigation." *Id.*

*Mesle*, 615 F.3d at 1094.

**Legal Discussion & Analysis**

*Service of Process*

Debtor contests service of process because the summons was mailed to a ZIP code that does not correspond to his address (ECF Nos. 30 & 42). Rule 7004(b)(1) permits service by mail to an individual's dwelling or usual place of abode within the United States. FED. R. BANK. PROC. 7004(b)(1). The mailing address Plaintiffs relied on – 12136 Avenida Sivrita, San Diego, CA *92121* – was the very one Debtor listed on his bankruptcy petition (Case No. 24-03761-CL7; ECF No. 1). He now claims the correct ZIP code is 92128. But he certified the accuracy of the information in the petition on October 3, 2024. *Id.* And he had a continuing duty to assure the accuracy and completeness of schedules. *In re Aubry*, 558 B.R. 333, 347 (Bankr. C.D. Cal. 2016) (quoting *In re Searles*, 317 B.R. 368, 378 (B.A.P. 9th Cir. 2004); 11 U.S.C. § 521(a)(1); FED R. BANKR. P. 1007; *In re Rolland*, 317 B.R. 402, 413 (Bankr. C.D. Cal. 2004) ("Full and comprehensive disclosure is critical to the integrity of the bankruptcy process."). Therefore, service was properly made at the address Debtor provided to the parties and court and certified as his mailing address.

In addition, Debtor admits that he received actual notice of the complaint and summons from his former attorney, Mr. Stadtmueller, on January 6, 2025 – during the notice period (ECF No. 30). Mr. Stadtmueller further specified in the email that "[Debtor] must file a timely Answer to the Complaint or the plaintiff will be able to obtain a default judgment." *Id.* In sum, Debtor was properly served and received actual notice of the proceedings in January 2025.

*Timeliness of the Motion*

Debtor-Defendant effectively combined two separate requests for relief in the motion at bar – one to set aside the default and another to vacate the default judgment. (ECF No. 30).

Rule 55 does not prescribe a deadline for moving to set aside entry of default, so this relief was timely requested.

A rule 60(b) motion to vacate a default judgment must be filed within a reasonable time, not exceeding one year. FED. R. CIV. P. 60(c)(1). Such a motion may be denied, even if filed within the one-year period, if it was not diligently brought. *Meadows*, 817 F2d at 520-21. Default judgment was entered in October 2025 – seven months before Debtor sought relief (ECF No. 17). So the motion was made within a reasonable time.

*Good Cause Exists to Set Aside Entry of Default*

No Prejudice to Plaintiffs

If plaintiff will suffer prejudice when the action is reopened, the court may deny the motion for relief. *See Pioneer Inv. Svcs. Co.*, 507 U.S. at 395. To be prejudicial, setting aside default judgment must result in greater harm than simply delaying resolution of case. *Mesle*, 615 F.3d at 1095.

Plaintiffs will not be prejudice if Debtor is allowed to set aside the default's entry. They argue that they undertook the default prove up process, including briefing and compiling more than 1,000 pages of exhibits in support (ECF Nos. 12). But Plaintiffs are not prejudiced by having to prove up their case – a requirement irrespective of Debtor's default. And mere delay is insufficient. *See Mesle*, 615 F3d at 1095.

No Culpable Conduct

There is also no culpable conduct by Debtor. He was medically incapacitated during the response window from December 30, 2024 to February 18, 2025. Nor is there any convincing indication that he intentionally failed to respond following his discharge from the hospital. Rather, he explains that he was experiencing homelessness and caring for his father who was recovering from a heart attack (ECF No. 30).

Despite that his impairment was temporary, Debtor did fail to address the proceedings for over a year following his medical episode. While he may have been negligent in doing so, he stood to gain nothing from the delay. On these facts, the court sees no evidence that his failure to respond to the Complaint was devious, deliberate, willful, or done in bad faith.

Meritorious Defense Proffered

Importantly, Debtor has raised a meritorious defense. The complaint centers around Plaintiffs' $200,000 investment in a carwash that Debtor allegedly converted (ECF No. 1). It says that Debtor procured the investment by promising to open and manage the enterprise called "West Covina Car Wash," but never did. *Id.* Debtor counter-argues that he did open the carwash and operated such

a business for one or two months from May 2024 to June 2024. Now, an unaffiliated entity runs the "Sun Day Carwash" at the same location.

