UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-00359-CAS-KSx | Date | October 9, 2026 |
| Title | Regions Bank v. Car Wash Management, LLC et al. | | |

| | | |
|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | |
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) - NOTICE OF MOTION AND MOTION TO DISMISS ANDREW P. WILLIAMS'S SECOND AMENDED COUNTERCLAIM (Dkt. 238, filed on August 24, 2026)

THIRD-PARTY DEFENDANT PETER MATHENY'S NOTICE OF MOTION AND MOTION TO DISMISS THIRD PARTY COMPLAINT OF ANDREW P. WILLIAMS (Dkt. 240, filed on August 28, 2026)

## I. INTRODUCTION

On January 14, 2025, plaintiff Regions Bank, an Alabama State Bank doing business as Ascentium Capital ("Plaintiff" or "Ascentium" or "Regions Bank") filed this action against Car Wash Management, LLC of Delaware ("CWM"), Car Wash Management LLC of Hawaii, West Covina Car Wash LLC ("WCCW"), Jose Rene Ortiz ("Ortiz"), Andrew Paul Williams ("Williams"), Washworld, Inc. ("Washworld"), and Does 1-100. Plaintiff alleges seven claims for relief: (1) breach of equipment finance agreement against CWM; (2) breach of guaranty against Ortiz; (3) breach of guaranty against WCCW; (4) fraud/concealment against CWM, Williams, Ortiz, and Does 1-10; (5) recovery of money paid by mistake and unjust enrichment against Washworld; (6) breach of contract against Washworld; (7) money had and received against Washworld. Dkt. 1 ("Compl.").

On July 16, 2025, defendant Jose Ortiz filed an answer. Dkt. 54. The same day, Ortiz filed a cross-complaint against Car Wash Management, LLC of Hawaii, CWM, Washworld, WCCW, Williams, and Roes 1-35. Dkt. 55.

On August 15, 2025, defendant Washworld filed a motion to dismiss the claims asserted against it by plaintiff. Dkt. 67. On September 25, 2025, the Court denied Washworld's motion to dismiss plaintiff's complaint. Dkt. 86.

On October 10, 2025, Washworld filed an answer to plaintiff's complaint, along with counterclaims against plaintiff. Dkt. 88 ("Counter-Compl.").

On October 28, 2025, plaintiff filed a motion to dismiss the counterclaims asserted against it by Washworld. Dkt. 102. On November 25, 2025, the Court granted plaintiff's motion to dismiss Washworld's counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing, with leave to amend. The Court denied plaintiff's motion to dismiss Washworld's counterclaim for negligence. Dkt. 121.

On December 31, 2025, Washworld filed a first amended answer to plaintiff's complaint, along with counterclaims against plaintiff for breach of the implied covenant of good faith and fair dealing, negligence, and negligent misrepresentation. Dkt. 130.

On January 20, 2026, plaintiff filed a motion to dismiss Washworld's First Amended Counter-Complaint. Dkt. 134. On February 11, 2026, the Court denied plaintiff's motion. Dkt. 142.

On February 20, 2026, plaintiff filed an answer to Washworld's First Amended Counter-Complaint. Dkt. 145.

On February 23, 2026, plaintiff filed a motion for leave to file a First Amended Complaint ("FAC"). Dkt. 146. On March 16, 2026, the Court granted plaintiff's motion. Dkt. 153.

On March 17, 2026, plaintiff filed its First Amended Complaint. Dkt. 154 ("FAC"). Plaintiff's FAC adds an eighth claim for conversion against Washworld. Id. at 16-17. On March 31, 2026, Washworld filed a motion to dismiss plaintiff's eighth claim for conversion against Washworld. Dkt. 155. On April 29, 2026, the Court granted Washworld's motion to dismiss plaintiff's conversion claim, with prejudice. Dkt. 167.

On May 12, 2026, plaintiff filed proof of service of its operative FAC on defendant Andrew Paul Williams. Dkt. 173.

On May 27, 2026, Williams, pro se, filed an answer to plaintiff's operative FAC, along with affirmative defenses, counterclaims, crossclaims, and a third-party complaint.

Dkt. 177. On June 10, 2026, Williams, pro se, filed a first amended answer, affirmative defenses, counterclaims, crossclaims, and a third-party complaint. Dkt. 186 ("Williams's First Amended Answer" or "Williams's FAA"). In his First Amended Answer, Williams asserts counterclaims against plaintiff Regions Bank; crossclaims against defendant Jose Rene Ortiz, Maria L. Ortiz, and the Ortiz Family Trust of 2024; crossclaims against defendant Washworld; and a third-party complaint against third-party defendant Peter Matheny ("Matheny"). See id.