In support of his position, he points to his January 2024 text message to Plaintiff Anderson stating "[w]e have a day of testing and cleaning and we will be done," which Mr. Anderson acknowledged (ECF No. 43). Then, in response to a text message from Debtor with photographs of the site, Anderson wrote "Looking like a real car wash!" *Id.* Debtor further alleges that Plaintiffs Anderson and Ashton each drove a vehicle through the carwash in February 2024 (ECF No. 42). Combined with Debtor's assertion that the carwash operated in May or June 2024, these assertions, if proven, contradict a key allegation of the complaint – that the carwash never opened. He also offers evidence that his affiliated entity contributed approximately $350,000 toward the venture – more than Plaintiffs' combined contribution. If true, this would also tend to show that Debtor did not abscond with Plaintiffs' investments, but that the business simply failed.

Taking into consideration the totality of the circumstances, the court finds that all three factors point toward finding cause to set aside the entry of default.

*Vacating Default Judgment Under Rule 60(b)*

As discussed above, Debtor has shown that each of the factors for finding good faith, which mirror the standard for vacating default judgment, are met. *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1111 (9th Cir. 2011). Debtor also argues that relief is warranted due to excusable neglect and misrepresentation by an opposing party. *See* FED. R. CIV. P. 60(b)(1) & (3). The court now turns to these remaining points.

Excusable Neglect

Excusable neglect – such as failure to meet a deadline – calls for application of a four-factor equitable test examining: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith. *Pioneer Inv. Svcs. Co.*, 507 U.S. at 395; *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997) (adopting this test for consideration of Rule 60(b) motions); *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1261 (9th Cir. 2010).

The court has found that vacating the default judgment will not prejudice Plaintiffs. *See, supra.* Debtor delayed about 15 months after the entry of default and around seven months post-judgment before finally appearing in court in May 2026. But the court notes that Plaintiffs were not particularly expeditious during that time – triggering an OSC re: dismissal for want of prosecution (ECF No. 9). And Debtor has sufficiently explained his personal and medical hardships justifying his delayed appearance (ECF Nos. 30 & 37). He also maintains that he was experiencing bouts of homelessness and caring for his father who was recovering from a heart attack (ECF No. 30). All things considered, the court finds that Debtor acted in good faith. Accordingly, Debtor's failure to timely respond to the complaint resulted from excusable neglect. FED. R. CIV. P. 60(b)(1).

Misrepresentation by the Opposing Party

Debtor also moves for relief under Rule 60(b)(3), based on alleged misrepresentations by Plaintiffs. Among other things, he must show by clear and convincing evidence that *because of the misrepresentation* by the adverse party, he was prevented from fully and fairly presenting his case. *De Saracho v. Custom Food Machinery, Inc.*, 206 F3d 874, 880 (9th Cir. 2000) (emphasis supplied).

The alleged misrepresentation is that the carwash never opened (ECF No. 30). But even if the complaint contains an inaccuracy, that misstatement did not prevent Debtor from responding to the complaint or otherwise presenting his case. So this is not a basis for Rule 60(b)(3) relief.

## Conclusion

In conclusion, Debtor has met his burden of showing that he is entitled to relief under both Rules 55 and 60(b). Such relief will not be prejudicial, Debtor did not engage in culpable conduct, and he presents a meritorious defense to at least some aspects of the nondischargeability action. Thus, taking into account all relevant surrounding circumstances, and considering the policies underlying Rules 55 and 60(b), the court finds Debtor's neglect excusable and good cause for relief. It therefore **grants** Debtor's motion, **sets aside** the default entered February 18, 2025, and **vacates** the default judgment entered October 7, 2025 in this adversary proceeding. Debtor is directed to file and serve his response to the complaint within **21 days** of this order's entry.

IT IS SO ORDERED.

# EXHIBIT 12

FILED
ENTERED
LODGED
RECEIVED
JUN 2 2 2025
CLERK, U.S. BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

Andrew P. Williams
12641 Antioch Road, Suite #1045
Overland Park, Kansas 66213
Telephone: (619) 796-6469
Email: andrew@carwashmgmt.com
Defendant and Debtor, In Pro Per

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ANDREW PAUL WILLIAMS,<br>Debtor. | Bankr. Case No. 24-03761-CL7<br>Chapter 7<br>Adv. Proc. No. 25-90005-CL |
| ERIK ANDERSON, NICK ASHTON, and SANDRA ASHTON,<br>Plaintiffs,<br>v.<br>ANDREW PAUL WILLIAMS,<br>Defendant. | **DEFENDANT-DEBTOR'S ANSWER TO COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT [11 U.S.C. §§ 523(a)(2)(A) and (a)(6)]**<br><br>Judge: Hon. Christopher B. Latham |

Defendant Andrew Paul Williams ("Defendant"), appearing in pro per, answers the Complaint to Determine Dischargeability of Debt ("Complaint") filed by Plaintiffs Erik Anderson, Nick Ashton, and Sandra Ashton ("Plaintiffs") as follows. Except as expressly admitted below, Defendant denies each and every allegation of the Complaint.