On June 28, 2026, Williams, pro se, filed a motion for leave to file a second amended answer, affirmative defenses, counterclaims, crossclaims, and a third-party complaint. Dkt. 199.

On July 7, 2026, plaintiff filed a motion to dismiss Williams's counterclaims against it. Dkt. 204.

On July 22, 2026, the Court granted Williams's motion for leave to file his Second Amended Answer and Third-Party Complaint. Dkt. 223. In so doing, the Court denied as moot plaintiff's motion to dismiss Williams's claims asserted against plaintiff. Id. The Court also stated that "[n]o further amendments shall be permitted unless there are extraordinary circumstances." Id. at 6.

On August 5, 2026, Williams, pro se, filed his operative second amended answer, along with affirmative defenses, counterclaims, crossclaims, and a third-party complaint ("Williams's Second Amended Answer and Third-Party Complaint"). Dkt. 231. In his Second Amended Answer, Williams asserts counterclaims against plaintiff Regions Bank; crossclaims against defendant Jose Rene Ortiz, Maria L. Ortiz, and the Ortiz Family Trust of 2024; crossclaims against defendant Washworld, Inc.; and a third-party complaint against Matheny. Id. As relevant to the instant motion, Williams asserts the following counterclaims against Regions Bank: (1) negligent supervision; (2) declaratory relief; (3) fraud; (4) negligent misrepresentation; (5) negligent hiring; (6) negligent retention; (7) aiding and abetting Matheny's individual fraud; and (8) fraud by concealment. Id. ¶¶ 86-87O, 124-145. Williams asserts the following claims for relief against third-party defendant Matheny: (1) tortious interference with contractual relations; (2) aiding and abetting fiduciary duty; (3) equitable indemnity and, in the alternative, contribution; (4) direct fraud; and (6) fraud by concealment. Id. ¶¶ 117G-123, 165-172.

On August 24, 2026, plaintiff filed its motion to dismiss Williams's counterclaims against it, a motion to strike, and a request for judicial notice. Dkt. 238 ("Pl.'s Mot."). On August 28, 2026, Matheny filed his motion to dismiss Williams's third-party complaint, motion to strike, and a request for judicial notice. Dkt. 240 ("Matheny's Mot."). On September 9, 2026, Williams filed an opposition to plaintiff's motion to dismiss, as well as a request for judicial notice. Dkt. 242 ("Williams's Opp. to Pl.'s Mot."). On September 9, 2026, Williams filed an opposition to Matheny's motion to dismiss, as well as a request for judicial notice. Dkt. 243 ("Williams's Opp. to Matheny's Mot."). On September 11, 2026, Regions Bank filed a reply. Dkt. 244 ("Pl.'s Reply"). On the same day, Matheny filed a reply. Dkt. 245 ("Matheny's Reply").

On September 28, 2026, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

The background of this case is known to the parties and is described in the Court's February 11, 2026 order. Dkt. 142.

As discussed therein, plaintiff's first amended complaint alleges that CWM entered into an equipment financing agreement ("EFA") with plaintiff Regions Bank doing business as Ascentium Capital ("Ascentium"). FAC ¶ 12. Plaintiff alleges that Williams, a member and/or officer of CWM, represented to Matheny, a Vice President of Ascentium, that CWM decided to purchase equipment with funds pursuant to the EFA from Washworld, a different vendor than initially discussed. See id. ¶¶ 5, 15. Plaintiff alleges that after Washworld received EFA funds from plaintiff (the "Payment"), CWM instructed Washworld to apply a portion of the payment to an outstanding balance owed by another one of its customers, Conserv Fuels, located in Chula Vista, California. Id. ¶ 22. Plaintiff alleges that Washworld then sent the remainder of the payment to CWM. Id. Plaintiff alleges that plaintiff declared the EFA in default after learning these facts. Id. ¶¶ 24-26. Plaintiff alleges that CWM and other defendants subsequently refused to pay the balance or return the payment. See id.

In his second amended answer, Williams alleges the following:

Williams served as a Manager of CWM and held the title of Chief Executive Officer for the purposes of communications with banks, vendors, and other parties.

Williams's Second Amended Answer ¶ 9. Williams held a 60% majority membership interest in CWM at CWM's formation in April 2022. Id. In late 2023 and January 2024, Williams's membership was restructured to a 10% minority interest at the time of the EFA closing, at Matheny's direction and as a precondition to plaintiff's funding. Id.