## RESPONSES TO SPECIFIC ALLEGATIONS

1. Admits only that Plaintiffs purport to bring an action under 11 U.S.C. §§ 523(a)(2)(A) and (a)(6); denies that any debt owed to Plaintiffs is nondischargeable.

2. Denies. Defendant specifically denies that he perpetrated any fraudulent scheme, that he converted or stole any funds, that the car wash "never opened," and that any party "absconded" with Plaintiffs' money. The car wash opened and operated, and the funds were applied to the venture, which failed.

3-5. Admits Plaintiffs are individuals; lacks knowledge or information sufficient to form a belief as to the precise residences alleged, and on that basis denies the remaining allegations of paragraphs 3-5.

6. Admits Defendant is an individual. Except as expressly admitted, denies the allegations of paragraph 6.

7. Admits Janette A. Williams is Defendant's mother; lacks knowledge or information sufficient to form a belief as to the residence alleged and on that basis denies the remainder of paragraph 7.

8. Admits Defendant is a member of Car Wash Management, LLC. Denies the remaining allegations of paragraph 8, including the characterization of the entity's state of organization, registration, and principal place of business, except as may be reflected in the entity's own records, which speak for themselves.

9. Denies.

10. Denies.

11. Denies.

12. Admits this Court has jurisdiction to determine the dischargeability of the alleged debt; the remaining allegations state legal conclusions to which no response is required.

13. Admits this is a core proceeding as to the determination of dischargeability; the remaining allegations state legal conclusions to which no response is required.

14. Admits venue is proper for this adversary proceeding; the remainder states legal conclusions to which no response is required.

15. Admits Defendant presented a car-wash investment opportunity in or about October 2023 and shared business projections; the referenced "proforma" and "prospectus" (Exhibit A) are documents that speak for themselves. Except as so admitted, denies the characterizations in paragraph 15.

16. Admits the parties agreed to form West Covina Car Wash ("WCCW") and that the operating agreement reflects the membership interests; the operating agreement speaks for itself. Except as so admitted, denies.

17. Admits the contribution and role structure as set forth in the operating agreement, which speaks for itself. Denies that Defendant guaranteed or falsely "assured" the car wash would open before any date certain, and denies the remaining characterizations of paragraph 17.

18. Admits an operating agreement for WCCW was signed on or about October 26-27, 2023 (Exhibit B), which speaks for itself. Lacks knowledge or information sufficient to form a belief as to the good-standing allegations, which also state legal conclusions, and on that basis denies the remainder of paragraph 18.

19. Admits the parties agreed that Plaintiffs' contributions would be paid to Car Wash Management, LLC to commence and carry out the car-wash project; denies the characterization of any specific representation regarding "$100,000 for operating capital" as alleged, and denies the remainder of paragraph 19.

20. Denies. Plaintiffs knew and agreed at the outset that their contributions would be paid to and administered by Car Wash Management, LLC to commence and carry out the car-wash project; Plaintiffs' allegation that they "later learned" the funds were held by Car Wash Management,

LLC is false. Defendant denies any improper or exclusive control and denies the remainder of paragraph 20.

21. Denies. Defendant provided information regarding the project; budget variances in a project of this kind are ordinary, and Defendant denies the characterizations and innuendo of paragraph 21.

22. Denies any commingling or misuse of Plaintiffs' funds. Admits financial information and a report were provided to Plaintiffs; denies the report was "deficient" as alleged. The venture's bookkeeping, financial recordkeeping, and account administration were among the responsibilities Plaintiffs undertook and failed to perform.

23. Admits Defendant opened a separate account for West Covina Car Wash at Plaintiffs' request; denies any wrongdoing. By that time, Plaintiffs' contributions had already been applied to the car-wash project, and completing the venture's formation and financial setup was among the responsibilities Plaintiffs undertook and did not perform. Except as so admitted, denies the remaining allegations of paragraph 23.