In or around December 2023, a commercial credit application (the "Application") signed by defendant Ortiz was submitted to Ascentium in the name of West Covina Car Wash LLC ("WCCW") for a loan. Id. ¶ 25A. On or about December 26, 2023, the application was declined by Ascentium's credit department. Id. Matheny then emailed Lara C. Hernandez, Ascentium credit underwriter, proposing a substitution of CWM for WCCW as the borrower of record. See id. The same day, Hernandez responded to Matheny, asking, "Ortiz owns the tenant entity, which owns the real estate entity and is also the vendor??? West Covina Car Wash LLC is a new LLC that is 30% held by investors, 70% held by [CWM], in which Jose Ortiz owns 80% of CWM." Id. On December 27, 2023, Hernandez stated that Ascentium could not finance a transaction "where customer and vendor do not have an arm's length distance." Id. Despite Hernandez's emails, Matheny proceeded to process the EFA, which named CWM as the borrower of record. See id. ¶¶ 25C-28. Matheny also instructed Williams that Williams didn't "need to use [the] upload link. Just email ['the signed docs'] to me please." Id. ¶ 28. In so doing, Matheny circumvented Ascentium's internal document audit trail, compliance review processes, and standard origination protocols. Id. ¶ 29.

Williams did not sign the EFA in any capacity. Id. ¶ 30. He is not a guarantor of the EFA. Id. ¶ 34. Williams signed the Authority and Incumbency Certificate with respect to the EFA solely in his capacity as certifier, thereby certifying that Ortiz had the authority to execute and deliver the EFA and related documents. See id. ¶ 33.

Matheny structured the EFA to produce "the flow of funds in which the [Ascentium]-financed proceeds, after Washworld's application of a portion to settle CWM's pre-existing Chula Vista trade balance, were refunded by Washworld to CWM." Id. ¶ 40. The "Conserve [sic] Fuels Chula Vista Project" (the "Chula Vista Project") was a "gas station and car wash project." Id. ¶ 42B. Upon information and belief, "Matheny's industry vertical at [Ascentium] is . . . retail petroleum, convenience stores, and fuel wholesalers," and the Chula Vista Project was "within Matheny's industry specialty." Id. On information and belief, "the application of CWM's EFA loan proceeds to the [Chula Vista Project] order was known to Matheny at or about the time of

the application, and . . . Matheny did not disclose this application to CWM, to Williams, or [Ascentium's] credit personnel." Id. ¶ 42E. On information and belief, Matheny has "originat[ed] other similarly structurally non-standard loan transactions for other customers in a pattern of conduct that constituted a departure from the Bank's standard underwriting protocols." Id. ¶ 59.

On September 18, 2025, plaintiff filed a document in which plaintiff "acknowledged that Williams was 'probably not collectable.'" Id. ¶ 69. Ascentium's "continued prosecution of Williams is motivated by considerations other than legitimate recovery, including but not limited to the desire to shift responsibility away from the Bank's own loan officer Matheny." Id. ¶ 70. Matheny has continued in his employment with Ascentium. Id. ¶ 72.

Williams alleges that as a result of plaintiff's and Matheny's conduct, Williams suffered personal "defense cost[s]" related to this action, "reputational injury," and "impairment of Williams's prospective economic relationships and business opportunities," among other injuries. See, e.g., id. ¶ 70C.

Williams alleges that he does not assert any claim derivative of CWM. See, e.g., id. ¶ 15.

## III. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

"A motion to dismiss a counterclaim brought pursuant to FRCP 12(b)(6) is evaluated under the same standard as motion to dismiss a plaintiff's complaint." PageMelding, Inc. v. ESPN, Inc., No. 11-cv-06263, 2012 WL 3877686, at *1 (N.D. Cal. Sept. 6, 2012).

### B. Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting a claim for fraud be pled with particularity. Federal Rule of Civil Procedure 9(b) applies not just where a complaint specifically alleges fraud as an essential element of a claim, but also where the claim is "grounded in fraud" or "[sounds] in fraud." Vess v. Ciba-Geigy Corp. U.S.A., 317 F.3d 1097, 1103–04 (9th Cir. 2003). A claim is said to be "grounded in fraud" or "'sounds in fraud'" where a plaintiff alleges that defendant engaged in fraudulent conduct and relies on solely on that conduct to prove a claim. Id. "In that event, . . . the pleading of that claim as a whole must satisfy the particularity requirement of [Fed. R. Civ. P.] 9(b)." Id. However, where a plaintiff alleges claims grounded in fraudulent and non-fraudulent conduct, only the allegations of fraud are subject to heightened pleading requirements. Id. at 1104.