24. Denies. The car wash opened and operated in or about May 2024; Defendant denies that it "was nowhere near close to opening." Defendant denies that Plaintiffs' funds were not applied to the venture, and denies the characterization attributed to unidentified "associates" that "CWM had no money," which is inadmissible hearsay. Otherwise, denies paragraph 24.

25. Admits the car wash opened and operated in 2024. Denies that the car wash was "immediately shut down," or shut down at all, for lack of permits; there was no permit-based closure. The only permit-related matter was a discussion with the City regarding the placement of the vacuum stations, which did not close the business. Denies that the car wash "remains non-operable" (a car-wash business operates at the site), and denies that Defendant wrongfully "refused to return" funds that were invested in and consumed by the venture. Except as so admitted, denies paragraph 25.

26. Admits a state court action (Case No. 24CU003299C) was filed; the complaint in that action speaks for itself. Except as so admitted, denies.

27. Admits Defendant filed a Chapter 7 petition on October 4, 2024, and that the automatic stay applies.

28. Admits a First Amended Complaint was filed in the state court action on or about December 19, 2024; that pleading speaks for itself. Except as so admitted, denies.

**FIRST CLAIM FOR RELIEF (11 U.S.C. § 523(a)(2)(A))**

29. Defendant incorporates his responses to paragraphs 1 through 28 as though fully set forth.

30. Paragraph 30 states a legal standard/conclusion to which no response is required; to the extent a response is required, denies that it establishes any nondischargeable debt of Defendant.

31. Denies.

32. Denies. Defendant denies making any false representation regarding his intentions or the car-wash enterprise.

33. Denies. Defendant intended to perform and did pursue the venture; he denies any intent to deceive.

34. Denies.

35. Denies.

36. Denies that any reliance was justifiable; lacks knowledge or information sufficient to form a belief as to Plaintiffs' subjective states of mind and on that basis denies paragraph 36.

37. Denies that Defendant's conduct proximately caused the alleged damages; the loss, if any, resulted from a failed business venture, not from fraud. Denies the remainder of paragraph 37.

38. Denies.

39. Denies.

40. Denies. Paragraph 40 states a legal conclusion; to the extent a response is required, denies that any debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A).

**SECOND CLAIM FOR RELIEF (11 U.S.C. § 523(a)(6))**

41. Defendant incorporates his responses to paragraphs 1 through 40 as though fully set forth.

42. Paragraph 42 states a legal standard/conclusion to which no response is required; to the extent a response is required, denies it establishes any nondischargeable debt of Defendant.

43. States a legal conclusion to which no response is required.

44. Admits Plaintiffs contributed funds toward the WCCW venture in or about October 2023; the operating agreement and records speak for themselves. Except as so admitted, denies.

45. Denies. Defendant denies using or misapplying Plaintiffs' funds for his own use; the funds were applied to the venture.

46. Denies the characterization. Defendant denies any obligation to "return" contributed venture capital and denies any willful refusal.

47. Denies. Defendant denies acting as a "trustee" of Plaintiffs' funds, denies misapplication, and denies the alleged damages.

48. Denies each subpart. Defendant denies that any conversion occurred; the funds were contributed capital used in the venture, not property wrongfully taken.

49. Denies.

50. Denies. Defendant denies any subjective motive to injure Plaintiffs and denies knowledge that injury was substantially certain to occur.

51. Denies each subpart.

52. Denies. Paragraph 52 states a legal conclusion; to the extent a response is required, denies that any debt is nondischargeable under 11 U.S.C. § 523(a)(6).

Defendant denies that Plaintiffs are entitled to any of the relief requested in the Prayer for Relief or to any relief whatsoever.

## AFFIRMATIVE DEFENSES

(Plaintiffs bear the burden of proving nondischargeability by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279 (1991). Exceptions to discharge are construed strictly against the creditor and in favor of the debtor.)

1. FAILURE TO STATE A CLAIM. The Complaint fails to state a claim on which relief can be granted under 11 U.S.C. § 523(a)(2)(A) or (a)(6).

2. NO PERSONAL DEBT OF DEFENDANT. Plaintiffs invested as members of the operating limited liability company; any obligation arising from the venture is the company's, not Defendant's personal debt. There is no personal debt of Defendant to Plaintiffs to except from discharge, and Plaintiffs' alter-ego theory (paragraphs 9 through 11) is denied.

3. NO FALSE REPRESENTATION OR FRAUDULENT INTENT (§ 523(a)(2)(A)). The venture was a genuine, lawful business that failed; Defendant made no knowing false representation and had no intent to deceive. A representation of future performance is not actionable as fraud absent a present intent not to perform, which is denied.