A pleading is sufficient under Fed. R. Civ. P. 9(b) if it "[identifies] the circumstances constituting fraud so that the defendant can prepare an adequate answer

from the allegations." Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973). This requires that a false statement must be alleged, and that "circumstances indicating falseness" must be set forth. In re GlenFed Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994). Thus, Rule 9(b) requires a plaintiff to "identify the 'who, what, when, where and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent conduct], and why it is false." Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010)).

### C. Leave to Amend

As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV. DISCUSSION

Plaintiff and Matheny ("Movants") submit similar, if not identical, arguments in support of their respective motions to dismiss. See Pl.'s Mot; Matheny's Mot.; Pl.'s Reply; Matheny's Reply. Accordingly, the Court treats the movants' motions and replies as coextensive throughout this Order except where otherwise noted. Williams's respective oppositions to plaintiff's and Matheny's motions are also similar to one another, and the Court therefore treats the two oppositions as coextensive except where otherwise noted.

### A. Negligence, Fraud, and Aiding and Abetting Claims

Movants argue that Williams has no standing to bring any of his claims against plaintiff or Matheny. Pl.'s Mot. at 8. Movants argue that Williams's claims are largely the claims of CWM. Id. at 3. Movants argue that Williams was neither a borrower nor a guarantor of the EFA loan, and therefore Williams cannot establish a direct and independent harm that would otherwise establish standing to allege claims on behalf of CWM. Id. at 8-9.

In opposition, Williams argues that he pleads "direct and personal injuries" that are "not merely derivative harm" to CWM. See, e.g., Opp. to Matheny's Mot. at 2. He

argues that plaintiff's and Matheny's conduct "injured Williams as an individual member and as an individual defendant, not solely as a proxy for CWM." Id. at 6; Opp. to Pl.'s Mot. at 6. Williams argues that to the extent that the Court finds a theory to "properly" belong to CWM, he requests that his claims be dismissed with leave to amend.[1]

In reply, movants largely reiterate their arguments. See Pl.'s Reply at 2-3. Movants also argue that Williams should not be granted leave to amend because the Court's July 22, 2026 Order granting Williams leave to file his second amended answer stated that "[n]o further amendments shall be permitted unless there are extraordinary circumstances." See id. at 3-4; Dkt. 223 at 5.

To determine whether a claim is direct or derivative, courts in the Ninth Circuit apply the law of the state in which the entity is incorporated or organized. See Albers v. Guthy-Renker Corp., 92 F. App'x 497, 498-500 (9th Cir. 2004) (applying Texas law to determine whether members of a Texas limited liability company had standing to pursue claims); Lapidus v. Hecht, 232 F.3d 679, 682 (9th Cir. 2000) (applying Massachusetts law where a trust was organized under Massachusetts law); Solarmore Mgmt. Servs., Inc. v. Bankr. Est. of DC Solar Sols., No. 2:19-CV-02544, 2021 WL 3077470, at *3 (E.D. Cal. July 21, 2021) (applying California law to determine whether an action was derivative as to California companies). CWM is a Delaware limited liability company. See Williams's Second Amended Answer ¶ 15.[2] Accordingly, Delaware law applies here.

Delaware's Limited Liability Company Act deems a claim to be derivative when it is brought by a member "in the right of a limited liability company to recover a judgment in its favor." See Del. Code Ann. tit. 6, § 18-1001. Under Delaware law, "[t]he derivative suit is a corporate concept grafted onto the limited liability company form." Elf Atochem N. Am., Inc. v. Jaffari, 727 A.2d 286, 293 (Del. 1999). "'[C]ase law

[1] Williams requests dismissal "without prejudice," which this Court understands to be a request for leave to amend. See Opp. to Matheny's Mot. at 7.

[2] Williams also alleges that he was a member of Car Wash Management, LLC, which was a Hawaii limited liability company. Williams's Second Amended Answer ¶ 16. Both parties appear to agree that this case primarily involves Williams's conduct as it relates to the Delaware limited liability company. See id. Accordingly, the Court applies Delaware law.

governing corporate derivative suits is equally applicable to suits on behalf of an LLC.’ Thus, it is appropriate to look to [Delaware] law of corporations when assessing whether [plaintiff] has brought direct or derivative claims and whether it has standing to prosecute the claims it has brought.” Clifford Paper, Inc. v. WPP Invs., LLC, No. CV 2020-0448, 2021 WL 2211694, at *6 (Del. Ch. June 1, 2021) (quoting VGS, Inc. v. Castiel, 2003 WL 723285, at *11 (Del. Ch. Feb. 28, 2003)).