4. THE ENTERPRISE OPENED AND OPERATED. The car wash opened and operated in 2024, and a car-wash business operates at the same site today. Plaintiffs themselves acknowledged its operation (including contemporaneous statements such as "Looking like a real car wash!" and by driving their own vehicles through the operating wash), defeating the central allegation that it "never opened" and any fraud or injury theory premised on that allegation.

5. FUNDS APPLIED TO THE VENTURE; NO CONVERSION (§ 523(a)(6)). The contributed funds were applied to the enterprise, as Plaintiffs' own financial records (ECF Nos. 12-3 and 12-4) reflect, and were not converted or retained by Defendant for personal use.

6. NO WILLFUL AND MALICIOUS INJURY. Section 523(a)(6) requires a deliberate or intentional injury, not merely a deliberate act that leads to injury. Kawaauhau v. Geiger, 523 U.S. 57 (1998). Business losses and alleged mismanagement are not willful and malicious injury, and Defendant had no intent to injure Plaintiffs.

7. FIRST MATERIAL BREACH AND PREVENTION OF PERFORMANCE. Plaintiffs committed the first material breach of the parties' agreement and prevented the venture's performance by refusing to contribute additional capital when required and by demanding that operations cease, then suing on the failure they caused. A party may not predicate a claim upon a failure of performance it caused or prevented.

8. PLAINTIFFS' CONDUCT CAUSED THE LOSS. Any loss resulted from Plaintiffs' own failure to perform the marketing, branding, and accounting responsibilities they undertook as managers of the operating entity, their refusal to fund, and ordinary business and permitting causes, not from any wrongful act of Defendant.

9. CONTRIBUTIONS ARE NON-REFUNDABLE EQUITY. Under the limited liability company law and the agreements governing the venture, Plaintiffs' capital contributions were at-risk equity, not refundable or withdrawable on demand, and not a loan or deposit owed back; their loss, if any, is that of co-owners of a failed enterprise, not a debt converted or obtained by fraud.

10. NO JUSTIFIABLE RELIANCE (§ 523(a)(2)(A)). To except a debt as obtained by a false representation, a creditor must prove justifiable reliance on that representation. Field v. Mans, 516 U.S. 59 (1995). Plaintiffs were sophisticated co-venturers and managers of the operating entity, with access to its information and records; any reliance alleged was not justifiable.

11. ESTOPPEL AND WAIVER. Plaintiffs' own contemporaneous statements and conduct acknowledging the venture's operation estop them from, and constitute a waiver of, their contrary allegations.

12. FAILURE TO MITIGATE. Plaintiffs failed to mitigate their alleged damages, including by refusing to fund the venture and by demanding that it cease operations rather than allowing it to continue.

13. UNCLEAN HANDS / IN PARI DELICTO. As co-managers who shared responsibility for the venture and its operations, Plaintiffs' own conduct bars or reduces the equitable relief they seek.

14. DAMAGES UNPROVEN AND REDUCED; SETOFF RESERVED. Any claimed damages are speculative and unproven, were not proximately caused by Defendant, and are reduced by Plaintiffs' proportional share of the venture's losses and by the substantial capital and loan funds Car Wash Management, LLC contributed and advanced to the venture. To the extent any mutual debt exists, Defendant reserves all rights of setoff.

15. DEBT IS DISCHARGEABLE. Defendant received a Chapter 7 discharge; any debt to Plaintiffs is dischargeable and not excepted from discharge under 11 U.S.C. § 523(a)(2)(A) or (a)(6).

16. NO ALTER EGO. Car Wash Management, LLC and the operating entity are separate legal entities; there is no basis to disregard their separate existence or to impute their conduct to Defendant individually.

17. RESERVATION OF ENTITY CLAIMS. The affirmative claims of Car Wash Management, LLC and the operating entity (breach of contract, breach of fiduciary duty by Plaintiffs as managers, repayment of the loan advanced to the venture, and an accounting) are reserved and not waived, and are asserted, if at all, by Car Wash Management, LLC through counsel in the State Action (Case No. 24CU003299C) and/or the contractually designated arbitral forum.

18. RESERVATION OF ADDITIONAL DEFENSES. Discovery is incomplete; Defendant reserves the right to assert additional defenses as they become known.