Courts applying Delaware law decide whether a claim is derivative or direct “based solely on the following questions: Who suffered the alleged harm—the corporation or the suing stockholder individually—and who would receive the benefit of the recovery or other remedy?” Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1035 (Del. 2004). “The manner in which a plaintiff labels its claim and the form of words used in the complaint are not dispositive; rather, the court must look to the nature of the wrong alleged, taking into account all of the facts alleged in the complaint, and determine for itself whether a direct claim exists.” Hartsel v. Vanguard Grp., Inc., No. 5394-VCP, 2011 Del. Ch. LEXIS 89, at *65-66 (Del. Ch. June 15, 2011).

The gravamen of Williams’s counterclaims against plaintiff is that plaintiff failed to take reasonable action with respect to its employment of Matheny. Williams alleges that plaintiff is liable for Williams’s injuries stemming from Matheny’s alleged conduct related to the initial credit application, the EFA, the partial return of the EFA funds to CWM, and similar “circular” funding arrangements that Matheny arranged for other non-party entities. See, e.g., Williams’s Second Amended Answer ¶¶ 76, 127. The gravamen of Williams’s claims against third-party defendant Matheny is that Matheny made material misrepresentations to Williams as to the “structural integrity” of the EFA transaction, Williams’s role as certifier, and other matters related to the “origination, funding, and post-funding administration of the EFA.” See, e.g., id. ¶¶ 87B, 166. Williams alleges that movants’ misconduct caused him to expend defense costs related to the current action, lose income from CWM, lose member interest in value and in share, suffer emotional distress and reputational harm, and lose business opportunities. See, e.g., id. ¶ 78.

First, as to Williams’s allegations that he lost income or value in his member interest due to the movants’ misconduct, such allegations reflect the “classic” derivative claim by which interest holders bring claims for a depreciation in the value of their interest in the entity. See, e.g., In re New Media Inv'rs II Ltd. Liab. Co., No. 2024-0413-

LWW, 2026 Del. Ch. LEXIS 37, at *10 (Del. Ch. Jan. 27, 2026) ("At best, the plaintiffs suggest that their stake in [the LLC] lost value . . . Such loss—proportional to ownership—is the hallmark of a derivative claim. It does not give rise to a separate, cognizable direct injury."); .

Second, insofar as Williams alleges that movants' misconduct caused him to experience a reduction in his member interest from 60% to 10%, this claim may also be derivative. The Court finds In re Total Auto Financing LLC, 185 F.4th 123 (4th Cir. 2026), instructive here. Total Auto Financing involved members of an LLC that provided car loans. Id. at 130. The LLC members brought claims against a lender and a loan servicer, alleging that defendants had improperly structured a lending arrangement and mismanaged the LLC's loan portfolio. Id. Of particular relevance to the instant matter is the fact that the LLC members had personally guaranteed the credit agreement between the LLC and the lender. Id. The Fourth Circuit concluded that even though the LLC members personally guaranteed the loan and therefore suffered "personal" injuries, the member's claim for negligence was nonetheless derivative. Id. at 138-39 (noting that plaintiffs' claims failed under the Tooley test). The Fourth Circuit reasoned:

> [T]he alleged wrongdoing is disconnected from the guaranty. . . . [plaintiff]'s complaint does not claim that he was fraudulently induced to sign the guaranty, or that [d]efendants breached any contractual duty owed to him directly as a guarantor. He claims that [d]efendants injured [the LLC] and that the injury rolled downhill to him.

Id. Here, too, movants' alleged misconduct is disconnected from any reduction Williams suffered to his share of member interest in CWM. As in Total Auto Financing, Williams does not allege that movants fraudulently induced him to accept this reduction. Moreover, as in Total Auto Financing, Williams's underlying allegations of misconduct pertain to the direct alleged injury to CWM, and do not plausibly allege any breach of duty owed directly to Williams as an individual. Accordingly, as in Total Auto Financing, any "added" personal injury appears to have no connection to movants' alleged misconduct, and therefore, Williams may have failed to "make the claim his own." Id. at 138.

However, the Court need not decide whether these claims are derivative because Williams has failed to state an adequate claim for relief under this theory. To recover for

negligence under California law, a plaintiff must show (1) that defendant owed plaintiff a duty of care, (2) that defendant breached that duty, (3) that the breach was the legal and proximate cause of plaintiff's injury, and (4) that plaintiff suffered damages. See Beacon Residential Cmty. Ass'n v. Skidmore, Owings & Merrill LLP, 59 Cal. 4th 568, 573 (2014). "To plead a fraud claim, a party must allege (1) a knowingly false representation or fraudulent omission by the defendant; (2) an intent to deceive or induce reliance; (3) justifiable reliance by the plaintiff; and (4) resulting damages." UMG Recordings, Inc. v. Glob. Eagle Ent., Inc., 117 F. Supp. 3d 1092, 1109 (C.D. Cal. 2015). To assert a claim for fraud by concealment, a plaintiff must allege that (1) the defendant concealed a material fact; (2) the defendant had a duty to disclose the fact to the plaintiff; (3) the defendant concealed the fact with the intent to defraud; (4) the plaintiff was unaware of the fact and would have acted differently if they had knowledge of the fact; and (5) the concealment injured the plaintiff. Kaldenbach v. Mutual of Omaha Life Ins. Co., 178 Cal. App. 4th 830, 850 (2009).