**PRAYER**

WHEREFORE, Defendant prays:

1. That Plaintiffs take nothing by their Complaint;
2. That the Court determine the alleged debt is DISCHARGEABLE and not excepted from discharge under 11 U.S.C. § 523(a)(2)(A) or (a)(6);
3. That the Complaint be dismissed with prejudice;
4. For Defendant's costs of suit and, to the extent permitted by law, attorney's fees; and
5. For such other and further relief as the Court deems just and proper.

Dated: 6/17, 2026

[signature]

Andrew Paul Williams, Defendant and Debtor, In Pro Per

**CERTIFICATE OF SERVICE**

I certify that on 6/17, 2026, I served the foregoing DEFENDANT-DEBTOR'S ANSWER TO COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT on counsel for Plaintiffs by electronic mail, addressed to: Martin A. Eliopulos (elio@higgslaw.com); Jake Sesti (sestij@higgslaw.com); and Linda Dominguez (dominguezl@higgslaw.com), Higgs Fletcher & Mack LLP.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 6/17, 2026.

Andrew Paul Williams

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**PROOF OF SERVICE**

**Regions Bank v. Car Wash Management, LLC, etc., et al.**
**Case No. 25-cv-00359-CAS-KS**

I, the undersigned, declare and certify as follows:

I am over the age of eighteen years, not a party to the within action and employed in the County of Los Angeles, State of California. I am employed in the office of Frandzel Robins Bloom & Csato, L.C., members of the Bar of the above-entitled Court, and I made the service referred to below at their direction. My business address is 1000 Wilshire Boulevard, Nineteenth Floor, Los Angeles, CA 90017-2427.

On August 28, 2026, I served true copy(ies) of the **PETER MATHENY'S REQUEST FOR JUDICIAL NOTICE IN CONNECTION WITH PETER MATHENY'S MOTION TO DISMISS ANDREW P. WILLIAMS THIRD PARTY COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND MOTION FOR A MORE DEFINITE STATEMENT (F.R.C.P. Rule 12(b)(1) and (e) MOTION TO STRIKE COUNTERCLAIM (Rule 12(f) AND FOR LACK OF STANDING PURSUANT TO F.R.C.P. Rule 17)** the original(s) of which is(are) affixed hereto. to the party(ies) on the attached service list.

**SEE ATTACHED SERVICE LIST**

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on August28, 2026, at Los Angeles, California.

Rebecca Santamaria

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**SERVICE LIST**
**Regions Bank v. Car Wash Management, LLC, etc., et al.**
**Case No. 25-cv-00359-CAS-KS**

| | |
|---|---|
| Michael D. Gannon (pro hac vice)<br>Katharine H. Walton-(pro hac vice)<br>BakerHostetler<br>One North Wacker Drive, Suite 3700<br>Chicago, IL 60606-2859 | Tel: 312-416-8187<br>Email: mgannon@bakerlaw.com<br>kwalton@bakerlaw.com<br><br>Attorneys for Defendant Washworld, Inc. |
| Katharine Walton<br>Michael D. Gannon<br>Xitlaly Estrada<br>Ava Claypool<br>Baker & Hostetler LLP<br>1900 Avenue of the Stars, Suite 2700<br>Los Angeles, CA 90067-4301 | Tel: 310-442-8878<br>Email: : mgannon@bakerlaw.com,<br>kwalton@bakerlaw.com<br>xestrada@bakerlaw.com<br>aclaypool@bakerlaw.com<br><br>Attorneys for Defendant Washworld, Inc. |
| Lisa Mitts Patrick, Esq.<br>The Law Office Of Lisa Mitts Patrick<br>112 E. Amerige Ave., Suite 313<br>Fullerton, CA 92832 | Tel: 714-990- 3693<br>Fax: 657-234 - 0012<br>Email: lolmp2021@gmail.com<br><br>Attorneys for Defendant and Cross-Complainant Jose Rene Ortiz, aka Jose R. Ortiz, aka Jose Ortiz, an individual |
| Thomas D. Sands<br>The Sands Law Group, APLC<br>205 S Broadway Ste 608<br>Los Angeles, CA 90012 | Tel: 213-788-4412<br>Fax: 833-329-7263<br><br>Email: info@tslg.law<br><br>Attorneys for CAR WASH MANAGEMENT, LLC. |
| Andrew Paul Williams<br>12641 Antioch Rd. Suite # 1045<br>Overland Park, KS 66213-1701 | Tel: 619-796-6469<br>Email:<br>andrew@carwashmgmt.com<br><br>Pro Per |