As mentioned above, Williams does not allege any facts that would plausibly give rise to a breach of duty or fraudulent conduct with respect to the reduction of his share of interest in CWM. Instead, Williams merely alleges that the reduction of his share of interest occurred "at the direction of Matheny" as a "precondition to the Bank's funding of the EFA." See, e.g., Williams's Second Amended Answer ¶ 24. Such allegations, without more, fail to adequately state a claim for negligence under Rule 12(b)(6), let alone fraud claims under Rule 9(b)'s heightened pleading standard. Moreover, with respect to Williams's allegation that movants' misconduct led him to execute the EFA's Authority and Incumbency Certificate as a certifier, Williams does not allege a plausible injury in connection with this allegation. See, e.g., Williams's Second Amended Answer ¶ 143. As movants point out, "Williams is not a party to the loan nor did he sign any contract to Guaranty [sic] the loan." Pl.'s Mot. at 4.

Williams's tortious interference claim fails by the same logic. Williams alleges that Matheny tortiously interfered with Williams's contractual relations pursuant to CWM's Operating Agreement. See Williams's Second Amended Answer ¶¶ 117G-117L. Williams alleges that Matheny sent a March 11, 2024 text message suggesting that Williams be removed from CWM operations. See id. Williams also alleges that Matheny structured the EFA such that defendant Ortiz could "extract[]" value at Williams's expense and "circumvent[]" processes "contemplated by the Operating Agreement." Id. ¶ 117J. Williams alleges that this conduct impaired Williams's right to

"participate in CWM management," "receive . . . distributions," and receive "accurate information." Id. ¶ 117L.

"In California, a claim for tortious interference requires: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." Integrated Sports Media & Ent. PPV, LLC v. Livecast 365, LLC, No. CV220980, 2022 WL 2103005, at *3 (C.D. Cal. Apr. 14, 2022) (quoting Quelimane Co. v. Stewart Title Guar. Co., 19 Cal. 4th 26, 55 (1998)).

Williams's claim of tortious interference with contractual relations fails to allege "actual breach or disruption" and causation. To the extent that Williams alleges that Matheny tortiously interfered with Williams's contractual relations by directing a partial transfer of Williams's interest in CWM to Ortiz, the Court observes that Williams has not alleged that such a transfer constitutes "breach or disruption" of the Operating Agreement. See Rincon Band of Luiseno Mission Indians v. Flynt, 70 Cal. App. 5th 1059, 1111 (2021) ("[A] defendant's conduct may give rise to a claim for tortious interference with contractual relations if it induces an *actual breach* of plaintiff's contract, or 'if plaintiff's performance is made *more costly or more burdensome*.'" (emphasis added) (quoting Pac. Gas & Elec. Co. v. Bear Stearns & Co., 50 Cal. 3d 1118, 1129 (1990)). With respect to Williams's allegation that Matheny sent a "text message" in March 2024 "suggesting" that Williams be removed from CWM operations, Williams fails to allege with specificity that this alleged text message resulted in any injury to Williams. See Derry v. Jackson Nat. Life Ins. Co., No. SACV 11-0343, 2011 WL 7110571, at *6 (C.D. Cal. Oct. 5, 2011) (observing that "[p]laintiffs must plead claims that are facially plausible, not merely possible" at the pleading stage). Similarly, to the extent Williams seeks relief for Matheny's alleged role in "Ortiz's circumvention in CWM's normal . . . processes," Williams fails to allege that any related provisions of the Operating Agreement "would not have been breached or disrupted but for [Matheny's] alleged interference." See, e.g., Dryden v. Tri-Valley Growers, 65 Cal. App. 3d 990, 997 (1977) ("It has been repeatedly held that a plaintiff, seeking to hold one liable for unjustifiably inducing another to breach a contract, must allege that the contract would otherwise have been perform."); Wynn v. Nat'l Broad. Co., 234 F. Supp. 2d 1067, 1121 (C.D. Cal. 2002) ("Plaintiffs have also failed to allege facts sufficient to allow an inference that the Employer Defendants otherwise would have performed had the Agency

Defendants not interfered, which is a requirement to establish causation.”); Nat'l Funding, Inc. v. Com. Credit Counseling Servs., Inc., No. CV 18-6437, 2018 WL 6444899, at *5 (C.D. Cal. Nov. 6, 2018) (finding that even the plaintiff's “conclusory assertion that ‘the [agreement] would not have been breached or disrupted but for Defendants' above conduct’ is insufficient). Accordingly, Williams fails to state a plausible claim for tortious interference.

The Court turns next to Williams's allegations that Matheny aided and abetted defendant Ortiz's breach of fiduciary duty to CWM and to Williams. Id. ¶¶ 117O-117P. Williams alleges that Matheny aided defendant Ortiz's efforts to “extract” value “from *CWM*,” direct funds “away from *CWM* equipment acquisition,” and circumvent “*CWM*'s normal management and oversight processes.” Id. ¶ 117P (emphasis added). These allegations “make[] clear the corporation suffered the alleged harm,” and Williams “has not explained how he would be harmed directly by these alleged breaches of fiduciary duties independent from the harm to the [c]ompany.” See Dietrichson v. Knott, No. 11965-VCMR, 2017 WL 1400552, at *4 (Del. Ch. Apr. 19, 2017) (finding that one LLC member's breach of fiduciary duty claim against another LLC member was derivative). Because Williams's claim is not “independent of any alleged injury to the corporation,” it is a derivative claim. See Tooley, 845 A.2d 1031, 1039 (Del. 2004).

Finally, although Williams's allegations that he suffered reputational harm could “conceivably” support a direct claim, Williams fails to adequately state a claim on these grounds. Total Auto Fin., 185 F.4th at 140. Assuming *arguendo* that these injuries could support Williams's claims, Williams “alleges repeatedly that he suffered reputational harm . . . [b]ut his complaint fails to provide any factual allegations supporting his claim. It never specifies who learned of the [harm to the company], how that affected their perception of [Williams], or how any reputational harm was separate from harm to [CWM]. Conclusory allegations are not enough.” Id. Williams's claims with respect to emotional distress and loss of business opportunities fail for similar reasons. See, e.g., Williams's Second Amended Answer ¶ 78 (stating merely that Williams suffered “emotional distress . . . including personal distress and disruption to Williams's professional and personal life” without explaining how such harm arose independent of the alleged harm to CWM).

Delaware law provides that even if a claim is derivative, a member may bring an action “in the Court of Chancery . . . if managers or members with authority to do so have

refused to bring the action or if an effort to cause those managers or members to bring the action is not likely to succeed." Del. Code Ann. tit. 6, § 18-1001. Williams has not adequately pled that such conditions exist here. See id. § 18-1003; Dietrichson, 2017 WL 1400552, at *4 ("[A] plaintiff member or assignee of a limited liability company attempting to bring a derivative action must allege with particularity either that she made [a] demand and it was wrongfully refused or why such demand would be futile.").

Because there do not appear to be facts consistent with these claims that could "possibly cure the deficiency," and in light of the fact that Williams already had opportunities to amend his counterclaims and third-party complaint, granting leave to amend would be futile. See Schreiber Distrib. Co., 806 F.2d at 1401. Accordingly, the Court **GRANTS** plaintiff's motion to dismiss Williams's counterclaims for negligent supervision, fraud, negligent misrepresentation, negligent hiring, negligent retention, aiding and abetting Matheny's individual fraud, and fraud by concealment, with prejudice. The Court further **GRANTS** Matheny's motion to dismiss Williams's claims for tortious interference with contractual relations, aiding and abetting fiduciary duty, direct fraud, and fraud by concealment, with prejudice.

### B. Declaratory Relief

Movants argue that Williams's claim for declaratory relief is unnecessary because Williams "is not a borrower, a guarantor, an obligor, and has no rights with respect to the loan at issue." P.'s Mot. at 17. Movants also argue that Williams's claim for declaratory relief fails as a matter of law because "[t]here is no future claim to adjudicate." Id. at 18.

In opposition, Williams argues that the fact that his claims for declaratory relief are "backward looking" does not mandate dismissal. See Opp. to Matheny's Mot. at 11.

"Declaratory relief is appropriate to prospectively declare future rights, rather than to redress past wrongs." See Innerline Eng'g, Inc. v. Operating Eng'rs Health & Welfare Tr. Fund for N. California, No. 22-CV-03663, 2022 WL 16924105, at *3 (N.D. Cal. Nov. 14, 2022) (citing Societe de Conditionnement en Aluminium v. Hunter Eng'g Co., 655 F.2d 938, 943 (9th Cir. 1981)). Here, Williams seeks declaratory relief with respect to his lack of personal liability in relation to the EFA and surrounding events. See Williams's Second Amended Answer ¶ 86. He does not allege any ongoing or future harm. See id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** ‘O’

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-00359-CAS-KSx | Date | October 9, 2026 |
| Title | Regions Bank v. Car Wash Management, LLC et al. | | |

Accordingly, the Court **GRANTS** plaintiff's motion to dismiss Williams's counterclaim for declaratory relief, with prejudice.

### C. Equitable Indemnity

Williams seeks equitable indemnity (or alternatively, contribution) from Matheny. Id. ¶¶ 118-123. Matheny argues that Williams "will have to state a claim for fraud" before he can seek equitable indemnity from Matheny. Matheny's Mot. at 19-20.

In opposition, Williams contends that Matheny ignores that he does, in fact, plead fraud claims in his second amended third-party complaint. See Opp. to Matheny's Mot. at 12.

"The common law equitable indemnity doctrine relates to the allocation of loss among multiple tortfeasors. The duty to indemnify may arise and indemnity may be allowed when in equity and good conscience the burden of a judgment should be lifted from a person seeking indemnity to one from whom indemnity is sought." Fireman's Fund Ins. Co. v. Haslam, 29 Cal. App. 4th 1347, 1353 (1994). "The doctrine applies only among defendants who are jointly and severally liable to the plaintiff." BFGC Architects Planners, Inc. v. Forcum/Mackey Constr., Inc., 119 Cal. App. 4th 848, 852 (2004). Still, "joint and several liability in the context of equitable indemnity is fairly expansive .... It can apply to acts that are concurrent or successive, joint or several, as long as they create a detriment caused by several actors." Id. While implied contractual liability can provide a basis for joint and several liability, joint and several liability generally stems from a duty that the indemnitor owes the plaintiff. See 5 Witkin, Summary of Cal. Law (11th) Torts § 225 (2018). Equitable indemnity need not be premised on identical claims alleged against joint and several tortfeasors; rather, "[t]he claims must relate to the same legal injury, but do not have to be identical claims." Employers Ins. of Wausau v. Musick, Peeler, & Garrett, 948 F. Supp. 942, 944 (S.D. Cal. 1995).

As Williams points out in his second amended answer, California's "comparative equitable indemnity doctrine permits an intentional tortfeasor to obtain indemnity from a concurrent intentional tortfeasor." Baird v. Jones, 21 Cal. App. 4th 684, 688 (1993). Matheny cites no authority to the contrary, nor does he cite authority to support his assertion that Williams must assert a cognizable fraud claim prior to seeking indemnification.

Nevertheless, in the particular circumstances of this case, the Court finds that Williams's equitable indemnification claim should be dismissed at this juncture. "It is well settled that, in the absence of a contrary statutory command, a cause of action for equitable indemnity does not come into existence until the indemnitee has suffered loss through payment." Mangini v. Aerojet-Gen. Corp., 230 Cal. App. 3d 1125, 1154 (Ct. App. 1991); see also W. Steamship Lines, Inc. v. San Pedro Peninsula Hosp., 8 Cal. 4th 100, 110, as modified on denial of reh'g (Sept. 22, 1994) ("[A] fundamental prerequisite to an action for partial or total equitable indemnity is an actual monetary loss through payment of a judgment or settlement." (quoting Christian v. County of Los Angeles, 176 Cal. App. 3d 466, 471 (1986))). Williams has not yet suffered any judgment against him. Accordingly, Williams's claim for equitable indemnification is premature. JP Express Serv., Inc. v. KG Admin. Servs., No. SACV1800134, 2019 WL 8060074, at *5 (C.D. Cal. Nov. 5, 2019) ("Until Defendants incur some monetary loss, their equitable indemnity and contribution claims against [third-party plaintiffs] will remain unripe.").

Accordingly, the Court **GRANTS** Matheny's motion to dismiss Williams's equitable indemnity claim, without prejudice.[3]

## V. CONCLUSION

Accordingly, the Court **GRANTS** plaintiff's motion to dismiss Williams's counterclaims against it, with prejudice.

The Court **GRANTS** Matheny's motion to dismiss Williams's claims for tortious interference with contractual relations, aiding and abetting fiduciary duty, direct fraud, and fraud by concealment, with prejudice.

The Court **GRANTS** Matheny's motion to dismiss Williams's equitable indemnity claim, without prejudice.

IT IS SO ORDERED.

00 : 00

Initials of Preparer CMJ

[3] In light of the Court's ruling, the Court need not reach the question of whether plaintiff is barred by the doctrine of judicial estoppel.